UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED<br><br>　　　　　Plaintiff,<br><br>v.<br><br>STRATEGIC VISION US LLC,<br><br>　　　　　Defendant. | Civil Action No. ____-CV-_____<br><br>**COMPLAINT** |

Plaintiff Eastern Profit Corporation Limited ("Eastern") for its complaint for breach of contract against defendant Strategic Vision US LLC ("Strategic Vision"), alleges as follows:

## PARTIES

1. Plaintiff Eastern is organized under the laws of Hong Kong and has a principal place of business in Hong Kong.

2. Upon information and belief, Defendant Strategic Vision is incorporated under the laws of Nevada, with its principal place of business at 7260 West Azure Drive, Suite 140-593, Las Vegas, Nevada.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between the citizen of a state and the citizen of a foreign state.

4. The Court has personal jurisdiction because the contract underlying this Complaint was negotiated in New York, Strategic Vision regularly sent communications

regarding the contract to Eastern in New York, and Strategic Vision delivered reports pursuant to the contract to Eastern in New York.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claim occurred in this district, including that the contract was negotiated in this district, Strategic Vision regularly sent communications to Eastern regarding the contract in this district, and Strategic Vision delivered reports to Eastern pursuant to the contract in this district.

## FACTS

6. On January 6, 2018, Plaintiff Eastern and Defendant Strategic Vision entered into a contract (the "Contract"), pursuant to which Strategic Vision promised that it would, among other things, conduct "high quality original research" and would provide detailed forensic financial reports, reports detailing tracking research, and reports detailing social media research concerning specific subjects as described in the Contract (the "Reports"). The Contract provided that Strategic Vision was to deliver Reports concerning the specific subjects on a weekly basis over the course of the first month, and no less than on a monthly basis thereafter.

7. The Contract contains a confidentiality clause which prohibits either party from disclosing to any third party the existence of the contract, any work relating to the contract, and the participants in formulating, supervising, or executing the contract's provisions.

8. The Contract was negotiated during several meetings between representatives of Eastern and Strategic Vision in New York, and Strategic Vision sent various communications to Eastern's representatives in New York to finalize the terms of the Contract.

9. Prior to entering into the Contract, Strategic Vision stated to Eastern several times that it could "guarantee" that it had the resources, experience and capability to provide the type of sophisticated research Eastern required.

10. Strategic Vision represented to Eastern that it had an in-house team of investigators that was highly skilled and included former National Security Agency (NSA) officers and other ex-intelligence officers ready to conduct the research Eastern needed during a short timeframe.

11. In addition, because Strategic Vision knew that Eastern was particularly interested in an agency that could conduct investigative research abroad, including in China, Strategic Vision also represented to Eastern that its investigators could conduct investigative research all over the world, including in Asia, without violating the laws of the country in which they were operating.

12. Strategic Vision also told Eastern that it had previously provided investigative services for Republican politicians, a Middle Eastern prince, and a politician belonging to the opposition party in Russia.

13. Strategic Vision further represented that its investigators were capable of researching and collecting sophisticated financial tracking and asset tracing information. To showcase its capabilities, Strategic Vision provided Eastern with a sample report, which appeared to show that Strategic Vision could enter into banking systems and find evidence of money laundering.

14. Eastern entered into the Contract in reliance on those representations by Strategic Vision.

15. Upon the representations and promises made by Strategic Vision's representatives, Eastern also committed a substantial amount of resources in good faith, and paid Strategic Vision $1 million in advance as a deposit in connection with the Contract. Strategic Vision represented, and the Contract provided, that Eastern's $1 million deposit would be used as a deposit against the last payments owed by Eastern during the final 1.3 months of the Contract.

16. However, immediately after the Contract was formed, it became clear that Strategic Vision had misrepresented its capabilities, resources, expertise and prior experiences.

17. Because of what Strategic Vision described as an "internal miscommunication" on the part of Strategic Vision's representatives, the start of the Contract had to be delayed by 10 days, from January 6 to January 16.

18. Eastern agreed to the extension of time with the hope that things would move smoothly going forward. That hope was short-lived. Even with this additional time, Strategic Vision failed to deliver its initial sets of weekly reports on time as required by the clear terms of the Contract. As an excuse for its non-performance, Strategic Vision claimed it had "mistakenly" believed that the initial 90 days following the formation of the Contract would merely be for "starting up and developing the data" even though such a professed belief was not consistent with the plain terms of the Contract.

