UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
———————————————————————————

EASTERN PROFIT CORPORATION LIMITED,

                Plaintiff-Counterclaim Defendant,

vs.

STRATEGIC VISION US, LLC,

                Defendant-Counterclaim Plaintiff,

vs.

GUO WENGUI a/k/a Miles Kwok,

                Counterclaim Defendant.

———————————————————————————

**AMENDED ANSWER AND** **<u>COUNTERCLAIMS</u>**

Case No. 18-cv-2185

        Defendant, Strategic Vision US, LLC ("Strategic Vision") for its amended answer and counterclaims to plaintiff, Eastern Profit Corporation Limited's ("Eastern") complaint:

        1.      Lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1.

        2.      Admits the allegations in paragraph 2, except denies that Strategic Vision's principal place of business is located at 7260 West Azure Drive, Suite 140-593, Las Vegas, Nevada.

        3.      Admits the allegations in paragraph 3.

        4.      Denies the allegations in paragraph 4, except admits that Strategic Vision participated in discussions with Guo Wengui, a/k/a Miles Guo, a/k/a Miles Kwok

("Mr. Guo") at his home at 781 Fifth Avenue, New York, New York , on matters related to the subject contract.

      5.      Admits the allegations in paragraph 5.

      6.      In answer to paragraph 6, admits that Eastern and Strategic Vision entered into a contract executed on January 6, 2018 and dated as of December 29, 2017, ("Contract"), and refers to the Contract for a true and accurate statement of its terms.

      7.      In answer to paragraph 7, refers to the Contract for a true and accurate statement of its terms.

      8.      Admits the allegations in paragraph 8.

      9.      Denies the allegations in paragraph 9.

      10.      Denies the allegations in paragraph 10.

      11.      Denies the allegations in paragraph 11.

      12.      Denies the allegations in paragraph 12.

      13.      Denies the allegations in paragraph 13.

      14.      Denies the allegations in paragraph 14.

      15.      Denies the allegations in paragraph 15.

      16.      Denies the allegations in paragraph 16.

      17.      Denies the allegations in paragraph 17, except admits that Strategic Vision and Mr. Guo mutually agreed that Strategic Vision's services under the Contract would be deemed to commence as of January 16.

      18.      Denies the allegations in paragraph 18.

      19.      Denies the allegations in paragraph 19.

20.    Denies the allegations in paragraph 20, except admits that upon Mr. Guo's unreasonable insistence, Strategic Vision delivered certain raw research and data to Eastern on January 30, 2018.

21.    Denies the allegations in paragraph 21.

22.    Denies the allegations in paragraph 22.

23.    Denies the allegations in paragraph 23.

24.    Denies the allegations in paragraph 24, except admits that Strategic Vision received a letter from Eastern's law firm purporting to terminate the Agreement.

25.    Denies the allegations in paragraph 25 insofar as they can be construed to allege an obligation on the part of Strategic Vision to return funds to Eastern.

26.    Denies the allegations in paragraph 26.

27.    In answer to paragraph 27, repeats and realleges the responses in paragraph 1 through 26 above.

28.    Admits the allegations in paragraph 28.

29.    Denies the allegations in paragraph 29.

30.    Denies the allegations in paragraph 30.

31.    In answer to paragraph 31, repeats and realleges the responses in paragraphs 1 through 30 above.

32.    Denies the allegations in paragraph 32.

33.    Denies the allegations in paragraph 33.

34.    Denies the allegations in paragraph 34.

35.    Denies the allegations in paragraph 35.

36.    Denies the allegations in paragraph 36.

37.     Denies the allegations in paragraph 37, except admits the allegations in the first sentence of paragraph 37 and denies the remaining allegations therein.

## FIRST DEFENSE

38.     The complaint fails to state a claim upon which relief can be granted.

## SECOND DEFENSE

39.     Relief cannot be accorded the parties of this action in the absence of ACA Capital Group Limited, which is the party that paid to Strategic Vision the funds that Eastern alleges to have paid as a deposit pursuant to the contract negotiated with Mr. Guo.

## THIRD DEFENSE

40.     Eastern is estopped from asserting the claim for breach of the Contract because, as alleged in Strategic Vision's counterclaims below, it hindered Strategic Vision's performance and purported to terminate the Agreement precipitously and without cause.

## FOURTH DEFENSE

41.     Eastern has failed to plead fraud and misrepresentation with particularity as required by Rule 9 of the Federal Rules of Civil Procedure.

## COUNTERCLAIMS

Strategic Vision, for its counterclaims against Eastern, alleges upon information and belief.

