

**Phillips Lytle LLP**

<u>Via ECF</u>                                                                                                   January 8, 2019

Honorable John G. Koeltl
United States District Court
Southern District of New York
50 Pearl St., Courtroom 14A
New York, NY 10007-1312

    Re:    Eastern Profit Corporation Limited v. Strategic Vision US, LLC,
             Civil Action No. 18-cv-2185

Dear Judge Koeltl:

We represent defendant-counterclaim plaintiff, Strategic Vision US, LLC ("Strategic Vision"), in the above-referenced matter. Strategic Vision submits this letter to provide to Your Honor relevant background regarding a discovery dispute [ECF Doc. No. 63] that will be the subject of a Local Rule 37.2 conference that is presently scheduled for January 9, 2019 at 10:30 a.m. [ECF Doc. No. 64]. By letter dated January 7, 2019 Strategic Vision has requested that the conference be adjourned to one of the alternative dates provide in such letter.

The discovery dispute concerns plaintiff Eastern Profit Corporation Limited's ("Eastern") request that Strategic Vison disclose the highly confidential identities of certain of the subcontractors used by Strategic Vision in performing work under the parties' agreement. As explained further below, such request is contrary to the parties' express agreement that Strategic Vision would not under any circumstances be required to disclose its methods and sources.

<u>Background</u>

By way of background, Strategic Vision is a strategic consulting and research firm. Among its areas of expertise are strategic research and competitive intelligence. Strategic Vision, through its two representatives French Wallop and Dr. J. Michael Waller, possesses a vast range of global connections in various sectors, including manufacturing, defense, governments, and banking. They maintain a close working network with trusted partners in, among other places, Washington, D.C., Houston, Calgary, London, Geneva, Abu Dhabi, Doha, Sydney, and Singapore. Over a forty-year period, Ms. Wallop has developed and maintained connections within many presidential administrations, Congress, the Department of Defense, the Department of Energy, and other government agencies in the United States and elsewhere. Dr. Waller

ATTORNEYS AT LAW

340 MADISON AVENUE  17TH FLOOR  NEW YORK, NY 10173-1922  PHONE 212 759 4888  FAX 212 308 9079
NEW YORK: ALBANY, BUFFALO, CHAUTAUQUA, GARDEN CITY, NEW YORK, ROCHESTER | WASHINGTON, DC | CANADA: WATERLOO REGION | PHILLIPSLYTLE.COM



Honorable John G. Koeltl  January 8, 2019
Page 2

holds a PhD in international security affairs and possesses more than thirty years of experience in international communication, ranging from journalism, public policy, education, public diplomacy, political warfare, and defense and national security affairs. Dr. Waller has authored or edited eight books and numerous articles in his areas of expertise. Ms. Wallop and Dr. Waller have spent decades investing in their largely confidential network of relationships, and building their reputations for utmost discretion and regard for agreed upon confidentiality. Indeed, confidentiality, credibility and discretion are the critical aspects of the professional endeavors to which they have dedicated their lives.

This is no garden variety discovery dispute. The stakes are revealed through several real life examples arising from Dr. Waller's past work involving countries with weak rule of law. For example, he is a founding member of the editorial board of a scholarly journal, *Demokratizatsiya: The Journal of Post-Soviet Democratization*, which is published in cooperation between the American University and Moscow State University. Two of his fellow editorial board members were assassinated when their identities and connection to anti-corruption activities became known.[1]

It is no secret that forces within the Chinese Communist party have demonstrated a similar propensity for ruthlessness. Given the subjects of the research that Mr. Guo directed Strategic Vision to conduct, the threat of harm to those hired by Strategic Vision to provide information known or to be developed is very real. It is for that reason that those individuals insisted upon maintaining anonymity, and that Eastern agreed that the identities of those individuals would not be revealed to Eastern or any other party for any reason.

