UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

EASTERN PROFIT CORPORATION LIMITED,

    *Plaintiff-Counterclaim Defendant*,

vs.                                                                                          Case No. 18-cv-2185 (JGK)

STRATEGIC VISION US, LLC,

    *Defendant-Counterclaim Plaintiff*,

GUO WENGUI a/k/a MILES KWOK,

    *Counterclaim Defendant.*

## SECOND AMENDED COMPLAINT

Plaintiff Eastern Profit Corporation Limited ("Eastern") for its Second Amended Complaint (the "complaint") against defendant Strategic Vision US, LLC ("Strategic Vision"), alleges as follows:

## PARTIES

1. Plaintiff Eastern is organized under the laws of Hong Kong and has a principal place of business in Hong Kong.

2. Upon information and belief, Defendant Strategic Vision is incorporated under the laws of Nevada, with its principal place of business in Arlington, Virginia.

## JURISDICTION AND VENUE

3. The Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between the citizen of a state and the citizen of a foreign state.

1

4. The Court has personal jurisdiction because the contract underlying this complaint was negotiated in New York, Strategic Vision regularly sent communications regarding the contract to Eastern in New York, and Strategic Vision delivered reports pursuant to the contract to Eastern in New York.

5. Venue is proper in this district pursuant to 28 U.S.C. § 1391 in that a substantial part of the events giving rise to the claim occurred in this district, including that the contract was negotiated in this district, Strategic Vision regularly sent communications to Eastern regarding the contract in this district, and Strategic Vision delivered reports to Eastern pursuant to the contract in this district.

**FACTS**

6. On January 6, 2018, Plaintiff Eastern and Defendant Strategic Vision entered into a contract (the "Contract"), pursuant to which Strategic Vision promised that it would, among other things, conduct "high quality original research" and would provide detailed forensic financial reports, reports detailing tracking research, and reports detailing social media research concerning specific subjects as described in the Contract (the "Reports"). A copy of the Contract is annexed hereto as Exhibit A. The Contract provided that Strategic Vision was to deliver Reports concerning the specific subjects on a weekly basis over the course of the first month, and no less than on a monthly basis thereafter.

7. The Contract was executed in the State of Virginia on or about January 6, 2018.

8. The Contract was negotiated during several meetings between representatives of Eastern and Strategic Vision in New York and Virginia, and Strategic Vision sent various communications to Eastern's representatives in New York to finalize the terms of the Contract.

9. The CEO and sole member of Strategic Vision is French Wallop.

10. J. Michael Waller is a friend and business colleague of French Wallop.

11. Prior to entering into the Contract, Strategic Vision stated to Eastern several times that it could "guarantee" that it had the resources, experience and capability to provide the type of sophisticated research Eastern required.

12. Strategic Vision represented to Eastern that it had an in-house team of investigators that was highly skilled and included former National Security Agency (NSA) officers and other ex-intelligence officers ready to conduct the research Eastern needed during a short timeframe.

13. In addition, because Strategic Vision knew that Eastern was particularly interested in an agency that could conduct investigative research abroad, including in China, Strategic Vision also represented to Eastern that its investigators could conduct investigative research all over the world, including in Asia, without violating the laws of the country in which they were operating.

14. Strategic Vision represented to Eastern that it had previously provided investigative services for Republican politicians, a Middle Eastern prince, and a politician belonging to the opposition party in Russia.

15. Strategic Vision further represented that its investigators were capable of researching and collecting sophisticated financial tracking and asset tracing information. To showcase its capabilities, Strategic Vision provided Eastern with a sample report, which appeared to show that Strategic Vision could enter into banking systems and find evidence of money laundering.

16. Eastern entered into the Contract in reliance on those representations by Strategic Vision.

17. Upon the representations and promises made by Strategic Vision's representatives, Eastern also committed a substantial amount of resources in good faith and

paid Strategic Vision $1 million in advance as a deposit in connection with the Contract. Strategic Vision represented, and the Contract provided, that Eastern's $1 million deposit would be used as a deposit against the last payments owed by Eastern during the final 1.3 months of the Contract.

18. However, immediately after the Contract was executed, it became clear that Strategic Vision had misrepresented its capabilities, resources, expertise and prior experiences.

19. Because of what Strategic Vision described as an "internal miscommunication" on the part of Strategic Vision's representatives, the start of the Contract had to be delayed by 10 days, from January 6, 2018 to January 16, 2018.

