J5DVEASC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

EASTERN PROFIT CORPORATION
LIMITED,

                    Defendant,

            v.                          18 CV 2185 (JGK)

STRATEGIC VISION US LLC,

                    Defendant.          CONFERENCE/DECISION

------------------------------x
                                        New York, N.Y.
                                        May 13, 2019
                                        4:36 p.m.

Before:

                    HON. JOHN G. KOELTL,

                                        District Judge

                            APPEARANCES

ZEICHNER ELLMAN & KRAUSE
     Attorneys for Plaintiff
BY:  ZACHARY B. GRENDI

BARTON LLP
     Attorneys for Defendant
BY:  JAMES J. McGUIRE
     MARK A. BERUBE

HODGSON RUSS LLP
     Attorneys for Counter Defendant Guo Wengui
BY:  JILLIAN M. SEARLES

J5DVEASC

1          (Case called)

2          MR. GRENDI:  Good afternoon, your Honor.

3          Zach Grendi of Zeichner Ellman Krause, for Eastern

4     Profit.

5          MR. McGUIRE:  Good afternoon, your Honor.

6          James McGuire and Mark Berube, for the defendant,

7     Strategic Vision.

8          MS. SEARLES:  Good afternoon, your Honor.

9          Jillian Searles of Hodgson Russ, for Miles Kwok, the

10    counterclaim defendant.

11         THE COURT:  I'm sorry, you are?

12         MS. SEARLES:  Jillian Searles, on behalf of Miles

13    Kwok, the counterclaim defendant.

14         THE COURT:  Oh, for Mr. Guo?

15         MS. SEARLES:  Yes, Guo, a/k/a Miles Kwok, yes.

16         THE COURT:  Okay.  People in all of their papers have

17    referred to Mr. Guo as the counterclaim defendant, which would

18    mean that he's a plaintiff as to whom a counterclaim is

19    asserted, when, in fact, he's a third-party defendant on a

20    third-party complaint, even though the parties go on in their

21    papers without bothering to draw that distinction.

22         MS. SEARLES:  Yes, I do agree with you.  We had that

23    discussion within our office, and we've just adopted the

24    language that was previously adopted by the individuals who

25    were asserting the counterclaims.

J5DVEASC

1          But I do agree with you, we were not the plaintiff to

2     begin with, so, technically speaking, I don't believe we are

3     the counterclaim defendant.

4          MR. McGUIRE:  Your Honor, James McGuire, for the

5     defendant.

6          As you may recall, we are new to the case.  We were

7     substituted in about six weeks ago.  But I think the source of

8     the confusion or the ambiguity may be that prior defense

9     counsel asserted a counterclaim in which there was an alter ego

10    allegation as between Mr. Guo and the plaintiff.  I'm not

11    suggesting anything other than that.  I just wanted to let your

12    Honor know that.

13         THE COURT:  Right.  One would think there is some

14    distinction.  Because if you are a third-party defendant, you

15    would have a third-party complaint, presumably you'd have a

16    summons.

17         MR. McGUIRE:  Yes, sir.  That's right.

18         THE COURT:  So we have the pleading against Mr. Guo

19    and there's a fully briefed motion to dismiss that complaint

20    against Mr. Guo.  We then have the recent correspondence in

21    which the defendant says that the complaint has defects.  And

22    the plaintiff responds, If you don't like that complaint, we'll

23    give you another.

24         So let's take first things first.

25         We have this complaint that's been characterized as a

J5DVEASC

1    counterclaim against Mr. Guo that raises three claims.  That's

2    fully briefed.  Mr. Guo moved to dismiss whatever it is against

3    him, and that's resisted.  In view of all the other letters, is

4    that still a motion that should be decided?  If so, I'll decide

5    it.  If not, I'll dismiss the motion without prejudice.

6               MS. SEARLES:  It was our motion.  We moved to dismiss

7    Mr. Guo out of the case.  It's still a valid motion for the

8    reasons that we set forth in our papers.

