

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

July 26, 2019

<u>VIA ECF</u>
Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
Courtroom 14A
500 Pearl Street
New York, New York 10007

Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)

Dear Judge Koeltl:

    Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision") opposes the request by Plaintiff/Counterclaim Defendant Eastern Profit Corp. Ltd. ("Eastern Profit") to strike Strategic Vision's counterclaims pursuant to Fed. R. Civ. P. 12(f), a type of request the Second Circuit has described as pleading "tampering" and that is disfavored by trial courts.  *Lipsky v. Commonwealth United Corp.,* 551 F.2d 887, 893 (2d Cir. 1976) ("[C]ourts should not tamper with the pleadings unless there is a strong reason for so doing."); *UPS Store, Inc. v. Hagan*, 99 F. Supp.3d 426, 442 (S.D. N.Y. 2015).  Eastern Profit finds the counterclaims to be "largely a polemic" and "publicity stunt" against its alter ego and former co-Counterclaim Defendant, Guo Wengui. But attributing evil motives to Defendant is not a "strong reason" for striking facts and pleadings.

    In fact, Guo is the central figure in this case. As Strategic Vision will show at the August 1, 2019 conference, it is Guo who controls Eastern Profit and whose alleged political interest the contract at issue was supposed to serve. Yet it was also Guo's false representations that he was a true Chinese dissident—and, consistent with that role, intended to use Strategic Vision's work product to undermine the Communist regime—that induced Strategic Vision to negotiate and contract with him, bargaining for a clause stating that the purpose of the contract was to protect innocent people from harm.

    We now know that Guo was not who he claimed to be. He did not intend to use the contract's fruits as he had claimed. Not only did this impair Strategic Vision's performance, having this knowledge would have caused Strategic Vision to refuse the engagement altogether. Strategic Vision should be able to present its defenses and counterclaims, which sound in breach of the contractual duty of good faith and fair dealing and fraudulent inducement. True, the factual predicate for these defenses and counterclaims raises serious issues about a controversial figure who has painstakingly crafted a public persona and seeks asylum on that basis. This stings Eastern Profit only because it lacks an existence separate from Guo. But such concerns are not redressable on motions to strike.



## Factual Background

In late 2017, two emissaries of Guo Wengui separately approached Strategic Vision to discuss whether the company's global research services could aid Guo in his purported mission as an outspoken anti-Communist dissident. Over a month, Strategic Vision met with Guo and the two individuals he alternately designated as his key advisors. They discussed a variety of proposals, ultimately settling on the contract here. Shortly before it was signed, Guo inserted Eastern Profit—an entity that had not been previously identified, but which filled a slot that Guo had said would be assumed by some corporate placeholder—as the purchasing party under the contract.

In short, the contract called for Strategic Vision to serve as Eastern Profit's global research consultant for a fixed period regarding a number of individuals Guo represented to be Chinese Communist Party ("CCP") members or agents. Strategic Vision understood that its services would aid Guo's advertised efforts as a Chinese dissident to foster regime change in China by exposing CCP and government corruption.

Guo's representations seemed reliable at the time. Early in President Donald Trump's administration, Guo had created an elaborate origin story and public persona using his Twitter and YouTube channels, as well as conservative media and mainstream media such as Politico. He has also been a litigant in at least 30 lawsuits, in many of which Guo argues his credentials as a dissident—or asserts claims for defamation against those who disagree. Guo also cultivated friends in the White House, including Stephen K. Bannon, who, as alleged in the Counterclaims, makes public appearances with Guo and traveled to China on behalf of Guo. It was this "Guo" with whose entity Strategic Vision thought it was contracting. Indeed, had Eastern Profit not been wholly under Guo's control, as he had then represented, there would have been no contract. Even now, it is Guo who will testify on August 2 to complete Eastern's 30(b)(6) deposition; the first witness, an employee of yet another Guo entity, knew little about Eastern. Guo's daughter is Eastern's sole director, and the Counterclaim pleads Guo's control. Guo's story is Eastern Profit's, and vice versa.

