

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

August 15, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

**Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF**

Dear Judge Freeman:

On behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), we seek relief from the refusal of two non-parties to abide by duly-served Fed. R. Civ. P. 45 subpoenas for documents and testimony.

The subpoenas seek critical information from persons or entities who should possess it. One entity, Golden Spring (New York) Limited ("Golden Spring"), was appointed by Eastern Profit as its attorney-in-fact not only to negotiate and oversee the contract at issue in this case, but also to aid Eastern Profit in this very litigation. Its then-CEO, Yvette Wang ("Wang"), was Eastern Profit's first, unsuccessful 30(b)(6) witness at a January 2019 deposition.

The other subpoenaed person is Karin Maistrello. Until recently, Maistrello, a New Jersey resident, made a living advertising Italian/Mandarin translation services on the Internet, but she rapidly developed a puzzling array of connections to this case:  serving as the sole director of supposed Hong Kong fund manager ACA Capital Group Limited ("ACA"),—the entity that wired Strategic Vision $1 million purportedly to make Eastern Profit's contractual deposit; appearing on self-produced videos with Guo Wengui ("Guo"), the man behind Eastern Profit and likely most of the other entities who cluster around it; notarizing key documents in this case, such as the Golden Spring power-of-attorney and Eastern Profit's verified interrogatory responses signed by Wang. The attorneys who emerged on the response deadline as her counsel—who also turned out to be Guo's own counsel—claim she "knows nothing." Her counsel claim that someone hurriedly terminated her as a director of ACA within the 72-hour window between the notice of her subpoena—sent solely to Eastern Profit's counsel, but apparently rapidly dispersed to others who could act immediately for ACA—and personal service on Maistrello. Strategic Vision's unsuccessful efforts to obtain testimony from Eastern Profit, Eastern Profit's self-identified "principal," and Guo are the subject of separate letters to the Court.



These parties' seeming collusion with Guo and Eastern Profit, and their refusal to cooperate as the clock runs out on discovery, is preventing Strategic Vision from preparing its case for summary disposition or trial. The non-parties' objections to the documents sought are not well-founded, as the categories were narrowly tailored and directly tied to the facts and issues raised by the pleadings. The outright refusal to sit for depositions already noticed, based on nothing more than implausible "lack of knowledge" objections, is procedurally improper because the parties have failed to seek, let alone obtain, permission from the Court to not appear. *Solargen Elec. Motor Car. Corp. v. American Motors Corp.*, 506 F. Supp. 546, 552 (N.D. N.Y. 1981) ("A *deponent* [] may seek a protective order from the court … *The burden then rests upon the objecting witness* to set forth grounds for the issuance of a protective order, such as the existence of a privilege.") (emphasis added).  Strategic Vision is entitled to an order directing the non-parties to produce the documents in advance of their noticed depositions and to give the requested testimony.

<u>Factual Background</u>

Plaintiff/Counterclaim Defendant Eastern Profit Corp. Ltd. ("Eastern Profit") purports to be a foreign entity organized under the laws of Hong Kong and based there.  Eastern Profit is not registered to do business in New York, and has no registered or official agent in the jurisdiction. Despite the age of this case, the nature of Eastern Profit's business remains unknown, and its Fed. R. Civ. P. 30(b)(6) witness (Wang) could not identify whether Eastern Profit has any employees, officers, directors, clients, affiliated companies, or the like. Wang testified she had never even heard of Eastern Profit until shortly before it entered into the January 2018 research contract at issue, which Wang helped negotiate. When asked whether Eastern Profit has books and records, Wang testified "I have no idea. You should ask them," and "If you ask me the whole history of the records of Eastern, I'm sorry, I cannot help." Strategic Vision has separately sought relief to compel Eastern Profit to provide the corporate testimony required by Fed. R. Civ. P. 30(b)(6).

Strategic Vision believes that Eastern Profit is a shell entity existing solely to represent the interests of Guo, a Chinese national living in the United States.  Eastern Profit has produced no discovery indicating otherwise. The undisputed facts instead evidence that, in late 2017, two of Guo's emissaries separately approached Strategic Vision to discuss whether the company's global research services could aid Guo in his personally-advertised mission as an outspoken anti-Communist dissident. Over the course of a month, Strategic Vision met with Guo personally and the two individuals he alternately designated as his key spokespeople—Wang and Lianchao Han. They discussed a variety of proposals, ultimately settling on the research contract here. Shortly before it was signed, Guo inserted Eastern Profit—an entity that had not been previously identified, but which filled a slot that Guo had said would be assumed by some corporate placeholder—as the purchasing party under the contract. The contract called for Strategic Vision to serve as Eastern Profit's global research consultant for a fixed period regarding a number of individuals Guo represented to be Chinese Communist Party ("CCP") members or agents.



Strategic Vision understood that its services would aid Guo's advertised efforts as a Chinese dissident to foster regime change in China by exposing CCP and government corruption. Guo's representations seemed reliable at the time. Early in President Donald Trump's administration, Guo had advertised his origin story and public persona using his Twitter and YouTube channels and conservative media and mainstream media such as Politico. He has also been a litigant in at least 30 lawsuits, in many of which Guo argues his credentials as a dissident—or asserts claims for defamation against those who disagree. Guo also cultivated friends in the White House, including Stephen K. Bannon who, as alleged in the Counterclaims, makes public appearances with Guo and traveled to China on behalf of Guo. It was this "Guo" with whose business entity Strategic Vision thought it was contracting. Had Eastern Profit not been wholly under Guo's control, as he had then represented to Strategic Vision, there would have been no contract because Eastern Profit appears to have no reason to exist other than Guo. The Counterclaim pleads Guo's control over Eastern Profit, and Strategic Vision believes that Guo's story is Eastern Profit's, and vice versa.

It was only later that Strategic Vision learned Guo had falsely represented the purpose to which he intended to put Strategic Vision's work under the contract—misrepresentations material to Strategic Vision because it supports regime change in China and would never aid the work of someone who supports the CCP. Among other facts alleged in Strategic Vision's counterclaim, Strategic learned that an initial set of names for which Eastern Profit sought Strategic Vision's advice had been designated by the U.S. government as "Records Protected." This status, Strategic Vision learned, meant that information concerning the subjects' status and activities was not subject to disclosure under the methods that the law allowed Strategic Vision's team to use. Indeed, doing so could be a criminal activity. Alerts to Guo failed. When Strategic Vision refused to violate the law, Eastern Profit terminated the contract. Had Strategic Vision known that Guo was intending to use its services to further, not frustrate, the objectives of the Chinese government and CCP, Strategic Vision would have refused the engagement altogether. Strategic Vision entered the contract under a serious misapprehension fostered by Guo and his intermediaries.

The pleadings are not fully closed because Eastern Profit has not yet answered Strategic Vision's July 19, 2019 counterclaims but, at present, each party has claims against the other for breach of contract and fraud. Eastern Profit seeks "return" of $1 million in funds paid to Strategic Vision. The funds were not paid by Eastern Profit, but by a non-party called ACA Capital Group Limited ("ACA"), which purportedly had a loan agreement with Eastern Profit, although Wang testified that she asked to review the document and never received it. A "loan" agreement was later produced in discovery. Eastern Profit asserts theories of contract and fraud (*i.e.,* that Strategic Vision misrepresented its capabilities and that this was material given Guo's needs). Strategic Vision's response asserted two counterclaims: breach of contract and fraudulent misrepresentation. The contract claims flow directly from course-of-performance demands and acts directed by Guo that violated the duty of good faith and fair dealing; the fraudulent inducement claims flow directly from Guo's materially false claims regarding his dissident status and his

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com



intended uses of Strategic Vision's work.  Eastern Profit has additional claims for unjust enrichment and declaratory judgment. Hodgson thus mistakenly asserts for both of its clients that "the Action concerns a breach of contract …" That is far from a complete description of the case.

Earlier in discovery, Eastern Profit asserted that it would participate and provide information in discovery through an entity called Golden Spring (New York) Limited ("Golden Spring"), a Delaware corporation that until recently had its principal place of business a few hundred feet north of Guo's Fifth Avenue, NY, NY apartment. Golden Spring claims to be Eastern Profit's attorney-in-fact for certain purposes, including this litigation. Golden Spring's CEO is Wang. Wang claims that Eastern Profit and the Guo family are both "clients" of Golden Spring, and has claimed that Golden Spring is a Guo family office. (Oddly, Guo, also testifying for Eastern Profit, denies that Golden Spring serves as his family office).

Not surprisingly, Golden Spring is represented by Hodgson, which also represents Guo in this case, including at his August 2, 2019 deposition by Strategic Vision.  In other matters, Guo is actually represented by Eastern Profit's counsel herein, including in a defamation action Guo is prosecuting in the Eastern District of Virginia federal court. Thus, every attorney for every person or entity that is a party or witness on Eastern Profit's side of this case owes a duty of loyalty to Guo.

<u>Events Concerning the Subpoenas at Issue</u>

On June 28, 2019, when the undersigned was substituted into this case, the discovery deadline for this case was extended to September 27, 2019, based on Strategic Vision's desire to finish the Rule 30(b)(6) deposition of Eastern Profit and to take five or six key witness depositions, many of whom were non-parties. This would clearly require cooperation on scheduling, among other things. On July 12, 2019, Strategic Vision's counsel informed counsel for Eastern Profit and Hodgson (which already represented Guo, a former party and now a non-party in the case) that depositions were planned for, among other non-party witnesses, Karin Maistrello (a director of ACA based on documentary evidence produced early in discovery) and a corporate representative of Golden Spring: "I also intend to depose the following in August, and would like to know whether either of you will be representing these witnesses (or if you know whether they are separately represented, in which case I'll reach out to their counsel)." The purpose of the email was also to help coordinate five or six depositions in different cities among multiple sets of counsel. Hodgson, copied on the email because its attorneys already represented Guo personally, never responded.

On July 19, 2019, Strategic Vision's counsel informed counsel for Eastern Profit and Hodgson that he had not been advised whether counsel was representing Maistrello, ACA, or Golden Spring and that he would proceed to serve subpoenas directly to them. With Hodgson attorneys copied, counsel for Eastern Profit and Strategic Vision proceeded to set dates for depositions in New York (the August 22 and 23 depositions at issue here) and Washington, D.C., (August 28 and 29). The



subpoenas were noticed on July 24, 2019, and served soon thereafter.  Hodgson does not contest service of the subpoenas on Maistrello or Golden Spring.

Under Fed. R. Civ. P. 45(d)(2)(B), Maistrello and Golden Spring had 14 days to serve objections to the requests for documents.  On the 14th day (a Friday night), and after close of business, one of the Hodgson attorneys who had been on the previous email correspondence wrote to Strategic Vision for the first time acknowledging that Hodgson did in fact represent Maistrello and Golden Spring. Strategic Vision's counsel had posed this very question nearly a month earlier, receiving no response over an extended period. Hodgson's correspondence objected to virtually every document request, and further advised that Maistrello would not appear for her noticed deposition. Hodgson left silent whether Golden Spring planned to appear for its noticed deposition but advised that its objections to the document requests "apply equally to the Subpoena's proposed deposition topics." Further, Hodgson claimed that it was unavailable on the date that counsel had negotiated by email the previous month for the Golden Spring deposition—with Hodgson copied, but refusing to participate or disclose its representation. Counsel promised to supply "new dates" sometime "in September."

In this letter and an ensuing conference, Strategic Vision learned several surprising facts about service of the subpoenas on Maistrello and ACA. As Hodgson had indicated in its objection letter to the Maistrello subpoena, she was served on July 27, 2019 with a subpoena issued by this Court dated July 24, 2019.  On July 27, 2019, Maistrello also was served with a Rule 45 subpoena directed to ACA dated July 24, 2019.  Strategic Vision had correctly ascertained that Maistrello was an ACA director, and she was served at a location in New York City. (Maistrello also appears to work for Golden Spring, and she acts as a co-host of Chinese-themed broadcasts alongside Guo and Stephen K. Bannon. Maistrello is also President and Treasurer of the Rule of Law Society, a non-profit advocacy organization regarding China, which Guo founded and Bannon chairs.)

Serving Maistrello with the ACA subpoena complied with New York personal service requirements for a corporation, which require personal delivery to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service for the organization.  N.Y. Civ.Prac.L. § 311(a)(1).  However, Hodgson contended in its objection letter that Maistrello could not accept service of a subpoena on ACA because she was no longer a director of the organization.

During a discovery conference with Hodgson on August 12, 2019 regarding the subpoenas, Strategic Vision's counsel learned that Maistrello had been removed as an ACA director in between the date of notice served solely on Eastern Profit's counsel—July 24, 2019—and July 27, 2019, the date of personal service. Strategic Vision believes Maistrello could only have been removed to interfere with the service of a Rule 45 subpoena on ACA. Maistrello is the only known director of ACA and Maistrello's refusal to accept the service for ACA prejudices Strategic Vision at this late date in the discovery process. Further, ACA's ability to learn of the impending



subpoena from Eastern Profit, to turn on a dime, and remove Maistrello from Hong Kong, half a world away, raises intriguing questions about the connection between ACA and Eastern Profit. Even if a lightning-fast maneuver has deprived this Court of jurisdiction to enforce a subpoena against ACA, Strategic Vision believes it is a proper avenue of inquiry of Maistrello herself.

On August 12, 2019, Strategic Vision's counsel spoke with Hodgson to attempt to avoid involving the Court.  Hodgson advised that Maistrello and Golden Spring would stand on their objections to producing the documents, that Maistrello would not appear for her deposition, and that Golden Spring also did not intend to appear for its previously-scheduled deposition.  Having reached an impasse, Strategic Vision now seeks the Court's assistance.

<u>Maistrello and Golden Spring Cannot Unilaterally Refuse to Testify</u>

Non-parties must respond to Rule 45 subpoenas directing testimony *ad testificandum*, meaning that the service of the subpoena itself commands testimony without further order of the Court. In *Solargen*, the court rebuked two reporters who refused to appear at their depositions, finding that they should have appeared at the deposition to assert the privileges they invoked to particular questions.  To find otherwise "would go against the duty 'which the citizen owes his government . . . to support the administration of justice by . . . giving his testimony whenever he is properly summoned." 506 F. Supp. at 552. This is confirmed by the plain language of Rule 45.  As to a subpoena for documents, a non-party can submit a timely objection to the party issuing the subpoena and then it is required of the issuing party to give notice to the non-party and move the Court for an order compelling production.  Fed. R. Civ. P. 45(d)(2)(B)(i). Rule 45 contains no similar provision for testimony commanded by a subpoena, and cases like *Solargen* hold that the "[t]he burden then rests upon the objecting witness" to obtain relief from the Court in advance of a deposition.  *Id.  See also  Jones v. Hirschfeld*, 219 F.R.D. 71, 75 (S.D. N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant."). Accordingly, Maistrello and Golden Spring cannot simply fail to appear for their depositions with the "courtesy" of an advance objection, as they have attempted to do.[1] Strategic Vision asks the Court to enter an order directing their attendance at the noticed depositions.

<u>The Documents Sought by the Subpoenas to Maistrello and Golden Spring</u>

In accordance with local court rule 37.1, Strategic Vision sets out the document requests to Maistrello and Golden Spring and their objections.

---

[1]    Hodgson did not make entirely clear what is position was regarding Golden Spring appearing at its noticed deposition.  Hodgson wrote:  "On the basis of these objections [to the duces tecum requests], GSNY will not produce information concerning the internal organization and structure of GSNY, nor will GSNY produce its financial or other business records unless they specifically relate to Eastern. These objections apply equally to the Subpoena's proposed deposition topics."

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com



Document Requests to Maistrello

1.  Any and all documents reflecting the ownership, management, governance, and structure of ACA, between January 1, 2015, and July 1, 2019.
2.  Any and all documents relating to a communication between ACA and any other party regarding the negotiation, extension, servicing, or collection of a loan from ACA to Eastern Profit Corp., Ltd., between January 1, 2017, and July 1, 2019.
3.  Any and all documents relating to a communication between ACA and any party regarding ACA's transfer of funds to, or attempted retrieval of funds from, Strategic Vision, between December 2017 and January 2018.
4.  Any and all financial statements or tax returns reflecting the income, expenses, assets, or liabilities of ACA, between January 1, 2015 and July 1, 2019.
5.  Any and all documents relating to communications between ACA and any of its agents (including but not limited to Karin Maistrello or William Je), on the one hand, and on the other hand, Guo Wengui, between January 1, 2015 and July 1, 2019.
6.  Any and all documents regarding transfers of funds between ACA and any person or entity working directly or indirectly on behalf of Guo Wengui, Eastern Profit, or Golden Spring (New York), including but not limited to law firms, investigative or research firms, intelligence firms, security firms, or other professional service providers between January 1, 2015, and July 1, 2019.
7.  Any and all documents regarding transfers of funds from ACA to any other person or entity at the suggestion, request, or direction of Guo Wengui, Eastern Profit, or Golden Spring (New York) or any person working on behalf of the foregoing, between January 1, 2015 and July 1, 2019.
8.  Any and all documents reflecting or relating to your work for or with Guo Wengui, ACA, Golden Spring, Steve Bannon, or any entity funded, owned or controlled at least in part by Wengui, between January 1, 2017 and July 1, 2019.

Maistrello's Objections

1.  Ms. Maistrello objects to the Requests on the grounds that they are oppressive, overbroad, and impose an undue burden and expense on her.

2.  Ms. Maistrello objects to the Requests on the grounds that they are beyond the scope of the pleadings because they seek information concerning issues unrelated to the claims or defenses in this action.

3.  Ms. Maistrello objects to the Requests to the extent that they purport to impose burdens or obligations beyond those set forth in the F.R.C.P., Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, or any applicable orders or rulings in this action.

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



4. Ms. Maistrello objects to the Requests on the grounds that that they are vague, ambiguous, and lack sufficient particularity.

5. Ms. Maistrello objects to the Requests on the grounds that they are oppressive, overbroad, and impose an undue burden and expense on GSNY, a non-party, to locate, review, and produce the requested documents or information in view of the relevance and materiality, if any, of said documents or information.

6. Ms. Maistrello objects to the Requests on the grounds that they are not properly limited in time.

7. Ms. Maistrello objects to the Requests to the extent that they seek documents or information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, rule of privacy or confidentiality, protection, or restriction.

8. Ms. Maistrello objects to the Requests to the extent that they seek confidential and/or proprietary business information or information which is otherwise constitutes protected financial, strategic, or trade-secret information.

9. Ms. Maistrello objects to the Requests to the extent that they assume facts presently in dispute and which may not be accurate.

10. Ms. Maistrello objects to the Requests to the extent that they seek documents or information (i) not in Ms. Maistrello's possession, custody, or control, (ii) already in Defendant's possession, custody, or control, or (iii) reasonably available to Defendant from a more convenient, more efficient, less burdensome, or less expensive source than Ms. Maistrello.

<u>The Documents Strategic Vision Seeks from Maistrello are Discoverable</u>

The documents sought from Maistrello in her role as a director of ACA are relevant to Strategic Vision's defenses and claims in the case. They will provide the background, purpose, and facts governing the legal effect of ACA's payment to Strategic Vision of $1 million at the start of its contract with Eastern Profit. Eastern Profit's corporate representative, Wang, could provide none of this information, and testified that her request to simply view the loan agreement between Eastern Profit and ACA was denied. Never having viewed it, Wang was obviously unable to give meaningful testimony about it. Eastern Profit also has failed to disclose how it has been damaged by Strategic Vision not returning funds that Eastern Profit itself did not convey. The funds instead came directly from ACA to Strategic Vision. Without the requested documents, it is unknown whether ACA's payment was intended to evidence its status as some sort of beneficiary of research contract and, if so, whether Guo's various representations about use for Strategic Vision's work product were erroneous because the true recipient of Strategic Vision's services was supposed to be ACA.



The documents will also answer whether there are other instances when ACA made a payment like its payment to Strategic Vision. For example, Strategic Vision believes ACA paid Williams & Connolly $1 million to work on Guo's political asylum application, showing his likely control over ACA. In this way, ACA's records will flesh out Guo's relationship with ACA. This, in turn, will shed light on his purported status as a Chinese dissident whose China and Hong Kong assets have been frozen by the Chinese government in retaliation for his anti-communist views. Further, the documents will reveal whether Eastern Profit communicated with ACA about the loan or its repayment and whether either required Eastern Profit to turn over Strategic Vision's work product, which by contract was to be kept strictly confidential to the contracting parties.

If Maistrello truly has concerns about the cost of copying the materials, Strategic Vision will cooperate to advance that cost. But Maistrello has yet to provide any substance to support her claim of burden.  Given the relatively small production of materials by Eastern Profit (approximately 300 pages), it cannot be assumed that Maistrello has a significant number of documents.  The contract existed less than 4 months before Eastern Profit terminated it.  For these reasons, the Court should order Maistrello, who lives within this Court's jurisdiction, to produce the requested documents.

Document Requests to Golden Spring

1. Any and all documents reflecting the ownership, management, governance, and structure of Golden Spring (New York) Limited (hereinafter, "Golden Spring"), between January 1, 2015, and July 1, 2019.
2. Any and all documents relating to Golden Spring's and/or Yvette Wang's work on behalf of Eastern Profit, Guo Wengui, or any other person or entity with respect to the negotiation or performance of a contract between Eastern Profit and Strategic Vision.
3. Any and all documents relating to Golden Spring's and/or Yvette Wang's work on behalf of Eastern Profit, Guo Wengui, or any other person or entity with respect to litigation between Eastern Profit and Strategic Vision.
4. Any and all documents relating to any investigative work performed by Golden Spring or Yvette Wang for Eastern Profit, Guo Wengui, or any other person or entity between January 1, 2017 and July 1, 2019. For purposes of this request, "investigative work" means: any work of the type for which Strategic Vision contracted with Eastern Profit; any gathering or transmittal of information on the 92 names provided to Strategic Vision for research; any gathering or transmittal of information on suspected Chinese dissidents or suspected Chinese Communist Party members; or any gathering or transmittal of information on Strategic Vision, French Wallop, or Mike Waller.
5. Any and all financial statements or tax returns reflecting the income, expenses, assets, or liabilities of Golden Spring, between January 1, 2015 and July 1, 2019.
6. Any and all audio or video recordings of Yvette Wang, Guo Wengui, Steve Bannon, Han Chunguang, Karin Maistrello, French Wallop, or Mike Waller recorded or posted to the internet between January 1, 2017 and July 1, 2019.

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



7. Any and all documents regarding transfers of funds between Golden Spring and (a) Guo Wengui or any other entity controlled by him, including but not limited to Eastern Profit Corporation, Ltd., or ACA Capital Group Limited, or (b) any law firms, investigative or research firms, intelligence firms, security firms, or other professional service providers between January 1, 2015, and July 1, 2019, or (c) any other person or entity, if the transfer was made at the suggestion, request, or direction of Guo Wengui or Eastern Profit or any person working on behalf of the foregoing, between January 1, 2015 and July 1, 2019.

<u>Golden Spring's Objections</u>

1. GSNY objects to the Requests to the extent that they purport to impose burdens or obligations beyond those set forth in the F.R.C.P., Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, or any applicable orders or rulings in this action.

2. GSNY objects to the Requests on the grounds that they are beyond the scope of the pleadings because they seek information concerning issues unrelated to the claims or defenses in this action.

3. GSNY objects to the Requests on the grounds that that they are vague, ambiguous, and lack sufficient particularity.

4. GSNY objects to the Requests on the grounds that they are oppressive, overbroad, and impose an undue burden and expense on GSNY, a non-party, to locate, review, and produce the requested documents or information in view of the relevance and materiality, if any, of said documents or information.

5. GSNY objects to the Requests on the grounds that they are not properly limited in time.

6. GSNY objects to the Requests to the extent that they seek documents or information protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege, immunity, rule of privacy or confidentiality, protection, or restriction.

7. GSNY objects to the Requests to the extent that they seek confidential and/or proprietary business information or information which is otherwise constitutes protected financial, strategic, or trade-secret information.

8. GSNY objects to the Requests to the extent that they assume facts presently in dispute and which may not be accurate.

9. GSNY objects to the Requests to the extent that they seek documents or information (i) not in GSNY's possession, custody, or control, (ii) already in Defendant's possession, custody, or control, or (iii) reasonably available to



Defendant from a more convenient, more efficient, less burdensome, or less expensive source than GSNY.

<u>The Documents Strategic Vision Seeks from Golden Spring are Discoverable</u>

Eastern Profit has relied on Golden Spring and its CEO (Yvette Wang) to provide discovery in this case. For instance, Wang testified as Eastern Profit's Rule 30(b)(6) representative but not as its employee, director, or officer. Instead, Wang testified as an agent for Golden Spring, which Eastern Profit appointed as its agent under a power of attorney. This unusual approach justifies discovery of documents that can identify who was involved in the decision to grant a power of attorney, why the instrument granting the authority was signed a year after negotiation of the research agreement began and well into this litigation, what the relationship is between Golden Spring, Eastern Profit, and Guo, and the like. The requested documents may resolve unanswered questions necessary to determine who controls, runs, or makes decisions for Eastern Profit and how, in turn, that entity had any sort of existence making it capable of experiencing any of the injury for which Eastern Profit seeks redress. Thus far, Eastern Profit's witnesses have failed to answer whether the entity even has books and records, bylaws, articles of incorporation, minutes of meetings, annual financial statements, or the like, let alone what the content of these materials are.

Moreover, Hodgson objects to both subpoenas by claiming that the underlying case is one for breach of contract. While each party does assert that theory, each also asserts fraudulent inducement. In particular, Strategic Vision alleges that Guo (acting on behalf of Eastern) fraudulently induced it to enter into the contract by misrepresenting his dissident status and the ends to which he intended to put Strategic Vision's work product—baseline promises that are essential in this highly sensitive area of work. Eastern Profit has additional claims for unjust enrichment and declaratory judgment. In short, matters outside the contract are certainly at issue and are now at the core of this case.

Yet even contractual theories support a wide range of discovery. One of Strategic Vision's theories is that Eastern Profit frustrated performance under the contract. Other researchers appeared to be covering the very same subject-individuals, creating a security risk for Strategic Vision's own researchers and causing some of the subjects to erect defenses. Guo had claimed during contract negotiations that he had other research teams. Further, Wang, Golden Spring's CEO (perhaps former CEO) would likely have been the project manager for any such work. Thus, the subpoena requests documents showing whether Golden Spring was doing this alternative work. The same discovery will also help indicate what type of electronic research work was commercially possible, in what time frame, and at what cost—issues in the parties' contract dispute.

Eastern Profit, as noted above, produced 300 pages of materials, and is not willing to identify or produce one officer, director, or employee as a witness. In contrast, Golden Spring seems likely to be (or to have been) the heart of Guo's operation, working through shell companies such as Eastern Profit at will and as necessary for specific projects. Golden Spring—already designated, for some reason, as Eastern Profit's "attorney in fact" for purposes of contract

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



negotiation and this litigation—cannot hide behind Eastern Profit any longer. It is late in discovery, and it is now time for Golden Spring to step forward, explain who it is and who it answers to, and share its information and documents.

Strategic Vision looks forward to discussing these issues with the Court at the telephone conference scheduled for August 21, 2019.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com