

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

August 19, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

   Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF

Dear Judge Freeman:

       This reply on behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision") provides further support for its August 6, 2019 letter motion regarding the failure of Plaintiff/Counterclaim Defendant Eastern Profit Corp. Ltd. ("Eastern Profit") to furnish Fed. R. Civ. P. 30(b)(6) testimony.

   I.   Introduction

       Strategic Vision seeks the discovery to which it is entitled as a matter right under Rule 30(b)(6). By using the unconditional directive, "must," Rule 30(b)(6) mandates both a corporate litigant's designation of a qualified witness and that the designee "testify about information known or reasonably available to the organization." *See also Starr Indemnity & Liability Co. v. Water Quality Insurance Syndicate*, 320 F. Supp.3d 549, 564 (S.D. N.Y. 2018) (citation omitted). There is perhaps no clearer guidance for the deposition process in the federal rules. However, Strategic Vision has been deprived of Rule 30(b)(6)'s benefits in this case. On two separate days, months apart, Eastern Profit has designated witnesses who failed to give informed testimony on its behalf. Five weeks before discovery ends, Strategic Vision knows almost nothing about Eastern Profit.

       Before writing Judge Koeltl on August 6th, Strategic Vision had already spent more time negotiating the terms of a second, curative 30(b)(6) Eastern Profit deposition (ultimately taken August 2, through Guo Wengui) than Mr. Guo actually spent giving responsive, knowing answers about Eastern Profit—an entity Strategic Vision alleges is under Guo's control. After a planning call with Your Honor and after receiving Eastern Profit's letter-response on August 13, 2019, Strategic Vision spent at least as much time all over again. It held two more extended conferences with Eastern Profit's counsel. Strategic Vision even prepared for Eastern Profit, topic by topic, a virtual outline of a proposed third curative deposition, with over 100 illustrative questions.

       Now, the core dispute is clearer than ever. Eastern Profit, Guo, and the other non-parties object to discovery on almost identical grounds. Specifically, Eastern Profit, Guo, and company simply do not want Strategic Vision to discover facts that lie at the center of this case: whether

1



Guo Wengui controls Eastern Profit and the other entities who supposedly act as its agent (Golden Spring) and lender (ACA) in this dispute. If Guo *does* exercise this control, several consequences follow. First, Guo's representations to Strategic Vision about his own status, and the purpose to which he intended to put Strategic Vision's research, are chargeable to Eastern Profit and support Strategic Vision's fraud counterclaim. Second, Guo's control will also explain how Guo's actions and demands frustrated and undermined Strategic Vision's ability to perform for his shell entity, Eastern Profit, supporting Strategic Vision's defenses and its breach of contract counterclaim. Third, Strategic Vision will be able to show that ACA simply wires funds at Guo's direction for his own projects, and that the purported "loan" between Eastern Profit and ACA, documented in an unauthenticated writing produced one year into this litigation, is a sham. If that is true, Eastern Profit cannot recover even if it prevails on its breach of contract and "illegal contract" claims.

Tellingly, Eastern Profit did not object to these inquiries in the months before Strategic Vision filed its counterclaims; it simply produced a witness who claimed she didn't know the answers. Its belated objections, made in lockstep with Guo and other entities he likely controls, must fail. Eastern Profit must produce a newly-cooperative Guo, or some other witness who can completely convey all of Guo's knowledge, so that Strategic Vision can fully explore his relationship with these entities.

## II.   Strategic Vision Fully Engaged the Discovery Conference Process Before Seeking Relief

Strategic Vision tried in earnest to resolve this problem before writing on August 6th.  Its efforts included an in-person discussion on June 28, 2019, numerous telephone calls and written exchanges with opposing counsel starting in July, 2019, and Strategic Vision agreeing to take a deposition on August 2, 2019 that would allow Eastern Profit to "adopt" as its own the testimony of critical fact witness Guo Wengui ("Guo"), the person with the most substantial relationship to Eastern Profit. There, Guo testified that ███████████████████████████ ███████████████ (Eastern Profit's counsel had indicated Guo was asked but had refused). In this atmosphere, it is not surprising that the deposition did not solve anything for Eastern Profit. Over 200 times, Guo stated he ████████████████ basic information and 40 times heeded his counsel's ████████████████████ These circumstances are detailed in separate correspondence to the Court.

During and after Guo's Friday, August 2 deposition, Strategic Vision orally conveyed that few of the gaps in Eastern Profit's testimony had been filled, and detailed those failures in an email the very next morning. Eastern Profit continued the impasse between the parties by making two unacceptable proposals:  (1) to answer interrogatories rather than give testimony, even though Rule 30(b)(6) ensures the progressive opportunity to obtain information through live testimony at one sitting; or (2) to present its first corporate representative (Yvette Wang) for a second time (representing a third deposition of Eastern Profit), even though Wang was unable and, at times, outright refused to provide relevant information at her first deposition.[1]

---

[1]    Eastern Profit claims that after its counsel replied to Strategic Vision's initial email by asking for Strategic Vision's "thoughts" about how to proceed, Strategic Vision failed to respond and then simply filed its letter with Judge Koeltl. That is incorrect. In fact, Strategic Vision did respond to Eastern Profit just two hours later,

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



For example, when asked the basic question whether Eastern Profit has books and records, Wang testified, ████████████████████████████████ ████████████████████████████ These combative responses were triggered by questions easily within the notice. Strategic Vision therefore views the return to Wang with skepticism. Most of the information Wang needs to prepare likely resides either with Guo (who was uncooperative at his own deposition) or Han Chunguang (whom Eastern Profit refuses to produce). Wang is not an officer, director, or employee of the Eastern Profit and had never even heard of the entity until shortly before it was inserted as the contracting party in the 2018 research agreement with Strategic Vision. The agreement had been negotiated by Guo, and later by Wang, who reported to Guo and obtained his approval for the contract just before it was signed.

Not only did Eastern Profit make two proposals that would cause prejudice to Strategic Vision, it also rejected as putting it in an "impossible position" Strategic Visions' own offer to give Guo a second deposition where he officially would sit as a corporate representative prepared to testify on the topics at issue. Eastern Profit identified no acceptable alternative witness. Accordingly, Strategic Vision's request for relief on August 6th was neither premature nor without compelling support.[2] As discussed below, Strategic Vision simply wants its third go-round to involve a witness who is actually prepared to explain what Eastern Profit is and what it does, the real identity of the persons or entities who control it, and how and why it made the decisions and representations at issue in this case. Strategic Vision must be able to complete discovery into its breach of contract and fraud counterclaims in the dwindling time that remains.

III.    The Relevance of the Agreed Topics About Which Eastern Profit Failed to Testify

Eastern Profit's refusal to answer deposition questions has no foundation in any earlier complaint about the noticed topics. Indeed, Eastern Profit sought no relief about the topics prior to the first deposition in January or the subsequent deposition on August 2nd. Eastern Profit also never sought to be relieved of its obligations under Rule 30(b)(6) due to some sort of unusual circumstance. Its complaints now that presenting a qualified witness is cumbersome and involves taking "an impossible position" come far too late.

Eastern Profit also does not directly address any of the examples provided in Strategic Vision's opening letter showing Eastern Profit's witnesses failing or refusing to answer questions.

---

explaining that "I am not sure who's left other than Guo himself. Yvette Wang knew little, and in any event apparently no longer works for Golden Spring, EP's purported attorney-in-fact. I suspect Han Chunguang may be unreachable…Who else would you propose?" Only after Eastern Profit failed to respond did Strategic Vision file its letter seeking a conference with Judge Koeltl, which under his rules is a condition precedent to a motion to compel. Given the short time remaining for scheduling any depositions, Strategic Vision remained open to discussion, or an answer to its question. Yet Eastern Profit fell silent for a week, and waited until its own filing with Your Honor on Monday August 12, 2019, to answer Strategic's question about what it would "propose."
[2]    Eastern Profit introduces its response by implying that Strategic Vision lacks clean hands, casting stones at Strategic Vision for allegedly having problems with the prior two law firms representing it in this case. This attempt to distract the Court from the substantive discovery failures of Eastern Profit must fail. Strategic Vision's relationship with its prior counsel cannot have any bearing on Eastern Profit's own obligations under Rule 30(b)(6) and the conduct of its own witnesses while giving depositions.



Instead, Eastern Profit makes a blanket assertion that "[t]he questions Strategic Vision now seeks to probe are largely irrelevant given that Strategic Vision is no longer pursuing an alter ego claim, which was dismissed by this Court." Eastern Profit is referencing an earlier-pending claim by Strategic Vision against Guo individually that was dismissed. However, as shown immediately below, the alter-ego theory raised there was not the only—or even the most significant—reason that Guo's control of Eastern Profit remains central to this case.

**Topics 1 and 2: the Research Agreement, negotiations concerning the same, and the structure of Eastern Profit, including its principals and affiliation with Guo.**

The parties' breach of contract and fraud claims depend on whether Guo was controlling (and thus speaking for) Eastern Profit when he made representations about his needs and the intended use of the research at issue. Guo's early, outcome-determinative (and false) statements to Strategic Vision about his political status and the purpose for which the contract's fruits would be used are attributable to Eastern Profit and are a proper area of inquiry at its corporate deposition. Had Strategic Vision known that Guo was not intending to use its services to undermine the Chinese government and CCP, Strategic Vision would have refused the engagement altogether. Strategic Vision entered the contract under a misapprehension fostered by Guo and his intermediaries during negotiations, and discovery of the misrepresentations is entirely appropriate. Likewise, Strategic Vision is entitled to ask questions to establish the nature of its alleged misrepresentations to Eastern Profit, including when and to whom each representation was made.

Further, Eastern Profit's demands as the contract was performed all revolved around Guo's reported needs for the information. Strategic Vision's defenses and breach of contract counterclaim will show that Guo's demands and other actions are attributable to Eastern Profit, and kept Strategic Vision from performing under the terms of the agreement.

Finally, Eastern Profit seeks return of what it claims is "its" $1 million, either under its breach of contract claim or its "illegal contract" theory. To defend these claims, it is fully appropriate to ask questions necessary to determine who controls, runs, or makes decisions for Eastern Profit and how, in turn, that entity had any sort of existence making it capable of experiencing any of the injury for which Eastern Profit seeks redress. For example, was the $1 million wired by ACA to Strategic Vision really an asset of Eastern Profit? Or did ACA simply serve as a repository of funds, disbursed from time to time at Guo's instructions and for his own purposes? Is the so-called loan agreement between ACA and Eastern Profit for $1 million, produced a year into the case, authentic, and was it a real loan transaction?

Thus far, Eastern Profit's witnesses have failed to state whether the entity even has books and records, bylaws, articles of incorporation, minutes of meetings, annual financial statements, or the like, let alone what the content of these materials are. Strategic Vision also is entitled to ask about the history of the entity, including who controls it, the true nature of its business, whether it has clients or customers, and the identity of its directors/officers/employees/contractors. Similarly, whether Eastern Profit has assets, liabilities, income, bank or financial accounts, or whether its assets have been frozen in Hong Kong due to charges that it is engaged in a money-laundering conspiracy with Guo or his family, are matters directly related to a possible judgment on Strategic Vision's counterclaims.

Finally, under these agreed deposition topics, Strategic Vision is entitled to ask why Eastern Profit has presented a power of attorney granted to a different entity (Golden Spring (New York) Limited) in connection with negotiating the agreement, performing the agreement, and litigating and providing discovery in this case. This unusual approach to providing discovery should be explained by Eastern Profit's witness answering questions about, for example: who was involved in the decision to grant the power of attorney, why the instrument granting the authority was signed a year after negotiation of the research agreement began and several months into this litigation, and the nature of the relationship between Golden Spring, Eastern Profit, and Guo.

**Topic 3: the structure of ACA Capital Group Limited, including its principals and affiliation with Guo**

Strategic Vision has alleged in the counterclaim that Eastern Profit has little or no assets and therefore Guo had a different entity (ACA Capital Group Limited) wire a deposit to Strategic Vision. Strategic Vision believes that ACA is itself under Guo's control or influence.[3] Although the third agreed topic was "the corporate structure of ACA Capital Group Limited, including its principals and affiliation with Eastern and/or Mr. Guo," Wang ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (A document purporting to be the loan, signed by Han Chunguang—who is relevant below—was later produced; precisely who ▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮ is itself an interesting question.)

For his part, Guo ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and further aver that he assisted in their preparation. At his deposition, Guo claimed to lack information ▮▮▮▮▮▮▮▮▮▮▮▮▮ Thus, because of Eastern Profit's failure to designate a qualified witness, Strategic Vision has no context for this payment, other than that a loan agreement between Eastern Profit and ACA allegedly exists. The circumstances and terms of the loan agreement, the association between these two entities, and their relationship to Guo, the business purpose and history of ACA, its shareholders, owners, parent/subsidiaries, location of assets, investors, and other instances when it made payments to benefit Guo like the $1 million here, are all areas that should be, but have not been, explored because of Eastern Profit's failure to abide by its Rule 30(b)(6) responsibilities.

**Topic 4: Eastern Profit's Performance**

The fourth agreed topic ("Eastern Profit's performance under the Agreement, including (i) all information provided by Eastern Profit to Strategic Vision and (ii) Eastern Profit's adherence to

---

[3] The circumstances of the past two weeks amply support the intuition that Eastern Profit, Guo, and ACA are linked. On July 24, 2019, counsel for Eastern Profit received notice via email that Strategic Vision was directing a subpoena to ACA, to be served consistent with New York law on its director, Karin Maistrello. The notice was not filed or made publicly known. Maistrello was personally served in New Jersey just 72 hours later, on July 27, 2019. Now, Maistrello—being represented by Guo's counsel—admits through counsel that ACA, an entity based in Hong Kong, somehow removed her from the ACA directorship during the brief window between notice to Eastern Profit and personal service. If allowed to stand, this artifice could defeat service on ACA. ACA, Maistrello, and Guo's counsel could only have been alerted by Eastern Profit.

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



Strategic Vision's directives") goes directly to Strategic Vision's defenses and counterclaims. They invoke issues about Eastern Profit's frustration of Strategic Vision's performance by, for example, identifying research targets for Strategic Vision using unencrypted flash drives that were infected with sophisticated malware. Further, the counterclaim alleges that the parties mutually covenanted to use good faith and fair dealing when undertaking their respective performances and any actions pursuant to the contract. At a minimum, this included each party's covenant not to prevent or frustrate the performance of the counter-party or to take action that would deprive the counter-party from receiving the benefits of the contract.  In the counterclaim, Strategic Vision lists several other specific instances when Eastern Profit violated its contractual covenants. Strategic Vision is entitled to question a witness qualified to address them.

### Topic 5: Strategic Vision's Performance

The final agreed topic ("Strategic Vision's Performance under the Agreement") enabled Strategic Vision to ask questions regarding why its product, delivered before Eastern Profit terminated the contract, was not useful or timely.  Strategic Vision intends to ask about why time was of the essence with Strategic Vision's research, who determined to cancel the contract, and whether that person had sufficient authority with Eastern Profit to do so.

### IV. Eastern Profit Still Refuses to Provide Relevant Information

As noted above, Strategic Vision provided Eastern Profit with well over 100 proposed questions—most of which Eastern Profit's prior witnesses had failed to answer, but without objection from Eastern Profit—as part of another full week of meet-and-confer. Strategic Vision hoped that Eastern Profit would agree to produce the most knowledgeable witness, Guo Wengui, rather than Yvette Wang, who would inevitably have to interview Guo and then repeat his answers. This effort was unsuccessful. Based on those conferences, Eastern Profit has arguably narrowed its earlier objections, but still says that, regardless of the witness, it will not prepare and not answer questions on the following topics based on relevance and burden objections:

1.  The "investors" identified by Yvette Wang in her negotiations with Strategic Vision, and the individuals who funded the contract. To what "investors" did Eastern Profit give reports? Did Eastern Profit disclose Strategic Vision's work to any person outside of Eastern Profit?
    a.  Eastern Profit refuses to answer these questions because it claims, notwithstanding the Protective Order, that individuals in China will be harmed.
    b.  Strategic Vision responds that these questions are relevant for understanding the underlying purpose of the contract, which is the basis of Strategic Vision's fraud counterclaim. Further, if the "investors" actually paid for these services and did not execute a loan to Eastern Profit to pay for the deposit, then Eastern Profit has no claim for breach of contract damages or restitution.
2.  Who worked for Golden Spring and how were they paid? Did Eastern Profit, Guo, or any other person pay Golden Spring for its work? What families does Golden Spring work for now? In the past? What kind of work does it do?
    a.  Eastern Profit objects that this is beyond the scope of the notice.
    b.  However, Eastern Profit appointed Golden Spring as its attorney-in-fact for purposes of negotiating the contract and the litigation. If Guo controls Golden Spring, then (through



this route, as well as his likely outright control of Eastern Profit) his representations and actions are binding on Eastern Profit.

3. What were Eastern Profit's communications with ACA or any person who controls ACA about the loan, or about repayment? Is Eastern Profit making its interest payments? With what assets?
   a. Eastern Profit says it will not prepare or answer questions about anything after ACA wired funds to Strategic Vision.
   b. Strategic Vision's theory, however, is that the loan is not real. If the terms of the loan are not being followed and payment is not being made, it supports the theory that the loan was concocted, perhaps after questions began to be asked in litigation, as a means to allow Eastern Profit to sue in breach of contract to recover "its" $1 million.

4. The corporate history of Eastern Profit (formed no earlier than 2011) and its directors. Does Eastern Profit have any business?
   a. Eastern Profit objects to the "broad, open ended scope of this inquiry – Eastern Profit's other history and business have nothing to do with this dispute," and Eastern Profit claims that Guo's control of Eastern Profit is irrelevant without an alter ego claim. Eastern Profit says it will allow questioning only to cover the period of September 1, 2017 to March 21, 2018, with "reasonable foundation" questions to go earlier.
   b. Strategic Vision responds that knowing Eastern Profit's underlying business is central to understanding whether it is a shell entity under Guo's control, and even if it were necessary to ask about the formation of the entity, this is a small and apparently inactive 8-year-old entity whose entire pre-contract history is probably contained in a small minute-and-bylaw book. Further, to show Guo's control of Eastern Profit, evidence beyond the contractual period is probably necessary. Eastern Profit, Guo, and related entities have shown a willingness to take major corporate actions during the pendency of this case—such as retroactively appointing Golden Spring as Eastern Profit's attorney-in-fact during the pendency of this case, or removing Karin Maistrello as an ACA director as a subpoena was being served on her.

5. Does Eastern Profit have any assets, liabilities, or income? Bank or financial accounts? Loans with a bank? Where?
   a. Eastern Profit's objection is the same as with respect to number 8, and Strategic Vision's response is the same.

6. Discussion of the factual background behind current allegations by prosecutors of a money laundering conspiracy with Guo, his son and/or daughter, and Han Chunguang in Hong Kong.
   a. Eastern Profit objects that this is beyond the cope of the topics in Strategic Vision's notice, and is irrelevant.
   b. Strategic Vision responds that the facts regarding the alleged transactions between Guo, Eastern Profit, Guo's children, and Han Chunguang are clearly relevant to showing that in fact, Guo controls Eastern Profit. Indeed, these facts may show that the money used to pay Strategic Vision was never Eastern Profit's, and that Eastern Profit is liable to no one for its recovery. In that case, Eastern Profit cannot claim return of the $1 million as damages. These questions are relevant to the structure and control of Eastern Profit (Topic 2), a topic which until now had not garnered any objection.

7. Does Eastern Profit share employees or assets, or do business with, any other Guo-controlled entity, including but not limited to the Rule of Law entities?
   a. Eastern Profit objects that this is beyond the scope of the topics.

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



      b.  Strategic Vision responds that if this is occurring, it may be the means by which Guo controls the entity.

8.  When has Guo advised Eastern Profit and acted on its behalf?

      a.  Eastern Profit objects that these questions should only relate to the contract at hand.

      b.  Strategic Vision responds that this is relevant to other advice or acts for three reasons. First, it may circumstantially show control, as Eastern Profit may argue that Guo never controls, but merely always "advises" or "acts for" it. Continuing conduct of this sort makes it more likely that Eastern Profit is simply Guo's tool, not the one-time beneficiary of his help. Second, one of Strategic Vision's defenses and counterclaims is that Eastern Profit frustrated Strategic Vision's performance by employing other researchers to investigate the same subjects. As with the contract at issue here, Guo would likely have been involved. Third, Guo's work with Eastern Profit on other research projects may show that the parol evidence Eastern Profit has tried to inject about what sorts of reports were required under the contract were inconsistent with Guo's other work.

## V.     The Relief Strategic Vision Has Requested is a Reasonable Resolution

       In its August 6th letter motion, Strategic Vision requested two forms of relief: (1) that Eastern Profit be required to appear a third time to testify under court order to answer the agreed topics subject to penalty of contempt, and that the witness should be Guo; and (2) that Han Chunguang be ordered to testify without the Fed. R. Civ. P. 45 subpoena that Eastern Profit insists must be used to cause him to appear.

       1. **Rule 30(b)(6) deponent**. Eastern Profit separately informed Strategic Vision that having Guo appear again puts the entity in an "impossible position." If Guo will refuse to cooperate and prepare as a witness for Eastern Profit—an entity that Strategic Vision believes is actually under Guo's control—then some natural person must be prepared to obtain information from Guo and Eastern Profit's records, and answer questions demonstrating that Eastern Profit is real. If such a person does not exist (or if Guo or whomever controls Eastern Profit refuses to allow a witness to obtain the information necessary to answer questions), then Eastern Profit should not be allowed to maintain its claims or defenses. Strategic Vision recognizes that the Court *can* compel Guo to return and give his personal knowledge (the subject of a separate letter-motion), but it cannot compel him to prepare *as Eastern Profit's witness*, and based on Eastern Profit's and Guo's representations, he refuses to do so. This may be a distinction without a difference, since Guo must still sit with any Eastern Profit witness and convey all of his personal knowledge regarding the topics.

       Still, recognizing the structure of Rule 30(b)(6), Strategic Vision simply asks this Court to order that Eastern Profit present a witness prepared to fully answer the noticed topics, including but not limited to the eight numbered items listed immediately above in Section IV. There should be no further artificial roadblocks to inquiries into Strategic Vision's fraud and contract counterclaims and Guo's control of Eastern Profit. If Eastern Profit still comes up empty after this third attempt at a deposition, it should be precluded from maintaining any claims or defenses relevant to that testimony.

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com



2. **Han Chunguang**. Eastern Profit asks the Court to accept its counsel's promise that this witness lacks knowledge here. This is unacceptable. Eastern Profit's own verified interrogatory response is that Han Chunguang, who currently resides in New York, is its "principal." Crucially, Han's signature appears on all three key documents: the contract Eastern Profit claims has been breached by Strategic Vision;[4] the "loan" between Eastern Profit and ACA under which Eastern claims Strategic received its deposit, and the power of attorney granted by Eastern to Golden Spring that allows discovery to be given in this case for Eastern. This is easily a sufficient nexus to this case. Under Rule 30, without a subpoena, a corporate litigant can be deposed through its "officers, directors, or managing agents." *Philadelphia Indem. Ins. Co. v. Federal Ins. Co.*, 215 F.R.D. 492, 494 (E.D. Pa. 2003) (a subpoena is required only if a representative not sufficiently connected to corporate entity). Mr. Han serves that role for Eastern Profit.

It bears emphasis that during this very litigation, and for the very purpose of this litigation, Han made himself available to execute a power of attorney appointing Golden Spring. Despite Strategic Vision's requests over the last month, Eastern Profit has presented no authority for its position that Mr. Han must be subpoenaed, and its attempt to distance Mr. Han from discovery ignores the legal issue raised by Strategic Vision. Further, Eastern Profit has rebuffed Strategic Vision's attempts to compromise: Eastern Profit will not say who will represent or accept service for Mr. Han, and will not promise to make any arrangements so that he can be served with a subpoena. Eastern Profit simply suggests that Strategic Vision ask around to see whether its alleged principal may have another lawyer. Strategic Vision tried this over a month ago, and the firm that represents Guo individually and most of the third-party witnesses would not say, "yes."

Strategic Vision is out of options for finding and questioning Plaintiff Eastern Profit's supposed "principal" as discovery closes. Rule 30 treats Mr. Han as being within Eastern Profit's power to produce for a deposition; its refusal should subject Eastern Profit to an order of contempt.

Strategic Vision looks forward to discussing these issues with the Court at the telephone conference scheduled for August 21, 2019.

<div style="text-align: right">

Respectfully submitted,

Edward D. Greim

</div>

cc: Counsel of record via ECF

---

[4] That this signature was apparently actually written by Yvette Wang (either with Han's permission or as a forgery; we do not know) only makes it more important to question Han about the circumstances.

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com