**Mark A. Harmon**
Direct Dial: 646.218.7616
mharmon@hodgsonruss.com



August 19, 2019

**VIA ECF**

Hon. Debra C. Freeman
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 17A
New York, NY 10007-1312

      Re:   *Eastern Profit Corporation Limited v. Strategic Vision US, LLC, et al.*,
            Case No. 18-CV-2185-JGK

Dear Judge Freeman:

      We represent Karin Maistrello ("Ms. Maistrello") and Golden Spring (New York) Ltd. ("GSNY"), two non-parties served by defendant Strategic Vision US, LLC ("Strategic") with subpoenas seeking both documents and testimony in connection with the above-entitled action. We submit this letter in response to Strategic's August 15, 2019 letter (Dkt. #132) seeking an order directing that Ms. Maistrello and GSNY produce the requested documents and appear for their noticed depositions.

      At the outset, it is important to note that Strategic fundamentally has misrepresented GSNY's position with respect to both document production and its appearance for a deposition. GSNY made objections to the production of multiple irrelevant, invasive, and unduly burdensome requests for documents pertaining to GSNY's internal organization and structure as well as its financial or other business records unrelated to Eastern. As explained below, those objections are proper. Subject to those objections, however, GSNY has agreed to produce documents responsive to Strategic's subpoena and to produce a representative for a deposition on a mutually-convenient date in September 2019 following the resolution of GSNY's objections.[1] The objections asserted on behalf of Ms. Maistrello stand and, as explained below, are well-supported. Accordingly, Ms. Maistrello moves under Federal Rule of Civil Procedure ("Rule") 45(c)(3) for an order quashing the subpoena and under Rule 26(c) for a protective order.

---

[1] In conversations with counsel before Strategic submitted its August 15, 2019 letter (Dkt. #132), I repeatedly stated that GSNY was not refusing to appear for a deposition; only that it made no sense to conduct that deposition before the objections to the production of documents were resolved so that we could avoid the possibility of having to schedule a second session.

Hon. Debra C. Freeman
August 19, 2019
Page 2



    Lest there be any confusion, though, the subpoenas recently served on Ms. Maistrello and GSNY are part of Strategic's efforts to inflict public harm and embarrassment on another non-party, Wengui Guo ("Mr. Guo"), against whom Strategic tried, but failed, to assert claims directly.[2]  Rather than focus on the real issues, Strategic's recently-developed strategy involves hijacking this breach of contract action between Eastern and Strategic in order to make the baseless accusation that Mr. Guo is a spy for the Chinese government.[3]  In furtherance of that, Strategic now is harassing those individuals and entities that Strategic believes are associated with Mr. Guo.  This cynical, misguided effort to use the litigation process, not to seek documents or information related to the contract dispute at the heart of this litigation, but to smear Mr. Guo is intentional and the true aim of Strategic.  Strategic's counsel, Edward Greim, recently was quoted in a July 22, 2019 Wall Street Journal article[4] entitled "Chinese Tycoon Holed Up in Manhattan Hotel is Accused of Spying for Beijing" proclaiming: *"Our goal is not only to hold Guo Wengui and his network accountable but also to protect supporters of a free China from further injury."*  In other words, Strategic's counsel conceded its use of a publicly-filed legal pleading as a negative press release against a non-party.  Now, Strategic also is seeking to harass Mr. Guo's associates in order to do so.

    Yet, Strategic has no good-faith basis to support its allegations, a fact best exemplified by its failure to offer a cohesive or logical explanation for its recently-asserted allegations as to all three non-parties as well as its wildly overbroad subpoenas that can only be viewed as a fishing expedition.  Indeed, even if provided, the information sought by Strategic bears no relevance to this breach of contract action.  Accordingly, for the reasons set forth in more detail below, Ms. Maistrello's and GSNY's objections to the subpoenas should be sustained, the subpoena served on Ms. Maistrello in her individual capacity should be quashed and a protective order should be issued, the subpoena served on GSNY should be limited, and Strategic's request for relief should be denied in its entirety.

  A.  Procedural History

    As this Court is aware, Hodgson Russ has represented Mr. Guo in connection with this action since Strategic unsuccessfully attempted to assert a third-party claim against him directly.  Given Mr. Guo's non-party status, Hodgson Russ's more recent involvement has been limited to the scheduling of his deposition – a deposition that we made clear to at least two sets of counsel for Strategic could be conducted without the need for the issuance of a subpoena.

---

[2]  Strategic's prior counsel attempted to insert Guo into these proceedings by filing a third-party complaint against him personally (Dkt. #s 47-48).  After its third-party complaint against Mr. Guo was dismissed as patently deficient (Dkt. #96), Strategic has not again attempted to assert any claims against Mr. Guo directly.

[3]  This newly-developed strategy was first articulated in Strategic's July 19, 2019 Answer and Counterclaims to the Second Amended Complaint (Dkt. #114) (the "Amended Counterclaims") and only was adopted by Strategic's third set of counsel after the first two sets of counsel were unable to sustain breach of contract-related claims against Mr. Guo directly.

[4]  The Wall Street Journal article was published less than 72 hours after Strategic filed its Amended Counterclaims.



Yet, in its August 15, 2019 letter (Dkt. #132), Strategic implies that Hodgson Russ also has long represented Ms. Maistrello and GSNY in connection with this litigation, that Hodgson Russ took actions to conceal that fact from Strategic, and that these actions were in furtherance of an attempt by Mr. Guo to run out the clock on discovery. Setting aside the fact that the only reason discovery has been extended to its present end date is because Strategic is on its third set of counsel, this baseless accusation defies logic. As non-parties, Ms. Maistrello and GSNY had no need to retain counsel in connection with this case until the dates that each was served with a Rule 45 subpoena.[5] On July 26, 2019, Strategic served a subpoena seeking documents and testimony on GSNY. On July 27, 2019, Strategic served Ms. Maistrello with two subpoenas – one in her individual capacity and one as a supposed director of ACA Capital Group Limited ("ACA") – likewise seeking documents and testimony. Following service of those subpoenas, Hodgson Russ was retained and, thereafter, served its objections to the subpoenas.[6]

  B. The Court Should Issue a Protective Order as the Subpoena Issued to Ms. Maistrello is Overbroad, Insufficiently Tailored to a Non-Party, and Seeks Documents and Testimony Pertaining to Numerous Irrelevant Topics

On July 27, 2019 Strategic served two virtually-identical subpoenas on Ms. Maistrello, one in her individual capacity (the "Individual Subpoena") and one as a director of ACA (the "ACA Subpoena") seeking both documents and testimony. Ms. Maistrello is no longer – and was not at the time she received a subpoena to ACA – a director of ACA.[7] As such, she cannot accept service of the ACA Subpoena and cannot provide the requested documents or testimony.[8] The Individual Subpoena seeking documents and testimony from Ms. Maistrello is equally improper. The requests for documents annexed to the Individual Subpoena do not concern Ms. Maistrello individually. Rather, the vast majority of the requests – which are palpably overbroad and burdensome – seek numerous documents pertaining to ACA which, again, are not in Ms. Maistrello's possession.

---

[5] Strategic's complaint that Hodgson Russ did not object to proposed dates that Strategic and Eastern agreed upon for the depositions of Ms. Maistrello and GSNY is another red herring. First, those email exchanges occurred well before the subpoenas were served and Hodgson Russ was retained to represent Ms. Maistrello and GSNY. Second, given that those proposed dates were selected without consideration of either Ms. Maistrello's or GSNY's schedules or the schedule of their yet-to-be-retained counsel, it is disingenuous to claim that those dates would not have been subject to adjournment.

[6] Strategic similarly takes issue with Ms. Maistrello's failure to seek a protective order prior to objecting to the issued subpoenas. This argument fails to take into account the fact that Ms. Maistrello was not in a position to move to quash the subpoena or seek a protective order until the parties met and conferred with respect to her objections. As counsel for Strategic concedes, that meet and confer only took place on August 12, 2019.

[7] Contrary to Strategic's claims, Ms. Maistrello was not terminated from ACA in some Hodgson Russ-led effort to interfere with the service of the ACA Subpoena. Rather, Ms. Maistrello resigned from ACA prior to Strategic's service of the ACA-directed subpoena and her retention of counsel. Hodgson Russ is not counsel for ACA.

[8] Even if she had been served properly, the requests would be improper on a non-party as they are overbroad, unduly burdensome, and seek documents unrelated to the claims or defenses in this breach of contract suit.

Hon. Debra C. Freeman
August 19, 2019
Page 4



While a party generally may obtain discovery of any non-privileged matter that is relevant to a claim or defense of any party, the Court has discretion to circumscribe discovery even of relevant evidence by making "any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.R.Civ.P. 26(c); *see also, Herbert v. Lando*, 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Rule 45(c) provides additional protection for non-parties subject to a subpoena by mandating that a court "quash or modify the subpoena if it ... subjects [the] person to undue burden." Fed.R.Civ.P. 45(c)(3)(A)(iv).[9] In other words, both Rules 26(c) and 45(c) provide protection to all non-party witnesses in responding to subpoenas that subject them to an "undue burden." In addition, Rule 26(b) permits discovery only as to matters that are relevant. Fed.R.Civ.P. 26(b).

Here, the documents and testimony sought by Strategic are not relevant to the claims and defenses in this contract action but are designed merely to harass Ms. Maistrello by attempting to use information Strategic believes she knows about Mr. Guo to further their smear campaign against him. For example, seven of the eight requests in the Individual Subpoena seek documents of ACA, including "documents reflective the ownership, management, governance, and structure of ACA," "communication between ACA and any other party," "financial statements or tax returns ... of ACA," and "documents regarding transfers of funds between ACA to any other person."[10] As explained, these requests are more appropriately directed to ACA and, as directed to Ms. Maistrello, flout the protections provided to non-parties by Rule 45 of the Federal Rules of Civil Procedure. *See* F.R.C.P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction.").

The eighth request for documents in the Individual Subpoena – the sole request for documents of Ms. Maistrello, individually – is immaterial to the action, unduly burdensome, and plainly harassing as it seeks "all documents reflecting or relating to [Ms. Maistrello's] work for or with Guo Wengui, ACA, Golden Spring, Steve Bannon, or any entity funded, owned or controlled at least in part by Wengui, between January 1, 2017 and July 1, 2019." Not only is this Request plainly overbroad, the requested documents have no bearing whatsoever on the action and can only be intended to intimidate and harass Ms. Maistrello. *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018) (finding that documents requested by a subpoena must be relevant to the claims or

---

[9] The Advisory Committee's Notes to the 1991 amendments to Rule 45 state that the amendments have "enlarge[d] the protections afforded persons who are required to assist the court by giving information or evidence." Fed.R.Civ.P. 45 1991 advisory committee's note; *Id.* (Rule 45(c)(3)(A)(iv) "requires the court to protect all persons from undue burden imposed by the use of the subpoena power.").

[10] As Strategic concedes in its August 15, 2019 letter (Dkt. #132), ACA made the initial $1 million payment to Strategic pursuant to a loan between Eastern and ACA. This fact, though, is immaterial as to whether and by whom a breach of the contract occurred given that no one contests that the money was received and retained by Strategic.

Hon. Debra C. Freeman
August 19, 2019
Page 5



defenses in the action).  Moreover, even if the documents sought were remotely relevant to the claims as defenses in this action, a stated lack of knowledge by a witness as to an area proposed for deposition – as is the case here – can be enough to support the issuance of a protective order on the ground of "undue burden." *See Jones v. Hirschfeld*, 219 F.R.D. 71, 76 (S.D.N.Y. 2003).

Based on the foregoing, Ms. Maistrello requests that the Court quash both the ACA Subpoena and the Individual Subpoena and issue a protective order.

C. The Court Should Limit the Subpoena Issued to GSNY as it is Overbroad, Insufficiently Tailored to a Non-Party, and Seeks Documents and Testimony Pertaining to Numerous Irrelevant Topics

Again, Strategic has misstated GSNY's position with respect to both document production and its appearance for a deposition.  GSNY has objected to producing information concerning the internal organization and structure of GSNY as well as its financial or other business records, unless those financial or other business records specifically relate to Eastern.  Without waiving these objections, however, GSNY has agreed to locate documents responsive to the Subpoena.  Nor has GSNY refused to produce a representative for a deposition.  Rather, because GSNY's counsel is unavailable on the currently-proposed date, it has agreed to make a GSNY representative available on a mutually convenient date in September 2019.[11]

Notwithstanding GSNY's agreement to produce documents responsive to some requests, the vast majority of Strategic's requests are improper.  As explained in its August 9, 2019 letter to Strategic, GSNY objects to multiple of Strategic's document requests as overbroad, unduly burdensome, and oppressive, especially given GSNY's non-party status.  Rule 45 dictates that a subpoena must be tailored so that it is not overly broad or unduly burdensome.  *See* F.R.C.P. 45(d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction.").  Further, the documents sought must be relevant to the claims or defenses in the action.  *See Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2018 WL 6712769, at *5 (S.D.N.Y. Nov. 30, 2018).

The subpoena at issue here, however, is not thus tailored.  To the contrary, it purports to require GSNY to produce, *inter alia*, "any and all documents relating to any investigative work performed by Golden Spring or Yvette Wang," "any and all financial statements or tax returns" for a four-year period, "any and all audio or video recordings of Yvette Wang, Guo Wengui, Steve Bannon, Han Chunguang, Karin Maistrello, French Wallop, or Mike Waller" – none of whom are parties in this action – and "any and all documents regarding transfers of funds between Golden Spring and (a) Guo Wengui or any other entity controlled by him, including but not limited to Eastern Profit Corporation, Ltd., or ACA Capital Group

---

[11] The current discovery cut-off date is September 27, 2019.

Hon. Debra C. Freeman
August 19, 2019
Page 6



Limited, or (b) any law firms, investigative or research firms, intelligence firms, security firms, or other professional service providers between January 1, 2015, and July 1, 2019, or (c) any other person or entity, if the transfer was made at the suggestion, request, or direction of Guo Wengui or Eastern Profit or any person working on behalf of the foregoing." A request for every document concerning these broad topics, without any effort to tailor the requests in consideration of the non-party, is not in accordance with Rules 26 and 45 of the Federal Rules of Civil Procedure. Attempting to respond to such a request would be enormously expensive for GSNY and divert significant resources of the company.[12]

More importantly, though, the vast majority of the documents requested are not relevant to any of the claims or defenses in this action. Indeed, the action concerns a breach of contract between Eastern and Strategic. GSNY had no role in negotiating, executing, or performing services pursuant to the relevant contract and, thus, its financial records, recordings of non-parties, and independent investigative work do not have any relevance to the claims or defenses in the action.[13]

Moreover, Strategic has not, and cannot, demonstrate that any connection between GSNY and Mr. Guo condones a fishing expedition into GSNY's internal organization and structure as well as its financial or other business records unrelated to Eastern. Certainly, Strategic offers no coherent explanation for how such information might advance any of its claims or defenses again Eastern. That is because Strategic's own illogical and internally inconsistent statements as to Mr. Guo's alleged status as a spy for China betray any pretense of a good faith belief in those same allegations. After all, Strategic concedes in its Amended Counterclaims (Dkt. #114) that Mr. Guo – who is seeking asylum in the United States – has been speaking out publicly against China for several years and, as a result, his assets in both China and Hong Kong have been seized and a "red notice" against him has been issued by China. Yet, against that backdrop, Strategic – a purported research firm – claims to have "just discovered" that Mr. Guo is secretly working as a spy for the Chinese government. Its proof consists almost entirely of unverified internet postings and articles published by China's state run media.[14]

Strategic's attempts to harass and unduly burden additional non-parties believed to be associated with Mr. Guo by seeking immaterial documents and testimony from them must

---

[12] This is not intended to, and does not, indicate that GSNY has any such documents for multiple of the categories of documents sought.

[13] Pursuant to a power of attorney, GSNY is empowered to assist Eastern in connection with this action.

[14] Strategic attempts to make an issue of the fact that it discovered early on that multiple of the individuals for whom Eastern requested initial research were "records protected." First, Strategic offers no explanation why Mr. Guo would be in a position to know that. Second, individuals can become "records protected" for a variety of reasons, and no blanket assumption can or should be made as to why an individual would fall under that category. If, as Strategic now wishes this Court to believe, the designation means that individuals in question are friendly with China, it begs the question as to why Strategic did not cancel the contract immediately upon its discovery of that fact.

Hon. Debra C. Freeman
August 19, 2019
Page 7



not be countenanced. After all, Strategic has made no secret of its intent to make public all of the information it receives in discovery as part of its ongoing, publicly-stated effort to *"hold Guo Wengui and his network accountable."* Accordingly, any requests for documents or testimony concerning the internal organization and structure of GSNY and its financial or other business records, unless they specifically relate to Eastern, are improper and should be quashed. *Herbert*, 441 U.S. at 177, 99 S.Ct. 1635 ("[T]he district courts should not neglect their power to restrict discovery" and "should not hesitate to exercise appropriate control over the discovery process.").

Respectfully submitted,

Mark A. Harmon

cc: All Counsel of Record