


Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

August 20, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

**Re: Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF**

Dear Judge Freeman:

This reply on behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision") supports its August 6, 2019 letter regarding the failure of Guo Wengui to answer key questions on the ground that they were irrelevant and, therefore, "harassing."

The common thread linking all of Guo's objections is his refusal to recognize Strategic Vision's fraud and breach of contract counterclaims as legitimate. For Guo, this case can only be viewed as Eastern Profit's "simple contract" claim to recover $1 million from Strategic Vision. All of Strategic's counterclaims or defenses can safely be ignored for purposes of discovery. But why?

Tellingly, Guo's answer to this question steers well clear of the *merits* of Strategic's counterclaims or defenses. Strategic's Counterclaim I, for fraud, alleges that Guo's material representations that he was a dissident and that he would use Strategic's research to undermine the Chinese government and Communist Party induced Strategic to enter the contract, and were false. Strategic alleges that all of Guo's false representations were chargeable to Eastern Profit because he controlled it; it was supposed to be a cut-out for him. (Indeed, Strategic would have run—not walked—away if Guo had said Eastern involved other "investors" in China or was not fully within his control.) Strategic's Counterclaim II, for breach of contract, alleges that Guo made demands, and took actions, during performance that frustrated Strategic's performance, violating the duty of good faith and fair dealing, and that Guo's actions are chargeable to Eastern Profit because he controlled it. Strategic Vision sees no need to hold Guo individually liable at this time; for that reason, it does not need to allege what is commonly called "alter ego" liability, and it is enough to allege that Guo's acts from beginning to end are chargeable to Eastern.

For Guo, none of this matters. Rather, Guo has decided that the best strategy is to accuse Strategic Vision (and now, even counsel) of having mounted a savage public relations harassment campaign, using its counterclaim as a mere press release. Strategic Vision's "sanction," Guo has already decided, is that he and the other non-parties represented by counsel will simply not answer questions about those counterclaims. Thus, Guo will not answer questions about his control of Eastern Profit, ACA Capital Group Limited, or Golden Spring; his relationship to key



Graves Garrett LLC

players in those entities and witness in this case; and the representations he made to Strategic about himself and the purpose behind the contract. Guo does not really try to conceal this strategy. Instead, he simply dares Strategic Vision to approach the Court and prove him wrong—a process that may well consume much of the remaining time allotted for discovery. This Court should repudiate that strategy.

## I. Response to Guo's Background

1. **No "introduction" to "the project."** Guo's response seriously misstates the facts. To begin, he was not merely "involved in the introduction of Strategic to the project." Letter at 1. Rather, there was no preset "project." Other non-party witnesses, Bill Gertz and Lianchao Han, introduced Strategic to Guo, a man who was claimed to be a Chinese dissident eager to use his resources in some way to combat the Chinese government and the Chinese Communist Party ("CCP"). Han and another individual, Yvette Wang, then were chosen by Guo to serve as interpreters as Strategic and Guo met in person to develop the concept of the research project and, finally, to negotiate the contract, inserting Eastern Profit as the agreed corporate placeholder for Guo. Eastern Profit has already admitted the 15 names to be researched came from Guo. No evidence or testimony in this case supports the existence of some pre-existing "project" to which Guo "introduced" Strategic.

2. **Who "owns" Eastern.** Counsel next declares that Guo is not an "owner" of Eastern. Letter, 1. Of course, that is the very question Strategic is trying to establish, but which Guo's counsel continually blocked under the claim of harassment. Strategic believes that Guo controls Eastern. For example, Hong Kong records show that Guo's daughter is the sole director of Eastern, yet in this case, Eastern Profit claims its "principal" is Han Chunguang, a man about whom Guo's counsel frequently blocked testimony. That Guo's daughter is herself not a party to this case provides no ground for [redacted][1] Further, after Guo testified that [redacted] At this crucial point, [redacted]

3. **Guo's role in this case**. Guo's counsel next claims that prior attempts to bring Guo into the case were dismissed as "patently deficient" (Letter, 1, citing Dkt. 96). In fact, Strategic's claims were dismissed without prejudice and the words "patently deficient" nowhere appear. *Id.* Judge

---

[1] Guo's counsel now claims that Guo [redacted] This materially misrepresents the proceedings. In fact, questioning counsel [redacted] That Protective Order covered the witness's testimony. [redacted] and now, misrepresentation of those proceedings, has added needless complication to discovery in this case. Guo Tr. 110:5-113:16.




Koeltl's reasoning appears in the transcript filed at Dkt. 97, but Guo's new spin makes it important to pause for a moment on the relevant motions and decision.

In 2017, Strategic Vision had filed three counterclaims against Guo: tortious interference; promissory estoppel for Guo's promises to adequately fund Eastern Profit; and alter ego for breach of contract. The first two claims were dismissed *not* because Guo was sufficiently removed from the case, as he now suggests, but rather *because he was allegedly at its center*. Thus, Judge Koeltl ruled that a principal of an entity (*i.e.*, Guo, of Eastern Profit) cannot tortiously interfere with Eastern Profit's own contract. *See generally* Dkt. 97. Further, a principal of an entity who made promises on behalf of that entity (here, to adequately fund it) cannot be found liable under promissory estoppel when, as Judge Koeltl ruled, there is a valid contract that encompasses that same promise. *Id.* Finally, Strategic Vision's alter ego claim was dismissed without prejudice because it had not yet pled facts showing Guo's domination and control, and had not yet pled any facts showing that he used Eastern Profit to commit a fraud. *Id.* This dismissal without prejudice did not, as Guo tries to suggest, find that Guo was somehow removed from Eastern Profit.

Strategic Vision changed counsel soon after this dismissal and was given until July 19, 2019, to replead. As Strategic promised to do at the June 28, 2019 hearing on substitution of counsel, it reevaluated both the law and facts. Its new Counterclaims finally plead many of the facts regarding Guo's control of Eastern that Judge Koeltl had found absent from the prior pleading. However, Strategic Vision also concluded from Judge Koeltl's decision that since Guo controls Eastern, the most appropriate theories under New York law were fraudulent inducement and breach of contract against Eastern Profit itself, charging Eastern Profit with the statements and acts of Guo.

Further, it became apparent that the most important question—both during the negotiations and now—was not, and is not, whether Guo would fund Eastern Profit at a level adequate to pay for the contract. (This had been the core of Strategic Vision's prior alter ego and promissory estoppel claim.) Instead, Guo's misrepresentation was more fundamental: whether Guo was the type of person, and planned to use the research for the types of purposes, that would have been acceptable to Strategic Vision in the first place.

Facts about Guo, including his own recorded public statements and writings, came to light after the contract was terminated. As detailed in the Counterclaims, this included facts about: the true date Guo came to the United States and his supposed history as a dissident even in China; Guo's ability to move hundreds of millions of dollars to and from China during a time when official retaliation had supposedly caused his assets to be frozen; and Guo's statements to party leaders criticizing other dissidents and promising to retaliate against them, followed by legal actions against some of the same individuals named in his statement. A written statement from Guo to Chinese Communist Party ("CCP") leadership just a few months before he began negotiations with Strategic contains a disturbing promise to advance the vision of "Chairman Xi" Jinping and the CCP, including as a "propagandist." This background cast a new light on other bizarre circumstances from Strategic's performance of the contract that, in retrospect, now make sense. Flash drives of research data given to Strategic by Guo's agent, Yvette Wang, contained advanced malware. And the 15 names for initial research turned out to be "Records Protected," individuals whose data could not be accessed due to federal protections for certain foreign individuals.


1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




Strategic Vision no longer believes that Guo intended to use the research to target the CCP, and if discovery can be completed, believes it can show that Guo never finished the research at all.

Based on all of these facts, Strategic Vision alleges that had it known Guo was not truly a dissident, and did not intend to use its research to undermine the CCP, it would never have contracted with Eastern Profit and exposed itself and its teams to Guo and his network. Guo's claims to the contrary were material, and Strategic reasonably relied. It is primarily this fraud claim that Guo and the other parties represented by his counsel[2] seek to smother in the final weeks of discovery.

4. **Misstatements about the Fraud Counterclaim**. Perhaps for shock value, Guo next claims that Strategic accuses him "for the first time, of being a spy for the Chinese government." Letter, 1-2. This is not accurate. Strategic alleges that Guo is not a true dissident and did not intend to use Strategic's research for the purpose of undermining the CCP. Based on Guo's own statements, it also alleges that Guo promised Chinese officials that he would sue dissidents in the U.S. and serve as a "propagandist" for the CCP. Strategic does not use the word, "spy;" instead, its allegations tie directly to Guo's own statements. Further, Strategic's pleading is far from the first time similar allegations have been made. Guo is now and has been a party to numerous state and federal lawsuits in which precisely these allegations have been made. Over the same period, and well before the current Counterclaims, mainstream news media have investigated, questioned, and reported on Guo's status and background, not to mention social media activity among the Chinese community in the United States, several members of whom Guo has previously sued for defamation. In short, it is simply false to suggest that Strategic's Counterclaim is the first or the most serious "accusation," in a legal case or otherwise, or that Strategic has somehow created media interest.

5. **Re-casting the Counterclaims as an anti-Guo press release**. Guo next claims that the Counterclaims can safely be ignored because the undersigned has "all but conceded" that the pleading was merely a "negative press release against a non-party." Far from it. This statement was issued upon request from the Wall Street Journal after the counterclaims were filed: "Our goal is not only to hold Guo Wengui and his network accountable, but also to protect supporters of a free China from further injury." These are precisely the goals of any litigant: to hold one's opponent accountable through a money judgment, declaratory relief, or injunction, and to hope that the judgment disincentivizes future misconduct. Here, as Strategic Vision alleged, Eastern Profit is the named counterclaim defendant, but it is Guo who controls Eastern along with several other related entities, including Golden Spring, Eastern Profit's attorney-in-fact for purposes of this litigation. A judgment will not only hold these entities accountable, it can be hoped that it makes similar conduct less likely in the future. This is a far cry from a press-release-dropped-into-

---

[2] It bears repeating that each and every attorney in this case owes a duty of loyalty to Guo. Guo ties to emphasize that Eastern Profit is not represented by his attorneys and is represented by a different firm (Zachary Grendi of Zeichner Ellman & Krause, LLP) in this case, but fails to explain that the same firm, Zeichner, is concurrently representing Guo in a federal action in the Eastern District of Virginia in which Guo has sued a dissident for defaming him by, among other things, claiming Guo is not a true dissident. *See Guo v. Xia*, Case No. 1:18-cv-00174-LO-TCB (U.S. Dist. Ct. E.D. Va.). As Strategic Vision pled in its Counterclaim, Guo has made at least one lengthy public video about that case, threatening Chinese dissidents with additional lawsuits.


1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




pleading. A statement to a reporter certainly cannot excuse Guo's decision to draw his own, arbitrary line through his own testimony, allowing questions on what he calls the "simple contract" (*i.e.*, Eastern Profit's breach of profit claim) and prohibiting questions that show Guo controlled Eastern and defrauded Strategic.

6. **Finally, Guo claims he was "never offered as a 30(b)(6) witness."** Perhaps Guo did not agree to assume the duties of a Rule 30(b)(6) witness, but as noted elsewhere, Eastern Profit stipulated in advance that it was adopting Guo's testimony on the 30(b)(6) topics as its own. Guo's problem was not, as his counsel claims, that he failed to "educate" himself on those topics. He certainly is the person with the greatest personal knowledge—a fact that Eastern implicitly recognized by agreeing to adopt his testimony as the continuation of its previous, admittedly unprepared witness, Yvette Wang. Instead, Guo simply refused to cooperate in providing the information he already had. One need look no further than his coy claim that he had a [redacted] This conduct continued for 7 hours.

**II. The questioning is central to Strategic Vision's Counterclaims**

Guo claims that he only refused to answer "harassing" questions. But as may now be apparent, this really means questions that Guo does not want to litigate. And that, in turn, means, at the minimum, any question pertaining to Strategic's fraud and breach of contract counterclaims or Guo's control of Eastern Profit.

Thus, under Guo's theory, questions about his connection to non-parties were off-limits. (Letter 3). With very few exceptions, this included, at various times, Golden Spring (the entity allegedly acting as Eastern Profit's attorney-in-fact during the contract negotiation and in this litigation); ACA (the entity that wired Strategic $1 million, allegedly as Eastern's contractual deposit pursuant to a belatedly-disclosed loan); Han Chunguang (already discussed); Bill Gertz (the witness, Washington, D.C. journalist and opinion-maker who introduced Guo and Strategic, and whom Strategic believes now may be serving in some capacity in a Guo-controlled entity); and the Rule of Law Foundation (the entity where Yvette Wang, Eastern's first 30(b)(6) witness, may now be working and which was founded by Guo). As Strategic discusses in its letters regarding the Eastern Profit 30(b)(6), Guo's connection to or control over these entities may well be the means by which he controls Eastern. For example, Eastern and other entities like it may well hold no appreciable assets and be kept on the shelf as cut-outs for Guo when necessary for contracting purposes; ACA may then wire out funds from time to time to pay for Guo's expenses—as here, and as in its payment to Williams & Connolly for Guo's asylum application. These questions, too, were blocked. In short, the manner in which Guo uses this network for projects like Strategic Vision's is highly relevant to establishing his control and domination of Eastern. It may also establish that the $1 million Strategic received was never Eastern's, and cannot be recovered by Eastern. This accounts for most of the examples in Guo's response letter at pp. 4-5.

Separately, a number of videos and recordings of Guo are freely available on the Internet. Some have been posted by him on Guo Media (an entity that he seems to have established, but for which he [redacted] while some are on YouTube and similar outlets. It is well-known that cameras and microphones are installed in Guo's apartment, and Guo [redacted] Well before Guo's deposition, Strategic asked for any


1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com



such recordings pertaining to this case, including recordings involving Strategic, the contract, or research efforts. Guo's counsel first promised to be reviewing the request and preparing for a possible production at the deposition; then stated that no production could be made on or before the date. At the deposition, Guo said he had ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓, then claimed that ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Questions to follow up on this surprising and possibly incorrect testimony were blocked. Questions to counsel to follow up on the request have gone unanswered. Questions about a document subpoena for the same information that was finally served on Guo have also gone unanswered.

Finally, Guo refused to answer questions about the underlying allegations in Strategic's fraud Counterclaim: the complete representations Guo made about his own bona fides as a dissident seeking asylum and planning to use his time in the U.S. to speak out against the CCP, and the question of whether those representations were true.

Crucially, in one fleeting moment early in the deposition, Guo's counsel did allow him to ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Very few such questions were asked once it became clear that even questions about "non-parties" that were relevant to Eastern's own claims would not be answered. Guo even refused to answer questions about his own efforts (if at all separate from Eastern Profit) to obtain the same research. For example:

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ Then, when Strategic asked about whether Eastern Profit had ultimately obtained the same research from an alternative source, ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ This same pattern continued throughout: ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████████████████████████████████████████████████

██. This game of cat and mouse must end. A continued deposition should be able to cover the facts pled in support of Strategic Vision's fraud and breach of contract counterclaims.

### III. Guo's "Not Knowing" and "Not Remembering"

Almost in passing, Guo ascribes his "do not know" and "don't remember" answers to a true lack of personal knowledge. Letter at 5. This is not believable. That is particularly true where Guo claims not to know ████████████████████████████ ████████████████████ These are individuals he has gathered around him to help run his close-knit network of entities and projects, one of which was Strategic Vision's.

To take just a few examples, ████████████████████████████████████████████

Guo also claimed to ████████████████████████████████████████

With respect to Yvette Wang, the only real person Eastern has allowed to be deposed, █████████████████████████████████████████████████████████████████████████████████████

─────────────────

3 ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████






Guo's claimed lack of knowledge and memory are simply not credible. The order compelling Guo to appear and answer questions should also compel him to testify to his full knowledge, even if someone else appears as Eastern Profit for its third attempt at a Rule 30(b)(6) deposition.

**IV. This is a continuing, ripe controversy.**





1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com






The deposition was not "completed" and there was no suggestion that it had not been impeded. Guo's games should come to an end. The deposition should now be completed, and this time, Guo should truthfully provide his personal knowledge without further instructions to refuse to answer.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com