

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

August 20, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

> Re:  Reply to ECF 136 (and in support of ECF 132):  Eastern Profit Corp. Ltd. v. Strategic Vision
> US, LLC, 18-cv-2185 (JGK)-DCF

Dear Judge Freeman:

This reply on behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision") provides further support for its letter motion (ECF 132) regarding the enforcement of duly-served Fed. R. Civ. P. 45 subpoenas to two non-parties:  Karin Maistrello ("Maistrello") and Golden Spring (New York) Limited ("Golden Spring").  Maistrello and Golden Spring have objected to the subpoenas without producing any responsive information, and Strategic Vision has asked the Court to enforce this essential discovery before the September discovery cutoff.

When Strategic Vision took this matter to the Court on August 15th, it was with a well-supported letter motion, and Maistrello and Golden Spring could have, and should have, withdrawn their objections and produced responsive information then.  Instead, in ECF 136, they have chosen to stand on their objections, staunchly opposing the relief sought by Strategic Vision and, in Maistrello's case, seeking a protective order.  According to Maistrello and Golden Spring, despite issuing several subpoenas, fully allowed to a party litigant by Rules 45 and 26, "Strategic's request for relief should be denied in its entirety."  (ECF 136, p. 2)

The attempt by Maistrello and Golden Spring to create the impression that they approached the subpoenas in a spirit of cooperation and good faith and have objected only as a last resort thus must fail.  The truth is that neither produced a single document on the August 9, 2019 subpoena deadline, neither has given a proposed date for producing documents if they indeed belatedly plan to in the future, neither found a single one of the 15 document requests served collectively to them to be acceptable, both waited until the very last day allowed to object to the subpoenas (and then produced no information), Maistrello outright refused to be deposed, and Golden Spring has given



only a vague indication that it will find a date "in September" to be deposed—a statement that rings hollow with a September close of discovery.[1]

This is not cooperation.  It is obstruction.  The noticed Maistrello deposition date is now in jeopardy.  Indeed, in her ECF 136 opposition, Maistrello excuses her failure to seek a protective order from her duly-noticed deposition prior to August 19th purportedly because the parties had not conferred.  (ECF p. 3, n. 6)  Maistrello had ample time to confer but strategically did not.  She was served July 27th (admission, ECF 136, p. 3)  This was after her counsel had been copied on communications two weeks earlier scheduling her deposition.  The obvious reason Maistrello was silent from July 27 (if not earlier) until August 9th was that she sought to sandbag Strategic Vision by not revealing her objections to the subpoena or the identity of her counsel until after-hours on the Friday her response to the subpoena was due.  A week earlier, on August 2, 2019, two of Maistrello's counsel had been present in person with Strategic Vision's counsel for the better part of a day but failed to mention they were representing Maistrello or ask to discuss having a conference before seeking a protective order.  Now, the same week the deposition is set to occur, Maistrello seeks a protective order excusing her appearance. Strategic Vision opposes entry of a protective order keeping Maistrello from testifying to the topics set out in the subpoena.

In the context of this stonewalling, Strategic Vision saw no other way to obtain the discovery sought by the subpoenas besides moving the Court and pressing for a decision on the Maistrello deposition prior to August 23rd.

<u>Strategic Vision Accurately Described Golden Spring's Position on the Subpoena</u>

Early in its submission, Golden Spring accuses Strategic Vision of "fundamentally misrepresenting" Golden Spring's position regarding its subpoena.  That cannot be true, as Strategic Vision quoted directly from Golden Spring's own objection letter to describe its position. *See* ECF 132, at p. 5, quoting Golden Spring that its objections to the document requests "apply equally to the Subpoena's proposed deposition topics" and p. 6 n. 1 quoting Golden Spring:  "On the basis of these objections [to the *duces tecum* requests], GSNY will not produce information concerning the internal organization and structure of GSNY, nor will GSNY produce its financial or other business records unless they specifically relate to Eastern. These objections apply equally to the Subpoena's proposed deposition topics."

The truth is that Golden Spring <u>produced nothing</u> when it objected to the subpoena on the very last day allowed for a response and this cannot be excused by contending that Strategic Vision

---

[1]      Maistrello and Golden Spring contend "the only reason discovery has been extended to its present end date is because Strategic is on its third set of counsel."  (ECF 136, p. 3)  They fail to note that Plaintiff/Counterclaim Defendant Eastern Profit Corp. Ltd. ("Eastern Profit") (on its second set of counsel, if this should matter) has its own pending discovery on Strategic Vision's Counterclaims, just as Strategic Vision is trying to obtain discovery on those same Counterclaims from Eastern Profit, Guo, and related third parties like Maistrello and Golden Spring.

2



overemphasized Golden Spring's objections.  Golden Spring necessarily possesses discoverable information—it was appointed by Eastern Profit as its attorney-in-fact <u>for discovery in this litigation</u>.  Golden Springs admits its role, ECF 136, p. 6 n. 13.  It is reasonable to believe the appointment evidences that Golden Spring both has discoverable information and is under a duty to disclose it on behalf of Eastern Profit in this case.  As attorney-in-fact, Golden Spring also negotiated and oversaw the contract at issue. Golden Spring's then-CEO, Yvette Wang ("Wang"), was Eastern Profit's first corporate representative witness, notably serving as a representative of Golden Spring rather than an employee, director, or officer of Eastern Profit.  Wang also signed Eastern Profit's interrogatory responses, again in her capacity as a representative of Golden Spring.  For Golden Spring to not produce any documents whatsoever is a wholesale failure in its role as a discovery representative for a party litigant.

Nor did Golden Spring even indicate a proposed date of document production, which itself would have assumed that Strategic Vision agreed to postpone the deadline (it did not).  Instead, Golden Spring asserted broad objections, nine in total that applied equally to each document request with no limitation to any specifically.  The de facto position Golden Spring has taken is that it will wait to see if Strategic Vision can obtain relief from the Court and, if Strategic Vision is successful, then and only then produce documents, even ones it acknowledges are available and responsive.  (ECF 136, p. 5)  This is confirmed by Golden Spring's Aug. 19th correspondence—it too was provided without any production of documents and it too failed to indicate even a planned date for production.  Instead, Golden Springs makes it sound as if it had not yet begun a search: "GSNY has agreed to locate documents responsive to the Subpoena" (ECF 136, p. 5) and "GSNY [may not have] any such documents for multiple of the categories …" (ECF 136, p. 6 n. 12)  The return date of the subpoena was August 9th, 2019.  Documents were due then, even if objections were asserted to other portions of the subpoena.  Indeed, Strategic Vision has never taken the position that a limited production would waive any of Golden Spring's objections to other portions of the subpoena, so Golden Spring had no excuse not to produce documents on August 9th.  Ten days later, Golden Spring still has not produced any documents.  It is in default of the subpoena.

In addition to documents, Golden Spring's objections applied "equally" to the deposition topics.  Without even mentioning a plan to seek a protective order, Golden Spring indicated that it would not appear on the date indicated in the subpoena for the deposition and provided no alternative dates.  This was particularly troubling because discovery closes in a few weeks, and all of the parties represented by Golden Spring's counsel are objecting to their subpoenas and depositions, necessitating new dates for many of them.  To refuse to appear on the date duly-noticed in the subpoena and provide no alternative dates is tantamount to refusing to appear at all.[2]

---

[2]     Golden Spring says it will appear on a mutually convenient date (ECF 136, p. 5) but has never offered a single date to begin the discussion.

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



Golden Spring's opposition to the subpoena thus was not misrepresented or overstated—the subpoena was supposedly objectionable for nine separate reasons, no evidence was being produced, no plan was suggested for a belated production, Golden Spring would not appear for a deposition, no alternative deposition date was given, and it would be up to Strategic Vision to force Golden Spring to comply with the discovery.

<u>Discovery Is About Fact-Finding, Not Procedural Second-Guessing By An Opponent</u>

Non-parties, Maistrello and Golden Spring seemingly feel no hesitation disparaging Strategic Vision's case planning in an attempt to distract the Court from considering the fact-finding purposes of the discovery rules: "Strategic's prior counsel attempted to insert Guo into these proceedings … after its third-party complaint against Mr. Guo was dismissed as patently deficient …" (ECF 136, p. 2)  The Court should ignore this distraction.

In the first instance, Judge Koeltl did not find the allegations against Guo "patently deficient." Rather, Judge Koeltl ruled that a principal of an entity (*i.e.*, Guo, of Eastern Profit) cannot tortiously interfere with Eastern Profit's own contract. *See generally* ECF 97. Further, a principal of an entity who made promises on behalf of that entity (here, to adequately fund it) cannot be found liable under promissory estoppel when, as Judge Koeltl ruled, there is a valid contract that encompasses that same promise. This caused a re-evaluation of Strategic Vision's claims against Guo for tortious interference and promissory estoppel. Strategic Vision's alter ego claim was dismissed without prejudice because it had not yet pled facts showing Guo's domination and control, and had not yet pled any facts showing that he used Eastern Profit to commit a fraud. *Id.* This dismissal was without prejudice.

Strategic Vision concluded from Judge Koeltl's decision that since Guo controls Eastern Profit, the most appropriate theories under New York law were fraudulent inducement and breach of contract against Eastern Profit itself, charging Eastern Profit with the statements and acts of Guo. Strategic Vision's July 19th Counterclaims allege this in detail.  As detailed in the pending Counterclaims, this included facts about: the true date Guo came to the United States and his supposed history as a dissident even in China; Guo's ability to move hundreds of millions of dollars to and from China during a time when official retaliation had supposedly caused his assets to be frozen; and Guo's statements to party leaders criticizing other dissidents and promising to retaliate against them, followed by legal actions against some of the same individuals named in his statement. A written statement from Guo to Chinese Communist Party ("CCP") leadership just a few months before he began negotiations with Strategic Vision contains a disturbing promise to advance the vision of "Chairman Xi" Jinping and the CCP, including as a "propagandist."

This background cast a new light on other bizarre circumstances from Strategic Vision's performance of the contract that, in retrospect, now make sense. Flash drives of research data given to Strategic by Guo's agent, Wang (also a representative of Golden Spring), contained advanced malware. And the 15 names for initial research turned out to be "Records Protected," individuals whose data could not be accessed due to federal protections for certain foreign



individuals. Strategic Vision no longer believes that Guo intended to use the research to target the CCP, and if discovery can be completed, believes it can show that Guo never finished the research at all.

Based on all of these facts, Strategic Vision alleges that had it known Guo was not truly a dissident, and did not intend to use its research to undermine the CCP, it would never have contracted with Eastern Profit and exposed itself and its teams to Guo and his network. Guo's claims to the contrary were material, and Strategic Vision reasonably relied on them. It is primarily this fraud claim for which the non-party subpoenas seeks discovery.

The Non-Parties' Attempts to Constrain Relevancy Must Fail:
<u>This is Not Only a Breach of Contract Case</u>

In its opening letter, Strategic Vision established the various grounds why discovery from Maistrello and Golden Spring is warranted; those as to Golden Spring are discussed above.  As to Maistrello, until late July 2019, she was the sole director of ACA, the entity that wired Strategic Vision $1 million purportedly to make Eastern Profit's contractual deposit with Strategic Vision; she has appeared on videos with Guo; and, specific to discovery in this case, she has personally notarized key documents in this case, such as the Golden Spring power-of-attorney and Eastern Profit's verified interrogatory responses signed by Wang.

Failing to dispute these connections, Maistrello and Golden Spring instead give an incomplete description of this case to try to narrow what is relevant in discovery.  Almost in tandem, Eastern Profit, Guo, Maistrello, and Golden Spring each describe this as a breach of contract case, intending to narrow the contours of what is relevant and thereby oppose Strategic Vision's discovery as "harassment" and a "smear campaign" against Guo on matters that are irrelevant to the written agreement between Eastern Profit and Strategic Vision.  (*see e.g.* ECF 136, p. 3 n. 8, p. 4: "not relevant in this contract action," p. 6: "the action concerns a breach of contract …")

In truth, even Eastern Profit's own case is not limited to breach of contract.  It also alleges fraud and seeks "return" of $1 million in funds paid to Strategic Vision. The funds were not paid by Eastern Profit, which discovery has shown has no employees, officers, or directors. Instead, they were paid by a non-party called ACA Capital Group Limited ("ACA"), which purportedly had a loan agreement with Eastern Profit, although Strategic Vision has received no testimony from Eastern Profit about that document in substance.  Eastern Profit also asserts fraud (*i.e.,* that Strategic Vision misrepresented its capabilities and that this was material given Guo's needs).

Strategic Vision's July 19th response asserted two Counterclaims:  breach of contract and fraudulent misrepresentation.  Counterclaim II alleges that Guo made demands, and took actions, during performance that frustrated Strategic Vision's performance, violating the duty of good faith and fair dealing owed to Strategic Vision as it performed under the contract, and that Guo's actions are chargeable to Eastern Profit because he controlled it and made (or authorized) all

5



decisions for it. Strategic Vision's Counterclaim I, for fraud, alleges that Guo's material representations that he was a dissident and that he would use Strategic Vision's research to undermine the Chinese government and the Communist Party and that this induced Strategic to enter the contract to its harm because the representations were false. Strategic Vision alleges that all of Guo's false representations were chargeable to Eastern Profit because he controlled it; it was supposed to be a cut-out for him. (Indeed, Strategic would have run—not walked—away if Guo had said Eastern Profit involved other "investors" in China or was not fully within his control.)

Discovery thus cannot be limited to simply the written terms of the contract: no one can reasonably describe the pleadings in this case as confined to the contract, and relevancy also cannot be limited to breach of contract issues.

## Discovery to Golden Spring

Eastern Profit has relied on Golden Spring and its sometime-CEO (Wang) to provide discovery in this case, where Eastern Profit is pursuing claims for breach of contract, fraud, unjust enrichment, and declaratory judgment as the plaintiff. Wang served as Eastern Profit's Rule 30(b)(6) representative through her role with Golden Spring.  Golden Spring itself is an obvious source of discovery and should be required to give it; the document requests are not overbroad. What is overbroad are Golden Spring's objections to the subpoena. By lodging the same objections to each and every request, Golden Spring made it impossible for Strategic Vision to ascertain which of the document requests are acceptable and require Golden Spring to produce documents. Generally, the document requests seek relevant discovery into the financial history, assets, and activities of this entity, and may shed light on unanswered questions necessary to determine who controls, runs, or makes decisions for Eastern Profit and how, in turn, that entity had any sort of existence making it capable of experiencing any of the injury for which Eastern Profit seeks redress. Strategic Vision has no testimony from Eastern Profit as to whether the entity even has books and records, bylaws, articles of incorporation, minutes of meetings, annual financial statements, or the like, let alone what the content of these materials are.  It is only reasonable to ask for these items from Eastern Profit's power-of-attorney for the contract and this litigation. Further, the mere fact that the names referenced in the document requests are non-parties (ECF 136, p. 5) does not mean they have no relevant information.  Finally, Strategic Vision has alleged that Eastern Profit interfered with its performance under the contract by having another person or entity research the very same matters Eastern Profit directed Strategic Vision to be involved with, and discovery into Golden Spring's possible role in this context is relevant.

## Discovery to Maistrello

Maistrello objects to the document requests as "harassing" because she is no longer a director of ACA and therefore has no access to its records.  Maistrello is asking the Court to accept her counsel's word on that point rather than state it in a deposition under oath.  At a minimum, Maistrello should be required to give deposition testimony about why not.



Strategic Vision looks forward to discussing these issues with the Court at the telephone conference scheduled for tomorrow, August 21, 2019.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF

7