# Zeichner Ellman & Krause LLP

ONE LANDMARK SQUARE

STAMFORD, CONNECTICUT 06901

TEL: (203) 622-0900

DIRECT DIAL
(203) 489-1233
zgrendi@zeklaw.com

WWW.ZEKLAW.COM

August 20, 2019

**VIA ECF**

Hon. Debra Freeman
United States Magistrate Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

      Re: Eastern Profit Corporation Limited v. Strategic Vision US LLC, No. 18-cv-2185 (JGK) (DCF)

Dear Judge Freeman:

      We write in response to Strategic Vision US, LLC's ("Strategic Vision") reply letter dated August 19, 2019. Much like Strategic Vision's statements to the press concerning this matter, the reply letter was purposely designed to smear non-party Guo Wengui and obscure what is actually occurring and at stake in this litigation.

## FOLLOW UP 30(b)(6) OF EASTERN PROFIT

      First and foremost, the dispute concerning a second 30(b)(6) deposition of Eastern Profit Corporation Limited ("Eastern") has been significantly narrowed. Eastern has never resisted Strategic Vision taking a follow up 30(b)(6) deposition; to the contrary, *Eastern has been offering a second 30(b)(6) for over six months*. As recounted in prior correspondence with the Court (Dkt. No. 129) it was Strategic Vision's multiple changes in counsel[1] and bizarre insistence that Guo Wengui be deposed first and/or assume the role 30(b)(6) deponent, that has resulted in this follow up deposition being delayed. Indeed, Section V of Strategic Vision's reply letter attests to its own contradictory and befuddling approach – acknowledging that it has

---

[1] Strategic Vision's two prior sets of attorneys withdrew from representing Strategic Vision because Strategic Vision either could not, or would not pay for legal services. Dkt. No. 106. Most notably, Strategic Vision's initial counsel herein, Phillips Lytle LLP, has obtained an uncontested judgment against Strategic Vision in the Supreme Court for Erie County New York. *See Phillips Lytle LLP v. Strategic Vision US LLC*, 806238/2019, Dkt. No. 11.

ZEICHNER ELLMAN & KRAUSE LLP

August 20, 2019
Page 2

insisted that Mr. Guo be Eastern's 30(b)(6) witness, while admitting that the Court cannot compel Mr. Guo to be Eastern's 30(b)(6) and that he declined to so testify.  Dkt. No. 134 at 8. Strategic Vision's attempt to blame Eastern for Strategic Vision's failure to take a follow up 30(b)(6) deposition, which Eastern has been offering since late February 2019, should not be credited by this Court.[2]

In any event, Eastern is ready to produce Yvette Wang as its follow up 30(b)(6) deponent and is simply in the process of attempting to schedule that matter with Strategic Vision.  As to the scope of the proposed follow up 30(b)(6), the parties have engaged in a vigorous discussion concerning the permissible scope of questioning based on the topics noticed and do have disputes.

While the general relevance of the five topics in Strategic Vision's deposition notice are not disputed, Strategic Vision's dogged effort to "fish" well beyond the scope of those topics and the actual dispute between the parties is contested.  As Strategic Vision's statements to the press and 34-page counterclaim focused upon the personal history of Guo Wengui attests (Dkt. No. 127), Strategic Vision is trying to improperly use this litigation (and the discovery process) as a means to harm non-party Guo Wengui.  Eastern merely wants to litigate this case – not Strategic Vision's vendetta against Guo Wengui.

On a macro-level, Strategic Vision is asserting that it is entitled to learn everything and anything about Eastern because it is alleging that Guo controls Eastern, and therefore any information about Eastern might indicate whether or not Guo controls it.  Completely untethered from the facts of this case and applicable law, this bootstrapping approach should be rejected by this Court.  Strategic Vision has already failed to even adequately allege that Guo and Eastern are supposed alter egos (Dkt. No. 96).  Without an alter ego claim, extensive details concerning the whole history, internal workings and network of contacts maintained by Eastern are irrelevant to this dispute and the representations that led to it.  Such information has no bearing on the breach of contract claims or the fraudulent inducement claims raised by the parties.

While Strategic Vision is quick to cry "foul" over Eastern's objections, glaringly absent from Strategic Vision's reply letter is the fact that Eastern has agreed to the vast majority of the questions proposed by Strategic Vision.  A copy of all the questions proposed by Strategic Vision is annexed to this letter as Exhibit A.  However, several questions have no relevance to this case, cannot be considered to be within the ambit of the noticed topics, and are clearly designed to overburden Eastern with extraneous items.  The disputed questions (copied verbatim from the list Strategic Vision sent to Eastern) are discussed in turn below:

---

[2] Nor should this Court credit Strategic Vision's efforts to paint Eastern's objections to the scope of the follow up 30(b)(6) as late in coming.  Had Strategic Vision notice this deposition earlier, these issues would have been raised far sooner.

ZEICHNER ELLMAN & KRAUSE LLP

August 20, 2019
Page 3

1. Have its assets been frozen in Hong Kong due to charges that it is engaged in a money-laundering conspiracy with Guo, his son and/or daughter, and Han Chunguang, among others?

Eastern objects to this line of questioning because it does not relate to any of the topics noticed by Strategic Vision. Indeed, this line of questioning bears no relationship to this case, which concerns disputes arising from a failed private investigation agreement between Eastern Profit and Strategic Vision. *Allegations* of money laundering by authorities in China have no nexus to the dispute between Eastern and Strategic Vision in this case and are not probative of any material facts. This is a prime example of Strategic Vision attempting to use this proceeding as a vehicle to try to "dig up dirt" about Guo Wengui. Strategic Vision's position, that this relates to topic two concerning "the corporate structure of Eastern" is so vague and overbroad that it renders the concept of a topic mere verbiage. Under Strategic Vision's reading of this topic, everything about Eastern is relevant, because it could relate to Guo controlling Eastern.

2. Who worked for GS and how were they paid? Did EP, Guo, or any other person pay GS for its work? What families does GS work for now? In the past? What kind of work does it do?

This line of questions has no relationship to any of the noticed topics, and also has no nexus to the dispute between the parties. Strategic Vision is simply trying to find out anything and everything about any entity connected to this case in an attempt to malign and/or intimidate Mr. Guo. For clarity, Eastern does not object to questions concerning the power of attorney relationship between Eastern and Golden Spring (New York) Limited.

3. Does it have any assets, liabilities, or income? Bank or financial accounts? Loans with a bank? Where?

This line of questions has no relationship to any of the noticed topics, and also has no nexus to the dispute between the parties. This proposed probe into Eastern's financial status is improper and simply meant to harass Eastern. For clarity, Eastern does not object to answering basic yes/no questions concerning these relatively benign questions, but it should not be required to divulge all of its private financial dealings and arrangements if full detail simply because Strategic Vision wants to learn about them.

4. Who set up EP, where, why, and what has been its ownership since then? Who controls EP? Does EP have any business? If so, what is it, and where does it engage in that business? Who have been its directors/officers/employees/contractors, if any?

Strategic Vision seeks to discover the entire corporate history of Eastern, from day one through present, even though the only relevant dealings between the parties occurred from September 2017 through March 23, 2018 (the date this action commenced). Eastern is willing to answer basic

ZEICHNER ELLMAN & KRAUSE LLP

August 20, 2019
Page 4

questions concerning its status during the relevant period, but objects to an unbridled inquiry into its full corporate history, which began in 2011.  Again, simply alleging that Guo controls Eastern should not enable a carte blanche inquiry into all things Eastern.

>   5. What were EP's communications with ACA or any person who controls ACA about the loan, or about repayment?  Is EP making its interest payments? With what assets?

Eastern Profit borrowed $1,000,000 from ACA and those funds were wired to Strategic Vision, which accepted those funds.  Eastern Profit has produced documentation of the loan to Strategic Vision in discovery.  Strategic Vision has no standing or basis to challenge the debtor-creditor relationship between Eastern and ACA - how the loan is treated today is irrelevant to the claims of the parties.  In any event, none of Strategic Vision's topics cover these questions.

>   6. Does EP share employees or assets, or do business with, any other Guo-controlled entity, including but not limited to the Rule of Law entities?

This line of questions has no relationship to any of the noticed topics, and also has no relationship to the dispute between the parties.  This is yet another prime example of Strategic Vision fishing for information about Mr. Guo.

>   7. To what "investors" did EP give reports? Did it disclose SV's work to any person outside of EP?

Eastern objects to this question to the extent it may require it to disclose the identities of individuals in Hong Kong or China who might be harmed if their identities would be revealed.  In addition, Eastern objects to this question because in its view, Strategic Vision did not give any reports to Eastern pursuant to the terms of the Agreement.

>   8. When has Guo advised EP and acted on its behalf?

Eastern does not object to this question so long as it is limited to Eastern's relationship with Mr. Guo concerning Strategic Vision and the contract at issue.  However, this Court should not permit Strategic Vision to demand that Eastern disclose other (if any), however unrelated, dealings with Guo, because they have no connection to this case.

In light of the foregoing, the Court should appropriately limit the scope of the follow-up 30(b)(6) of Eastern Profit to preclude Strategic Vision from asking questions outside the scope of its deposition notice and beyond the scope of the dispute between the parties.

ZEICHNER ELLMAN & KRAUSE LLP

August 20, 2019
Page 5

## PROPOSED DEPOSITION OF HAN CHUNGUANG

In a further effort to harass and burden Eastern, Strategic Vision is demanding that it produce Han Chunguang, its principal. Han Chunguang has no direct knowledge of the interactions between French Wallop and J. Michael Waller (on one hand) and Guo Wengui, Lianchao Han, and Yvette Wang (on the other), concerning the Agreement at issue. He has never met, spoke to, or written to French Wallop or J. Michael Waller, as those witnesses well know. He did not participate in the negotiations between French Wallop and J. Michael Waller (on one hand) and Guo Wengui, Lianchao Han, and Yvette Wang (on the other). "Depositions of high-level corporate executives may be duplicative, cumulative and burdensome where the person sought to be deposed has no personal knowledge of the events in dispute." *Murray v. Cty. of Suffolk*, 212 F.R.D. 108, 109 (E.D.N.Y. 2002). "A party moving to quash the deposition of a senior executive must demonstrate that the proposed deponent has no personal knowledge of the relevant facts and no unique knowledge of those facts." *Guzman v. News Corp.*, 2012 U.S. Dist. LEXIS 91031, at *4 (S.D.N.Y. June 29, 2012). Here, the depositions of French Wallop and J. Michael Waller make it perfectly clear that Han Chunguang played no role in interacting with those two individuals – he has never met or spoken to either them and did not attend a single meeting between the parties herein, telephonic, in person or otherwise. Thus, it is undisputed that he never uttered or heard any of the representations at issue, and he did not play any role in the negotiation or execution of the Agreement.

As Strategic Vision readily admits, Han Chunguang's only connection to this case is that he authorized Golden Spring (New York) Limited to act as Eastern's power of attorney concerning the Agreement and this litigation, and that he signed the loan document with ACA to borrow the $1,000,000 which was sent to Strategic Vision as the deposit under the Agreement. Subject to its objections above, Eastern is ready and willing to answer reasonable limited questions concerning these two discrete items through its designated witness at a follow up 30(b)(6) to be scheduled. Deposing Han Chunguang is not reasonable or appropriate under these circumstances and would likely be wholly duplicative of the follow up 30(b)(6). As an additional compromise, Eastern Profit is willing to answer reasonable interrogatories, concerning the two documents Mr. Han signed in this case, in order to resolve this issue and save both parties the cost of an additional deposition.

Respectfully submitted,

/s/Zachary Grendi

Zachary B. Grendi