

Erin N. Teske
Direct Dial: 646-218-7517
eteske@hodgsonruss.com

September 5, 2019

**VIA ECF**

Hon. Debra Freeman
United States District Court
Southern District of New York
500 Pearl St., Courtroom 17A
New York, New York 10007

      Re:    *Eastern Profit Corp. v. Strategic Vision US LLC*,
            1:18-cv-2185-JGK ("Action")

Dear Judge Freeman:

      On behalf of non-party Guo Wengui ("Mr. Guo"), I am writing in response to the letter submitted on August 22, 2019 ("Letter") on behalf of defendant Strategic Vision US LLC ("Strategic") concerning Strategic's requests for information regarding payments made by non-party ACA unrelated to the agreement ("Agreement") that is the subject of this Action.

      It should not be lost in considering this request that Strategic and its counsel have made clear that one of their goals in defending this Action is "to hold Guo Wengui and his network accountable."[1] In their quest to obtain information irrelevant to this Action that can be used in their attempt to embarrass and harass Mr. Guo, Strategic has proposed several explanations to support a legitimate purpose for seeking the requested information. First, Strategic represented that Mr. Guo had stated that he could not remove funds from Hong Kong because he was a dissident.[2] It was unable, however, to find any support for this statement, so Strategic then asserted that Hong Kong was a puppet for China and would follow its directive to block the transfer of funds if Mr. Guo was a dissident.[3] As demonstrated below, its current

---

[1] Strategic's counsel, Mr. Greim is quoted by the Wall Street Journal in its article, "Chinese Tycoon Holed Up in Manhattan Hotel Is Accused of Spying for Beijing," as wanting to hold Mr. Guo accountable.

[2] *See* Transcript of Telephone Conference held on August 21, 2019 before the Honorable Judge Debra C. Freeman ("August 21 Tr."), 29:18-29:21, 34:9-34:12, 48:19-49:3, 49:11-49:14, 49:18-50:10. In any event, it seems disingenuous to argue that Strategic needs discovery on Mr. Guo's ability to direct funds out of Hong Kong to show that Mr. Guo is not a Chinese dissident, when Strategic has known – since before it signed the Agreement – that Strategic received funds from a Hong Kong entity in furtherance of the Agreement that Strategic was negotiating with Mr. Guo.

[3] *See* August 21 Tr., 67:5-67:25, 68:8-68:20; 70:11-70:18.

Hon. Debra Freeman
September 5, 2019
Page 2



Letter demonstrates no support for this proposition either.  Neither has Strategic provided a logical nexus for its assertion that if ACA historically made payments for Mr. Guo or at his direction, somehow, that means the subject loan document is fraudulent or that Strategic should be entitled to keep the $1,000,000 it received under the Agreement, even if proven that Strategic breached the Agreement or that the Agreement should be rescinded.  Strategic's requests for information can now be seen clearly for what they are, an attempt to harass and provoke Mr. Guo.  Thus, Strategic should not be entitled to such overreaching discovery from multiple non-parties.

In its Letter supporting Strategic's request for discovery from nonparties concerning ACA transfers out of Hong Kong at Mr. Guo's direction, Strategic first argues that "holding and transferring Hong Kong funds is inconsistent with someone who truly believes he is a dissident."  This is simply not true and belied by the facts that Strategic's counsel now acknowledges to be true.  Contrary to the position taken by Strategic's counsel on the telephone conference with Your Honor on August 21, 2019 ("Conference"), Strategic now acknowledges that the Chinese government did not have the authority to restrain Mr. Guo's funds in Hong Kong during the relevant time period.  Strategic confirms that "Mainland China cannot directly freeze assets in Hong Kong."

Notwithstanding this admission, Strategic's counsel argues that the requested information is somehow still relevant because there is a "work-around" that Strategic believes "is not difficult, and "in essence, rulings in either Hong Kong or Mainland China are assumed to be enforceable in the other jurisdiction."  Strategic's beliefs are misguided.  According to the article Strategic itself cites in its Letter, the "Choice of Court Agreement,"[4] effective during the relevant time period, had a limited application and was only relevant to judgments rendered pursuant to a written agreement containing an exclusive jurisdiction clause that identified China or Hong Kong as having sole jurisdiction for resolving the dispute concerned.[5]  The Choice of Court Agreement would not cover an asset-freeze unilaterally imposed by the Chinese government resulting from a person's status as a dissident.  Strategic has not shown that the Chinese government had the means, difficult or not, to freeze Mr. Guo's assets in Hong Kong at the relevant time period, much less that it actually did so.  Thus, whether Mr. Guo controlled assets in Hong Kong, even if true, is not relevant to his status as a Chinese dissident.[6]

---

[4] Strategic does not define the term "Choice of Court Agreement," which presumably refers to the 2006 Arrangement on Reciprocal Recognition and Enforcement of Judgments in Civil and Commercial Matters by the Courts of the Mainland and of the Hong Kong Special Administrative Region Pursuant to Choice of Court Agreements between Parties Concerned.

[5] This is supported by the article, titled "Eight features of the new enforcement arrangement between Mainland China and Hong Kong solidifying HK's role as a dispute resolution provider on BAR," to which Strategic links on page 1 of its August 22, 2019 letter.

[6] That China seized control of another dissident's assets in 2019, more than a year after any time relevant to these matters, especially in a changing political climate, is also irrelevant to Mr. Guo's status as a dissident.

Hon. Debra Freeman
September 5, 2019
Page 3



      Strategic's second enumerated reason for seeking information concerning payments made by ACA is that, inexplicably, such information would "tend to show" that the payment ("Payment") made by ACA to Strategic under the Agreement is not a loan to Eastern, such that Eastern does not have an obligation to pay that loan back.[7] Eastern has provided a loan document ("Loan") that papers the financial obligation of Eastern to ACA for the Payment. Strategic is not seeking information concerning the formation of the Loan or payments made pursuant to the Loan. Strategic is not seeking information concerning the Loan at all. Strategic wants to engage in a fishing expedition for information on other payments of ACA that, if at Mr. Guo's direction, "would tend to show that this was simply ACA or Guo's money that is regularly put to use for such projects without the necessity of any loan." Whether the Loan was a "necessity" does not matter. The only thing that matters is that it exists, which is supported by the Loan document and not refuted by any of the evidence that Strategic is seeking. Moreover, Strategic does not even attempt to bridge the gap in logic that even if its theory is accurate, it would not be obligated to return the $1,000,000 Strategic received for the performance of services under the Agreement if, in fact, it did not provide the services it contracted to perform, the allegations at the heart of Eastern's complaint.

      Strategic has not articulated a relevant basis for requesting this information from nonparties and we respectfully submit that Strategic should not be entitled to pursue this discovery.

      Respectfully submitted,

*Erin Teske /DMF*

Erin N. Teske

---

[7] Strategic should not be entitled to a windfall of $1,000,000 if it breached the Agreement simply because a third party made the $1,000,000 payment on Eastern's behalf, a fact which is not disputed in this Action.