

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 6, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF

Dear Judge Freeman:

Please accept this letter as Defendant/Counterclaim Plaintiff Strategic Vision US, LLC's reply regarding the issue of payments from ACA to Guo Wengui or the network of entities he controls. We originally wrote on this topic the day after the Court's August 21, 2019 conference on multiple discovery issues (ECF 144), and yesterday, September 5, 2019, the Hodgson Russ firm prepared a Response, ECF 150. Far from demonstrating the inherently unbelievable proposition that Hong Kong is some sort of safe haven for true Chinese dissidents or their assets, or that Mr. Guo has never claimed to be unable to remove money from Hong Kong, the Response—perhaps unwittingly—does the opposite.

"Mr. Guo is the most-wanted dissident worldwide by the Chinese Communist Party and has been their most outspoken and vitriolic critic since his arrival in the United States." **Guo "has never taken a penny out of China or Hong Kong since he began speaking out" against the Chinese Communist Party** (emphasis added). These statements appear **in the very article** cited to this Court in the Response, and were provided to the Wall Street Journal and numerous other major publications by Daniel Podhaskie, in each case speaking as "Mr. Guo's lawyer."[1] Mr. Podhaskie also holds himself out in this case as the general counsel of Golden Spring (which appears to be controlled by Guo) and in that capacity, directly participates in—and indeed, directs—this litigation.

Perhaps trying to hold this line in order to protect his dissident identity, in his deposition in this very case, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
(See Ex. B hereto (portions of Guo's deposition testimony, at 183:3-6, 184:9-14, and 188:17-189:8). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B, Guo Testimony, at 194:25-195:10). Indeed, he even claims—▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Ex. B, Guo

---

[1] See "Chinese Tycoon Holed Up in Manhattan Hotel Is Accused of Spying for Beijing," *Wall Street Journal*, July 22, 2019, a copy of which is attached hereto as Ex. A.



Testimony, at 183:24-185:22). Discovery would show that this is untrue—███████████████████████████████████████████████████████████████████████████████████████████ The problem is that his statement, like many others, is untrue. The Court has already instructed counsel that this would be one way to show the relevance of ACA transfers, and Strategic Vision—after reviewing the very article cited by Guo's attorneys—has met that burden.

The Response fails to cite any of its own independent authority suggesting that dissidents' assets are safe in Hong Kong, or that a true dissident would feel comfortable keeping substantial assets in Hong Kong, moving funds into and out of that jurisdiction. Instead, it tries to quibble with Strategic's authority. First, the Response tries to move the goalpost for showing relevance. It now seems to assert that only a direct asset freeze, "unilaterally imposed" from the Mainland upon a wholly-Hong Kong-based entity, and at that, a freeze explicitly "resulting from a person's status as a dissident," would be sufficient to chill a true dissident from keeping Hong Kong assets. This ignores, however, the ability for Chinese authorities to simply obtain a judgment in Chinese courts and then enforce that judgment against wholly Hong Kong-based assets in Hong Kong courts— courts that, for the reasons Strategic Vision pointed out in its first letter, cannot be viewed as providing a genuinely independent review of the prior judgment. This should be sufficient to chill any true dissident from holding substantial assets in Hong Kong—as Guo himself seems to acknowledge in his lawyer's statements about this case. Further, without any citation whatsoever, the Response claims that evidence of an asset seizure from earlier in 2019, before the recent protests and not much more than a year than the ACA transfer in this case, is of no probative value because of "a changing political climate." Did the climate change that much between 2017 and 2018 and early 2019? The Response doesn't venture an answer.

In sum, the balance weighs in favor of Strategic Vision on this point, particularly in view of the express statement made by Guo's own lawyer in this litigation, and ████████████ ██████████████████████████████████

The Response—interestingly, now filed on behalf of Mr. Guo, rather than Ms. Karin Maistrello, the ACA director on whose behalf Hodgson Russ originally claimed to be advocating in opposing ACA discovery—next ventures into new territory. Strategic has argued that there is a second reason a showing of repeated and recent ACA transfers at Guo's request is significant. In addition to other evidence Strategic expects to adduce, this will show that ACA is simply used by Guo to pay his expenses with no expectation of repayment, rather than a "lender" to Eastern Profit or any other entity. Eastern Profit was inserted into the contract at the last minute, and ACA was likely always intended by Guo to simply pay his expenses. Strategic believes the "loan" was concocted later in the litigation by Golden Spring once it realized that Eastern Profit could not show that the $1 million it was seeking to recover was, in fact, Eastern's money.

First, it is telling that rather than Maistrello claiming to be burdened by questions about the ACA payment and loan—the initial position—it is now Guo himself, ████████████ ███ Interestingly, he now argues that **all loan discovery**—not just the discovery specifically at



issue here—should be blocked. He seems to claim that such discovery is improper because it is part of a conspiracy to embarrass him, a mere third party with no stake in this lawsuit. ███████ ████████████████████████████████

Second, and relatedly, this Court has already ruled that discovery into the purported loan is appropriate, despite serial attempts to reargue the point during the August 21, 2019 conference. ████████████████████████████████████ and has been the subject of much other discovery. Indeed, it is truly bizarre that the Response claims Strategic is not even seeking discovery into the loan, including its negotiation, formation, and payments. Surely Guo's counsel are well aware that this is precisely what Strategic is seeking.

Third, the Response simply asserts that discovery should be closed on this point because the loan "exists," that Eastern Profit has provided a "document," and—in what may be an unfortunate choice of words—that this document has "papered" the loan. But in fact, the parties dispute whether the loan exists. They dispute whether the document is authentic. And they dispute what has been "papered": a real transaction by the authorized representatives of two entities, or someone's after-the-fact story in an attempt to salvage Eastern's damages claims. The loan "document" was produced late; it bears the signature of a person who is Guo's cook and bodyguard, who seems to have had no connection to Eastern Profit when it was signed, and whose deposition still is unscheduled; and its counterparty seems to have tried to abruptly slip out of the Court's jurisdiction via resignation shortly after its director conferred with Golden Spring's counsel, Mr. Podhaskie. (Counsel for all of these parties is now refusing to produce Maistrello's resignation-related communications, contrary to what appeared to be an earlier promise.) Even without these highly unusual circumstances, no party is required in discovery or on the merits to simply accept another party's document as genuine, authentic, and non-fraudulent.

And at any rate, why should the basic relevance of the existence of the loan, already decided by the Court as legitimate grounds for discovery, now be suddenly subject to re-argument by Guo, who still claims to have no connection to ACA or the loan? It is no response that Guo is a mere third party who is being "harassed" by being unfairly tied to Eastern Profit and the other entities in his network. ████████████████████████████████████████████████████ Guo's cook and bodyguard, and then, during the relevant time, his daughter, controlled Eastern. Guo and his other entities cannot continue to claim to be unfairly burdened by litigation they are directing.

In conclusion, Strategic has shown that evidence of ACA's other financial transfers at Guo's order or direction is relevant under Rule 26. It relevant to: (1) Guo's claims that he has not transferred any money from Hong Kong since speaking out as a dissident—which he claims began from the moment he came to the US in 2015; and (2) the question of whether ACA is a piggybank for Guo and simply makes payments at his direction, without the right of any purported third-party entity to lay a claim to those payments as an asset.



                                        Respectfully submitted,

                                        Edward D. Greim

cc: Counsel of record via ECF

1100 Main Street, Suite 2700   Kansas City, MO 64105   **ph** 816.256.3181   www.gravesgarrett.com