Erin N. Teske
Direct Dial: 646-218-7517
eteske@hodgsonruss.com



September 13, 2019

**VIA ECF**

Hon. Debra Freeman
United States District Court
Southern District of New York
500 Pearl St., Courtroom 17A
New York, New York 10007

      Re:   *Eastern Profit Corp. v. Strategic Vision US LLC*,
              1:18-cv-2185-JGK ("Action")

Dear Judge Freeman:

      On behalf of non-party Guo Wengui ("Mr. Guo"), I write in response to the letter submitted on September 3, 2019 ("Letter") on behalf of defendant Strategic Vision US LLC ("Strategic") seeking to compel Mr. Guo to return for a second day of his deposition. Strategic, apparently dissatisfied with the testimony elicited during the seven hours of Mr. Guo's deposition already conducted, that he is a dissident of the Chinese Communist Party ("CCP"), seeks to inquire further into his relationship with the CCP and other peripheral topics. The Letter is replete with logical fallacies, unfounded assumptions of fact, and misapplication of legal principles, not all of which can be addressed here but some of which are discussed in further detail below.[1]

      As a preliminary matter, in order for Strategic to prevail on its fraudulent misrepresentation claim – that in entering into the agreement ("Agreement") with Eastern Profit Corporation ("Eastern") Strategic relied on Mr. Guo's allegedly false representation that he was a dissident – would require a factual determination that Mr. Guo, a non-party who is a publicly outspoken critic of the CCP seeking political asylum in the United States, is a spy. The stakes, therefore, for Mr. Guo, a non-party to this proceeding,[2] are far higher than whether Strategic

---

[1]   Strategic submitted its Letter before ever requesting to meet and confer on the subject of its Letter. The parties did discuss on September 9, 2019 the scope of Strategic's requests and Guo agreed to provide to provide additional information, but Strategic would not make any concessions.

[2]   Strategic previously sought to state a direct claim against Mr. Guo by filing a third-party complaint. That complaint was dismissed by Order dated May 13, 2019. Strategic's current strategy against Mr. Guo is nothing more than a thinly veiled attempt to skirt that ruling and have Mr. Guo treated as if he were a party when he is not.



should be able to pursue discovery on allegations raised against Eastern for the first time in its amended answer. The discovery Strategic seeks and upon which it will ask this Court to determine that Mr. Guo is a spy is, even if true, insufficient to establish such a fact, as shown below. On the other hand, the discovery Strategic seeks of Mr. Guo is highly personal information that, in the hands of the CCP, could have serious repercussions to Mr. Guo. Moreover, Strategic has never established that it has a good faith basis to believe that Mr. Guo is a spy; only vague conclusions drawn from conspiratorial meanderings. Strategic should not be allowed to pursue a fishing expedition on the basis of unfounded allegations.

As a non-party, Mr. Guo does not have standing to move to dismiss this claim, and his only recourse against these harassing discovery requests is in the context of a discovery dispute, by showing that the information requested is not relevant to the claims and defenses in this Action and not proportional to the needs of the case. That Strategic has alleged a fraudulent misrepresentation claim should not entitle it to exhaustive discovery of a nonparty where there is no basis for believing the requested information will support Strategic's claims and where the information, even if true, is not sufficient to establish a claim or defense. Further, it cannot be ignored that the landscape in which Strategic seeks this discovery casts sincere doubt on the bona fides of its claim.

Strategic's fraudulent misrepresentation claim was contrived to create a seeming legitimacy for presenting defamatory allegations about Mr. Guo's status as a dissident. It should come as no surprise that, immediately on filing its pleading, Strategic took its allegations to the press, demonstrating that its actual intent was not to present a defense, but to create adverse publicity detrimental to Mr. Guo.[3] The claim itself requires extraordinary leaps in logic and the underlying representation on which it is based - that Mr. Guo is indeed a dissident - is not a fact that Strategic can disprove even were it allowed to pursue its overbroad discovery. Indeed, the fact of being a dissident is self-fulfilling. That there are countless publications and instances of Mr. Guo publicly denouncing the CCP establishes his status as a dissident. That Strategic has to unearth private information about Mr. Guo and then spin it together to create a story incapable of corroboration,[4] which story might tend to show that Mr. Guo is not a dissident, contrary to every public pronouncement that he is, demonstrates the absurdity of Strategic's claim. Strategic's claim also requires the Court to overlook the following leaps in logic.

First, Strategic touts itself as a sophisticated investigative firm capable of in-depth and detailed forensic financial, tracking, and internet research into international and political figures, and it would have the Court believe that it agreed to investigate high-ranking members of the CCP on the basis of Mr. Guo's representation that he is a dissident without doing any due

---

[3] Just 72 hours after Strategic filed its Answer and Counterclaims to the Second Amended Complaint ("Counterclaims"), the Wall Street Journal published an article titled, "Chinese Tycoon Holed Up in Manhattan Hotel Is Accused of Spying for Beijing," which publicizes Strategic's allegation that Mr. Guo "is a spy for the Chinese government" and otherwise cites extensively to the Counterclaims' assertions.

[4] According to Strategic's own theory, the CCP is not likely to confirm the identity of a double agent.

Hon. Debra Freeman
September 13, 2019
Page 3



diligence research on Mr. Guo or undertaking any efforts to vet his dissident status.[5] It is only now, almost a year and a half after this Action was commenced, on its third set of counsel, following the dismissal of three causes of action it asserted against Mr. Guo personally,[6] that Strategic claims to have discovered that it was fraudulently induced to enter the contract with Eastern.

Second, Strategic has claimed that the fact that Mr. Guo was able to direct a payment out of a Hong Kong entity shows that Mr. Guo is not a dissident. Strategic indisputably received $1,000,000 from an entity that Strategic knew to be a Hong Kong entity **before** it signed the Agreement.[7] By Strategic's own argument, believing that Mr. Guo directed monies out of a Hong Kong entity should have raised a red flag as to Mr. Guo's status as a dissident if, as it now claims, a true dissident would not have been able to engineer such a payment. Nonetheless, Strategic accepted the money, signed the Agreement, and purports to have provided services thereunder and, now, claims that Mr. Guo is not a dissident because he has access to funds in Hong Kong.

Third, Strategic does not, and cannot, articulate any damages that it incurred as a result of Mr. Guo's purported statement that he's a dissident. Strategic has not stated – and certainly has not produced supporting documents – that it has incurred out-of-pocket damages to perform services under the Agreement in excess of the $1,000,000 it has already received.[8] And any allegation of reputational damages[9] defies logic, because the entire world outside of Strategic seems to believe Mr. Guo is a dissident – or at least it did before Strategic used the press to

---

[5] Strategic has not alleged that there is information about Mr. Guo available now that was not equally available to Strategic at the time it met Mr. Guo.

[6] None of those three claims directed against Guo directly alleged that he had made false representations to Strategic to induce it to enter the contract with Eastern.

[7] *See* Transcript of Michael Waller ("Waller Tr."), 157:9-158:23. Indeed, Mr. Waller's and Ms. Wallop's testimony makes clear that Strategic included in the Agreement a provision allowing Eastern to make payments to Strategic through other entities for the purpose of avoiding payments directly from Hong Kong or China (*see* Waller Tr. 98:13-99:6; Transcript of French Wallop ("Wallop Tr."), 168:4-168:24), because Strategic understood that Mr. Guo had access, via friends, family, and entities, to funds in Hong Kong. Of course, he did! Mr. Guo's entire life was spent in China and Hong Kong. Mr. Guo made his wealth in China and Hong Kong. Mr. Guo's family and friends live in China and Hong Kong. Strategic expected the funds paid under the Agreement to originate in Hong Kong and China, or at least that it was a possibility – which is the very reason why Strategic included a provision in the Agreement to avoid detection by the Chinese authorities.

[8] *See* Transcript of Proceedings Before The Honorable Judge Debra C. Freeman on August 21, 2019 ("Court Conference Tr."), 41:5-41:23. It seems that Mr. Greim was careful to avoid saying that Strategic has out-of-pocket damages of more than $1,000,000 and that in order to exceed $1,000,000 of claimed damages, Strategic is inexplicably including reputational damages. Reputational damages are belied by the facts.

[9] *See* Court Conference Tr., 41:12-41:23.



broadcast its allegations to the contrary.[10] Moreover, the parties made specific efforts to distance Mr. Guo from the Agreement[11] and, until this lawsuit and Strategic's own communications with the press, no one would have had any reason to associate Mr. Guo with Strategic.

It is in this context that Strategic must demonstrate that the discovery it seeks from Mr. Guo is relevant to its claims or defenses in this Action and is not just a fishing expedition. *See Winfield v. City of New York*, No. 15-CV-05236, 2018 WL 716013, at *4 (S.D.N.Y. Feb. 1, 2018) ("The party seeking discovery bears the initial burden of proving the discovery is relevant."); *see also Barbara v. MarineMax, Inc.*, No. 12 Civ. 368, 2013 WL 1952308, at *2 (E.D.N.Y. May 10, 2013) ("The party seeking discovery must make a prima facie showing that the discovery sought is more than merely a fishing expedition.") (internal quotations and citations omitted). Strategic does not meet this burden.

I.  Questions concerning purported communications with the CCP:

Mr. Guo has already testified, in response to multiple questions, that he is a CCP dissident. Strategic asked Mr. Guo in his deposition – and Mr. Guo answered – the following questions:

> Q: Did you tell French Wallop and Mike Waller that you shared those goals?
> A. Yes. Our goal is the same. To overthrow the Chinese Communist Party.
> Q. Was that a true statement?
> A. I always tell the truth. So there's no reason for me to spend money, to spend my energy just telling lies to those two persons.
> Q. Well, are you a dissident?
> A. I'm a person who is dedicated to overthrow the Chinese party. Of course, I'm a dissident.
> ...
> Q. Do you want to undermine the current leadership of the People's Republic of China?
> A. I'm not just trying to undermine the government; I'm trying to eliminate the current government, to -- I'm trying to eliminate the party, Chinese Communist Party, to bring rule of law and freedom to China.
> Q. Does that include eliminating Chairman Xi Jinping?
> A. I want to answer this question. Of course, including him. I would like to emphasize one more time, anybody who's done harm to the Chinese people, including people from Xinjiang (phonetic), we're going to bring them down; we're going to eliminate them, we need to bring them to be tried by the rule of law, including Xi Jinping.

---

[10] Aruna Viswanatha and Kate O'Keeffe, *Chinese Tycoon Holed Up in Manhattan Hotel Is Accused of Spying for Beijing*, WALL STREET JOURNAL, July 22, 2019.

[11] *See* Wallop Tr., 297:23-298:8; Waller Tr., 81:16-81:20, 128:18-129:2.

Hon. Debra Freeman
September 13, 2019
Page 5



See Transcript of the Deposition of Guo Wengui on August 2, 2019 ("Guo Tr."), 31:24-32:17, 33:6-34:2 (objections and corrections to interpretation omitted)

Apparently dissatisfied with Mr. Guo's answers, Strategic now wants to dig invasively into Mr. Guo's personal life to find out whether there is anything that might be helpful in showing that Mr. Guo has lied about some aspect of his life. Of course, even if Mr. Guo was untruthful about some aspect of his past, that would not be evidence that he is secretly a spy for the CCP masquerading as a dissident. Strategic's efforts to spin well-publicized facts into a fanciful story may be the basis for conspiratorial flights of fancy, but it is does not form the necessary good faith basis to support its requests to examine Mr. Guo's life.

Strategic argues that "Guo communicated and negotiated with CCP and PRC officials about ways in which he could advance the regime just a few months before meeting with Strategic...."[12] To support this argument, Strategic cites its Counterclaims alleging: "Guo later admitted that he had agreed to not one but two meetings with the Chinese intelligence and security officials in May 2017,"[13] and then describes the "meetings" as "a meeting between Guo and visiting Chinese officials regarding his assets, family, and public statements," as though these conversation would show that Mr. Guo is not a dissident.[14] Strategic does not provide any source for its allegations, and the invasive discovery Strategic is requesting should not be permitted on the basis of such unsupported accusations. In fact, publicly available information undermines Strategic's conspiracy theory. The Wall Street Journal ("WSJ") published an article – months before the Agreement was signed – titled "China's Pursuit of Fugitive Businessman Guo Wengui Kicks Off Manhattan Caper Worthy of Spy Thriller," in which the WSJ reports that, in May 2017, Chinese officials showed up at Mr. Guo's apartment in New York City and urged Mr. Guo "to quit his activism and return home, after which the government would release assets it had frozen and leave his relatives in peace." The WSJ article further states that "Mr. Guo had told [U.S. law-enforcement authorities] about the impending visit."[15] Nothing in the WSJ article contradicts Mr. Guo's status as a dissident and, in fact, the article lays bare the paucity of information, or worse the manipulated details, on which Strategic is basing its request for invasive discovery from nonparties.

Strategic has not provided any good faith basis for believing that the information it seeks would be sufficient to show that Mr. Guo is a double agent.[16] The very breadth of

---

[12]   Letter, p. 2.

[13]   Counterclaims, ¶¶ 73-74.

[14]   Letter, p. 2.

[15]   The WSJ states that its reporting on this matter was based on a first-hand review of tapes of the visit from the Chinese officials. These are not unfounded allegations, as are Strategic's.

[16]   It should not be overlooked that China engages in disinformation campaigns against its dissenters and it is critical to know the source of any information retrieved from the internet. See "China Is Waging A Disinformation War Against Hong Kong Protesters," NY TIMES, August 13, 2019; "Facebook, Twitter accuse China of disinformation campaign against Hong Kong protesters," Fox News, August 19, 2019.

Hon. Debra Freeman
September 13, 2019
Page 6



Strategic's request to explore every conversation Mr. Guo might have had with the CCP, even "before beginning his contract negotiations with Strategic Vision," (Letter, p. 2) underscores the notion that Strategic does not know what it is looking for, but is simply on a fishing expedition to see what information it might discover. And it is engaged in this exploration after having already demonstrated its propensity to engage in a smear campaign against Mr. Guo. Strategic has not met its burden in identifying the relevance of inquiries to Mr. Guo concerning conversations with CCP officials, and Strategic should not be granted such discovery.

II.      Questions concerning Mr. Guo's past in China

Strategic next seeks to explore "Mr. Guo's past in China and the reasons for his coming to the United States." Strategic has not made any attempt to relate this information to its claims and defense, as requested by this Court.[17] To the contrary, Strategic seems to dispute the timing of certain occurrences in Mr. Guo's past which, even if true, would not support a finding that Mr. Guo is a double agent.[18] For example, Strategic believes Mr. Guo was arrested and imprisoned in May, not June, of 1989 and that the onset of official reprisals against members of Ma's faction of the CCP could not have forced Mr. Guo out of China in late 2014, because authorities did not "move to charge Ma" until 2017. None of these facts has anything to do with whether Mr. Guo is and was at all relevant times an outspoken critic of the CCP. Certainly, the information would not provide evidence that Mr. Guo is acting as a double agent providing support to the CCP.

Moreover, the questions that Strategic proposes to ask in connection with this category of discovery do not even concern the requested topic of inquiry. Questions such as "When is the last time you left this country?" and "When did you return from your last trip out of the country?" have no relevance to the topic identified or the claims and defenses in this Action. The proposed questions are palpably overbroad and Strategic has made no effort to tailor its requests, despite this Court's directive to do so.[19] Thus, it should not be granted discovery concerning "Mr. Guo's past in China."

III.     Questions concerning whether Mr. Guo obtained other research

Again, Strategic makes inexplicable leaps in logic to argue that it is entitled to this discovery from nonparties. Strategic suggests that if Mr. Guo requested similar research from other entities and has not yet used the results thereof, that such facts inexplicably would show Mr. Guo is not a dissident. Strategic has not provided any support for drawing this conclusion and ignores that there are countless reasons why Mr. Guo, even if he did request similar research

---

[17]     See Court Conference Tr., 104:19-104:25, 105:8-105:15, 108:6-109:14.

[18]     The Letter, citing Strategic's Counterclaim, takes offense with Mr. Guo's and the media's portrayal of Mr. Guo's background in China and Hong Kong, but in no way does Strategic show how these statements are in any way relevant to its claims and defenses in this Action.

[19]     See Court Conference Tr., 98:20-99:17.



from other entities, may not have published the information he received, if any. Moreover, if Strategic is right and Mr. Guo sought information from multiple entities concerning high-ranking Chinese officials, then that would tend to undermine Strategic's theory that Mr. Guo is a double-agent, not support it.

IV.     Relationships with "Key Witnesses"

Strategic, again, overreaches with this topic, requesting discovery from a nonparty about other nonparties. Strategic purports to want this information to test these witnesses' credibility. First Strategic has not shown that these two individuals, Lianchao Han ("Mr. Han") and Bill Gertz ("Mr. Gertz") are actually "key witnesses." In fact, Strategic says only that they "introduced Strategic to Guo and his network," a fact that is not disputed or otherwise relevant to the claims and defenses in this action, and suggests that they might confirm that Mr. Guo's background story is true, which is also not relevant to this Action. There is no reason to assume, based on that knowledge, that Eastern would call these individuals as witnesses in this action. Neither has Strategic alleged that Eastern has stated any intent to call these individuals in support of its claims or defenses. And presumably Strategic would not need to question its own witnesses' credibility.

Second, the questions Strategic proposes in connection with this topic are exceedingly broad. "Has Gertz received any payment from you in the last two years?" and "has Gertz been appointed to serve on any organization of which you are a member?" seeks information that is too attenuated to undermine the credibility of a witness testifying as to the introduction between two parties. Strategic has not made any effort to tailor appropriately its questions and it should not be entitled to this overreaching discovery from a nonparty.

Finally, apropos of nothing, Strategic argues that there is no separation between Mr. Guo and Eastern[20] and that Mr. Guo should be responsible for having knowledge of Eastern. Exactly what information Strategic wishes Mr. Guo had concerning Eastern is unclear and, in any event, Strategic's attribution of Eastern's knowledge to Mr. Guo is unfounded. Strategic seems to suggest that Mr. Guo is responsible for having corporate information of Eastern because his daughter is or was the sole director and shareholder of Eastern. There is simply no legal basis for attributing knowledge of one person to another based solely upon a familial relationship.

---

[20]     Whether Guo has control of Eastern is not relevant to this Action. There is no dispute that Mr. Guo was acting as Eastern's representative with respect to the actions he took, if any, to negotiate, execute, and perform the Agreement. Strategic has not identified any other reason for needing to show that Mr. Guo had control of Eastern.



      Strategic's unhappiness with the answers it received from Mr. Guo during his seven-hour deposition does not warrant another bite at the apple. Strategic has failed to tailor its requests or relate them in any meaningful way to the claims and defenses in this Action. Thus, Mr. Guo respectfully requests that the Court deny Strategic's request for a second day to depose Mr. Guo and also deny Strategic's request for discovery from Mr. Guo concerning the topics identified.

Respectfully submitted,

*Erin N. Teske* (as)

Erin N. Teske