

Graves Garrett LLC

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 17, 2019

**VIA ECF**
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re: *Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC,* 18-cv-2185 (JGK)-DCF

Dear Judge Freeman:

In advance of our telephone conference with the Court tomorrow, September 18, 2019, please accept this reply in support of the letter motion of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision") to compel Guo Wengui to testify, pursuant to a duly-served Fed. R. Civ. P. 45 subpoena, regarding Strategic Vision's claims and defenses. Guo's related motion for protective order, Dkt. 135, should be denied. Although he bears the burden of establishing grounds for relief,[1] Guo has failed to demonstrate cause for the Court to find that the proposed deposition questions subject him to "undue burden" in the first instance, let alone to such a degree that outweighs Strategic Vision's need for testimony from a witness described by his own counsel as "Eastern's representative with respect to the actions he took [] to negotiate, execute, and perform the Agreement." Fed. R. Civ. P. 45(d)(3)(A); Dkt. 153, p. 7 n. 20. Below, Strategic Vision addresses each objection by Guo, showing how the planned questions are critical to the case and within Guo's realm of knowledge.

Guo's September 13, 2019 Response (Dkt. 153) beats a broad retreat from his position of August 16 (Dkt. 135). There, Guo had claimed this was merely a "breach of contract action" (p. 5) and that he was a peripheral witness "involved in the introduction of Strategic to the project and discussions leading to [the contract's] execution" (p.1). Just after that August letter, things changed quickly. The first domino to fall was Plaintiff/Counterclaim Defendant Eastern Profit Corporation Limited's pleading admission—filed 90 minutes before this Court's last telephone conference—that Guo acted as Eastern Profit's agent both before and during performance of the contract, including for purposes of Guo's alleged fraudulent statements. (Dkt.142) Eastern Profit also admitted that Guo's daughter (and not his cook, Han Chunguang, who purportedly signed the

---

[1] *Jones v. Hirschfeld,* 219 F.R.D. 71, 75 (S.D. N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant.").



Graves Garrett LLC

key documents in this case) was Eastern Profit's sole director during the relevant time. Dkt. 142, p. at pp. 2-3, ¶ 5. Then, other discovery confirmed Eastern Profit's earlier testimony that it was ( . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . (Ex. A, Transcript of the Deposition of Lianchao Han, at 193:18-195:8) It is Guo's entity, Golden Spring, that controls Eastern Profit's various successive counsel and its advocacy and discovery participation in this litigation. (That same entity is represented by Guo's counsel.) And perhaps most importantly, Guo no longer makes bold claims about his distance from Eastern Profit. Instead, he simply cites his current official status as a non-party.

**Guo's Alleged Dissident Status is Not "Self-Proving."** Having abandoned these outerworks, Guo now falls back to the merits of the case itself and makes brand new arguments. First, he argues that no discovery should be allowed into whether he is a dissident because, in his view, he has already prevailed on this question of fact. When and how did Guo, a non-party, prevail on an issue of fact critical to this case? Guo has an answer: his status is "self-fulfilling;" it was irrevocably established at the very moment media began to report his own statements claiming to be a dissident. Response, p. 2.[2] If one claims to be opposed to the regime and to be working to seek its downfall, the argument goes, the very fact that the claim was made makes it true.

Guo even seems to recognize the absurdity of this position, admitting that if *being* a true "dissident" is as easy as *claiming* to be one, then it is "not a fact that Strategic can disprove." Response, p. 2. It is impossible to lie!

Such reasoning hardly requires a response, but at any rate, it is at war with the pleadings. Strategic Vision alleges it was fundamentally misled by Guo's representations that he opposed the regime and was seeking its downfall, and that he would use Strategic's research for that purpose. If Guo did *not in fact* oppose the regime and seek its downfall—and *did not in fact* intend to use Strategic's research for that purpose—then his statements were false. It is that simple, and Strategic Vision should be entitled to prove it.[3]

**Moving the goalposts.** Second, Guo once again tries to recast Strategic Vision's counterclaim in a way that he thinks will be harder to prove, while simultaneously raising a new and incorrect legal standard for discovery: that each category of information sought must be "sufficient" to prove that Guo is a "spy." Response, pp. 1-2. This effort must fail.

Strategic Vision did not plead and is not trying to prove that Guo is a "spy," whatever precise conduct Guo thinks that would entail. (He does not say.) Instead, Strategic Vision pled that

---

[2] This logic mirrors Guo's position that Strategic Vision cannot obtain discovery on the purported ACA "loan" because the document Eastern Profit produced after its first 30(b)(6) deposition, no matter how suspect, conclusively proves itself.
[3] It is doubtful that, at trial, Eastern Profit will rely on the concept that dissident status is self-proving. Eastern Profit will have corroborating evidence, and Strategic Vision should be allowed to explore it in discovery.



**Graves Garrett** LLC

Guo made false statements about himself and his purposes for wanting to engage Strategic and use its efforts. Strategic will show through Guo's own statements that, in fact, he had pledged fealty to the CCP in August 2017, and that he never intended to use Strategic's work to undermine it or Chairman Xi Jinping, as he falsely represented to Strategic in the fall of 2017. In addition to Guo's own words, when Guo points to certain events or actions that he claims demonstrates his dissident status, Strategic Vision will need to counter them. For instance, when Guo points to his litigation efforts against state-backed entities, Strategic will show that his pattern of litigation—is nothing more than a flurry of halfhearted lawsuits against state-backed entities. Strategic will show that his defamation lawsuits against dissidents are merely public forums where he argues and re-argues whether he himself is a dissident. Further, Guo and his shell company, Eastern Profit, will not be able to show that Guo ever revisited the allegedly crucial "project" for which Strategic was hired after he prematurely terminated it. From this and other evidence, reasonable jurors will be able to conclude that Guo was not who he said he was when persuading Strategic Vision to enter the contract—not necessarily that he meets the popular conception of a "spy." They will also be able to find that Guo never intended to use Strategic's work to undermine the regime. Guo cannot hold back portions of his personal knowledge or his documents on the grounds that a given answer or document is not itself "sufficient" to prove Strategic's entire case.

**Private information is not out of bounds.** Guo claims to be shocked that "private information" about him must be "unearthed" to determine whether he truly supported the regime and intended to bring about its downfall. But how can this issue be anything but private? When Guo claims that Strategic Vision's discovery efforts are "contrary to every public pronouncement that he is" a dissident,[4] Resp., p. 2., Strategic Vision must focus on the private. Further, Guo himself has engaged in a selective campaign of publishing his own private information and then repeating it to Strategic Vision and intermediaries such as William Gertz and Lianchao Han, whom Strategic trusted. This started with his own background story about his alleged imprisonment as a Tiananmen Square protester, his break with the regime, the circumstances under which he made money and came to the United States, and his activities since has allegedly been the regime's top public enemy. Guo asks the Court to block discovery because he thinks it must accept that his cover—his verbal public criticisms of the regime[5]—must be accepted not only as true, but as conclusive and existential proof of his real relationship with the regime. But as shown in the counterclaim, a series of letters to this Court, and again below, Guo has already been recorded making directly contrary comments. Guo cannot continue to dole out only those "private

---

[4]   Inexplicably, Guo seems to equivocate whether he even made statements that he is a dissident: "Strategic does not...articulate any damages that it incurred as a result of Mr. Guo's *purported statement that he's a dissident.*" (Resp., p. 3, emphasis added).
[5] At points, however, even in public, Guo has equivocated about his criticism of Xi Jinping and the CCP as a whole. Even the July 22, 2019 statements about this case by his attorney, Daniel Podhaskie (who also claims to participate in this case as in-house counsel for Golden Spring) have equivocated; one statement criticizes the CCP as a whole, and another statement merely criticizes a "cadre" within the CCP.



Graves Garrett LLC

matters" that he wants the public to see. As shown below, Strategic Vision's targeted discovery will shed light on the matters most relevant to its claim.

**Alleged flaws in Strategic Vision's logic.** Before addressing Strategic Vision's four narrowed categories of questions, Guo tries to mount a mini-summary judgment argument by letter, arguing that its fraud claim is illogical. This is emphatically not the time, place, or procedure for such argument.[6] Regardless, each of Guo's points misses the mark.

- First, Strategic Vision claims that it relied on Guo because he was introduced to them by two trusted sources, Lianchao Han and Bill Gertz, and that it did so reasonably. Strategic Vision met with Guo several times to hear his representations, most of which had already been reported in the media. Strategic decided to assert its fraud counterclaim comparatively early in discovery, before it had completed Eastern Profit's Rule 30(b)(6) deposition (a deposition that still is not complete) and before it had deposed Guo, and within the time for bringing counterclaims.
- Second, that ACA wired $1 million to Strategic Vision, in seeming contradiction of the parties' agreement not to send money from Hong Kong sources, troubled Strategic Vision but, given what it knew at the time, Strategic took this to be a careless mistake by someone under Guo's control. Now it is clear that this was not Guo's only direction of payment from ACA to the U.S., and that Guo moved far larger sums from the safety of the U.S. to Hong Kong for investment into a Mainland-controlled entity, as well as from Hong Kong to the U.S.
- Third, Guo attacks Strategic Vision's fraud damages, claiming that they must be above $1 million. That is simply incorrect. Assuming for the sake of argument that Eastern Profit can claim the benefit of ACA's $1 million wire in defending Strategic Vision's fraud claim (a question no party has pled or briefed), Strategic Vision would be entitled to be put back into the place it would have occupied without a contract. That includes three buckets of damages: (1) reimbursement of Strategic Vision's costs in negotiating with Guo; (2) repayment of Strategic Vision's outlays on the contract; and (3) Strategic Vision's reputational damages. Guo recklessly claims that it was Strategic Vision's "use of the press" in conjunction with the counterclaim that caused its own damage, but ignores that it was he who caused the lawsuit to be filed, and numerous stories covered the lawsuit long before Strategic Vision's

---

[6] Guo asks for special assistance from this Court based on the claim that, as a non-party, he has no "standing" to move to dismiss the fraud claim. Resp. p. 2. But Guo could simply direct a company over which he has control, Golden Spring (which runs this case for Eastern Profit under a purported power of attorney), to file such a motion. Eastern Profit and one other witness have both indicated that C_____. (Ex. A, Lianchao Han Tr. at 193:18-195:8 ); Ex. B (portions of the testimony of Yvette Wang, at __:1-17/142:9) Guo cannot continue to claim the sympathy of this Court as a purported "non-party" while at the very same time continuing to urge that, for discovery purposes, his control of Eastern Profit and Golden Spring does not matter.



counterclaims. Further, as Strategic Vision alleged, Guo's team shared Eastern Profit's deposition of Michael Waller, who coordinated research for Strategic Vision, with Steve Bannon. Dkt. 114, at ¶¶ 84-85. Bannon then remarked to individuals not connected to this litigation that he had somehow accessed and read the transcript, and pressured the Committee on the Present Danger-China ("CPDC"), a prominent anti-China group, to remove its association with Waller—which would be a serious blow to Waller's career. *Id.* All of this came before the amended counterclaim. Through this and other means, it is Guo who has publicized this case.

**Strategic's four proposed areas of discovery against Guo are narrowly tailored.**

I.   Guo's communications with the CCP and PRC.

It would seem obvious that when it is known that Guo actually engaged in communications with the CCP during the time he claimed to be a dissident, and just before making representations to Strategic Vision, the contents of those communications are relevant. Guo should not be able to publicly (and to Strategic Vision) claim he is a CCP-fighter, but then cry foul when asked about conversations that would destroy, or at least challenge, that claim.

Guo's first argument, as noted above, is that if he says he is a dissident, he is. Any discovery of him on the fraud claim, therefore, would be redundant and therefore improper. But why, then, did Guo's counsel allow Guo to open the door by answering a question with the claim tha̶t̶ ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛ the Chinese C̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶̶⬛⬛⬛⬛⬛⬛ re̶sp̶o̶nse, p. 4. Was this a momentary lapse, or a preset strategy to have one's cake and eat it too? Immediately afterward, Guo bucked his counsel's further instructions not to answer,[7] claiming on the record that h̶ ⬛⬛⬛⬛⬛⬛⬛⬛ *See* Response, p. 4. Whatever the explanation fr̶ ̶̶̶̶̶̶̶momentary lifting of the gate, Guo, having made these limited and self-serving declarations, now claims that they mark the outer limit of legitimate discovery. Any claims he may make about himself must be treated as conclusive and cannot be probed. Indeed, Strategic Vision's failure to accept his utterances at face value is "harassment."

Thus, for example, no party in good faith can ask Guo about his actual communications and negotiations with the CCP and Secret Police just before he entered into negotiations with Strategic Vision; these, according to Guo, are "peripheral" matters that have no bearing on his status and should be of no interest (Response, p.1.) Of course, no one is obligated to believe Guo's open-and-shut "answer" that he is a dissident and, if he is not, the first place one would look to either prove

---

[7] Guo's careful transcription at Response p. 4 eliminates his counsel's partially successful efforts to block more specific questions. See Transcript of Guo's Deposition, at 32:19-22 (Ex. C) (blocking an answer to the question ⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛⬛



**Graves Garrett** LLC

or disprove it *would be his actual communications with CCP and PRC officials* in the months leading up to his representations to Strategic Vision.

It is a wonder that records of such conversations still exist, but they apparently do. Indeed, in addressing this point, Guo fails to adequately address his own recordings of meetings with CCP officials—selected portions of which he actually played for Wall Street Journal reporters, as is disclosed in one of the very articles Guo now cites. Guo claims that *nothing in the WSJ article* contradicts his story about that visit, but it was Guo who fed portions of the tapes to reporters. What about the tapes themselves? Guo never denies that in the publicly-available portions Strategic Vision has produced in discovery, he discussed his assets, family, and his public statements. The public portions of the statements clearly show Guo negotiating to advance his personal interests with high-ranking CCP and PRC officials, not challenging them or behaving as a true advocate of reform.

Why won't Guo release the rest of the recordings and authenticate them? In his view, Strategic Vision would need to already know the contents of the undisclosed tapes and be able to show they are sufficient to establish he is a "spy"—otherwise, it is just a "fishing expedition" and harassment of a man who has little connection to the case. Response, pp.5-6. Guo is in continual denial about his centrality to the case, and the burdens that Rules 26 and 45 impose on key witnesses with substantial connections to, and indeed control of (through his de facto control of Golden Spring, Eastern Profit and the very litigation of this case), the key parties.

Then, of course, there are Guo's other recorded statements. These include a TV appearance in which he authenticates and tries to explain an August 26, 2017 letter he wrote to senior CCP officials asking to serve "Chairman Xi's" wishes and asking for instruction from the Mainland to serve as a "propagandist" for the regime. Did Guo follow through? Was his contact with Strategic Vision just 12 weeks later part of this plan? Guo has his head in the sand on these clips: if he simply recites the mantra that "Strategic does not provide any source for the allegations" (Resp., p. 5) and never mentions the recordings to the Court, perhaps they will simply go away.[8] But at least one other witness ██████████████████████. (Ex. A, Lianchao Han Transcript, at 73:14-77:7)

---

[8] These clips are the sole area of "compromise" offered by Guo. In July 2019, before Guo's first deposition, Strategic Vision sent the clips to Guo's counsel, stating that authentication questions would be asked and that it would expedite matters if Guo could review them before the deposition. Strategic Vision also asked Guo's counsel to produce at the deposition any of Guo's recordings relevant to this case. At that time, counsel claimed no subpoena would be necessary. The day before the deposition, Guo's counsel said he would refuse to answer any authentication questions, and also said that no materials would be provided. On Monday, September 9, 2019, Guo's counsel said they would "ask" their client whether he would authenticate the recordings, and "ask again" if he had recordings, but only if those were of meetings between Guo and Strategic. A week later, Guo has provided no update. Thus, Guo's "compromise" offer places Strategic Vision back where it started in July.



Graves Garrett LLC

The recordings and tapes are not going away. Guo should have to admit or deny that he is speaking, and should explain why he made those communications with the CCP mere months before representing to Strategic that he was a *bona fide* dissident.

## II.    Questions concerning Guo's past in China

Guo bolsters his claim to oppose the regime by pointing to a history of being aggrieved by, and at odds with, the CCP and PRC. If key parts of that history are made up, it suggests that Guo's current claims about his position are also made up. Taking Guo's examples, if he was arrested before Tiananmen Square and for reasons other than the protests, why would he now lie? Was Guo really raised in poverty in a rural area and work his way to great wealth, or was he in a military family and was he an associate of the Ministry of State Security? If Guo remained in China later than he now claims, and was actually taken into custody and then "released" when he was supposed to be in the United States, it would tend to suggest that his status is not like others who were not allowed to leave and that Guo has tried to conceal the circumstances of his release. If Guo has engaged in major financial transactions during the time he was supposed to be a dissident (involving not only ACA but also other entities, and involving both Hong Kong and the Mainland, as outlined in Strategic's initial letter), it would tend to show that Guo has not been starved of funds because of official reprisals.

Questions about Guo's last trips into and out of the country, the only other items about which Guo specifically complains, were designed to begin a line of questions about his 2015 departure from China and his arrivals in the U.S. in 2015 and 2017, which would have then led to questions about the recording of Guo in New York upon his March 2017 return. In that recording, he criticized dissidents as unpatriotic, promised to take measures against two particular dissidents, and claimed his operation was "on." Amended Counterclaim, Dkt. 127, p. 61, ¶ 40. As the record stands now, Guo has avoided having to answer for his conduct or troubling comments such as these.

## III.    Questions concerning whether Guo obtained other research

Guo's response curiously ignores much of Strategic's reasoning, which encompassed both its breach of contract and its fraud claims and defenses to Eastern Profit's various claims. Guo's use of other researchers while the contract was in progress would support Strategic's frustration of performance and breach of contract counterclaim and defenses, as Strategic demonstrated in its September 3, 2019, letter.

But just as important, Guo swings and misses on Strategic Vision's fraud claim. Again, Strategic Vision has alleged that Guo never intended to actually use the work to publicize corruption within the CCP or PRC and, as evidence of Guo's plan and intent, Strategic Vision believes it can show that no Guo entity—including Eastern Profit—ever actually received or used the information that Strategic Vision was supposed to arrange to receive from other sources. Given



Graves Garrett LLC

Guo's claim to be a "whistleblower" and the desire he professed to Strategic Vision to gain and publicize new research, this is inexplicable. Further, Strategic Vision believes it can show that Guo himself has never publicized the results of similar research—against the 15-person tranche of initial subjects or any associated people—or used that information in court proceedings, as he claimed was his plan.

Further, Guo is wrong that merely obtaining that information proves Guo's dissident status. If instead Guo supports the regime and is engaged in a fixed battle with a mere "cadre" within the CCP, as his attorney, Daniel Podhaskie, suggested as recently as July 22, 2019, then the information would instead be selectively traded and revealed to buttress the position of Guo and his own faction. Either way, Guo's claim to Strategic Vision that he is a dissident seeking to use research to undermine and cause the demise of the CCP would be further exposed as a sham.

## IV.   Relationships with key witnesses

Guo purposely downplays the role of both William Gertz and Lianchao Han, the two individuals who made the underlying contract possible. Gertz not only made the introduction, but in a recent article, Guo is reported as claiming that the entire research project was Gertz's idea. Han went a step further in serving as a key conduit regarding the negotiation and performance of the contract, as Guo's counsel surely know. Regardless of who calls these witnesses at trial, they are subject to complex motivations because this case presents a dispute between two parties—the Guo network and Strategic Vision—toward which both witnesses would ostensibly be neutral. Yet if either has been drawn into Guo's orbit, as may well have occurred, the testimony of the witnesses on difficult issues may be subject to question. Guo is not an ordinary "non-party;" he is the person who animates and controls Eastern Profit, its litigating proxy Golden Spring (which is also the employer of witnesses Yvette Wang and Karin Maistrello), and by virtue of this control, the litigation of this case. If there is a financial relationship among Guo and these witnesses, such as by Guo making payments to Gertz or to Lianchao Han's advocacy organization, it should be explored.

**Guo is Eastern Profit**. Finally, Guo professes to be befuddled by Strategic's insistence on showing that Eastern Profit is simply his puppet; an entity that sits on the shelf waiting for his special projects to arise. Guo does not bother to refute the claim, nor could he; he simply claims that one of the several facts mentioned by Strategic Vision—the fact that his daughter is the only person connected to Eastern in the official government disclosure records for the company—is not sufficient alone to impute knowledge.

What Guo surely knows, but ignores, is that before Eastern Profit recently lost the ability to communicate through counsel because of an as-yet-unfiled substitution of counsel, Eastern Profit abandoned the project it had seemed willing to initiate when on the phone with the Court: to stipulate that for purposes of Strategic Vision's fraud claim, Guo would bind Eastern Profit. Thus,



Graves Garrett LLC

not just Guo's statements, but his knowledge of their falsity, and of his own intent, must all be attributed to Eastern Profit—for other than Guo's daughter, no other living, breathing, person seems to have served in any capacity for Eastern Profit. If Guo controls Eastern Profit (and was not merely its delegate for purposes of negotiating, executing, and performing the contract), these elements are met.

For purposes of discovery and trial, too, Guo's charade that he is simply a non-party with very limited obligations must come to an end. Guo's admissions should be binding on Eastern Profit. Further, his information and documents have at all times been within the possession, custody, and control of Eastern Profit—even if the decision was made not to claim them as Eastern Profit's—in this litigation. As a smokescreen, much has been pinned on Han Chunguang, who apparently holds no position at all with Eastern Profit. Why? ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ (Wang Tr., Ex B, at 26:24-27:14)

It is time for the person who lies at the center of all of these entities, and who actually has knowledge of the fraud, to give full, complete, and non-evasive answers to deposition questions. Strategic Vision has been forced to reveal its deposition questions in advance and explain where they fit in its case strategy just to get the audience with a fact witness ensured by the federal discovery rules. Beyond that, Strategic Vision has scaled back its proposed questions to four main areas, even though much more could and should be asked of Guo. Now, he should truthfully provide his personal knowledge without further instructions to refuse to answer.

Respectfully submitted,

Edward D. Greim

Enclosure

cc: Counsel of record via ECF (w/ encl.)