

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 20, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF

Dear Judge Freeman:

    On behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), please allow this submission to address three subjects. First, we identify the docket entries relating to your pending decision regarding the scope of the continued deposition of Guo Wengui ("Guo"). As the Court noted in our conference of Wednesday this week, Guo will be deposed by Strategic Vision, and the scope of the questions allowed to be asked of him will be determined by the Court from the parties' written submissions rather than through another telephone hearing. Those submissions are enclosed with the Chambers' copy of this submission for the convenience of the Court and because the initiating letter motion by Strategic Vision on August 6, 2019 may not have been delivered to your Chambers—it was not electronically filed but was delivered to Judge Koetl's Chambers per local rule. The enclosures include the following:

| Dkt. No. | Filing Party | Date of Submission |
|---|---|---|
| 126 | Court granting Strategic Vision permission to file the letter motion under seal | August 6, 2019 (correspondence was not electronically filed and was delivered only to Judge Koetl's chambers) |
| 135 | Guo | August 19, 2019 |
| 138 | Strategic Vision | August 20, 2019 |
| 153 | Guo | September 13, 2019 |
| 154 | Strategic Vision | September 17, 2019 |



Second, at the conclusion of Wednesday's conference, the Court instructed Guo's counsel to provide available dates for the deposition so that it could be calendared by counsel. As of the time of this submission, Strategic Vision has received no dates from Guo's counsel. The passage of two days since the conference may not seem significant when viewed in isolation but must be considered within the volume of earlier communications between the parties, including those by Strategic Vision as early as August 3, 2019 discussing a continuation of the Guo deposition. Strategic Vision repeatedly has asked for dates since that time to no avail. It is unfortunate that Guo's unwillingness to informally resolve this scheduling issue led to the need to bring it up to the Court in the first place, and it is also unfortunate that Guo has ignored the Court's directive.

Strategic Vision asks that the Court's decision regarding the permissible deposition topics instruct Guo to present himself for deposition within 7 business days of the decision.

Finally, although the subjects of testimony that Strategic Vision seeks from Guo have been addressed in the correspondence identified above, Strategic Vision provides the following summary of the *duces tecum* aspect of the Fed. R. Civ. P. 45 subpoena to Guo. It sought four categories of materials, the importance of which are described below the categories.

1. Any video or audio recordings of communications or meetings: (1) between Guo Wengui, Yvette Wang, or Lianchao Han and either French Wallop or Mike Waller; (2) between Guo Wengui and any other person regarding the negotiation or performance of the Strategic Vision contract; (3) between anyone, if regarding research or investigative services pertaining to any of the 15 or 92 individuals identified by Guo or Yvette Wang to Defendant Strategic Vision; (4) between Guo Wengui or Yvette Wang and any other person or persons, if recorded after January 1, 2017 and regarding research or investigation into persons or entities; (5) between Guo Wengui and any member of the Chinese Communist Party or agent or officer of the People's Republic of China.

Among other things, this requests the original recordings that are the source for the various interviews and presentations on YouTube that were discussed during the conference and that translations of which have been provided to the Court under separate cover. Obtaining the original recordings is important because, after first asking Guo's counsel as long ago as late July 2019 for Guo to authenticate the various recordings, Twitter messages, and presentations on other platforms (less than 15 in all) that have been transcribed at Strategic Vision's cost, Guo failed to provide the information requested until making an unexpected disclosure in the latter half of the September 18th conference. There, Guo's counsel hastily and without any detail indicated that Guo could authenticate only the first recording on the transcription list. This leaves Strategic Vision with the unfulfilled task to authenticate the other recordings, and production of them by Guo is critical for that purpose and to provide relevant discovery.

The relevance of the five subjects for which recordings are sought is obvious. As to the first subpart (recordings between Guo Wengui, Yvette Wang, or Lianchao Han and either French Wallop or Mike Waller), it is worth further considering that each individual had a significant role in the formation, memorialization, and/or performance of the contract. For example, Lianchao Han was one of two people who introduced Guo to Strategic Vision's French Wallop and Mike Waller, vouching that Guo had the strength of character and financial resources to support a lengthy, good-faith business relationship with Strategic Vision. Han at times served as Guo's



contract negotiator, a person of trust to Guo, and thereafter had personal knowledge of Guo's decision to terminate the contract less than three months after it was executed. Han was such an integral part of this that he testified at his deposition to ███████████████████████████████████████████████████████████████████████████.

Like Han, Wang served at times as the contract negotiator for Guo, and she personally signed the contract for Eastern Profit by penning the signature of Han Chunguang. Chunguang apparently signed a purported loan agreement between Eastern Profit and ACA that equals the amount of the initial payment to Strategic Vision under the contract. He also has been designated in Eastern Profit's verified interrogatory response as that entity's principal. Wang has served as Eastern Profit's Fed. R. Civ. P. 30(b)(6) representative on this and other subjects.

As to subparts (3) (recordings between anyone, if regarding research or investigative services pertaining to any of the 15 or 92 individuals identified by Guo or Yvette Wang to Defendant Strategic Vision) and the related (4), the indicated individuals were the first grouping of subjects for Strategic Vision to work on under the contract and in association with independent contractors hired by Strategic Vision to conduct research and analysis. Strategic Vision's alleged inability to properly perform its contractual duties regarding these subjects allegedly led to Eastern Profit's termination of the contract less than three months after it was executed. Strategic Vision is entitled to the recordings of any communications about investigation of people generally under the contract.

Finally, as to subpart (5) (recordings between Guo Wengui and any member of the Chinese Communist Party or agent or officer of the People's Republic of China), the relevance of this subject was discussed during the September 18th conference and in the correspondence indicated above. The recordings are crucial to demonstrate evidence supporting or contradicting Guo's various representations to Strategic Vision (Eastern Profit has now affirmatively pled that these representations are binding on it) about the intentions and purpose for the work that Strategic Vision was to perform under the contract.

The Court should direct Guo to produce all materials responsive to this request.

2. Any documents relating to the installation, maintenance, preservation, destruction, loss, custody, or right to access recordings made by microphones and cameras Mr. Guo testified were installed in his apartment. This includes but is not limited to any effort undertaken by Mr. Guo (or anyone acting on his behalf or on behalf of Eastern Profit, Golden Spring (New York) Limited, or any other entity owned or controlled in whole or in part by Mr. Guo) to preserve or access any recordings on or after February 1, 2017.

This subject involves the authentication of evidence or to give an explanation for the lack of evidence that should exist. For example, Guo has a significant presence on social media and, in fact, has an entity (Guo Media) dedicated to publishing information about him, yet Guo's counsel advised this week that he can authenticate only one of several YouTube videos and other materials on social media, leading to the reasonable inquiry of how or whether Guo has preserved evidence having authentication qualities. Strategic Vision has a right to develop evidence about spoliation efforts by



Guo to prevent the discovery or authentication of relevant information.  The Court should direct Guo to produce all materials responsive to this request.

3. Any video, audio, or text postings or broadcasts on the internet or on social media by Guo Wengui or any media entity (including but not limited to Guo Media) in which Guo is at least one of the speakers, and which in any way mention, refer to, or relate to: (1) French Wallop, Mike Waller, Strategic Vision, or the performance or negotiation of the contract at issue in this case; (2) Chinese dissidents; (3) Xi Jinping, the Chinese Communist Party or its officials, or officials of the People's Republic of China; (4) any litigation in which Guo or an entity controlled by him is a party; or (5) this litigation [narrowed to actual reference to this lawsuit, as distinguished from references to facts relevant to this lawsuit], if you do not consider it covered by category (4); or (6) any recording that you are producing, or that exists or at one time existed, and that would be responsive to request 1.

   Guo's dissemination of information over the Internet and social media regarding these subject is important to the case.  For example, subpart (1) goes to key issues regarding the parties' respective fraud and contract-based claims, including why certain contract terms were negotiated and the truth of the representations Guo made or had made for him about his intended use for the work generated under the contract.  Subpart (4) is important because a significant amount of information about Guo's history, background, current plans, and the like has been located through discovery from or by Guo in other litigation and used to cross-examine the evidence produced in this case.  The subpart seeks postings or broadcasts about such litigation.  Subpart (5) seeks postings or broadcasts specifically referencing this case, which are obviously relevant and not protected from discovery because Guo chose to publicize the information.  The Court should direct Guo to produce all materials responsive to this request.

4. Any and all documents reflecting a communication between Guo Wengui and any of the following, since January 1, 2017: (1) Han Chunguang; (2) Yvette Wang; (3) any officer, director, employee or agent of ACA Capital Group Limited or its corporate owners or parents; (4) any officer, director, employee, or agent of Golden Spring (New York) Limited or its corporate owners or parents, including but not limited to Daniel Podhaskie; (5) any officer, director, employee, or agent of Guo Media; (6) any officer, director, employee, or agent of Eastern Profit or its direct or indirect owners, shareholders, or corporate parents; (7) Lianchao Han; (8) William Gertz; or (9) Stephen K. Bannon, but in the case of Mr. Bannon, only if the communication referenced or related to litigation, any task to be performed by Ms. Wang for a Rule of Law entity, Strategic Vision, French Wallop, Michael Waller, or Edward Greim.

   Strategic Vision narrowed this request substantially. After discussions between the parties, Strategic Vision is now seeking: all documents reflecting a communication between Guo and any of the named people, since January 1, 2017 regarding (a) Strategic Vision, its two agents (French



<u>Wallop and Mike Waller), or the negotiation or performance of the contract; (b) this lawsuit, using the narrow sense we discussed in request 3; and (c) regarding the factual allegations in the answer and counterclaims, including, inter alia, Guo's representations to Strategic Vision, his status as a dissident, and the intended use of the fruits of the contract</u>.

      Guo objects in total to this significantly-narrowed request. As narrowed, the documents should be produced. Strategic Vision references its discussion of topic #1 above, and further notes that ACA allegedly provided the initial payment to Strategic Vision via a supposed loan transaction between ACA and Eastern Profit. Strategic Vision has based one of its defenses to the case on the principle that Eastern Profit cannot show one or more elements of its breach of contract claim because it did not suffer damages in the circumstances here—Eastern Profit did not "lose" any funds. Nor can it recover from Strategic on the theory of unjust enrichment, as Eastern Profit cannot meet the element of having given money to Strategic. Golden Spring's involvement is obvious because it is the attorney-in-fact for Eastern Profit for purposes of discovery in this case and has control over how the case is being prosecuted and defended by Eastern Profit. William Gertz, like Lianchao Han, vouched for Guo and is knowledgeable of the representations Guo made or had made for him regarding his intentions towards the contract and decision to become involved with Strategic Vision. Finally, Bannon is a witness with deep knowledge of Guo's background, intentions regarding major aspects of his life, and the like. The Court should direct Guo to produce all materials responsive to this request.

      We look forward to receiving the Court's decision on these matters.

Respectfully submitted,

*Edward Greim*

Edward D. Greim

cc: Counsel of record via ECF

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com