

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 20, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:    Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF
             Golden Spring Subpoena

Dear Judge Freeman:

    Pursuant to your instruction to counsel[1] at the conclusion of the September 18, 2019 telephone conference in this matter, we write on behalf of Defendant/Counterclaimant Strategic Vision to: (i) summarize the parties' positions after almost 6 weeks of discussions; and (ii) compel the appearance of a Golden Spring (New York) Limited ("GSNY") witness and the production of GSNY documents relevant to this case.

    In short, GSNY is the hub for all of Guo's and Eastern Profit's counsel and witnesses. This is by design and necessity. GSNY was appointed as Eastern Profit's agent for all purposes regarding the Contract at issue in this case. Under that same appointment, it controls Eastern Profit's litigation of this case. But the appointment was hardly necessary. Eastern's litigation counsel (still Mr. Zachary Grendi as of this writing) reports to Daniel Podhaskie, GSNY's General Counsel and Guo's personal attorney. Instead of using Mr. Grendi, GSNY (Guo's family office) is using Guo's outside litigation counsel, the Hodgson Russ firm, for purposes of opposing Strategic's subpoena. GSNY "CEO" Yvette Wang is the witness Eastern used for its first Rule 30(b)(6) deposition, and Eastern is re-producing her for its third attempted 30(b)(6) deposition. She is also Guo's assistant and/or business partner, and almost certainly will be GSNY's witness at its Rule 30(b)(6) deposition. Han Chunguang and Karin Maistrello, other witnesses, are also employees of GSNY.

    Given this reality, Strategic Vision's position is simple. GSNY was Eastern's agent for all relevant purposes. All of the witnesses on Guo's side of this case either own, control or are

---

[1] The Court also instructed counsel to confer regarding a briefing schedule. Shortly after Wednesday afternoon's conference, Strategic Vision proposed to GSNY that Strategic file today and GSNY respond on Wednesday, September 25, giving the Court an opportunity to resolve this matter on the papers before its upcoming trial. GSNY did not respond. In order to avoid further delay, Strategic is simply filing this letter. GSNY also failed to respond to Strategic Vision's request for deposition dates. Further, it failed to respond to Strategic's request that it email the handful of Maistrello resignation materials that, during the September 18th conference, the Court ordered produced.



employees of GSNY. All of GSNY's relevant information and documents should be Eastern's (or made available to Eastern), and vice versa. Yet, even today, GSNY cannot or will not confirm this simple fact. It still cannot or will not confirm whether it had, or has, documents to produce. **Again, the subpoena being enforced is dated July 24, 2019 and has been the subject of six weeks of letters and phone calls between counsel.**

The easy solution to break the impasse is the following: the same topics and document requests appropriate for Eastern are appropriate for GSNY. After all, GSNY is Eastern's agent and draws in every natural person who had anything to do with Eastern. In addition, GSNY should also disclose its dealings with Eastern Profit, ACA Capital Group Limited, and Guo Wengui between January 1, 2017 and July 1, 2019.

An additional point deserves mention. GSNY has never objected to all of the testimonial topics or to all of the document requests. Even after promising to give "September" deposition dates in its very first objection letter six weeks ago, and even after this Court's admonition on Wednesday, September 17, that it give deposition dates, GSNY still will not cooperate. The calendar is blank. Nor will GSNY say whether or when it will ever produce documents, which, as Eastern's agent, it surely has. This conduct must come to an end.

### History

In mid-July, Strategic asked Hodgson Russ and Eastern Profit's counsel whether either firm represented GSNY, and if so, whether either would accept a subpoena and confer on deposition dates. After neither attorney responded "yes" to follow-up requests, Strategic served its July 24 subpoena directly on GSNY, calling for an August 22, 2019 deposition on 7 topics and the production of 9 categories of documents. On the last available evening for a response, August 9, 2019, Hodgson Russ appeared by email, revealed that it represented GSNY, and objected to some of the requests. GSNY stated that it wasn't available on August 22, would provide early September dates for a deposition, and would "look for documents responsive to the Subpoena." After a conference with GSNY failed to yield dates, documents, or clarity regarding GSNY's specific objections, Strategic filed its letter-motion to compel discovery on August 15, 2019. (Dkt. 131). GSNY responded (Dkt. 136), and Strategic replied (Dkt. 139).

After the Court conducted a hearing on August 21, 2019, the parties restarted the process. Following this Court's invitation to narrow its requests, Strategic suggested that GSNY's topics be pared back to simply parallel Eastern Profit's, since they would be using the same witness, Yvette Wang. Strategic also asked GSNY when it could produce a witness, when it would produce the documents that it did not object to, and exactly what documents it would be producing. Four separate emails over a two-week period received no response on any of these points, or even an acknowledgment of receipt. On September 4, 2019, Strategic wrote GSNY, inquiring as to the reason for its silence, and laying out its position again with respect to limitations on GSNY's testimony and document production.

The following day, September 5, GSNY finally stirred. By email, GSNY withdrew its August offer to provide dates. Now, it said, it would only provide dates after "the deposition topics and document requests have been established." Oddly, GSNY referred back to Strategic's July 24, 2019 subpoena and did not acknowledge or respond to Strategic's August and September proposal

Case 1:18-cv-02185-LJL   Document 156   Filed 09/20/19   Page 3 of 7



for substantial narrowing of the topics. Nor did GSNY produce any of the documents responsive to requests to which it had not objected. Finally, GSNY would not agree to secure a time for a new conference with the Court until after a second meet-and-confer had been completed.

GSNY did meet and confer with Strategic on September 9, 2019. At the meet-and-confer, GSNY rejected some of Strategic's proposals but said it would confer with its client on certain others. On Friday, September 13, 2019, GSNY said it would stand on its objections, except that it was still trying to find out whether GSNY had documents responsive to Strategic's requests Nos. 2 and 3 that had not already been produced by Eastern Profit. (These requests call for documents relating to GSNY's and Wang's work with respect to the negotiation or performance of the Contract at issue, or with respect to this litigation.) It also agreed to check to see whether it has video or audio recordings of meetings with Strategic.

Although this information was originally requested in July, GSNY has still never provided it, let alone confirmed whether or not it exists. As of today, then, the current status of the requests, and the parties' positions, are as follows. The bolded material represents Strategic's scaled-back deposition topics and document demands, which abandon most of the material to which GSNY objected in the original subpoena.

1. **On testimony, that GSNY testify:**

   a. **to the same topics as its principal, Eastern Profit**;

      - We understand that GSNY does not agree to testify to the same topics as Eastern.

   b. **to its dealings with Eastern Profit, ACA Capital, and Guo between January 1, 2017 and July 1, 2019**.

      - We understand that GSNY agrees only to testify as to its dealings with Eastern Profit between January 1, 2017 and July 1, 2019, not ACA Capital and Guo.

2. **On documents, that GSNY provide:**

   a. **original subpoena items 2 and 3 (all documents relating to GSNY's or Wang's work on the negotiation or performance of the Contract at issue, or with respect to this litigation).**

      - We understand that GSNY agreed to check to see whether it had documents that Eastern had not produced; it still has not responded.

   b. **To replace original subpoena items 1, 5, and 7 (which originally asked for documents on the ownership, structure, and finances of GSNY, as well as transfers of funds between GSNY and Guo, entities controlled by him, or other payees at Guo's request), GSNY would instead only provide documents:**

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com



      i. Showing the relationship of potential witnesses in this case to GSNY;
     ii. Regarding the ownership of GSNY.
    iii. Alternatively, Strategic would accept testimony on these two topics in lieu of the documents.

- GSNY objects to the narrowed categories in total.

c. To narrow original subpoena item 4, we seek only documents pertaining to GSNY's or Wang's investigative work from January 1, 2017 through July 1, 2019, on the 15 names provided to Strategic, or into suspected dissidents or CCP members.

- GSNY objects to the narrowed request in total.

d. To narrow original subpoena item 6, we seek only recordings of Strategic's two main agents (Wallop and Waller); or of Guo; Yvette Wang; Han Chunguang, Steve Bannon, Lianchao Han, or Karin Maistrello, all from January 1, 2017 to July 1, 2019, so long as the recordings relate to this litigation, the underlying research project, or the activities set forth in the Counterclaim.

- GSNY is checking to see if Guo has recordings of conversations with Wallop and Waller; it has not responded on that point, and objects to the remainder.

### Argument

GSNY purportedly accepted an appointment as Eastern Profit's agent specifically for purposes of negotiating, executing and performing the Contract at issue. Crucially, it was also "appointed" for purposes of **litigating and managing discovery in this case**. Following its pattern of seeming to act wholly through outsiders, Eastern Profit's appointment of GSNY purports to have been signed by GSNY employee Han Chunguang and notarized by GSNY employee Karin Maistrello. The facts on the ground suggest that, in fact, GSNY runs the show. In this case, Eastern Profit's counsel takes direction from GSNY General Counsel (and Guo personal attorney) Daniel Podhaskie, and Podhaskie and/or GSNY CEO Yvette Wang have attended most of the depositions, sometimes together. We now have reason to believe that Wang conferred with at least one non-GSNY witness—Lianchao Han—before he testified, and Podhaskie approached Karin Maistrello just before she resigned her ACA directorship and thereby cast doubt on the service of the subpoena to that entity.

In short, GSNY is not a true non-party or a late-comer to this litigation that was unfairly "harassed" and targeted by Strategic's discovery, and must suddenly scramble to familiarize itself with the case and search for relevant materials. As GSNY ultimately admitted, it is the entity Guo and Wang have placed in front of the curtain **to act and litigate for Eastern Profit**. It should have been (and almost certainly has been) the entity preserving and gathering documents and information within the possession, custody, and control of either Eastern Profit or GSNY itself, prepping and passing along information to witnesses noticed by Strategic. It cannot, on the one



hand, demand the right to have its attorneys and staff sit in on depositions in this case as party representatives and contact key witnesses in the case, but then claim that it is unfair or too burdensome to make timely and complete document productions. If it has information, it is long past time for it to be produced.

This should not be a difficult undertaking. The new topics and document are narrower than what should be allowable under Rules 26 and 45, but they are largely in line with new limitations that are being observed elsewhere with discovery in the case.

For example, the testimonial topics will be identical to those already allowed for Strategic's deposition of Eastern Profit. These were originally noticed in the spring of this year and were explored without objection in Yvette Wang's first deposition in early 2019. However, Wang had done little preparation. Since early August, Strategic Vision and Eastern Profit have been negotiating a series of follow-up questions to cover areas on which Wang was not prepared. Strategic went so far as to prepare a detailed outline of possible questions.

As this Court is aware from other correspondence on the Rule 30(b)(6) letter motion, Strategic and Eastern have reached agreement on the vast majority of questions. Only a few categories of dispute remained, and the parties had made excellent progress before Eastern's counsel lost authority to negotiate some weeks ago. So while new counsel will need to complete the discussion, perhaps 80-90% of the content of that deposition is already agreed. The witness will be Yvette Wang—the CEO of GSNY, who will almost certainly be GSNY's own Rule 30(b)(6) witness. GSNY should be willing to be deposed on the same topics as its "principal" for purposes of this case, Eastern Profit.

In discussions, GSNY agreed to add one topic to this: its own dealings with Eastern Profit between January 1, 2017 and July 1, 2019. However, Strategic believes that GSNY should also testify as to its dealings with ACA Capital and Guo for the same time period. ACA Capital's transfers of funds from its Hong Kong DBS account on Guo's behalf were likely managed through GSNY CEO Yvette Wang or other GSNY employees. Although Eastern Profit should have to testify to these topics, too, it may claim ignorance and assert that it failed (or had no obligation) to gather the relevant facts and information from its agent, GSNY.

With respect to documents, the parties have never had a dispute on Request Nos. 2 and 3, which raises the question why information about the documents—or the documents themselves—has not been forthcoming over the past month. GSNY's investigation and search for these materials, which were already central to its mission as Eastern's agent for purposes of this case, should not have taken this long. The documents should be produced.

With respect to Requests 1, 5, and 7, most of these requests have been eliminated. They sought substantial information about GSNY's ownership, management, governance and structure; its financial statements or tax returns sufficient to show its financial position over a 4-year period; and transfers of funds between GSNY and various entities relevant to prove Strategic's allegations in this case. **Strategic has now replaced all three requests with the following**: (1) GSNY should produce documents sufficient to show the relationship of potential witnesses in this case to GSNY, so that we can determine whether they are paid by, or answer to, directly or indirectly, Wang or Guo; and (2) GSNY should produce documents sufficient to confirm its ownership. Strategic will



accept testimony rather than documents on both topics. These records (or testimony) should show that Guo owns and controls GSNY, and that therefore Eastern Profit essentially made Guo's own entity its agent for all purposes surrounding the facts of this case (not just the more limited admission Eastern made in its answer, which it ultimately refused to supplement by stipulation as discussed by this Court and the parties on August 21, 2019.) Indeed, this discovery will show that Eastern made Guo's company its agent even for purposes of discovery and litigation of this case.

Request 4 sought information on GSNY's other investigative work regarding the same names Guo and Wang provided to Strategic, or GSNY's other work investigating dissidents or CCP members. As Strategic has explained in numerous other letters wherein this same discovery is sought from Eastern and Guo, this will aid Strategic's breach of contract defense, breach of contract counterclaim, and fraud counterclaim. On the contract side, it may show that Guo and Eastern frustrated Strategic's performance by sending other researchers to monitor the same targets at the same time, alerting targets of intrusions and causing them to take defensive measures to cut off access to otherwise-available information. It may also show that no such work was performed at all after the Strategic contract, or that some material was found but was used to barter for Guo's personal and financial interests rather than publicized to destabilize the CCP. Either way, it would tend to cast serious doubt on Guo's claims that finding and exposing materials on CCP members was one of his goals as a "dissident" for the good of the Chinese people.

Request 6 now only seeks recordings of Strategic's two main agents, as well as of other key individuals that relate to this litigation, the underlying project, or the activities of Guo, Wang, Steven K. Bannon and Maistrello that are set forth in the Counterclaim. The date range is January 1, 2017, to July 1, 2019. Previously, these subject matter restrictions did not apply to most of the subjects. Now, the date range and subject matter restrictions apply to all parties.

If more recordings exist, they may prove to be valuable evidence. It is still unclear at this late date, but Guo may claim that the recordings—primarily made in his apartment at the Sherry-Netherland—are not "his" and are really GSNY's, or belong to some other entity he has set up. Either way, Strategic is seeking them from whomever has them. GSNY/Guo are agreeing only to look for recordings of Strategic's two main agents. However, conversations between Guo, Wang, Lianchao Han, Bannon, Han Chunguang, or Maistrello about this litigation or about Strategic's project are unquestionably relevant. In the case of some of these figures, they may be recorded admissions of a person who has the status of a party-opponent. Conversations about the other actions alleged in the Counterclaim—for example, Bannon's trip to meet with Guo's supposed nemesis, Wang Qishan, and his report to Guo and others on the result of the trip—are certainly relevant. GSNY (or Guo, if he now admits that the recordings made in his apartment are his) should produce any recordings that meet these subject matter requirements.

## Conclusion

Strategic has made an exhaustive and good-faith effort over a period of several weeks to scale back its requests and obtain a final decision from this Court. GSNY has done little in return. GSNY has failed to produce even documents that were never subject to an objection. It withdrew its promise in its initial objection letter to provide September dates, and has let a request for dates in early



October made immediately after this Court's September 18, 2019, admonition go unanswered and unacknowledged. Even if GSNY were a party with only a glancing connection to this case, this conduct would be unacceptable.

But GSNY is not an outsider. It is the agent of Eastern Profit for purposes of litigating this case. It is the hub of Eastern Profit and Guo's entire litigation apparatus—witnesses, records, and counsel. Particularly while Eastern Profit has sat for weeks, first unable to receive reasonably timely directions from its contacts at GSNY, and then for two full weeks unable to field counsel authorized to act, GSNY should move quickly to produce a witness and provide documents.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF