

**Graves Garrett LLC**

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 24, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re: Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF
Golden Spring Subpoena

Dear Judge Freeman:

On behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), and pursuant to Local Rule 37.2, we seek relief from the refusal of nonparty Bill Gertz ("Gertz") to abide by a duly-served Fed. R. Civ. P. 45 subpoena for documents and testimony.

The subpoena seeks critical information from a person who should possess it, and the subpoena's scope is narrowly tailored to avoid intruding on the press privilege Gertz has asserted. Though Gertz writes for the *Washington Free Beacon*, his actions relevant to this case are outside of any newsgathering or reporting. As discussed in detail below, Gertz introduced the parties for the purpose of helping Guo Wengui ("Guo"), the man behind Eastern Profit, engage our client, Strategic Vision, to perform the contract at issue in this lawsuit. Indeed, from the weeks and months leading up to the contract through its termination, Gertz served as a close advisor to Guo and ambassador on his behalf, helping set up meetings, appear at public events, and—we believe— make recommendations to Guo and third parties regarding the negotiation of this contract. Gertz also conferred with Guo regarding performance of this contract, representations made to Strategic Vision, and this very litigation. Several witnesses in depositions already taken in this matter have discussed Gertz's role in the early months leading up to this contract, yet due to witnesses' refusals to answer, our client has been unable to discover the extent of Gertz's knowledge and involvement.

As discussed in detail below, Gertz has objected to the Subpoena in its entirety, citing various objections. His primary objection is that the common law press privilege shields him from complying with the Subpoena.

Gertz's objections to the Subpoena are not well-founded, as the discovery sought is directly tied to the facts and issues raised by the pleadings. Moreover, his outright refusal to sit for a deposition already noticed, is procedurally improper because he has failed to seek, let alone obtain, permission from the Court to not appear. Strategic Vision is entitled to an order directing Gertz to produce the documents in advance of his noticed deposition and to give the requested testimony.



## Factual Background

As the Court is aware, each party has claims against the other for breach of contract and fraud. Eastern Profit seeks "return" of $1 million in funds paid to Strategic Vision. Eastern Profit asserts theories of contract and fraud (i.e., that Strategic Vision misrepresented its capabilities and that this was material given Guo's needs). Strategic Vision's response asserted two counterclaims: breach of contract and fraudulent misrepresentation. The contract claims flow directly from course-of-performance demands and acts directed by Guo that violated the duty of good faith and fair dealing; the fraudulent inducement claims flow directly from Guo's materially false claims regarding his dissident status and his intended uses of Strategic Vision's work. Eastern Profit has additional claims for unjust enrichment and declaratory judgment. Gertz's counsel thus mistakenly asserts that this "[t]his appears to be a standard breach of contract dispute…" That is far from a complete description of the case.

Gertz's involvement is plain from the pleadings. In or about December 2017, Guo was introduced to Strategic Vision by Gertz and one of Guo's associates, Mr. Lianchao Han.[1] Gertz and Lianchao had first approached Strategic Vision on behalf of Guo. Gertz represented to Strategic Vision that Guo was a true dissident and that his sympathies were with those trying to undermine the Chinese Communist Party regime, bring democracy and freedom to China, and turn China from a strategic adversary to a friend of the United States. Gertz knew French Wallop and Strategic Vision, and Michael Waller, who partnered with Strategic Vision. Gertz knew that Wallop and Waller—and therefore Strategic Vision—would only be receptive to a project that sought to undermine—and never support—the Communist Party. Wallop and Waller had known Gertz for more than 30 years and had known Lianchao for many years, and trusted their judgment.

Gertz is mentioned throughout the Counterclaim (paragraphs 11, 14, 15, 68, 69, 70, 71, 75, 77 and 86) and Eastern Profit admits in its Response to 11 "that Gertz …introduced Eastern to Strategic Vision for the purpose of having Strategic Vision conduct investigatory research into Chinese nationals linked to top Party officials." The counterclaim asserts that "Gertz knew French Wallop and Strategic Vision, and Michael Waller, who partnered with Strategic Vision, and that Wallop and Waller—and therefore Strategic Vision—would only be receptive to a project that sought to undermine the Communist Party." Paragraph 15—the assurances of Gertz and others persuaded our clients to travel to NY to meet with Guo regarding the contract.

In his deposition, Guo refused to answer whether he had ever paid Gertz in the last two years, though he admitted that ████████████████████████████████████ Guo also refused to answer whether Gertz had been appointed to serve on any organization of which Guo is a member. ███████████ Guo refused to answer whether he ever gave anything of value to Gertz. ███████████ He claimed not to recall the facts surrounding ████████████████████ and refused to explain whether ████████████████ Guo admitted that Gertz "██████████████████ ████████████████████████████████████████████████████████████████ Guo admitted ███████

---

[1] Mr. Han will be referred to by his first name, "Lianchao," to differentiate him from purported Eastern Profit director Han Chunguang, whom Strategic Vision believes is unrelated





Further, Strategic Vision believes that Gertz is one of the handful of board members in the Rule of Law Society, an Upper East Side-based entity founded by Guo allegedly to conduct various activities in connection with China. In that capacity, Gertz continues his longtime role of advising Guo on a range of issues, and it is possible that Gertz has received remuneration.

### Events Concerning the Subpoena at Issue

On June 28, 2019, when the undersigned was substituted into this case, the discovery deadline for this case was extended to September 27, 2019, based on Strategic Vision's desire to finish the Rule 30(b)(6) deposition of Eastern Profit and to take five or six key witness depositions, many of whom were non-parties. Strategic Vision served Gertz with the Subpoena at issue on July 30, 2019, and Gertz's counsel responded with written objections in a letter dated August 16, 2019. Gertz objected to virtually every document request, and further advised that he would not appear for his noticed deposition. Gertz's counsel advised of his availability for a phone conference to meet and confer regarding the objections, and the parties conferred the week of August 26, 2019 (following Gertz's counsel's return from a trip out of the country). Despite multiple phone conferences and correspondence, including counsel for Strategic's attempt to compromise on several aspects of the Subpoena's requested information, Gertz has refused to comply with the Subpoena or provide dates to appear for the deposition as noticed.

On August 29, 2019, September 6, 2019, and September 10, 2019, Strategic Vision's counsel spoke with Gertz's counsel to attempt to avoid involving the Court. Gertz's counsel advised that Gertz would stand on his objections to producing the documents and that Gertz would not appear for his deposition. Having reached an impasse, Strategic Vision now seeks the Court's assistance.

### The Documents Sought by the Subpoena to Gertz

In accordance with local court rule 37.1, Strategic Vision sets out the document requests to Gertz and his verbatim objections. As of today, the current status of the requests, and the parties' positions, are as follows. Strategic's scaled-back deposition topics and document demands abandon much of the material to which Gertz objected in the original Subpoena.



### Document Requests to Gertz

1. Any and all documents reflecting or relating to any advice, guidance, or assistance you have provided, with or without payment or any other form of consideration, to Guo Wengui, Yvette Wang, Lianchao Han, French Wallop, or Michael Waller, or to any entity funded or controlled at least in part by any of these individuals, between July 1, 2017 and March 1, 2018, regarding this litigation, the underlying research project, or the activities set forth in the Counterclaim.

2. Any and all documents reflecting or relating to any introduction by you or Lianchao Han of French Wallop, Michael Waller, or Strategic Vision US, LLC to Yvette Wang, Guo Wengui or any entity funded or controlled at least in part by him.

3. Any and all documents reflecting or relating to your negotiations or communications regarding an agreement between Guo Wengui or any entity funded or controlled at least in part by him, on the one hand, and on the other, French Wallop, Michael Waller, or any entity funded or controlled at least in part by either one or both of them.

4. Any and all documents reflecting or relating to your communications with French Wallop, Michael Waller, or Strategic Vision between June 1, 2017 and April 1, 2018, regarding any plans or activities by Guo (individually or through entities controlled or funded by him) involving: (a) research or investigations regarding Chinese Communist Party ("CCP") members, People's Republic of China ("PRC") government officials and their agents, individuals claiming to be Chinese dissidents, or the suspected activities, finances, or family members of any of the aforementioned groups; or (b) public communications or advocacy relating to the research or investigations referenced in subpart (a), or relating to Guo, the CCP or PRC.

5. Any and all documents reflecting or relating to any statement made by you, between July 1, 2017 and March 1, 2018, that references or relates to Guo Wengui, Yvette Wang, Lianchao Han, French Wallop, Michael Waller, or Strategic Vision regarding this litigation, the underlying research project, or the activities set forth in the Counterclaim.

### Gertz's Objections

Gertz asserts that the Subpoena "strik[es] at the heart of Mr. Gertz's newsgathering activities and trigger[s] the 'demanding burden' required by controlling Second Circuit precedent," and that "Strategic Vision cannot satisfy any of the necessary 'reporter's privilege' factors." In addition, Gertz makes the following general objections:

- WFB and Mr. Gertz object to the Subpoena to the extent that it is inconsistent with, or seeks to impose obligations beyond those required by, the Federal Rules of Civil Procedure, the Local Rules for the United States District Courts for the Southern and Eastern Districts of New York, any order of the Court, or any other applicable law, rule, or order.

- WFB and Mr. Gertz object to the Subpoena to the extent that it seeks the production of documents that are protected by the attorney-client privilege, the work product doctrine, the joint-defense or common interest privilege, the common law reporter's



privilege, any other applicable privilege, protection, or immunity, or that are otherwise exempted from discovery. WFB and Mr. Gertz hereby assert all applicable privileges and protections to the extent implicated by the Subpoena, whether based on statute or regulation or recognized at common law.

- WFB and Mr. Gertz object to the Subpoena to the extent that it seeks information that should properly be obtained from parties to the litigation, where the burden of searching for, collecting, or compiling such records is substantially the same or less for the parties as it is for WFB and Mr. Gertz. WFB and Mr. Gertz further object to the Subpoena to the extent that it seeks information that can be obtained or already has been obtained from other third parties, where the burden of searching for, collecting, or compiling such records is substantially the same or less for the other third parties as it is for WFB and Mr. Gertz.

- WFB and Mr. Gertz object to the Subpoena to the extent that it seeks information beyond what is available from a reasonable search of WFB and Mr. Gertz's files.

- WFB and Mr. Gertz object to the Subpoena to the extent that it is overly vague, overly broad, unduly burdensome, and disproportionate to the scope of relevant discovery from a non-party under the Federal Rules of Civil Procedure, including Rules 26, 34(c), and 45.

- WFB and Mr. Gertz object to the Subpoena to the extent that it seeks documents or communications that are not relevant to any party's claims or defenses in this litigation.

- WFB and Mr. Gertz object to the Subpoena to the extent that the burden or expense of the requested discovery outweighs its likely benefit, taking into account, for example, the needs of the case, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

- WFB and Mr. Gertz object to the Subpoena to the extent that it seeks information available from public sources.

- WFB and Mr. Gertz object to the Subpoena, which seeks production of confidential, proprietary, or other competitively sensitive information, in the absence of an appropriate protective order. WFB and Mr. Gertz further object to the Subpoena to the extent that it seeks production of information subject to confidentiality agreements between WFB and Mr. Gertz and third parties. Such information may be produced, if responsive and not otherwise objected to, only after WFB and Mr. Gertz object have complied with any applicable notification provisions, and under an appropriate protective order.



Gertz followed these general objections with a list of six "specific objections," containing the same boilerplate language objecting to each of the six numbered document requests in the Subpoena's Exhibit A:

> *In addition, WFB and Mr. Gertz specifically object to Request No. [1-6] on the ground that it is overly vague, overly broad, unduly burdensome, and disproportionate to the scope of relevant discovery from a non-party under the Federal Rules of Civil Procedure, including Rules 26, 34(c), and 45. WFB and Mr. Gertz further object to this request on the ground that the information it seeks is not highly material and relevant to the dispute between the parties, not necessary or critical to the maintenance of any claim or counterclaim, and may be obtainable from other available sources.*

### The Information Sought is Discoverable and Not Privileged

Citing inapplicable case law regarding compelled disclosure of confidential sources, Gertz objected to the Subpoena in its entirety, citing the common law press privilege and a variety of general objections. The press privilege does not apply here. Both New York and Second Circuit law recognize a qualified press privilege that protects documents gathered in the course of news reporting and confidentiality of sources—neither of which are implicated by Strategic Vision's Subpoena. In any event, the privilege can be overcome upon a showing that the materials at issue are "of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Gonzales v. National Broadcasting Co.*, 194 F.3d 29, 36 (2d Cir. 1999).

The discovery sought from Gertz does not require him to disclose any identities of confidential sources. Gertz played a key role in the early part of the relationship between the parties, and that much is pled and admitted in the counterclaim and answer. Strategic Vision seeks information and documents from Mr. Gertz that are entirely separate from his newsgathering activities, including representations he made to Guo and Strategic Vision before and during introducing them for the purpose of working together. Indeed, Strategic Vision alleges in its counterclaim—and Eastern Profit admits—that Gertz introduced Guo and Eastern Profit to Strategic Vision in the first place. Gertz arranged meetings between Strategic Vision and Guo and representatives for Guo, not to newsgather or report, but instead to help Strategic Vision discuss doing work on behalf of Guo. Gertz has knowledge of discussions and representations made before and during contract negotiations, which go directly to the elements of the fraud claim (both Strategic Vision's counterclaim) and its defenses to Eastern Profit's claims. Finally, we know the introduction between the two parties was by Gertz (again, not a newsgathering activity) and that Gertz had a longstanding relationship with Strategic Vision's principals and reached out on behalf of Guo to see if their company would be able to perform work for Guo. In each of these instances, Gertz was serving as an advisor to Mr. Guo and emissary on his behalf rather than a reporter.

No privilege exists to shield testimony by journalists where the requestor seeks information unrelated to newsgathering and does not seek the disclosure of any confidential source. But even if a qualified press privilege existed here, Strategic Vision has shown it can be overcome. "Where a civil litigant seeks nonconfidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can show that the materials at issue are of likely relevance to a significant issue in the case, and are



not reasonably obtainable from other available sources." *Schiller v. City of New York*, 245 F.R.D. 112, 118–20 (S.D.N.Y. 2007).

Even if the court finds that Gertz can somehow assert the press privilege here, the materials sought are not confidential, so "the showing needed to overcome the privilege is less demanding than the showing required where confidential materials are sought." *Gonzales*, 194 F.3d at 32. Where a civil litigant seeks non-confidential materials from a nonparty press entity, the litigant is entitled to the requested discovery notwithstanding a valid assertion of the journalists' privilege if he can demonstrate that the materials sought are: (1) "of likely relevance to a significant issue in the case"; and (2) "not reasonably obtainable from other available sources." *In re McCray, Richardson, Santana, Wise, & Salaam Litig.*, 928 F. Supp. 2d 748, 754 (S.D.N.Y. 2013), citing Gonzales, 194 F.3d at 36.

Materials are reasonably unobtainable where a significant hardship prevents the party from gathering the information again. *Schiller*, 245 F.R.D. at 120 ("[E]quivalent information could be obtained only by subpoenaing and deposing hundreds of nonparty witnesses who filled out the questionnaires.") Courts have also granted subpoenas when depositions have not provided the information sought by the requesting party. *See Mandal v. City of N.Y.*, No. 02 Civ. 1234, 2004 WL 2375817, at *6 (S.D.N.Y. Oct. 21, 2004); *Lonegan v. Hasty*, No. 04 Civ. 2743, 2008 WL 41445, at *4 (E.D.N.Y. Jan. 1, 2008).

Here, the discovery sought meets the *Gonzales* test. 194 F.3d at 36. It is certainly of likely relevance to several significant issues in the case, including Guo's representations to Strategic Vision and third parties regarding his goals and purpose of the contract. And, to date, the discovery has been reasonably unobtainable from other sources, despite multiple attempts by the undersigned to ask witnesses about Gertz's involvement in depositions.

Gertz cannot establish that the press privilege prevents his testimony here, nor that the information sought was conveyed in confidence from a source in the course of newsgathering activities. Moreover, Gertz has not identified a single instance in which Guo or Eastern Profit requested confidentiality in discussions with Gertz—indeed, Guo has spoken openly and on the record with Gertz numerous times. At best, Gertz can assert a reporter's privilege for nonconfidential information. *See Schiller*, 245 F.R.D. at 118–20 (finding information at issue was not conveyed in confidence where conveyers of information understood that it could be made public). Even then, however, Strategic Vision can overcome any claim of press privilege by demonstrating that "the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Gonzales*, 194 F.3d at 36.

Strategic Vision has made the requisite showing to defeat any qualified press privilege asserted by Gertz. Not only was Gertz not engaging in newsgathering activities when he helped Guo devise a plan for research reports and introduced him to Strategic Vision for the purpose of discussing and entering into a contract for services, but Gertz also has made no showing that there was an understanding or agreement of confidentiality from Guo to Gertz in any of their interactions. "To invoke the [absolute] privilege the journalist carries the burden of proffering at least preponderant evidence of the mutuality of the understanding, or agreement, of confidentiality." *PPM Am., Inc. v. Marriott Corp.*, 152 F.R.D. 32, 35 (S.D.N.Y. 1993), *Application of Dack*, 101 Misc.2d 490, 421 N.Y.S.2d 775, 783 (Sup.Ct.1979); *see also Andrews v. Andreoli*, 92



Misc.2d 410, 400 N.Y.S.2d 442, 448 (Sup.Ct.1977) ("The genesis of the privilege lies only in the anonymity claimed and the confidence given.").

### Gertz Cannot Unilaterally Refuse to Testify

Non-parties must respond to Rule 45 subpoenas directing testimony *ad testificandum*, meaning that the service of the subpoena itself commands testimony without further order of the Court. In *Solargen*, the court rebuked two reporters who refused to appear at their depositions, finding that they should have appeared at the deposition to assert the privileges they invoked to particular questions. To find otherwise "would go against the duty 'which the citizen owes his government . . . to support the administration of justice by . . . giving his testimony whenever he is properly summoned." 506 F. Supp. at 552. This is confirmed by the plain language of Rule 45. As to a subpoena for documents, a non-party can submit a timely objection to the party issuing the subpoena and then it is required of the issuing party to give notice to the non-party and move the Court for an order compelling production. Fed. R. Civ. P. 45(d)(2)(B)(i).

Rule 45 contains no similar provision for testimony commanded by a subpoena, and cases like *Solargen* hold that the "[t]he burden then rests upon the objecting witness" to obtain relief from the Court in advance of a deposition. *Id. See also Jones v. Hirschfeld*, 219 F.R.D. 71, 75 (S.D. N.Y. 2003) ("The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant."). Accordingly, Gertz cannot simply fail to appear for his deposition with the "courtesy" of an advance objection, as he has attempted to do.[2] Strategic Vision asks the Court to enter an order directing his attendance at a deposition.

### Conclusion

The information sought from Gertz is discoverable and not shielded by any press privilege. The documents requested and his testimony, including how Gertz came to introduce Guo to Strategic Vision and the representations Guo made to Gertz about his needs and goals for the research project and the contract itself, are directly relevant to significant issues in this case. Gertz's testimony about representations made to Guo, and statements Guo made to him before and after the introduction to Strategic Vision regarding the contract and representations made, go to the heart of both parties' claims and a key issue in this matter: to what use was Strategic Vision's work going to be put?

This is not the case of a litigant seeking confidential press materials protected by a qualified privilege. Gertz was not engaging in newsgathering or reporting when he introduced Guo to Strategic Vision, formulated the idea of research reports, or aided Guo in initiating contract discussions. These are not newsgathering activities subject to the privilege. The press privilege does not apply to shield Gertz from appearing for a deposition or complying with the Subpoena, and Gertz cannot unilaterally refuse to appear.

---

[2] Strategic Vision agreed as a courtesy to reschedule the initially noticed deposition and set a new date based on counsel's representation that the witness was unavailable due to a book tour. However, Gertz subsequently refused to provide other available dates, claiming that Gertz objected to providing any testimony.



Strategic Vision looks forward to discussing these issues with the Court at the court's earliest convenience.

Respectfully submitted,

*[signature]*

Edward D. Greim

cc: Counsel of record via ECF