

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

September 30, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:    Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DCF
            Reply regarding Golden Spring Subpoena

Dear Judge Freeman:

      Please allow this to serve as the final submission by Defendant/Counterclaimant Strategic Vision regarding the matter of compelling the appearance of a corporate representative for Golden Spring (New York) Limited ("GSNY") and the production of its records pursuant to a duly-served Fed. R. Civ. P. 45 non-party subpoena. In particular, this addresses the September 24, 2019 correspondence from GSNY, ECF 158, which responded to Strategic Vision's September 20, 2019 correspondence, ECF 156.

      In its September 24th letter, GSNY writes that "GSNY is not a party to this action." (ECF 158, p. 1). GSNY is not a party to this action in name only. In all ways that matter for discovery purposes, GSNY is central to this case and thus a critical source for discovery. GSNY's involvement is not accidental: party defendant Eastern Profit chose to appoint GSNY as Eastern Profit's agent not only to negotiate, execute, perform, and enforce the Contract at issue, thus an agent on substantive, merits matters, **but also to control Eastern Profit's litigation decisions and disclosures**. This is all in writing. GSNY's last letter, ECF 158, denies none of it.

      On the discovery front, GSNY's control has been demonstrated in many ways, including that GSNY "CEO" Yvette Wang was the corporate witness for Eastern Profit in its first Rule 30(b)(6) deposition, and will be re-produced for its third attempted 30(b)(6) deposition. She is also Guo's assistant and/or business partner, and almost certainly will be GSNY's witness at its Rule 30(b)(6) deposition. In short, all of the witnesses on the side of Guo (the person Eastern Profit admits in its Answer bound Eastern Profit with his statements and actions concerning the Contract) either own, control, or are employees of GSNY.

      In light of this, it is wrong for GSNY to attempt to portray itself as tangential to the factual record and uninvolved in Eastern Profit's litigation and discovery decisions. If Strategic Vision "provides no evidence to support [its] conclusion[s]" about the connection between Guo and Eastern Profit and Guo and GSNY (a contention that is demonstrably false), it would be all the more reason to allow discovery into this obviously relevant subject.



Further, there are two salient facts about the procedural context of this dispute that bear highlighting here.  First, GSNY has never objected to all of the testimonial topics in the subpoena to it or to all of the subpoena's document requests.  That fact went unchallenged in GSNY's last letter.  Thus, from the outset, GSNY has committed to producing at least certain documents and giving deposition testimony.  However, as of the date of this submission, **GSNY has produced no records**.  At most, its counsel now states that any records GSNY had were already produced by Eastern Profit.  However, GSNY failed to identify which of Eastern Profit's records GSNY too possessed, when such records were produced by Eastern Profit, and which of the subpoena's document requests Eastern Profit's earlier production addressed.  As of today, GSNY still cannot or will not confirm whether it had, or has, documents to produce because it limits its no-documents-found position to only those records "that bear upon the contract with Eastern, negotiations regarding that contract, or the performance of that contract."  GSNY (represented by Guo's attorney) still treats Strategic Vision's fraud claims as outside the permissible scope of discovery, and still treats Guo like a non-party with no connection to this case who is constantly in danger of "harassment." The subpoena requested something broader than discovery merely about the Contract, and Strategic Vision's September 20th submission set forth the compelling reasons why discovery should not be limited to the Contract.  GSNY responds with nothing specific to the particular open issues.

Second, GSNY has flouted the Court's verbal order on September 17th that GSNY provide dates so that a calendar entry could be finalized for its deposition.  By the time of the conference, GSNY had been ignoring Strategic Vision's scheduling request for weeks.  Now, almost two weeks have passed since the conference, ten days have passed since Strategic Vision noted GSNY's failure to provide dates as part of Strategic Vision's September 20th letter to the Court, **and GSNY still has provided no dates**.  This is a blatant refusal to follow the Court's order and GSNY's own agreement to produce a witness.  It is also in direct contravention of GSNY's own promise in its very first objection letter six weeks ago that deposition dates "in September" would be provided.

It is in the context of this obstructionist behavior by GSNY that Strategic Vision asks the Court to consider the open issues regarding the scope of the document requests that GSNY should answer.  Strategic Vision's September 20th correspondence set out the current status of the parties' negotiations and why Strategic Vision is entitled to the discovery.  GSNY did not respond to the specific discussion points raised by Strategic Vision.

Finally, GSNY claims that Strategic Vision should be denied discovery regarding GSNY's relationship to ACA Capital Group Limited because Strategic Vision has not proven certain contentions regarding the Contract payment made by ACA to Strategic Vision:  "Strategic first supported its request for information respecting the payment by ACA by representing to the Court that Strategic had recordings in which Guo had publicly stated he could not remove funds from Hong Kong because he was a dissident. In fact, there was no such recording and statement.  Strategic next argued that China had the power to block payments from Hong Kong, but that also proved to be false."  (ECF 158, p. 2 n. 2).

GSNY is mistaken.  Strategic Vision did not point to a recording to demonstrate Guo's comments about access to funds in Hong Kong, but referred the Court to a statement by Guo's personal attorney (Daniel Podhaskie) to the media (the Wall Street Journal, article dated July 22,



2019) that Guo "has never taken a penny out of Hong Kong" as a result of financial persecution by the Chinese Communist Party in response to Guo's public statements. (ECF 152, p.1). Strategic Vision also wrote the Court with support for the proposition that China can control financial assets in Hong Kong. (ECF144). There, Strategic Vision also noted, among other things, "Guo has claimed he has no assets, but we cannot find a statement in which Guo claims to be unable to move assets specifically from Hong Kong. (In fact, we cannot find a statement making reference to his having Hong Kong assets at all. Instead, Guo used ACA to move money to Hong Kong in advance of an attempted purchase of shares in a Mainland entity, as Strategic pleads at Paragraph 59 of its Counterclaim.)" (ECF 144, p. 2)

At any rate, GSNY's relationship to ACA during the relevant time period is relevant; at bare minimum, if GSNY was really acting as Eastern Profit's agent, then this evidence may finally uncover the genesis of the purported ACA-Eastern "loan" and explain whether it is genuine. (As it stands today, Eastern has not produced a shred of documentation relating to discussions, negotiations, collection, enforcement, or communications about the loan; it has simply produced a PDF of the purported document.) Second, if Guo actually controls GSNY and controls ACA, it will show that any loss here was Guo's, not Eastern Profit's, even though it has the burden of proof to show all the elements of its contract claim, including that Eastern Profit and not some other entity suffered the alleged damage. Further, discovery into the Guo-GSNY relationship will show that statements by Guo, his intent, and his knowledge are all attributable to GSNY, Eastern Profit's admitted all-purpose agent in this case. Importantly, this is far broader than Eastern Profit's admission in its Answer that Guo was its agent for purposes of negotiating and performing the Contract. That is, it will secure for Strategic Vision the additional points of proof—the attribution of Guo's knowledge and intent to GSNY and therefore to Eastern Profit—to which it appeared Eastern was almost prepared to stipulate in an August telephone conference with the Court, but to which Eastern was ultimately unwilling to agree before changing counsel.

But even more fundamentally, GSNY's incorrect assumption about the state of the record on the ACA/Hong Kong issue illustrates the misguided perspective that it would ask the Court to adopt regarding all of the discovery issues—that Strategic Vision must first prove a fact or circumstance before being allowed to take discovery into it. This is not the spirit or letter of the federal discovery rules, and the Court should find in favor of Strategic Vision on these matters.

<u>Summary of Requested Relief</u>

The Court should direct GSNY to provide its witness for a deposition within five business days of the Court's ruling and to produce its documents within three business days of the ruling. As to the **testimonial topics**, the ruling should order that the same testimony topics and document requests appropriate for Eastern Profit govern GSNY with the following additional topics specific to GSNY:

(1) GSNY's dealings with Eastern Profit, ACA Capital Group Limited, and Guo Wengui between January 1, 2017 and July 1, 2019.
(2) the relationship of potential witnesses in this case (who have been previously identified) to GSNY; and
(3) GSNY's ownership structure.



Regarding **document production**,[1] the Court should direct GSNY to:

- Respond to Request Nos. 2 and 3, which the parties have never had a dispute on.
- Produce records responsive to testimonial topics (2) and (3) above, if GSNY refuses to testify regarding them
- Produce documents showing GSNY's other investigative work regarding the same names Guo and Wang provided to Strategic Vision under the Contract and GSNY's other work investigating dissidents or CCP members.
- Produce recordings of Strategic Visions's two main agents (French Wallop and Mike Waller), as well as of other key individuals that relate to this litigation, the underlying project, or the activities of Guo, Wang, Steven K. Bannon and Maistrello that are set forth in the Counterclaim from January 1, 2017, to July 1, 2019

Strategic Vision appreciates the Court's efforts to safeguard the discovery process in this case to allow Strategic Vision necessary information to present its case at trial or through dispositive motion.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF

---

[1] Requests 1, 5, and 7 have been eliminated by Strategic Vision in an attempt to resolve the matter.