

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

October 9, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re:   Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (JGK)-DCF
      Golden Spring Subpoena

Dear Judge Freeman:

This addresses the Responses of Plaintiff Eastern Profit (ECF 167) and non-parties Golden Spring ("GSNY")/Guo/Karin Maistrello (ECF 168) to our letter of October 4, 2019 (ECF 166), seeking enforcement of your orders that (1) dates be provided for outstanding depositions and (2) Maistrello's documents be produced as ordered by the Court on Sept. 18th. That there was a need for Strategic Vision to write the Court was firmly established by the Responses themselves—they outline specific actions that were taken only in the hours after Strategic Vision contacted the Court. The month-long logjam in discovery has begun to break.

1.   **Golden Spring/Maistrello/Guo**

These three non-parties, all represented by the Hodgson Russ firm, respond that Strategic Vision's letter should be denied as "moot," and that Strategic be reprimanded for failing to "meet and confer" before sending the Oct. 4th letter. This is unfounded. Strategic Vision had already taken every step possible to remind GSNY, Guo, and Maistrello of the obvious—their need to comply with this Court's prior orders, which themselves became necessary only after a prolonged period in which Strategic Vision's requests for documents and dates were ignored. Having finally fought through this tangle to obtain orders from this Court, Strategic Vision was not required to repeatedly remind GSNY and Guo to comply—although it did anyway, in an attempt to spare this Court further letter-writing. The issues raised by the Oct. 4th letter, then, were settled—they needed no further discussion, particularly between the parties, because the Court had spoken. The Oct. 4th letter did not require a second round of "meet and confer" before it was sent.

With respect to the deposition dates, this Court had already directed GSNY and Guo to provide dates—a matter Strategic Vision only brought to the Court during the parties' September 18th conference after GSNY and Guo had failed to answer Strategic Vision's many previous requests to provide dates (made, *e.g.,* during late August and again on September 4, 9, and 13). In the September 18 conference, the Court was explicit in reminding GSNY/Guo that dates should be



provided. Then, even after this Court's order, which should have required no further action on Strategic Vision's part, GSNY and Guo still withheld dates. When Strategic Vision followed up, they refused to respond. It was only Strategic Vision's Oct. 4th letter, filed as a last resort, that finally elicited a response from GSNY and Guo on Monday and Tuesday of this week. Strategic Vision's cost of obtaining these dates, at least after September 18th, should be awarded.

With respect to the Maistrello documents, Strategic Vision immediately contacted Hodgson Russ after the Court ordered they be produced on the September 18th call and stated by email that an emailed production, perhaps by reply, would suffice. This email was ignored. On October 2nd, Hodgson Russ emailed to ask for a copy of the Maistrello deposition transcript, which Strategic provided even though it had been assumed that Maistrello's counsel had ordered a copy of the transcript of her own client's testimony. In that same email exchange, Strategic again reminded Hodgson about this Court's order that the Maistrello documents be produced, and again said that counsel would be fine receiving them by email. This email, too, was ignored. Again, it should not have been necessary for Strategic Vision to repeatedly remind Maistrello that the Court had already ordered the documents to be produced.

Finally, on the evening of October 7, 2019, in response to the Oct. 4th letter to the Court, Maistrello's counsel produced a total of four pages by email, all of which had been printed to PDF from their original format. Two of the pages were the same email and attachment Maistrello had already produced in hard copy form at her deposition, where they were marked as exhibits, and so were not at issue. The two other pages were an email and its one-page attached sample resignation letter that Je apparently sent to Maistrello 3 minutes before she is claimed to have signed and returned her already-produced "resignation" email. But at deposition, the witness testified that she had searched her inbox for "William Je"[1] and had found at least two other emails: her initial email to Je stating that she wanted to resign, and Je's supposed confirmation that he had accepted her resignation. Maistrello's testimony is below, with the most pertinent statements emphasized

9 Now, is it your testimony that *Mr. Je*
10 *responded and said that he accepted it?*
11 A. Yes.

_____

[1]   Maistrello testified that she had personally conducted the search which generated the emails:

Q. I notice that the name William is
1 highlighted in plaintiff Exhibit 1. Do you see that?
2 A. I do.
3 Q. Why is that?
4 A. *'Cause when I did the search in my*
5 *email everything that comes with that "William" gets*
6 *highlighted.*
7 Q. When you did that search, how many
8 emails with William Je did you find in your inbox?
9 MS. TESKE: Object to the form.
10 A. I don't know.
11 Q. One or two or more than that?
12 MS. TESKE: Object to the form.
13 A. I really don't know.



*12 Q. Okay. Did you bring that email with*
*13 you?*
*14 A. I did not.*
15 Q. Okay. When did he -- *I'd ask you to*
*16 produce that afterwards.*
*17 A. Mm-hmm.*
18 Q. When did he send that to you?
19 A. I believe right afterwards.
20 Q. Did you understand that he was
21 expecting your email?
22 A. Yes.
23 Q. How did you understand that he was
24 expecting your email?
*25 A. Before this email, I wrote an email*
*1 saying that I would like to resign, so he was*
*2 definitely expecting it.*
3 Q. When did you write that email?
4 A. On the same day, so July 26th.
5 Q. Okay. At what time?
6 A. I don't remember.
*7 Q. Do you have a copy of that email still?*
*8 A. I do.*
*9 Q. I would like to ask that you produce*
*10 that.*

Maistrello's counsel has now informed us that the emails are not able to be produced because they are not "in our client's possession, custody and control." This is despite that they are fully responsive to at least two of the categories of documents requested by the subpoena to Maistrello; were requested at the deposition; and were discussed in the September 18 call with this Court without any indication from Maistrello's counsel that the emails were no longer in Maistrello's "possession, custody, and control." On the morning of October 10th, the parties are meeting and conferring on the missing emails, including what steps were made to preserve them during the period in which Strategic Vision was requesting their production, namely from August 23rd to October 7th.

2. **Eastern Profit**

This dispute is now moot with the exception of the Han Chunguang deposition date. Strategic recognizes that Pepper Hamilton was retained only a few weeks ago. But, as Strategic Vision's first letter made clear, all of Eastern's counsel report to GSNY, which Eastern Profit says it appointed to run this litigation. GSNY has been participating through its own set of in-house and outside counsel at all times, and has been well aware since August 2019 of the need to keep these depositions on the calendar. It is GSNY that halted discovery discussions.



As recently as September 18th, this Court expressed its expectation—shared by Strategic Vision and, we believe, by all counsel—that during the month of September, all would not come to a standstill. During those weeks that new counsel were working on coming aboard, Strategic Vision hoped that GSNY's counsel was conferring with Eastern's incoming counsel on the progress of discovery negotiations and the need for deposition dates, and that new counsel's actual appearance was imminent. At minimum, when new outside counsel for Eastern ultimately were retained two weeks ago, GSNY—which again, had continuity of highly-involved inside and outside counsel—should already have had available deposition dates to share with them. (Again, the key witnesses control or are employees of GSNY.) That did not occur, although the parties were able to meet and confer on an expedited basis regarding a joint request to extend discovery, which remains pending before the Court. But the following week, the week after Pepper Hamilton appeared, the parties simply exchanged cordial emails that yielded promises to check with the client, but no new dates.

When the first of those dates did come in reaction to the Oct. 4th letter, they presented precisely the timetable to which Strategic Vision had earlier objected: another month-long deposition hiatus, now stretching September's inactivity into October. To avoid further slippage and to minimize this dispute, Strategic Vision reluctantly acceded to dates of October 29, 2019, for Guo Wengui, and October 30 for the Eastern Profit Rule 30(b)(6) continuation and for GSNY, which will be presenting the same Rule 30(b)(6) witness as Eastern Profit. The Rule 30(b)(6) date having finally been set, Strategic Vision withdraws its request for fees as to Eastern Profit.

This leaves Han Chunguang. This Court will recall that Han Chunguang was noticed a month in advance to be deposed on August 23, 2019. On the August 21 phone conference in which this Court ordered that Han be produced, and only after the Court articulated its decision, Eastern Profit revealed that Han was unavailable on Friday the 23rd. Strategic Vision agreed to reschedule him in the near future and asked for available dates. Those dates never came. First, Eastern Profit said it was working on dates but couldn't get them. Then, it took the position that Han simply would not be produced, notwithstanding this Court's order. Then it relented. Finally, it failed to provide dates and its counsel lost authority to communicate on this topic. This consumed the end of August and all of September.

Now, Han—a GSNY employee and a daily presence in GSNY's and Guo's Upper East Side environs—reportedly cannot be produced until November 11th. No one can say why. The man who is supposedly Eastern Profit's "principal" and whose signature appeared on the key documents in this case should be produced in October—two months after his original date, itself noticed a month in advance. This is notwithstanding Eastern's renewed efforts in communications last week, and again in its Response, to "redo" the earlier dispute about Han that this Court resolved six weeks ago after much time and expense.  The Court has already spoken—Han will be deposed.

### 3.  Moving forward and finishing discovery

More broadly, this Court should not give its approval to the virtual 2-month stay in this case that is now taking form. Strategic Vision had proposed that early October be used for all depositions for which there were no outstanding issues with this Court. Strategic would depose Han and also produce its own Rule 30(b)(6) witnesses—who were preparing themselves and just 72 hours from being deposed by Eastern Profit in early September when Mr. Grendi abruptly lost



authority. They were generally available in September and available for stretches of October. Now, Eastern Profit will not take their deposition until November 19 or 20. For Han Chunguang, Strategic proposed this week, then next week and the following week, then finally anytime in October. Without action by this Court, there will be no October deposition of Han. As it stands now, the first stirring in this case will come on October 29, for Guo Wengui's second day of deposition.

Having laid the groundwork for a break of almost two months by limiting guidance to Eastern Profit's former counsel and ultimately finding new counsel for Eastern Profit, GSNY is hoping to "redo" the timeline of this case and perhaps even revisit some decisions this Court has already made. We respectfully suggest that a conference between Eastern Profit and Strategic Vision makes sense to resolve the issue of scheduling Han Chunguang and answer any questions this Court may have about the parties' joint proposed extensions. Additionally, we are trying to schedule a time to resume our discussions with Eastern—halted during the first week of September as Mr. Grendi sought guidance from GSNY before losing his authority—regarding the scope of the Eastern Profit 30(b)(6), currently set for October 30. Unless the Court would prefer to resolve any remaining issues on the papers (as it already is with respect to the non-parties) perhaps a date later in October should be set for a conference on that topic as well.

Respectfully submitted,

Edward D. Greim
Attorneys for Defendant/Counterclaimant