# EX. J

Atkinson-Baker, Inc.
www.depo.com

**Page 70**

1  MS. TESKE: And I'm going to 01:09
2  caution you not to reveal any
3  communications that you had with
4  Mr. Podhaskie.
5  A. Can you repeat your question, please.
6  Q. Why did you decide to resign as an ACA
7  director on July 26th?
8  A. I did not want to get involved in
9  things that I'm not involved with.
10 Q. What are those things?
11 A. To be honest, I don't know.
12 Q. Is it -- are you referring to this
13 case?
14 A. I don't know anything about this case.
15 To be honest, I don't even know why I'm here. The 01:10
16 reason why I worked for this company, why I trust
17 William is because we share a mission. That's what
18 makes me trust him and that's probably why he trusts
19 me.
20     Anything else, what he does, who he is,
21 his family, I don't know. I don't care. We're
22 trying to work to make China a better place and
23 that's all that matters.
24 Q. Why did you think that resigning from
25 ACA as a director would keep you from getting

**Page 71**

1  involved in things that you don't want to be involved 01:11
2  in?
3  MS. TESKE: Object to the form.
4  You can answer.
5  A. Can you repeat your question, please.
6  MR. GREIM: I'll have the court
7  reporter do that.
8  (Whereupon, the record is read.)
9  A. I'm not sure I understand the question.
10 Q. You told me a few minutes ago that you
11 resigned from ACA because you did not want to get
12 involved in things that you don't want to be involved
13 in. Do you remember that testimony?
14 MS. TESKE: Object to the form.
15 You can answer. 01:11
16 A. Yes.
17 Q. And so, my question is, why did you
18 think that resigning as a director of ACA would
19 accomplish that goal?
20 MS. TESKE: Object to the form.
21 You can answer.
22 A. Let's put it this way. You are part of
23 a company or you work in a store. There are things
24 in the store that you don't want to get involved
25 with. You resign. You're not part of it any more.

**Page 72**

1  Q. What are the things that you don't want 01:12
2  to be involved in?
3  MS. TESKE: Object to the form.
4  You can answer.
5  A. I don't know.
6  Q. But whatever they were, they were
7  serious enough for you to resign from ACA?
8  MS. TESKE: Object to the form.
9  You can answer.
10 MR. GRENDI: Object to the form.
11 A. I don't know.
12 Q. You just testified a second ago that
13 you trusted Mr. Je because you shared a mission of
14 making China a better place, right?
15 A. That's correct. 01:13
16 Q. And is that the mission you thought ACA
17 had?
18 A. No. I trust him as a person as I know
19 that he shares the same idea about the Communist
20 Party and how bad they are. I am not talking about
21 ACA or any other thing. I was talking specifically
22 about him as a person.
23 Q. So what is the thing you were trying to
24 keep from getting involved in by resigning as a
25 director?

**Page 73**

1  MS. TESKE: Object to the form. 01:13
2  You can answer.
3  A. I don't know. I don't know
4  specifically what's going on here with these -- with
5  any company. I just feel that I don't want to be
6  involved in something that does not belong to me.
7  Q. What did you learn that made you decide
8  that you did not want to be involved in ACA as of
9  July 26th?
10 MS. TESKE: Object to the form.
11 You can answer.
12 A. Really nothing.
13 Q. Was it something Mr. Podhaskie told
14 you?
15 MS. TESKE: Object to the form, 01:14
16 and -- object to the form.
17 You can answer without giving away
18 any substance of communications.
19 A. Yes.
20 Q. So it's something Mr. Podhaskie told
21 you but you can't tell us what that thing is; is that
22 your testimony today?
23 MS. TESKE: Because I'm directing
24 her not to.
25 MR. GREIM: Well, okay. So you're

19 (Pages 70 to 73)

Karin Maistrello
August 23, 2019

Atkinson-Baker, Inc.
www.depo.com

```
 1    directing her not to tell me what the              01:15
 2    thing ACA was involved in that she wanted
 3    to get out of.
 4            MS. TESKE: I am directing her not
 5    to discuss her communications with Dan
 6    Podhaskie with you.
 7            MR. GREIM: Okay. That's -- okay,
 8    fair enough.
 9    Q.    I'll ask it this way. Forget about
10    what Mr. Podhaskie told you.
11            Was the thing that ACA was involved in
12    that you wanted to not be involved in yourself, was
13    it a project of ACA?
14            MS. TESKE: Object to the form of
15    the question.                                      01:15
16            You can answer.
17    A.    I don't know.
18    Q.    Was it a lawsuit?
19            MS. TESKE: Object to the form of
20    the question.
21            You can answer.
22    A.    I don't know.
23    Q.    How did it involve ACA?
24            MS. TESKE: Object to the form.
25            You can answer.
```

Page 74

```
 1    A.    I don't know.                                01:16
 2    Q.    Why did you think that resigning as a
 3    director would spare you from being involved in
 4    whatever this thing was?
 5            MS. TESKE: Object to the form.
 6            You can answer.
 7    A.    I believe I already answered this
 8    question. Meaning, with my resignation, I'm out.
 9    Q.    Out of what?
10    A.    ACA.
11    Q.    Did you discuss your conversation with
12    Mr. Podhaskie with any other person after you were
13    done talking with him? Yes or no for now.
14    A.    No.
15    Q.    Did Mr. Podhaskie tell you he would          01:17
16    discuss your conversation with any other person? Yes
17    or no for now.
18            MS. TESKE: Object to the form.
19            You can answer.
20    A.    No.
21    Q.    Do you know whether Mr. Podhaskie
22    discussed your conversation with him with any other
23    person?
24    A.    I do not.
25    Q.    Did Mr. Podhaskie -- I'm not going to
```

Page 75

```
 1    ask you what it was. It's just a yes or no question.  01:17
 2            Did he give you advice in this
 3    discussion?
 4            MS. TESKE: Objection and
 5    directing the witness not to answer.
 6    We've -- because I'm not going to allow
 7    her, no matter what she answers, and she
 8    can answer a yes or a no, but no matter
 9    what her answer is, she does not
10    understand the scope of the
11    attorney-client privilege. And I am
12    going to direct her not to discuss
13    communications with Mr. Podhaskie until I
14    am confident that they are not
15    attorney-client privileged                         01:18
16    communications.
17            MR. GREIM: I think, though, that
18    I need to know whether he gave advice.
19    I'm not asking what it was. I want to
20    know whether he gave advice, yes or no.
21    And if she says no, it doesn't mean we're
22    going to go all out. I want to know
23    whether she believes she got advice.
24            You may tell her after you speak
25    with her that, guess what, that was
```

Page 76

```
 1    actually advice. I understand that. I              01:18
 2    want to know her answer before she talks
 3    with counsel just on a yes or a no.
 4            MS. TESKE: I will let -- it has
 5    no bearing. I'm not going to let her
 6    answer that because it has no bearing.
 7    She can not opine on whether or not he
 8    gave her legal advice.
 9            MR. GREIM: Well, I'm going to ask --
10            MS. TESKE: I mean, that's your
11    question.
12            MR. GREIM: Well, I'm going to ask
13    her whether she believed that she
14    received advice, and it's not going to be
15    binding --                                         01:19
16            MS. TESKE: But when you say
17    advice, you mean legal advice, and she
18    doesn't understand that.
19            MR. GREIM: The question -- well
20    wait a minute.
21            MS. TESKE: That's a legal concept
22    that she doesn't understand.
23            MR. GREIM: Okay. I'm just going
24    to make it for the record. You can
25    object again.
```

Page 77

20 (Pages 74 to 77)

Karin Maistrello
August 23, 2019

BY MR. GREIM:                                           01:19
  Q.   And I'm not going to ask about legal
advice right now. I'm just going to say, during the
conversation, did Mr. Podhaskie advise you to do
anything? Yes or no.
       MS. TESKE: Hold on a second.
       I am not going to let the witness
discuss what the substance of her
communications are with Mr. Podhaskie,
and although you want to characterize the
substance, that's the same thing. That's
asking her about the substance of her
conversation. You just want to
characterize it.
       MR. GREIM: Okay.                                 01:20
  Q.   Did you take any actions as a result
of your discussion with Mr. Podhaskie?
       MS. TESKE: Object to the form.
       MR. GRENDI: Yes.
       MS. TESKE: You can answer. No,
sorry.
       What she did at the direction of
her counsel --
       MR. GREIM: That's not my
question.

Page 78

       MS. TESKE: It could be, though.                  01:20
You're going to box her into something,
and you're trying to get -- it's very,
clear, and I understand why you're doing
it, but it's very -- but you are trying
to obtain the substance of
attorney-client privileged
communications --
       MR. GREIM: No.
       MS. TESKE: -- or communications
that we haven't determined aren't. Of
course you --
       MR. GREIM: Okay. We'll come back
to it. We've got to move on.
  Q.   Let me see what we're doing here.                01:21
       (Whereupon, Plaintiff's
Exhibit 5, "Notice of Change of Company
Secretary and Director
(Appointment/Cessation,)" Bates Nos.
42-44, is marked for identification, as
of this date.)
       MR. GREIM: Let's take a short
break.
       THE VIDEOGRAPHER: This will
conclude video No. 1 in the deposition of

Page 79

Karin Maistrello. We're off the record                  01:22
at 1:21 p.m., August 23rd, 2019.
       (Whereupon, a recess is taken.)
       THE VIDEOGRAPHER: This is the
beginning of video No. 2 in the
deposition of Karin Maistrello. We are
on the record at 1:31 p.m., August 23rd,
2019.
BY MR. GREIM:
  Q.   Ms. Maistrello, I've just handed you
what we've marked Exhibit 5. Have you had a second
to take a look at that?
  A.   Give me one second.
  Q.   Sure.
       MR. GREIM: I'll just say for the                 01:33
record it's three pages. They have a --
like a digital Bates label in the bottom
left-hand corner, 42, 43 and 44, and the
top reads "Notice of Change of Company
Secretary and Director," and then in
parentheses after that
"Appointment/Cessation."
  Q.   Now, Ms. Maistrello, let me -- maybe
I'll just walk you through this.
       Do you see on page 2 a signature at the

Page 80

bottom of the page?                                     01:33
  A.   I do.
  Q.   Whose signature is that?
       MS. TESKE: Object to the form of
the question.
       You can answer.
  A.   That's mine.
  Q.   Okay. And if you look on the third
page, do you see another signature at the very bottom
under the title "Confirmation"?
  A.   I see it.
  Q.   Okay. Can you see who signed that?
       MS. TESKE: Object to the form.
       You can answer.
  A.   Yes.                                             01:34
  Q.   Who?
  A.   William Je.
  Q.   Okay. And he signed on behalf of what
entity?
       MS. TESKE: Object to the form.
       Are you asking her to read what's
written --
       MR. GREIM: Yes.
       MS. TESKE: -- on the page?
       'Cause she would not otherwise have --

Page 81

21 (Pages 78 to 81)

Karin Maistrello
August 23, 2019

## Page 98

1  A. No.   01:57
2  Q. Okay. I'm not going to ask you what
3  was said. I'm going to try this one more time and
4  then we'll do the thing we discussed before.
5     Was the topic of your discussion with
6  Mr. Podhaskie the problems that were happening with
7  ACA?
8     MS. TESKE: Object.
9     Don't answer.
10    MR. GREIM: Okay. Let's take a
11 break.
12    THE VIDEOGRAPHER: We are off the
13 record. The time is 1:57 p.m.
14    (Whereupon, a recess is taken.)
15    THE VIDEOGRAPHER: We are back on   02:10
16 the record. The time is 2:09 p.m.
17 BY MR. GREIM:
18 Q. Ms. Maistrello, just a few more
19 questions for you. I want to return to your
20 testimony earlier that you resigned from ACA because
21 you didn't want to be involved in something. Do you
22 recall that testimony?
23 A. I do.
24 Q. And I guess my question to you, I'm
25 going to ask you one last time because you've said

## Page 99

1  you don't know what that thing is, sitting here   02:11
2  today, have you been able to recall what that thing
3  is that you did not want to be involved in as a
4  director of ACA?
5     MS. TESKE: Object to the form.
6     MR. GRENDI: Objection to the
7  form.
8  A. No.
9  Q. Let me ask you this. Has your
10 resignation been effective in keeping you from being
11 involved in that thing that you did not want to be
12 involved in?
13    MS. TESKE: Object to the form.
14    MR. GRENDI: Object to the form.
15 A. I don't know. Meaning, I'm here   02:11
16 wasting my time about something I have no idea what
17 it is about, so I don't know.
18 Q. Is being here one of the things you
19 wanted to not be involved in by resigning?
20    MS. TESKE: Object to the form.
21 A. I didn't necessarily think about this.
22 But yeah, if I could have avoided this, why not?
23 Q. And in fact, you did avoid being
24 deposed as an ACA corporate representative, didn't
25 you?

## Page 100

1     MS. TESKE: Object to the form.   02:12
2     MR. GRENDI: Object to the form.
3     MS. TESKE: If she knows.
4  A. I don't.
5  Q. Other than Mr. Podhaskie, is there any
6  other person that you spoke with before you came to
7  the conclusion that by resigning as an ACA director,
8  you might be -- you might avoid being involved with
9  something you didn't want to be involved in?
10    MS. TESKE: Objection to the form.
11    You can answer.
12 A. No.
13 Q. You did not speak with Ms. Wang about
14 whether resigning could keep you from being involved
15 in something?   02:13
16    MS. TESKE: Object to the form.
17    You can answer that.
18 A. I did not.
19 Q. You did not speak to Mr. Guo about that
20 topic?
21    MS. TESKE: Objection.
22 A. I did not.
23 Q. Did you speak with Mr. Guo about your
24 deposition today?
25 A. I did not.

## Page 101

1  Q. Have you reviewed his disposition   02:13
2  transcript in this case?
3  A. No.
4  Q. Okay. Did you speak with Ms. Wang
5  about your deposition today?
6  A. I didn't.
7  Q. Have you reviewed her deposition
8  transcript in this case?
9  A. No, I haven't.
10 Q. And is it your testimony that you have
11 not had any communication with Mr. Je since his email
12 back to you regarding your resignation?
13    MS. TESKE: Object to the form.
14    You can answer the question.
15 A. That's correct.   02:14
16 Q. Has anyone communicated with you on
17 behalf of Mr. Je?
18 A. No.
19 Q. Have you received any payment from any
20 person other than your payment as an employee of
21 Golden Spring?
22    MR. GRENDI: Object to the form.
23    MS. TESKE: Object to the form.
24    Sorry. For what, during what time
25 period, for any --

Atkinson-Baker, Inc.
www.depo.com

---

**Page 102**

1   MR. GREIM: In 2019.    02:14
2   MS. TESKE: Relating to her
3   services?
4   MR. GREIM: Relating to personal
5   services.
6   MS. TESKE: Personal services?
7   MR. GREIM: Services, any
8   services.
9   MS. TESKE: Provided to ACA.
10  MR. GREIM: Well, first provided
11  to ACA.
12  MS. TESKE: Maybe rephrase the
13  question.
14  MR. GREIM: Yeah, I'm sorry.
15  MR. GRENDI: That's a bad one.    02:15
16  MR. GREIM: I'm sorry. I'm
17  thinking about -- I'm trying to cut out
18  arts and crafts or, you know, artwork or
19  something, tangible things.
20  Let me go back, okay, and make it
21  clear.
22  BY MR. GREIM:
23  Q. In 2019, have you received payment for
24  any services other than your salary as a director of
25  ACA?

---

**Page 103**

1   MS. TESKE: Object to the form.    02:15
2   You can answer the question.
3   Q. I'm sorry. Other than your salary as
4   an employee of Golden Spring?
5   MS. TESKE: Object to the form.
6   But you can answer the question.
7   A. No, I did not.
8   MR. GREIM: Okay. Well, I want to
9   stand on the questions I asked about the
10  discussion with Mr. Podhaskie. I think
11  I've asked every possible question that
12  can be asked about that question, and I
13  want to hold open the deposition for that
14  purpose only.
15  I will say that for efficiency    02:15
16  sake, if there is a way to get the
17  information we need from ACA without
18  going into that, then we will try. We
19  will try. But if we can't, we'll want to
20  return to this topic and we'll just raise
21  it with the judge. And so I've got
22  nothing else.
23  MS. TESKE: Thank you.
24  MR. GRENDI: Thank you very much.
25  MR. GREIM: Thank you, Ms. Maistrello.

---

**Page 104**

1   THE WITNESS: Thank you.    02:16
2   MS. TESKE: Thank you,
3   Ms. Maistrello.
4   THE VIDEOGRAPHER: This will
5   conclude Video No. 2 and end the
6   deposition of Karin Maistrello. We are
7   off the record at 2:15 p.m., August 23rd,
8   2019.
9   (Time noted: 2:15 p.m.)

---

**Page 105**

ACKNOWLEDGMENT

STATE OF NEW YORK    )
                     ) ss.:
COUNTY OF _____ )

I, KARIN MAISTRELLO, hereby
certify that I have read the transcript
of my testimony taken under oath, on the
23rd day of August, 2019; that the
transcript, except as noted in any
attached errata sheet(s), is a true
record of my testimony.

_____
KARIN MAISTRELLO

Subscribed and sworn to before me
this ___ day of _____, 20___.

_____
Notary Public

My Commission expires the
___ day of _____, 20___.

---

27 (Pages 102 to 105)

Karin Maistrello
August 23, 2019