

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

October 23, 2019

**VIA ECF**
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:  Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (JGK)-DCF
           Position Statement of Strategic Vision Following October 22, 2019 Court Conference

Dear Judge Freeman:

    This letter briefly addresses the issues raised at the conclusion of the Court's October 22, 2019, call with the parties. Strategic Vision's position is that (1) Eastern Profit's last-minute request for an artificial time restriction of "one to two hours" effectively reneges on the agreement of Eastern Profit's prior counsel, making it impossible for Strategic to inquire into the vast majority of the subjects to which Eastern Profit already had agreed back in August; and (2) Strategic should be able to inquire into Disputed Topics 4 (the Guo cook-to-daughter transfer); 5 (whether Eastern had any independent financial identity); and 7 (whether Guo advised Eastern on related research, which would support Strategic's contract defenses and counterclaims).

    1.  **Eastern Profit cannot "start over" on discovery by abrogating an agreement reached after weeks of expensive and time-consuming negotiations.** This Court informed the parties during the weeks of transition between Eastern Profit's old and new counsel that the transition could not justify a substantial delay, and that new counsel could not seek a redo on discovery. Unfortunately, that is now happening. Over two months ago, Eastern Profit agreed to a third day of deposition to complete its Fed. R. Civ. P. 30(b)(6) testimony, and to work with Strategic Vision to finalize jointly-acceptable sub-topics.[1] During the weeks that followed, Strategic Vision engaged in extensive written and verbal negotiation with Eastern Profit, sometimes several times a week, through its then-counsel Zachary Grendi. All of the topics were reopened for negotiation with Mr. Grendi despite the fact that Eastern Profit had twice presented a witness on the topics without objecting to any of them. So long as Eastern Profit agreed to a third day of testimony, Strategic Vision had agreed not to pursue its mounting legal fees to complete the Eastern Profit corporate testimony. This was despite issues with Eastern's earlier witnesses (Yvette Wang, who was unprepared, and then Guo Wengui, whose testimony Eastern agreed to adopt, but who personally refused to be designated as such and then claimed to know almost nothing about Eastern Profit).

---

[1]     See ECF 141 ("Eastern has never resisted Strategic Vision taking a follow up 30(b)(6) deposition…").



Until Mr. Grendi lost authority to act several weeks before his official withdrawal, the parties made much progress. *See* ECF 141 (Eastern Profit letter reporting that "[a]s to the scope of the proposed follow up 30(b)(6), the parties have engaged in a vigorous discussion concerning the permissible scope of questioning …" and listing agreed areas as of August 20, 2019). They agreed to the contours of six topics. Within those topics, they agreed to numerous specific subjects. These topics have never been in dispute before this Court. By themselves, they will likely take several hours—not the "one or two" that Eastern requested at the end of the conference.

The parties then identified their differences, sorted them into seven categories, and with this Court's encouragement, made a second round of agreements to further narrow the dispute. They then discussed a possible final resolution, but talks ended in the first week of September when Mr. Grendi lost authority. Talks did not resume in earnest until phone calls on October 14 and 21, when Eastern first broached the topic of a time limit—but nothing as short as the "one to two hours" just suggested yesterday. At any rate, on October 21, Eastern and Strategic further whittled the already-narrowed disputed topics to the handful discussed with the Court yesterday. To be very clear, the new areas of agreement on October 21 will probably *themselves* consume the 1-2 hours Eastern now demands as the limit for the entire deposition—leaving no time at all for the 90% of the subject matter to which Eastern agreed back in August, long before new counsel were retained. Asking for a total limit of 1-2 hours utterly abrogates this prior agreement.

Strategic Vision has no interest in prolonging this—its third day of trying to obtain 30(b)(6) testimony undertaken at its own cost. Further, this is from a Golden Spring witness (widely identified as a longtime assistant to Guo) whom prior counsel represented was thoroughly prepared to answer for Eastern. If this is so, she simply refused to comply with her obligations, repeatedly telling counsel, "You should ask them," when presented with basic questions, such as whether Eastern had books and records. In the absence of functioning party discovery, Strategic has taken on the enormous expense of finding from non-party sources evidence that, had this been a normal case, would have been obtained at last winter's first 30(b)(6), or in a quick follow-up with a more forthcoming witness. Ordinarily, this kind of deposition would inform later, targeted discovery, rather than being a late-scheduled capstone, each subject of which must be painstakingly negotiated and briefed. Strategic wants to finish up, move on, and see if it still has time to use whatever information is obtained. If the questions can be finished before 7 hours (which is quite possible), they absolutely will be.

2. **This Court should err on the side of allowing discovery on the few remaining disputed issues, as they are relevant and "proportionality" does not require a party to concede that it will lose one of its claims without the requested information.** Rule 26 calls for consideration of both relevance *and* proportionality, and relevance is not limited to evidence that is sufficient and necessary to establish a required element of a claim or defense. "Information is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *Vaigasi v. Solow Mgmt. Corp.*, No. 11 Civ. 5088, 2016 WL 616386, at *11 (S.D. N.Y. Feb. 16, 2016).

Regarding topic 4 (see ECF 149, dated Sept. 3, 2019), Strategic Vision should be allowed to ask about the 2017 stock sale that transferred ownership of Eastern Profit from Chunguang Han to Guo Wengui's daughter. This goes to Guo's use of Eastern Profit concerning the Agreement.



Specifically, it would **broaden the scope of Guo's authority**, and preclude Eastern's current effort to claim (citing its own Amended Answer) that **only Guo's post-drafting statements** "concern the Agreement." In fact, all of Guo's conduct with Strategic is binding on Eastern Profit because **Eastern was his entity**. To be clear, Strategic Vision disagrees with Eastern's strained reading of the admissions made in its Answer. Under the standards of relevance and proportionality, though, Strategic should be able to prove Guo's control on the facts; that way, his agency covers the field. Strategic should not be forced to gamble its entire position on whether this Court will agree with Strategic's now-disputed interpretation of Eastern's Answer, or worse, to concede that Eastern's strained "limited-agency" reading of its Answer is correct, so that Strategic can **only** win if it proves Guo's control. Basic discovery into this one transfer between Guo's cook and daughter, just months before negotiations, can show that Guo exercised unchecked control over Eastern Profit, that his intentions are fully imputable to it, and that regardless of how one reads Eastern's Answer, Guo is always—not just sometimes—Eastern' agent, rendering all of his conduct with Strategic fully imputable to Eastern.

Topic 5 should allow Strategic Vision to explore the defense that it was not possible for Eastern Profit to be "damaged" by Strategic Vision's alleged conduct because Eastern Profit did not have a financial life of its own—no assets, true liabilities, or other indicia of a functioning corporate presence—and could not be harmed in a financial sense. Probably because Eastern Profit was a shelf company that Guo has now returned to the shelf, it did not seek contract damages that would evince some sort of ongoing activity or connection to the outside world. Instead, it chose to seek "return" of "its" contract deposit, relying on a late-produced ACA "loan" document that likely lacks a commercial basis. Eastern likely has no money to make payments or any history of doing business, and ACA, a Guo fellow-traveler which uses Golden Spring employee Karin Maistrello as its only natural-person director, likely knew this. Guo married Eastern Profit to ACA solely for the purpose of having the money transferred to Strategic Vision, and whatever Eastern Profit's damages, the "loss" of "its" $1 million is not among them. In short, the plaintiff should have to give basic discovery on its financial identity.

Finally, regarding topic 7, Strategic Vision's September 3, 2019 letter (ECF 149) has never received a full response, and it accurately states Strategic's position. Strategic Vision defends and counterclaims by alleging that Eastern frustrated its performance when it hired other researchers to investigate the same subjects—alerting the subjects. Similarly, Eastern relies on parol evidence to claim that Strategic was to deliver detailed reports on short notice—something that Guo probably never expected or obtained from the other work. Even if other research was obtained, it was likely not used for the purpose Guo represented to Strategic—to undermine the CCP. For all of these reasons, Eastern should testify regarding similar research for which Guo advised it or acted on its behalf, if any, from January 2015 to the present. Questions would be limited to the information necessary to establish the points stated in this paragraph.

Respectfully submitted,

Edward D. Greim
Attorneys for Defendant/Counterclaimant

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com