UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



EASTERN PROFIT CORP. LTD.,

                       Plaintiff,

         -against-

STRATEGIC VISION US, LLC,

                       Defendant.

18cv02185 (JGK) (DF)

**ORDER**

**DEBRA FREEMAN, United States Magistrate Judge:**

This Court's general pretrial supervision of the above-captioned action has required it to address a number of discovery disputes (involving both party and nonparty discovery), which this Court has generally sought to resolve through telephonic case management conferences. To that end, this Court held lengthy conferences with counsel for plaintiff Eastern Profit Corp. Ltd. ("Plaintiff"), defendant Strategic Vision US, LLC ("Defendant"), and nonparties Guo Wengui ("Guo") and Golden Spring (New York) Ltd. ("Golden Spring") (together, the "Nonparties") on August 21 and September 18, 2019, and with counsel for the parties on October 22, 2019. Still outstanding, following those conferences, are certain disputes regarding the scope and appropriateness of the discovery that Defendant is seeking from Plaintiff and the Nonparties, specifically:

        **(1)**    **As to Plaintiff:**

                the permissible scope of Defendant's continued deposition of Plaintiff's corporate witness under Rule 30(b)(6) of the Federal Rules of Civil Procedure;

**(2)** **As to nonparty Guo:**

    (a)    whether Guo should be compelled to sit for a continued deposition by Defendant and, if so, the permissible scope of that deposition, and

    (b)    what, if any, documents or electronically stored information Guo should be required to produce to Defendant pursuant to a subpoena; and

**(3)** **As to nonparty Golden Spring:**

    (a)    the permissible scope of Defendant's deposition of Golden Spring's Rule 30(b)(6) witness, and

    (b)    what, if any, documents or electronically stored information Golden Spring should be required to produce to Defendant pursuant to a subpoena.

Having heard argument from counsel for the parties and the Nonparties, and having also reviewed the parties' and Nonparties' submissions on these issues (*see* Dkts. 132, 144, 148, 149, 150, 151, 152, 153, 154, 155, 156, 158, 159, 164, 165, 166, 167, 168, 171, 175, 177, 186, 187), the still-pending discovery disputes are hereby resolved as set forth below.

## Plaintiff's Continued Rule 30(b)(6) Deposition

During the October 22, 2019 telephone conference, counsel for the parties informed this Court that they had largely agreed on the scope of the continued deposition of Plaintiff's Rule 30(b)(6) witness, Yvette Wang ("Wang"), and that only certain topics (out of the seven originally proposed by Defendant) remained in dispute. The Court ruled orally that Defendant's second proposed topic (*see* Dkt. 149, at 4), which generally related to nonparty Golden Spring, rather than to Plaintiff, was an inappropriate topic for the questioning of *Plaintiff's* corporate representative, and accordingly denied Defendant's request to inquire of Wang, in her capacity as Plaintiff's corporate representative, regarding who is employed by Golden Spring, for whom

Golden Spring works, or what kind of work it does.[1]  The Court reserved judgment on aspects of

Defendant's fourth, fifth, and seventh proposed topics (*id.*, at 5-6) until the parties had made

further written submissions.  Having now reviewed those submissions (Dkts. 186, 187), the

Court rules as follows:

As to the fourth topic, the Court finds that Defendant has not demonstrated the relevance

of a 2017 transaction in which Han Chunguang ("Chunguang") transferred sole control of

Plaintiff to Guo's daughter. (*See* Dkt. 149, at 5.) Defendant has argued to this Court that, in

order to prove its fraud counterclaim against Plaintiff, Defendant needs to be able to impute

Guo's purported fraud to Plaintiff, and, to that end, Defendant needs evidence that Plaintiff is

merely Guo's "shelf" corporation, dormant unless needed by Guo for a specific transaction.

Defendant, however, has not explained under what legal theory such evidence would be

necessary or even relevant to its fraud counterclaim.  As Plaintiff points out, it has already

admitted, among other things, that Guo "was acting [as] [Plaintiff's] agent in negotiating [the]

contract" between the parties (Dkt. 187, at 2), and, under well-established principles of agency

law, a corporate agent's conduct, including conduct amounting to fraud, is presumptively

imputed to the corporation, *In re ICP Strategic Credit Income Fund Ltd.*, 568 B.R. 596, 610

(S.D.N.Y. 2017). Therefore, this Court is not persuaded that Defendant would "need to prove"

that Plaintiff is Guo's shelf company in order to establish that Guo's conduct with respect to the

contract at issue should be imputed to Plaintiff.  Accordingly, on relevance grounds, Defendant's

---

[1] Although Defendant did not explicitly raise to this Court the issue of whether it should
be permitted to ask Wang these questions in her capacity as *Golden Spring's* corporate
representative, a fair reading of Defendant's submissions implies that it seeks to do so, and the
Court will allow Defendant to pursue this line of questioning when Wang is deposed on behalf of
Golden Spring.

request to inquire of Defendant regarding the circumstances of the reported 2017 transfer of Plaintiff is denied.

Defendant's fifth proposed topic seeks testimony on whether Plaintiff "ha[s] any independent financial identity." (Dkt. 186, at 1; Dkt. 149, at 5.) Defendant contends that information on this topic is relevant to its defense to Plaintiff's claim for restitution, as it could allow Defendant to show that Plaintiff has no assets or liabilities, and thus (according to Defendant), that it could not have suffered any damages from Defendant's alleged breach of contract. The Court has expressed its skepticism of this legal theory, and Defendant has cited no authority to support its position on the point, despite having had several opportunities to do so. (*See, e.g.*, Dkt. 186, at 3.) In any event, the Court has already allowed Defendant to inquire into the means by which it was paid for the work it performed under the contract, including by allowing Defendant to ask witnesses about the source of that payment, which Plaintiff has characterized as a loan that it received from ACA Capital ("ACA"). To the extent Defendant seeks to inquire further regarding Plaintiff's financial situation, its request for leave to do so is denied, again for failure to establish relevance.

Defendant's seventh proposed topic is primarily related to research that Guo (through Plaintiff) allegedly commissioned firms other than Defendant to conduct, regarding the same targets that Defendant was engaged to investigate under the parties' contract. (Dkt. 149, at 5-6; *see also* Dkt. 148, at 6.) Defendant alleges in its counterclaim that Guo deliberately hired other researchers to surveil the same targeted individuals as Defendant was told to surveil, thereby creating a "security risk" and frustrating Defendant's ability to perform under the contract. Although the Court is somewhat skeptical of this allegation, it appears to be grounded in facts of which Defendant has first-hand knowledge, and it is directly related to Defendant's contract

4

defenses and counterclaim. Therefore, the Court will allow Defendant to ask Plaintiff's Rule 30(b)(6) witness about its engaging other firms to conduct the particular research in question. The Court, however, agrees with Plaintiff that Defendant should not be permitted to inquire about "similar research for which Guo advised [Plaintiff] . . . from January 2015 to the present" that was not related to the same subjects as Defendant was investigating. (*See* Dkt. 186, at 3.) While, for discovery purposes, this Court has accepted that Plaintiff's (or Guo's) hiring of other firms to research the same subjects as Defendant was engaged to research could have frustrated Defendant's performance of the parties' contract, which would be relevant to Defendant's breach-of-contract defenses and counterclaim, the Court does not perceive how research *not* directed to those subjects would be similarly relevant.

One final issue in dispute regarding Plaintiff's continued Rule 30(b)(6) deposition is the permissible length of that deposition. Plaintiff first raised this issue briefly in the October 22, 2019 telephone conference with this Court, and has since elaborated that it believes the continuation of the deposition should be limited to two hours. (Dkt. 187, at 3.) The Court, however, finds that such a limitation would be unduly restrictive, given that Plaintiff has not seriously contested Defendant's allegations that, during the initial day of her deposition, Wang was unprepared and could not answer basic questions about the company on behalf of which she was testifying. Accordingly, Defendant may have another seven hours to complete the deposition of Wang, but the Court expects that this time will be sufficient to enable Defendant's counsel to question Wang both in her capacity as Plaintiff's Rule 30(b)(6) representative and, separately, as Golden Spring's Rule 30(b)(6) representative (as discussed further below) – with the division of time to be determined by Defendant's counsel, as he sees fit. Defendant's counsel, however, is cautioned to use his time prudently, and to keep his questioning focused on

5

the topics that have been agreed by the parties or that the Court has otherwise held to be permissible. Defendant is further cautioned that, absent extraordinary circumstances, this Court does not intend to permit a further continuation of this deposition.

## Guo's Continued Deposition

As an initial matter, this Court finds that Defendant has demonstrated that compelling Guo to sit for a continued deposition on at least some topics is justified and likely to lead to the discovery of évidence relevant to Defendant's pleaded defenses and counterclaims. With respect to the topics on which Guo may be questioned during the deposition, this Court limits its review to the four general topics outlined in Defendant's letter of September 3, 2019. (Dkt. 148.)

As to the first of those topics (*id.*, at 2), Defendant may question Guo about his communications and negotiations with officials of the Chinese Communist Party or the Chinese government that took place in the six months prior to the execution of the contract at issue in this case. Transcripts of Guo's recorded statements and conversations provided to the Court demonstrate that there is at least some ambiguity in the nature of Guo's relationship with the Communist Party, and the Court finds that the transcripts are sufficiently relevant to Defendant's fraud counterclaim to justify inquiry. Defendant may examine Guo both about recordings transcribed from YouTube or other public sources and about the existence of additional recordings or other documentation of his communications with either Chinese government or Communist Party officials, but, because of the seeming frequency with which Guo reportedly recorded his conversations, and to keep Defendant's inquiry reasonably limited in scope to the claims and defenses raised in this action, this Court will limit the deposition questioning to an exploration of communications occurring within the six months before the parties' contract was executed.

6

The second deposition topic proposed by Defendant is Guo's personal history and his reasons for coming to the United States. (*Id.*, at 3-4.)  Defendant has not demonstrated the relevance of this topic.  Although Defendant makes several allegations in its counterclaim that Guo has made inaccurate statements about his life story, it appears that Defendant can already show that these statements were inaccurate based on publicly available information, and thus the Court cannot conclude that further questions on this topic are proportional to the needs of the case.  Furthermore, a large portion of Defendant's proposed questioning relates to its suspicion that Guo has used ACA to transfer money in and out of Hong Kong (*id.*, at 4-5), which Defendant contends is inconsistent with what a true dissident would be permitted to do by Chinese and/or Hong Kong authorities.  Defendant and the Nonparties have separately briefed this issue at this Court's invitation, and, having reviewed that briefing, the Court is unconvinced that the ability or inability of Guo to move money in and out of Hong Kong, using ACA or other means, is relevant to any of Defendant's asserted defenses or counterclaims.  Therefore, Defendant's request for leave to question Guo regarding the second identified deposition topic is denied.

The third deposition topic proposed by Defendant mirrors one of the topics discussed above with respect to Plaintiff's Rule 30(b)(6) deposition:  research that Guo may have commissioned firms other than Defendant to perform, with respect to the same targets as Defendant was supposed to investigate under the parties' contract. (*See id.*, at 6.)  Consistent with its above ruling with respect to Plaintiff's deposition, the Court will allow Defendant to ask Guo about his allegedly hiring other research firms to perform the same work as Defendant.  The Court, however, will not allow Defendant to ask about an extension of this topic – Guo's ultimate use (or non-use) of any research he received. (*Id.*)  Defendant's various explanations

7

for this line of questioning (*see* Dkt. 154, at 8) are highly speculative and are unrelated to the allegations in its counterclaim.

Finally, as its fourth proposed deposition topic, Defendant seeks to ask Guo about his relationships with "key witnesses" William (Bill) Gertz ("Gertz") and Lianchao Han ("Han"). (Dkt. 148, at 7.) As these witnesses are alleged to have been involved in the negotiation and execution of the contract at issue, Defendant may ask Guo about his relationship with them, but Defendant's counsel's questions should not expand far beyond those proposed in his letter to the Court. (*Id.*)

## **Documents and Electronically Stored Information Sought from Guo**

In addition to testimony, Defendant has subpoenaed Guo for documents, recordings, and internet postings involving a number of different individuals and related to several different topics. (Dkt. 155.) Although Defendant discusses its demands in terms of four separate subpoena requests, there is significant overlap among the requests, and the Court will therefore address them together. Guo is directed to produce any audio recordings, video recordings, or documents reflecting (1) communications between Guo and either French Wallop ("Wallop"), Mike Waller ("Waller"), Wang, Han, Chunguang, or Gertz regarding or reflecting representations Guo or his agents made to Defendant in the course of their negotiation of the contract at issue, or (2) communications between Guo and officials of the Chinese Communist Party or the Chinese government that took place in the six months before the contract was executed. To the extent Defendant requests that the Court compel production of other recordings or documents described in the subpoena, Defendant's request is denied.

8

## Golden Spring's Rule 30(b)(6) Deposition

Defendant has asked the Court to compel Golden Spring's Rule 30(b)(6) witness to testify on certain topics, including all of the same topics on which Plaintiff's corporate witness will testify. (Dkt. 156, at 3.) It appears from Golden Spring's response to Defendant's request that it has consented to its witness testifying on any topics to which Plaintiff has agreed. (Dkt. 158.) This Court presumes that, although its letters do not address the issue, Golden Spring is taking the position that it will also be bound by (and thus will not separately object to) the Court's rulings, above, as to the topics on which the parties could not agree. Therefore, the only remaining dispute as to the scope of Golden Spring's deposition is whether its witness may be asked about Golden Spring's dealings with Plaintiff, ACA, and Guo between January 1, 2017 and July 1, 2019. (Dkt. 156, at 3.) Consistent with its ruling regarding the scope of Guo's deposition, this Court finds that Defendant has not demonstrated that Golden Spring's dealings with ACA are relevant to its asserted counterclaims or defenses. Defendant may ask Golden Spring's witness about its dealings with Plaintiff and Guo during the specified period, but, so as to keep the deposition focused on issues relevant to the parties' claims and defenses, only insofar as those dealings relate to the negotiation, execution, or performance of the contract at issue.

## Documents and Electronically Stored Information Sought from Golden Spring

Defendant has sought several categories of documents and recordings from Golden Spring pursuant to a subpoena. (Dkt. 156.) First, Defendant requests that the Court compel the production of documents related to or reflecting Golden Spring's or Wang's involvement in the negotiation or performance of the contract at issue. (*Id.*, at 3.) Based on the representation of counsel for the Nonparties that all documents in Golden Spring's possession, custody, or control

9

that are responsive to this demand were provided by Golden Spring to Plaintiff, which then produced them to Defendant (Dkt. 158, at 2), this request is denied.

Defendant also seeks documents showing the "relationship" of "potential witnesses" in this case to Golden Spring and documents showing the ownership of Golden Spring. (Dkt. 156, at 4.) Given the tangential relevance of such information to the claims and defenses raised in this case, as well as the vagueness of Defendant's request as framed for the Court, the Court will not compel the production of such documents. The Court will, however, permit Defendant's counsel to ask Golden Spring's Rule 30(b)(6) witness general questions about whether particular witnesses are employed by Golden Spring and, if so, what their respective positions are, as well as basic questions about Golden Spring's ownership and organizational structure. As stated above, Defendant may also inquire generally about for whom Golden Spring works and the type of work it does. (*See supra*, at n.1.)

Defendant further seeks documents pertaining to Golden Spring's or Wang's "investigative work," between January 1, 2017 and July 1, 2019, with respect to (a) the same subjects Defendant was told to research, (b) suspected dissidents, or (c) Communist Party members. (Dkt. 156, at 4.) The Court has already determined that certain of Defendant's inquiries to Plaintiff and/or to Guo on these or related topics would be permissible, but it finds that allowing Defendant to further expand the scope of discovery to include documents from Golden Spring would be disproportional to the needs of the case. Therefore, the Court will not compel Golden Spring to produce documents on this topic.

Lastly, Defendant seeks production of any recordings of various individuals apparently associated with Guo or Golden Spring that are related to "this litigation, the underlying research project, or the activities set forth in the Counterclaim." (*Id.*) Defendant's request is overbroad

and largely disproportional to the needs of the case, but, consistent with its ruling as to the

recordings sought from Guo, the Court will order Golden Spring to produce any recordings

containing statements of Guo, Wang, Chunguang, or Han[2] regarding or reflecting representations

Golden Spring or its agents made to Defendant in the course of their negotiation of the contract

at issue.

## Conclusion

For the reasons stated above, it is hereby ordered as follows:

(1)     Defendant will be permitted to question Plaintiff's
        Rule 30(b)(6) witness within the parameters established
        by any agreement between counsel or by this Order;

(2)     Guo shall appear for a continued deposition on
        November 11, 2019 (or on such other date as may be
        agreed by Defendant and Guo) at the time noticed by
        Defendant, and Defendant will be permitted to question
        Guo within the parameters established by any agreement
        between counsel or by this Order;

(3)     Guo shall produce to Defendant any audio recordings,
        video recordings, or documents reflecting:
        (a) communications between Guo and either Wallop,
        Waller, Wang, Han, Chunguang, or Gertz regarding or
        reflecting representations Guo or his agents made to
        Defendant in the course of negotiating the contract at issue;
        or (b) communications between Guo and officials of either
        the Chinese Communist Party or the Chinese government
        that took place in the six months before the contract was
        executed;

(4)     Defendant will be permitted to question Golden Spring's
        Rule 30(b)(6) witness within the parameters established by
        any agreement between counsel or by this Order; and

_____

[2] Golden Spring's counsel has represented to the Court that her client already searched
for recordings of Wallop or Waller, and that no such recordings were found.

11

(5)    Golden Spring shall produce any audio recordings
containing statements by Guo, Wang, Chunguang, or Han
regarding or reflecting representations Golden Spring or its
agents made to Defendant in the course of negotiating the
contract at issue.

In light of the parties' representations regarding their agreements on the scope of certain

discovery, this Court's prior rulings on the record of discovery conferences, and the provisions of

this Order, the Clerk of Court is directed to close Dkts. 132 and 187 on the Docket of this action.

Dated:  New York, New York
       October 28, 2019

SO ORDERED

_____

DEBRA FREEMAN
United States Magistrate Judge

Copies to:

All counsel (via ECF)

12