```
                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF NEW YORK

In re:                                :
                                           Docket #18cv2185
 EASTERN PROFIT CORPORATION           : 1:18-cv-02185-JGK-DCF
 LIMITED,
                      Plaintiff,      :

  - against -                         :

 STRATEGIC VISION US, LLC, et al.,    :
                                        New York, New York
                      Defendants.     : November 8, 2019

------------------------------------- : TELEPHONE CONFERENCE


                        PROCEEDINGS BEFORE
                THE HONORABLE DEBRA C. FREEMAN,
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE


APPEARANCES:

For Defendant -           GRAVES GARRETT, LLC
Strategic Vision          BY: EDWARD GREIM, ESQ.
US, LLC:                       JENNIFER DONNELLI, ESQ.
                          1100 Main Street, Suite 2700
                          Kansas City, Missouri 64105

For Counter Defendant -   HODGSON RUSS LLP
Guo Wengui:               BY: ERIN TESKE, ESQ.
                          605 Third Avenue, 23rd Floor
                          New York, New York 10518




Transcription Service: Carole Ludwig, Transcription Services
                       141 East Third Street #3E
                       New York, New York 10009
                       Phone: (212) 420-0771
                       Email: Transcription420@aol.com

Proceedings recorded by electronic sound recording;
Transcript produced by transcription service.
```

**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** | **Court** |
|---|---|---|---|---|---|
| None | | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

1

```
                                                                  3
            THE COURT:  Hi, it's Judge Freeman.
            MR. EDWARD GREIM:  Judge Freeman, good afternoon
or almost evening, this is Eddie Greim and Jennifer Donnelli
for Strategic Vision, and with me is Erin Teske for Mr. Guo
--
            MS. ERIN TESKE:  Hi, Your Honor.
            THE COURT:  So I gather we don't have
plaintiff's counsel.
            MR. GREIM:  We don't, although it's a question
of whether Mr. Guo will be produced on Monday.
            THE COURT:  Right, but plaintiff's counsel
might have an interest in appearing for a court
conference on a topic that is at least relevant to the
case. Have you been in touch, I mean shoe on the other
foot, if  you were plaintiff's counsel and a nonparty
you might want to hear what's going on.  Have you put
in a call to say we're going to contact the Court and
do you want to be part of that conversation?
            MR. GREIM:  Your Honor, all I've done is
emailed MS. Teske saying we're going to call the
Court, I did not separately call Ms. Cline, I'm
feeling like it's a bit of an emergency but I am happy
to do that.  I'm happy to see if we can find her at
her office and, in fact, while you were talking Ms.
```

                                                                4

Donnelli ran to her office to try to get through to her.

THE COURT:  All right, well tell me, see if you can, since you've got somebody on it, see if you can, in fact, scare up opposing counsel, but tell me what the, you know, quickly what the issue here is? Somebody is suddenly unable to show for an agreed date or that's not what's happening?

MR. GREIM:  Your Honor, I received a letter about forty minutes ago from Ms. Teske saying that Mr. Guo cannot appear on Monday for the deposition that we noticed for him.  You might recall that he was originally noticed for, I think it was October the 29th but we reached out when we had not received an order from the Court and asked that we move it back a little bit because there just wouldn't have been time for, you know, even if we got an order I think on that day, which was, oh, I think it was October the 22nd or something, we wouldn't have had time to get the documents from Mr. Guo before his deposition. And we also would have had, you know, costs and things to cancel the court reporter. And so we asked for dates, we couldn't get dates, and so we said, look, we're going to be there for Han Chunguong (phonetic) on

```
 1                                                              5
 2   November the 11th, we're going to notice it for
 3   November the 11th, if you have a different date that
 4   works better, tell us but, you know, we've got to keep
 5   this on the calendar.  So two weeks ago we noticed
 6   this for November the 11th.
 7           We've been conferring with the parties about
 8   the place to do this and, Your Honor, I mean I
 9   literally just got a letter saying he can't appear and
10   saying that instead he will sign a six paragraph
11   affidavit saying that he doesn't have any of the
12   documents and, you know, he's had no communications,
13   that, you know, the answers the questions.  And it's
14   unsigned, it's a proposed affidavit.  And so, Your
15   Honor, okay, and by the way, Ms. Donnelli comes back
16   and says that Ms. Cline, who is the counsel for
17   Eastern Profit, did not pick up, although she was on
18   an email chain with Ms. Teske and I just in the last
19   half hour.
20           So, Your Honor, I don't know what to do with
21   this, I mean it's less than a business day before this
22   deposition.  I spoke with Ms. Teske before we called
23   the Court and I asked when did you learn that November
24   the 11th didn't work, can you give me some other dates,
25   and the answer was, you know, they won't tell me, when
```

```
1                                                                6
2    they learned that November the 11th didn't work, and
3    they're not prepared to give me any other dates for
4    Mr. Guo.  I mean I just, I can't work with this with
5    scheduling, I just can't do it, we're still, we've
6    noticed Goldman Spring to go on the morning of the
7    12th, we've asked for dates, we've heard nothing on
8    that, we're planning to take it on the 12th but now I'm
9    worried that maybe nobody will show up or we'll get a
10   letter that that date doesn't work.
11               I don't know what to do, I just would ask --
12               THE COURT:  Let me hear on the other side.
13               MS. TESKE:  Your Honor, the 11th was never an
14   agreed date, I just found out this week that my client
15   is not available, and I was working up an affidavit
16   that states, Your Honor in your order had identified
17   just three topics that are permitted in Mr. Guo's
18   deposition.  And it's communications within six months
19   prior to the execution of the contract with the
20   Chinese Communist Party or government officials.  Mr.
21   Guo has proposed signing an affidavit that says he has
22   had none.  And whether Mr. Guo hired a research firm
23   to perform the same work as defendant, that's the
24   second topic, Mr. Guo is prepared to sign an affidavit
25   that says he didn't and didn't ask anyone else to.
```

```
                                                         7
```

And the third topic was his relationship with Dilbert and (indiscernible) Han and if there was a financial relationship and he's prepared to say I'm acquainted with them. I don't have, nor have I ever had a financial relationship with them.  And, by the way, both of those individuals have testified to the same effect.

So the affidavit essentially closes any discovery topics that are available and he can't make it on the 11th.  And I've also been responding, by the way, to subpoenas that were issued by Strategic to Google and AT&T and T-Mobil looking for over three years' worth of telephone information, private account information, billing information and geographic tracking information for these nonparties.

THE COURT:  Well, hold on a second, what about, I don't have it in front of me but what about the aspect of my ruling which indicated that, yes, Mr. Guo could be questioned about the transcript or transcripts of the recorded conversations?

MS. TESKE:  There aren't any within the six months before the contract was signed and back to the time period they told me to do.

MR. GREIM:  Your Honor, that is an, I just

                                                                    8

noticed, I mean we've got our outline ready and all of our things to play for him, but your order does say six months before the execution, and the transcripts that we gave you, the key transcripts, so actually just over, they're from May. So if you count back six months it actually goes to I guess June, I might be wrong.

   THE COURT:  I was under the impression that there were a host of recordings, there were so many potential recordings that it would potentially be burdensome to have everything translated, that we're talking potentially about, you know, some enormous number of things and so I wanted to put some reasonable limitation on it and I picked six months as just a reasonable limitation because I thought that every conversation he had might be recorded and from the way defendant's counsel was talking, it sounded to me like there might be quite a lot of them.  I wasn't really intending to say that the one that you had couldn't be questioned, you couldn't question about the one that you had. I was just trying to have some kind of reasonable limit. So if there isn't something that was six months, but it was seven months, and, you know, it would fit within a category that I described,

                                                                    9

I would allow questioning on it.

          MR. GREIM:  Yeah, Your Honor, and we don't exactly know what he has, we know that these exist and you can tell that, I mean you remember reading the transcripts, they kind of, you can't tell that they really start at the start and end at the end. And so we wanted, you know, to us that's the key period. There might have been something afterwards. And then there's a letter that he sent in August and, you know, like this proposed affidavit, if it's true, it suggests that that letter is not from him. I mean I've asked --

          THE COURT:  I'm sorry, a letter that he, what are you talking about, a letter that he sent?

          MR. GREIM:  Yeah, I'm sorry, I know I'm jumping in the weeds here. This is a letter from August from Guo to the Chinese leadership that we quoted in our complaint, and then it's one of the things that we've cited to you where he makes these pledges of what he'll do and not do.  And that we think shows his continuing relationship, that's from August.  And so that actually would be within your order, but just looking at the draft six paragraph affidavit I'm getting from Guo's counsel, they're

```
 1                                                          10
 2  saying, you know, he's saying I have no
 3  communications, you know, after June.  And so then yet
 4  we have a video clip of him appearing on TV walking
 5  through the letter.
 6           So, I mean, look, an affidavit, it would be
 7  wonderful if we could close off discovery with a six
 8  paragraph affidavit, but what about the things that we
 9  already have.  We have to be able to examine him about
10  this and, I mean at least about the transcripts that
11  we have.  We didn't frankly think Your Honor meant to
12  cut those off because --
13           THE COURT:  Wait, wait, how many transcripts
14  do you already have and how far back do they go before
15  the date of the execution of the contract?
16           MR. GREIM:  Your Honor, we have one from March
17  where he's on the phone, then we skip ahead, we've got
18  two from May, then we have one from August and I
19  believe we've got one that we're not sure of the time
20  frame of him talking with Yan Ping Wang (phonetic)
21  about research. And we don't actually know the time of
22  that.  But those are the -- now we have other ones
23  that we're not going to inquire into because they're
24  not potentially with Chinese Communist Party but those
25  are the ones we have.  And those are the ones we
```

wanted to get into.

     MS. TESKE:  Your Honor, we are not able to authenticate any of those except for the May of 2017 conversation.

     MR. GREIM:  Although I'd like to be able to ask him that, I mean I understand counsel has said that on the phone to the Court and this is the second time, but I want to be able to ask this witness about this, and most importantly, I mean, you know, we were going to take him, not even take close to a full day frankly, right after Han Chunguong on Monday. I mean our own schedules are getting hard, I thought November 29th would give us, you know, almost too much time, but I thought surely we won't have a problem with that, and our dates keep falling through.

     You know, I want to press him on these. I mean how --

     THE COURT:  All right.  Okay.  Six months back from the date of the execution would have taken you to June and you've got one in March and two in May of what you currently know about, is that right?

     MR. GREIM:  Right.

     THE COURT:  All right, look, I'm going to give you an oral modification to my order to allow you to

```
                                                              12
 1
 2   cover this period back to March, to cover the
 3   transcripts you have.  I'm going to allow defense
 4   counsel to pose questions and not simply accept an
 5   affidavit.  If he is not available on that date you
 6   have to come up with another date.  Please do so in a
 7   way that allows this discovery to get to a reasonable
 8   conclusion.  If you need a carve-out from the schedule
 9   to finish a deposition or two because you've been
10   crunched, rather than defend the discovery deadline I
11   would be inclined to allow a carve-out for a
12   deposition or two, if you run into scheduling
13   problems, I'll do a deposition or two.  Please tell
14   your adversary I said these things, and if your
15   adversary wants to be heard, please let counsel know
16   that I will hear from all parties and I do not, it's
17   not really my intention to make ex parte rulings that
18   affect the overall schedule for a case because I'm
19   sure all parties would want to be heard on that.  So
20   if counsel wants to be heard, absolutely, counsel can
21   be heard please get that message across, okay?
22           MR. GREIM:  We'll do it right away, Your
23   Honor.  And before we go, I guess I want to be sure
24   that we, and I hate to do this, but we've got Golden
25   Spring noticed for the morning of the 12$^{th}$ in New York
```

                                                              13
and I guess I want to know can I stay in New York and
will Golden Spring show up because that's Ms. Teske's
client, as well.
          THE COURT:  So you will be traveling --
          MS. TESKE:  Yes, Golden Spring will be there
(indiscernible).
          THE COURT:  Okay, now with respect to Mr. Guo,
I'm not sure what happened, why there was a deposition
noticed and you said it was never agreed or confirmed,
I don't know how we can be this close to a date
without having counsel on the same page as to whether
a deposition is happening or not.  I haven't seen the
correspondence on that, I don't know exactly what was
said, but, you know, if a deposition is noticed and if
it's not objected to and it's not made clear that
someone is not going to be here, the expectation can
be the person will be there, that's how notices work
unless something else is negotiated or it's made clear
that the person cannot be there that day.  So subject
to confirmation as to what actually was said between
the parties, you know, there is a potential here for
Mr. Guo to have to foot the bill for the court
reporter if that can't be cancelled without a fee.
Because, you know, you've got to make it clear.

```
                                                              14
 1
 2              Now maybe there was correspondence, or there
 3   were telephone conversations or something where it's,
 4   listen, we can't confirm that date, we'll let you know
 5   as soon as we can but we really, you know, please
 6   don't bet on it, and so on.  But, you know, if
 7   something is noticed for a certain day, unless it is
 8   changed, there's a protective order, there's a
 9   stipulated agreement otherwise, and obviously I expect
10   cooperation between counsel to try to work with each
11   other's schedules and the witnesses' schedules.  That
12   if you don't have anything that tells me that it's
13   been altered or at least that there's an understanding
14   that somebody won't be there, then the risk is that if
15   the other side unnecessarily incurs costs because of
16   that, that it should be on the party that was a no
17   show.
18              So please have good communication and don't
19   find yourself in that kind of a position. I'm not
20   about to rule right now, but, you know, you've got to
21   be on the same wavelength about what's going on here.
22              MR. GREIM:  Your Honor, you spent, I mean we
23   don't want to bring anything to you, we're going to
24   jump on the line, we don't want to present that issue
25   to you, as well, we'll try to get it worked out.
```

```
                                                               15
 1
 2               THE COURT:  All right, so go work it out --
 3               MS. TESKE:  Your Honor, can we get a --
 4               THE COURT:  Can you get a way?
 5               MS. TESKE:  Can we get a time to discuss with
 6   the Court at a later date the outstanding subpoenas to
 7   nonparties?
 8               THE COURT:  Are the nonparties moving to
 9   quash?  Are you representing them?
10               MS. TESKE:  Yes.  Well we have submitted two
11   orders now on behalf of Mr. Guo and GSHY to discuss
12   the subpoenas that were issued to Google and AT&T And
13   T-Mobil requesting geographic tracking information,
14   phone call information for over three years, billing
15   information concerning the accounts of our client.
16               THE COURT:  Okay, so this is Mr. Guo's
17   personal information and so he is moving to quash
18   those subpoenas?
19               MS. TESKE:  Right, and GSNY's and Gina Zwang's
20   (phonetic) as well.
21               THE COURT:  Well I'll rule that they don't
22   have to produce the information until I rule on the
23   questions so that you don't have cat out of the bag,
24   but I'm not sure that these matters are fully
25   submitted as motions to quash.  Where do we stand on
```

```
                                                             16
it?
          MR. GREIM:  Your Honor, I mean we've been
asking saying we will meet and confer on this, there's
been no effort to talk to us at all.  And I mean I
understand another letter came through today. My first
thing I read was the thing about Mr. Guo, we have the
other letter that was apparently filed, I'm not even
sure what it covers. But I mean we're will to set
times, I mean I've dealt with the frustration of
trying to get everyone together, we'll set times to
argue it, but first I need to hear from Ms. Teske and
actually have a phone call to talk about it because
we've heard nothing.
          THE COURT:  Well, Ms. Teske, you should --
          MS. TESKE:  Your Honor, I'm just looking for a
time to discuss it in the future.
          THE COURT:  I understand, but, number one, I'm
saying that they don't have to respond till the issues
get resolved.  Number two, I'm going to direct a full
good faith conference to see what you can work out
because you may be able to narrow these things and
either get them off my plate altogether or get them
sufficiently narrowed that it's a much shorter
conversation. Three, we're still missing a lawyer who
```

17

might want to have a say about things if they're, or even not a say, just be present in a conference on this case, and I would really want to make sure everybody is included. And I don't have argument from both sides even if it needs to be in front of me.

So I'm not even sure how long it's going to take to get it teed up or how much time would be needed. What is your close of discovery, the end of November?

MR. GREIM: Yes, Your Honor.

THE COURT: I could reserve some time, assuming you can get it all briefed, either the afternoon of the 14th or the morning of the 20th. Talk to everybody else, talk to each other, okay, I don't, this is not a criminal case where I see, you know, warrants for tracking information, you know, GPS location information, that sort of thing. Even in that context when there are criminal investigations we are very conscious of treading carefully in those sorts of areas, you know, so it's not an ordinary kind of information for a subpoena in a simple case. And I think you need to, on defendant's side, really figure out what is it you need with specificity and why, and what specifically is it relevant to in terms of not

```
                                                              18
 the general subject matter of the action, but a
 particular claim or defense that had been raised.  And
 please be prepared to discuss narrowing these
 subpoenas with the counsel for the subpoenaed parties,
 nonparties, okay?
          MS. TESKE:  Your Honor, may I represent to
 AT&T and T-Mobil and Google that the Court has asked
 that they withhold production until you can rule on --
          THE COURT:  That's what I said.  Yes, you may,
 I'm expecting that on any that are being challenged,
 they do not have to respond until there's a ruling,
 get everything teed up for a ruling, but only after
 you fully conferred in good faith to try to work it
 out yourself, or at least to narrow the dispute or
 disputes.  I don't want to rule on something before
 you've had a chance to confer to see if you can work
 it out on Your Honor, or at least get it more
 manageable in terms of what's in front of me.
          Okay, so go talk about it.
          MS. TESKE:  Thank you, Your Honor.
          THE COURT:  If you want one of those times
 after you've conferred with everybody and conferred
 with each other, I'll reserve one of those times for
 you.  Do you want a --
```

```
                                                              19
       MS. TESKE:  Thank you, Your Honor.
       THE COURT:  Okay?  All right, let me know.
       MR. GREIM:  Thank you, Your Honor.
       THE COURT:  You're welcome.
       MR. GREIM:  Have a good weekend.
       THE COURT:  All right, bye-bye.
       (Whereupon the matter is adjourned.)
```

```
 1                                                          20
 2                        C E R T I F I C A T E
 3
 4          I, Carole Ludwig, certify that the foregoing
 5   transcript of proceedings in the United States District
 6   Court, Southern District of New York, Eastern Profit
 7   Corporation Limited versus Strategic Vision US, LLC, et al.,
 8   Docket #18cv2185, was prepared using PC-based transcription
 9   software and is a true and accurate record of the
10   proceedings.
11
12
13   Signature____*Carole Ludwig*_____
14                Carole Ludwig
15   Date:   November 14, 2019
16
17
18
19
20
21
22
23
24
25
```