

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

November 27, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re: **Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (JGK)-DCF**
**Opposition to Non-Party Request to Stay Discovery**

Dear Judge Freeman:

We are in the final lap of discovery and oppose this last-minute request to throw a wrench in the works. Last night's letter (ECF 208) seeking a stay of all non-party discovery, filed on behalf of Guo Wengui, Golden Spring New York, and Karin Maistrello, should be denied. Guo should appear for his long-noticed deposition on December 4, 2019, and answer not only the questions ordered by this Court, but also questions on ACA and on GSNY. Further, Mr. Bannon should be deposed as currently noticed on December 5, 2019. With this, discovery should close and the parties will prepare for their anticipated cross-motions for summary judgment, which Strategic believes will cover all of the parties' claims.

1. **Guo's latest gambit is simply a bid to terminate discovery before he, GSNY, and the other remaining witness have to give meaningful, Court-ordered testimony.** Ever since this Court made clear at its September 18, 2019 conference that "I think there's probably enough to have him come back," (ECF 178, 7:2-3), Guo has refused to cooperate in setting his deposition. Not once since August 2, 2019 has Guo voluntarily[1] provided dates for his continued deposition—even after this Court ordered him to reappear and testify and produce documents on his communications with CCP or PRC officials during the 6 months before the contract was entered (ECF 189).

Not even this Court's order prompted Guo to provide new dates. For reasons the parties have already discussed with the Court, on October 25, 2019, Strategic re-noticed Guo's deposition for Monday, November 11, 2019. Guo then waited for over two weeks and wrote Strategic near the close of business on Friday, November 8, claiming he would be unavailable, prompting an emergency call with this Court. Guo's counsel was unprepared or unwilling to say why he was unavailable, when this unavailability had been discovered, and what additional dates would be

---

[1] Guo provided the date of October 30, 2019, but only after Strategic Vision was forced to write the Court to compel Guo's cooperation after requests for dates over a period of several weeks had gone unanswered and unacknowledged. This was weeks after the Court had already directed Guo to provide dates.



available. However, Guo made two broadcasts on his own media platform from New York on the day that the deposition had been noticed, casting serious doubt on the veracity of his representations to counsel and the Court. Still, Strategic once again asked Guo for new dates. After 10 days of waiting again yielded no response, on November 20, 2019, Strategic Vision again re-noticed Guo's deposition, this time for Wednesday, December 4, 2019. On November 22, 2019, Strategic reported all of this activity to the Court. ECF 201.

Guo never once communicated with Strategic about any of this—whether to respond to a request for dates, to express unavailability, or to provide new dates. Nor did Guo respond to ECF 201, Strategic's letter to this Court outlining this history. Instead, last night, Guo simply informed the Court that he would not be appearing for the December 4. The reason? Again, "unavailability." Guo promises to provide alternative dates, but says he will do so only after Judge Koeltl has ruled on a summary judgment motion Eastern Profit will presumably file sometime after a pre-motion conference with Judge Koeltl on January 14, 2019.[2]

Guo's plan to avoid discovery has apparently been coordinated with other parties. Yesterday at her deposition, Sasha Gong, the longtime Chinese dissident and senior Voice of America official whose on-air interviewed of Guo launched his publicity efforts in April 2017, testified that she had received a call from Jennifer Mercurio, in-house counsel (not Gong's counsel) at a Guo-controlled nonprofit called the Rule of Law Society. Gong had served as a director of the Society earlier this year before resigning due to concerns over Guo's behavior, and testified, among other things, to Guo's true connection to William Je, Yvette Wang, and Chunguang Han. Gong was present under a validly-issued subpoena that had been noticed weeks ago to Eastern Profit.

Relevant here, Gong testified that Mercurio called her on Friday, November 22, 2019, and informed her that she did not need to honor her subpoena because "Guo's lawyers" were appearing before this Court and would obtain a stay of all third-party discovery. Of course, Guo did not file his motion until last night, after the conclusion of Gong's deposition, and his counsel had failed to so much as hint to the undersigned that such a motion was in the works. Regardless, it is clear that counsel for a supposedly independent organization had foreknowledge of Guo's plan, and took steps—following in the footsteps, possibly, of other counsel who communicated with other witnesses in this matter—to block Strategic's access to an important witness. Worse, Rule of Law's counsel made material misrepresentations to that witness, who was not her client and was unrepresented by counsel.

Further, Guo (and those who answer to him at the Rule of Law) cannot have reasonably believed that all remaining discovery would be stayed until after Eastern files a summary judgment motion and it is decided. Although a pre-motion conference with Judge Koeltl (since adjourned to January) had originally been set for Tuesday, December 3, 2019, no decision would have issued from that conference. The process of moving for and obtaining a ruling on summary judgment would take months. The demand for a stay now before you was never a good-faith proposal (had it ever been presented to Strategic before the filing was made last night) for

---

[2] Guo cites a separate letter Eastern has written to Judge Koeltl requesting a conference. In that letter, Eastern makes six numbered claims about the testimony of Strategic's witness—claims that are not borne out by the transcript and that Strategic will certainly dispute should they ever make their way into a summary judgment motion.



resolving the parties' ongoing discovery disputes. Instead, it was part of a coordinated, last-minute gambit to block the impending testimony of witnesses who have long been ordered to appear. Indeed, the execution of this plan—not the alleged "unavailability" of Guo—is likely why Guo has for months refused to respond to inquiries about his availability and then, when Strategic is finally forced to send notice on its own, has waited until just before the deposition to claim "unavailability." Given the clarity with which the Court has spoken time and again, this conduct shows contempt for these proceedings and the Court.

Similarly, GSNY has not participated in discovery in good faith. Strategic Vision had proposed to save time and money by deposing Yvette Wang as the corporate representative of both entities on the same day—a plan that was clearly communicated to all parties and the Court. On October 30, 2019, moments before the deposition started, Eastern and GSNY demanded that the topics first be asked of Ms. Wang in one capacity; that the deposition be concluded; and that the topics then be addressed again with Ms. Wang in another capacity. This Court heard the parties via phone and ruled that if Eastern and GSNY wished to go the route of successive depositions, separate 7-hour days could potentially be used for each deposition. Subsequently, Eastern and GSNY decided to insist on separate depositions, and Eastern was deposed in less than 7 hours. At the conclusion of Eastern's deposition at 5:30 p.m., GSNY demanded that its deposition immediately commence—an invitation that Strategic (and the court reporter) declined. After GSNY would not provide a new date for its deposition, Strategic re-noticed it for November 12, 2019.

GSNY produced as its witness not Yvette Wang, but a paralegal relatively new to the entity, whose total preparation had involved "maybe an hour" with Yvette Wang the previous evening. Tr. 22:14-23:2, enclosed. The witness had taken notes from Wang that GSNY refused to produce; had reviewed no documents (Tr. 18:17-21); had only "skimmed" the pleadings sometime in the past, and couldn't speak to any of the following properly noticed topics:

- Topic 1: GSNY's search for and production of document requests approved by the Court: (Tr. 8:17-21, witness had never seen the document portion of the subpoena and could not explain why GSNY had no documents to produce);
- Topic 2: The ownership, management governance, and structure of GSNY between January 1, 2017 and July 1, 2019: (Tr. 20:25-21:11, witness had no information on the duties of GSNY's officers and directors, including Yvette Wang (president) and Guo Qiang (Guo's son, and sole director), including who gives direction to whom).
- Topic 3: GSNY's dealings with Eastern and Guo between January 1, 2017 and July 1, 2019, as they relate to the negotiation, execution, or performance of the contract at issue: (Tr. 52:23-53:5, witness had not looked for documentation of the GSNY-EP relationship and did not know whether any existed); (Tr. 58:13-85:12: witness had no knowledge about why GSNY approached Chunguang Han about the Strategic negotiations; whether GSNY and Eastern understood the negotiations were supposed to be confidential; whether GSNY told Eastern that Strategic had been promised only certain people would be involved with the Contract; whether Guo Mei, Guo's daughter, had any role for Eastern Profit in its dealings with GSNY; whether GSNY had a reason for allegedly wanting to investigate the CCP; why GSNY didn't hire its own investigation company and instead used Eastern Profit, which allegedly had no money; why Yvette Wang told the witness that GSNY "wasn't in a



position" to enter into the contract with Strategic; whether Eastern told GSNY that it was ever going to pay for the work under the contract; the negotiations between GSNY and Eastern on the deal; what it meant for the agreement to be "successful," supposedly triggering Eastern's payment of GSNY, or whether GSNY even knew the answer to this question; whether any part of GSNY's unwritten deal with Eastern was typical for GSNY; whether GSNY did any due diligence before working for Eastern or knew Eastern's line of business; Eastern's prior relationship with GSNY that purportedly already gave GSNY authority to act for it; whether they are both owned by the same person; whether GSNY came up with a budget for its work for Eastern on the contract; how much work GSNY has done for Eastern or whether it even tracks it; what Eastern told GSNY about its reasons for entering the contract at issue; what Eastern told GSNY to negotiate regarding payments on the contract and its own ability to pay under the contract; any backup plan to pay GSNY if the funds weren't unfrozen). Many times, the witness claimed to have look for no relevant documentation and suggested that if anyone knew the answer, it would be "Yvette." *See, e.g.*, 66:3-14.

Strategic would be within its rights to ask for GSNY to reappear through its President, Yvette Wang, or at least to have Ms. Wang appear again in her individual capacity and to have her answers bind GSNY on topics relevant to GSNY. But, for efficiency's sake, Strategic respectfully suggests that the GSNY topics simply be added to Mr. Guo's deposition. After all, it is now established (despite Guo's protestations to the contrary in August, when it may have appeared possible that no further discovery would be allowed) that Golden Spring is his family office, that China Golden Spring (Hong Kong) controls GSNY, and that Guo actually received distributions from Golden Spring's consulting work *for ACA on the Mainland*. Guo is the natural person to fill the gaps. GSNY (which runs this litigation for Eastern Profit) already agreed that Guo's August 2 testimony would bind Eastern Profit; the same deal should be good for GSNY itself, especially since Guo controls both entities.

Finally, as the Court discussed in its conference with Strategic and Eastern on November 25, 2019, Guo should provide testimony on the ACA topics that ACA would and should have answered had the still-undiscovered interaction between GSNY's general counsel, Karin Maistrello, and William Je not led to Maistrello's sudden attempted resignation—perhaps later consummated—on July 26, 2019, immediately before she was served. Guo's counsel strongly objects to any discovery from ACA, maintaining that it is irrelevant. But this ignores that Guo's other attorney, Daniel Podhaskie, directly responded to Strategic Vision's claim that Guo moved money to and from Hong Kong when he should not have been able to do so, asserting that Guo "has never taken a penny out of China or Hong Kong since he began speaking out" against the CCP. Later, Guo's counsel disagreed with Strategic's position that the Mainland was able to freeze assets using the Hong Kong court system, making the region an unlikely and inhospitable environment for true dissidents to amass and move funds.

But, in its deposition, Eastern changed the story, clearly testifying in several places (outlined in ECF 206) that the Mainland had caused its own Hong Kong assets to be frozen due to Eastern's supposed dissident activity—a court order that Eastern had previously told the Court had nothing to do with this case. But now that Eastern claims this court-ordered freezing of its Hong Kong assets was the entire reason for the Research Agreement, and that it hoped to undo the



freeze by causing Mainland regime change and a release of the Hong Kong freeze, that position is no longer tenable. How is ACA, alone among the Guo entities and under the watch of a Mainland-connected businessman, William Je, able to so freely move money for Guo's supposed dissident activities? ACA should be able to answer, but surely Guo himself knows. He should provide the testimony.

In conclusion, then, Strategic proposes that Guo be required to appear on December 4 despite his latest claim to be unavailable, and that the testimony cover the following topics:

(1) The original topics set forth in this Court's order granting in part Strategic's last motion to compel (ECF 189), as expanded by this Court in its November 8, 2019 teleconference (ECF 193).

(2) The following ACA topics:
    a. The formation, ownership, structure, funding, and governance of all related ACA entities, including the tenure and duties of William Je;
    b. The various, related ACA entities' relationship and communications with Guo Wengui, Eastern Profit, the Golden Spring entities, the PRC, and CCP, including the relationship and communications between Guo and William Je;
    c. ACA's interest in the Research Agreement at issue in this case, including its plans to receive or use the fruits of the research;
    d. ACA Capital's wiring of $1 million to Strategic Vision, and any loan, communications (oral, written, or electronic) or understanding between ACA and either Eastern, the Golden Spring entities, or Guo regarding the wire. This includes the loan document and any attempts to collect on it.
    e. The various, related ACA entities' transmittal of any funds from Hong Kong or Mainland China for the benefit of Guo Wengui, Eastern Profit, the Golden Spring entities, Saraca Media Group, the Rule of Law nonprofits, or any other entity acting under the control or direction of Guo, his children, his family, Han Chunguang, Yvette Wang, or any other agent of employee of Guo's from December 2014 to the present.

(3) GSNY topics 1, 2, 3, and from the original subpoena, as set forth in this letter.

2. **Stephen Bannon's deposition should go forward on December 5, 2019.** After over a month of attempted service, non-party witness Stephen Bannon was personally served with a testimonial subpoena on Thursday, November 14, for a deposition on Friday, November 22, 2019. Strategic conferred with Bannon's counsel on the expected relevance of his testimony via phone on Monday, November 18, and conferred again on Thursday, November 21, regarding the witness's possible overseas trip and the need for a December 5 date. Strategic's counsel advised Bannon's counsel that before leaving for the airport for the deposition, this Court could be called in the event Bannon wanted to seek relief. Instead, Bannon's counsel did not call back, and emailed later in the day that he would not be produced because there had been insufficient time to prepare him for his testimony. Communicating from the airport and about to board a flight, Strategic responded that the failure to appear would be treated as a no-show. Bannon was re-noticed for December 5, a date



Bannon had already confirmed would be available and that presumably met his requirements for preparation.

Among other things, Bannon is expected to have information on Guo's contacts with Chinese officials in the fall of 2017 (when Bannon traveled to Beijing to meet with Guo's main alleged adversary, Wang Qishan); Guo's U.S. litigation and publicity campaign in 2017-2019 and its effect on Chinese dissidents and China hawks; and the source of payments used to fund Guo's operation from overseas. With the return date having come and gone, Bannon has never filed a motion to quash and is apparently relying on Guo's motion for a stay. Strategic asks only that this Court enter an order allowing this deposition to be taken outside of the discovery deadline of November 29, as Bannon was timely served and, without appearing or seeking relief from any court, simply failed to appear for a deposition that was properly scheduled within the discovery period.

Respectfully submitted,

Edward D. Greim
Attorneys for Defendant/Counterclaimant

Enclosure (deposition testimony)