**quinn emanuel** trial lawyers | washington, dc

1300 I Street NW, Suite 900, Washington, District of Columbia 20005-3314 | TEL (202) 538-8000 FAX (202) 538-8100

WRITER'S DIRECT DIAL NO.
**(202) 538-8272**

WRITER'S EMAIL ADDRESS
**allisonmcguire@quinnemanuel.com**

December 11, 2019

**VIA ECF**

Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re:     *Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC*, 18-cv-2185 (JGK)-DCF
          Subpoena to Non-Party Stephen K. Bannon

Dear Judge Freeman:

On behalf of non-party Stephen K. Bannon ("Mr. Bannon"), I write in opposition to the letter motion filed by Strategic Vision US, LLC ("Strategic Vision") requesting leave to depose Mr. Bannon after the close of discovery. *See* ECF No. 212 ("Motion" or "Mot."). Strategic Vision has not shown good cause for its delayed service of Mr. Bannon, who it claims is "a critical fact witness," *id.* at 1, 5, and it should not be permitted to continue to harass a non-party and public figure, who has virtually no connection to the underlying litigation. Separately, the subpoena seeks irrelevant information, is not proportional to the needs of this case, places an undue burden on a non-party, and is harassing. As a result, Mr. Bannon intends to file a motion to quash the subpoena in the compliance court (*i.e.*, the U.S. District Court for the District of Columbia) should Strategic Vision be permitted to take Mr. Bannon's deposition after the close of discovery.

## I.     STRATEGIC VISION HAS NOT DEMONSTRATED GOOD CAUSE FOR EXTENDING DISCOVERY

As an initial matter, Strategic Vision has failed to demonstrate good cause for why it did not serve Mr. Bannon and conduct a deposition prior to the close of discovery. "To demonstrate good cause, the party seeking a modification must show that the relevant deadline could not reasonably be met despite that party's diligence." *In re Orange Boat Sales*, 239 B.R. 471, 474 (S.D.N.Y. 1999) (citation omitted); *see also McKibben v. Credit Lyonnais*, 1999 WL 604883, at *3 (S.D.N.Y. Aug. 10, 1999) ("Good cause or excusable neglect is generally found only in

**quinn emanuel urquhart & sullivan, llp**

exceptional circumstances where plaintiff's failure to serve process in a timely manner was the result of circumstances beyond his control."). There is no such good cause here, and Strategic Vision cannot demonstrate that it was diligent in trying to depose Mr. Bannon prior to the close of discovery.

A.      **Strategic Vision's Inexcusable Delay Issuing A Subpoena To Mr. Bannon**

Although Strategic Vision claims that its efforts to serve Mr. Bannon were "[e]arly and [e]xtraordinary," that is simply untrue. Mot. at 2. To the contrary, Strategic Vision was dilatory in its efforts to seek discovery from Mr. Bannon, waiting until the tail end of discovery to notice Mr. Bannon's deposition. Specifically, discovery in this case began on August 7, 2018. *See* ECF No. 42. For the next *13 months*, Strategic Vision stood idly by until September 25, 2019, when it issued its first subpoena to Mr. Bannon, claiming, all of a sudden, that Mr. Bannon possesses information relevant to this lawsuit. Specifically, Strategic Vision now claims that "Mr. Bannon has deep knowledge of Mr. Guo's activities in the U.S. beginning in the summer of 2017," and that "Mr. Bannon's relationship with Guo only deepened" in years to come. Mot. at 5, 7. In fact, Strategic Vision has long known about Mr. Bannon's purported connections to Mr. Guo. Their collaboration has been the subject of widespread press coverage going back years. *See, e.g.*, Tom Phillips, "Guo Wengui, the Maverick Chinese Billionaire Who Threatens to Crash Xi's Party," The Guardian (Oct. 15, 2017), https://www.theguardian.com/world/2017/oct/16/guo-wengui-the-maverick-chinese-billionaire-who-threatens-to-crash-xis-party; Cezary Podkul and Brian Spegele, "Steve Bannon, Chinese Critic Create Fund to Investigate Beijing," Wall St. Journal (Nov. 20, 2018), https://www.wsj.com/articles/bannon-chinese-critic-create-fund-to-investigate-beijing-1542759820; David Barboza, "Steve Bannon and a Fugitive Billionaire Target a Common Enemy: China," N.Y. Times (Dec. 4, 2018), https://www.nytimes.com/2018/12/04/business/stephen-bannon-guo-wengui-china.html.

Based on these publicly reported encounters that date back to *2017*, Strategic Vision belatedly identified Mr. Bannon as a purported fact witness in its July 19, *2019* answer and counterclaims. *See* ECF No. 114. Yet despite the fact that the discovery deadline in this case was fast approaching on November 29, 2019, *see* ECF No. 172, Strategic Vision took *no steps* to seek discovery from Mr. Bannon in July 2019. In fact, Strategic Vision waited an additional two months before it attempted to subpoena Mr. Bannon for a deposition, just weeks before the close of discovery. Surely if Mr. Bannon were such "a critical fact witness," Mot. at 1, 5—whose purported relevance to this action was known to Strategic Vision well in advance of the discovery deadline— it makes no sense that Strategic Vision would have waited until the very end of discovery to serve him with a deposition subpoena. This is particularly true given the fact that Mr. Bannon is a well-known public figure with extensive professional commitments around the world. Strategic Vision should have accounted for this challenge to service. It did not. Instead, it did nothing until the end of discovery and was left to scramble to effectuate service on a public figure. Not surprisingly, that proved challenging—not because Mr. Bannon was dodging service—but, as discussed below, because of his travel schedule and Strategic Vision's continued delay.

**B.      Strategic Vision's Insufficient And Ineffective Efforts To Serve Mr. Bannon**

After waiting 13 months to seek discovery from Mr. Bannon, Strategic Vision issued its first deposition subpoena to Mr. Bannon on September 25, 2019. *See* ECF No. 212-1.  The subpoena noticed Mr. Bannon's deposition for October 10, 2019.  *Id.*  According to Strategic Vision, it attempted to serve Mr. Bannon several times in the following weeks. *See* Mot. at 2–3. Although Strategic Vision attempts to paint a false picture in which Mr. Bannon was dodging service, in reality, he was traveling out of town on four of the attempted service dates, namely September 26 and October 4, 13, and 14, 2019.

In addition, the majority of service attempts were *after* the October 10, 2019 return date, when the subpoena was facially invalid such that service would have been defective. *See* Mot. 2; ECF No. 212-4.  Specifically, Strategic Vision's investigator attempted to serve Mr. Bannon with a subpoena with an October 10, 2019 return date on October 13, and 14, 19, and 25, 2019.  *See* ECF No. 212-1, 212-4.  This is plainly improper and cannot serve as evidence of Strategic Vision's supposed "[e]xtraordinary" service efforts, thus demonstrating Strategic Vision's complete lack of diligence.  Mot. at 2.  Even if effectively delivered to Mr. Bannon, this subpoena clearly would not have provided reasonable notice to Mr. Bannon for a deposition date that occurred ***prior to*** service.  *See Monitronics Int'l, Inc. v. iControl Networks, Inc.*, 2013 WL 6120540, at *1 (N.D. Tex. Nov. 21, 2013) ("A return date predating service manifestly does not allow reasonable time to comply.").

In apparent recognition of the facial invalidity of its deposition subpoena, Strategic Vision issued a new subpoena to Mr. Bannon ***one month later*** on November 7, 2019—just 22 days until the close of fact discovery.  *See* ECF No. 212-7.  Not surprisingly, Strategic Vision was forced to scramble to serve Mr. Bannon, having previously wasted several weeks attempting to serve him with an invalid subpoena.  *See* Mot. at 3.  These renewed efforts were also unsuccessful, but not for the self-serving and misleading accounts offered by Strategic Vision in its submission to the Court.  *See id.*  Specifically, Strategic Vision claims that it was unable to serve Mr. Bannon during a speech he gave at the New York Young Republican Club on November 7, 2019.  *See id.* at 2–3. Although Mr. Bannon's appearance as a keynote speaker was publicly announced on September 28, 2019,[1] and Strategic Vision could have planned to serve him long before this event, it made no effort to prepare to serve him in New York until days before the event.  *See* Mot. at 2–3.

Finally, Strategic Vision claims that it was unable to serve Mr. Bannon after his testimony in Roger Stone's trial because Mr. Bannon "used a private exit" to leave the U.S. District Court for the District of Columbia.  *Id.* at 3.  This is untrue.  Mr. Bannon exited the courthouse through a public exit together with undersigned counsel, which a simple Google search would reveal.[2]  As

---

[1]  *See* The New York Young Republican Club, @NYYRC (Sept. 28, 2019), https://twitter.com/NYYRC/status/1177942713364340736.

[2]  *See, e.g.*, *Rachel Maddow: Bannon Names Stone as Trump Camp's 'Access Point' to WikiLeaks*, MSNBC (Nov. 8, 2019), https://www.msnbc.com/rachel-maddow/watch/bannon-names-stone-as-trump-camp-s-access-point-to-wikileaks-73183301514; Geneva Sands, *et al.*, *Bannon Testifies*

Mr. Bannon's counsel can attest, no one attempted to serve Mr. Bannon while he entered or exited the court through a public entrance, despite Strategic Vision's claims that its process server "waited outside the only door he believed could be used by Mr. Bannon to exit." Mot. at 3. In short, Strategic Vision's belated attempts to serve Mr. Bannon were unsuccessful not because Mr. Bannon was dodging service. Rather, they were unsuccessful because Strategic Vision waited until the last minute to seek discovery from Mr. Bannon, which—not surprisingly and quite foreseeably—proved to be challenging.

### C.        Strategic Vision Belatedly Serves Mr. Bannon

It was not until Thursday, November 14, 2019, when Strategic Vision finally served Mr. Bannon with a deposition subpoena. Notably, that subpoena noticed Mr. Bannon's deposition for November 22, 2019, a mere eight days later. As this Court and Strategic Vision have already recognized, that is not "reasonable notice" under New York law. *See* Excerpt of Telephone Conference Transcript, dated Dec. 2, 2019 (Exhibit A) at 8:18–21 (THE COURT: "[E]ight days notice, generally, you know, reasonable notice is going to be at least ten for -- MR. GREIM: Sure, Your Honor, and I'd agree . . . ."); *see also* C.P.L.R. 5224 ("A deposition on oral or written questions . . . may proceed upon not less than ten days' notice to the person subpoenaed . . . ."). Notwithstanding the fact that Strategic Vision's subpoena did not provide Mr. Bannon with the required "reasonable notice," Mr. Bannon's counsel, nevertheless, contacted Strategic Vision in an attempt to learn why Strategic Vision was seeking the deposition of Mr. Bannon in a breach of contract dispute for which Mr. Bannon is not a party to the contract and did not participate in contract negotiations on behalf of either Strategic Vision or the plaintiff, Eastern Profit Corporation Limited ("Eastern Profit"). During this phone call, counsel for Strategic Vision stated that he already had two depositions scheduled on November 22, 2019, and that Mr. Bannon's deposition was not likely to proceed on this date.

Mr. Bannon's counsel contacted Strategic Vision's counsel for a second time on November 21, 2019, to discuss extending the return date. Mr. Bannon's counsel explained that Strategic Vision did not provide Mr. Bannon or his counsel with reasonable notice for a deposition. Strategic Vision's counsel suggested an immediate call with this Court and warned that he would be traveling shortly. In an effort to avoid unnecessary travel expense for Strategic Vision's counsel, Mr. Bannon's counsel promptly confirmed in writing that Mr. Bannon would not appear for a deposition on November 22, 2019. *See* ECF No. 212-9. In response, Strategic Vision agreed to extend the notice date to December 5, 2019. *See id.* Rather than immediately seek leave to extend the discovery deadline, Strategic Vision waited until November 27, 2019—five days later and the last business day before the close of discovery—to address this issue with the Court. *See* ECF No. 210. This additional delay also demonstrates that Strategic Vision has not been diligent in its efforts to depose Mr. Bannon. *See Bruce v. Cty. of Rensselaer*, 2003 WL 22436281, at *2 (N.D.N.Y. Oct. 20, 2003) ("The filing of a request for an extension on the final day of the time

---

*Trump Campaign Viewed Stone as Access Point to WikiLeaks*, CNN (Nov. 13, 2019), https://www.cnn.com/2019/11/08/politics/bannon-stone-wikileaks-court/index.html.

period does not act as an automatic stay of the deadline, nor does it provide good cause for an extension of the deadline.  To the contrary, it is evidence of being remiss in one's duties.").[3]

In sum, after wasting 13 months of discovery, Strategic Vision belatedly served Mr. Bannon with a subpoena that did not provide reasonable notice of the deposition.  Strategic Vision should have anticipated the challenges to serving a public figure with a demanding schedule and allowed sufficient time to effect service.  It did not.  Strategic Vision could have sought leave from the Court to pursue alternative means of service.  It did not.  And after agreeing to extend the subpoena's return date, Strategic Vision should have immediately requested leave from the Court to extend discovery.  It did not.  The Court should not reward Strategic Vision's dilatory behavior by extending the discovery deadline for the sole purpose of allowing a deposition of Mr. Bannon, who, as discussed in detail below, possesses no information that is relevant to this proceeding. *See, e.g.*, *Sec. & Exch. Comm'n v. Waldman*, WL 3315721, at \*6 (S.D.N.Y. July 5, 2018) (denying modification of discovery deadlines due to "plaintiff's lack of diligence"); *In re Application of Barnet*, 2014 WL 7409524, at \*3 (S.D.N.Y. Dec. 30, 2014) ("A finding of good cause depends on the diligence of the moving party.") (citing *Grochowski v. Phoenix Const.*, 318 F.3d 80, 86 (2d Cir. 2003)).

## II.    THE SUBPOENA SHOULD BE QUASHED

Although the U.S. District Court for the District of Columbia is the proper court to address the merits of whether the subpoena should be quashed, Mr. Bannon will briefly respond to Strategic Vision's claim that Mr. Bannon is "a critical fact witness whose testimony is relevant and proportionate to the needs of the case."  Mot. at 1.  Strategic Vision's subpoena far exceeds the bounds of permissible discovery, particularly discovery from a non-party.  The subpoena seeks wholly irrelevant information to the underlying contract dispute between Eastern Profit and Strategic Vision based on tenuous conspiracy theories and pure speculation, which are completely divorced from the written contract governing the underlying case and wildly disproportionate to the needs of this case.  In addition, the subpoena places an undue burden on Mr. Bannon by seeking discovery from a non-party that could be obtained from other sources and has already been obtained from Mr. Guo.  Finally, Strategic Vision is attempting to use the subpoena to harass, intimidate, and embarrass Mr. Bannon by prying into his professional relationship with Mr. Guo

---

[3]  Separately, Mr. Bannon's counsel has concerns about Strategic Vision's failure to provide notice of issues before the Court concerning Mr. Bannon's rights and responsibilities.  Strategic Vision presented its arguments as to why Mr. Bannon's deposition should proceed after the close of discovery but did not serve a copy on Mr. Bannon's counsel, thus denying Mr. Bannon the opportunity to respond.  *See* ECF No. 210.  Similarly, Strategic Vision discussed Mr. Bannon's potential deposition with the Court on December 2, 2019, during a telephone conference about which Strategic Vision did not inform Mr. Bannon's counsel until after the fact.  *See* E-mail from E. Greim to A. McGuire, dated Dec. 2, 2019 (Exhibit B).  Again, Strategic Vision inappropriately denied Mr. Bannon's counsel the opportunity to address the Court about issues involving their client.

as well as his personal finances.  The Federal Rules of Civil Procedure and applicable case law expressly prohibit this type of invasive, irrelevant fishing expedition.

### A.    <u>**The Subpoena Seeks Irrelevant Information**</u>

The subpoena should be quashed because it is unlikely to result in relevant information. Discovery is permitted "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Subpoenas issued to non-parties pursuant to Federal Rule of Civil Procedure 45 are also "subject to Rule 26(b)(1)'s overriding relevance requirement."  *Hughes v. Twenty-First Century Fox, Inc.*, 2018 WL 1936096 *2 (S.D.N.Y. April 24, 2018) (quoting *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008)).  The relevance and proportionality requirements of Federal Rule of Civil Procedure 26 are intended "to 'encourage judges to be more aggressive in identifying and discouraging discovery overuse' by emphasizing the need to analyze proportionality before ordering production of relevant information."  *Walker v. H & M Henner & Mauritz, L.P.*, 2016 WL 4742334, at *2 (S.D.N.Y. Sept. 12, 2016) (citation omitted).  Courts, therefore, may grant motions to quash when the relevance of information sought by a subpoena is "doubtful and tangential."  *Eisemann v. Greene*, 1998 WL 164821, at *2 (S.D.N.Y. April 8, 1998); *see also Carvel v. Franchise Store Realty Corp.*, 2011 WL 13269780, at **3–4 (S.D.N.Y. June 6, 2011) (granting motion to squash subpoenas that are "overbroad, unduly burdensome, and seek substantial information that is outside the scope of permissible discovery in this case").

Information is considered relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  *Vaigasi v. Solow Mgmt. Corp.*, 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2017) (quoting Fed. R. Evid. 401).  The testimony Strategic Vision seeks from Mr. Bannon satisfies neither category.  Strategic Vision purports to identify three areas where Mr. Bannon could provide supposedly relevant testimony:  "(1) Guo's contacts with Chinese officials in the fall of 2017 (when Mr. Bannon traveled to Beijing to meet with Guo's main alleged adversary, Wang Qishan); (2) Guo's campaign in the U.S. to influence the dissident and 'China hawk' foreign policy establishment; and (3) the source of payments used to fund Guo's U.S. influence operations from overseas, including payments Mr. Bannon himself has received."  Mot. at 7.  Even assuming Strategic Vision's allegations related to Mr. Bannon are true, these topics are a blatant fishing expedition far beyond the claims and defense at issue and any colorable theory of relevance.

As an initial matter, Strategic Vision claims that Mr. Bannon is relevant to the underlying case not because of any knowledge or information Mr. Bannon may possess but rather based on other individuals' impressions of him.  Strategic Vision claims that Mr. Guo's "prominent connections with China hawks such as Bannon" persuaded Strategic Vision representatives to meet with Mr. Guo about Eastern Profit's proposed engagement and that witnesses have testified that "Mr. Bannon's relationship with Guo Wengui gave Guo an aura of credibility that directly resulted in Strategic Vision's decision to enter a contract with Eastern Profit."  ECF No. 127 at ¶ 15; Mot. at 5.  It is unclear what relevant testimony Mr. Bannon is expected to provide related to what other people thought about him or his aura.  Strategic Vision does not and cannot allege that Mr. Bannon

had any role in persuading representatives from Strategic Vision to meet with Mr. Guo or other Eastern Profit representatives or to enter into the contract at issue.

Strategic Vision also recites a list of alleged connections between Mr. Guo and Mr. Bannon, none of which are related to the written contract or contract negotiation between Strategic Vision and Eastern Profit. *See, e.g.*, ECF No. 127 at ¶ 79 ("Upon information and belief, Bannon was familiar with Guo's case from Bannon's time within the Trump administration, and was in contact with Guo either in person or through one or more interlocutors while Bannon worked in the White House."); *id.* at ¶ 80 (Mr. Guo "appoint[ed] Bannon as Chairman of his 'Rule of Law Society'"); Mot. at 7 ("Mr. Bannon himself had begun to speak publicly on behalf of Guo, and soon began to appear in videos and pictures with him"). Again, Strategic Vision does not and cannot allege that Mr. Bannon's professional connection to Mr. Guo or purported contact with Mr. Guo had any bearing on the terms of the contract negotiated between Eastern Profit and Strategic Vision.

Next, Strategic Vision issues wild speculations about Mr. Bannon's trip to Hong Kong, where Mr. Bannon—a former Goldman Sachs investment banker and White House Chief Strategist—gave a speech at a Hong Kong investors' forum. While the press and some U.S.-Chinese relations experts suggested that Mr. Bannon appeared to be acting as President Trump's "stalking horse,"[4] Strategic Vision ascribes much more sinister motives. Strategic Vision claims that after this speech, Mr. Bannon traveled to Beijing, where he "secretly met for 90 minutes" with Wang Qishan, ECF No. 127 at ¶ 81, the "PRC official Guo was contemporaneously claiming was his arch-enemy." Mot. at 6. In the same article on which Strategic Vision relies for its allegations about Mr. Bannon's alleged "closed door" speech, the *Financial Times* reported that Wang Qishan arranged the meeting with Mr. Bannon to ask "about economic nationalism and populist movements which was the subject of his speech." Tom Mitchell and Demetri Sevastopulo, "Steve Bannon Held Secret Meeting in China," Financial Times (Sept. 21, 2017), https://www.ft.com/content/5cdedd84-9f0c-11e7-8cd4-932067fbf946. Strategic Vision, however, claims that Mr. Bannon's alleged meeting "was not for any official purpose, and was therefore likely undertaken as a courier for Guo" and was "likely for the purpose of receiving the 'detailed instruction' that Guo just a few weeks before had solicited from the Chinese Communist Party leadership." ECF No. 127 at ¶ 81. It offers no basis for this vast logical leap beyond purported testimony from a witness that Mr. Bannon's not telling him the details of a meeting with a world leader was supposedly "unusual." Mot. at 6.

Finally, Strategic Vision lodges gratuitous grievances against Mr. Bannon for allegedly citing the underlying litigation as a reason to remove J. Michael Waller ("Mr. Waller"), a "Strategic Vision agent," from the Committee on the Present Danger-China. Mot. at 7. Strategic Vision claims that Mr. Bannon had access to Mr. Waller's deposition transcript and discussed it with other non-parties. *Id.* But as Strategic Vision admits, "Bannon had never discussed Guo with Waller."

---

[4]   *See* Tom Phillips, "Steve Bannon Heaps Praise on Xi Jinping During 'Stalking Horse' Hong Kong Trip," Guardian (Sept. 12, 2017), https://www.theguardian.com/us-news/2017/sep/13/steve-bannon-heaps-praise-on-xi-jinping-during-stalking-horse-hong-kong-trip.

ECF No. 127 at ¶ 85.  Given this critical fact, Strategic Vision cannot possibly maintain that Mr. Bannon was somehow involved with the contract at issue or the contract negotiations or that he took any direct steps to influence either party with respect to the contract.  As such, Strategic Vision's fishing expedition should not proceed.

## B.        The Subpoena Is Not Proportional To The Needs Of The Case

The subpoena should also be quashed because deposing a non-party public figure with, at most, a tangential connection to the underlying case is not proportional to the needs of this matter. Discovery must be "proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  This longstanding rule applies even more forcefully since the Federal Rules of Civil Procedure specifically were modified in 2015 to curb abusive discovery practices based on tangential claims of relevance.  *See* Fed. R. Civ. P. 26(b)(1), Advisory Committee Note to 2015 Amendment ("The present amendment restores the proportionality factors to their original place in defining the scope of discovery.").  "Proportionality focuses on the marginal utility of the discovery sought." *Vaigasi*, 2016 WL 616386, at *14.  "Though the ambit of relevance under Rule 26 is broad, it is not unlimited, and a non-party especially should not be burdened with preparation for a broader array of topics than is proportional to the needs of the case."  *Pearlstein v. BlackBerry Ltd.*, 332 F.R.D. 117, 121 (S.D.N.Y. 2019), *on reconsideration in part*, 2019 WL 5287931 (S.D.N.Y. Sept. 20, 2019).

The testimony Strategic Vision seeks from Mr. Bannon is "at the outer fringes of relevance with little probative value to the claims" and, thus is not proportional to the needs of this case. *Vaigasi*, 2016 WL 616386, at *14.  At its core, this case is a $1 million breach of contract dispute regarding a contract to which Mr. Bannon is not a party and did not participate in negotiations on behalf of either party.  Strategic Vision has issued over a dozen third party document and deposition subpoenas to individuals and entities including Google, LLC, GoDaddy.com, LLC, Twitter, Inc., LinkedIn Corporation, Verizon, LLC, T-Mobile USA, Inc., and AT&T Corp. Strategic Vision's attempts to elicit testimony from Mr. Bannon, a non-party public figure, about Strategic Vision's conspiracy theories about Mr. Guo, how other individuals perceived Mr. Bannon and Mr. Guo's professional relationship, and the sources of Mr. Bannon's income boarders on the absurd.  This is plainly disproportionate to the needs of this case and should not proceed.

## C.        The Subpoena Subjects Mr. Bannon To Undue Burden

The subpoena should also be quashed because it imposes an undue burden on Mr. Bannon, a non-party to this action.  A subpoena that "subjects a person to undue burden" must be quashed or modified.  Fed. R. Civ. P. 45(d)(3)(A)(iv).  "When evaluating undue burden, the court considers the relevance of the information sought, the party's need for the information, the breadth of the request, and the burden imposed."  *Blake Marine Grp. LLC v. Frenkel & Co.*, 2019 WL 1723567, at *1 (S.D.N.Y. Apr. 18, 2019) (citations omitted); *see also Brown v. City of Syracuse*, 648 F. Supp. 2d 461, 466 (N.D.N.Y. 2009) ("In making a determination on a motion to quash brought by a nonparty, where production would be 'oppressive and unreasonably burdensome, the court, in balancing the hardships, should consider whether there are other sources for obtaining the material'

8

as well as probative value if the material is disclosed.") (citation omitted).  Here, this balance weighs heavily in favor of quashing the subpoena.

*First*, Strategic Vision can and has obtained this information from other sources, namely Mr. Guo.  All of the allegations regarding Mr. Bannon relate exclusively to Mr. Guo, including whether Mr. Guo has attempted to contact Chinese officials, Mr. Guo's supposed campaign to influence the "'China hawk' foreign policy establishment," and the sources of Mr. Guo's funds.  Mot. at 7.  No one is better suited to address these issues than Mr. Guo.  In fact, Strategic Vision has had two days to depose Mr. Guo about these exact topics among others.  Seemingly dissatisfied with Mr. Guo's testimony, Strategic Vision now tries to take a second bite at the apple by deposing Mr. Bannon, a non-party with no alleged connection to the contract at issue.  This is plainly improper, and the subpoena should be quashed.  *See, e.g.*, *Jones v. Hirschfeld*, 219 F.R.D. 71, 78 (S.D.N.Y. 2003) (quashing non-party deposition subpoena "in light of the existence of other individuals with primary knowledge of the matters at issue").

*Second*, as discussed extensively above, Strategic Vision's conspiracy theories about Chinese secret agents are better suited for a spy novel than a court of law.  Mr. Bannon's connection to this litigation is beyond tenuous.  The Court should not permit Strategic Vision to unduly burden Mr. Bannon to test the boundaries of relevance.  Thus, the subpoena should be quashed for subjecting Mr. Bannon to undue burden.

## D.      The Subpoena Is Harassing

Finally, the subpoena issued to Mr. Bannon is blatant harassment.  Strategic Vision threatens to delve into Mr. Bannon's personal finances, professional relationships, and White House responsibilities in order to drum up a media circus and further harass Mr. Bannon.  Courts have long recognized concerns about annoyance, embarrassment, oppression, and undue burden or expense when public figures are deposed.  *See Moriah v. Bank of China Ltd.*, 72 F. Supp. 3d 437, 440 (S.D.N.Y. 2014) ("[T]o depose a high-ranking government official, a party must demonstrate exceptional circumstances justifying the deposition.") (listing cases); *see also Hobley v. Burge*, 2007 WL 551569 at *2 (N.D. Ill. Feb. 22, 2007) ("The deposition of a high ranking public official creates unique concerns; it should not be a routine part of civil litigation.") (citing *Olivieri v. Rodriguez*, 122 F.3d 406, 409–10 (7th Cir. 1997)).  "This doctrine applies to both current and former high-ranking officials," *Moriah*, 72 F. Supp. 3d at 440, and attaches here since Strategic Vision alleges that Mr. Bannon "was reportedly involved in White House discussions in the summer of 2017 about whether Mr. Guo should be deported to China," Mot. at 5, and "was in contact with Guo either in person or through one or more interlocutors while Bannon worked in the White House." ECF No. 127 at ¶ 79.  To establish the exceptional circumstances necessary to depose Mr. Bannon, Strategic Vision must show that he "has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means." *Lederman v. New York City Dep't Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013) (citations omitted).

Strategic Vision has not demonstrated any such exceptional circumstances here, and as discussed above, it cannot.  In fact, Strategic Vision revealed its gamesmanship and transparent goal of harassing Mr. Bannon when it publicly filed a notice detailing the time, date, and location of Mr. Bannon's noticed deposition.  *See* ECF No. 204.  There was simply no reason to publish this information publicly other than to harass, annoy, and attempt to intimidate a public figure and non-party to the underlying case.  These tactics are inappropriate, and Strategic Vision should not be permitted to continue in its third party harassment campaign.  *See, e.g.*, *KGK Jewelry LLC v. ESDNetwork*, 2014 WL 1199326, at *6 (S.D.N.Y. Mar. 21, 2014) ("Given that there is no colorable basis for the issuance of the subpoenas, it appears that they were issued to either harass [plaintiff] or to delay the resolution of this action."); *McCarthy v. Sarroff*, 2003 WL 21145573, at *1 (S.D.N.Y. May 16, 2003) (quashing subpoena "being served to harass and embarrass").

* * *

In light of Strategic Vision's failure to seek timely discovery from Mr. Bannon, the Court should not grant its request for leave to extend the discovery deadline.  Should the Court grant Strategic Vision's request to extend the discovery deadline, Mr. Bannon will be forced to move to quash the subpoena in the compliance court.

Respectfully submitted,

Allison L. McGuire

*Counsel for Non-Party Stephen K. Bannon*

cc:  Counsel of record via ECF

10