


Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

December 12, 2019

VIA ECF
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

**Re: Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)-DLF/ Reply in Support of Motion for Leave to Depose Stephen K. Bannon (ECF 212)**

Dear Judge Freeman:

On behalf of Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), we write in support of its motion to depose Stephen K. Bannon (ECF 212) and to refute the responses of Mr. Bannon (ECF 216) and Eastern Profit Corp. Ltd. (ECF 218), who now for the first time oppose the deposition. The refrain common to both is that the deposition should be prohibited on procedural grounds—because it will occur shortly after the November 29, 2019 close of discovery. We urge you to find that this is no cause to preclude essential discovery, particularly given the irrefutable diligence by Strategic Vision in trying to obtain the testimony during the discovery period and the fact that Mr. Bannon simply did not appear for his November 22nd deposition. From September 25, 2019 to November 14, 2019, Strategic Vision made eleven separate attempts to personally serve Mr. Bannon with a deposition subpoena, employing three different process servers. Reasonable minds cannot differ in finding that these attempts show significant diligence by Strategic Vision. Further, there is no prejudice to Eastern Profit. Assuming Judge Koeltl allows the parties to seek summary judgment, their motions will not be due until the end of January 2020, leaving ample time to obtain Mr. Bannon's critical testimony about relevant matters in this case and include it in the motion practice.

## Introduction

As a preliminary matter, Mr. Bannon's 10-page response (filed nearly a month after Mr. Bannon was served) not only argues the timing question before this Court, it also asks this Court to quash the subpoena and consider relevance and proportionality arguments from a separate motion to quash which he now promises to file at some later point in the District of Columbia. With this, it is now clear that Mr. Bannon's discussions with counsel




in the week of his originally-noticed deposition date (November 22nd) were a ruse—nothing more than an effort to push the matter past the November 29th discovery deadline and avoid a pre-deadline appearance before this Court. This tactic is unfair and prejudicial to Strategic Vision and has led to the expensive, multi-tiered, multiple-apple-bite motion practice in which the parties now find themselves. In essence, Mr. Bannon is improperly requesting an "advisory opinion" from this Court before heading to a D.C. Judge.[1] (ECF 216, p. 1, referring to the "compliance court" in the District of Columbia)

For its part, ECF 218, Eastern Profit should not be allowed to object to the deposition after allowing numerous related events to pass without comment, let alone objection. In particular, Eastern Profit had no comment or objection to several notices of the deposition or the later notification from Strategic Vision that it could not be taken by the close of discovery:

- The September 25, 2019 Fed. R. Civ. P. 45(a)(4) notice of deposition and copy of subpoena to Mr. Bannon;
- The November 8, 2019 Fed. R. Civ. P. 45(a)(4) notice of deposition and copy of subpoena to Mr. Bannon;
- The Affidavits of Service on Mr. Bannon, filed November 19, 2019, ECF 196;
- Strategic Vision's letter motion on November 27, 2019 (ECF 210, pp. 5-6) seeking leave to conduct the deposition on December 5th; and
- The December 2, 2019 discovery conference, where Strategic Vision argued for allowing the Bannon deposition on Dec. 5th. Eastern Profit did not object.

Thus, the sole question properly before this Court comes from Mr. Bannon—whether Strategic Vision made timely and diligent efforts to serve Mr. Bannon within the discovery period that ended November 29, 2019.

**Strategic Vision Diligently Sought Mr. Bannon's Testimony During the Discovery Period and Duly Served Mr. Bannon with a Deposition Subpoena Prior to it Closing**

Mr. Bannon's question is easily answered in the affirmative. Strategic Vision's dogged efforts were successful, and Mr. Bannon was served within the discovery period—on November 14, 2019, 15 days prior to the close of discovery. Mr. Bannon's deposition also

---

[1] Just as Mr. Bannon comes to this Court to determine whether a procedural issue precludes his deposition as outside of the close of discovery, this Court's governing law regarding quashing a Rule 45 subpoena also will apply. Under it, Mr. Bannon's motion to a D.C. Judge would be untimely. *Solargen Elec. Motor Car. Corp. v. American Motors Corp.*, 506 F. Supp. 546, 552 (N.D. N.Y. 1981) ("A *deponent* [] may seek a protective order from the court … *The burden then rests upon the objecting witness* to set forth grounds for the issuance of a protective order, such as the existence of a privilege.") (emphasis added).



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




was scheduled to occur within the discovery period—November 22nd. Accordingly, Mr. Bannon's reliance on cases such as *McKibben v. Credit Lyonnais* is misplaced—service was not had on Mr. Bannon *after* discovery closed but before. Nor was the deposition scheduled after discovery closed, such that a "good cause" standard of *In re Orange Boat Sales* applies squarely here. Mr. Bannon's cases indeed are inapposite because they apply (seemingly) only because of a circumstance of Mr. Bannon's own tactical making—a deposition being sought after the close of discovery only because he refused to appear as noticed prior to the close of discovery. In sum, Mr. Bannon's deliberate refusal to appear prior to the close of discovery should not prejudice Strategic Vision by this Court employing the "exceptional circumstances" analysis employed by *McKibben* or the "good cause" analysis of *In re Orange Boat Sales*.

Mr. Bannon's focus on the November 29, 2019 deadline is likewise hypocritical because he is a non-party and lacks standing to object based on a deadline that is inapplicable to him. It is also a complete reversal of position. Mr. Bannon's counsel never expressed any concern with the deposition occurring after the close of discovery in the two telephone calls and several email communications she had with Strategic Vision before unilaterally declaring on the eve of his deposition that Mr. Bannon would not appear as subpoenaed on November 22nd, prior to the close of discovery. In fact, it was Mr. Bannon's counsel who offered December 5th as an alternative date. (Ex. I to ECF 212, Mr. Bannon's November 21st communication: "We are happy to discuss the conditions for a potential deposition of Mr. Bannon on December 5."). However, now that November 29, 2019 has safely passed without Mr. Bannon's deposition, the discovery deadline has become the focal point of nearly four pages of Mr. Bannon's argument. (ECF 216, pp. 1-5) In truth, at each side's request, discovery has been extended numerous times prior to November 29, 2019 deadline, and Mr. Bannon's insistence on rigid enforcement of that particular deadline is misplaced in the context of this case.

Even if the Court were to examine Strategic Vision's diligence under a "good cause" standard, the Court should find that Strategic Vision's months-long effort to effectuate personal service is sufficient cause to allow a deposition just outside of the close of discovery. To effectuate personal service, Strategic Vision employed three separate process servers, including one who conducted private investigation on Mr. Bannon sufficient to identify (1) how his household operates (Mr. Bannon has "handlers" who monitor entry into his townhouse); (2) the make and model of his car; and (3) an event where Mr. Bannon was scheduled to appear in New York. Over two months prior to the close of discovery, attempts were begun to serve Mr. Bannon and those attempts ultimately happened at three separate locations—his townhouse, a federal courthouse where he appeared and gave testimony in the Roger Stone trial, and the Young Republicans event in New York. In total, process



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




servers attempted to serve Mr. Bannon eleven times before personally serving him on November 14, 2019. Strategic Vision spent in excess of $5,000 to serve Mr. Bannon.

Unsuccessful attempts were due to matters outside of Strategic Vision's control, including Mr. Bannon's own decision to have "handlers" monitor his townhouse and refuse entry to a process server. Also outside of Strategic Vision's control was the selling out/unavailability of tickets into a November 7, 2019 Young Republicans event where Mr. Bannon was speaking and could have been approached by the process server. Finally, it was outside of Strategic Vision's control that the United States District Court for the District of Columbia does not allow process serving inside a courtroom—including the courtroom where Mr. Bannon testified at the Roger Stone trial.

Mr. Bannon calls Strategic Vision "dilatory" and "idle" because it purportedly waited until "the tail end of discovery" to involve Mr. Bannon in the case. This is a mischaracterization. In the first instance, there was a discovery stay in the case that Mr. Bannon ignores. Second, Mr. Bannon was never disclosed by Eastern Profit as a witness in any discovery response or disclosure, and so it took independent analysis by Strategic Vision to understand his role. Third, that analysis led to Strategic Vision's counterclaims filed not in 2018 but on July 19, 2019. (ECF 114) Approximately two months later, Strategic Vision gave notice to Eastern Profit of the subpoena being issued to Mr. Bannon. That subpoena called for an October 10, 2019 deposition but could not be served due to matters outside of Strategic Vision's control (see above). In the scheduling of depositions, it would be taken after party depositions were taken (or at least attempted).

Contrary to Mr. Bannon's assertion that Strategic Vision waited until the "tail end" of discovery, the record evidence is that the Fed. R. Civ. P. 45(a)(4) notice was given on September 25, 2019, over two months prior to the close of discovery. That such was sufficient to obtain the Bannon deposition is irrefutable because Mr. Bannon indeed *was* served well before the close of discovery, his deposition *was* scheduled prior to the close of discovery, he had over a week's notice of the deposition, he had counsel contact Strategic Vision nearly a week before the deposition,[2] and his counsel never stated that he was unavailable. Finally, Mr. Bannon's statement that Strategic Vision already had two depositions on November 22nd and therefore that the Bannon deposition was not likely to occur is simply a false statement by Mr. Bannon's counsel to this Court. Strategic Vision never made any such statement. To the contrary, Strategic Vision's counsel was about to board a plane *for the Bannon deposition* when Mr. Bannon's counsel stated he would not

[2] Mr. Bannon does not establish that the New York state civil practice, law, and rules (C.P.L.R. 5224) apply in this federal court to require 10 days' notice of a non-party deposition.



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




appear. This was after a phone conversation, attended by two of Strategic Vision's counsel, in which his attorney was told the deposition was going forward, counsel was soon to travel to the airport, and that a call to the Court was in order. Mr. Bannon's counsel declined to join such a call.

Mr. Bannon does not contest service of the subpoena on November 14, 2019. It compelled his appearance on November 22, 2019. Had there been any issue with the legal effect of the subpoena, it was incumbent on Mr. Bannon to seek relief from the Court, even if that meant failure of Mr. Bannon's ruse to avoid appearing before the Court prior to the close of discovery. Mr. Bannon took no efforts to address the subpoena in a timely manner, instead relying on a belief that this Court would never allow the deposition after the close of discovery. Mr. Bannon's machinations should fail, and the Court should allow the Bannon deposition to proceed at this time. As explained below, it will provide relevant information and is proportionate to the needs of the case.

**Mr. Bannon's Testimony Will Yield Relevant Information**
**and is Proportionate to the Needs of the Case**

In the event this Court decides to entertain Mr. Bannon's request that the subpoena be quashed on the merits, it should note that Mr. Bannon never denies that he has answers to the questions Strategic Vision would pose. (ECF 216, p. 1, claiming Mr. Bannon has "virtually" no connection with the case) Instead, Mr. Bannon primarily argues "relevance." But as Strategic Vision showed in its first letter—not fully answered by Mr. Bannon—his information will certainly be relevant. Strategic Vision's fraud claim—never mentioned by Bannon—asserts that Guo Wengui misrepresented his status as a dissident. Despite repeated efforts by Guo to block access to information and witnesses, this Court has allowed Strategic Vision to discover information about Guo's communications with the Chinese leadership in the months before he represented to Strategic Vision that he was a dissident.

Strategic Vision's Counterclaim alleges that Mr. Bannon's September 2017 trip to visit Guo's claimed arch-enemy, Wang Qishan, was on behalf of Guo and may well have been the means by which Guo received the instructions he had requested from Chinese leadership in August 2017. We now know that Bannon *reported on this trip to Guo* and others in his circle. Further, we now know that Bannon is being paid a substantial annual fee on behalf of the entity that goes by "Guo Media," a hub of Guo-produced videos and propaganda that Guo claims not to own—and to not know who owns. (Foreshadowing the valuable testimony likely to be gained in a deposition, Mr. Bannon's response seems to contradict this incredible claim by Guo, as Mr. Bannon admits he has a "professional relationship" with Guo—something that would be untrue if Guo Media was actually not owned or controlled by Guo. *See* ECF 216 at p. 8.) Further, we believe that, like many



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com



Graves Garrett LLC

others who receive money on Guo projects from ACA and William Je, Bannon has too. And Strategic has now developed evidence that ACA and Je are not the "dissidents" Guo claimed them to be, but instead have deep ties to the Mainland. It is unfortunately not the stuff of a "spy novel," then, for Bannon to have personal knowledge of Guo's interaction with the Chinese leadership and Mainland-approved financial support of Guo's U.S. activities. Tellingly, Bannon's lengthy and colorful response at ECF 216 carefully glides past a denial on this point.

Additionally, Strategic Vision has alleged that Guo's work on behalf of China includes the infiltration of U.S. "China hawk" circles and a campaign of threats and lawsuits against prominent Chinese dissidents. Strategic Vision's initial letter, ECF 212, showed how this conduct is ongoing and has targeted the man who may be Strategic's most important witness in this case—J. Michael Waller. Bannon claims, incredibly, that Guo knows more than Bannon does about this intimidation; Bannon completely ignores (and fails to deny) Strategic Vision's allegation that it is *Bannon himself* who accessed confidential materials from this case and then referred to them in Bannon conveying Guo's threats to Waller's colleagues.

The last few weeks have shown that his was not an isolated occurrence. As Strategic Vision has already informed this Court, the general counsel of an entity that Mr. Bannon chairs, the Rule of Law Society, made *ex parte* contact with another key witness, Sasha Gong (a longtime dissident, former Voice of America reporter, and former member of Guo's circle) just before Ms. Gong's deposition. Counsel falsely told Ms. Gong that she was under no obligation to appear under the deposition subpoena, since Guo would first obtain relief from the Court to halt all third-party discovery. Next, immediately after Ms. Gong's deposition, Guo somehow learned some parts of her confidential testimony and responded to it via Youtube, posting a variety of defamatory accusations and threats against Ms. Gong. Again, Mr. Bannon chairs the Rule of Law Society, whose sister nonprofit[3] provided the platform for Guo's attacks on Ms. Gong by posting them on its Youtube channel.[4] Mr. Bannon is so closely tied to Guo that he has become part of Guo's anti-dissident campaign in the U.S.

---

[3] The Rule of Law Society and Rule of Law Foundation jointly refer to themselves (and are referred to by Guo and Bannon) as the Rule of Law Fund. *See, e.g.,* https://www.youtube.com/watch?v=dmcdymI4_SQ

[4] *See, e.g.*, https://www.youtube.com/watch?v=1dFI5ZuYmpI&feature=share. Many of Guo's attack videos were removed from Rule of Law's channel, but they may still be found on Youtube and Strategic Vision is preparing certified translations.



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




The Bannon deposition is proportional to the needs of the case. Proportionality is "conjoined" to relevance because it weighs relevance with the burden on non-parties. *See Pearlstein v. BlackBerry Ltd.*, 2019 WL 5287931 at *3 (S.D.N.Y., Sept. 20, 2019) (where court approved 32 topics for foreign witness, one additional topic was denied as disproportionate because it dealt with a phone model not being litigated, there was no showing the witness would have knowledge, and the burden on the nonparty to testify without personal knowledge would be great). Mr. Bannon's testimony is relevant, and the burden on him is not substantial. He is not being asked to produce documents and, as Strategic Vision informed his counsel, his deposition is expected to last no more than half a day. Mr. Bannon does not need to prepare testimony on any specific topics and would be deposed in Washington, D.C., near where he lives. Further, Mr. Bannon will be deposed only on his interactions with Mr. Guo, or with others on Guo's behalf, as they pertain to the truth or falsity of Mr. Guo's claim to Strategic Vision that he was a dissident. Only Mr. Bannon has this information.

Finally, Mr. Bannon claims the deposition is harassing because it is an attempt to drum up a media circus about a public figure. This is wrong on two fronts. First, it is Mr. Bannon who, in conjunction with Guo, has publicly promoted his "professional relationship" with Guo, including using major media to tout his own role in handling Mr. Guo's case when he was serving in the White House.[5] If Mr. Bannon can talk on the record with the New York Times about how and why he influenced the decision on Mr. Guo, it offends no policy for him to provide that same personal knowledge in a deposition where his own role with Mr. Guo is relevant to the question of whether Guo's activities in the United States are consistent with being a dissident.

Second, it is Mr. Bannon who interjected himself into this case to harass Strategic Vision and its witnesses by conveying threats to the colleagues and employer of J. Michael Waller, who negotiated and worked on the Research Agreement for Strategic Vision. When a "non-party" accepts unauthorized access to a witness's confidential testimony and then freely tells the witness's employer he has read it, in the process of conveying threats on behalf of someone like Mr. Guo (conduct that Strategic Vision alleges is emblematic of Guo's pattern of operations in the U.S.), it should come as no great shock when the non-party's deposition is sought on that very topic. In fact, Strategic Vision's Counterclaim specifically pled facts pertaining to Mr. Bannon's role in the intimidation of Mr. Waller. ECF 127 (¶¶ 84-85). But months later, Mr. Bannon continued to do Mr. Guo's bidding in this case. His

---

[5] See https://www.nytimes.com/2018/12/04/business/stephen-bannon-guo-wengui-china.html



Graves Garrett LLC

Rule of Law Society general counsel contacted a key witness to suggest that she need not comply with her deposition subpoena. Then, after the witness testified, the Society's sister entity published Guo's recorded response to her confidential testimony, including attacks and threats. It is the height of irony for a person who interferes so substantially in a litigation to claim "harassment" when he is eventually asked to appear and give testimony about his actions.

We appreciate the Court's attention to this important matter.

Respectfully submitted,

Edward D. Greim

Counsel for Defendant/Counterclaim Plaintiff
Strategic Vision US, LLC

cc: Counsel of record via ECF
Counsel for Steven Bannon, Allison McGuire and Alex Spiro, via electronic mail