

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

December 23, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:    Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (JGK)-DCF
            Motion to Enforce Subpoenas to Nonparties

Dear Judge Freeman:

    Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), moves the Court for an order enforcing various subpoenas to nonparties AT&T and Google, and enjoining counsel for nonparties to this action from further interference with other lawfully served subpoenas. The objecting parties lack standing to object to the nonparty subpoenas on the basis of overbreadth and burden, and they fail to state particularized objections or assert some personal right or privilege with regard to the documents sought by the subpoenas. Further, counsel for the objecting parties refuses to specify on which clients' behalf they object, asserting an impermissible blanket objection on behalf of all recipients, and leaving Strategic Vision without a way forward to even attempt to narrow the subpoenas. Lacking standing and failing to assert any personal privilege or right, Guo and GSNY's objections to the nonparty subpoenas—which seek relevant and not privileged information—should be overruled.

    Finally, Strategic Vision asks this Court for an order barring counsel for third parties Guo Wengui ("Guo") and Golden Spring (New York) Ltd. ("GSNY") from further impermissible interference with subpoenas to nonparties where no motions to quash have been made and the subpoena recipient itself has not objected. "Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command." *Price v. Trans Union, L.L.C.,* 847 F.Supp.2d 788, 794 (E.D.Pa. 2012). This impermissible attempt to subvert the court's role in the discovery process exposes counsel to sanctions.

### Background

    Throughout this litigation, counsel for third parties Guo Wengui ("Guo") and Golden Spring (New York) Ltd. ("GSNY") have sought to prevent Strategic Vision from obtaining relevant discovery. After multiple attempts to discover information highly relevant to its claims and defenses through depositions and standard discovery, Strategic Vision served several subpoenas on



nonparties, including AT&T and Google—for account and registration information showing contacts with Mainland China by ACA, GSNY, Guo, and their agents and employees who are inextricably intertwined with the facts of this case. *See* Ex. A. These third-party subpoenas do not seek the contents of communications, but instead request standard registration and account information, addresses, and data showing whether the account holders and authorized users had contacts with mainland China[1]—information that could destroy the narrative by Eastern Profit, GSNY, Guo, and others that Guo is a dissident. Though Strategic does not believe responsive information would implicate privacy interests of the nonparties, any privacy concerns are protected by the confidentiality provisions of the protective order in this case. *See* Dkt. No. 40.

Following the service of these third-party subpoenas to AT&T and Google on October 21, 2019, October 31, 2019, and November 4, 2019, counsel for Guo and GSNY filed two letter motions purporting to object to—but not asking the Court to quash—the subpoenas. Dkt. Nos. 191, 192. Counsel for Guo and GSNY refused to specify which accounts subpoenaed belong to their clients, but made blanket objections that the records sought were "wildly overbroad" (Dkt. 191) and "unduly burdensome and plainly harassing" (Dkt. 192). Counsel's objections to the phone provider subpoenas (Dkt. No. 191) were made only on behalf of GSNY—though they admit the subpoenas request records from "GSNY and others"—none of whom objected despite receiving notice from the provider. Similarly, counsel for Guo and GSNY's letter objecting to the Google subpoenas for registration information did not specify which email addresses and YouTube accounts belong to their clients, instead conceding that only "[o]ne of the three YouTube accounts and one of the six email addresses for which information is requested are Mr. Guo's and one of the six email addresses is that of Yvette Wang." Dkt. No. 192.

During a November 8 phone conference, the Court acknowledged that the objections were not styled as motions to quash,[2] but directed the parties to "have a full good faith conference." Dkt. No. 193. Counsel for Strategic then attempted to confer with Guo and GSNY about the subpoenas. Counsel for Guo and GSNY refused to specify the basis for their objections or even which clients had standing to object, though they conceded they do not represent owners of all of the accounts listed in the subpoenas. In subsequent communications with Strategic Vision, counsel for Guo and GSNY refused to specify the basis for their objections to the Google and AT&T subpoenas, or even to provide a basis for standing to object to these third-party subpoenas. *See* Ex. B. Counsel would not provide Strategic Vision with a list of the accounts to which they referred in the November 8 letter motion, though they conceded that not all of the Google accounts subpoenaed belonged to their clients. *See* Dkt. No. 192. Strategic Vision offered the possibility of narrowing the subpoenas if it could learn which of the accounts listed belonged to their clients. Counsel for Guo and GSNY continued to withhold the basis for objecting to the subpoenas in their entirety, nor would they say which of the Gmail addresses or YouTube accounts belong to their clients. It is fair to say, however, that very little of the contested information belongs to their clients. For example, Counsel for Guo and GSNY refused to withdraw objections to the portions of the YouTube subpoenas seeking registration information from Guo Media YouTube accounts, though they did conceded

---

[1] An earlier objection by counsel for GSNY resulted in Strategic's withdrawal of a request for "geographic tracking" information in subpoenas to Google, Twitter, and LinkedIn.

[2] Dkt. No. 193, Tr. Conference at 15:23-25 ("…I'm not sure that these matters are fully submitted as motions to quash.")



that they did not represent Guo Media. Guo apparently maintains his claim to have standing to object on behalf of Guo Media despite the fact that Guo has testified under oath to have no control over Guo Media and to not know who owns or controls it. Guo Tr. 219:7-14.

It remains unclear which accounts listed in the AT&T and Google subpoenas belong to Guo and GSNY, or clients of their counsel. As explained in detail below, counsel for Guo and GSNY lack standing to object to these nonparty subpoenas. Counsel for one party cannot ask for an order to protect the rights of another party where that party does not seek the relief himself, and where they assert no personal right or privilege over the subpoenaed information. Because there is nothing in their letters "that could be construed as claiming any personal right or privilege impacted by the information sought in the subpoenas," this court should deny counsel for Guo and GSNY's attempts to quash these subpoenas in their entirety. *See Wood v. Mut. Redevelopment Houses, Inc.,* 2019 WL 6174369, at *8 (S.D.N.Y. Nov. 19, 2019) (Freeman, J.).

Even more troubling, in the days since Strategic conferred with Guo and GSNY's counsel about the nonparty subpoenas and informed them it planned to move to compel, counsel for Guo and GSNY affirmatively contacted at least one other recipient of *different* third party subpoenas on the eve of its scheduled production. Counsel for Guo and GSNY affirmatively instructed this provider not to respond to Strategic's lawfully served subpoenas, even though no motion to quash has been filed and no order from this Court has issued. These attempts to interfere with nonparty subpoenas are the type of improper conduct that has warranted sanctions in many other courts and they must not be allowed here.

**The Subpoenas Seek Relevant Information**

Federal courts are authorized to enforce subpoenas to non-parties to "compel testimony or the production of documentary evidence in an ongoing case." *Estate of Ungar v. Palestinian Auth.*, 396 F. Supp. 2d 376, 379 (S.D.N.Y. 2005). Subpoenas allow a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (Freeman, J.) (citing FED. R. Civ. P. 26(b)(1)). "Relevance for purposes of discovery is an extremely broad concept." *Ross v. UKI Ltd.*, 2004 WL 67221, at *7 (S.D.N.Y. Jan. 15, 2004). Indeed, "[i]nformation sought is relevant if there is 'any possibility' that it may lead to the discovery of admissible evidence regarding any claim or defense." *Zinter Handling, Inc. v. General Electric Co.*, 2006 WL 3359317, at *4 (N.D.N.Y. Nov. 16, 2006).

Rule 45 subpoenas are subject to the relevance requirements set forth in Rule 26(b) such that "the district judge need not . . . quash a subpoena . . . if there is any ground on which [the documents sought] might be relevant." *Crespo v. Beauton*, 2016 WL 259637, at *2 (D. Conn. Jan. 21, 2016). Accordingly, courts regularly enforce subpoenas to nonparties where, as here, the subpoena seeks relevant information under Rule 45. *See In re Kleimar N.V.*, 220 F. Supp. 3d at 522 (S.D.N.Y. 2016) (denying motion to quash and finding relevance, and no undue burden, where movant "was already able to identify many transactions and documents responsive to the subpoena"); *Crespo*, 2016 WL 259637, at *2-3 (finding relevance where the documents requested were "relevant to the reasonableness of" defendant's conduct as they "provid[ed] context for how



[defendant] acted in relation to how the rules and regulations" said defendant should act); *Coen v. Americare Certified Special Servs., Inc.*, No. 13-cv-5522, 2014 WL 1237258, at *2 (E.D.N.Y. Mar. 25, 2014) (finding "the documents sought are sufficiently relevant to be discoverable, in that they may well corroborate the allegations in the Complaint" and "do relate to matters that are very much in dispute").

The requested material is directly relevant to Strategic Vision's breach of contract defense and fraud counterclaim. For the contract defense, Strategic Vision will show that Je (using ACA, which he controls after being hired for that purpose by Guo) is simply the "money man" for Guo's U.S. influence operation; that all of the entities (which Guo claims are distinct) actually work in unison under his direction, so that the "loan" between ACA and Eastern Profit was a sham; that Eastern never paid Strategic Vision money recoverable via breach of contract, and there is no expectation that Eastern will ever "repay" ACA for the money advanced to Strategic; and that Je himself, who Eastern Profit claimed was "chasing" it for loan repayment, actually advised Guo not to file this lawsuit to recover the $1 million in ACA funds paid to Strategic. With respect to the fraud claim, as Strategic Vision has already argued, ACA and Je's connection to the PRC and CCP—to be very clear, to the Mainland—destroy any claim that Guo and his network are true dissidents who don't (and can't) move money from Hong Kong and the Mainland for "dissident" operations in the U.S. *See* Strategic Vision's Motion to Compel and Reply regarding ACA and Je (Dkt. Nos. 197 and 206). Indeed, even though Eastern Profit claims that all of its Hong Kong assets were frozen because its dissident activity with Guo ran afoul of the CCP on the Mainland, ACA—a conspicuous part of Guo's network—freely pays for Guo's operations in the U.S., including the contract at issue. *Id.*

Strategic has sought the phone records of Guo, as well as others in his network who have not objected, to show that (1) the supposedly independent entities all use the same few agents; and (2) several of these, who are supposedly "dissidents" who were directly involved with Strategic's contract, in fact have made high volumes of calls and texts on open lines to the Mainland, and that activity corresponds to key events in this case—such as the wiring of ACA's money to Strategic Vision. A longtime dissident, Sasha Gong, recently testified that one would never expect to see such calls from true dissidents to the Mainland, even where (as she does) that dissident still has family who are under threat by the regime. We believe the records will show that just such calls are occurring.

Second, non-phone-record subpoenas to Google, Youtube, and GoDaddy (not all of which are or have been objected to) will show who actually registered and, in some cases, is billed for, the accounts of supposedly independent entities and individuals. Further, in some cases, these records will show that authorized users access the accounts and control key websites directly from Mainland China—a substantial development in the case. It is not entirely unexpected, however, given ACA's (through William Je) continuous business on the Mainland (*see* Dkt. 197), and Mr. Je's roles in advising Mainland governmental units, in serving directly and openly on the Chinese People's Political Consultative Conference, and in serving on a Chongqing-Hong Kong "patriotic group" of the type Beijing is known to use to exert political influence in Hong Kong. *See* Dkt. 197 (providing general information on Je). Finally, two Youtube accounts subject to the subpoena are themselves believed to be run by the CCP. Surely Guo and GSNY do not claim standing to object to



these subpoenas. Indeed, if their stories are true, they should welcome information Strategic is about to uncover regarding their supposed tormentors.

In short, the internet-related subpoenas will show that Guo, Je, and their entities, Eastern Profit, GSNY, and ACA are extraordinarily intertwined and are tethered to the Mainland.[3] Where a subpoena to a nonparty seeks information designed to ascertain the contacts and financial relationships among entities that are "extraordinarily intertwined" with parties, a motion to quash should be denied. *See Ross v. UKI Ltd.*, 2004 WL 67221 at *7 (S.D.N.Y. 2004) (allowing plaintiffs to take discovery regarding relationships among defendants where there were allegations suggestive of an alter ego relationship); *Zinter Handling v. General Electric Co.*, 2006 WL 3359317, at *4 (N.D.N.Y. 2006) (denying motion to quash where movant argued that non-party and defendant were two distinct and separate entities where evidence proffered on motion showed that two companies, although distinct legal entities, were "extraordinarily intertwined"); *State Farm Mut. Auto. Ins. Co. v. Accurate Med., P.C.*, 2007 WL 2993840, *1 (E.D.N.Y. Oct. 10, 2007) (denying motion to quash subpoenas served on non-parties) ("[T]he scope of the subpoenas is appropriate for ascertaining the financial relationship of the moving defendants and non-parties.").

### Guo and GSNY Lack Standing to Move to Quash the Subpoenas

As a threshold matter, Guo and GSNY have not demonstrated that they have standing to challenge the subpoenas in question. As this Court has held, a party will not have standing to object to a subpoena directed to a third-party in the absence of a claim of privilege. *Arista Records LLS v. Lime Group*, 2010 WL 11586794, at *1 (S.D.N.Y. Oct. 10, 2010) (Freeman, J.) (*citing Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.") (footnote omitted).

As recently as last month, this Court reiterated the rule on standing to quash nonparty subpoenas, denying a motion to quash for lack of standing. *See Wood*, 2019 WL 6174369, at *8 ("As there is nothing in Defendants' May 15 letter that could be construed as claiming any "personal right or privilege" impacted by the information sought in the subpoenas, Defendants' motion to quash is denied for lack of standing."). Likewise, Guo and GSNY have not established any expectation of privacy in their business transactions with other corporations and have made no factual showing that the records are confidential. *Clayton Brokerage Co., Inc. v. Clement*, 87 F.R.D. 569, 571 (D.Md.1980) (bank customer had no legitimate expectation of privacy in the contents of checks, deposit slips and other banking documents subpoenaed from his bank and, therefore, lacked standing to challenge the subpoena issued to the bank). Here, "neither a personal privilege nor right has been asserted…as the basis for their motion to quash the subpoena. Accordingly, the defendants have no standing to object to the subpoena served by the plaintiff on the non-party." *Freydl v. Meringolo,* 2011 WL 1226226, at *1 (S.D.N.Y. Mar. 25, 2011).

---

[3] To be clear, Strategic is not asserting that Guo is liable under an alter ego theory; it is instead asserting that his entities work as a unit under his direction under funding provided by an entity—ACA—with Mainland ties and which could be shut down if the PRC wanted to do so, but has instead been allowed to operate.



Guo and GSNY do not present any personal right or privilege that would be impacted by the information sought—indeed, their counsel refuses to even specify which persons' information is implicated. Instead, they object on the basis that the subpoenas to Google and AT&T are "patently overbroad, unduly burdensome, and plainly harassing." Dkt. No. 192. An "undue burden" objection cannot succeed here. It is the subpoena recipients themselves, not Guo and GSNY, who have standing to challenge the third-party subpoenas as overly broad or unduly burdensome. *See* Fed. R. Civ. P. 45(c)(2)(B), 45(c)(3). *See Hatamian v. Advanced Micro Devices, Inc.*, 2015 WL 7180662, at *4 (N.D. Cal. Nov. 16, 2015). "Because the subpoena does not obligate Defendant to do or produce anything," GSNY and Guo cannot object to the subpoena on the grounds that it would constitute an undue burden. *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016). Additionally, because the subpoenas seek only names, addresses, registration, account and billing information—not contents of communications—Guo and GSNY cannot raise a plausible claim of privilege or right that the subpoena would impair. *See Malibu Media, LLC v. Doe No. 4*, No. 12-CV-2950, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("[C]ourts in various jurisdictions around the country have extensively addressed this issue ... and those courts have held that John Doe Defendants generally have no standing to move to quash [a] subpoena that is issued to a third party, such as an ISP, on the basis of undue burden." (internal quotation marks omitted)).

Guo and GSNY object to production of the AT&T and Google records on the grounds of confidentiality but cite no authority to support their argument. *See* Fed.R.Civ.P. 45(c)(3)(A)(iii). Where no privilege attaches to the records and production "would not reveal information of the sensitive nature explicitly specified in Rule 45(c)(3)(B)," the subpoenas must be enforced." *In re Application of FB Foods, Inc.*, 2005 WL 2875366, at *1 (S.D.N.Y. Nov. 2, 2005) (citations omitted). Guo and GSNY do not assert any specific privilege or personal right with regard to the documents sought by Strategic Vision's subpoenas. *Arista Records*, 2010 WL 11586794 at *1. "[T]he claim of privilege or right must be personal to the movant, not to the non-party witness on whom the subpoena was served." *Samad Bros., Inc. v. Bokara Rug Co. Inc.,* No. 09-CV-5843, 2010 WL 5094344, at *2 (S.D.N.Y. Nov. 30, 2010).

Here, the subpoenas directed providers AT&T and Google—not Guo and GSNY—to produce information. "Because the subpoena does not obligate Defendant to do or produce anything," Defendant cannot object to the subpoena on the grounds that it would constitute an undue burden. *Malibu Media*, 2016 WL 5478433, at *3. Even if Guo and GSNY had standing, they would be unable to show that the subpoenas to AT&T and Google constitute an undue burden. "Because the burden [of proof] is on the party seeking to quash a subpoena, that party cannot merely assert that compliance with the subpoena would be burdensome without setting forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Kirschner v. Klemons*, No. 99-CV-4828, 2005 WL 1214330, at *3 (S.D.N.Y. May 19, 2005) (citation omitted). Contrary to Guo and GSNY's assertion, Strategic Vision's subpoenas would not provide it with access to Guo's or GSNY's Internet downloads or the content of its communications. Production of this narrow and limited set of information does not pose an undue burden. *Strike 3 Holdings, LLC v. Doe*, No. 17-CV-9659 (VEC), 2018 WL 2371730, at *2 (S.D.N.Y. May 23, 2018).



Guo and GSNY's ability to challenge these subpoenas is restricted to protecting their privileged information, if any. To the extent Guo or GSNY has any other objection other than privilege, they have no standing to assert that objection. "Outside the context of a party claiming attorney-client privilege or some other personal right, only persons to whom subpoenas are directed have standing to challenge their validity through a motion to quash." *DeMarco v. Chomas,* 08-CV-143, 2008 WL 4693541 at *3 (E.D. Wis. Oct. 23, 2008) (citing *Hunt Intl Resources Corp. v. Binstein,* 98 F.R.D. 689, 690 (N.D. Ill. 1983) and *Brown v. Braddick,* 595 F.2d 961, 967 (5th Cir. 1979)).

### Guo and GSNY's Objections about Confidentiality Fail

Guo and GSNY object on the basis of confidentiality, complaining that the subpoenas to AT&T seek "invasive and private" records (Dkt. No. 191) and that the subpoenas to Google seek "private contact information" that "in the wrong hands could compromise their safety." Dkt. No. 192. But as this Court has held, a claim of confidentiality is not a ground to withhold production of third-party discovery, at least where the case has a protective order. *Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (Freeman, J.) (quoting *Rankine v. Roller Bearing Co. of America, Inc.*, 2013 WL 3992963, at *4 (S.D. Cal. Aug. 5, 2013)) (denying the motion to quash a subpoena and finding that the stipulated protective order adequately addresses any concerns regarding the production of potentially confidential commercial information).

As this Court has held, to the extent the information sought in the nonparty subpoenas is confidential, "this issue can be addressed by a protective order," which is already in place in this matter. *See Koch*, 2009 WL 2143634, at *2. Like the plaintiff in *Koch*, Guo and GSNY's claim of confidentiality fails as a basis of withholding the discovery. "Accordingly, quashing or modifying the Subpoenas when such a protective order remains outstanding is unwarranted." *Id.* (citing *Kleimar,* 220 F. Supp. 3d at 522 (where the opposing party's "confidentiality issues can be addressed by a protective order . . . such concerns are not severe enough to warrant quashing the subpoena"); *Coen,* 2014 WL 1237258, at *1 (denying defendants' motion to quash and agreeing with plaintiff that "defendants' confidentiality concerns may be addressed by having the [confidential] documents designated as confidential pursuant to the parties' Confidentiality Agreement.")).

### Guo and GSNY's Remaining Objections Fail to State with Particularity the Grounds for Objecting

Counsel for Guo and GSNY have asserted blanket objections to the entirety of the AT&T subpoena seeking information related to eight phone accounts, to the Google subpoena seeking information related to eight YouTube accounts, and to the Gmail subpoena seeking information related to six email accounts. The objection letters filed with this Court, Dkt. Nos. 191 and 192, do not specify to which portions of the subpoena counsel for Guo and GSNY object; indeed, they concede that only one of the YouTube accounts and one of the six email addresses belong to their clients and refuse outright to specify which of the eight AT&T numbers belong to their clients. Numerous informal conferences to resolve this dispute have yielded no further information from Guo and GSNY's counsel.



These vague, unsupported objections do not provide Strategic Vision sufficient information to offer to narrow the requests, much less allow this Court to quash the discovery. "A non-party's Rule 45(d)(2)(B) objections to discovery requests in a subpoena are subject to the same prohibition on general or boiler-plate [or unsupported] objections and requirements that the objections must be made with specificity and that the responding party must explain and support its objections." *American Federation of Musicians of the United States and Canada v. Skodam Films, LLC*, 313 F.R.D. 39, 46 (N.D.Tex., 2015) ((citing *Heller v. City of Dallas*, 303 F.R.D. 466, 483 (N.D. Tex. 2004), and adopting "the explanations in *Heller* of what is required to make proper objections and how to properly respond to discovery requests"). Although [Federal Rule of Civil Procedure] 34 governs document discovery from a party and not a non-party, see Fed. R. Civ. P. 34(c)," "Rule 34(b)(1)'s reasonable particularity requirement should apply with no less force to a subpoena's document requests to a non-party," so too "a non-party's Rule 45(d)(2)(B) objections to those requests should be subject to the same requirements facing a party objecting to discovery under Rule 34." *Am. Fed'n*, 313 F.R.D. at 44, 46.

### Counsel for Guo and GSNY Unlawfully Interfered with a Third Party Subpoena, Which Should Be Enforced

On December 23, 2019, Strategic Vision learned that counsel for nonparties Guo and Golden Spring (New York) Ltd. ("GSNY") interfered with duly-served subpoenas on at least one third party (there may be others) by asking the third party not to produce information covered by the subpoena, though no motion to quash had been filed. Ex. C, E. There is no basis for defense counsel to interfere with the proper service of a subpoena on a third party where no motion to quash was filed, and multiple courts have sanctioned counsel for advising third parties not to comply with a subpoena.[4]

As a result of this interference, Strategic Vision notified this third party, GoDaddy, that no motion to quash had been filed and this Court had not entered any order related to GoDaddy. Ex. D. Strategic Vision notified GoDaddy of its obligation to produce responsive documents that GoDaddy itself had no objection to producing, and GoDaddy agreed that in the absence of a motion to quash, it would produce responsive information. *Id*. Nevertheless, despite being notified of its inappropriate interference with discovery, counsel for Guo and GSNY notified GoDaddy that it was not to provide responsive information, and belatedly filed a motion that failed to list any personal right or privilege with regard to the documents sought by the subpoenas. Dkt. No. 225.

This Court should not allow counsel for a nonparty to improperly interfere with subpoenas seeking information from *entirely different third parties*. Advising a third party to ignore a subpoena is sanctionable behavior. *See e.g., Moses v. Am. Apparel Retail, Inc.*, 2015 WL 4665968, at *13 (W.D. Tenn. Aug. 6, 2015) (finding plaintiff's interference in third-party subpoenas to be sanctionable conduct and grounds for dismissal in a case where plaintiff advised non-party to not comply with subpoena); *Price v. Trans Union, LLC*, 847 F.Supp.2d 788, 794 (E.D.Pa.2012)

---

[4] Most recently, the general counsel of another Guo-controlled entity, the Rule of Law Foundation, contacted key witness Sasha Gong and told her she would not need to comply with a subpoena by attending her duly-noticed deposition on November 27, 2019, since Guo was going to file a motion to block all third-party discovery. (*See* Dkt. No. 210, p.2, recounting the November 22, 2019 incident).



("Nowhere in the Rule is it contemplated that the adversary of the party seeking the information may advise, no matter the reasons, the person commanded by the subpoena to produce the information to ignore the subpoena's command. Yet, that is exactly what happened here. Mr. Soumilas took it upon himself to limit or attempt to "quash" the subpoenas by sending his Advice Letters. In doing so he arrogated to himself a power assigned to the Court under the Rule. The violation is clear and it is sanctionable."); *Fox Indus., Inc. v. Gurovich*, No. 03-5166, 2006 WL 2882580 (E.D.N.Y. Oct. 6, 2006) ("the court finds that the letters sent by Schwarz to the non-parties are sanctionable, whether they were faxed to Saffer matter of law and that the recipients "may not comply with [the] illicit subpoenas..." It is the court's duty to rule on the validity of subpoenas and to direct the recipients to comply or not comply, not the attorney's, and Mr. Schwarz has, simply put, usurped the authority of the court."); *Hatamian*, 2015 WL 7180662, at *4 ("the adversary of the party seeking the information cannot move to quash or otherwise challenge a third-party subpoena, nor can the adversary advise third parties to object to the subpoena or ignore its production command."); *Robbins & Myers, Inc. v. J.M. Huber Corp.*, 2011 WL 3359998, at *3 (W.D.N.Y. Aug. 3, 2011) (awarding sanctions where "but for [plaintiff counsel's erroneous] advice to [subpoena subject] that Defendant's subpoena should be dishonored[, subject] would have timely complied without the necessity of the instant motion to compel.").

In any event, the subpoenas to GoDaddy should be enforced for the same reasons as those to AT&T and Google—counsel for Guo and GSNY lack standing to object to those subpoenas in their entirety; six of the eight domains for which registration information is sought belong to entities other than Guo or GSNY that did not object; and Guo and GSNY have made no attempt to show a claim of privilege or personal right to any information responsive to those subpoenas. The motion to quash must be denied.

For all of these reasons, Strategic Vision respectfully requests the Court enter an order enforcing the subpoenas to AT&T, Google, and GoDaddy, and enjoining counsel for Guo and GSNY from further interference with third-party subpoenas in this matter. Strategic Vision is available for a conference to discuss these matters further.

Respectfully submitted,

*/s/ Edward D. Greim*

Edward D. Greim
Attorney for Defendant/Counterclaimant