

Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

December 24, 2019

<u>VIA ECF</u>
Hon. Debra Freeman
Daniel Patrick Moynihan
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re:    **Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (JGK)-DCF**
       **Response to William Je Motion to Quash Subpoena to Google (ECF 227)**

Dear Judge Freeman:

Defendant/Counterclaimant Strategic Vision US, LLC ("Strategic Vision"), hereby responds to the Motion to Quash (ECF 227) filed yesterday by William Je (a/k/a Je Kin Ming), who objects to Strategic's subpoena to Google for Google's business records relating to the maintenance of Mr. Je's account. The motion should be overruled, and if it is, then Google—which actually holds the information and does not object—will produce account-related information, but not the contents of any of Mr. Je's emails.

Notwithstanding the existence of a protective order in this case, Mr. Je claims that Google's information about the registration of his Gmail account (William.je8@gmail.com) and his whereabouts when accessing it is sufficiently "private" that Google should be blocked from producing it—even if it is treated as confidential under the protective order. Mr. Je also claims he and his ACA entity are irrelevant to this case, which he mistakenly characterizes as one for breach of contract. Additionally, Mr. Je claims standing to object that the subpoena was overly burdensome for Google because the return date was too soon, and has injured Google by causing a post-discovery-deadline production. Mr. Je is wrong on all counts.

1. **First, the discovery is relevant.** As Strategic Vision is showing, William Je is second in importance only to Guo himself, both with respect to the contract and fraud claims. In Eastern Profit's telling, Je and ACA were to receive the fruits of the Strategic Vision contract; on that basis, Je and ACA negotiated and extended a $1 million "loan" that Eastern Profit is using to claim the ACA wire of $1 million was really Eastern's money. Eastern Profit claims Je "chased" it in New York City to obtain "repayment" and met with Eastern multiple times to discuss repayment and this lawsuit; and claims that Je told Eastern that it might not even try to collect the loan if Strategic's information proved valuable. Je serves as the cut-out for a supposedly separate entity that must be repaid if Eastern obtains a judgment in this case. There is already reason to doubt this story: Guo's other confidant, Lianchao Han, has already testified that William Je was in a small group of three individuals who advised Guo on whether the instant lawsuit should be filed. *See* Lianchao Han. Tr.



24:17-25:9; 26:4-27:11 (Ex. A). Directly contradicting Eastern Profit's claim that Je has been hounding it for repayment of the ACA "loan" and pressing for a win in this case to make that happen, Lianchao Han admits that Je advised Guo not to file the case at all. *Id.* The reason is now obvious: given ACA and Je's involvement, it had the potential to expose Guo's network and Mainland-connected funding sources.

On the fraud claim, of course, Mr. Je's Mainland (and PRC and CCP) connections are crucial to destroying once and for all the narrative of Guo and Eastern Profit that they are all dissidents, that the CCP's crackdown has caused their assets in Hong Kong to be frozen in court proceedings, and that bringing down the CCP on the Mainland will necessarily cause Eastern's Hong Kong assets to be frozen. Can this story be true? It is Je who releases ACA's Hong Kong funds to pay for Guo's public "dissident" operations in the U.S.—and this happens openly, including ACA's payment to Strategic. Why haven't Je and ACA been stopped, just like all of Guo's other entities, including Eastern Profit? The answer is that Guo's main source of money is ACA; Je and ACA are intertwined with the Mainland; and Je himself—far from being a dissident, as uniformly claimed by Guo and his underlings—works to advance Beijing's goals.

Subpoenas are an appropriate vehicle to establish these facts. They allow a party to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Koch v. Greenberg*, 2009 WL 2143634, at *2 (S.D.N.Y. July 14, 2009) (Freeman, J.) (citing FED. R. Civ. P. 26(b)(1)). "Relevance for purposes of discovery is an extremely broad concept." *Ross v. UKI Ltd.*, 2004 WL 67221, at *7 (S.D.N.Y. Jan. 15, 2004). Indeed, "[i]nformation sought is relevant if there is 'any possibility' that it may lead to the discovery of admissible evidence regarding any claim or defense." *Zinter Handling, Inc. v. General Electric Co.*, 2006 WL 3359317, at *4 (N.D.N.Y. Nov. 16, 2006).

Here, the best source of evidence would be William Je himself. Unfortunately, as Strategic was forced to conclude in a conference with this Court held to address Strategic's motion to compel ACA to provide documents and testimony (ECF 197 and 206), months of effort—including an attempt to depose ACA itself—had failed. Strategic had no way of finding Mr. Je or ACA in the United States. Further, no witness will provide details on where Je can be found. Indeed, Je's counsel declined to say where Je was, except that he was out of the country. Further, his counsel declined an offer to provide testimony in return for a withdrawal of the subpoena. But Je is not entirely off the grid, and Google's business records regarding Mr. Je is the next-best source of U.S.-based information. We expect it to show, at a minimum, who set up and operates Mr. Je's Google account; where Mr. Je may be found when he comes to the U.S., which may aid in serving a trial subpoena; and most importantly, whether Mr. Je has been accessing his Google account from the Mainland. This is significant, as Guo and Eastern Profit's witnesses continually claim that business associates, colleagues, and family are imprisoned and harassed on the Mainland, and redact testimony and filings in this case based on claims that disclosure means that "millions" of Chinese will die. Business records establishing Mr. Je's frequent presence on the Mainland[1] will demonstrate that William Je,

---

[1] There is good reason to believe that Mr. Je's records will show such access. His own LinkedIn admits his service for Chongqing (a Mainland metropolis larger than New York City) on the Chinese People's Political Consultative Conference. https://www.linkedin.com/in/williamje/?originalSubdomain=hk. Also,



the man fellow Guo operative Lianchao Han (also, curiously, a client of Mr. Je's current attorney) claims was "hired" by Guo to manage Guo's money is not a dissident, but is instead a man subject to the control of the CCP and PRC. *See* Lianchao Han. Tr. 24:17-25:9; 26:4-27:11 (Ex. A).

2. **Mr. Je's alleged privacy interests in Google's records cannot support a motion to quash.** As this Court has held, a party will not have standing to object to a subpoena directed to a third-party in the absence of a claim of privilege. *Arista Records LLS v. Lime Group*, 2010 WL 11586794, at *1 (S.D.N.Y. Oct. 10, 2010) (Freeman, J.) (*citing Langford v. Chrysler Motors Corp.*, 513 F.2d 1121, 1126 (2d Cir. 1975); *see also* 9A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2459 (3d ed. 2008) ("Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought.") (footnote omitted).

Here, because the subpoena seeks only names, addresses, registration, account and billing information—not contents of communications, and not the unmasking of any anonymous user—Je cannot raise a plausible claim of privilege or right that the subpoena would impair. *See Malibu Media, LLC v. Doe No. 4*, No. 12-CV-2950, 2012 WL 5987854, at *2 (S.D.N.Y. Nov. 30, 2012) ("[C]ourts in various jurisdictions around the country have extensively addressed this issue ... and those courts have held that John Doe Defendants generally have no standing to move to quash [a] subpoena that is issued to a third party, such as an ISP, on the basis of undue burden." (internal quotation marks omitted)).

Je incorrectly claims standing under the right of an internet user to speak anonymously, which is given qualified protection under the First Amendment. See Je Motion (ECF 227 at p. 10), citing *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 119 (2d Cir. 2010); *Malibu Media, LLC v. Doe*, No. 15-CV-3147, 2016 WL 5478433 *2 (S.D.N.Y. Sept. 29, 2016). But in those and similar cases, a copyright-holding plaintiff is typically using a Rule 45 subpoena to an Internet Service Provider ("ISP") to discover the identity of a "John Doe" infringer-defendant. Here, everyone knows, and Je admits, that the Gmail address is his. No one is claiming that he engaged in potentially protected anonymous speech; no one is seeking to uncover that speech; and no one knows or seeks to know what is in his emails. Instead, as Je admits, Strategic seeks to obtain the address and other contact information associated with Je's accounts, as well as records of his whereabouts (generally speaking, by identification of ISPs) during his log-ins.[2] But **not one** of Je's cases holds that such information from a known, self-identified speaker is subject to any degree of privacy protection. And that was Je's burden under Rule 45(d)(3)(A)—to show that this basic business record information is "privileged or protected" within the meaning of Rule 45.

Je also seems to suggest that the subpoena seeks "financial" records akin to banking records. ECF 227 at p. 5. But in fact, the request only seeks "billing" records, to the extent any such records

---

he is currently a member of a Chongqing-Hong Kong "patriotic group" of the type Beijing is known to use to exert political influence in Hong Kong. *See* ECF. 197 (providing general information on Je).

[2] If the person who actually set up and maintains Je's account is not Je, that, too, could be significant, but then Je would not be the person with standing to raise an anonymity interest. Further, Je makes no such claim.



would exist with respect to a free Gmail account. To the extent Google maintains a billing address, that may well be produced—but Je never explains (and can't explain) why this is tantamount to the sort of in-depth record of a person's financial life that some (but not all) courts have found to support limitations on subpoenas of banking records. Nor is it similar to "employment and personnel files" or other records of "financial and business dealings." *Id.* at 6.

      3. **Je lacks standing to raise his objection that the time for compliance was too short.** As Strategic Vision has argued with respect to similar motions raised by Mr. Je's colleague, Guo Wengui, one non-party has no standing to object to the burden a subpoena allegedly imposes on another non-party. *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *3 (S.D.N.Y. Sept. 29, 2016) ("Because the subpoena does not obligate Defendant to do or produce anything," Defendant cannot object to the subpoena on the grounds that it would constitute an undue burden). Here, Je objects that Strategic Vision delayed in deciding to subpoena Google,[3] imposing an unnecessary burden on Google. ECF 227 at pp. 3-4. As Je seems to acknowledge by framing his argument in this way, this is not a question of reopening discovery; the Google subpoena was served before the close of the discovery deadline and could have been complied with before the end of the deadline, although the return date was post-deadline and (with no party's objection) Google was still working on its response when Mr. Je suddenly materialized to object weeks after service and notice. Google has not refused to produce the documents, and a quick response and production is expected if Mr. Je's "burden" objection is overruled. In short, the quick turn-around on this timely-served subpoena cannot be a basis to sustain Mr. Je's motion.

      4. **Je did not follow this Court's procedures in bringing his motion.** Je seeks attorneys' fees, but he himself did not follow this Court's Rule II(A), which would require a letter motion and Court conference. Further, Je seems to seek relief from Judge Koeltl. Counsel have discussed these issues, and the undersigned asked Mr. Je's counsel to provide dates for a call with the Court next week. However, based on Mr. Je's counsel's representation that he is unavailable until January 7, and that he would quickly file any reply to this letter (due within one day, per this Court's rules), Strategic Vision respectfully asks that this motion be presented and decided on the papers unless this Court believes a call would help to clarify the issues. Certain other discovery-related issues are already before the Court, and summary judgment is imminent, and so Strategic Vision aims to do what it can to expedite resolution of these final subpoenas, as well as any production.

---

[3] Strategic Vision made every effort to obtain discovery from Je's entity, ACA, starting in July 2019. *See* ECF 197, 206 (summarizing Strategic's exhaustive efforts, beginning with service on Karin Maistrello and her alleged pre-service resignation). None of the sets of attorneys used to represent Guo's network materialized as representing either ACA or Je until Je's current counsel (who previously represented Guo operative and confidant Lianchao Han, who had introduced Strategic Vision to Guo) re-emerged a few days ago. This attorney, after first suggesting that Je had received notices of discovery directed to certain of Je's other entities, including ACA, pointedly stated that he did not represent ACA and was not seeking relief relating to those entities.



For all of these reasons, Strategic Vision respectfully requests the Court deny Mr. Je's Motion to Quash.

Respectfully submitted,

Edward D. Greim
Attorney for Defendant/Counterclaimant


cc:      Counsel of record via ECF