```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF NEW YORK


In re:                              :
                                         Docket #1:18-CV-02185-
 EASTERN PROFIT CORPORATION LIMITED,  :  JGK-DCF

                   Plaintiff,        :

   - against -                       :

 STRATEGIC VISION US LLC,            :  New York, New York
                                        December 13, 2019
                   Defendant.        :
                                         TELEPHONE CONFERENCE
------------------------------------ :

                      PROCEEDINGS BEFORE
            THE HONORABLE JUDGE DEBRA C. FREEMAN,
         UNITED STATES DISTRICT COURT MAGISTRATE JUDGE

APPEARANCES:

For Plaintiff:          PEPPER HAMILTON LLP
                        BY:  CHRISTOPHER B. CHUFF, ESQ.
                        Hercules Plaza
                        1313 Market Street, Suite 5100
                        Wilmington, Delaware 19899
                        302-777-6547

                        PEPPER HAMILTON LLP
                        BY:  JOANNA J. CLINE, ESQ.
                        3000 Two Logan Square
                        Philadelphia, Pennsylvania 19103
                        215-981-4520




Transcription Service:  Carole Ludwig, Transcription Services
                        155 East Fourth Street, #3C
                        New York, New York 10009
                        Phone:  (212) 420-0771

Proceedings conducted telephonically and recorded by
electronic sound recording;
Transcript produced by transcription service
```

```
APPEARANCES - CONTINUED:

For the Defendant,      GRAVES GARRETT, L.L.C.
Strategic Vision US:    BY:  EDWARD D. GREIM, ESQ.
                             JENNIFER DONNELLI, ESQ.
                        1100 Main Street - Suite 2700
                        Kansas City, Missouri 64105
                        816-256-4144

For Stephen K. Bannon:  QUINN EMANUEL URQUHART & SULLIVAN,
                        LLP
                        BY:  ALLISON L MCGUIRE, ESQ.
                             ALEXANDER B. SPIRO, ESQ.
                        1300 I Street N.W., Suite 900
                        Washington, D.C.  20001
                        202-538-8272
```


**INDEX**

**E X A M I N A T I O N S**

| **Witness** | **Direct** | **Cross** | **Re-Direct** | **Re-Cross** |
|---|---|---|---|---|
| None | | | | |

**E X H I B I T S**

| **Exhibit Number** | **Description** | **ID** | **In** | **Voir Dire** |
|---|---|---|---|---|
| None | | | | |

```
 1                         PROCEEDINGS                         4

 2             HONORABLE DEBRA C. FREEMAN (THE COURT):  Hi, it's
 3   Judge Freeman.  Sorry to keep you holding.
 4             MR. EDWARD GREIM:  That's all right, Judge
 5   Freeman.  Good morning.
 6             THE COURT:  Good morning.  Who do I have on?
 7             MR. GREIM:  For the -- well, I guess the movant
 8   here and Strategic Vision, the defendant-counterclaim
 9   plaintiff, you've got Eddie Greim and Jennifer Donnelli.
10   And then we've got two other parties and three other lawyers.
11   And I'll let them introduce themselves.  Maybe we would start
12   with the new people, with --
13             THE COURT:  Well, hold on.  Do I have plaintiff's
14   counsel on the phone?
15             MR. CHRISTOPHER CHUFF:  Yes, your Honor.  This is
16   Chris Chuff and Joanna Cline from Pepper Hamilton for
17   plaintiff, Eastern Profit.
18             THE COURT:  Okay, and then non-parties, do I have a
19   single non-party represented on this call?  Just Mr. Bannon?
20             MS. ALLISON McGUIRE:  Yes, your Honor.  Good
21   morning.  This is Allison McGuire and Alex Spiro from Quinn
22   Emanuel on behalf of Stephen Bannon.
23             THE COURT:  I'm sorry, Ms. McGuire and --?
24             MS. McGUIRE:  Mr. Spiro, Alex Spiro.
25             THE COURT:  Okay.  Is that everybody, is there
```

```
 1                        PROCEEDINGS                        5

 2   more?

 3            MR. GREIM:  That's everybody, your Honor.

 4            THE COURT:  All right.  So I have fairly lengthy

 5   submissions, but I see my role here at the moment as rather

 6   narrow.  As I understand, the subpoena was served in D.C.; and

 7   if it's complied with, compliance would be in D.C., which

 8   means a motion to quash it or a motion for contempt would be

 9   made in D.C., and only if something were transferred to me

10   would that be back in front of me under Rule 45.

11            But right now I have control over discovery

12   deadlines.  And as I understand it, what Mr. Greim is looking

13   for is for me to bless either an extension or a reopening of

14   the discovery period, depending how you look at it, to allow

15   for this deposition to go forward even without opining as to

16   whether the subpoena should be quashed or the witness should

17   be held in contempt for noncompliance.  Is that right,

18   Mr. Greim?

19            MR. GREIM:  That's right, your Honor.  We're asking

20   for a spot reopening -- maybe that's the best way to say

21   it -- a spot reopening for a what will probably be a half-day

22   deposition of Mr. Bannon.

23            THE COURT:  All right, I will note that discovery

24   has closed.  But I will also note, in fairness, that this

25   application was made prior to the close of discovery.  And if
```

```
 1                         PROCEEDINGS                      6
```

 2  it has been ruled on immediately, it would have been for an
 3  extension of discovery, not a reopening.  So in fairness to
 4  Strategic Vision, I think that the appropriate standard for
 5  looking at this would be a standard for an extension of
 6  discovery and not to reopen discovery, although I'm not sure
 7  how much difference it makes with respect to my analysis.
 8            I'll note for counsel for Mr. Bannon, since you
 9  haven't been on calls with me before, that I do have recording
10  equipment available for phone calls to chambers so that it's
11  possible to have a record of these conferences.  I do have
12  this recording equipment on.  It is not always perfect;
13  sometimes it does not work, but there's always hope that it
14  does.  And if anyone wants to obtain a transcript, you can do
15  that by following the instructions that are available at the
16  Court's website.  They just recently changed the website, and
17  I believe the way to go about finding the information on how
18  to order it is if you go to the top of the website on the
19  right, there are some lines that indicate there's a dropdown
20  menu.  You click on that, and you go to Trial Support.  And
21  from Trial Support you go to Courtroom Technology.  And once
22  you get to Courtroom Technology, you scroll down looking for
23  something about electronic court recordings or ECR.  It's the
24  same electronic recordings we have in the courtrooms that are
25  outfitted with it, and so it's the exact same procedure for

```
 1                        PROCEEDINGS                         7
```

 2  ordering a transcript even if it's a phone call with chambers.

 3              In any event, that said, the factors that would

 4  influence me, as I outlined to Mr. Greim previously, relate to

 5  whether there were diligent efforts made to obtain this

 6  testimony during the discovery period or whether there was a

 7  lack of diligence and last-minute efforts.  I told Mr. Greim

 8  that what he had put before me before was not persuasive as to

 9  the diligence of the efforts that were made but that my denial

10  of the request for, let's just call it a carve-out of this

11  discovery period to allow for this one deposition, that that

12  denial of you without prejudice to renew upon a better showing

13  of due diligence that was made and that Strategic Vision was

14  essentially thwarted in its ability to obtain this testimony

15  within the discovery period and on a reasonable amount of

16  notice.

17              I've now gotten a submission from Mr. Greim which

18  lays out attempts to serve a subpoena dating all the way back

19  to, I think, September and recitations of all the different

20  efforts that were made with process servers and a private

21  investigator and different places where service was attempted

22  and repeated times when service was attempted and so on.  And

23  I must say that is fairly persuasive that reasonable diligence

24  was undertaken to get a subpoena served and to get this

25  discovery within the discovery period.  I also had told

```
 1                        PROCEEDINGS                            8
```

 2  Mr. Greim that, if he were going to renew this application, he
 3  should let Mr. Bannon's counsel know about it so I could hear
 4  from counsel for the non-party if he wanted to be heard on
 5  this question of whether there was reasonable diligence and
 6  whether there was any thwarting of the efforts or whether it
 7  all seemed to be very last minute to you.  But I'm not sure,
 8  you know, how much you can say to refute the recitation by
 9  Mr. Greim of the efforts that were made, whether they ended up
10  being productive or not.  At least it doesn't seem to me that
11  he and his, you know, team of process servers and so on were
12  sitting on their hands for a long period of time and suddenly
13  trying to do this in fewer than ten days before the close of
14  the discovery period.  Would anyone like to address that?
15              MS. McGUIRE:  Yes, your Honor.  This -- yes, your
16  Honor, thank you.  This is Allison McGuire for Mr. Bannon.  I
17  think as an initial matter if we could take a step back and
18  look at the facts that discovery in this case began in August
19  of 2018, and Strategic Vision didn't even begin contemplating
20  serving Mr. Bannon until the final two months of that
21  discovery window.  And as Strategic Vision knows, Mr. Bannon
22  is a well-known public figure with extensive professional
23  commitments around the world, and there are very foreseeable
24  challenges to serving a subpoena to a public figure.  And in
25  fact, I think an important point that --

| | |
|---|---|
| 1 | PROCEEDINGS                                     9 |

2          THE COURT:  Well, let me just interrupt here a
3   second.  It's my understanding that the subpoena, to the
4   extent it has relevance, is relevant to a counterclaim.  When
5   was that counterclaim asserted?
6          MS. McGUIRE:  Yes, your Honor.  That counterclaim
7   was first filed in July of 2019.  Yet, Strategic Vision
8   waited an additional two months, until September 25, to serve
9   the subpoena to Mr. Bannon.
10          THE COURT:  Okay, so the counterclaim that made
11  this arguably relevant was filed in July and the subpoena was
12  served in September.  And the close of discovery at that point
13  was when?
14          MS. McGUIRE:  My understanding is that it was
15  November 29, your Honor.
16          THE COURT:  Well, you know, that's not -- you know,
17  on its face, that's not unreasonable.  I mean, it's not like
18  serving a subpoena at the 11th hour.  It sounds like, like I
19  said, a number of efforts were made to try to track Mr. Bannon
20  down.  And, you know, just because someone is a public figure
21  doesn't mean that, you know, trying to serve a subpoena for
22  two months is in and of itself unreasonable.
23          MS. McGUIRE:  Your Honor, I think there's an
24  important factor that we need to point out here and that's
25  outside of the attempts that Strategic Vision identified were

1                          PROCEEDINGS                       10

2  certain subpoenas dated for -- with a notice date of
3  October 10, and they tried to serve that subpoena five times
4  after the notice date.  So I understand how Strategic Vision
5  has purportedly identified 11 times that they attempted to
6  serve Mr. Bannon in a two-month period; but five of those
7  times, it wasn't a facially valid subpoena.  And it waited
8  another four weeks after the October 10 subpoena to even issue
9  another subpoena to Mr. Bannon (indiscernible).  And I think
10 that this demonstrates not only in less than two months that
11 it waited before it attempted to subpoena Mr. Bannon the first
12 time, but now an additional four weeks' delay between issuing
13 a second subpoena.  So this isn't diligence; it's delay.
14            THE COURT:  Is it true that counsel for Mr. Bannon
15 at one point seemed to suggest that maybe counsel would work
16 with Mr. Greim for responding by a December 5 date?
17            MS. McGUIRE:  Yes, your Honor.  I had conversations
18 with Mr. Greim on, I believe it was, November 18 and the 21st,
19 when we discussed his theories of relevance about Mr. Bannon;
20 and again, I explained that Mr. Spiro and I and Mr. Bannon all
21 had busy schedules and that we didn't receive reasonable
22 notice of this subpoena, the subpoena served on November 14,
23 to proceed with a November 22 deposition.  And we had -- I
24 requested and Mr. Greim agreed to a two-week extension of that
25 notice date in order to give us the time to respond to the

2   subpoena.

3           THE COURT:  Well, so what happened to that position
4   that, you know, if it were December 5, then maybe you could
5   work something out?

6           MS. McGUIRE:  Well, your Honor, I think now that
7   we've had time to explore Mr. Greim's theories of relevance,
8   we see no colorable clean-up elements here; and to drag
9   Mr. Bannon, who is not a party to the contract and is not
10  alleged (indiscernible) in any underlying contract
11  negotiations, into this dispute at this point in time seems
12  beyond unreasonable.  And I think that were the Court to grant
13  Mr. Greim's extension to the discovery schedule, we would
14  apply to quash in the compliance court in D.C.

15          THE COURT:  Well, again, I'm not going to get into
16  issues of -- that might be raised on a motion to quash because
17  that motion to quash would not -- first of all, it hasn't been
18  made; and second of it all, it wouldn't be made in front of
19  me.  And it seems to me that those issues are appropriately
20  directed to the court where compliance is required under the
21  rules, although I recognize that that court might end up
22  kicking it back to me, at which time I would take those issues
23  up.

24          I really am looking at my role right now as a narrow
25  one, which is were sufficiently diligent efforts made to

```
 1                         PROCEEDINGS                          12

 2   justify allowing some more time on the clock for this
 3   deposition, assuming, you know, that a motion to quash doesn't
 4   have legs or a motion -- you know, other motions relating to
 5   the subpoena don't result in some kind of protective order.
 6   But I think that it's hard for me to say that starting to make
 7   efforts a couple of months before a deadline, you know, is
 8   something that is insufficient.
 9             Mr. Greim, what's your response about not changing
10   the return date on the subpoena even while continuing to
11   attempt to serve it?
12             MR. GREIM:  Your Honor, we actually had an
13   October 11 subpoena.  So -- and I'm sorry, our initial
14   submission identified September 25 and November 7, but we had
15   an October 11 subpoena.  So after the October 4 attempted
16   service failed, we issued another one on October 11 and tried
17   to serve that one on the 13th, 14th,, 19th and 25th.
18             THE COURT:  And what would the return date have
19   been on that one?
20             MR. GREIM:  That one would have been November 1.
21             MS. McGUIRE:  Your Honor, we (indiscernible).
22             MR. GREIM:  Yes, and I -- your Honor, I'm sorry,
23   that should have been attached to our initial -- should have
24   been attached to our initial showing.  And as I was preparing
25   this morning, looking at the response I saw that it wasn't.
```

```
 1                        PROCEEDINGS                        13
```

 2  And we just forgot to include that as an attachment; we should
 3  have.
 4              THE COURT:  Well, provide it to counsel for
 5  Mr. Bannon right away, please.
 6              MR. GREIM:  Absolutely.
 7              THE COURT:  For that matter, why don't you just
 8  file something with the court that says this was inadvertently
 9  omitted and add it so that we have a full record here on the
10  docket of relevant information.  And we do both, you know,
11  file it with the court and provide a copy to counsel.
12              So here's what I'm going to do.  In recognition that
13  the application to extend the discovery period was made before
14  the close of discovery and based on the rather lengthy
15  recitation of all of the efforts that were made to serve
16  Mr. Bannon pretty well before the close of discovery -- and
17  I'll also note, by the way, that even though he is a public
18  figure, he's not currently a member of the administration, he
19  is a private citizen, as far as I know.  So he may have
20  speaking engagements and do other things and travel a lot, but
21  so do lots of other people.  A lot of people have busy jobs;
22  it doesn't mean that two months is on its face an unreasonable
23  period of time to try to obtain somebody -- obtain service on
24  someone.
25              So I'm going to allow a carve-out of this discovery

```
 1                          PROCEEDINGS                           14

 2   period for this one deposition, without making any rulings
 3   that would be relevant to a motion to quash.  So you can't go
 4   to D.C. and say by extending this discovery deadline Judge
 5   Freeman found, even implicitly, that this was an appropriate
 6   subpoena -- okay? -- nor can you say she found it was
 7   inappropriate; I'm not reaching those issues.  I'm only
 8   looking at the discovery timeframe and whether efforts were
 9   made to obtain this discovery within the discovery period.
10   And I'm finding that sufficient efforts were made.
11             Now, in terms of a carve-out period of time, I would
12   want this deposition to happen relatively soon, with
13   appropriate, you know, consultation with counsel for the
14   witness so that it's at a reasonably convenient time.  But I
15   don't want it to stretch out forever.  I understand there may
16   be motion practice in D.C.  Together with motion practice in
17   D.C., I assume you could, you know, you could ask for a stay
18   while it's being resolved -- I get that.  But I still don't
19   want to have this floating indefinitely.
20             So to allow time for motion practice in D.C. and to
21   allow time for his busy schedule and given the holidays, which
22   are now upon us, whereas ordinarily I would say a couple of
23   weeks, I will stretch it out longer than that.  Let's see,
24   today is the -- today is what? -- oh, today is Friday the
25   13th, look at that.  Two weeks would take you right between
```

```
 1                         PROCEEDINGS                      15

 2   Christmas and New Year's.  I'll stretch it out to January 10
 3   as the deadline for making this deposition happen, which I
 4   understand from Mr. Greim would likely be half a day.  If you
 5   can find a half a day in there to put on the calendar and
 6   hold, even while you are litigating this in D.C., I think that
 7   would be a good plan because I'm sure in this litigation
 8   plaintiff -- and perhaps defendant, as well -- wants to get a
 9   move on with the next phase of the case.
10             I'm not sure, for that matter, the next phase of the
11   case need be put on hold because of this.  Are summary
12   judgment motions anticipated, or are we going to expert
13   discovery?  Are we going to expert discovery, or is that done,
14   or are there no experts?
15             MR. GREIM:  No, neither side has designated an
16   expert; we just have translators.
17             THE COURT:  Well, I would suggest that summary
18   judgment need not necessarily await this one deposition, one
19   half-day deposition, and that -- I mean, you can take it up
20   with the district judge if you think otherwise.  But it would
21   seem to me you could always do a short supplement to a brief
22   on one side or the other if you get some testimony that you
23   think adds to a point.  But I would think for summary judgment
24   it's probably not going to be critical, and perhaps you
25   shouldn't be holding up the works.  Does anybody --
```

```
 1                        PROCEEDINGS                       16

 2            MR. GREIM:  Excuse me, your Honor.  We --
 3            THE COURT:  -- anybody disagree with that?
 4            MR. GREIM:  No.  But there are a couple of data
 5   points that might -- I don't think they'd change anything, but
 6   just so you know -- and, first of all, we would intend to use
 7   this in our summary judgment motion and response -- because I
 8   think we'll probably have cross-motions.  But we have a pre-
 9   motion conference with Judge Koeltl on January 14.  And then
10   we are going to be -- the current deadline for filing the
11   motions is January 10, and so we are going to be filing --
12   this is Eastern Profit and Strategic Vision --
13            THE COURT:  I'm sorry, say that again?  You're
14   going to be before Judge Koeltl before the motion deadline?
15            MR. GREIM:  Well, no, it'll be after.  So just to
16   make this clear, currently the current deadline is January 10;
17   however, that falls before the current -- but Judge Koeltl
18   wants you to come in for a pre-motion conference.  So we're
19   coming in for that conference on the 14th, which is actually
20   four days after the deadline.  So they're going to be asking
21   Judge Koeltl, Eastern Profit and Strategic Vision
22   jointly -- and I bet Chris Chuff, we may get that on file even
23   today -- to move back the deadline to January -- the last
24   Friday in January just so that the deadline actually falls
25   after the conference, which is -- it's done in the ordinary
```

2  course.
3          THE COURT:  I see.  Well, what I'm going to do is
4  I'm going to let -- well, if -- by the way, if your deadline
5  is moved, you'll have this deposition before your deadline,
6  assuming it happens by January 10.  But I will let Judge
7  Koeltl know that discovery is done and the parties are ready
8  for summary judgment with the exception of this one
9  deposition, which is still a little bit in the air, where I've
10 blessed the carve-out but where there's likely to be motion
11 practice and likely to still be some further delay.  And then
12 it was my view that summary judgment motions could go forward
13 without it; but if he has a pre-motion conference, the parties
14 might have something they want to say about that and he can
15 look at that separately.  So I'll clue him in, and I'll tell
16 him that you may be making an application to move the
17 conference date and just fill him in on what's going on.  And
18 then you make whatever application you make.
19         MR. CHUFF:  Your Honor, with the conference date, we
20 are good with that; it will be the deadline for filing the
21 motion, just to move it to after the conference date.
22         THE COURT:  Right.  I understand.  I understand.
23         MR. GREIM:  Okay.
24         THE COURT:  Okay, so you'll be asking to keep the
25 conference and move the motion date.  I'll let him know that

```
 1                      PROCEEDINGS                    18

 2   that's a likely application.
 3              And my ruling on this record is purely from a
 4   discovery-deadline point of view, you can have until
 5   January 10 to take this half-day deposition.  And then you
 6   fight it out on a motion to quash elsewhere.  If it comes back
 7   to me and if the deadlines get affected by coming back to me
 8   or by the length of time it takes to resolve in D.C., if it
 9   does, we'll worry about that then.  But for now I'm going to
10   urge counsel to speak in good faith and try to pin down a date
11   and have it on the calendar maybe closer to the January 10
12   date to give you time to try to work out your differences.
13              I would also urge you strongly to try to avoid the
14   motion practice in D.C. and see if you can, you know, agree on
15   some parameters for this deposition.  Parties in this case --
16   I know we now have a non-party -- but have been able at times
17   to discuss parameters for things and work out, you know,
18   reasonable limitations and get things focused.  It's a case
19   that has some sort of odd parameters to it; it's not purely a
20   contract case.  So I'd urge you to try -- like I said, try to
21   conserve resources and avoid unnecessary motion practice, if
22   you possibly can.
23              MR. GREIM:  Thanks, your Honor.
24              THE COURT:  Anything else from anybody?  No?
25              Anything else for Mr. Bannon?  No?
```

```
 1                         PROCEEDINGS                       19

 2            MS. McGUIRE:  Nothing for Mr. Bannon.
 3            THE COURT:  All right.  Thank you, all.  Take care,
 4   everybody.
 5            MR. CHUFF:  Thank you.
 6            (Whereupon, the matter is adjourned.)
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                                                              20
 2
 3                    C E R T I F I C A T E
 4
 5        I, Carole Ludwig, certify that the foregoing
 6   transcript of proceedings in the case of Eastern Profit
 7   Corporation Limited v. Strategic Vision US LLC, Docket #18-
 8   cv-02185-JGK-DCF, was prepared using digital transcription
 9   software and is a true and accurate record of the
10   proceedings.
11
12
13
14   Signature_____
                     Carole Ludwig
15             Carole Ludwig
16   Date:     December 17, 2019
17
18
19
20
21
22
23
24
25
```