


Edward D. Greim
Direct Dial: (816) 256-4144
edgreim@gravesgarrett.com

January 9, 2020

VIA ECF
Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
Courtroom 14A
500 Pearl Street
New York, New York 10007

Re: **Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, 18-cv-2185 (JGK)**
**January 14, 2020 Summary Judgment Pre-Motion Conference**

Dear Judge Koeltl:

Plaintiff/Counterclaim Defendant Eastern Profit Corp. Ltd.'s ECF 199 letter advised of its intention to seek summary judgment on one of Defendant/Counterclaimant Strategic Vision US, LLC's two Counterclaims—Count II for fraudulent misrepresentation, ECF 127, pp. 52-55. Eastern believes it can show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law regarding three of the elements required for that claim. Fed. R. Civ. P. 56(a). For the reasons below (and those set out in ECF 237, dated January 2, 2020), Strategic Vision believes the planned motion lacks merit. In fact, the undisputed evidence will allow Strategic Vision to establish materiality and falsity, and the question of reasonable reliance should be reserved for the finder of fact.

## Background Regarding the Fraud Claim

This case exists because of a January 2018 Research Agreement between Eastern and Strategic Vision. Strategic Vision is a consulting firm to individuals and entities needing competitive commercial and political advice on matters in the United States and overseas. In late 2017, associates of Guo Wengui ("Guo") approached Strategic Vision to discuss whether it could serve as an advisor to Guo, living in New York, in his stated mission as an outspoken anti-Communist dissident to support a regime change in China by exposing corruption in the Chinese Communist Party (CCP) and China's government. Strategic Vision's witnesses have testified that the driving reason it entered the Research Agreement was the representation by Guo (attributable to Eastern,[1] ECF 142, ¶ 4) that he was a true Chinese dissident—and, consistent with that role, intended to use Strategic Vision's advice for the public good—to undermine the Communist regime and enable more democratic governance in China. Guo's representations of his dissident status and his intentions for the Research Agreement were material to Strategic Vision and its

[1] Shortly before signing the Agreement, Guo inserted Eastern—an entity that had not been previously identified to Strategic Vision, but which filled a slot that Guo had said would be assumed by some corporate placeholder associated with him—as the purchasing party under the contract.



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com



representatives because they support regime change in China and would never aid the work of someone who, in truth, supports the CCP and communist doctrine. Indeed, the Agreement's stated "purpose" is to protect innocent parties from harm, and Strategic Vision believes that the CCP and Chinese government cause the harm the parties referenced in the Agreement. Had Strategic Vision known that Guo and Eastern supported the CCP and planned to use the Agreement for things other than a regime change in China, the Agreement never would have come to exist.[2]

After entering the Agreement (further confirmed by civil discovery), Strategic learned that Guo is not a dissident. Instead, he operates with the support of the CCP and never intended to use the fruits of the Agreement to weaken the Chinese government, hastening regime change.

- Guo claims he has not taken a dime from Hong Kong or the Mainland since speaking out as a dissident; in discovery, the entity he controls, Eastern Profit, has claimed that all of its assets have been frozen in Hong Kong because the Mainland exerts control there.
- Yet, the Chinese have allowed another Hong Kong entity, ACA Capital Group Limited, to fund Guo's influence operation in the United States, including the two $500,000 wire transfers it sent to Strategic under the parties' Agreement. Numerous press reports link ACA to Guo, and Eastern admitted in this case that Guo himself ordered ACA's payments to Strategic.
- ACA, in turn, is controlled by William Je, an economic adviser for Mainland cities, a member of the CCP-controlled Chinese People's Political Consultative Conference, and a member of a "patriotic group" of the type that the CCP uses to exert political influence in Hong Kong. Je has arranged for ACA payments to at least one witness on another Guo project, and told the witness that ACA is a "sovereign wealth fund." If Guo relies on Je's entity for funding (as he did on the very Agreement here), he cannot act without the support of the CCP.
- Discovery also has revealed that ACA itself was expecting to receive the results of Strategic Vision's work, which was supposed to have been held by Eastern in strict confidence. But, ACA is under Je's control and does not engage in any "dissident"-related activity.
- Discovery has disclosed substantial contacts between the entity Guo set up to broadcast his supposed message (Saraca Media Group, d/b/a Guo Media) and Mainland China.
- Discovery has led to the authentication of meetings between Guo and Chinese officials in May 2017, and a Guo letter to senior Chinese leadership in August 2017, that show Guo was not acting as a dissident in the months before he began negotiations with Strategic Vision.

<u>Eastern's Challenges to Strategic Vision's Fraud Claim Lack Sufficient Support</u>

Fraud requires "a misrepresentation or a material omission of fact which was false and known to be false by defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance of the other party on the misrepresentation or material omission, and injury." *Mandarin Trading Ltd. v. Wildenstein*, 919 N.Y.S.2d 465, 469 (Sup. Ct. 2011). Eastern plans to challenge the (1) materiality and (2) falsity of Guo's statements about his dissident status, support of the CCP, and plan for using the Agreement (*i.e.* the three "<u>statements</u> at issue," ECF 199, pp. 1-

[2] It did not exist for very long. By letter dated February 23, 2018, legal counsel for Eastern provided notice that the Research Agreement was being terminated "pursuant to the [Contract's] 'Duration' Section," meaning the contract terminated as of March 21, 2018.



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




2) and whether Strategic reasonably relied on the statements. (ECF 199, p. 1) "[I]nformation is material if a reasonable person would attach importance to it in determining how to act. The information must be such that if it were disclosed, it would be reasonably certain to have a substantial effect on a[] decision, whether the information refers to a past or future event." *Quintel Corp., N.V. v. Citibank, N.A.*, 606 F. Supp. 898, 906-07 (S.D. N.Y. 1985). The statements are factual in nature and their materiality is proven by, at a minimum, (1) the nature of the contract—a confidential, advisory-based agreement dependent on the specialized and exclusive use of the party receiving the advice; (2) the undisputed term of the Agreement providing that its purpose was to "detect, stop, and prevent crime or other harm to innocent people," the inclusion of which evidences the materiality of the statements, which Guo fully admits making (ECF 127, ¶¶ 18, 49;[3] ECF 142, admitting paragraphs); and (3) Strategic Vision's uncontradicted testimony that the statements were the very reason the contract existed ("We cared very much what it was going to be used for. We are very adamantly anti-communist.") F. Wallop, Feb. 2, 2019, 60:12-61:1, 88:20-89:5). Moreover, the statements are demonstrably false. Among other evidence will be a direct statement from Guo, written in August 26, 2017, just a few months before he began negotiating the Agreement with Strategic Vision, wherein Guo wrote CCP officials to confirm his personal loyalty to "Chairman Xi," asking CCP leadership to convert Guo's "influence and resources" to "best serve Chairman Xi Jinping's China Dream!" "The inferences to be gathered from a chain of circumstances depend largely upon the common sense knowledge of the motives and intentions of men in like circumstances." *Gerstle v. Gamble-Skogmo, Inc.*, 298 F. Supp. 66, 94 (E.D. N.Y. 1969) (citation omitted).

Eastern also contends that Strategic Vision cannot, as a matter of law, prove that it reasonably relied on the statements in entering the Agreement. But, "reasonable reliance is often a question of fact for the jury rather than a question of law for the court." *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 888 F.Supp.2d 478, 485 (S.D. N.Y. 2012) (citation omitted). That is especially the case here, where Eastern cannot contradict the testimony of Strategic Vision's representatives that it did indeed rely on the statements, as is evidenced by that portion of the contract describing its purpose as to "detect, stop, and prevent crime or other harm to innocent people." The testimony Eastern cites from Strategic Vision's representative is not to the contrary: it refers to Strategic Vision's point of view in retrospect—not at the time it entered the contract. Finally, Strategic Vision *did* conduct background consideration of Guo, as evidenced from its interactions with Lianchao Han and William Gertz, who were at that time widely recognized as

[3] 18: Guo represented to Strategic Vision that he was a dissident, and intended to find damaging information on individuals with connections to Communist Party leadership, particularly family members reputed to be running money laundering and other operations for them. He represented that he would then use this information to highlight corruption and misconduct at the highest levels. The entire Chinse political system is thoroughly corrupt; Guo's stated intent was to use his exposures of corruption to exploit and widen divisions within the CCP, and ultimately completely undermine CCP rule in China. 49: In the parties' December meetings at his apartment in New York City, Guo claimed to Strategic Vision that he had a long history of speaking out against the Chinese regime, and that he was now in America as a dissident and asylum-seeker. He claimed to want to use his country of refuge as a base to gather intelligence on high-ranking Communist officials and, through public criticisms of them, to give aid and comfort to opponents of the Chinese Communist regime both inside and outside China.



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com



neutral and knowledgeable on Chinese matters, and whose true relationship with Guo was only revealed in discovery.

We look forward to discussing these matters with you on January 14, 2020.

Respectfully submitted,

Edward D. Greim

cc: Counsel of record via ECF



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com