**UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
| STRATEGIC VISION US, LLC | ) ) ) |
| Defendant. | ) ) ) |

Case No. 18-CV-2185 (LJL)

<u>**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**</u>

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

      A.     The Parties and Relevant Non-Parties ...................................................... 2

      B.     The $1 Million Deposit and ACA Loan ..................................................... 4

      C.     The Research Agreement ............................................................................ 5

      D.     The Breach .................................................................................................. 7

III.    ARGUMENT ....................................................................................................... 10

      A.     Standard of Review .................................................................................. 10

      B.     Strategic's Motion for Summary Judgment On Eastern's Breach of
              Contract Claim (Count II) Should Be Denied ......................................... 10

            1.     Eastern Has Suffered Cognizable Damages ................................ 10

            2.     Eastern Did Not Frustrate Strategic's Performance ................... 16

      C.     Strategic's Motion for Summary Judgment On Eastern's Fraud Claim
              (Count II) Should Be Denied ................................................................... 18

      D.     Strategic's Motion for Summary Judgment On Eastern's Unjust
              Enrichment Claim (Count II) Should Be Denied .................................... 20

      E.     Strategic's Motion for Summary Judgment On The Basis That Eastern Is
              Not Registered To Do Business In New York Should Be Denied. ...................... 23

IV.    CONCLUSION ................................................................................................... 25

**TABLE OF AUTHORITIES**

**Page(s)**

CASES

*1EE LLC v. Giddens (In re Lehman Bros. Holdings Inc.)*,
 703 F. App'x 18 (2d Cir. 2017) ...........................................................................12

*360Networks Corp. v. Geltzer (In re Asia Glob. Crossing, Ltd.)*,
 404 B.R. 335 (S.D.N.Y. 2009)...............................................................................11

*Aero Media LLC v. World Healing Ctr. Church, Inc.*,
 2013 U.S. Dist. LEXIS 83891 (S.D.N.Y. June 11, 2013) .....................................19

*AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*,
 726 F. Supp. 2d 307 (S.D.N.Y. 2010)...................................................................11

*Ariz. Family Florists LLC v. 1-800-Flowers.com, Inc.*,
 2020 U.S. Dist. LEXIS 31389 (E.D.N.Y. Feb. 21, 2020).......................................16

*Beer v. F.W. Myers & Co., Inc.*,
 159 A.D.2d 943, 552 N.Y.S.2d 796 (N.Y. App. Div. 1990) ..................................25

*Busman v. Beeren & Barry Invs., LLC*,
 69 Va. Cir. 375 (Va. Cir. Ct. 2005).......................................................................11

*Cadle Co. v. Hoffman*,
 237 A.D.2d 555, 655 N.Y.S.2d 633 (N.Y. App. Div. 2nd Dept. 1997).................23

*Carley Capital Grp. v. Newport News*,
 709 F. Supp. 1387 (E.D. Va. 1989) ......................................................................14

*Cleveland v. Policy Mgmt. Sys. Corp.*,
 526 U.S. 795 (1999).............................................................................................10

*Commodity Ocean Transp. Corp. v. Royce*,
 221 A.D.2d 406 (N.Y. App. Div. 2nd Dept. 1995)...............................................23

*Commonwealth v. Gavigan*,
 2011 Va. App. LEXIS 100 (Va. Ct. App. Mar. 22, 2011).....................................14

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
 2016 U.S. Dist. LEXIS 180431 (S.D.N.Y. Dec. 30, 2016) ...................................11

*Daniel v. Wells Fargo Bank, N.A.*,
 2013 U.S. Dist. LEXIS 150991 (E.D. Va. Oct. 17, 2013).....................................11

*Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*,
 68 N.Y.2d 954, 510 N.Y.S.2d 88, 502 N.E.2d 1003 (1986)..................................19

*Dominion Res. Servs. v. 5K Logistics, Inc.*,
   2010 U.S. Dist. LEXIS 20793 (E.D. Va. Mar. 8, 2010) ..........................................12

*Elvin Assocs. v. Aretha Franklin*,
   735 F. Supp. 1177 (S.D.N.Y. 1990)......................................................................14

*Envtl. Staffing Acquisition Corp. v. Beamon Enters.*,
   2011 Va. Cir. LEXIS 65 (Va. Cir. Ct. Feb. 22, 2011) ...........................................20

*First Bank of the Ams. v. Motor Car Funding, Inc.*,
   257 A.D.2d 287, 690 N.Y.S.2d 17 (N.Y. App. Div. 1st Dept. 1999)...............18, 19

*Golf Ranch Resort Motel, Inc. v. Tar Heel Mortg. Co.*,
   341 F. Supp. 846 (E.D. Va. 1972) ........................................................................20

*Gulati v. Coyne Int'l Enters. Corp.*,
   805 F. Supp. 365 (E.D. Va. 1992) ........................................................................11

*Gulf Coast Dev. Group v. Lebror*,
   2003 U.S. Dist. LEXIS 21740 (S.D.N.Y. Dec. 3, 2003) ........................................19

*Horton v. Horton*,
   254 Va. 111, 487 S.E.2d 200 (1997).....................................................................13

*Hot Roll Mfg. Co. v. Cerone Equipment Co.*,
   38 A.D.2d 339, 329 N.Y.S.2d 466 (App. Div. 1972) ............................................25

*In Touch Concepts, Inc. v. Cellco P'ship*,
   2013 U.S. Dist. LEXIS 168185 (S.D.N.Y. Nov. 18, 2013)....................................17

*Insteel Indus. v. Costanza Contracting Co.*,
   276 F. Supp. 2d 479 (E.D. Va. 2003) ...................................................................19

*Jaisan, Inc. v. Sullivan*,
   178 F.R.D. 412 (S.D.N.Y. 1998) ..........................................................................25

*Kahn v. Rosenstiel*,
   298 F. 656 (S.D.N.Y. 1924)..................................................................................21

*Kressel, Rothlein & Roth v. Gallagher*,
   155 A.D.2d 587, 547 N.Y.S.2d 653 (2d Dep't 1989) ............................................21

*Lau v. Lazar*,
   2014 N.Y. Misc. LEXIS 5306 (N.Y. Sup. Ct. Oct. 7, 2014) .................................21

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading
   Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000)..........................................................11

*Manhattan Fuel Co., Inc. v. New England Petroleum Corp.*,
    422 F. Supp. 797 (S.D.N.Y. 1976).........................................................................25

*McKinley Allsopp, Inc. v. Jetborne Int'l, Inc.*,
    1990 U.S. Dist. LEXIS 12405, 1990 WL 138959 (S.D.N.Y. Sept. 19, 1990).........................14

*Murphy v. Am. Home Prods. Corp.*,
    58 N.Y.2d 293, 448 N.E.2d 86, 461 N.Y.S.2d 232 (N.Y. 1983)...........................................17

*Nasso v. Seagal*,
    263 F. Supp. 2d 596 (E.D.N.Y. 2003) ...................................................................24

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
    646 F. App'x 25 (2d Cir. 2016) .......................................................................14, 15

*Nature's Plus Nordic A/S v. Nat. Organics, Inc.*,
    98 F. Supp. 3d 600 (E.D.N.Y. 2015) ..............................................................14, 15, 16

*Orbit Corp v. Fedex Ground Package Sys., Inc.*,
    2015 U.S. Dist. LEXIS 99873 (E.D. Va. July 30, 2015) ......................................................17

*Palomo v. Demaio*,
    403 F. Supp. 3d 42 (N.D.N.Y. 2019)....................................................................13

*Paxi, LLC v. Shiseido Ams. Corp.*,
    636 F. Supp. 2d 275 (S.D.N.Y. 2009)...................................................................17

*Porto v. Guirgis*,
    659 F. Supp. 2d 597 (S.D.N.Y. 2009)...................................................................10

*Powell v. Nat'l Bd. of Med. Exam'rs*,
    364 F.3d 79 (2d Cir. 2004)...........................................................................10

*Pre-Fab Steel Erectors, Inc. v. Stephens*,
    2009 U.S. Dist. LEXIS 26548 (W.D. Va. Apr. 1, 2009) ..................................................18, 19

*Regal Custom Clothiers v. Mohan's Custom Tailors*,
    1997 U.S. Dist. LEXIS 9288, 1997 WL 370595 (S.D.N.Y. July 1, 1997).............................20

*Rella v. N. Atl. Marine Ltd.*,
    2004 U.S. Dist. LEXIS 11567 (S.D.N.Y. June 21, 2004) ...................................................21

*Rosenberg v. Pillsbury Co.*,
    718 F. Supp. 1146 (S.D.N.Y. 1989)....................................................................19

*Roswell Capital Partners LLC v. Alt. Constr. Techs.*,
    638 F. Supp. 2d 360 (S.D.N.Y. 2009)...................................................................17

*Rothstein v. Auto Club S.*,
    2019 U.S. Dist. LEXIS 194851 (S.D.N.Y. Aug. 26, 2019)......................................22

*Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*,
    523 F. Supp. 2d 376 (S.D.N.Y. 2007)........................................................................22

*S & T Bank v. Spectrum Cabinet Sales*,
    247 A.D.2d 373, 668 N.Y.S.2d 641 (N.Y. App. Div. 2nd Dept. 1998)....................23

*Seeman v. Oxfordshire, LLC*,
    83 Va. Cir. 442 (Va. Cir. Ct. 2011)...........................................................................21

*State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*,
    374 F.3d 158 (2d Cir. 2004).......................................................................................17

*Sun Hotel v. Summitbridge Credit Invs. III, LLC*,
    86 Va. Cir. 189 (Va. Cir. Ct. 2013)...........................................................................17

*Sungchang Interfashion Co. v. Stone Mt. Access., Inc.*,
    2013 U.S. Dist. LEXIS 137868 (S.D.N.Y. Sep. 25, 2013)........................................21

*Tosto v. Zelaya*,
    2003 U.S. Dist. LEXIS 8085 (S.D.N.Y. May 12, 2003) ...........................................19

*Trade Expo Inc. v. Sterling Bancorp*,
    2014 N.Y. Misc. LEXIS 4108 (N.Y. Sup. Ct. Sept. 11, 2014)..................................21

*Tri-Terminal Corp. v. CITC Industries, Inc.*,
    78 A.D.2d 609, 432 N.Y.S.2d 184 (N.Y. App. Div. 1980) .......................................24

*Triangle Underwriters, Inc. v. Honeywell, Inc.*,
    604 F.2d 737 (2d Cir. 1979).......................................................................................19

*United Arab Shipping Co. (S.A.G.) v. Al-Hashim*,
    176 A.D.2d 569, 574 N.Y.S.2d 743 (N.Y. App. Div. 1991) .....................................25

*Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*,
    2002 Va. Cir. LEXIS 80 (Va. Cir. Ct. July 3, 2002).................................................21

*Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*,
    30 N.Y.2d 34, 281 N.E.2d 142, 330 N.Y.S.2d 329 (N.Y. 1972)..............................17

*In re Vecco Constr. Indus., Inc.*,
    30 B.R. 945 (Bankr. E.D. Va. 1983)..........................................................................14

*Virgilio Flores, S.A. v. Jerome Radelman, Inc.*,
    567 F. Supp. 577 (E.D.N.Y. 1982) ............................................................................23

*Wuxi Letotech Silicon Material Tech. Co. v. Applied Plasma Techs.,*
   2010 U.S. Dist. LEXIS 56495 (E.D. Va. June 7, 2010) ........................................11

*Ying Jing Gan v. City of New York,*
   996 F.2d 522 (2d Cir. 1993) ...............................................................................10

STATUTES

N.Y. Bus. Corp. Law § 1312 ..............................................................................23-25

OTHER AUTHORITIES

11 *Corbin on Contracts* § 57.3 (2019) ...................................................................14

Fed. R. Civ. P. 56(e)(2) .........................................................................................10

*Restatement (Second) of Contracts* § 318 ...........................................................1, 12

*Restatement (Second) of Contracts* § 349 ...............................................................14

I.      **INTRODUCTION**

       Strategic's Motion for Summary Judgment should be denied in full.[1]  The bulk of Strategic's motion is based upon the same flawed argument—that Eastern should not be permitted to recover the $1 million that it borrowed from ACA to pay Strategic under the Research Agreement because ACA paid Strategic directly on Eastern's behalf instead of taking the unnecessary extra step of sending that money to Eastern first.  Under Strategic's reasoning, if ACA had sent the $1 million deposit to Eastern and then Eastern sent the money to Strategic, Eastern could recover, but because ACA sent the $1 million deposit directly to Strategic on Eastern's behalf, Eastern cannot recover.  That argument is wrong for at least three reasons.

       First, Strategic's position is untenable given the fact that it explicitly agreed in the Research Agreement that "***[Eastern] may direct other entities to pay [Strategic], and that such payments will be deemed satisfactory compensation by [Strategic].***"  By agreeing that payment by "[an]other entit[y]" would be "satisfactory," Strategic foreclosed the very argument that it now seeks to make.

       Second, traditional principles of contract law defeat Strategic's argument.  Under such principles, where an obligor delegates performance of an obligation under a contract to a third party and that third party fully performs that obligation, the obligee must accept the performance of the third party as if the performance was rendered by the obligor itself.  The *Restatement* helpfully illustrates this principle: where "A owes B $ 100, and asks C to pay B, [p]ayment or tender to B by C has the effect of payment or tender by A."[2]  Applied here, that

---

[1] Capitalized terms used herein are as defined in Eastern's Memorandum of Law in support of its Motion for Summary Judgment.  Dkt. No. 261.  Exhibits cited herein, which the exception of Exhibit O, which is attached hereto, refer to the exhibits attached to Eastern's Memorandum of Law in support of its Motion for Summary Judgment.  *Id.*

[2] *Restatement (Second) of Contracts* § 318, Illustration 1.

principle dictates that ACA's payment to Strategic has the effect of payment by Eastern. As such, even if it had not explicitly agreed that ACA's payment was "satisfactory," Eastern would be entitled to recover the deposit made by ACA on Eastern's behalf under common law contract principles too.

Finally, if that were not enough, Eastern has suffered recoverable damages under a reliance measure because Eastern remains liable to repay $1 million to ACA under the ACA Loan, a liability that Eastern incurred in order to perform its deposit obligation under the Research Agreement. For these reasons, Strategic's argument that Eastern cannot recover the $1 million deposit must be rejected.

Strategic's other arguments, which are addressed in detail below, fare no better, and Strategic's Motion for Summary Judgment should be denied.

## II.     STATEMENT OF FACTS

### A.     The Parties and Relevant Non-Parties

Eastern is organized under the laws of Hong Kong and has a principal place of business in Hong Kong.[3] Guo Wengui ("Mr. Guo") was and is an advisor to Eastern who acted on behalf of Eastern in connection with the negotiation of the Research Agreement.[4] Yvette Wang ("Ms. Wang") is an agent of Eastern Profit and was responsible for overseeing the investigation services that Strategic was to provide to Eastern.[5] Chunguang Han ("C. Han") is an

---

[3] Ex. A, Strategic's Answer at 20 ¶ 3; Ex. B, Strategic's Admissions; Ex. C, Eastern Answer to Strategic's Counterclaim at 1 ¶ 3; Ex D, Strategic's Responses and Objections to Eastern's First Interrogatories.

[4] Ex. A, Answer at 20-21 ¶¶ 3-4, 53 ¶ 108.

[5] Ex. A, Answer at 20-21 ¶¶ 3-4; *id.* at 25 ¶ 17; *id.* at 28 ¶ 23.

agent of Eastern profit and was responsible for securing financing that Eastern needed to fund the deposit that was to be provided by Eastern to Strategic under the Research Agreement.[6]

Strategic is a limited liability company organized under the laws of Nevada.[7]  At least from September 1, 2017 and March 13, 2018 (*i.e.*, the Relevant Time Period), Strategic's principal place of business was in Arlington, Virginia.[8]  In its own words, Strategic provides private "investigatory research" to clients within the United States in exchange for monetary compensation.[9]  During the Relevant Time Period, French Wallop ("Ms. Wallop") was Strategic's Chief Executive Officer and only member.[10]  Strategic had no employees, other than Ms. Wallop.[11]  Michael Waller ("Mr. Waller") is a friend of Ms. Wallop's who has partnered with Strategic on a number of investigations since 2016 or 2017.[12]  During the Relevant Time Frame, neither Strategic, nor Ms. Wallop, nor Mr. Waller was licensed as a private investigator under the laws of Virginia or any other state or jurisdiction within the United States or anywhere else.[13]

Bill Gertz ("Mr. Gertz") is a former reporter for the Washington Free Beacon and a current reporter for the Washington Times.[14]  Mr. Gertz is a mutual acquaintance of Mr. Guo

---

[6] Ex. E, C. Han Tr. at 12:20-23, 59:5-17.

[7] Ex. A, Answer at 1 ¶ 2.

[8] *Id*.; *see also* Ex. B, Strategic's Admissions ¶ 18.

[9] Ex. B, Answer at 10-11 ¶¶ 47-51; Ex. F, Wallop I Tr. at 17:15-18:12, 26:21-29:13.

[10] Ex. B, Answer ¶ 9; Ex. F, Wallop I Tr. at 17:9-14; Ex. G, Wallop II Tr. at 6:4-16.  Wallop resides at 1557 North 22nd Street, Arlington, Virginia 22209.  Ex. F, Wallop I Tr. at 9:1-4.

[11] Ex. F, Wallop I Tr. at 16:16-18:12.

[12] Ex. H, Waller I Tr. at 10:23-13:05; Ex. I, Waller II Tr. at 6:2-7:20; Ex. A, Answer at 3 ¶ 10.

[13] Ex. A, Answer at 14 ¶¶ 88-102; Ex. F, Wallop I Tr. at 290:25-292:2.

[14] Ex. J, Gertz Tr. at 17:2-12.

and Ms. Wallop and Mr. Waller, and he was involved in bringing Eastern and Strategic together for the purposes of entering into the Research Agreement.[15]   Lianchao Han ("L. Han") is a mutual acquaintance of Mr. Guo and Ms. Wallop and Mr. Waller, and he was involved in bringing Eastern and Strategic together to enter into the Research Agreement.[16]

      **B.**      <u>**The $1 Million Deposit and ACA Loan**</u>

            In late October or early November, Mr. Gertz and L. Han introduced Mr. Guo to Ms. Wallop and Mr. Waller of Strategic.[17]   From that introduction until the Research Agreement was signed, representatives of Eastern (Mr. Guo and Ms. Wang) conferred with representatives of Strategic (Ms. Wallop and Mr. Waller) regarding a variety of services that Strategic purportedly could provide, including investigatory research into members of the CCP.[18]

            As part of contract negotiations, Ms. Wallop requested that Eastern provide a $1 million deposit under the Research Agreement.[19]   On December 29, 2017, to fund the deposit contemplated by the parties, Eastern borrowed $1 million from ACA (*i.e.*, the ACA Loan).[20]   On January 2, 2018, as negotiations were wrapping up, but before the parties signed the Research Agreement, Eastern caused the $1 million deposit to be wired to Strategic through ACA.[21]

---

[15] *Id.* at 64:19-76:19, 126:5-8-127:16; Ex. F, Wallop I Tr. at 31:23-34:19; Ex. H, Waller I Tr. at 116:10-117:9, 162:1-163-25.

[16] Ex. K, L. Han Tr. at 30:19-34:5, 38:20-14; Ex. F, Wallop I Tr. 34:20-35:1.

[17] Ex. F, Wallop I Tr. at 31:23-32:04, 33:15-21, 34:20-35:7; Waller I Tr. 23:23-25:22; *see also* Waller I Tr. at 116:8-117:9.

[18] Ex. F, Wallop I Tr. at 31:23-109:18; Ex. H, Waller I Tr. at 18:8-38:14.

[19] Ex. F, Wallop I Tr. at 192:09-194:16.

[20] Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

[21] *Id.*; Ex. F, Wallop I Tr. at 192:09-194:16.

Strategic received the $1 million.[22]  Strategic understood that the $1 million payment from ACA was the deposit that the parties had previously discussed.[23]  Strategic has acknowledged that it accepted the $1 million deposit and purported to utilize it to cover the expenses associated with the investigation called for under the Research Agreement.[24]

C.       **The Research Agreement**

Eastern and Strategic entered into the Research Agreement on January 6, 2018.[25] Per Strategic, the Research Agreement required it to "investigat[e]" certain individuals selected by Eastern.[26]  According to the Research Agreement's terms, Strategic was to provide Eastern "high quality original research and prepare reports on subjects chosen at [Eastern's] discretion for the purposes of detecting, stopping, and preventing crime or other harm to innocent people."[27]

More specifically, Strategic was required to provide Eastern with the following three types of "Deliverables": "Financial Forensic Reports" "Current Tracking Reports," and "Social Media Reports."[28]  Strategic was obligated to "provide the deliverables based on the best practices and standards of the industry, comparable to other top firms with similar services," including by delivering reports "of very high quality, revealing the true, complete and full profile

---

[22] Ex. A, Answer at 4 ¶ 17; Ex. F, Wallop I Tr. at 192:09-194:16; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 91:14-94:6.

[23] Ex. F, Wallop I Tr. 192:09-194:16; Ex. I, Waller II Tr. at 91:23-94:6

[24] Ex. A, Answer at 4 ¶ 17; *id.* at 28 ¶ 23; Ex. F, Wallop I Tr. at 246:16-247:23; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 66:10-16, 93:22-94:6.

[25] Ex. A, Answer at 2 ¶¶ 6-7; Ex. I, Waller II Tr. at 89:21-90:16; Ex. M, Research Agreement.

[26] Ex. A, Answer at 11 ¶ 56 (admitting that Strategic agreed to perform "a private investigation" into various individuals identified by Eastern under the Research Agreement); Ex. I, Waller II Tr. at 96:5-98:7.

[27] Ex. M, Research Agreement at 1; Ex. A, Answer at 2 ¶ 6.

[28] *Id.*

of the subject."[29]  All of the deliverables were to be provided "by USB drive only"; oral reports were insufficient.[30]

Financial Forensic Reports were to consist of "in-depth and detailed reports of existing and historical business and financial transactions, on subjects selected by [Eastern]."[31] For each subject, Strategic was to "produce progress reports on this financial forensic research each week in the first month, a preliminary report in the first month, and one comprehensive historical research report within 3 months . . . ."[32]  Current Tracking Reports were to consist of "detailed reports on movements of specified subjects by land, air, and sea."[33]  Strategic was to provide these reports on a weekly basis in the first month, and monthly thereafter.[34]  Social Media Reports were to consist of "in-depth and detailed reports on the social media usage" of the identified subjects.[35]  Strategic was obligated to provide these reports on a "weekly basis for the first month, and on monthly basis thereafter."[36]

Eastern agreed to pay Strategic $300,000 for each deliverable that Strategic completed in accordance with the terms of the Research Agreement; if no deliverables were

---

[29] *Id.*

[30] *Id.*; Ex. F, Wallop I Tr. at 136:13-23, 203:23-204:9; Ex. I, Waller II Tr. at 96:5-98:7.

[31] Ex. M, Research Agreement at 1-3; Ex. A, Answer at 2 ¶ 6.

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] *Id.*

[36] *Id.*

provided, Eastern had no obligation to pay Strategic under the Research Agreement.[37]   The Research Agreement also required Eastern to provide a $1 million deposit.[38]   The deposit was to be treated by Strategic as a down payment to be credited on a prorated basis to fees earned by Strategic during the last one and one-third months of the Research Agreement.[39]   The deposit was not meant to be a signing bonus.[40]   The parties agreed that **"[Eastern] may direct other entities to pay [Strategic], and that such payments will be deemed satisfactory compensation by [Strategic].**"[41]

The Research Agreement also authorized the parties to "terminate the contract with 30 days' written notice."[42]   Termination was permitted without a showing of cause.[43] Strategic did not require Eastern to represent in the Research Agreement that Mr. Guo was a dissident who opposed the CCP or covenant that he would use the investigatory research against the CCP.[44]

### D.   The Breach

On or about January 8, 2018, Eastern—through Ms. Wang—delivered a list of 15 individuals to Strategic—through Ms. Wallop—on a USB key (*i.e.*, the Subject List) that Eastern

---

[37] *Id.*; Ex. G Wallop II Tr. at 35:5-36:5, 42:15-44:12, 47:6-11, 49:21-50:17 ("Q.  So the pricing was based per unit, correct?  A.  Yes."; "Q. . . . When you were in the meeting talking about this document, the idea was that pricing would be tied to units?  A.  My understanding, that's correct.").

[38] Ex. M, Research Agreement at 5; Ex. A, Answer at 2 ¶ 6.

[39] *Id.*; Ex. A, Answer at 2, 4 ¶¶ 6, 17; Ex. I, Waller II Tr. at 91:23-94:6.

[40] Ex. A, Answer at 4 ¶ 17; Ex. I, Waller II Tr. at 91:23-94:6.

[41] Ex. M, Research Agreement at 5; Ex. A, Answer at 2 ¶ 6.

[42] Ex. M, Research Agreement at 5; Ex. A, Answer at 2 ¶ 6; Ex. I, Waller II Tr. at 90:17-91:8.

[43] *Id.*

[44] Ex. M, Research Agreement at 1-5; Ex. I, Waller II Tr. at 30:16-31:10.

wanted investigated under the Research Agreement.[45]  All of the individuals on the Subject List were members of the CCP, many of them high ranking officials that comprised the key group in control of China's banking system.[46]  Strategic then endeavored to conduct its investigation into the individuals on the Subject List.[47]

The weekly deliverables called for under the Research Agreement were due by no later than mid-January 2018.[48]  Strategic did not meet the contractual deadline.[49]  Rather, Strategic delivered its first USB drive to Eastern pursuant to the Research Agreement on January 26, 2018.[50]  That drive did not, however, comply with the terms of the Research Agreement. Indeed, Strategic has admitted that the information contained on that drive was "of no use to Guo or Eastern Profit because it was nothing more than the researchers' own work to familiarize themselves with the fifteen subjects using open-source information."[51]  On January 30, 2018, Strategic delivered a second USB drive to Eastern Profit.[52]  That USB drive, like the first, failed to comply with the terms of the Research Agreement.  As admitted by Strategic, the drive

---

[45] Ex. F, Wallop I Tr. at 174:04-175:02; 177:05-177:10; Ex. H, Waller I Tr. at 164:6-165:17; Ex. A, Answer at 13 ¶¶ 65, 66.

[46] Ex. K, L. Han. Tr. at 174:21-175:19.

[47] *See infra* at 10-11.

[48] Ex. M, Research Agreement at 1-3.

[49] *See infra* at 11-12.

[50] Ex. A Answer at 35 ¶ 45; Ex. H, Waller I Tr. at 201:10-202:13; Ex. G, Wallop II Tr. at 16:12-17; Ex. I, Waller II Tr. at 6:2-8, 112:7-114:10.

[51] Answer at A at 35 ¶ 45; Ex. I, Waller II Tr. at 6:2-8; 112:7-114:10.

[52] Answer at A at 28 ¶ 24; Ex. G, Wallop II Tr. at 16:12-17; Ex. H, Waller I Tr. at 211:3-215:16; Ex. I, Waller II Tr. at 115:9-116-17.

contained "incomplete work product . . . in the form of raw research data" that was not "of any use" to Eastern.[53]  Strategic did not deliver any other USB drives to Eastern.[54]

Consequently, Strategic failed to provide to Eastern any of the required deliverables.[55]  It never delivered any "financial forensic [h]istorical research" called for under the Research Agreement.[56]  It did not deliver to Eastern any "current tracking research" called for under the Research Agreement.[57]  It also failed to deliver to Eastern any "social media research" called for under the Research Agreement.[58]  In fact, Strategic has admitted that it "was unable to prepare *any* [of the] detailed reports" called for under the Research Agreement.[59]

As a result, on February 23, 2018, Eastern wrote to Strategic terminating the Research Agreement.[60]  In its letter, Eastern demanded that Strategic return the $1 million deposit.[61]  Strategic has refused to do so.[62]  Since termination, ACA has demanded repayment of the ACA Loan, and Eastern acknowledges that it remains obligated to repay the ACA Loan.[63]

---

[53] *Id.*

[54] Ex I, Waller II Tr. at 114:23-115:8.

[55] Ex I, Waller II Tr. at 6:2-8, 98:8-114:10; Ex. K, L. Han Tr. at 160:10-19, 264:9-265:20, 275:15-279:17.

[56] Ex I, Waller II Tr. at 6:2-8, 98:8-100:3.

[57] Ex I, Waller II Tr. at 6:2-8, 100:4-111:20.

[58] Ex I, Waller II Tr. at 6:2-8, 112:7-114:10.

[59] Ex D, Strategic's Responses and Objections to Eastern's First Interrogatories, Response to Interrogatory No. 8 (emphasis added).

[60] Ex A, Answer at 6 ¶ 28; Ex I, Waller II Tr. at 91:9-13; Ex. N, Termination Letter, EASTERN-000198.

[61] Ex. A, Answer at 6 ¶ 28; Ex. N, Termination Letter, EASTERN-000198.

[62] *Id.*

[63] *See* Ex. E, C. Han Tr. at 34:14-20, 38:18-40:17.

III.     **ARGUMENT**

    A.     **Standard of Review**

        The standard for granting summary judgment is well established. *Porto v. Guirgis*, 659 F. Supp. 2d 597, 602 (S.D.N.Y. 2009).  Summary judgment is appropriate if the nonmoving party cannot prove an element that is essential to the non-moving party's case and on which it will bear the burden of proof at trial. *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 805-06 (1999); *Powell v. Nat'l Bd. of Med. Exam'rs*, 364 F.3d 79, 84 (2d Cir. 2004).  If the moving party meets its initial burden of showing a lack of a material issue of fact, the burden shifts to the nonmoving party to come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); *Porto*, 659 F. Supp. at 603.  The nonmoving party must produce evidence and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible."  *Ying Jing Gan v. City of New York*, 996 F.2d 522, 532 (2d Cir. 1993).

    B.     **Strategic's Motion for Summary Judgment On Eastern's Breach of Contract Claim (Count II) Should Be Denied**

        Strategic argues that judgment in its favor on Eastern's breach of contract claim must be entered because (i) Eastern purportedly cannot prove damages as a matter of law and (ii) Eastern has allegedly frustrated and prevented Strategic's performance under the Research Agreement.  As explained below, neither contention has merit.

        1.     **Eastern Has Suffered Cognizable Damages**

        First, Strategic claims that Eastern cannot prove damages because, according to Strategic, Eastern's only measure of recovery is restitution damages and Eastern cannot show that Eastern conferred a benefit upon Strategic.  This argument is without legal and factual basis.

Indeed, contrary to Strategic's argument otherwise, Eastern has suffered damages under both restitution and reliance measures.

a.    <u>Eastern Has Suffered Restitution Damages</u>

As acknowledged by Strategic in its memorandum, a restitution measure of damages "aims to restore the nonbreaching party to as good a position as the one she occupied before the contract was made, without attempting to compensate her for consequential harms." *360Networks Corp. v. Geltzer (In re Asia Glob. Crossing, Ltd.)*, 404 B.R. 335, 341 (S.D.N.Y. 2009); *Daniel v. Wells Fargo Bank, N.A.*, 2013 U.S. Dist. LEXIS 150991, at *23 (E.D. Va. Oct. 17, 2013).[64]  Restitution damages can include, for example, the return of a deposit paid under a contract that the defendant has failed to perform.  *In re Asia Global*, 404 B.R. at 342 (stating that restitution damages are particularly appropriate when used to recover a deposit or downpayment paid pursuant to a contract that was not performed by the other party); *Wuxi Letotech Silicon Material Tech. Co. v. Applied Plasma Techs.*, 2010 U.S. Dist. LEXIS 56495, at *9 (E.D. Va. June 7, 2010) (similar); *Gulati v. Coyne Int'l Enters. Corp.*, 805 F. Supp. 365, 371 (E.D. Va. 1992) (similar); *Busman v. Beeren & Barry Invs., LLC*, 69 Va. Cir. 375, 379 (Va. Cir. Ct. 2005) (similar).

Although it is true that a plaintiff must confer some type of benefit upon the defendant to recover under a restitution measure of damages, such a benefit can be conferred not

---

[64] Virginia law applies to claims arising under the Research Agreement because Strategic is based in Virginia (Ex. A, Answer at 1 ¶ 2), the parties' negotiated the agreement in Virginia (*id.* at 3 ¶ 8; Ex. B, Strategic's Admissions, ¶¶ 20-25), Strategic drafted the agreement in Virginia (Ex. F, Wallop I Tr. at 108:5-109:18), the parties signed the agreement in Virginia (Ex. A, Answer at 2-3, ¶¶ 6-7; *id.* at 28 ¶ 23), and Strategic performed the services called for by the agreement in Virginia (*supra* at 17-18).  *See e.g.*, Restatement (Second) of Conflicts § 188; *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2016 U.S. Dist. LEXIS 180431, at *10 (S.D.N.Y. Dec. 30, 2016); *AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 317 (S.D.N.Y. 2010); *Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 146 (S.D.N.Y. 2000).  Because New York and Virginia law do not conflict as it relates to contractual damages, Eastern cites cases applying both state laws.

only by the plaintiff itself but also by a third party to which it delegated performance. *IEE LLC v. Giddens (In re Lehman Bros. Holdings Inc.)*, 703 F. App'x 18, 21 (2d Cir. 2017); *Dominion Res. Servs. v. 5K Logistics, Inc.*, 2010 U.S. Dist. LEXIS 20793, at *11 (E.D. Va. Mar. 8, 2010); *Restatement (Second) of Contracts* § 318.  Indeed, where an obligor delegates performance of an obligation under a contract to a third party and that third party fully performs that obligation, the obligee must accept the performance of the third party as if the performance was rendered by the obligor itself.  *Id.*  As illustrated in the *Restatement*, where "A owes B $ 100, and asks C to pay B, [p]ayment or tender to B by C has the effect of payment or tender by A."  *Restatement (Second) of Contracts* § 318, cmt. 1.  Thus, under the foregoing delegation doctrine, a benefit can be conferred not only by the plaintiff itself, but also through a third party delegated to perform the plaintiff's obligation under the contract.  *Id.*

Here, there is no dispute that Strategic requested Eastern to provide a $1 million deposit under the Research Agreement,[65] that the Research Agreement called for the payment of $1 million by Eastern,[66] that Eastern caused the ACA to wire the $1 million deposit to Strategic,[67] that Strategic received the $1 million,[68] that Strategic understood that the $1 million payment from ACA was the deposit that the parties had previously discussed,[69] and that Strategic accepted the $1 million deposit and purported to utilize it to cover the expenses associated with

---

[65] Ex. F, Wallop I Tr. at 192:09-194:16.

[66] Ex. M, Research Agreement at 5.

[67] Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278; Ex. F, Wallop I Tr. at 192:09-194:16.

[68] Ex. A, Answer at 4 ¶ 17; Ex. F, Wallop I Tr. at 192:09-194:16; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 91:14-94:6.

[69] Ex. F, Wallop I Tr. 192:09-194:16; Ex. I, Waller II Tr. at 91:23-94:6

the investigation called for under the Research Agreement.[70]  By causing ACA to wire Strategic $1 million on its behalf, Eastern plainly conferred a benefit upon Strategic.

Indeed, Strategic explicitly agreed in the Research Agreement that " ***[Eastern] may direct other entities to pay [Strategic], and that such payments will be deemed satisfactory compensation by [Strategic]***."[71]  Strategic cannot legitimately claim that Eastern did not confer a benefit upon it by causing ACA to wire Strategic the $1 million deposit when it *explicitly agreed* that such a payment would be deemed "satisfactory compensation" under the Research Agreement."  Strategic's argument that Eastern cannot recover under a restitution measure of damages is therefore without merit and must be rejected.

Finally, Strategic's argument that Eastern's claim for restitution damages is barred because it cannot show a "total breach" is also misplaced.  The case law that Strategic itself cites makes clear that all that is required to show a "total breach" and obtain restitution damages is a "material breach" by the other party to the contract.  *Palomo v. Demaio*, 403 F. Supp. 3d 42, 71 (N.D.N.Y. 2019); *cf. Horton v. Horton*, 254 Va. 111, 116, 487 S.E.2d 200, 204 (1997).  And as set forth in pages **Error! Bookmark not defined.**-10 above, Strategic has *admitted* that it failed to provide *any* of the deliverables called for in the Research Agreement and has therefore materially breached the contract.

In sum, Eastern has both conferred a benefit upon Strategic by causing ACA to wire the $1 million deposit to Strategic and has demonstrated, through Strategic's own admissions, that Strategic materially breached the Research Agreement.  As a result, Strategic's assertion that Eastern cannot prove restitution damages necessarily fails.

---

[70] Ex. A, Answer at 4 ¶ 17; *id.* at 28 ¶ 23; Ex. F, Wallop I Tr. at 246:16-247:23; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 66:10-16, 93:22-94:6.

[71] Ex. M, Research Agreement at 5.

b.    Eastern Has Suffered Reliance Damages

Eastern has also suffered damages under a reliance measure.  Reliance damages entitle the non-breaching party to recover, among other things, "expenditures made in preparation for performance or in performance" of a contract.[72]  Such damages can include, for instance, loans or other debts incurred in order to perform obligations under a contract.[73]  Indeed, "an individual or entity's undertaking of debt obligations . . . whether from a third party or the contractual counterpart, are recoverable" as contract damages.  *Nature's Plus*, 98 F. Supp. 3d at 606; *see also supra* note 73.  Further, such debt obligations are recoverable as contract damages whether or not such debt has been repaid by the plaintiff.  *Id.* (stating that "the fact that [plaintiff] has not repaid most or all of these monies is legally irrelevant").  Thus, "a debt obligation incurred in reliance upon a contract may be recoverable as reliance damages, even if the obligation has not been paid in full or part."  *Id.*

*Nature's Plus* is directly on point here.  In that case, plaintiff and defendant entered into a distributor agreement.  *Id.* at 602.  The defendant breached, and the plaintiff sued the defendant to recover certain expenses it had incurred in order to perform its obligations under the distributor agreement.  *Id.* at 602-03.  Like Strategic here, the defendant in *Nature's Plus*

---

[72] *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 646 F. App'x 25, 28 (2d Cir. 2016); *Carley Capital Grp. v. Newport News*, 709 F. Supp. 1387, 1399 (E.D. Va. 1989) (recognizing reliance damages as potential measure of recovery under Virginia law); *In re Vecco Constr. Indus., Inc.*, 30 B.R. 945, 954 (Bankr. E.D. Va. 1983) ("[T]he proper measure of damages is recovery of Vecco's 'reliance' interest in the contract, its expenditures made in performance or preparation for performance"); *Commonwealth v. Gavigan*, No. 0921-10-3, 2011 Va. App. LEXIS 100, at *17 n.7 (Va. Ct. App. Mar. 22, 2011); *Restatement (Second) of Contracts* § 349 ("As an alternative to the measure of damages [based on the expectancy interest], the injured party has a right to damages based on his reliance interest, including expenditures made in preparation for performance or in performance, less any loss that the party in breach can prove with reasonable certainty the injured party would have suffered had the contract been performed."); 11 *Corbin on Contracts* § 57.3 (2019) ("When the aggrieved party cannot establish its expectancy interest with sufficient certainty, the party may recover expenses of preparation and of part performance, as well as other foreseeable expenses incurred in reliance upon the contract.").

[73] *Nature's Plus*, 646 F. App'x at 28; *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 98 F. Supp. 3d 600, 606 (E.D.N.Y. 2015), *aff'd* 646 F. App'x 25, 28 (2d Cir. 2016); *see also See Elvin Assocs. v. Aretha Franklin*, 735 F. Supp. 1177, 1183 (S.D.N.Y. 1990); *McKinley Allsopp, Inc. v. Jetborne Int'l, Inc.*, No. 89 CIV. 1489 (PNL), 1990 U.S. Dist. LEXIS 12405, 1990 WL 138959, at *9 (S.D.N.Y. Sept. 19, 1990).

claimed that the plaintiff could not prove damages because the alleged expenses that it sought to recover "were paid with money borrowed from non-parties . . . and were never repaid" to those non-parties. *Id.* at 605. The defendant "contended that an award of out-of-pocket expenses under [such] circumstances runs contrary to the well-established principle of contract damages that a non-breaching party cannot be placed in a better position than it would have occupied had the breach not occurred." *Id.* The Eastern District of New York disagreed, holding that such debts could be recovered by plaintiff because they were incurred in order to perform its obligations under the distributor agreement. *Id.* at 606-10. Specifically, the court ruled that "a debt obligation incurred in reliance upon a contract may be recoverable as reliance damages, even if the obligation has not been paid in full or part." *Id.* at 610. The Second Circuit affirmed. *Nature's Plus Nordic A/S v. Nat. Organics, Inc.*, 646 F. App'x 25, 28 (2d Cir. 2016).

Like the plaintiff in *Nature's Plus*, Eastern incurred a debt obligation to perform its obligation to fund the deposit called for under the Research Agreement. Indeed, it is undisputed that on December 29, 2017, to fund the deposit contemplated by the parties and the Research Agreement, Eastern borrowed $1 million from ACA.[74] It is also uncontested that Eastern caused ACA to wire the $1 million deposit to Strategic,[75] that Strategic received the $1 million,[76] that Strategic understood that the $1 million payment from ACA was the deposit that the parties had previously discussed with Eastern,[77] and that Strategic accepted the $1 million deposit and purported to utilize it to cover the expenses associated with the investigation called

---

[74] Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

[75] Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278; Ex. F, Wallop I Tr. at 192:09-194:16.

[76] Ex. A, Answer at 4 ¶ 17; Ex. F, Wallop I Tr. at 192:09-194:16; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 91:14-94:6.

[77] Ex. F, Wallop I Tr. 192:09-194:16; Ex. I, Waller II Tr. at 91:23-94:6

for under the Research Agreement.[78]  Further, since Eastern's termination, ACA has demanded repayment of the ACA Loan, and Eastern acknowledges that it remains obligated to repay the ACA Loan.[79]  By incurring a $1 million loan obligation to fund the deposit, Eastern has suffered reliance damages.  Strategic's assertion to the contrary is simply wrong.

### 2. Eastern Did Not Frustrate Strategic's Performance

Second, Strategic claims that Eastern's breach of contract claim fails because Eastern supposedly frustrated Strategic's performance, thereby violating the implied covenant of good faith and fair dealing.  As a threshold matter, this approach ignores that  questions of whether performance was frustrated are typically fact-intensive and not ripe for resolution at summary judgment.  *See e.g.*, *Ariz. Family Florists LLC v. 1-800-Flowers.com, Inc.*, 2020 U.S. Dist. LEXIS 31389, at *33 (E.D.N.Y. Feb. 21, 2020).  Strategic's implied covenant argument should be rejected for that reason alone.

But even setting aside the fact-intensive nature of proving such a defense, Strategic's argument wholly fails for other reasons, both substantive and procedural. Substantively, Strategic's argument fails because it is claiming that Eastern frustrated Strategic's performance by exercising its contractually-negotiated right to terminate the Research Agreement.  Strategic argues that it learned between February 15, 2019 and February 20, 2019 that "four or five" of the fifteen individuals on the Subject List were "records protected," and that instead of providing "replacement subjects," Eastern terminated the Research Agreement on February 23, 2019.[80]  A claim or defense premised upon the duty of good faith and fair dealing

---

[78] Ex. A, Answer at 4 ¶ 17; *id.* at 28 ¶ 23; Ex. F, Wallop I Tr. at 246:16-247:23; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 66:10-16, 93:22-94:6.

[79] *See* Ex. E, C. Han Tr. at 34:14-20, 38:18-40:17. The fact the Eastern has not repaid the money is "legally irrelevant under New York law." *Nature's Plus*, 98 F. Supp. 3d at 609.

[80] Dkt. No. 266 at 13, 23-25; Wallop I Tr. at 234:14-241:4.

(like Strategic's argument here) cannot stand where it is "inconsistent with other terms of the contractual relationship." *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 448 N.E.2d 86, 91, 461 N.Y.S.2d 232 (N.Y. 1983); *Sun Hotel v. Summitbridge Credit Invs. III, LLC*, 86 Va. Cir. 189, 196 (Va. Cir. Ct. 2013).  Further, "the implied covenant does not extend so far as to undermine a party's 'general right to act on its own interests in a way that may incidentally lessen' the other party''s anticipated fruits from the contract." *Van Valkenburgh, Nooger & Neville, Inc. v. Hayden Publ'g Co.*, 30 N.Y.2d 34, 281 N.E.2d 142, 145, 330 N.Y.S.2d 329 (N.Y. 1972); *Sun Hotel*, 86 Va. Cir. at 196.  Applying these principles, New York and Virginia courts leave no doubt that exercising a contractually-negotiated termination right cannot give rise to a defense that the terminating party violated the implied covenant of good faith and fair dealing by frustrating the other party's performance.[81]  Because Strategic's frustration/implied covenant defense is premised upon Eastern's exercise of its contractually-negotiated termination right, it necessarily fails.

Strategic's argument also fails because it has not cited any admissible evidence demonstrating that certain of the individuals on the Subject List were allegedly designated by the federal government as "records protected," substantiating what the so-called "records protected" designation even means, or why that purported "records protected" designation precludes an

---

[81] *Roswell Capital Partners LLC v. Alt. Constr. Techs.*, 638 F. Supp. 2d 360, 370 (S.D.N.Y. 2009) ("Defendants' affirmative defenses [including a frustration defense] fail because they can point to no evidence that Plaintiffs took any 'unconscionable' action or prevented Defendants from executing their obligations. Rather, the evidence shows simply that Plaintiffs exercised their contractual rights."); *In Touch Concepts, Inc. v. Cellco P'ship*, 2013 U.S. Dist. LEXIS 168185, at *11 (S.D.N.Y. Nov. 18, 2013) *Paxi, LLC v. Shiseido Ams. Corp.*, 636 F. Supp. 2d 275, 286 (S.D.N.Y. 2009); *Orbit Corp v. Fedex Ground Package Sys., Inc.*, 2015 U.S. Dist. LEXIS 99873, at *22 (E.D. Va. July 30, 2015); *Sun Hotel v. Summitbridge Credit Invs. III, LLC*, 86 Va. Cir. 189, 196 (Va. Cir. Ct. 2013) ("A plaintiff must do more than make claims of a defendant's unfavorable exercise of its contractual rights — a plaintiff must allege bad faith and unfair dealing in a contractual relationship."); *cf. State St. Bank & Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 170 (2d Cir. 2004) (concluding that "[w]here a contract allows a bank to withhold consent for particular conduct and sets no express restrictions on the bank's right to do so, the bank is not prohibited from unreasonably or arbitrarily withholding such consent.").

investigation into the individuals subject to that designation.[82]  Instead, Strategic relies solely upon inadmissible hearsay.  In an effort to show that certain of the individuals on the Subject List were "records protected," Strategic points to deposition testimony of Ms. Wallop and Mr. Waller, in which they claim that members of a Texas-based investigation group called Allied Special Operations Group ("ASOG") told them that certain individuals on the Subject List were "records protected."  *See* Dkt. No. 266 at 13.  Strategic does not cite to any deposition testimony by the ASOG members (because there is none) or submit an affidavit from those members. Having failed to obtain discovery from Strategic's own subcontractors, Strategic cannot now utilize inadmissible hearsay statements attributed to those subcontractors to prove a claim that Eastern somehow frustrated Strategic's performance.

In sum, not only has Strategic failed to cite to any admissible evidence in support of its frustration defense, Strategic's purported evidence, even if it were admissible, does not support such a defense.  Thus, Strategic's frustration defense must be rejected.

### C.  Strategic's Motion for Summary Judgment On Eastern's Fraud Claim (Count II) Should Be Denied

Strategic also asserts that Eastern's fraud claim must be dismissed because it is duplicative of its contract claim.  That is not so.   "A fraud claim should be dismissed as redundant when it merely restates a breach of contract claim, *i.e.*, when the only fraud alleged is that the defendant was not sincere when it promised to perform under the contract."  *First Bank of the Ams. v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 291, 690 N.Y.S.2d 17, 20 (N.Y. App. Div. 1st Dept. 1999); *Pre-Fab Steel Erectors, Inc. v. Stephens*, 2009 U.S. Dist. LEXIS 26548, at

---

[82] For instance, Strategic was not able to cite any statutory authority defining the concept of "records protected" or its implications.  Further, even if Strategic had come up with such substantiation, it is at best a *partial* excuse—relating only to four or five individuals on the Subject List—for its failed performance.

*25 (W.D. Va. Apr. 1, 2009).[83]   "By contrast, a cause of action for fraud may be maintained where a plaintiff pleads a breach of duty separate from, or in addition to, a breach of the contract." *First* Bank, 257 A.D.2d at 291; *Pre-Fab Steel*, 2009 U.S. Dist. LEXIS 26548, at *25.

"[I]f a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, the plaintiff has stated a claim for fraud even  though the same circumstances also give rise to the plaintiff's breach of contract claim." *First* Bank, 257 A.D.2d at 291; *Pre-Fab Steel*, 2009 U.S. Dist. LEXIS 26548, at *25.   "Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract (though it may have induced the plaintiff to sign the contract) and therefore involves a separate breach of duty."[84]   Consistent with these principles, a fraud claim premised upon a party's false, pre-contract representations regarding its ability, resources, or qualifications to perform a contract are actionable misstatements, separate, apart, and not duplicative of related contract claims.[85]

---

[83] Given that the locus of the alleged fraud took place in Virginia (*i.e.*, Strategic Vision's principal place of business), Virginia law likely applies to Strategic Vision's fraud claim.  *Rosenberg v. Pillsbury Co.*, 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989).  Because Virginia law regarding fraudulent inducement claims is consistent with New York law, Eastern cites to cases interpreting both Virginia and New York law.

[84] *Id.* (citing *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956, 510 N.Y.S.2d 88, 89, 502 N.E.2d 1003, 1004 (1986)); *see also Triangle Underwriters, Inc. v. Honeywell, Inc.*, 604 F.2d 737, 747 (2d Cir. 1979) ("The fraud [plaintiff] alleges in Count I consisted of independent false representations, made before there ever was a contract between the parties, which led [plaintiff] to enter into it. In other words, [plaintiff] clearly alleges fraud that was extraneous to the contract, rather than a fraudulent non-performance of the contract itself."); *Tosto v. Zelaya*, 2003 U.S. Dist. LEXIS 8085, *19 (S.D.N.Y. May 12, 2003) (holding that plaintiffs' fraudulent inducement claim was not duplicative of contract claim because "plaintiffs allege a misrepresentation of present fact, rather than of future intent, and assert that the misrepresentation, which was the inducement for the contract, was extraneous or collateral to it"); *Aero Media LLC v. World Healing Ctr. Church, Inc.*, 2013 U.S. Dist. LEXIS 83891, *13 (S.D.N.Y. June 11, 2013) (holding that pre-execution misrepresentations stated a fraud claim that was "collateral to the contract because [the allegations went] beyond [defendant's] mere undertaking to perform its contractual obligations"); *Pre-Fab Steel*, 2009 U.S. Dist. LEXIS 26548, at *25; *Insteel Indus. v. Costanza Contracting Co.*, 276 F. Supp. 2d 479, 485 (E.D. Va. 2003) (finding fraud claim to be not duplicative of contract claim and explaining "distinction in Virginia law between 'a statement that is false when made (which is fraud) and a statement that becomes false only when the promisor later fails to keep his word (which is a breach of contract)'").

[85] *Gulf Coast Dev. Group v. Lebror*, 2003 U.S. Dist. LEXIS 21740, *19 (S.D.N.Y. Dec. 3, 2003) (holding that fraud claim based on defendants' "misrepresentations regarding its ***ability and resources*** to perform a contract"

Here, the record demonstrates that Strategic misrepresented that it had the expertise and qualifications to perform the Research Agreement, including that it was licensed to perform a private investigation, that Eastern relied on that representation in entering into the contract, and that Eastern suffered damages as a result.  Dkt. No. 93 ¶¶ 35-39 (summarizing fraud allegations); Ex. O, Deposition Transcript of Guo Wengui dated August 2, 2019 ("Guo I Tr.") at 150:7-151:5 (testifying that Strategic Vision misrepresented its qualifications, including that it was licensed to perform private investigation, and that Eastern relied on those qualification to its detriment); Ex. A, Answer at 14 ¶¶ 88-102 (admitting that Strategic Vision, Ms. Wallop, and Mr. Waller were not licensed to conduct private investigation); Ex. F, Wallop I Tr. at 290:25:-292:2 (same).   Eastern's claim that Strategic misrepresented its qualifications is therefore completely distinct and collateral from its claim that Strategic failed to perform the Research Agreement by failing to deliver the deliverables called for therein.  Eastern's fraud claim is accordingly not duplicative and should not be dismissed.

### D.    Strategic's Motion for Summary Judgment On Eastern's Unjust Enrichment Claim (Count II) Should Be Denied

Strategic argues that judgment on Eastern's unjust enrichment claim must be entered in Strategic's favor because (i) Eastern's relationship with Strategic is governed by an enforceable contract and (ii) Eastern has purportedly not conferred any benefit upon Strategic. Neither of these contentions has merit.

---

was not duplicative of contract claim); *Regal Custom Clothiers v. Mohan's Custom Tailors*, 1997 U.S. Dist. LEXIS 9288, 1997 WL 370595 at *6 (S.D.N.Y. July 1, 1997) (finding that fraud claim based upon representations that defendants "had the ***resources*** necessary to perform under the contract when in fact they knew they did not" was a "misrepresentation of present fact . . . collateral or extraneous to the contract, and thus not redundant of the breach of contract claim."); *Envtl. Staffing Acquisition Corp. v. Beamon Enters.*, 2011 Va. Cir. LEXIS 65, at *31 (Va. Cir. Ct. Feb. 22, 2011) ("A doctoring of the resume could be considered a misrepresentation of the present quality or character of the product, as En-Staff would be misrepresenting Spangler's ***qualifications***."); *Golf Ranch Resort Motel, Inc. v. Tar Heel Mortg. Co.*, 341 F. Supp. 846, 850 (E.D. Va. 1972) (similar).

Strategic's first argument is incorrect because, as set forth in Eastern's Memorandum of Law In Support of its Motion for Summary Judgment (Dkt. No. 261), the Research Agreement is void and unenforceable.  Eastern's unjust enrichment claim for recovery of the deposit is accordingly valid.  *See e.g., Rella v. N. Atl. Marine Ltd.*, 2004 U.S. Dist. LEXIS 11567, at *18 (S.D.N.Y. June 21, 2004) ("Indeed, absent some contractual arrangement, if a purchase has been cancelled, the seller has no legitimate claim to a deposit, for without a pending purchase, the deposit can be deemed neither a down payment on the purchase price nor security to ensure performance by the buyer."); *Kahn v. Rosenstiel*, 298 F. 656 (S.D.N.Y. 1924) (Hand, J.) (where buyer agreed to purchase 2000 cases of whisky and made a $ 10,000 deposit on the contract of sale, but subsequently discovered that permits authorizing the purchase and sale were void and hence declined to consummate the contract, buyer entitled to recover his deposit); *cf. Kressel, Rothlein & Roth v. Gallagher*, 155 A.D.2d 587, 547 N.Y.S.2d 653, 653 (2d Dep't 1989) (buyer of real estate who canceled contract in advance of closing entitled to return of deposit); *Va. Elec. & Power Co. v. Norfolk S. Ry. Co.*, 2002 Va. Cir. LEXIS 80, at *64 (Va. Cir. Ct. July 3, 2002) (similar).

Strategic's second argument—that Eastern has not conferred any benefit upon Strategic—is equally flawed.  As both New York and Virginia law make clear, a defendant need not have received funds directly from a plaintiff in order for the plaintiff to be deemed to have conferred a benefit upon the defendant.  *Sungchang Interfashion Co. v. Stone Mt. Access., Inc.*, 2013 U.S. Dist. LEXIS 137868, at *56 (S.D.N.Y. Sep. 25, 2013); *Lau v. Lazar*, 2014 N.Y. Misc. LEXIS 5306, at *9-11 (N.Y. Sup. Ct. Oct. 7, 2014); *Trade Expo Inc. v. Sterling Bancorp*, 2014 N.Y. Misc. LEXIS 4108, at *4-7 (N.Y. Sup. Ct. Sept. 11, 2014); *Seeman v. Oxfordshire, LLC*, 83

Va. Cir. 442, 448 (Va. Cir. Ct. 2011).[86]  For instance, as explained above, such a benefit can be conferred not only by the plaintiff itself but also by a third party to which it delegated performance.  *See supra* at 11-12.

Here, it is undisputed here that Eastern caused ACA to wire the $1 million deposit to Strategic,[87] Eastern agreed to repay ACA $1 million, plus interest,[88] and that Strategic received the $1 million deposit,[89] accepted the $1 million deposit,[90] and explicitly agreed that payment by ACA would "be deemed satisfactory compensation by [Strategic]."[91]   Given the foregoing, Strategic cannot reasonably claim that Eastern did not confer a benefit upon it. Eastern's unjust enrichment claim is therefore viable, and Strategic's Motion for Summary Judgment on Eastern's unjust enrichment claim must be denied.

---

[86] The cases that Strategic cites do not support its contrary position.  For instance, the facts of *Russian Standard* bear no resemblance to the facts of this case.  There, the Court held that the plaintiff did not confer any benefit upon the defendant because it found that the defendant did not receive **anything of value from anyone**. *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F. Supp. 2d 376, 385-86 (S.D.N.Y. 2007). Indeed, plaintiff's claim was that the defendant's false advertising supposedly misappropriated plaintiff's goodwill in the industry.  *Id.*  Because the defendant's product had been sold and advertised for years before plaintiff introduced its competing product, the Court concluded that such a claim was "ludicrous" and found that no benefit was conferred upon the defendant.  *Id. Rothstein* is similarly inapposite.  In that case, the Court held that the plaintiff did not confer any benefit upon one of the defendants because it did not pay, or cause another person or entity to pay on plaintiff's behalf, the monies that defendant received.  *Rothstein v. Auto Club S.*, 2019 U.S. Dist. LEXIS 194851, at *32-36 (S.D.N.Y. Aug. 26, 2019).  Instead, the alleged benefit conferred upon the defendant were monies it received from another defendant, pursuant to a separate contractual relationship of which plaintiff was not part, with respect to transactions that were "unrelated" to those challenged by the plaintiff, and that were not paid on the plaintiff's behalf or at the plaintiff's behest.  *Id.*

[87] Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278; Ex. F, Wallop I Tr. at 192:09-194:16.

[88] *Id.*

[89] Ex. A, Answer at 4 ¶ 17; Ex. F, Wallop I Tr. at 192:09-194:16; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 91:14-94:6.

[90] Ex. A, Answer at 4 ¶ 17; *id.* at 28 ¶ 23; Ex. F, Wallop I Tr. at 246:16-247:23; Ex. H, Waller I Tr. at 157:9-22; Ex. I, Waller II Tr. at 66:10-16, 93:22-94:6.

[91] Ex. M, Research Agreement at 5.

**E.**     **Strategic's Motion for Summary Judgment On The Basis That Eastern Is Not Registered To Do Business In New York Should Be Denied**

In a last-ditch effort to dispose of Eastern's claims, Strategic argues that Eastern is barred from maintaining this action by Section 1312(a) of New York's Business Code because Eastern is not registered to do business in New York.  Like the rest, this argument misses the mark.

In order for a court to find that a foreign corporation is "doing business" in New York such that it must register to do so, "the corporation must be engaged in *a regular and continuous course of conduct* in the State." *Virgilio Flores, S.A. v. Jerome Radelman, Inc.*, 567 F. Supp. 577, 579 (E.D.N.Y. 1982) (emphasis added); *Commodity Ocean Transp. Corp. v. Royce*, 221 A.D.2d 406, 407 (N.Y. App. Div. 2nd Dept. 1995) (same); *see also* N.Y. Bus. Corp. Law § 1312(a).  A defendant relying upon Section 1312(a) as a statutory barrier to a plaintiff's lawsuit "bears the burden of proving that the [plaintiff-corporation's] business activities in New York were not just casual or occasional, but so *systematic and regular* as to manifest continuity of activity in the jurisdiction." *S & T Bank v. Spectrum Cabinet Sales*, 247 A.D.2d 373, 373, 668 N.Y.S.2d 641, 642 (N.Y. App. Div. 2nd Dept. 1998).  Absent sufficient evidence to establish a "systematic" and "continuous" course of conduct in New York, "the presumption is that the plaintiff is doing business in its State of incorporation . . . and not in New York." *Cadle Co. v. Hoffman*, 237 A.D.2d 555, 555, 655 N.Y.S.2d 633, 634 (N.Y. App. Div. 2nd Dept. 1997).  This presumption creates a high bar.  Indeed, in *Alicanto, S.A. v. Woolverton*, the New York Appellate Division held that maintaining an office in New York, having two bank accounts in New York, and negotiating four transactions in New York over a seven-year period was not so "regular and systematic" as to invoke Business Corporation Law § 1312.  129 A.D.2d 601, 603, 514 N.Y.S.2d 96, 98 (N.Y. App. Div. 2nd Dept. 1987).

-23-

Here, Strategic does not come close to clearing that high hurdle.  Strategic claims that Eastern must register to do business in New York because (i) some of the negotiations regarding the Research Agreement occurred in New York, (ii) C. Han signed the ACA Loan Agreement in New York, and (iii) C. Han signed the Power of Attorney authorizing GSNY to handle this litigation for Eastern in New York.  Dkt. No. 266 at 16-18.  These contacts are precisely the type of "casual" or "occasional" interactions that do not constitute doing business in New York, and they certainly do not rise to the level of the "systematic and continuous" activity necessary to be deemed doing business in New York.  *See e.g.*, *Alicanto*, 129 A.D.2d at 603.

That is so, especially when one considers the facts Strategic omitted from its discussion, including (i) the fact that the Research Agreement—a contract between a Hong Kong company (Eastern) and a Nevada limited liability company based in Virginia (Strategic)—was drafted, signed, and principally negotiated in Virginia, (ii) the fact that the ACA Loan Agreement is between two Hong Kong companies (Eastern and ACA), governed by Hong Kong law, and contains a Hong Kong forum-selection clause, and (iii) the fact that the Power of Attorney was entered into with GSNY, a company that is duly-authorized to operate in New York.[92]  In short, Eastern does not conduct business in New York and can accordingly maintain this action without registering to do so.  Even if Eastern were required to register to do business in New York, however, failure to do so does not warrant dismissal of this action.  Indeed, the "appropriate remedy [is] not outright dismissal of the complaint, but [rather] a conditional dismissal or a stay affording plaintiff an opportunity to cure this non-jurisdictional defect."[93]  For

---

[92] Ex. A, Answer at 1-3, 28 ¶¶ 2, 6-8, 23; Ex. B, Strategic's Admissions, ¶¶ 20-25; Ex. F, Wallop I Tr. at 108:5-109:18; Ex. L, ACA Loan Agreement, EASTERN-000278; Exhibit O to Strategic's Memorandum (Dkt. No. 266).

[93] *Tri-Terminal Corp. v. CITC Industries, Inc.*, 78 A.D.2d 609, 432 N.Y.S.2d 184, 185 (N.Y. App. Div. 1980); *Nasso v. Seagal*, 263 F. Supp. 2d 596, 607 (E.D.N.Y. 2003) ("A corporation with no authority to conduct business in New York may obtain such authority after it has already commenced an action and thereby become

these reasons, Strategic's attempt to dismiss this action on the basis that Eastern has not registered to do business in New York must be denied.

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny Strategic's Motion for Summary Judgment, grant Eastern's Motion for Summary Judgment, enter judgment in Eastern's favor on Counts III and IV of Eastern's Second Amended Complaint and on Counts I and II of Strategic's Counterclaims, order Strategic to return the $1 million deposit paid to it pursuant to the Research Agreement, plus pre- and post-judgment interest, and grant Eastern such other relief that the Court deems appropriate.

Dated:  April 6, 2020

                                                                Respectfully submitted,

                                                                /s/ Francis J. Lawall
OF COUNSEL:                                     Francis J. Lawall (NY Bar ID No. FL1234)
                                                                PEPPER HAMILTON LLP
Joanna J. Cline (*Pro Hac Vice*)           3000 Two Logan Square
Christopher B. Chuff (*Pro Hac Vice*)   Eighteenth and Arch Streets
PEPPER HAMILTON LLP                     Philadelphia, PA 19103
1313 North Market Streets, Suite 5100   215.981.4000
Wilmington, DE 19801                         215.981.4750 (facsimile)
302.777.6500
302.421.8390 (facsimile)

---

qualified to maintain that action."); *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 414 (S.D.N.Y. 1998) ("If the plaintiff corporation is in breach of the statute when it begins an action but complies while the action is pending, the action is validated ab initio and may proceed unhindered"); *Manhattan Fuel Co., Inc. v. New England Petroleum Corp.*, 422 F. Supp. 797, 801 (S.D.N.Y. 1976) ("[A] corporation … can, after commencing an action, obtain authority and thereafter maintain the lawsuit."); *Beer v. F.W. Myers & Co., Inc.*, 159 A.D.2d 943, 552 N.Y.S.2d 796, 796 (App. Div. 1990) ("Compliance [with Section 1312] after commencement of an action is permissible"); *Hot Roll Mfg. Co. v. Cerone Equipment Co.*, 38 A.D.2d 339, 329 N.Y.S.2d 466 (App. Div. 1972) ("[A] corporation, after commencing an action, could obtain authority and, thereafter, maintain a lawsuit."); *United Arab Shipping Co. (S.A.G.) v. Al-Hashim*, 176 A.D.2d 569, 574 N.Y.S.2d 743, 743 (N.Y. App. Div. 1991) (affirming a conditional order of dismissal rather than outright dismissal of complaint for failure to register to do business in New York).

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of April, 2020, a true and correct copy of the

foregoing *Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment*

was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the

Court's electronic filing system.

Dated:  April 6, 2020

Respectfully submitted,

OF COUNSEL:

Joanna J. Cline (Admitted *Pro Hac Vice*)
Christopher B. Chuff (Admitted *Pro Hac Vice*)
PEPPER HAMILTON LLP
1313 North Market Streets, Suite 5100
Wilmington, DE  19801
302.777.6500
302.421.8390 (facsimile)

*/s/ Francis J. Lawall*
Francis J. Lawall (NY Bar ID No. FL1234)
PEPPER HAMILTON LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
215.981.4000
215.981.4750 (facsimile)