K321easc

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

EASTERN PROFIT CORPORATION
LIMITED,

              Plaintiff,

         v.                             18 Civ. 2185 (LJL)

STRATEGIC VISION US LLC,

              Defendant.                Conference
------------------------------x
                                        New York, N.Y.
                                        March 2, 2020
                                        10:05 a.m.
Before:

                  HON. LEWIS J. LIMAN,

                                        District Judge

                       APPEARANCES

PEPPER HAMILTON LLP
     Attorneys for Plaintiff
BY:  JOANNA J. CLINE, ESQ.

GRAVES GARRETT LLC
     Attorneys for Defendant
BY:  EDWARD D. GREIM, ESQ.
```

1           (In the robing room)

2           THE COURT:  So we're here on a status conference.
3   I've got the parties' request for schedule on summary judgment
4   briefing.  I've got your status letter.  I have the various
5   premotion letters.

6           Since this is the first time I've heard either of you,
7   if you'd take a couple of minutes to tell me a little bit what
8   the case is about from your client's perspective.  You don't
9   need to repeat what's in the premotion letters, no need to
10  repeat what's in the complaint, but just maybe some highlights,
11  and then what I would be prepared to do is discuss a schedule
12  for the filing of summary judgment papers, for joint pretrial
13  order, and for a ready trial date.

14          So I'll let the plaintiff go first.

15          MS. CLINE:  Okay, great.  Thank you, your Honor.

16          So from our perspective, this is a contract case, and
17  the contract is one for private investigatory research
18  services.  So our client hired Strategic Vision to perform
19  research services on a number of individuals who were
20  specified, and the contract, that's attached to the complaint,
21  sets forth sort of a schedule with respect to the reports of
22  research in each of three categories and sort of gives
23  expectations along what the deliverables are supposed to be and
24  so forth.

25          When the parties -- shortly after the parties -- or

K321easc

1    actually, I think shortly before the parties executed the
2    agreement, our client paid a down payment of a million dollars
3    to the other side, and basically that's why we're here.  So
4    shortly after the contract was executed, our client was
5    dissatisfied on the performance on the other side, we weren't
6    getting the deliverables that the parties had contracted to,
7    and I guess the contract was executed in like January of 2018.
8    By third week in February, our client was dissatisfied,
9    terminated the contract, and then basically sued to get its
10   deposit back.
11             In response to that, the other side filed some
12   counterclaims, most of which have focused on a fraud claim
13   having to do with our client's views with respect to the
14   Chinese Communist Party.  And so we then had to respond to a
15   pretty intensive discovery campaign on those issues.
16             THE COURT:  As I understand it, your client did not
17   personally pay the million-dollar deposit, correct?
18             MS. CLINE:  That's correct.
19             THE COURT:  So there's no dispute as to that fact,
20   correct?
21             MS. CLINE:  That's correct.
22             THE COURT:  There ultimately will be a legal question
23   as to whether, if your client didn't pay the money but it was
24   paid pursuant to the contract to which your client was a party,
25   your client is the one that gets the million dollars back; and

1  also, one of the other conditions would be a payment in terms
2  of your client getting the million dollars back.
3              MS. CLINE:  I suppose there could be a legal issue.
4  We think you could deal with it in pretty short order,
5  including because there's a clause specifically in the contract
6  that says that the parties agree that our client may direct
7  another entity to pay the down payment.
8              THE COURT:  I understand that's been the subject of
9  the letters to the Court that the parties have submitted.
10             MS. CLINE:  Exactly.
11             THE COURT:  I'll hear from defendants.
12             MR. GREIM:  Your Honor, I agree with most of the
13 factual background.  This is a case about a contract, but
14 really, we view it really as a contract and fraud case.
15             The plaintiff brought claims for fraud and breach of
16 contract, and then they have a theory, which you referred to a
17 moment ago, that this was really a PI contract, which then
18 requires you to be licensed, and if you're not licensed, then
19 the contract is illegal, and there's choice of law questions
20 and things there.
21             But basically, in our view, this is a contract for
22 services that should never have been entered into.  We believe
23 that we were fraudulently induced to enter into the contract by
24 promises from this guy named Guo Wengui, that -- obviously,
25 he's on the letters.  We think everything he said about what he

wanted to do with the original contract, all those things were false. And then as we marched into the contract and started to perform, almost immediately there were breaches and frustrations of performance from Mr. Wengui, which we allege, as you've seen, is really the person that kind of animates and is behind Eastern Profit.

The money did come from a third party. It's true the contract says that. It says that money may come from a third party. But our point is that, you know, we're not claiming that that's a breach of the contract; we're not saying that it's a breach by having somebody else pay. But if you look at the specific restitutionary remedy that they're trying to get here, restitution doesn't work when somebody else comes in and pays. This entity that has sued us, and we counterclaimed against, we think is just a shell entity; doesn't have any money, doesn't really do anything other than having some operatives in New York.

So at the end of the day, your Honor, both sides are accusing each other of breach of contract; both sides are accusing each other of fraud. Not every issue is susceptible to summary judgment, but I think both sides have actually identified the issues that could resolve the case. And so this somewhat unique four-part briefing schedule would hopefully efficiently present those issues to you.

THE COURT: And if your client is not entitled to

K321easc

1   retain the million dollars, in your view who would be the
2   proper party to seek that remedy?
3            MR. GREIM:  Well, it's not clear if someone can seek
4   that as a remedy, but if somebody could, ACA, which paid us the
5   money, which we learned in discovery was supposed to actually
6   receive the fruits of the research -- frankly, we believe it
7   was somebody even beyond ACA, but we know that much.  So ACA
8   could come in and say, hey, we paid the money, we were going to
9   get the results of this, you need to give the money back to us.
10  Of course it would have to be minus whatever value we did
11  provide.
12           THE COURT:  Could they do that on a contract theory?
13           MR. GREIM:  It has to be a quasicontract theory, or,
14  you know -- I think quasicontract is kind of a catchall.
15           THE COURT:  Is your client seeking damages on the
16  counterclaims?
17           MR. GREIM:  Yes.
18           THE COURT:  Could you describe what those are to me.
19           MR. GREIM:  The damages are just basically the benefit
20  of the bargain, paying the installments that began to come due
21  as the parties were starting to dispute and have things unwind
22  in late January, early February.  So we've got a calculation in
23  our complaint, which we later had to change because of a
24  miscalculation about when the contract started and then what
25  was supposed to happen, you know, every two weeks and when the

K321easc

1  payments were supposed to come in.  So under our theory, we
2  keep the million dollars, under our contract theory, and we get
3  a little money back.
4           THE COURT:  Let me tell you what my thoughts are with
5  respect to the scheduling of summary judgment and the joint
6  pretrial order and trial.  I think the general outlines of what
7  you've proposed is acceptable and makes sense.  I'd like the
8  briefing to be done at a more accelerated basis, and I would
9  like to set a date for joint pretrial order and for a ready
10 trial date.
11          I'm looking at the letter now of January 31 from
12 Mr. Grime.  What I would like, with respect to Filing 1, which
13 is Eastern's motion for summary judgment as to two of the
14 issues and Strategic Vision's motion for summary judgment as to
15 three of the claims, for those to be filed one week from today,
16 which would be March 9th.
17          Filing 2 is the opposition of Eastern and the response
18 and/or cross-motion of Strategic Vision.  The parties had
19 proposed that that be filed 30 days after the filing of the
20 motion.  I would like that to be filed 21 days after the filing
21 of the motion, so that would put it at March 30th.  Can the
22 parties do that?
23          MR. GREIM:  Your Honor, I've got to tell you, I tried
24 to speak beforehand with my opposing counsel here.  Actually, I
25 was going to ask for more time for Filing 1.  I recognize that

we've said ten days after this conference in our letter.  The way the spring has unfolded for me, we will not be able to file our motions actually even ten days after.  I was hoping to go a little deeper into March to do that.  That actually does cause some problems for Ms. Cline, and one thing I regret is that neither one of us have our phones, although this morning I tried to write down a calendar on my piece of paper so I could see what the calendar looked like here.  But compressing the internal deadlines might make some sense, but I will not be able to have my motion filed one week from today.

THE COURT:  Why is that?  You submitted the premotion letters some time ago, in January.  This case has been going on for a long time.  The issues are pretty discrete.  Why do you need the additional time?

MR. GREIM:  Well, your Honor, frankly, what we did, you know, we hoped that, you know -- first of all, the case was assigned to you but then back to Judge Koeltl, then back to you again.  We weren't sure if this system for filing would be the system that you'd propose, and we didn't want to start drafting a brief.  We wanted to talk about page limits.  I mean, we may have to go back and redo some things.  And so we have held off, waiting for this conference, and, you know, I just -- frankly, we could have done ten days back earlier in the winter, but where we find ourselves today, with what we've done so far, with our staff, with what we have planned, I really cannot get

K321easc

the motion filed.  And, I mean, we will work as fast as we can.  It sounds like the date that I proposed to my opposing counseling is the opposite direction the Court wants to go, but I can't speed up and file it next Monday.

         THE COURT:  So let me hear from plaintiff's counsel.

         MS. CLINE:  We're ready to go.  We were ready to file in November, so we'd like to get on with the briefing.

         THE COURT:  And would you have an objection if I made Filing 1 fourteen days from today?

         MS. CLINE:  I'm sorry, your Honor.  Can you tell me what that --

         THE COURT:  That would be the 16th.

         MS. CLINE:  I think so.  The only issue is I have a trial the week of April 20th, but I'm sure we can figure it out.

         THE COURT:  So I'm going to set that as March 16th for Filing 1; three weeks after that for Filing 2, which would be April 6th.  And that would be for Eastern's opposition to Strategic Vision's motion and Strategic Vision's response and/or cross-motion.  Filing 3 would be the response or reply as applicable, and I would put that at 21 days after filing 2, so that becomes April 27th.  Filing 4, May 11th.

         And then what I'm prepared to do is to set a ready trial date of October 13th and a date for the joint pretrial order of October 5.  And I'll try to get the motions sorted out

1  in advance of that.

2  The parties have made some issue of page limits for
3  the briefs. If you review my individual practices, what I
4  provided is that the parties can agree on page limits between
5  themselves, and I'm not going to limit the pages that will be
6  the page limits for the filing. If you're not able to agree,
7  there's a default under the local rules on what applies.

8  I would also suggest that when you're making the
9  motions for summary judgment, it does seem like there are
10  particular parts of claims that I might be able to resolve on
11  summary judgment. I may not be able to, but it does look like
12  this is the kind of case that I may not be able to resolve them
13  entirely through summary judgment, and as I read Rule 56 -- but
14  you'll educate me if I'm misreading it -- it permits me to
15  grant summary judgment or review whether summary judgment is
16  appropriate as to parts of claims and not with respect to
17  claims, so if you clearly frame what relief you're seeking,
18  that may facilitate the Court's ability to review papers.

19  Is there anything else that I should address today
20  from the plaintiff's standpoint?

21  MS. CLINE: Not from our side.

22  MR. GREIM: Actually, your Honor, we did note your
23  point on page limits. We've discussed those. The defendants
24  believe that we need more pages, not for the reply but for what
25  we see we're going to have to do in Filing 1 and Filing 2. I

1  understand there's a rule that if we don't agree, then that's
2  the end of it, but in this case it's going to be hard for us to
3  put it together -- especially because I think it looks like the
4  statement of facts goes into the main brief as well, it's not
5  just in a separate filing but it's included in the main brief,
6  and that's where I think we're going to have trouble.  That's
7  what I think will push us over the limit is having those
8  numbered paragraphs count against us.  Is there any way that we
9  could get 50 pages for the first two?
10             MS. CLINE:  We're good with 25, your Honor.
11             THE COURT:  You want 50 pages for the first two?
12             You guys can work it out.  See if you can try to get
13  to a compromise.  I'm not going to rule on that right now.  Try
14  to work it out between yourselves.  If not, you know what the
15  default rule is.
16             MR. GREIM:  Your Honor, if we're not able to work it
17  out, are we done, or should we --
18             THE COURT:  You can make an application, and I'll
19  review that, and the other side will have 24 hours to respond
20  to that.
21             Anything else?
22             MS. CLINE:  No.
23             MR. GREIM:  No.
24             THE COURT:  All right.  Thank you.
25             ALL COUNSEL:  Thank you.
                              o0o