**UNITED STATES DISTRICT COURT FOR**
**THE SOUTHERN DISTRICT OF NEW YORK**

---

|  |  |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) ) |
| STRATEGIC VISION US, LLC | ) ) |
| Defendant. | ) ) ) |

Case No. 18-CV-2185 (LJL)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT  (DKT. NO. 260) AND**
**IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**
<u>**ON COUNT III OF PLAINTIFF'S COMPLAINT (DKT. NO. 271)**</u>

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................................................... 1

II.    ARGUMENT ..................................................................................................... 1

    A.    Summary Judgment Should be Granted Because the Research Agreement is Void as a Matter of Law ...................................................................... 1

        1.    Virginia's Private Security Services Statute Governs The Research Agreement and Strategic's Actions Pursuant Thereto ............................... 2

        2.    The Research Agreement is Consequently Void ....................................... 6

        3.    The Doctrine of *In Pari Delicto* Is Inapplicable ..................................... 10

    B.    Summary Judgment Should Be Granted On Strategic's Fraudulent Inducement Claim (Count II) ................................................................... 11

        1.    Strategic Cannot Prove Reasonable Reliance ........................................... 11

        2.    Strategic Cannot Prove Scienter/Intent to Defraud................................... 13

        3.    Strategic Cannot Prove a Provably False Statement of Material Fact............................................................................................................ 14

III.    CONCLUSION................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**CASES**

*AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*,
726 F. Supp. 2d 307 (S.D.N.Y. 2010)...........................................................................6

*Allison v. Round Table INV. Mgmet. Co.., LP*,
2010 U.S. Dist. LEXIS 113937 (S.D.N.Y. Oct. 21, 2010) .....................................13

*Alvarez v. Dekar Homes, Inc.*,
22 Va. Cir. 88 (Va. Cir. Ct. 1990)..............................................................................13

*Bacigalupo v. Fleming*,
199 Va. 827, 102 S.E.2d 321 (Va. 1958)................................................................7, 8

*Berkson v. Gogo LLC*,
97 F.Supp.3d 359 (E.D.N.Y. 2015) ...........................................................................14

*Clark v. Moore*,
86 S.E.2d 37 (Va. 1955)............................................................................................7, 8

*Cohen v. Mayflower Corp.*,
196 Va. 1153, 86 S.E.2d 860 (Va. 1955)................................................................7, 8

*Colbert v. Ashland Const. Co.*,
176 Va. 500, 11 S.E.2d 612 (Va. 1940)..................................................................7, 8

*Costello v. Larsen*,
182 Va. 567, 29 S.E.2d 856 (Va. 1944)....................................................................12

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
2016 U.S. Dist. LEXIS 180431 (S.D.N.Y. Dec. 30, 2016) ......................................6

*F. S. Bowen Elec. Co. v. Foley*,
194 Va. 92, 72 S.E.2d 388 (Va. 1952)....................................................................7, 8

*Giannacopoulos v. Credit Suisse*,
37 F. Supp. 2d 626 (S.D.N.Y. 1999).........................................................................12

*Harrison & Bates, Inc. v. LSR Corp.*,
238 Va. 741, 385 S.E.2d 624 (Va. 1989)................................................................7, 8

*HIS Acquis. XV, Inc. v. Kings Harbor Care Ctr.*,
1999 WL 223152 (S.D.N.Y. Apr. 16, 1999)..............................................................6

*Joe O'Brien Investigations v. Zorn*,
263 A.D.2d 812, 694 N.Y.S.2d 216 (N.Y. App. Div. 3rd Dept. 1999) ....................6

*Lasting Prods. Co. v. Genovese*,
 197 Va. 1, 87 S.E.2d 811 (Va. 1955)...............................................................7

*Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading
 Co.*, 179 F. Supp. 2d 118 (S.D.N.Y. 2000)....................................................6

*Massie v. Dudley*,
 3 S.E.2d 176 (Va. 1939).............................................................................7, 8

*Murray v. Hadid*,
 238 Va. 722, 385 S.E.2d 898 (Va. 1989)....................................................7, 8

*Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance
 Co.*, 239 F. Supp. 3d 761 (S.D.N.Y. 2017).....................................................6

*Negrete v. Citibank, N.A.*,
 187 F. Supp. 3d 454 (S.D.N.Y. 2016)...........................................................12

*Niemeyer v. Wright*,
 75 Va. 239 (1881)........................................................................................10

*Reading & Language Learning Ctr. v. Sturgill*,
 94 Va. Cir. 94 (Va. Cir. Ct. 2016)..................................................................7

*Rohanna v. Vazzana*,
 196 Va. 549, 84 S.E.2d 440 (Va. 1954)......................................................7, 8

*Taylor Thiemann & Aitken v. Hayes*,
 244 Va. 198, 418 S.E.2d 897 (1992)............................................................10

*United States v. Virginia*,
 972 F. Supp. 1008 (E.D. Va. 1997).................................................................9

*Urban Protective Servs. v. Great Latin Rests., L.L.C.*,
 2007 Va. Cir. LEXIS 33 (Va. Cir. Ct. Mar. 5, 2007)...................................7, 9

*Va. Nat. Gas Co. v. Hamilton*,
 249 Va. 449, 457 S.E.2d 17 (1995)...............................................................12

*Watters & Martin, Inc. v. Homes Corp.*,
 136 Va. 114, 116 S.E. 366 (1923)..............................................................9, 10

*Weber City Sanitation Com. v. Craft*,
 196 Va. 1140, 87 S.E.2d 153 (Va. 1955).........................................................7

STATUTES

*Va. Code Ann. § 9.1-138 et seq.*..................................................................... *passim*

I.      **INTRODUCTION**[1]

Strategic's Memorandum of Law in Opposition to Eastern's Motion for Summary Judgment and in Support of Its Cross-Motion does nothing to advance its quest to convert this straightforward contract case into a complex fraud case. The facts in Eastern's Rule 56.1 statement —the majority of which Strategic does not dispute—mandate summary judgment in Eastern's favor. Those facts show that the Research Agreement is illegal under Va. Code Ann. § 9.1-138 *et seq.* ("Private Security Services Statute") and therefore void as a matter of law, and that Strategic cannot demonstrate the elements of reasonable reliance, scienter, and falsity necessary to establish its fraud claim. The Court should accordingly grant summary judgment in Eastern's favor on Strategic's counterclaims and on Eastern's declaratory judgment and unjust enrichment claims.

II.     **ARGUMENT**

A.      **Summary Judgment Should be Granted Because the Research Agreement is Void as a Matter of Law**

As explained in Eastern's Memorandum of Law in Support of Its Motion for Summary Judgment (Dkt. No. 261 at 14-20), the Research Agreement is void under Virginia's Private Security Services Statute. Although Strategic admits that it, Ms. Wallop, and Mr. Waller never secured their private investigator licenses in Virginia or elsewhere, it nonetheless contends that the Research Agreement is not void. Strategic asserts two arguments in support of that assertion: that Virginia's Private Security Services Statute does not apply to the Research Agreement; and that even if it did apply here, the fact that they behaved illegally does not render the contract void. Then, Strategic contends that even if the contract is in fact void, Eastern cannot recover the deposit under the doctrine of *in pari delicto*. None of these arguments has any merit.

---

[1] Capitalized terms used herein are as defined in Eastern's Memorandum of Law in support of its Motion for Summary Judgment. Dkt. No. 261. Unless otherwise stated, exhibits cited herein refer to the exhibits attached to Eastern's Memorandum of Law in support of its Motion for Summary Judgment. *Id.*

1.     **Virginia's Private Security Services Statute Governs The Research Agreement and Strategic's Actions Pursuant Thereto**

First, Strategic's position that Virginia's Private Security Services Statute does not apply to the Research Agreement outright ignores the stated purpose of the contract, Strategic's own characterizations of the contract, and the services it attempted to provide under the contract.

As set forth in Eastern's Memorandum of Law (Dkt. No. 261 at 14-15), Virginia's "Private Security Services Statute" strictly forbids persons from undertaking to provide or actually providing private investigators to others pursuant to a contract.  Va. Code Ann. § 9.1-139.  Private investigators, in turn, are defined to include individuals who seek to "obtain information on (i) crimes or civil wrongs; (ii) the location, disposition, or recovery of stolen property; (iii) the cause of accidents, fires, damages, or injuries to persons or to property; or (iv) evidence to be used before any court, board, officer, or investigative committee."  Va. Code Ann. § 9.1-138.

Contrary to its suggestion otherwise, it is undeniable that Strategic's conduct in connection with the Research Agreement falls within the confines of Va. Code Ann. § 9.1-139. The very terms of the Research Agreement confirm that.  Indeed, Virginia's Private Security Services Statute defines private investigation services to include efforts to "obtain information on . . . crimes or civil wrongs," and the explicitly stated purpose of the Research Agreement mirrors that language, providing that the research is begin commissioned to "detect[], stop[], and prevent[] crime or other harm to innocent people."  Ex. M, Research Agreement at 1.

If that were not enough, the investigatory research called for in the contract is by its very nature, work that is conducted by private investigators.  The Research Agreement obligated Strategic to provide Eastern with "Current Tracking research," including "detailed reports on movements of specific subjects by land, air, and sea."  *Id.*  One cannot imagine a more apt example of private investigator work governed by Virginia's Private Security Services Statute than the

tracking of the movement of individuals.  The contract also required Strategic to dig up information on the subjects' "criminal" history, court records, and information regarding their "extramarital affairs."  *Id.*  Again, these contemplated services are textbook examples of private investigator work covered by the statute.

Moreover, in addition to the plain language of the parties' contract, Strategic has repeatedly admitted throughout this litigation, including in formally filed pleadings and during depositions, that it agreed to provide and in fact attempted to provide "private investigation" services to Eastern that plainly fall within the ambit of Virginia's Private Security Services Statute. In paragraph 56 of its Answer, Strategic admits that it contracted in Virginia to provide "a private investigation" to Eastern under the Research Agreement.  Ex. A, Answer at 11 ¶ 56.  Elsewhere in its Answer, Strategic admitted that it was  "***investigative research*** to be conducted by Strategic Vision pursuant to the Contract."  *Id.* at 8 ¶¶ 35-41.  And in paragraph 28 of its Counterclaim, Strategic admitted that it retained private investigators to perform the research called for under the Research Agreement.  *Id.* at 29 ¶ 28 ("Immediately upon entering into the [Research Agreement], Strategic Vision [began] ***recruiting, vetting, engaging*** and marshaling the initial efforts of various ***investigators*** and analysts in the United States, Europe and the Middle East.") (emphasis added).

Likewise, both Ms. Wallop and Mr. Waller repeatedly referred to the services that they were to provide and attempted to provide to Eastern under the Research Agreement as an "***investigation***" and that the contractors that Strategic claims to have hired to conduct the research were in fact private "***investigators***."  *See e.g.*, Ex. F, Wallop I Tr. at 17:9-23:6, 50:22:14-17, 87:7-22, 127:14-128:23, 138:1-16, 151:22-152:13, 153:12-17, 169:5-170:3, 177:5-180:20 (Wallop describing her personal role in the "investigation"), 183:9-18, 257:2-10; Ex. G, Wallop II Tr. at 29:20-30:16, 89:17-93-11, 96:5-101:15; Ex. H, Waller I Tr. at 33:8-34:3, 182:3-22 (calling the

subcontractors Strategic hired "investigators."), 195:15-17; Ex. I, Waller II Tr. at 57:12-16 ("Q. .

. . [S]o Strategic Vision did, in fact, set out to investigate a number of individuals on a list, right?

A.  Yes.") (emphasis added); *see also* Ex. G, Wallop II Tr. at 97:5-98:22 (testifying regarding

investigative activities she personally under took on Turks and Caicos).

        In short, the stated purpose of the Research Agreement, the investigatory research

called for thereunder, and Strategic's own admissions all demonstrate, in clear and certain terms,

that Virginia's Private Security Services Statute governs the Research Agreement and the

investigation that Strategic endeavored to conduct thereunder.  Because Strategic contracted to

provide and in fact attempted to provide private investigation services without a license, the

Research Agreement violates that statute.

        Recognizing the difficulties imposed by the Research Agreement's plain terms and

its own characterizations of the contract and the services it attempted to provide pursuant thereto,

Strategic resorts to arguing that the manner in which *Eastern* was planning to use the investigative

research obtained by Strategic somehow makes Va. Code Ann. § 9.1-139 *inapplicable to Strategic*.

Dkt. 272 at 19.  More specifically, Strategic argues that because *Eastern* was not intending to

"prosecute some specific criminal charge" with the information obtained under the Research

Agreement, then *Strategic's* conduct thereunder is not governed by Va. Code Ann. § 9.1-139.  *Id.*

Setting aside the fact that, in doing so, Strategic conveniently ignores that Eastern's witnesses

testified that Eastern would in fact seek to prosecute the crimes and civil wrongs uncovered by the

investigation,[2] the argument is a complete red-herring.

---

[2] *See* Ex AA to Dkt. No. 273, Guo I Tr. at 206:12-208:19 (testifying that he intended to prosecute the crimes and civil wrongs unearthed by the investigation); Ex II to Dkt. No. 273, Wang II Tr. at 203:2-22 (testifying that the investigation was to uncover "crimes" by "corrupted Chinese official[s]" to bring them to "justice" and cause them to be "sent to jail"); *accord* Ex CC to Dkt. No. 273, Wang I Tr. at 34:4-20 (testifying that Eastern commissioned the research to whistle blow and disclose [the subject's] crime").

Virginia's Private Security Services Statute strictly prohibits contracting to provide or actually providing private investigation services without a license, irrespective of how the recipient of those services would ultimately use the information uncovered.  *See* Va. Code Ann. § 9.1-138, 139.  The relevant focus of the statute is on the conduct of the party providing the investigation services, not on the conduct of the party receiving those services.  *See* Va. Code Ann. § 9.1-138, 139.  Accordingly, Strategic's argument misses the mark.

Finally, Strategic argues that it should not grant Eastern's motion because, if it does, it will create a dangerous precedent for "reporters, authors, think tanks, historians, genealogists," who, according to Strategic, will likely have to become licensed as a private investigator as a result of the Court's ruling.  (Dkt. 272 at 19).  Strategic's concerns are unfounded, as the statute clearly does not apply to such professions.  As noted above, Virginia's Private Security Services Statute prohibits individuals and business from engaging in "the business of providing, or undertak[ing] to provide . . . private investigators . . . to another person under contract, express or implied."  *See* Va. Code Ann. § 9.1-138, 139.  Reporters do not enter into contracts with third parties to provide private investigators to those third parties in exchange for money; nor do authors, think tanks, historians, or genealogists.  Thus, they are plainly not subject to the statute.

As explained above, however, and unlike reporters and authors for instance, Strategic and its conduct fall directly within the confines of the statute.  It is a self-proclaimed investigatory firm that entered into a contract—the Research Agreement— with a third party— Eastern—to provide it with private investigators—Ms. Wallop, Mr. Waller, and outside contractors—to obtain, *inter alia*, evidence of crimes or civil wrongs of the CCP officials in the Subject List.  The Research Agreement and Strategic's conduct thereunder are therefore directly governed by Virginia's Private Security Services Statute.  And because Strategic was admittedly

Case 1:18-cv-02185-LJL   Document 278   Filed 04/27/20   Page 10 of 20

not licensed to provide the services it undertook to provide and in fact attempted to provide, the Research Agreement and Strategic's actions pursuant thereto are unlawful under Virginia law.

### 2.     The Research Agreement is Consequently Void

Because it is unlawful, the Research Agreement is void as a matter of Virginia contract law.  Strategic's arguments to the contrary are without merit.  As an initial matter, much of Strategic's argument on this front relies on two New York cases—*HIS Acquis. XV, Inc. v. Kings Harbor Care Ctr.*, 1999 WL 223152 (S.D.N.Y. Apr. 16, 1999) and *Joe O'Brien Investigations v. Zorn*, 263 A.D.2d 812, 694 N.Y.S.2d 216 (N.Y. App. Div. 3rd Dept. 1999).  Because—as Strategic tacitly concedes—Virginia law applies here,[3] those cases are inapplicable.

Unlike New York law, which generally upholds contracts that are *malum prohibitum* (contrary to statute) unless the statute states otherwise,[4] Virginia law provides the opposite, voiding contracts contrary to statute unless the statute explicitly directs otherwise.

Controlling Virginia Supreme Court precedent is clear that "where a licensing statute is a police regulation, having for its object the protection of the public, making it unlawful for a person to engage in a business without a license, and imposing a penalty for its violation, a contract made by an unlicensed person is void and unenforceable."[5]  Indeed, "a contract made in

---

[3] Virginia law applies to determine the validity of the Research Agreement because New York law and Virginia law are in conflict regarding the treatment of contracts that are statutorily illegal and Strategic is based in Virginia (Ex. A, Answer at 1 ¶ 2), the parties' negotiated the agreement in Virginia (*id.* at 3 ¶ 8; Ex. B, Strategic's Admissions, ¶¶ 20-25), Strategic drafted the agreement in Virginia (Ex. F, Wallop I Tr. at 108:5-109:18), the parties signed the agreement in Virginia (Ex. A, Answer at 2-3, ¶¶ 6-7; *id.* at 28 ¶ 23), and Strategic attempted to peform the services called for by the agreement in Virginia (*see* Dkt. No. 261 at 17-18).*See e.g.*, Restatement (Second) of Conflicts § 188; *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, 2016 U.S. Dist. LEXIS 180431, at *10 (S.D.N.Y. Dec. 30, 2016); *AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc.*, 726 F. Supp. 2d 307, 317 (S.D.N.Y. 2010); *Lehman Bros. Commer. Corp. v. Minmetals Int'l Non-Ferrous Metals Trading Co.*, 179 F. Supp. 2d 118, 146 (S.D.N.Y. 2000).

[4] *See Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 776 (S.D.N.Y. 2017).

[5] *Massie v. Dudley*, 3 S.E.2d 176, 178 (Va. 1939); *see also Harrison & Bates, Inc. v. LSR Corp.*, 238 Va. 741, 744-46, 385 S.E.2d 624, 626-27 (Va. 1989); *Murray v. Hadid*, 238 Va. 722, 729, 385 S.E.2d 898, 903 (Va. 1989); *Bacigalupo v. Fleming*, 199 Va. 827, 832-33, 102 S.E.2d 321, 324-25 (Va. 1958); *Clark v. Moore*, 86 S.E.2d 37, 39 (Va. 1955); *Lasting Prods. Co. v. Genovese*, 197 Va. 1, 8, 87 S.E.2d 811, 816 (Va. 1955); *Cohen v. Mayflower Corp.*,

violation of [such] a statute is void, and there can be no recovery thereon, *unless it is apparent from the statute that the legislature did not intend to make the contract void and unenforceable*." *Massie*, 3 S.E.2d at 180.

Under these principles, licensing statutes designed to protect the public welfare—such as Virginia's Private Security Services Statute—are universally held by Virginia courts to be police regulations that warrant the voiding of contracts that are contrary to those statutes, again unless the statute at issue explicitly provides otherwise.  S*ee supra* n. 5; *cf. Weber City Sanitation Com. v. Craft*, 196 Va. 1140, 1147, 87 S.E.2d 153, 157 (Va. 1955) ("[P]olice power of a State embraces regulations designed to promote the public convenience or the general prosperity, as well as regulations designed to promote the public health, the public morals or the public safety.");.

For instance, in *Massie*, *Harrison*, and *Murray*, the Virginia Supreme Court held that a Virginia statute requiring real estate brokers to be licensed and registered "is a police regulation, having for its object the protection of the public," and that because there is "nothing in the language of the statute, or the subject matter of the regulation, which indicates the slightest intention to treat the contract as valid and enforceable between the parties," "any contract made by an unlicensed person [in violation of the statute] is void and unenforceable."  173 Va. at 53, 3 S.E.2d at 181; 238 Va. at 746, 385 S.E.2d at 626 (same); 238 Va. at 729, 385 S.E.2d at 903 (same).

Similarly, in *Clark*, the Virginia Supreme Court reached the same conclusion with respect to a statute requiring professional engineers to be to be licensed and registered, finding that the statute is "obviously . . . a police regulation . . . having for its object the protection of the

---

196 Va. 1153, 1159-63, 86 S.E.2d 860, 863-65 (Va. 1955); *Rohanna v. Vazzana*, 196 Va. 549, 550-54, 84 S.E.2d 440, 440-43 (Va. 1954); *F. S. Bowen Elec. Co. v. Foley*, 194 Va. 92, 96, 72 S.E.2d 388, 391 (Va. 1952); *Colbert v. Ashland Const. Co.*, 176 Va. 500, 506-09, 11 S.E.2d 612, 615-16 (Va. 1940); *Massie v. Dudley*, 3 S.E.2d 176, 178 (Va. 1939); *see also Reading & Language Learning Ctr. v. Sturgill*, 94 Va. Cir. 94, 106 (Va. Cir. Ct. 2016); *Urban Protective Servs. v. Great Latin Rests., L.L.C.*, 2007 Va. Cir. LEXIS 33, at *5-8 (Va. Cir. Ct. Mar. 5, 2007).

public," and that any contracts in contravention with that statute are accordingly void and unenforceable." 196 Va. at 881-82, 86 S.E.2d at 39.

Likewise in *Bacigalupo*, *Cohen*, *Rohana*, *Bowen*, and *Colbert*, the Virginia Supreme Court held that a Virginia statute requiring general and sub-contracts to be licensed and registered in the state is "designed to protect the public from inexperienced, unscrupulous, irresponsible, and incompetent contractors, is a valid exercise of the police power of the State, and a contract made in violation of its provisions is void and there can be no recovery thereon." 199 Va. at 832-33, 102 S.E.2d at 324-25; 196 Va. at 1159-63, 86 S.E.2d at 863-65 (same); 196 Va. at 550-54, 84 S.E.2d at 440-43 (same); 194 Va. at 96, 72 S.E.2d at 391 (same); 176 Va. at 506-09, 11 S.E.2d at 615-16 (same).

Finally, and most notably, as explained in Eastern's opening Memorandum, in *Urban Protective Services. v. Great Latin Restaurants*, the Virginia Circuit Court reached the same exact conclusion as the foregoing authorities with respect to Virginia's Private Security Services Statute, declaring an "express contract between the parties . . . void because the Plaintiff had not secured the requisite private security license before entering into a contract to provide private security services to the Defendant."2007 Va. Cir. LEXIS 33, at *5-8 (Va. Cir. Ct. Mar. 5, 2007).

The court in *Urban* reached that conclusion for good reason. Like the Virginia statutes applying to real estate brokers, engineers, and general and sub-contractors, the purpose of Virginia's Private Security Services Statute is "[t]o secure the public safety and welfare against incompetent or unqualified persons engaging in the activities regulated by this section." Va. Code Ann. § 9.1-141; *see also United States v. Virginia*, 972 F. Supp. 1008, 1010 (E.D. Va. 1997) (recognizing that the Private Security Services Statute imposes "training, registration, and licensing requirements for the private security services industry in order to 'secure the public safety

and welfare against incompetent, unqualified, unscrupulous, or unfit persons engaging in the activities of private security services businesses.'").

Because it is a police regulation designed to protect the public and there is absolutely no language in the statute that suggests that contracts entered into in violation of the statute are nevertheless enforceable, any contract entered into contrary to the statute is void and unenforceable as a matter of law. *See supra* n. 5. The Research Agreement is no exception.

The authorities cited by Strategic (*see* Dkt. No. 272 at 21-22) do not alter this conclusion. The *Culwell v. Huff* case that Strategic cites actually supports *Eastern's* position, stating that a party may not recover under a contract that is *malum prohibitum* (contrary to statute). 50 Va. Cir. 180, 185 (Va. Cir. Ct. 1999). The other cases that Strategic relies upon construe statutes that, unlike Virginia's Private Security Services Statute, explicitly provide that the conduct at issue is not prohibited or that the contracts entered into in contravention with those statutes are not void. *See Watters & Martin, Inc. v. Homes Corp.,* 136 Va. 114, 127, 116 S.E. 366, 370 (1923) (holding that a contract entered into in violation of the Virginia blue sky law is not void because that statute explicitly provided that "[t]his act shall not be construed to prevent the sale of purely speculative securities"); *Niemeyer v. Wright*, 75 Va. 239, 246 (1881) (holding that a contract entered into in violation of statute imposing conditions on the sale of manure is not void because "there is not to be found anywhere in either of the acts any express prohibition of sale" of manure where such conditions were not met); *Taylor Thiemann & Aitken v. Hayes*, 244 Va. 198, 200-01, 418 S.E.2d 897, 899 (1992) (Here, however, [plaintiff's] contract with [defendant] was not made in violation of law; "[B]ecause the subject of the contract, the provision of lobbying services for [defendant], was not intended to be prohibited by the statute," the contract is not void).

As explained above, unlike the statutes at issue in *Watters*, *Niemeyer*, and *Taylor*, Virginia's Private Security Services Statute explicitly prohibits the provision of private investigator services without a license and contains no language stating that  contracts entered into in violation of the statute are nevertheless enforceable.  Va. Ann. Code § 9.1-139 ("No person shall engage in the private security services business or solicit private security business in the Commonwealth without having obtained a license from the Department."); *see also* Va. Ann. Code § 9.1-147 ("It shall be unlawful for any person to: [p]ractice any trade or profession licensed, certified or registered under this article without obtaining the necessary license, certification or registration required by statute or regulation.").  The Research Agreement is therefore void.

### 3.    The Doctrine of *In Pari Delicto* Is Inapplicable

Finally, Strategic's argues that the doctrine of *in pari delicto* prevents Eastern from recovering the deposit even if the contract is void.  Specifically, it argues that Eastern, like Strategic, acted as an unlicensed private investigation firm because it was intending to share the results of Strategic's investigation with others.  (Dkt. No. 272 at 23-24).  The argument barely warrants a response.

To reiterate, Virginia's Private Security Services Statute prohibits individuals and business from engaging in "the business of providing, or undertak[ing] to provide . . . private investigators . . . to another person under contract, express or implied."  *See* Va. Code Ann. § 9.1-138, 139.  Eastern has plainly not violated this statute.  Unlike Strategic, Eastern did not hold itself out as a sophisticated investigation firm with a wide array of capabilities and experience conducting private investigations.[6]   Unlike Strategic, Eastern did not enter into any contract

---

[6] *See e.g.*, Ex. A, Answer ¶¶ 47-51; Ex. F, Wallop I Tr. at 17:15-18:12, 26:21-29:13.

agreeing to provide private investigation services to another person or entity.[7]  And unlike Strategic, neither Eastern nor its agents conducted any investigatory activities.[8]

The best Strategic has come up with is that Eastern intended to share the results of *Strategic's investigation* with ACA.  (Dkt. No. 272 at 23-24).  But Virginia's Private Security Services Statute does not prohibit the recipient of investigation services from sharing the results of that investigation with others.  Strategic is the only party to this action that has violated that statute.  Thus, its *in pari delicto* defense must be rejected.[9]

**B.    Summary Judgment Should Be Granted On Strategic's Fraudulent Inducement Claim (Count II)**

If the Court holds the Research Agreement void, then judgment should be entered not only on Strategic's breach of contract counterclaim (Count I), but also its fraudulent inducement counterclaim (Count II) because Strategic could not have been induced to enter in a contract that is void as a matter of law.  Strategic's fraud claim fails for other reasons, however, including the failure to demonstrate reasonable reliance, scienter, and the falsity of a material statement of fact.  Strategic's arguments in opposition are of no moment.

**1.    Strategic Cannot Prove Reasonable Reliance**

Strategic *concedes* (Dkt. No. 273 at 78-83, ¶¶ 70-78) that it did not conduct any independent diligence into the background of Eastern or Mr. Guo before entering into the Research Agreement, that it did not seek to memorialize any of the alleged misstatements as representations, warranties, or covenants in the Research Agreement, and that the so-called evidence that it seeks

---

[7] *See e.g.*, Ex. M, Research Agreement at 1-5.

[8] *See supra* at 4.

[9] Strategic also argues that Eastern is not entitled to recover the deposit because "it did not confer any benefit on Strategic."  That argument fails for the reasons set forth in Eastern's Memorandum of Law in opposition to Strategic's Motion for Summary Judgment (Dkt. No. 269).

to marshal in purported support of its fraud claim is publicly available information that Strategic could have easily accessed before entering into the Research Agreement.

       Despite these concessions, Strategic maintains that its purported reliance on Mr. Guo's alleged misstatements regarding his dissident status is reasonable because two third parties that barely knew Mr. Guo—Mr. Gertz and L. Han—purportedly "vouch[ed]" for him." Dkt. No. 272 at 25; Dkt. No. 273 at 78-83, ¶¶ 70-78.  Blindly relying upon the purported recommendation of third parties, however, is plainly insufficient to demonstrate reasonable reliance.  Indeed, ***reliance on a recommendation . . . is insufficiently justifiable to merit legal protection***.  *See Giannacopoulos v. Credit Suisse*, 37 F. Supp. 2d 626, 632 (S.D.N.Y. 1999).  Rather, "a party claiming fraudulent inducement . . . must show that he or she made an ***independent inquiry*** into the available information." *Id.* (granting summary judgment on fraud claim on reasonable reliance grounds) (emphasis added); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 465 (S.D.N.Y. 2016) (dismissing fraud claim on reliance grounds because plaintiff did not make an "independent inquiry" into alleged fraud); *Va. Nat. Gas Co. v. Hamilton*, 249 Va. 449, 456, 457 S.E.2d 17, 22 (1995) (same); *Costello v. Larsen*, 182 Va. 567, 571-72, 29 S.E.2d 856, 858 (Va. 1944) (same).

       That legal conclusion makes real-life sense because if Strategic actually cared about whether Mr. Guo were truly a dissident or not, it would have done much more than blindly take the recommendation of Mr. Gertz—a reporter who barely knew Mr. Guo—and L. Han—a recent acquaintance of Ms. Wallop's.  It would have, at the very least, Googled Mr. Guo and discovered the very information that Strategic now attempts to reply upon to show that Mr. Guo purportedly is not who he said he was.[10]  The fact of the matter is that Strategic was not concerned about, and

---

[10] Dkt. No. 273 at 81 ¶ 76 (admitting that much of the purported evidence that Strategic is relying upon in an effort to show that Mr. Guo is not a dissident was publicly-available, including on the internet, prior to the execution of the Research Agreement); *see also* Ex. I, Waller II Tr. at 11:11-23, 31:20-36:25, 52:3-20 (same).

therefore did not independently investigate, the political affiliations of Mr. Guo.  That being the case, Strategic cannot prove that it reasonably relied upon Mr. Guo's alleged statements regarding his dissident status.  Its fraud claim, premised upon those alleged statements, therefore fails.

### 2.      Strategic Cannot Prove Scienter/Intent to Defraud

In addition, Strategic has not presented any facts to demonstrating one of the other essential elements of fraud—an intent to defraud.  The parties agree as to the basic standard: "[Strategic] may either allege 'a motive for committing fraud and a clear opportunity for doing so,' or 'when the motive is not apparent,' 'identify[ ] circumstances indicating conscious behavior by [Eastern].'"  *Allison v. Round Table INV. Mgmet. Co.., LP,* 2010 U.S. Dist. LEXIS 113937, at *9 (S.D.N.Y. Oct. 21, 2010); *Alvarez v. Dekar Homes, Inc.,* 22 Va. Cir. 88, 89 (Va. Cir. Ct. 1990).  As its opposition makes apparent, Strategic has failed to meet this standard.

In an attempt to do so, Strategic asserts that Mr. Guo "needed" to investigate the 15 people on the Subject List in order to sustain his image as a Chinese dissident, and that neither Mr. Guo nor Eastern have presented any evidence that Mr. Guo found an alternative firm to use in the event that his relationship with Strategic soured.  Dkt. No. 272 at 26-27.  Without further elaboration, Strategic jumps to the conclusion that these facts demonstrate Mr. Guo's motive for his alleged misrepresentation.  In their words, "Guo's motive?  He knew he needed Strategic, and he needed it to believe him."  Dkt. No. 272 at 27.  But, Strategic has not presented *any* facts suggesting that Mr. Guo was unable to find another investigative firm in the event Strategic did not wish to move forward with the project.  In fact, to the contrary, Strategic claims that the exact opposite is true—that Mr. Guo retained other investigators to investigate the same subjects.[11]  Because Strategic has failed to present any evidence of scienter, its fraud claim necessarily fails.

---

[11] *See e.g.,* Ex. H, Waller I Tr. at 188:12-189:5, 220:19- 222:12.

### 3.    Strategic Cannot Prove a Provably False Statement of Material Fact

Finally, Strategic's claim is not premised upon a statement that is provably false or material.  As an initial matter, the statements in question are immaterial.  Indeed, Strategic's opposition is devoid of any meaningful explanation as to why Mr. Guo's political leanings were relevant at all.  And even if it were able to articulate such an explanation (it did not), any such explanation would have necessarily lost sight of the nature of this agreement—a service contract laying out the services to be provided and the amount being paid for those services—the terms of which have nothing to do with Mr. Guo's politics.  *See Berkson v. Gogo LLC*, 97 F.Supp.3d 359, 392 (E.D.N.Y. 2015).  The alleged misstatements are immaterial.

Even if Mr. Guo's dissident status were material (it is not), Strategic has not and cannot demonstrate that Mr. Guo is not a dissident.  In an effort to do so, Strategic picks and chooses testimony regarding a handful of alleged relationships that Mr. Guo has purportedly had with individuals at nonspecific points in time who are or were supposedly associated with the CCP, and then concludes that those relationships suggest that Mr. Guo is not in fact a dissident. They do not.  Strategic has not connected the dots between those alleged relationships and the conclusion that Mr. Guo is or was a member or ally of the CCP.  All Strategic presents is vague conjecture, speculation, and inadmissible evidence, relying almost exclusively on a reporter who had a falling out with Mr. Guo and who offers opinions without foundation about what in her view are the habits and hallmarks of dissident, which she believes Mr. Guo lacks.  But even the reporter, Sasha Gong, who *met with Ms. Wallop and with Strategic's counsel prior to her deposition*, has the view that because the CCP "stole the entire country" of China, "someone who lived in China, one way or another you have to work with the Chinese Communist Party"; she also concedes that Mr. Guo

rebelled against Communist Party "for a time," that a warrant for Mr. Guo's arrest was issued by the Chinese government, and that Mr. Guo's family had suffered at the hands of the CCP. [12]

In short, Strategic has not presented a shred of admissible evidence suggesting that Mr. Guo is not a Chinese dissident. Nor can it. Mr. Guo is a Chinese dissident devoted to stopping corruption within the CCP. The very witnesses whose recommendations Strategic claims to have relied upon in choosing to enter into the Research Agreement—Mr. Gertz and L. Han—have both so testified.[13] Because none of the inadmissible evidence set forth in Strategic's opposition remotely suggests otherwise, summary judgment should be granted on Strategic's fraud claim.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Eastern's Motion for Summary Judgment, enter judgment in Eastern's favor on Counts III and IV of Eastern's Second Amended Complaint and on Counts I and II of Strategic's Counterclaims, order Strategic to return the $1 million deposit paid to it pursuant to the Research Agreement, plus pre- and post-judgment interest, and grant Eastern such other relief that the Court deems appropriate.

Dated:  April 27, 2020
OF COUNSEL:                                              Respectfully submitted,

Joanna J. Cline (*Pro Hac Vice*)                         /s/ Francis J. Lawall
Christopher B. Chuff (*Pro Hac Vice*)                    Francis J. Lawall (NY Bar ID No. FL1234)
PEPPER HAMILTON LLP                                      PEPPER HAMILTON LLP
1313 North Market Streets, Suite 5100                    3000 Two Logan Square
Wilmington, DE 19801                                     Eighteenth and Arch Streets
302.777.6500                                             Philadelphia, PA 19103
302.421.8390 (facsimile)                                 215.981.4000
                                                         215.981.4750 (facsimile)

---

[12] *See* Ex. PP to Dkt. No. 273, Sasha Gong Tr. at 177:17-180:14, 183:19-185:22.

[13] *See e.g.*, Ex. J, Gertz Tr. at 62-77; Ex. K, L. Han Tr. at 31:6-36:6.

# CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April, 2020, a true and correct copy of the foregoing *Reply Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment and in opposition to Defendants Motion for Summary Judgment on Count III of Plaintiff's Complaint* was filed electronically.  Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Dated:  April 27, 2020
OF COUNSEL:                                        Respectfully submitted,

Joanna J. Cline (Admitted *Pro Hac Vice*)          */s/ Francis J. Lawall*
Christopher B. Chuff (Admitted *Pro Hac*           Francis J. Lawall (NY Bar ID No. FL1234)
*Vice*)                                            PEPPER HAMILTON LLP
PEPPER HAMILTON LLP                                3000 Two Logan Square
1313 North Market Streets, Suite 5100             Eighteenth and Arch Streets
Wilmington, DE  19801                              Philadelphia, PA  19103
302.777.6500                                       215.981.4000
302.421.8390 (facsimile)                          215.981.4750 (facsimile)