19. Upon information and belief, this delay was caused in part by the fact that Eastern did not actually have an in-house team of investigators ready to conduct the research Eastern needed at the time that the parties entered into the Contract. Upon information and belief, Strategic Vision does not actually employ any investigators, but instead relies on independent contractors to provide investigative research for it.

4

20. Finally, on January 30, Strategic Vision made its first delivery under the Contract to a representative of Eastern in New York. The delivery consisted of a combination of reports concerning particular subjects and raw research materials. But this "delivery" was wholly inadequate under the Contract for a host of reasons.

21. First, the majority of the information provided by Strategic Vision was entirely irrelevant. This is because even though Eastern had provided Strategic Vision specific identifying information regarding the particular subjects of the research, most of Strategic Vision's reports and research materials concerned different subjects, not the particular ones specified by Eastern. For example, even though Eastern provided detailed identifying information concerning two particular subjects, including among other things, their date of birth and their photographs, Strategic Vision provided lengthy reports – one of which was over 120 pages – on entirely *different* persons, with different dates of birth and different photographs.

22. Further, much of the data Strategic Vision provided consisted of publicly available information, including information available on Wikipedia and media sites, which could have been easily retrievable by Eastern itself. In addition, the data included neither forensic financial information, nor detailed tracking research, which were explicitly required under the Contract.

23. Following that delivery, Strategic Vision then continued to fail to deliver the Reports required by the Contract and to meet the clear schedule set forth therein.

24. On February 23, 2018, Eastern sent a letter to Strategic Vision terminating the Contract on the basis of Strategic Vision's breach, and demanding a return of its $1 million deposit.

25. Strategic Vision has till date failed to return the deposit to Eastern.

5

26. Upon information and belief, Strategic Vision has spent all of the $ 1 million deposit instead of holding it as a deposit against the payments owed by Eastern during the final 1.3 months of the Contract.

## COUNT I

### BREACH OF CONTRACT

27. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint.

28. The Contract is a valid and enforceable Contract between Eastern and Strategic Vision.

29. By Strategic Vision's actions and inactions described above, including, without limitation, by failing to provide high quality original research, failing to deliver the Reports concerning the subjects specified by Eastern and failing to meet the schedule set forth under the Contract, Strategic Vision has breached the Contract.

30. As a result of Strategic Vision's breach, Eastern has suffered substantial damages.

## COUNT II

### FRAUDULENT MISREPRESENTATION

31. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint.

32. Prior to entering into the Contract, representatives for Strategic Vision made the following representations to Eastern:

   a. That Strategic Vision had a highly skilled in-house team of investigators ready to conduct the detailed research Eastern required during a short time-frame;

   b. That its in-house team of investigators included former intelligence officers that were capable of conducting sophisticated financial tracking and asset tracing all

6

over the world, including in China without violating the laws of the countries in which they were operating; and

c. That it had represented other sophisticated clients in the past, including Republican politicians, a Middle Eastern prince, and a leader of the Russian opposition party.

33. Upon information and belief, Strategic Vision misrepresented its capabilities, expertise and resources.

34. Strategic Vision also told Eastern that Eastern's $1 million deposit would be used as a deposit against the last payments owed by Eastern at the end of the Contract. Upon information and belief, Strategic Vision also knew this statement to be false.

35. Upon information and belief, Strategic Vision made the above-mentioned misrepresentations to lure Eastern into entering into the Contract and pay Strategic Vision the $1 million deposit.

36. Eastern justifiably, reasonably and detrimentally relied on these representations by Strategic Vision in entering into the Contract because representatives of Strategic Vision held themselves out to be experts in the provision of investigative services.

37. As a result of Eastern's misrepresentations, Strategic Vision has suffered substantial damages in an amount to be determined at trial. Among other things, Eastern has lost three months of time that it could have spent working with another investigative company, and Eastern will now need to find another investigation company to carry out the work it had contracted Strategic Vision to complete.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief:

A. That Defendant Strategic Vision be held liable for the damages sustained by Plaintiff Eastern as a result of the claims asserted herein and the costs of this suit, including reasonable attorneys' fees at an amount to be determined at trial; and

B. Such other relief as the Court deems necessary and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

EASTERN PROFIT CORPORATION LIMITED,
By its attorneys,

_____
Peter A. Sullivan, Esq.
Shrutih V. Ramlochan-Tewarie, Esq. (*pro hac vice application to be submitted*)
FOLEY HOAG LLP
1540 Broadway, 23rd Floor
New York, NY 10036
psullivan@foleyhoag.com
stewarie@foleyhoag.com
Telephone: (646) 927-5500
Facsimile: (646) 927-5599

DATED:  MARCH 12, 2018