## PARTIES

42.     Strategic Vision is organized under the laws of the State of Nevada, with its principal place of business in Nevada.

43.     Strategic Vision is a consulting firm that performs research and analysis in the area of global competitive and political intelligence.  It was established in

2010 by principals who, as the result of decades of work in government and the private

sector, developed vast connections in multiple U.S. presidential administrations, both

houses of the U.S. Congress, the U.S. Department of Defense, the U.S. Department of

Energy, and many other government agencies in the U.S. and elsewhere.  Strategic Vision's

close working network of trusted resources extends to, among other places: Washington,

D.C.; Houston, Texas; Calgary, Canada; London, England; Abu Dhabi, United Arab

Emirates; Sydney, Australia; and Singapore.

      44.    Eastern is organized under the laws of Hong Kong, has a principal

place of business in Hong Kong and engages in business activities in the State of New York

and elsewhere in the United States.

      45.    Eastern's principal is believed to be counterclaim-defendant Guo

Wengui a/k/a Miles Kwok ("Mr. Guo"), a Chinese national who sought out Strategic

Vision to perform research and analytics on numerous Chinese Nationals whom Mr. Guo

and his undisclosed Chinese associates suspected to be engaged in activities in the United

States and elsewhere that are inconsistent with their standing in the Chinese Communist

Party and/or the laws of the United States.  Attached as Exhibit A is an article published on

October 3, 2017 by "The Real Deal - - -New York City Real Estate News" regarding Mr.

Guo and his "anti-communist rhetoric" and activities.

    **A.**      **THE AGREEMENT**

      46.    In or about December 2017, Mr. Guo was introduced to Strategic

Vision by one of his associates, Mr. Lianchao Han ("Mr. Lianchao").  Mr. Guo represented

to Strategic Vision that Mr. Lianchao and Ms. Yvette Wang a/k/a/ Yanping Wang ("Ms.

Y") each had authority to act for and on behalf of Mr. Guo.  Mr. Lianchao and Ms. Y also

served as Mr. Guo's interpreter, as Mr. Guo lacks a fluent command of the English language.

47.     Conversations between Strategic Vision and Mr. Guo concerning the scope and methods of Strategic Vision's work were facilitated by Mr. Lianchao and Ms. Y at Mr. Guo's home in New York City.

48.     During several conversations throughout December 2017, Strategic Vision informed Mr. Guo that (i) Strategic Vision's effectiveness would depend upon the quality of direction and information provided by Mr. Guo to Strategic Vision, (ii) Strategic Vision's work would be conducted in all respects consistent with the laws of the United States and it would not act on any requests of Mr. Guo that would require Strategic Vision to violate U.S. law, (iii) the work contemplated by Mr. Guo would require Strategic to engage subcontractors in Strategic Vision's global network of investigative professionals and analysts, and that organizing that network would take time, (iv) Strategic Vision's business processes and global network of investigators and analysts were Strategic Vision's proprietary and confidential business information, (v) the time within which results would be reported to Mr. Guo and the quality of those results could not be assured because of the claimed sensitive nature of the information sought by Mr. Guo, (vi) the exchange of information between Strategic Vision and Mr. Guo could only take place in person-to-person meetings, which would required extensive travel and time, and (vii) Mr. Guo must not take any action or request any service that would compromise the security of Strategic Vision's principals or its independent contractors.

49.     As discussions between Strategic Vision and Mr. Guo progressed, they agreed to an initial scope of work and fee schedule.  Without identifying any particular

entity by name, Mr. Guo informed Strategic Vision that he would cause his agreement with Strategic Vision to be entered into with a corporate entity controlled by him that he would fund as necessary to pay for Strategic Vision's services.  It was explicitly agreed that such entity would not be based out of the People's Republic of China or Hong Kong.

50.    Upon information and belief, Mr. Guo is the principal of Eastern.

51.    Upon information and belief, Eastern has little to no assets and is undercapitalized, and is unable to pay the amounts owed under the Agreement.

52.    Upon information and belief, Eastern is under the complete dominion and control of Mr. Guo.  Mr. Guo authorized Ms. Y to execute the Agreement on behalf of Eastern as its agent.

53.    Upon information and belief, Eastern has failed to abide by corporate formalities.

54.    Strategic Vision reasonably and foreseeably relied on Mr. Guo's promise in determining to enter the Agreement with Eastern as the counterparty.  Strategic Vision would not have entered into the Agreement but for Mr. Guo's promise that he would adequately fund Eastern.

55.    On January 2, 2018, without notice to Strategic Vision and contrary to express instructions from Strategic Vision to Mr. Guo, an entity named "ACA Capital Group Limited" ("ACA") wired USD $1,000,000 (less wire fees) from Hong Kong to Strategic Vision's long established bank account (the "ACA Payment").  Strategic Vision and Mr. Guo had agreed that Mr. Guo would use third companies, not based in Hong Kong or China, to send a $1,000,000 deposit prior to initiation of the Agreement.  Mr. Guo

provided no information to Strategic Vision regarding ACA or the nature of its association with Mr. Guo or Eastern, if any.

56.     Strategic Vision and Mr. Guo had repeatedly discussed implementing security measures in advance of wiring money to protect Strategic Vision from harassment from Communist Chinese authorities.  Contrary to those discussions, the ACA Payment was sent directly from Hong Kong to Strategic Vision, providing Chinese Communists with a direct electronic payment trail.

57.     On January 5, 2018, Ms. Y traveled to the home of a principal of Strategic Vision in the State of Virginia and engaged in discussions concerning the services sought by Eastern.  In that same location on January 6, 2018, Ms. Y, on behalf of Eastern, executed a certain "Research Agreement" which was also executed at that time by Strategic Vision (the "Agreement").  A copy of the Agreement is attached as Exhibit B.

58.     The Agreement includes the following provision:

> **Irregular Circumstances.** Both parties understand that occasional unforeseen challenges may arise that will slow or block comprehensive research, and that there may be periods in which information is irregular, unavailable, or incomplete. [Strategic Vision] will endeavor to make research and reports as complete as possible in a timely scheduled manner.

## B.     STRATEGIC VISION'S PERFORMANCE UNDER THE AGREEMENT

59.     Strategic Vision performed in all respects as required by the Agreement.

60.     Immediately, upon entering into the Agreement, Strategic Vision commenced its work under the Agreement by, among other activities, recruiting, vetting, engaging and marshaling the initial efforts of various investigators and analysts in the United States, Europe and the Middle East, identifying trusted Chinese/English translators

who are not Chinese nationals and analyzing initial data provided by Mr. Guo, without compromising or endangering the parties to the Agreement, or their respective principals and agents.

61.     As detailed further below, Mr. Guo's and Eastern's conflicting instructions, inaccessible attempted communications and bizarre behaviors created "irregular circumstances" that hindered and delayed Strategic Vison's work.  Ms. Guo's conduct in this regard was intentional.

62.     To facilitate Strategic Vision's work, it was incumbent upon Mr. Guo and Eastern to identify the subjects ( referred to by Eastern in the Agreement as "fish") of its desired research and analysis.  Despite agreeing that Mr. Guo and Eastern would prioritize no more than 10 subjects in each phase of Strategic Vison's work, Mr. Guo provided to Strategic Vision a list of 92 potential subjects with no prioritization.  Mr. Guo and Eastern then delayed in prioritizing their list of subjects, thus hindering Strategic Vision's work.

63.     On January 6, 2018, Eastern delivered to Strategic Vision a flash drive that purportedly included information necessary to facilitate Strategic Vision's work under the Agreement.  Using industry best practices, Strategic Vision procured and used a virgin lap top in an attempt to access the data purportedly included on Eastern's flash drive.  In doing so, Strategic Vision discovered that Eastern had provided to Strategic Vision an un-encrypted, unreadable, and electronically contaminated flash drive that contained unusual and sophisticated malware that attacked recipient computers.

64.     Strategic Vision took Eastern's flash drive to a cybersecurity expert who reported that he had never seen such malware before.  The malware originated from Eastern's team.  Strategic Vision then warned Eastern that its systems had been breached

and corrupted.  Despite repeated requests from Strategic Vision, Eastern failed to explain

why it had delivered to Strategic Vision corrupted and potentially very harmful or malicious

data files.

65.    During a meeting in New York City on January 8, Ms. Y delivered

another flash drive to Strategic Vision which again purportedly included data necessary to

Strategic Vision's work under the agreement.  A large part of such data (i.e. one of three

flash drives) was also corrupted.

66.    At the time that the Agreement was negotiated with Mr. Guo,

Strategic Vision and Mr. Guo expressly agreed that they would not meet in person again, to

prevent the Communist Chinese regime from observing their interactions.  Mr. Guo and

Eastern, however, repeatedly summoned Strategic Vision's principals to New York for

meetings and Mr. Guo invited them to future events aboard his yacht in Florida, despite

Strategic Vision's cautionary warnings.

67.    Based on information received from Eastern that was used in Strategic

Vision's investigatory work, Strategic Vision received warnings from computer experts and

authorities in three countries that Eastern's systems were infiltrated and compromised, that

Eastern's files compromised Mr. Guo's identity, and that individual Chinese Communists

had known in advance that they were objects of Eastern's interest.  Some of those

individuals had taken precautions to block research into their activities, and at least one of

them appeared to have laid a trap for Strategic Vision. This alarming  breach of Mr. Guo's

and Eastern's promise of security put members of Strategic Vision's team in potential

danger, and caused some to quit.

68.     Eastern's confusing and contradictory instructions regarding the number and identity of the subjects of Strategic Vision's work resulted in a list of fifteen names, contrary to the parties' agreement that Strategic Vision would work on ten subjects in each phase of its work.  In the preliminary phase of its work in connection with Eastern's first identified subjects, Strategic Vision learned that most of the individuals so identified by Eastern had been designated by the U.S. Department of State under the Obama administration as "Records Protected" persons, meaning that information concerning their status and activities was not subject to disclosure under any circumstances.  Strategic Vision learned that attempting to research subjects known to be "Records Protected" could be a criminal activity, and so alerted Eastern.

69.     Communications among Eastern and Strategic Vision were hindered by Mr. Guo's conflicting instructions.  After describing Mr. Lianchao and Ms. Y as trusted business associates, Mr. Guo shortly thereafter advised Strategic Vision to refrain from communicating with Mr. Lianchao because he was not trustworthy and to communicate with Ms. Y., who Mr. Guo oddly advised was a member of the Chinese Communist Party who also could not be trusted.  During negotiations for what became the Agreement, Mr. Guo once banished Ms. Y from the premises so that Strategic Vision could speak privately with Mr. Guo, with Mr. Lianchao serving as interpreter.  Strategic Vision independently learned that Ms. Y's husband and other close family members are Communist Chinese police or authorities.  Given Mr. Guo's general lack of accessibility, his failure to ensure trusted channels of communication between Strategic Vision and Eastern hindered Strategic Vision's work under the Agreement.

70.     Within the first weeks of what was to be a multi-faceted and complex year-long effort under the Agreement, Strategic Vision verbally reported to Mr. Guo and Eastern that Strategic Vision could not within the limits of U.S. law obtain the information sought by Eastern on its initial list of subjects and that Strategic Vision's work would be refocused on others on Eastern's list.  As a result, Mr. Guo became enraged and irrationally insisted that Strategic Vison immediately deliver its work product for his and Eastern's review.

71.     In response to Mr. Guo's demand, Strategic Vision explained that the "irregular circumstances" caused by Eastern precluded Strategic Vision from collecting and analyzing collected data and that the small amount of raw data developed to that point was not in a comprehensible form that would be of material use to Eastern.  In the face of Eastern's insistence, however, Strategic Vision hand delivered its raw data to Mr. Guo and Eastern on January 26, 2018 with the caveat that it would be of no use to Eastern until Strategic Vision had an opportunity to analyze it and produce a formal report.

72.     Strategic Vision communicated to Eastern each of the above alleged irregular circumstances.  While Eastern acknowledged the problems, it did nothing to address them.

73.     Strategic Vision, Mr. Guo and Eastern had agreed from the beginning of their conversations and both understood that there would be unforeseen delays and difficulties in procuring information on the challenging task desired by Mr. Guo and Eastern.  They agreed to work cooperatively when such delays arose.  An entire section of the Agreement memorializes this understanding and agreement.  The parties expressly understood that there could be severe and unforeseen delays, as well as times when no

information could be discovered or reported at all.  Eastern agreed in writing that such delays were foreseen and that the parties  would work through them.

74.    Eastern surreptitiously and illegally attempted to reverse the ACA Payment by communicating directly with Strategic Vision's bank during the time period when Strategic Vision was rendering services to Eastern and before Eastern was finding ways to execute Eastern's project in compliance with U.S. law, Eastern was working behind Strategic Vision's back to deprive it of payment for its services.

### FIRST COUNTERCLAIM
### (Breach of Contract--Eastern and Mr. Guo)

75.    Strategic Vision repeats and realleges paragraphs 1 through 74 above.

76.    Pursuant to the Agreement, Eastern agreed to pay to Strategic Vision a fee of $750,000 per month for Strategic Vision's work while under the Agreement commencing on January 6, 2018.

77.    Strategic Vision rendered services to Eastern as required by the Agreement.

78.    The Agreement provides that either party may terminate it upon "'30 days' written notice."

79.    By letter dated February 23, 2018, counsel for Eastern provided notice of Eastern's termination of the Agreement "pursuant to the [Agreement's] 'Duration' Section."

80.    Consequently, the Agreement was terminated as of March 21, 2018. At the time of such termination, Eastern was obligated to pay to Strategic Vision the amount of $1,838,709.75, computed as follows:

| Period | Number of Days | Per Diem | Total |
| --- | --- | --- | --- |

| | | | |
|---|---|---|---|
| January 6-31 | 25 | $24,193.55 | $604,838.75 |
| February 1-28 | N/A | N/A | $750,000.00 |
| March 1-21 | 20 | $24,193.55 | <u>$483,871.00</u> |
| | | | $1,838,709.75 |

81.     Assuming that the ACA payment was made on Eastern's behalf, the amount of $838,709.75 was due and payable from Eastern to Strategic Vision as of March 21, 2018.

82.     Eastern has breached the Agreement by failing to pay to Strategic Vision $838,709.75 due upon Eastern's termination of the Agreement.

83.     Eastern is under the complete dominion and control of Mr. Guo.  Mr. Guo has exercised control over Eastern to withhold payment to Strategic Vision of the amounts owed under the Agreement, resulting in an injury to Strategic Vision.

84.     In addition, Eastern has little to no assets and is undercapitalized, and is unable to pay the amounts owed under the Agreement.

85.     Eastern is the alter ego of Mr. Guo.  Accordingly, Mr. Guo is liable for the amounts owed by Eastern under the Agreement.

86.     Strategic Vision is entitled to judgment against Eastern and Mr. Guo in the amount of $838,709.75, plus interest at the State of New York's statutory rate for the period March 21, 2018 through the date that judgment is filed.

## SECOND COUNTERCLAIM
### (Promissory Estoppel--Mr. Guo)

87.     Strategic Vision repeats and realleges paragraphs 1 through 86 above.

88.     The Agreement was negotiated entirely between representatives of Strategic Vision and Mr. Guo personally at Mr. Guo's home, or his agents at his specific instruction.  During the negotiations, Mr. Guo promised Strategic Vision that he would

adequately fund Eastern such that it could meet its financial obligations under the Agreement.

89.     Strategic Vision reasonably and foreseeably relied on Mr. Guo's promise in determining to enter the Agreement with Eastern as the counterparty.   In performing under the Agreement, Strategic Vision provided unique services and incurred significant expenses in reliance on Mr. Guo's promise.

90.     Eastern has little to no assets and is undercapitalized, and is unable to pay the amounts owed under the Agreement.

91.     Strategic Vision would not have entered into the Agreement but for Mr. Guo's promise that he would adequately fund Eastern.  Accordingly, Strategic Vision has been harmed by its reasonable and foreseeable reliance on Mr. Guo's promise, which he has failed to fulfill.

92.     Mr. Guo is liable for the damages sustained by Strategic Vision as the result of its detrimental reliance on his promise in connection with the Agreement.

93.     Strategic Vision is entitled to judgment against Mr. Guo in the amount of $838,709.75, plus interest at the State of New York's statutory rate for the period March 21, 2018 through the date that judgment is filed.

## THIRD COUNTERCLAIM
### (Tortious Interference--Mr. Guo)

94.     Strategic Vision repeats and realleges paragraphs 1 through 93 above.

95.     Mr. Guo had knowledge of the Agreement, as principal of Eastern and its primary point of contact.

96.     Mr. Guo intentionally engaged in a pattern of irrational conduct with respect to the Agreement, including providing conflicting instructions to Strategic Vision

and attempting communications that were inaccessible.  Mr. Guo's conduct hindered Strategic Vision's ability to continue performing under the Agreement.

97.     Mr. Guo intentionally interfered with the Agreement by his irrational conduct and expectations that were inconsistent with the terms of the Agreement, and by his insistence that Strategic Vision conduct its research in a manner that would violate U.S. Law.

98.     Strategic Vision has been damaged by Mr. Guo's conduct, in an amount to be determined at trial.

WHEREFORE, the Defendant demands judgment (i) dismissing plaintiff's complaint; (ii) granting the relief request in the counterclaims; and (iii) granting such other and further relief as to the Court deems just, equitable and proper.

Dated:   September 17, 2018
       Buffalo, New York

PHILLIPS LYTLE LLP

By /s/ David J. McNamara_____
    David J. McNamara
    Heather H. Kidera
Attorneys for Defendant-Counterclaim Plaintiff
*Strategic Vision US LLC*
125 Main Street
Buffalo, New York 14203-2887
Telephone No. (716) 847-8400
dmcnamara@phillipslytle.com
hkidera@phillipslytle.com

Doc #05-498173

- 16 -