### *The Agreement*

The Research Agreement ("Agreement") that is at the center of this dispute concerns the engagement of Strategic Vision to perform research and analytics on numerous Chinese Nationals that were to be identified by counterclaim defendant Guo Wengui ("Mr. Guo"). Eastern was fully aware prior to entering into the Agreement that the services to be provided by Strategic Vision were unique and, by their very nature, required the

---

[1] Editorial board member Galina Starovoitova was assassinated in 1998 while investigating official corruption in Vladimir Putin's inner circle before Putin took control of the Kremlin. Editorial board member Yuri Shchekochikhin, a prominent Russian journalist and deputy editor of *Novaya Gazeta*, was assassinated in 2003 while investigating official corruption and Putin's waging of the Chechnya war.



utmost level of confidentiality, secrecy and compartmentalization. In particular, the parties understood that the sources and contractors used by Strategic Vision in connection with the Agreement could not, under any circumstances, be disclosed to anyone. Indeed, Eastern and its representative Mr. Guo insisted upon this highly-confidential and compartmentalized arrangement, to the point that, even when offered a general description to provide Mr. Guo with a level of confidence in Strategic Vision's work, Mr. Guo insisted on not knowing. Further, the Agreement itself provides in its second paragraph, that **"[b]oth parties agree that the nature of this contract, and work related to it, is highly confidential. Both parties are bound by the strictest secrecy not to disclose . . . sources and methods used to execute the contract; and participating in formulating, supervising, or executing the contract's provisions . . . ."** (Emphasis in the original).

Based on the geographic location where much of the research for Mr. Guo would be done, plus the nature of the subjects of the work, Strategic Vision developed extreme precautions to protect all involved in its primary team so that they could never be identified. Those precautions included using cutouts, leaving no electronic trail, and exchanging documents and other information in face-to-face meetings. The purpose was to protect all parties against organized criminal elements and the Chinese security and intelligence services. Strategic Vision gave Mr. Guo a general outline of these precautions, which Mr. Guo understood and very willingly approved in advance of the Agreement.

### *Eastern Is Not Entitled to the Confidential Information Sought*

Given the foregoing, Eastern cannot now claim that it is entitled to know the identities of Strategic Vision's subcontractors. First, forcing Strategic Vision to provide such information would violate the terms of the Agreement and the parties' expectations in entering into same. Moreover, it would force Strategic Vision to breach its obligations of confidentiality to third parties, which would result in serious damage to the reputation of Strategic Vision, and its representatives, in a sector where discretion and respecting confidentiality is paramount. Third, and most importantly, it would place the physical safety of members of the research teams in grave danger.

Eastern's assertion that such information is necessary to its case is incorrect. The specific identity of certain of Strategic Vision's subcontractors is wholly unnecessary to the prosecution or defense of this case as there is sufficient other evidence to



Honorable John G. Koeltl  January 8, 2019
Page 4

demonstrate that Strategic Vision complied with the terms of the Agreement in all respects. Eastern will be able to depose and cross-examine Strategic Vision's representatives on what they did and when they did it. At worst, the unavoidable inability to identify the names of certain subcontractors without irreparable harm to them and Strategic Vision – and, indeed, the impossibility of identifying certain contractors given the security system developed with Mr. Guo's approval – could understandably bear upon the evidentiary weight to be given to Strategic Vision's proof. The probative value of that information, however, is far outweighed by the harm of ignoring the parties' express agreement that such information would remain confidential to Strategic Vision in all circumstances -- and the sound rationale for that agreement given the indisputably sensitive and confidential nature of the methods and sources utilized in Strategic Vision's work. Thus, Eastern is not entitled to the highly-confidential information that it seeks in violation of the Agreement and the parties' extensive conversations prior to the Agreement.

Notably, Strategic Vision anticipated that the parties would encounter issues of this nature in litigation and, at the inception of this dispute, suggested to Eastern that this case be submitted to arbitration. Eastern refused. It is evident that Eastern is pursuing prohibited public disclosure of Strategic Vision's confidential sources and methods to gain leverage over Strategic Vision, or in an effort to deploy those methods and sources on its own behalf.

We look forward to discussing these issues further with Your Honor at the January 9 conference.

Respectfully submitted,

Phillips Lytle LLP

By /s/ *David J. McNamara*

David J. McNamara
cc: Counsel of Record (by ECF)

Doc #05-520119.43