20. Eastern agreed to the extension of time with the hope that things would move smoothly going forward. That hope was short-lived. Even with this additional time, Strategic Vision failed to deliver its initial sets of weekly reports on time as required by the clear terms of the Contract. As an excuse for its non-performance, Strategic Vision claimed it had "mistakenly" believed that the initial 90 days following the formation of the Contract would merely be for "starting up and developing the data" even though such a professed belief was not consistent with the plain terms of the Contract.

21. This delay was caused in part by the fact that Strategic Vision did not actually have an in-house team of investigators ready to conduct the research Eastern needed at the time that the parties entered into the Contract.

22. At the time the Contract was executed, Strategic Vision's only investigator was its CEO French Wallop – Strategic Vision had no employees.

23. In violation of the Contract's terms and its express representations to Eastern, Strategic Vision relied upon independent contractors to provide investigative research for it.

24. On or about January 30, 2018, Strategic Vision made its first delivery under the Contract to a representative of Eastern in New York. The delivery consisted of a combination of reports concerning particular subjects and raw research materials. But this "delivery" was wholly inadequate under the Contract for a host of reasons.

25. First, the majority of the information provided by Strategic Vision was entirely irrelevant. This is because even though Eastern had provided Strategic Vision specific identifying information regarding the particular subjects of the research, most of Strategic Vision's reports and research materials concerned different subjects, not the particular ones specified by Eastern. For example, even though Eastern provided detailed identifying information concerning two particular subjects, including among other things, their date of birth and their photographs, Strategic Vision provided lengthy reports - one of which was over 120 pages - on entirely *different* persons, with different dates of birth and different photographs.

26. Further, much of the data Strategic Vision provided consisted of publicly available information, including information available on Wikipedia and media sites, which could have been easily retrievable by Eastern itself. In addition, the data included neither forensic financial information, nor detailed tracking research, which were explicitly required under the Contract.

27. Following that delivery, Strategic Vision then continued to fail to deliver the Reports required by the Contract and to meet the clear schedule set forth therein.

28. On February 23, 2018, Eastern sent a letter to Strategic Vision terminating the Contract on the basis of Strategic Vision's breach, and demanding a return of its $1 million deposit.

29. Strategic Vision has still to date failed to return the deposit to Eastern.

## COUNT I

## BREACH OF CONTRACT

30. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint.

31. The Contract is a valid and enforceable Contract between Eastern and Strategic Vision.

32. By Strategic Vision's actions and inactions described above, including, without limitation, by failing to provide high quality original research, failing to deliver the Reports concerning the subjects specified by Eastern and failing to meet the schedule set forth under the Contract, Strategic Vision has breached the Contract.

33. As a result of Strategic Vision's breach, Eastern has suffered substantial damages.

## COUNT II

## FRAUDULENT MISREPRESENTATION

34. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint.

35. Prior to entering into the Contract, representatives for Strategic Vision made the following representations to Eastern:

   a. That Strategic Vision had a highly skilled in-house team of investigators ready to conduct the detailed research Eastern required during a short time-frame;

   b. That its in-house team of investigators included former intelligence officers that were capable of conducting sophisticated financial tracking and asset tracing all over the world, including in China without violating the laws of the countries in which they were operating; and

    c. That it had represented other sophisticated clients in the past, including Republican politicians, a Middle Eastern prince, and a leader of the Russian opposition party;

36. Specifically, in middle to late December of 2017, Strategic Vision (through French Wallop and J. Michael Waller) verbally told representatives of Eastern (including Yvette Wang) in person that Strategic Vision had a highly skilled team of in-house investigators ready to conduct detailed research in a short period of time. Strategic Vision made these representations repeatedly at in person meetings which occurred at Guo Wengui's apartment at the Sherry-Netherland at 781 5th Ave, New York, NY 10022 and at French Wallop's home in Arlington, Virginia. In making these representations, Strategic Vision often described its supposedly highly skilled team of in-house investigators as "our people."

37. Specifically, in middle to late December of 2017, Strategic Vision (through French Wallop and J. Michael Waller) verbally told representatives of Eastern (including Yvette Wang) in person that Strategic Vision employed former intelligence officers to conduct investigatory research. Strategic Vision made these representations repeatedly at meetings which occurred at Guo Wengui's apartment at the Sherry-Netherland at 781 5th Ave, New York, NY 10022 and at French Wallop's home in Arlington, Virginia.

38. Specifically, in middle to late December of 2017, Strategic Vision (through French Wallop and J. Michael Waller) verbally told representatives of Eastern (including Yvette Wang) in person that Strategic Vision could access financial records of a specific financial institution based in China to obtain financial information about individual research targets. Strategic Vision made this representation at a meeting which occurred at Guo Wengui's apartment at the Sherry-Netherland at 781 5th Ave, New York, NY 10022.

39. Specifically, in late November or December of 2017, Strategic Vision (through French Wallop) verbally told representatives of Eastern (including Guo Wengui) in

7

person that Strategic Vision had provided investigatory research to a Russian opposition leader, royal families from countries in the Middle East, government officials from the Middle East, and Republican politicians. At that meeting, which occurred in Guo Wengui's apartment at the Sherry-Netherland at 781 5th Ave, New York, NY 10022, French Wallop hand wrote a list of eight individuals from the Middle East on a piece of paper, and verbally stated that the individuals listed on the piece of paper were clients of Strategic Vision which Strategic Vision had provided with investigatory research services.

40. The representations described in paragraphs 35-39 above misrepresented Strategic Vision's capabilities, expertise and resources to Eastern.

41. In reality, Strategic Vision had no in-house investigators (other than its CEO French Wallop), did not employ any former intelligence officers, could not conduct sophisticated financial tracking at a high level in a short period of time, and had not provided investigatory research to the client list it had provided to Eastern.

42. Strategic Vision also told Eastern that Eastern's $1 million deposit would be used as a deposit against the last payments owed by Eastern at the end of the Contract. Strategic Vision also knew this statement to be false.

43. Strategic Vision made the above-mentioned misrepresentations to lure Eastern into entering into the Contract and into paying Strategic Vision the $1 million deposit.

44. Eastern justifiably, reasonably and detrimentally relied on these representations by Strategic Vision in entering into the Contract because representatives of Strategic Vision (French Wallop and J. Michael Waller) held themselves out to be experts in the provision of investigative services.

45. As a result of Strategic Vision's misrepresentations, Eastern has suffered substantial damages in an amount to be determined at trial. Among other things, Eastern has lost three months

of time that it could have spent working with another investigative company, and Eastern will now need to find another investigation company to carry out the work it had contracted Strategic Vision to complete.

## COUNT III

## DECLARATORY JUDGMENT THAT THE CONTRACT IS ILLEGAL AND VOID AS AGAINST PUBLIC POLICY

46. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint.

47. Strategic Vision provides private investigatory research to clients within the United States in exchange for monetary compensation.

48. As part of its investigations, Strategic Vision makes investigations into crimes and civil wrongs; the location, disposition, and recovery of stolen property; and the cause(s) of injuries to persons or to property.

49. As part of its investigations, Strategic Vision makes investigations into the identities, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation and character of individuals.

50. As part of Strategic Vision's investigations, Strategic Vision's CEO French Wallop communicates with her network of contacts within the United States government and the United States business community in order to obtain the information concerning the subjects of Strategic Vision's investigations.

51. Since it was founded, Strategic Vision has conducted at least five private investigations for its clients.

52. Prior to the execution of the Contract, Strategic Vision represented to Eastern that Strategic Vision could conduct a private investigation into up to 10 individuals at a time.

9

53. Prior to the execution of the Contract, Strategic Vision represented to Eastern that Strategic Vision could monitor the activities of those 10 individuals to understand their habits, patterns, personal and professional networks, businesses, and if they were corrupt and engaging in criminal activities and/or civil wrongs.

54. Prior to the execution of the Contract, Strategic Vision represented to Eastern that Strategic Vision could use such monitoring abilities to protect people from harm and in connection with asset recovery efforts.

55. Prior to the execution of the Contract, Strategic Vision presented Eastern with a free private investigative research report on an individual identified by Eastern in order to demonstrate Strategic Vision's investigative abilities.

56. The Contract is a contract whereby Strategic Vision agreed to perform a private investigation into individuals identified by Eastern.

57. The stated purpose of the Contract was to detect, stop, and prevent crime or other harm to innocent people.

58. In the Contract, Strategic Vision agreed that it would provide Eastern with financial forensic historical research on up to 15 individuals during the first month of the Contract, and financial forensic historical research on up to 10 individuals during the remaining months of the Contract.

59. Financial forensic historical research was to consist of in depth and detailed reports concerning the historical business and financial transactions of the individuals to be researched to, among other things, determine the location of stolen funds, detect crimes and government corruption.

60. In the Contract, Strategic Vision agreed that it would provide Eastern with current tracking research on up to 15 individuals during the first month of the Contract, and current tracking research on up to 10 individuals during the remaining months of the Contract.

61. Current tracking research was to consist of in depth and detailed reports concerning the on the movements, schedules, addresses and lodging, means of transportation, names of carriers, manifests, geolocation, major events, significant contacts, and video and audio recordings of the individuals to be researched.

62. In the Contract, Strategic Vision agreed that it would provide Eastern with social media research on up to 15 individuals during the first month of the Contract, and social media research on up to 10 individuals during the remaining months of the Contract.

63. Social media research was to consist of in depth and detailed reports concerning the social media usage and networks of the individuals to be researched and also included research on court records, crimes, civil wrongs, criminal databases, sex offender and child abuse databases, information on the individuals' family and relationships, identification documents, as well as other video and audio recordings of the individuals to be researched.

64. The Contract provides that Strategic Vision alone will perform the research described in the Contract, and that Strategic Vision would not disclose the Contract or any of the research relating to it, to any third party.

65. After the Agreement was executed, Eastern provided Strategic Vision with the names of the 15 individuals to be researched during the first month of the Contract, along with relevant information concerning those 15 individuals (the "Subject List").

66. Several of the 15 individuals identified in the Subject List were located within the United States.

67. After receipt of the Subject List, Strategic Vision's divided its investigation into the 15 individuals identified therein into two portions.

68. French Wallop, out of her home located in Arlington, Virginia, handled the United States based portion of the investigation into the 15 individuals identified in the Subject List.

69. J. Michael Waller handled the non-United States based portion of the investigation into the 15 individuals identified in the Subject List.

70. Upon receipt of the Subject List, Strategic Vision began verifying and cross checking the information provided in the Subject List.

71. After receiving the Subject List, French Wallop (on behalf of Strategic Vision) began communicating with numerous individuals in her contact network to verify and cross check the information provided in the Subject List. Some of these communications occurred in Virginia and Washington, D.C.

72. After receiving the Subject List, French Wallop (on behalf of Strategic Vision) had in person meetings with, and made phone calls to, persons in Virginia and Washington D.C., to verify and cross check the information provided in the Subject List.

73. After receiving the Subject List, French Wallop (on behalf of Strategic Vision) communicated her contacts within the Central Intelligence Agency and the U.S. State Department to obtain information about the 15 individuals identified in the Subject List. Some of these communications occurred in Virginia and Washington, D.C.

74. After receiving the Subject List, French Wallop (on behalf of Strategic Vision) began communicating with numerous individuals in her contact network to collect and gather identifying and detailed information concerning the 15 individuals identified in the Subject List. Some of these communications occurred in Virginia and Washington, D.C.

75. After receiving the Subject List, French Wallop (on behalf of Strategic Vision), obtained identifying and detailed information from her contact network concerning the 15 individuals identified in the Subject List. Some of such identifying and detailed information was obtained from sources located in Virginia and Washington, D.C.

76. After receiving the Subject List, Strategic Vision began verifying and cross checking the information provided in the Subject List by accessing records in the United States, including background checks, credit reports, state department records, and social security administration records, among other records.

77. Strategic Vision's investigation process allowed Strategic Vision to determine that some of the information in the Subject List was incorrect or inaccurate, but that some of the information in the Subject List was actually correct or accurate.

78. Strategic Vision's investigation process uncovered information about the familial and business relationships of at least one individual identified in the Subject List.

79. Strategic Vision's investigation process uncovered information about the address history of at least one of the individuals identified in the Subject List.

80. Strategic Vision's investigation process uncovered information about the nicknames or aliases of at least one of the individuals identified in the Subject List.

81. Strategic Vision's investigation process uncovered information about how at least one of the individuals identified in the Subject List had kept changing his/her name(s).

82. Strategic Vision's investigation process uncovered information about the location of businesses managed by at least one of the individuals identified in the Subject List.

83. After the Contract was executed, French Wallop and J. Michael Waller began meeting in person on a frequent basis in Virginia to discuss the progress of the investigation contemplated by the Contract and to coordinate Strategic Vision's investigatory efforts.

84. At those in person meetings in Virginia, French Wallop and J. Michael Waller discussed strategies to uncover information about the individuals on the Subject List and exchanged information to verify the identities of the individuals on the Subject List.

85. Upon information and belief, French Wallop and J. Michael Waller met in person on a frequent basis in Virginia at least five separate times to discuss the progress of the investigation contemplated by the Contract and to coordinate Strategic Vision's investigatory efforts.

86. After receipt of the Subject List, Strategic Vision also hired independent contractors within the United States and outside the United States to perform private investigatory research into the 15 individuals identified in the Subject List.

87. Those independent contractors gave the results of their private investigations to Strategic Vision.

88. Strategic Vision was not a licensed private investigator under the laws of the state of Nevada between January 1, 2017 and December 31, 2018.

89. Strategic Vision was not a licensed private investigator under the laws of the Commonwealth of Virginia between January 1, 2017 and December 31, 2018.

90. Strategic Vision was not a licensed private investigator under the laws of the state of New York between January 1, 2017 and December 31, 2018.

91. Strategic Vision was not a licensed private detective under the laws of the District of Columbia between January 1, 2017 and December 31, 2018.

92. Strategic Vision was not a licensed private investigator or detective under the laws of any state or jurisdiction within the United States between January 1, 2017 and December 31, 2018.

93. French Wallop was not a licensed private investigator under the laws of the state of Nevada between January 1, 2017 and December 31, 2018.

94. French Wallop was not a licensed private investigator under the laws of the Commonwealth of Virginia between January 1, 2017 and December 31, 2018.

95. French Wallop was not a licensed private investigator under the laws of the state of New York between January 1, 2017 and December 31, 2018.

96. French Wallop was not a licensed private detective under the laws of the District of Columbia between January 1, 2017 and December 31, 2018.

97. French Wallop was not a licensed private investigator or detective under the laws of any state or jurisdiction within the United States between January 1, 2017 and December 31, 2018.

98. J. Michael Waller was not a licensed private investigator under the laws of the state of Nevada between January 1, 2017 and December 31, 2018.

99. J. Michael Waller was not a licensed private investigator under the laws of the Commonwealth of Virginia between January 1, 2017 and December 31, 2018.

100. J. Michael Waller was not a licensed private investigator under the laws of the state of New York between January 1, 2017 and December 31, 2018.

101. J. Michael Waller was not a licensed private detective under the laws of the District of Columbia between January 1, 2017 and December 31, 2018.

102. J. Michael Waller was not a licensed private investigator or detective under the laws of any state or jurisdiction within the United States between January 1, 2017 and December 31, 2018.

103. The Contract is illegal and void as against public policy because Strategic Vision agreed to make investigations to obtain information on crimes and civil wrongs, the location of stolen property, and injuries to persons, without a private investigator's license under the laws of the Commonwealth of Virginia or any other state or jurisdiction.

104. The Contract is illegal and void as against public policy because Strategic Vision made investigations to obtain information on crimes and civil wrongs, the location of stolen property, and injuries to persons, without a private investigator's license under the laws of the Commonwealth of Virginia or any other state or jurisdiction.

105. The Contract is illegal and void as against public policy because Strategic Vision agreed (in the Contract) to make investigations into the identities, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation and character of individuals without a private investigator's (or detective's) license under the laws of Nevada, New York, Washington D.C., or any other state or jurisdiction.

106. The Contract is illegal and void as against public policy because Strategic Vision actually made investigations into the identities, habits, conduct, business, occupation, honesty, integrity, credibility, knowledge, trustworthiness, efficiency, loyalty, activity, movement, whereabouts, affiliations, associations, transactions, acts, reputation and character of individuals in the Subject List without a private investigator's (or detective's) license under the laws of Nevada, New York, Washington D.C., or any other state or jurisdiction.

107. Eastern seeks declaratory judgment that the Contract between the parties is illegal and void as against public policy.

## COUNT IV
## UNJUST ENRICHMENT

108. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs of the complaint, with the exception of Paragraph 31.

109. Eastern has conferred a benefit upon Strategic Vision – the $1,000,000 deposit payment.

110. Strategic Vision accepted and retained the $1,000,000.

111. Because the Contract is illegal and void as a matter of public policy, Strategic Vision's retention of the $1,000,000 is inequitable.

112. Strategic Vision has been unjustly enriched at the expense of Eastern.

113. Eastern is entitled to damages as a result of Strategic Vision's unjust enrichment, including the disgorgement of all monies unlawfully accepted by Strategic Vision from Eastern.

## REQUEST FOR RELIEF

Wherefore, Plaintiff requests the following relief:

A. That Defendant Strategic Vision be held liable for the damages sustained by Plaintiff Eastern as a result of the claims asserted herein and the costs of this suit, including reasonable attorneys' fees in an amount to be determined at trial;

B. That the Contract be declared illegal and void;

C. Plaintiff demands monetary damages against Defendant for unjust enrichment; and;

D. Such other relief as the Court deems necessary and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL CLAIMS SO TRIABLE.**

EASTERN PROFIT CORPORATION LIMITED,

By its attorneys,

ZEICHNER ELLMAN & KRAUSE LLP

/s/ Zachary Grendi
Zachary Grendi, Esq.
1211 Ave of the Americas
New York, NY 10036
Phone: (212) 223-0400
Fax: (212) 753-0396
Email: zgrendi@zeklaw.com