9               I'm happy to discuss it further, but we did fully

10   brief --

11              THE COURT:  No, no, I'm familiar with the motion.

12   I'll decide it.  No one tells me it's moot, so I'll decide it.

13   And then we'll go from there as to what the status of the

14   pleadings are.

15              The defendant Strategic Vision US LLC ("Strategic

16   Vision") brings alleged counterclaims against plaintiff Eastern

17   Profit Corporation Limited ("Eastern Profit") and alleged

18   counterclaims which are really third-party claims against

19   third-party defendant Guo Wengui ("Mr. Guo").  Mr. Guo has

20   moved to dismiss the claims against him under Federal Rule of

21   Civil Procedure 12(b)(6) for failure to state a claim upon

22   which relief can be granted

23              In deciding a motion to dismiss pursuant to Rule

24   12(b)(6), the allegations in the claim are accepted as true and

25   all reasonable inferences must be drawn in the pleader's favor.

J5DVEASC

The Court should dismiss the claims if the pleader has –– I'm

sorry.  The Court should not dismiss the claims if the pleader

has stated enough facts to state a claim to believe that it's

plausible on its face.  The standards for a Rule 12(b)(6)

motion are well-known, and need not be repeated here.

The action arises primarily out of a written

agreement, the agreement between Eastern Profit, which is an

entity allegedly controlled by Mr. Guo, and Strategic Vision.

Under the agreement, Strategic Vision was to perform

certain research for Eastern Profit.  In December 2017, Mr. Guo

was introduced to Strategic Vision by his associate,

Mr. Lianchao.  Mr. Guo represented to Strategic Vision that

Mr. Lianchao and another associate, Ms. Yvette ("Ms. Y") had

authority to act on Mr. Guo's behalf.

Several conversations between Strategic Vision and

Mr. Guo took place throughout December 2017, in which Strategic

Vision set out the parameters of the research work it could

perform, including its commitment to following United States

law.  Mr. Guo told Strategic Vision that he would enter into an

agreement with Strategic Vision through a corporate entity that

he controlled, and that he would fund the entity as necessary.

Strategic Vision later found that the entity was Eastern

Profit, an entity that Strategic Vision now alleges is

undercapitalized, has little or no assets, does not abide by

corporate formalities, and is under the complete domination and

J5DVEASC

control of its principal.

On January 5, Ms. Y met with a principal of Strategic Vision and discussed the research services sought by Eastern Profit.  The next day, Ms. Y executed the agreement with Strategic Vision on behalf of Eastern Profit.  Strategic Vision alleges that it entered into the agreement based on Mr. Guo's earlier promise to fund the entity that turned out to be Eastern Profit.

Strategic Vision immediately commenced its work under the agreement.  As discussed at prior conferences, the nature of that work contains some mysteries.  However, Mr. Guo's and Eastern Profit's conflicting instructions, inaccessible communications, and allegedly bizarre behavior hindered and delayed Strategic Vision in its work.  Strategic Vision alleges that Mr. Guo intentionally engaged in various obstructive behavior.

Eastern Profit terminated the agreement on February 23, 2018.  The termination came despite a provision in the agreement stating that irregular circumstances might slow or block comprehensive research, but Strategic Vision would endeavor to produce timely work.

Strategic Vision brings three claims against Mr. Guo:

First, Strategic Vision claims that Mr. Guo tortiously interfered with a third-party contract, namely, the agreement, by engaging in a pattern of conduct designed to impede

J5DVEASC

1   Strategic Vision's ability to carry out its obligations under

2   the agreement.

3           Second, Strategic Vision brings a promissory estoppel

4   claim against Mr. Guo, contending that it relied upon Mr. Guo's

5   promise to fund Eastern Profit in deciding to enter the

6   agreement.

7           Third, Strategic Vision brings a breach of contract

8   claim against Mr. Guo, arguing that Eastern Profit breached the

9   agreement by failing to pay Strategic Vision upon terminating

10  the agreement, and that Eastern Profit is Mr. Guo's alter ego.

11          Mr. Guo argues that Strategic Vision has failed to

12  state a third-party claim against him for tortious interference

13  with a third-party contract because there is no third party;

14  that is, Mr. Guo was acting on behalf of Eastern Profit, a

15  party to the agreement.

16          A tortious interference with a third-party contract

17  claim generally may only be brought against a defendant who is

18  a third party to the contract; the defendant cannot be a party

19  to the contract at issue.  *IMG Fragrances Brands, LLC v.*

20  *Houbigant, Inc.*, 679 F. Supp. 2d 395, 407 (S.D.N.Y. 2009).

21  Officers of a corporation who induce the corporation to breach

22  a contract are not typically proper subjects of a tortious

23  interference claim.  *Rothschild v. World-Wide Automobiles*

24  *Corp.,* 264 N.Y.S.2d 705, 706 (App. Div. 1965), *aff'd*, 224

25  N.E.2d, 724 (N.Y. 1966); *see Murtha v. Yonkers Child Care*

J5DVEASC

*Association, Inc.,* 383 N.E.2d 865, 866 (N.Y. 1978).

"Otherwise, every corporate breach of contract would lay the corporation officers open to individual tort liability." *In re Krautheimer*, 241 B.R. 330, 337, (Bankr. S.D.N.Y. 1999); *see Application of Brookside Mills*, 94 N.Y.S.2d 509, 518 (App. Div. 1950).

A narrow exception exists for officers acting wholly outside the scope of their authority for purely personal gain. *Scuderi v. Springer,* No. 03cv2098, 2004 WL 2711048, at *2 (S.D.N.Y. Nov. 29, 2004); *see BIB Construction Co. Inc. v. City of Poughkeepsie,* 612 N.Y.S.2d 283, 285 (App. Div. 1994).

But a heightened pleading standard applies to claims seeking to hold an officer personally responsible in tort for a corporation's breach of contract. *Joan Hansen & Co. v. Everlast World's Boxing Headquarters Corp.,* 744 N.Y.S.2d 384, 390 (App. Div. 2002). "A pleading must allege in nonconclusory terms that the acts complained of, whether or not beyond the scope of the defendant's corporate authority, were performed with malice and were calculated to impair the plaintiff's business or the personal profit of the defendant." *Id.* at 390-91.

In this case, Strategic Vision's pleading summarily set forth Mr. Guo's alleged misconduct without providing any facts suggesting that he was acting outside of his authority as the alleged principal of Eastern Profit. Nor do the pleadings

J5DVEASC

1    suggest -- much less meet -- a heightened standard that Mr. Guo

2    acted out of malice to impair Strategic Vision's business for

3    his own personal profit.  In its opposition brief, perhaps

4    recognizing for the first time that it effectively sued a party

5    to a contract for third-party tortious interference, Strategic

6    Vision claims that Mr. Guo's conduct was outside his duties

7    because the conduct was "completely at odds with the best

8    interests of Eastern Profit."  Opp. at 6.

9            This conclusory argument, however, was not borne out

10   by the pleadings.  Strategic Vision also claims that it

11   "alleges that Mr. Guo committed independent tortious acts,

12   including serious breaches of security that comprised Strategic

13   Vision team members and even caused some to quit." *Id*.  But

14   the relevant pleading does not attribute the alleged breach of

15   security to Mr. Guo; in fact, it frames Mr. Guo as the victim

16   of the security breach.  *See* defendant's answer, paragraph 67.

17           In short, Strategic Vision has not sufficiently

18   alleged a claim for tortious interference with a third-party

19   contract against Mr. Guo.  Mr. Guo's motion to dismiss is

20   granted with respect to that third-party claim.

21           Next, Mr. Guo argues that Strategic Vision's

22   promissory estoppel claim against him fails because there is a

23   written, enforceable contract, namely, the agreement.  Thus,

24   Mr. Guo continues, Strategic Vision cannot recover in quasi

25   contract.

J5DVEASC

1    In his reply brief, Mr. Guo also argues for the first

2    time that the statute of frauds precludes Strategic Vision's

3    promissory estoppel claim.  However, "where the elements of

4    promissory estoppel are established and the injury to the party

5    who acted in reliance on the oral promise is so great that

6    enforcement of the statute of frauds would be unconscionable,

7    the promisor should be estopped from reliance on the statute of

8    frauds."  *In re Estate of Hennel*, 80 N.E.3d 1017, 1022 (N.Y.

9    2017).

10   Thus, promissory estoppel can vitiate a statute of

11   frauds claim.  But the Court need not reach the statute of

12   frauds issue for two reasons:  First, it is well-established

13   that courts should not consider arguments made for the first

14   time in a reply brief.  *See, for example, Mateo v. Bristow*, No.

15   12cv5052, 2013 WL 3863865, at *8 (S.D.N.Y. July 16, 2013).

16   Second, Strategic Vision has failed to state a claim for

17   promissory estoppel.

18   "A cause of action for promissory estoppel under New

19   York law requires the plaintiff to prove three elements:  1) a

20   clear and unambiguous promise; 2) reasonable and foreseeable

21   reliance on that promise; and 3) injury to the relying party as

22   a result of the reliance."  *Kaye v. Grossman*, 202 F.3d, 611,

23   615 (2d Cir. 2000)

24   Under New York law, the doctrine of promissory

25   estoppel can be invoked in two situations:  First, to enforce a

J5DVEASC

promise absent consideration where there has been detrimental

reliance; or second, to enforce a contract that would otherwise

be barred by the statute of frauds.  *See Merex A.G. v.*

*Fairchild Weston Sys., Inc.,* 29 F.3d 821, 824 (2d Cir. 1994);

*see also Joshi v. Trustees of Columbia Univ. in City of New*

*York,* No. 17cv4112, 2018 WL 2417846, at *8 (S.D.N.Y. May 29,

2018).  Strategic Vision invokes the doctrine under the first

theory.

          Promissory estoppel "is a narrow doctrine" that

generally applies only where there is not a written,

enforceable contract.  *DDCLAB Ltd. v. E.I. Du Pont De Nemours &*

*Co.,* No. 03cv3654, 2005 WL 425495, at *6 (S.D.N.Y. Feb. 18,

2005).  The doctrine is "a legal fiction designed to substitute

for contractual consideration where one party relied on

another's promise without having entered into an enforceable

contract."  *Hartford Fire Ins. Co. v. Federated Dep't Stores,*

*Inc.,* 723 F. Supp. 976, 993 (S.D.N.Y. 1989).

          Thus, where there is a written, enforceable contract,

claims for promissory estoppel are precluded "unless a legal

duty independent of the contract -- i.e., one arising out of

circumstances extraneous to, and not constituting elements of,

the contract itself -- has been violated."  *Brown v. Brown*, 785

N.Y.S.2d 417, 419 (App. Div. 2004).

          Neither Strategic Vision nor Mr. Guo dispute that the

agreement is a written, enforceable contract.  Strategic Vision

J5DVEASC

1    argues that its promissory estoppel claim is nonetheless

2    cognizable because it is against Mr. Guo, not Eastern Profit.

3    And there is no written, enforceable contract between Mr. Guo

4    and Strategic Vision.

5            Strategic Vision adds that Mr. Guo's promise is wholly

6    independent of the agreement.  The argument is not persuasive.

7    Mr. Guo's alleged promise was part of the negotiations he made

8    on Eastern Profit's behalf.  Strategic Vision concedes as much

9    by pleading that (1) Mr. Guo is a principal of -- and indeed

10   exercises complete domination and control over -- Eastern

11   Profit; and (2) Strategic Vision and Mr. Guo engaged in the

12   negotiations that led to the agreement.

13           Strategic Vision therefore alleges its promissory

14   estoppel claim against Mr. Guo in his representative, not

15   individual, capacity and, by doing so, is challenging his

16   promise as it relates to the agreement.  *See Trend & Style Asia*

17   *HK Co. v. Pacific Worldwide, Inc.*, No. 14cv9992, 2015 WL

18   4190746 at *6 (S.D.N.Y. July 10, 2015)  (dismissing a

19   promissory estoppel claim against an individual sued in his

20   representative capacity, where the plaintiff did not allege

21   that the individual was an alter ego of the corporation

22   defendants).

23           It defies logic to argue that Mr. Guo's promise was

24   wholly independent from the agreement and, in the same breath,

25   argue that it was his promise that induced Strategic Vision to

J5DVEASC

1    enter into the agreement.  Strategic Vision does not argue that

2    its promissory estoppel claim is brought against Mr. Guo as an

3    alter ego of Eastern Profit, although Strategic Vision does

4    argue that Mr. Guo is the alter ego of Eastern Profit for

5    purposes of its breach of contract claim against him.  In any

6    event, this distinction is not meaningful because Strategic

7    Vision has not alleged adequately that Mr. Guo is the alter ego

8    of Eastern Profit.

9          Additionally, Strategic Vision contends that it relied

10   on Mr. Guo's promise to fund Eastern Profit such that Eastern

11   Profit could meet its monetary duties under the agreement.  The

12   agreement itself provides terms for pricing and payment.  Thus,

13   Strategic Vision's promissory estoppel claim relates directly

14   to Eastern Profit's alleged breach of those terms of the

15   agreement.  The claim "seeks nothing more than a second bite at

16   the breach of contract apple."  *See SungChang Interfashion Co.*

17   *v. Stone Mountain Accessories, Inc.*, No. 12cv7280, 2013 WL

18   5366373 at *19 (S.D.N.Y. Sept. 25th, 2013).

19         In fact, Strategic Vision brings a breach of contract

20   counterclaim or third-party claim against Eastern Profit --

21   counterclaim against Eastern Profit and a breach of contract

22   third-party claim against Mr. Guo as the alter ego of Eastern

23   Profit for their alleged failures to pay under the agreement.

24         Accordingly, Mr. Guo's motion to dismiss is granted

25   with respect to Strategic Vision's promissory estoppel claim.

J5DVEASC

1          Finally, Mr. Guo argues that Strategic Vision's breach

2     of contract claim against him failed because he is not

3     personally a party to the agreement and Strategic Vision has

4     not alleged sufficient facts to pierce the corporate veil and

5     hold him individually liable for Eastern Profit's alleged

6     breach of the agreement.

7          "An individual officer can be held liable for a

8     corporate defendant's breach of contract if the corporation

9     served as the alter ego of the officer." *Sheldon v. Sethna*,

10    No. 10cv4128, 2012 WL 1022895, at *8 (S.D.N.Y. Mar. 26, 2012).

11    "It is well settled that New York courts are reluctant to

12    disregard the corporate entity." *William Wrigley Jr. Co. v.*

13    *Waters,* 890 F.2d 594, 600 (2d Cir. 1989).

14         "Generally, piercing the corporate veil requires a

15    showing that (1) the owner exercise complete domination and

16    control of the corporation in respect to the transaction

17    attacked; and (2) that such domination was used to commit a

18    fraud or wrong against the plaintiff which resulted in the

19    plaintiff's injury." *Morris v. N.Y. State Dep't of Taxation*

20    *and Fin.*, 623 N.E.2d, 1157, 1160 (N.Y. 1993).

21         Courts consider a lengthy list of factors when

22    determining whether it is appropriate to pierce the corporate

23    veil. *See William Passalacqua Builders, Inc. v. Resnick Devs.*

24    *S, Inc.,* 933 F.2d 131, 139 (2d Cir. 1991), detailing ten

25    factors. *See Freeman v. Complex Computing Co.*, 119 F.3d 1044,

J5DVEASC

1053 (2d Cir. 1997); *see also JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc., 295* F. Supp. 2d 366, 377-78 (S.D.N.Y. 2003).

Strategic Vision does not plead sufficient factual allegations bearing on Mr. Guo's domination of Eastern Profit. Strategic Vision only pleads that "upon information and belief, Mr. Guo is the principal of Eastern Profit; Eastern Profit has little or no assets and is undercapitalized and is unable to pay the amounts owed under the agreement; Eastern Profit is under the complete domination and control of Mr. Guo; and Eastern Profit has failed to abide by corporate formalities."

Although these allegations concern a few of the factors relevant to piercing the corporate veil, they are wholly conclusory and fail to provide grounds to meet the "heavy burden" of demonstrating that Mr. Guo dominated Eastern Profit.  *See Krause v. Eihab Human Servs., Inc.*, No. 10cv898, 2015 WL 4645210 at *16 (E.D.N.Y. Aug. 4, 2015); *see also Societe d'Assurance de l'Est SPRL v. Citigroup, Inc.,* No. 10cv 4754, 2011 WL 4056306, at *5 (S.D.N.Y. Sept. 13, 2011)

Moreover, Strategic Vision has not alleged adequately that Mr. Guo used the corporate form to commit a fraud or other wrong.  An ordinary "breach of contract without evidence of fraud or corporate misconduct is not sufficient to pierce the corporate veil, which is an equitable remedy at its core." *Am. Federated Title Corp. v. GFI Mgmt. Servs., Inc.*, 126 F. Supp.

J5DVEASC

1    3d 388, 403 (S.D.N.Y. 2015), aff'd 716 F. App'x 23 (2d Cir.

2    2017).

3           Strategic Vision argues that Mr. Guo's promise to fund

4    Eastern Profit constituted a wrongful act apart from the

5    alleged breach of contract.  But for the same reasons discussed

6    with respect to Strategic Vision's promissory estoppel claim,

7    this allegation simply restates an aspect of Strategic Vision's

8    breach of contract claim.

9           Moreover, Mr. Guo's promise is not alleged to have

10   misrepresented present fact.  As pleaded, the promise can only

11   be characterized as "an insincere promise of future

12   performance," which is part of a breach of contract claim.  *See*

13   *Gosmile, Inc. v. Levine,* 915 N.Y.S.2d 521, 524 (App. Div.

14   2010).

15          Strategic Vision points out that "New York courts have

16   held that using a completely dominated dummy or shell company

17   created for the sole purpose of signing a lease and breaching

18   the lease is a sufficient wrong to justify piercing the

19   corporate veil."  Am. Federated Title Corp. v. GFI Mgmt.

20   Servs., Inc. 39 F. Supp. 3d 516, 526 (S.D.N.Y. 2014).

21          However, Strategic Vision has not alleged sufficiently

22   that Mr. Guo completely dominates Eastern Profit.  The

23   pleadings do not suggest that Eastern Profit was created for

24   the sole purpose of signing and then breaching the agreement.

25          Finally, Strategic Vision cites *Skanska USA Building,*

*Inc. v. Atlantic Yards v. B2 Owner LLC* in support of its claim
that the corporate veil should be pierced.  40 N.Y.S. 3d 46, 54
(App. Div. 2016), aff'd, 98 N.E.3d 720 (N.Y. 2018).

    The court in *Skanska* simply suggested that if the
plaintiff in that case had pleaded that it believed it was
contracting with or had rights *vis-à-vis* the alleged alter ego,
then the plaintiff's failed piercing claim might stand.
However, Strategic Vision's pleading belies such a theory.  The
pleadings state that Strategic Vision understood that Mr. Guo,
Eastern Profit's alleged alter ego, would fund a company, and
that Strategic Vision would enter into the agreement with that
company.  The pleadings do not provide any suggestion that
Strategic Vision believed it was entering into a contract with
or that it had rights against Mr. Guo.

    Mr. Guo's motion to dismiss is granted with respect to
the breach of contract third-party claim against him.

    The Court has considered all the arguments raised by
the parties.  To the extent not specifically addressed, the
arguments are either moot or without merit.

    For the reasons expressed above, Mr. Guo's motion to
dismiss the third-party claims against him is granted.

    The claims are dismissed without prejudice.

    So ordered.

    The clerk will be directed to close Docket No. 65.

    Now, realistically, the plaintiff wants the

J5DVEASC

1    opportunity to file an amended complaint in order to avoid

2    arguments made by the defendant that the current complaint is

3    insufficient.  So if there's going to be an amended complaint,

4    then there's going to be an answer.  And one expects that in

5    the answer there will be an effort to plead new counterclaims

6    and perhaps a new third-party claim against Mr. Guo.

7            The claims against Mr. Guo are dismissed without

8    prejudice.

9            One senses that the parties are more interested in the

10   pleadings than they are in a trial of this case in which all of

11   the circumstances of the contract between the parties are fully

12   aired.  When I've raised with the parties before what the

13   nature of these strategic services and information is that was

14   being uncovered by the defendant, I've been met with

15   descriptions which are best described as mysterious.

16           All I can glean from the papers is that -- and the

17   parties can correct me if I'm wrong, that the nature of the

18   services to be performed by Strategic Vision are some form of

19   corporate intelligence, and perhaps that's a euphemism.

20           With respect to specific individuals who -- and the

21   parties can correct me if I'm wrong again, but who are members

22   of the Chinese Communist Party, and the defendant places one of

23   the restrictions on the contract that it won't do anything in

24   violation of United States law, why this research into members

25   of the Chinese Communist Party may violate New York or United

J5DVEASC

States law is itself a mystery.

But having set this out, and having dealt with this case over some period of time, and having watched the parties fence over the basic allegations in the complaint, the thought that you may eventually try this case in open court before a New York jury seems to me to be quite strained.  Now, I could be completely wrong; you may be all really eager to present your case to a New York jury.  I certainly would be happy to listen to it.

On the other hand, I really don't have a great desire to continue to decide pleading motions while you all fence.  So reading the papers, sure, plaintiff wants to file an amended complaint to avoid problems raised by the defendant.  The defendant wants to, I'm sure, raise more counterclaims against the plaintiff, and perhaps a third-party claim.

You have a discovery cutoff, right, and a confidentiality order with respect to all of the work that was being done, right?

MR. GRENDI:  Yes, your Honor.

THE COURT:  So what's your discovery cutoff?

MS. SEARLES:  Your Honor, it's July 15.

MR. McGUIRE:  July 15, your Honor.

THE COURT:  July 15th.  Wow.

You haven't gone to the magistrate judge yet to talk about settlement, right?

J5DVEASC

1                MR. GRENDI:  No, your Honor.

2                THE COURT:  No.

3                I'll send you to the magistrate judge to talk about

4        settlement.

5                When does the plaintiff want to file an amended

6        complaint?

7                MR. GRENDI:  Your Honor, I did already file it under

8        Rule 15(a)(1).

9                THE COURT:  Fine.

10               MR. GRENDI:  So, your Honor, I don't think there's

11       anything to be filed again, assuming that you embrace my

12       interpretation of the rule there, your Honor.

13               THE COURT:  I'm not sure I raised it, but I'll

14       authorize you to file it, so that's good enough.

15               MR. GRENDI:  Thank you.

16               THE COURT:  When does the defendant want to answer or

17       move with respect to the amended complaint?

18               MR. McGUIRE:  We'd ask for 30 days, your Honor.

19               THE COURT:  Sure.

20               Do you think that you will be filing a motion to

21       dismiss the amended complaint?

22               MR. McGUIRE:  We believe a number of the defects that

23       attach to the prior amended complaint to which we consented

24       when we first were substituted in follow and adhere to this new

25       amended complaint.

J5DVEASC

1          I'm mindful of your Honor's comments.  I don't in any

2     way want to run afoul of them.

3          THE COURT:  Don't take me wrong.  You're not running

4     afoul of them.  You're welcome to file a motion to dismiss any

5     of the claims, and I will decide the motion on the facts and

6     the law.

7          MR. McGUIRE:  Your Honor, does that mean that we would

8     not be filing the premotion conference letter --

9          THE COURT:  Right.  You don't need a premotion

10    conference.

11         MR. McGUIRE:  Very well.

12         THE COURT:  So it's the third amended complaint; is

13    that right?

14         MR. GRENDI:  It's the second amended, but I guess it's

15    the third pleading.

16         THE COURT:  So the second amended complaint is deemed

17    filed, and the defendant will file an answer or motion by --

18         MR. McGUIRE:  Your Honor, may we have until June 11?

19         THE COURT:  Sure.

20         MR. McGUIRE:  I have a personal commitment on June --

21         THE COURT:  No, I'm going to give you till the end of

22    the week.

23         MR. McGUIRE:  That will be great.  Thank you.

24         THE COURT:  Do you want June 11?

25         MR. McGUIRE:  If you'll give me till the end of the

J5DVEASC

 1    week, I'll take it.

 2              THE COURT:  June 14th.

 3              MR. McGUIRE:  Very good.

 4              THE COURT:  I like to make things on Fridays or

 5    Monday, if appropriate.

 6              And then the reply -- well, response, defendant will

 7    file motion to dismiss June 14th, response -- really can't do

 8    it July 5th, so July 8.  And then the reply, July 19.

 9              Do you intend to file a third-party claim against

10    Mr. Guo?

11              MR. McGUIRE:  I honestly don't know, your Honor.

12              THE COURT:  Okay.  But if you do, I assume even though

13    it wasn't talked about in the last round of pleadings,

14    shouldn't there be a -- Mr. Guo never got a summons, did he?

15              MR. McGUIRE:  Again, your Honor, I was not involved at

16    that point.

17              THE COURT:  Okay.

18              MS. SEARLES:  He did not, your Honor.

19              THE COURT:  Talk to Mr. Guo's counsel, who has

20    graciously appeared even though he probably was not summoned in

21    the case.  And talk to Mr. Guo's counsel about whether they'll

22    accept service --

23              MR. McGUIRE:  Understood, yes.

24              THE COURT:  -- of the summons and third-party

25    complaint.

J5DVEASC

1          Okay.  And I'll refer it to the magistrate judge for

2     settlement.

3          Okay.  Is there anything else that I can do today?

4          MR. McGUIRE:  Just a question, your Honor.

5          THE COURT:  Sure.

6          MR. McGUIRE:  In referring us to the magistrate, would

7     that potentially encapsulate a possible mediation or --

8          THE COURT:  Yes, for settlement.

9          MR. McGUIRE:  Okay.

10          THE COURT:  That's the only reason I'm sending it --

11     would the parties -- I can't send you to the magistrate judge

12     for all purposes, including trial, because I don't know what

13     the status of Mr. Guo is.  And I don't know if he would consent

14     to trial before the magistrate judge.

15          But by sending it to the magistrate judge, I'm sending

16     it to the magistrate judge for purposes of settlement.  So,

17     yes, that will be for mediation by the magistrate judge.

18          And I would urge you, if you don't hear -- I'll call

19     the magistrate judge.  It's Magistrate Judge Freeman.  I don't

20     know what her calendar is like these days, but I would sure

21     like her to meet with you sooner rather than later.  And you're

22     welcome to call the magistrate judge's chambers.  My reference

23     will go out surely by tomorrow.

24          MR. McGUIRE:  Thank you, your Honor.

25          MR. GRENDI:  Thank you, your Honor.

J5DVEASC

1          THE COURT:  My experience is that you can get a

2    quicker resolution from the magistrate judge than you can from

3    the mediation panel of the court.  But if you prefer me to send

4    you to the mediation panel of the court, I would be happy to do

5    that too.  But I usually prefer the magistrate judges.

6          MR. McGUIRE:  Is that something perhaps Mr. Grendi and

7    I can confer on and perhaps get back to you within a day or

8    two?

9          THE COURT:  Sure.  Absolutely.

10         MR. McGUIRE:  We're scheduled to speak about other

11   matters on Friday.  If we let the Court know by Friday, would

12   that be agreeable?

13         THE COURT:  Sure.  I'm going to refer it to the

14   magistrate judge.  But it's easy enough, the magistrate judge

15   will applaud my sending it to the mediation panel.

16         MR. McGUIRE:  We'll come back to your Honor by Friday,

17   if that's agreeable.

18         THE COURT:  Okay.

19         MR. McGUIRE:  Thank you.

20         THE COURT:  Anything else?

21         MR. GRENDI:  No, your Honor.

22         THE COURT:  Okay.  Good to see you, all.

23         MR. GRENDI:  Thank you.

24         MR. McGUIRE:  Thank you.

25         MS. SEARLES:  Thank you, your Honor.  (Adjourned)