As further alleged in the Counterclaim, Guo falsely represented his status as a dissident as well as the purpose to which he intended to put Strategic Vision's work—representations that were material to Strategic Vision because it supports regime change in China and would never aid the work of a supporter of the CCP. Strategic Vision pleads many—but not all—of the facts that show how the stories Guo tells to bolster his persona as a Communist apostate are incorrect. These include recordings of Guo's own statements pledging his loyalty to the CCP and its Chairman, Xi Jinping. They also include transfers of hundreds of millions of dollars back and forth from China at a time when Guo's assets were supposedly frozen, and Guo's promise—followed up by litigation in U.S. courts—to punish specific dissidents who had criticized Xi's regime. Strategic Vision recognizes such allegations are serious, which is why it amassed and pleaded both direct and circumstantial evidence. At the same time, Guo's true status has already become a matter of public debate and Strategic Vision is far from the first to have identified this evidence over the last year, which is why Strategic Vision was able to rely almost exclusively on public sources.



The parties' disputes are now well-joined in the pleadings. Each party has claims against the other for breach of contract and fraud. Eastern Profit seeks return of funds paid to Strategic Vision (not by Eastern but by a non-party called ACA Capital Group Limited) under theories of contract and fraud (*i.e.,* that Strategic Vision misrepresented its capabilities and that this was material given Guo's needs). Strategic Vision's response asserted two counterclaims: breach of contract and fraudulent misrepresentation. The contract claims flow directly from course-of-performance demands and acts directed by Guo that violated the duty of good faith and fair dealing; the fraudulent inducement claims flow directly from Guo's materially false claims regarding his dissident status and his intended uses of Strategic Vision's work.

### Fed. R. Civ. P. 12(f) Motions to Strike are Disfavored

A movant under Fed. R. Civ. P. 12(f) must show the lack of any conceivable connection between the allegations and the subject of the case. *Anderson v. Davis Polk & Wardwell LLP*, 850 F.Supp.2d 392, 417 (S.D. N.Y. 2012). Eastern Profit cannot show that here. This may be why it mistakenly describes this case as only about a breach of contract (p. 2, ¶ 1). In truth, Eastern has itself asserted a fraud claim and, importantly to the counterclaims, Strategic Vision does the same. Strategic Vision is entitled to allege and prove that Guo's status as a dissident and the use to which he intended to put its research was material. Indeed, the contract's express "purpose" is to protect innocent parties from harm. As set forth above, Guo was not who he claimed to be, and the contract was not for the purposes he claimed. Proof of this type utilizes direct and circumstantial evidence, and the allegations appropriately pled facts that, if true, make it plausible the parties were at cross-purposes in entering into the contract. *Lynch v. Southampton Animal Shelter Foundation Inc.,* 278 F.R.D. 55, 63 (E.D. N.Y. 2011) ("Immaterial' matter is that which has no essential or important relationship to the claim for relief, and 'impertinent' material consists of statements that do not pertain to, and are not necessary to resolve, the disputed issues.")

Moreover, Eastern Profit did not show prejudice from allowing the counterclaims to be resolved here. *Lynch,* 278 F.R.D. at 63; *Great Rock Golf 2006, LLC v. Town of Riverhead*, 2013 WL 3788606, at *8 (E.D. N.Y. 2013). Indeed, Eastern Profit cannot have it both ways—if Guo and Eastern Profit are truly separate, then why does Eastern Profit care about Guo? This question, in turn, brings us back to Strategic Vision's pleading. Too many facts have accumulated for Eastern Profit to pose as a regular business entity that is shocked, flummoxed and outraged when a party it has sued chooses to defend itself based on the misrepresentations, fraudulent intent, and conduct of the outspoken public personality who animates it. Strategic Vision pleads that this person is Guo Wengui, and should be able to prove it.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF