**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| EASTERN PROFIT CORPORATION LIMITED, | ) | |
| | ) | |
| Plaintiff/Counterclaim Defendant, | ) | |
| | ) | Case No. 18-cv-2185 |
| v. | ) | |
| | ) | |
| STRATEGIC VISION US, LLC, | ) | |
| | ) | |
| Defendant/Counterclaim Plaintiff. | ) | |
| _____ | ) | |

**EASTERN PROFIT CORPORATION LIMITED'S RESPONSE TO**
**STRATEGIC VISION US, LLC'S L.R. 56.1(b) STATEMENT OF FACTS**

Pursuant to Local Rule 56.1(b), Plaintiff Eastern Profit Corporation Limited ("Eastern") hereby respectfully submits its response to the purported factual averments set forth in Defendant Strategic Vision US, LLC's ("Strategic") Local Rule 56.1 Statement submitted pursuant to Local Rule 56.1(a). *See* Dkt. No. 273. Eastern's responds to Strategic's Rule 56.1 Statement without waiver of its objection that Strategic's statement violates Local Rule 56.1 because it is not short and concise, contains facts that are neither relevant nor material to the parties' Motions, is replete with argument, mischaracterization, legal conclusion, opinion, and citations and statements that do not support the propositions for which they are asserted. Eastern respectfully requests that the Court disregard Strategic's statement to the extent it is inconsistent with Local Rule 56.1 *Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, 138 F. Supp. 3d 352, 393-97 (S.D.N.Y. 2015).

1.      Guo claimed he intended to use Strategic Vision's research for his own publicity program of attacking senior CCP leadership, thereby pressuring the CCP, leading to its downfall, and promoting the "rule of law" and "democracy" in China. Feb. 8, 2019 J. Michael "Waller 1" Tr., Ex. Z, 24:16-25:13 ("He wanted to do battle with the Chinese Communist Party

leadership."); 34:5-11 ("Guo had a three-year plan. He wanted a three-year contract to fulfill that

plan.").  Guo intended to make political use of Strategic Vision's work:

> Q. What did you intend to do with the
> research that Strategic Vision was going to
> provide?
> MR. HARMON: Object to the form of the
> question.
> MR. GRENDI: Object to form.
> A. The simple reason is, we want to
> eliminate the Chinese Communist Party. We try to
> overthrow the Chinese Communist Party, to bring
> rule of law to China, to let the West know the
> scenes committed by the Chinese Communist Party.

Aug. 2, 2019 "Guo [Wengui] 1" Tr., Ex. AA, 39:9-19 (underling added).

> **RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research

is immaterial to any factual or legal issue involved in this case.  To the extent an answer is

required, denied that Mr. Guo intended to make "political use" of the investigatory research

conducted by Strategic Vision or use that research for "his own publicity campaign."  Strategic

has cited no evidence in support of that contention in violation of Local Rule 56.1.  Admitted

that Eastern intended to use the research to obtain information regarding civil and criminal

wrongs by members of the CCP.

> 2.      Guo's advisers suggested he publicize new information about senior CCP officials

in order to maintain his publicity campaign. Lianchao Han testified that the idea for research into

Chinese political officials was his own. Aug. 28, 2019 Lianchao Han Tr., Ex. BB, 126:22-128:9;

137:20-139:20. Lianchao was at that time already advising Guo on his asylum application (*Id*.,

46:17-47:9) and, among other things, on how to remain a resident of the United States. *Id*.,

130:14-132:10.  Lianchao also was advising Guo on how to "sustain" his image as a

"whistleblower."  *Id*., 46:17-47:9. Before conceiving of Strategic's research project, Lianchao

was already advising Guo that, in order to sustain his momentum of criticism against the CCP, he needed to gather and publish the type of research against "high-ranking government officials" similar to what Lianchao had already performed through two nonprofit "thinktank" entities. *Id*., 43:1-46:2. Lianchao believed that to "continue to disrupt the Communist regime," Guo needed "sustainable, fact-based, evidence-based disclosure of Chinese corruption," and told Guo that "once we have solid evidence, we can expose them." *Id*., 138:12-139:15.

      **RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied that Mr. Guo's advisers suggested he publicize new information about senior CCP officials "in order to maintain his publicity campaign" and that Lianchao also was advising Guo on how to sustain "his image" as a whistleblower.'"  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.  The cited testimony demonstrates that Eastern, Mr. Guo, and L. Han intended to use the research to obtain information regarding civil and criminal wrongs by members of the Chinese Communist Party, not commence some "publicity campaign" or sustain any "image."  Otherwise, admitted.

      3.     Guo's and Eastern's claims that they would use the research to expose "crimes" against the Chinese people or government were rhetorical references to exposing public corruption rather than a specific plan to use the research in connection with adjudicating specific crimes against particular victims, as Eastern's corporate representative admitted:

> Q.  Do you know why Mr. Guo cares if these individuals are committing crimes against the Chinese government?
> MR. GRENDI:  Objection.  You can answer.
> A.  It's a big question, but I love to answer.  And if you follow all the media, including New York Times, Washington Post, Wall Street Journal, all of this, big media internationally, and his own social media, you will have the answer.
> Q.  How about you provide me with your answer?

A. Because he spoke out on behalf of a Chinese outrage, common people, about the corruption of Chinese certain high official. There's no rule of law and democracy in Mainland of China.   And Chinese outrage people, they deserve, and they urgently, hungrily need that. So he believed what he has been doing until now, since two years ago, is for justice and for rule of law, democracy of China.

Jan. 31, 2019 Yvette "Wang 1" Tr., Ex. CC, 37:8-38:7 (underling added); Lianchao Tr., Ex. BB, 53:13-54:5 (Guo said he wanted to expose the corruption of high-ranking CCP members, but "[h]ow he's going to do it, I don't think he has an idea.").

      **RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied.  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.  Eastern's witnesses consistently testified that Eastern would in fact seek to prosecute the crimes and civil wrongs uncovered by the investigation. Guo I Tr. at 206:12-208:19 (testifying that he intended to prosecute the crimes and civil wrongs unearthed by the investigation); Wang II Tr. at 203:2-22 (testifying that the investigation was to uncover "crimes" by "corrupted Chinese official[s]" to bring them to "justice" and cause them to be "sent to jail"); accord Wang I Tr. at 34:4-20 (testifying that Eastern commissioned the research to whistle blow and disclose [the subject's] crime").

      4.     Guo testified that the Strategic Vision research was to advance his alleged political goals:  Q. Do you want to undermine the current leadership of the People's Republic of China?  A. I'm not just trying to undermine the government; I'm trying to eliminate the current government, to -- I'm trying to eliminate the party, Chinese Communist Party, to bring rule of law and freedom to China.  Guo 1 Tr., Ex. AA, 33:6-12 (emphasis added).  Guo further testified:

    Q. Mr. Guo -- Mr. Guo, how do you intend accomplish the goal that you just described to us? (DIR)
    MR. HARMON: Direct the witness not to answer.

A: I'm not answering this question.
BY MR. GREIM:
Q. Was your work with Strategic Vision intended to accomplish the goal that you just described to us?
A. Yes.
Q. Is that what you told French Wallop and Mike Waller?
A. Yes.
Q. When did you tell them that?
A. Between -- I don't recall the exact dates, but it's probably between November 2017 and February 2018, when we signed the contract.

Guo 1 Tr., Ex. AA, 35:12-36:4 (underlining added).

**RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied.  Strategic has cited no evidence in support of the contention that Eastern or Mr. Guo entered into the Research Agreement to further "political goals" in violation of Local Rule 56.1.  Eastern's witnesses consistently testified that Eastern would in fact seek to prosecute the crimes and civil wrongs uncovered by the investigation. Guo I Tr. at 206:12-208:19 (testifying that he intended to prosecute the crimes and civil wrongs unearthed by the investigation); Wang II Tr. at 203:2-22 (testifying that the investigation was to uncover "crimes" by "corrupted Chinese official[s]" to bring them to "justice" and cause them to be "sent to jail"); accord Wang I Tr. at 34:4-20 (testifying that Eastern commissioned the research to whistle blow and disclose [the subject's] crime").

5.      When pressed for details, Guo claimed that he planned to use information on the first 15 names to expose "hundreds of billions of dollars" in bank accounts and "help save millions of people" or "hundreds of millions of people who got falsely persecuted in China," and/or "rescue tens of millions of people from the prison":

Q. What did you intend to do with the research that Strategic Vision was going to provide?
MR. HARMON: Object to the form of the question.

MR. GRENDI: Object to form.

A. The simple reason is, we want to eliminate the Chinese Communist Party. We try to overthrow the Chinese Communist Party, to bring rule of law to China, to let the West know the scenes committed by the Chinese Communist Party.

Q. My question was more specific. What did you intend to do with the research that Strategic Vision uncovered regarding the 15 names?

MR. GRENDI: Object to the form.

MR. HARMON: Object to the form of the question.

A. So we're going to send these reports to the U.S. courts so that people who got persecuted would know the truth.

Guo 1 Tr., Ex. AA, 39:9-40:6 (underlying added).

Q. What was it about the 15 names that led you to believe that Strategic Vision's research would be useful to you in your goal of eliminating the Chinese Communist Party?

MR. HARMON: Object to the form of the question.

MR. GRENDI: Object to form.

A. So the reason being, some of these names -- first of all, I don't know -- so I don't know all the names, but I do know -- I did know some of the names among the 15 names. Some names included, for example, the goddaughter of Wang Qishan, about -- you know, about her putting aside tens of billions of dollars and hundreds of billions of dollars in bank accounts. If we are able to disclose that information to the public, that would be great. And, also, they boasted that they had information, secret informations, about, you know, a police -- Chinese police department intelligence head, intelligence head, about his corruption information. So back then, we felt like, if – with possession of those information, we are able to release those information to the U.S. government to help save millions of peoples who got falsely persecuted in China, even hundreds of millions of people who got persecuted in China. And because of this lying pitch, we lost a wonderful opportunity to rescue all these millions and tens of millions of people who got thrown into jail for no reason. So, essentially, these two people, these two individuals, took advantage of our sense of urgency to rescue millions, tens of millions of people, from the prison, and they used those people as bait to try to get us into sign the contracts. And those two people -- those two individuals are really despicable and very low.

Guo 1 Tr., Ex. AA, 45:3-46:16 (underlining added).

**RESPONSE:** Objection. How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case. To the extent an answer is required, admitted. Eastern further responds that part of that plan was to prosecute criminal or civil wrongs committed by CCP officials. Guo I Tr. at 206:12-208:19 (testifying that he

intended to prosecute the crimes and civil wrongs unearthed by the investigation); Wang II Tr. at 203:2-22 (testifying that the investigation was to uncover "crimes" by "corrupted Chinese official[s]" to bring them to "justice" and cause them to be "sent to jail"); *accord* Wang I Tr. at 34:4-20 (testifying that Eastern commissioned the research to whistle blow and disclose [the subject's] crime").

6.      Guo had no plan to use any of the information to address a specific crime by a specific person in a specific judicial proceeding as opposed to using the information as a weapon against the CCP as a regime. Wang (as Guo's "project manager") knew Guo had identified the subjects for research but, even a year after the contract with Strategic was negotiated, still only knew Guo's reasoning and plans based on Guo's social media posts. Wang 1 Tr., Ex. CC, 32:12-35:11; Lianchao Tr., Ex. BB, 53:13-54:5 (Guo said he wanted to expose the corruption of high-ranking CCP members, but "[h]ow he's going to do it, I don't think he has an idea."). When pressed to provide details, Guo testified:

> Q. What did you expect Strategic Vision's Guo Wengui weekly report to include?
> A. Including corruption of the Chinese Communist Party, their overseas spy network, their money-laundering evidence, as well as evidence regarding them stealing money from the Chinese people.
> Q. Did you expect Strategic Vision to provide you raw data only or analysis of the data?
> MR. GRENDI: Object to the form.
> A. Raw data, only raw data.
> BY MR. GREIM:
> Q. Why?
> A. Because we could use the raw data as evidence when we bring it to the court, a U.S. court.
> Q. Who is going to bring the evidence to a U.S. court?
> A. Of course, people like us, who share the same goal of overthrowing the Chinese Communist Party in the U.S. We, as a group.
> Q. Well, what -- did you discuss this plan with other people?
> A. I don't remember.
> Q. Well, were you planning on sharing the research with anyone else?
> A. The U.S. government and the people of China.
> Q. How did you plan to share the information with the people of China?

A. To release them to the media; to release the information to the media.
<u>Q. How did you intend to get the information to the U.S. government?</u>
A. Based on the legal procedures of the U.S.
<u>Q. Do you plan to file a lawsuit with the information?</u>
A. To answer your question, the plan is to file a lawsuit.
<u>Q. Who are you going to sue?</u>
A. Whoever commits a crime and we have the evidence.

Guo 1 Tr., Ex. AA, 206:25-208:19 (underlining added).

      **RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied.  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.  Eastern's witnesses consistently testified that Eastern would in fact seek to prosecute the crimes and civil wrongs uncovered by the investigation. Guo I Tr. at 206:12-208:19 (testifying that he intended to prosecute the crimes and civil wrongs unearthed by the investigation); Wang II Tr. at 203:2-22 (testifying that the investigation was to uncover "crimes" by "corrupted Chinese official[s]" to bring them to "justice" and cause them to be "sent to jail"); *accord* Wang I Tr. at 34:4-20 (testifying that Eastern commissioned the research to whistle blow and disclose [the subject's] crime").

      7.      During negotiation and performance of the Research Agreement, the only person or entity that Guo or his associates claimed would be using Strategic's research was Guo himself, even if someone else signed the contract opposite Strategic. Waller 1 Tr., Ex. Z, 226:1-253:8.

      **RESPONSE:**  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied.  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.  In fact, the Research Agreement that Strategic signed made it clear that Eastern was to use the investigatory research provided by Strategic.  Ex. M, Research Agreement at 1-5.

8.      As a corollary to this, it was expected that it would be Guo who would pay for
Strategic's work. Nov. 19, 2019 J. Michael "Waller 2" Tr., Ex. ZZZ, 95:3-12 (underlining added)
("It was explicit that they would be all entities controlled by Guo Wengui, <u>that it was his money</u>,
and that he would—he may use various vehicles to <u>conceal from the Chinese government the
fact that he was making these payments</u>."); Lianchao Tr., Ex. BB, 246:6-17.

      **RESPONSE:**  Objection.  Who was to pay any consideration due and owing
under the Research Agreement is immaterial to any factual or legal issue involved in this case.
To the extent an answer is required, denied.  The Research Agreement obligated Eastern to pay
Strategic if its properly performed its obligations; there is nothing in the Research Agreement
that implicitly or explicitly states that Mr. Guo would be paying for Strategic's investigatory
research.  Ex. M, Research Agreement at 1-5.

9.      After performance had begun in January 2018, Wang was told by Guo, and then
conveyed to Waller, that "big budget is ready for this long-term project" and that the "investors"
could pay Waller's team even without a contract. Wang 1 Tr., Ex. CC, 258:5-259:13.  At all
times, Guo and his associates assumed that some other person or entity rather than Guo would
sign the written contract *as a stand-in for Guo*. Lianchao Tr., Ex. BB, 273:1-5 (In drafting the
Research Agreement, for security reasons, there was a concern about Guo being identified as a
party.); Ex. DD (Wang 1 Tr. Ex. 5, SVUS00067-70: Lianchao-Waller Dec. 24-25, 2017 text
exchange, in which Lianchao says "I don't know who will sign" and Waller reports that Guo had
already proposed and the parties had agreed that Lianchao sign); Ex. EE (Wang 1 Tr. Ex. 16,
EASTERN-00217-219:  Wang-Wallop January 5, 2018 text exchange, in which Wang says, "So
I'm the person to sign this contract tomorrow" and confirms that "NY" (that is, Guo) had

instructed her that "this contract and all the communications…are exclusively between NY, you, M [Michael Waller] and me—four of us.").

RESPONSE: Objection.  Whether Eastern or some other entity signed the Research Agreement "as a stand-in for Guo" and whether Eastern had a "big budget" for the project or "investors" in Eastern is immaterial to any factual or legal issue involved in this case. To the extent an answer is required, denied that Eastern signed the Research Agreement "as a stand-in for Guo."  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.  Otherwise, admitted.

10.     To the extent Eastern is contending that it operates as a distinct entity outside of Guo's control, Eastern admitted that Guo provided it the initial fifteen subject names for Strategic to research and background information for research.  Feb. 12, 2019 French "Wallop 1" Tr., Ex. FF, 83:24-84:7, 185:7-186:12, Lianchao Tr., Ex. BB,173:6-174:4. Eastern was to give Guo the research results for Guo's own personal use, purportedly to "whistle blow" and publicly attack the CCP (Wallop 1 Tr., Ex. FF, 32:5-35:11, 37:8-38:7). These initial names and background information had value: Guo represented to Strategic that he had spent a substantial sum to compile the information associated with each name.  Waller 1 Tr., Ex. Z, 186:11-188:7; Wallop 1 Tr., Ex. FF, 83:24-84:7, 185:7-186:12, Lianchao Tr., Ex. BB, 173:6-174:4 (Lianchao remembers that Guo claimed to Strategic that he had paid some amount of money to come up with the initial research included with the list of names, but believed Guo may have exaggerated regarding the amount he had spent).

RESPONSE:  Objection.  Whether Eastern operates as a distinct entity outside of Guo's control is immaterial to any factual or legal issue involved in this case.  That fact relates solely to Strategic's dismissed alter-ego claim.  To the extent an answer is required, denied.

Strategic has cited no evidence in support of the contention that Eastern did not operate as a distinct entity outside of Mr. Guo's control in violation of Local Rule 56.1.  Strategic has cited no evidence in support of the contention that Eastern was obligated to give Mr. Guo the research results for his own personal use in violation of Local Rule 56.1.  To the contrary, no such obligation exists under the Research Agreement.  Ex. M, Research Agreement at 1-5.  Finally, the fifteen names on the Subject List were identified by Ms. Wang based on information available on the internet.  Wang I Tr. at 194:2-10.

11.     To the extent Eastern is contending that it operates as a distinct entity outside of Guo's control, Eastern at all times intended, and the parties agreed, that Guo would receive and use the research that Strategic would provide, which was a continuation of the work Guo claimed he already had paid for. Wallop 1 Tr., Ex. FF, 83:24-84:7, 185:7-186:12, Lianchao Tr., Ex. BB, 173:6-174:4; Waller 1 Tr., Ex. Z, 186:11-188:7; Wang 1 Tr., Ex. CC, 32:5-35:11, 37:8-38:7 (Eastern admits Guo was the person who was going to use the research), 102:21-103:7 (Wang reported back solely to Guo on Strategic's performance), 263:8-268:12, 37:8-38:7 (Guo supposedly cares about this misconduct because he wants to promote democracy and the rule of law in China); Exs. GG and HH (Wang 1 Tr. Exs. 18 and 21 (The urgent need for information by January 26, 2018 was Guo's, but he never told Wang why he needed it so quickly; Wang also authenticates text messages showing Guo needed reports for his own purposes)); Guo 1 Tr., Ex. AA, 213:6-214:3 (Wang reported to Guo on Strategic's delivery of a thumb drive, and because it didn't contain the "evidence" he had wanted, agreed with her that Strategic should be sued).

**RESPONSE**: Objection.  Whether Eastern operates as a distinct entity outside of Guo's control is immaterial to any factual or legal issue involved in this case.  That fact relates solely to Strategic's dismissed alter-ego claim.  To the extent an answer is required, denied.

11

Strategic has cited no evidence in support of the contention that Eastern did not operate as a distinct entity outside of Mr. Guo's control in violation of Local Rule 56.1.  Strategic has cited no evidence in support of the contention that Eastern was obligated to give Mr. Guo the research results for his own personal use in violation of Local Rule 56.1.  To the contrary, no such obligation exists under the Research Agreement.  Ex. M, Research Agreement at 1-5.  Finally, the fifteen names on the Subject List were identified by Ms. Wang based on information available on the internet.  Wang I Tr. at 194:2-10.

12.     To the extent Eastern is contending that it operates as a distinct entity outside of Guo's control, it also had promised to share the information from the Research Agreement with non-party ACA Capital Group Limited ("ACA," the entity that actually paid Strategic the $1 million deposit under the contract, and which Eastern claims "lent" it the $1 million): in a late 2018 dinner meeting, William Je reminded Wang that he had expected information from the Research Agreement regarding corrupted Chinese officials. Wang 1 Tr., Ex. CC, 44:1-47:14, 158:6-9, 158:20-159:23, 161:2-17; Ex. U, Dkt. 267-1 (Wang 1 Tr. Ex. 7); Dkt. 127, p. 22, ¶ 7; Dkt. 142, p. 3, ¶ 7. Wang reports to Je on the progress of this case. Oct. 30, 2019 Yvette "Wang 2" Tr., Ex. II, 224:6-17.

**RESPONSE**:  Objection.  The purported facts are immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  Eastern is under no obligation to provide ACA with any of the results of Strategic's investigatory research.  Ex. L, ACA Loan Agreement, EASTERN-000278.

13.     Had the research been successful but Eastern still not regained access to its bank accounts, Eastern testified that ACA may have been willing to write off the purported loan altogether. Wang 2 Tr., Ex. II, 206:24-208:16.

**RESPONSE**: Objection.  Irrelevant.  Immaterial.  Calls for speculation.  To the extent an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  No such agreement exists, including in the ACA Loan.  Ex. L, ACA Loan Agreement, EASTERN-000278.

14.     Consistent with ACA's possible intention to forgive the loan in exchange for successful research, Eastern twice testified that ACA told Eastern that *because* Eastern's contract with Strategic did not yield results, Eastern would have to repay the loan with interest:

> Q. On what basis does Eastern Profit claim that you had authority to deal with William Yu regarding the ACA loan at the fall, 2018 meeting?
> A. Eddie, I will repeat my reply for the fourth time for you. I tried to recall every inch of the words we said in that dinner to help you in here. Okay? William mentioned to me I heard you guys were cheated by liars, <u>which means I will have to ask the loan to be paid back with interest</u>. I remember I said yes, sadly, we were cheated, and I'm sorry about that. And I agree with you, since you guys have a law agreement, the borrower should pay you back, and we are in litigation right now trying to get that 1 million U.S. dollars from the liars back. Hopefully we can get the justice, and that 1 million U.S. dollars can be returned back to Eastern Profits with even any damage. So Eastern, as you said, you told me borrower can pay you back.

Wang 2 Tr., Ex. II, 71:19-72:17 (underlying added).

> Q. Are they asking for the money back because the term—the contract was terminated?
> A. Obviously--
> Mr. GRENDI: Objection of form. You can answer.
>   A.  Obviously, correct. Because this contract produced nothing.

Wang 1 Tr., Ex. CC, 47:14-21.

**RESPONSE**: Objection.  Irrelevant.  Immaterial.  Calls for speculation.  To the extent an answer is required, denied.  There is no evidence suggesting that anyone from ACA ever communicated that it would be willing to write off the loan if Strategic performed under the Research Agreement in violation of Local Rule 56.1.  No such agreement exists, including in the ACA Loan.  Ex. L, ACA Loan Agreement, EASTERN-000278.

15.     During performance of the Research Agreement in January 2018, Wang had discussed with Strategic a group of "investors" who were allegedly backing the project in association with Guo. Wang 1 Tr., Ex. CC, 258:5-259:13; Ex. JJ (Wang 1 Tr. Ex. 20). At its deposition, Eastern testified that these "investors" were "the people who are the real fighter for rule of law and democracy in China." Wang 1 Tr., Ex. CC, 258:5-259:13.  In her texts to Strategic, Wang said "the investors would not continue to spend money on the things they don't need, for instance, the things of today [January 26, 2018]. Checked with them, we have 20 days to update them 2-3 times hopefully, with the financial and tracking results agreed in contract… Without the above, the investors could not move to second month with us, and hard to do future with us, I'm afraid." Ex. JJ (Wang 1 Tr. Ex. 20).

**RESPONSE**: Objection.  Irrelevant.  Immaterial.  This Court has already ruled that the identity of Eastern's investors are not relevant to any cause of action or defense in this litigation.

16.     During its second corporate deposition, ordered by the Court just before the close of discovery after Eastern did not seriously dispute that it had failed to produce a knowledgeable witness at its first deposition (Dkt. 189, p. 5), Eastern (testifying again through Wang) for the first time claimed that it had also intended to put Strategic's research to its own use. Wang 2 Tr., Ex. II, 73:8-74:8; 196:9-15; 197:18-198:6; 202:2-204:20; 207:13-208:16.

14

**RESPONSE**:  Objection.  Strategic's characterizations of discovery taken in this action are immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, those characterizations are denied.  Moreover, how Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, admitted that Eastern testified that it intended to put Strategic's investigatory research to its own use.

17.     Specifically, Eastern claimed it wanted to use Strategic's research to unfreeze its only asset, a Hong Kong bank account that it claimed had been frozen by Hong Kong authorities acting under the influence of the CCP. Wang 2 Tr., Ex. II, 73:8-74:8; 196:9-15; 197:18-198:6; 202:2-204:20; 207:13-208:16; Nov. 11, 2019 "Chunguang [Han]" Tr., Ex. KK, 87:3-88:20; Dkt. 203-2 (Eastern's only asset—a Hong Kong bank account—is frozen).

**RESPONSE**:  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied as stated.  Admitted that unfreezing its Hong Kong bank account was part of Eastern's intended use of Strategic's investigatory research, but as the testimony cited in the foregoing paragraphs of this Local Rule 56.1 statement make clear, the information was to be used to prosecute the crimes and civil wrongs uncovered by the investigation and to undermine CCP leadership.

18.     Eastern claimed it intended to use Strategic's research to criticize CCP leaders, which would then achieve regime change on the Mainland, which Eastern claimed would then cause CCP-influenced Hong Kong authorities to unfreeze Eastern's bank account. Wang 2 Tr., Ex. II, 73:8-74:8; 196:9-15; 197:18-198:6; 202:2-204:20; 207:13-208:16. Eastern could not

explain exactly how this plan would unfold but was confident that its bank account would be unfrozen. *Id*.

        **RESPONSE**:  Objection.  How Eastern or Mr. Guo intended to use the research is immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, denied as stated.  Admitted that unfreezing its Hong Kong bank account was part of Eastern's intended use of Strategic's investigatory research, but as the testimony cited in the foregoing paragraphs of this Local Rule 56.1 statement make clear, the information was to be used to prosecute the crimes and civil wrongs uncovered by the investigation and to undermine CCP leadership.

        19.    Wang had told Strategic in January 2018 that "as you know, big budget is ready for this long term project. The investors can even pay your team without contract." Wang 1 Tr., Ex. CC, 258:5-259:13; Ex. JJ (Wang 1 Tr. Ex. 20). But even with the benefit of hindsight, Wang for Eastern answered, "I have no idea" when asked how it had planned to put this budget together. Wang 1 Tr., Ex. CC, 258:21-259:13.

        **RESPONSE**: Objection.  Irrelevant.  This Court has already ruled that the identity of Eastern's investors are not relevant to any cause of action or defense in this litigation. To the extent an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.

        20.    According to Eastern, it had been willing to "borrow" millions of dollars to pay for research to unfreeze an account that held only about $80,000. Wang 2 Tr., Ex. II, 208:17-22 (Eastern "possibly" intended to keep "borrowing" from ACA for the rest of the contract because the extent that ACA paid was limited to the contractual deposit); Dkt. 203-2 (the amount frozen in Eastern Profit's Hong Kong bank account was HK $578,399.78, the equivalent of about USD

$80,000); Dkt. 264, ¶ 5. *See also* Ex. NN (https://www.bloomberg.com/quote/USDHKD:CUR

(published market report showing historical 5-year exchange rate as between 7.75 and 7.85

HKD to one U.S. dollar)).

      **RESPONSE**:  Objection.  How Eastern or Mr. Guo intended to use the research is

immaterial to any factual or legal issue involved in this case.  To the extent an answer is

required, denied as stated.  Admitted that unfreezing its Hong Kong bank account was part of

Eastern's intended use of Strategic's investigatory research, but as the testimony cited in the

foregoing paragraphs of this Local Rule 56.1 statement make clear, the information was to be

used to prosecute the crimes and civil wrongs uncovered by the investigation and to undermine

CCP leadership.

      21.    The development of identities and background research on the 15 initial subjects

was provided by Guo at his own cost, and not paid for by Eastern.  Wang 2 Tr., Ex. II, 209:25-

210:5; Wallop 1 Tr., Ex. FF, 83:24-84:7, 185:7-186:12, Lianchao Tr., Ex. BB, 173:6-174:4;

Waller 1 Tr., Ex. Z, 186:11-188:7.

      **RESPONSE**:  Objection.  Who put together the Subject List is immaterial to any

factual or legal issues involved in this case.  To the extent an answer is required, denied.  The

fifteen names on the Subject List were identified by Ms. Wang based on information available on

the internet.  Wang I Tr. at 194:2-10.

      22.    All of the work involved in negotiating the Research Agreement, monitoring

performance, and prosecuting the lawsuit—even producing documents and serving as a corporate

witness—was performed on behalf of Eastern for free by an entity called Golden Spring New

York (Limited) ("GSNY"), which in turn takes direction from Guo's family office, China

Golden Spring. Ex. M (Plt's First Interrog. Resp.), also Dkt. 267-1, p. 2, No. 4; Wang 1 Tr., Ex.

CC, 23:3-29:13 (Eastern's interrogatory responses are signed by Yvette Wang as President of GSNY because GSNY "provide[s] service" to Eastern Profit as its attorney-in-fact); 18:14-20:21 (Wang, Eastern Profit's 30(b)(6) witness, claims GSNY is a "family office" and that she takes direction from China Golden Spring in Hong Kong, but refuses to name the family or individuals involved); Nov. 12, 2019 A. "Coluccio Tr.," Ex. OO, 171:2-172:13 (GSNY is Guo's family office), 186:15-19 (GSNY takes direction from Guo), 122:15-123:3 (GSNY is wholly owned by China Golden Spring).

> **RESPONSE**: Objection. Immaterial. Irrelevant. Denied. Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.   Rather, the record makes clear that the Research Agreement was negotiated and performance of the Research Agreement was monitored by various agents of Eastern. Ex. F, Wallop I Tr. at 31:23-109:18; Ex. H, Waller I Tr. at 18:8-38:14. Admitted, however, that GSNY is wholly owned by China Golden Spring.

23.     The only payment that was ever made to Strategic—a deposit that was an order of magnitude greater than Eastern's only asset, a frozen Hong Kong bank account holding only about $80,000, came from an entity called ACA. Wang 1 Tr., Ex. CC, 158:6-9, 158:20-159:23, 161:2-17; Dkt. 127, p. 22, ¶ 7; Dkt. 142, p. 3, ¶ 7; Dkt. 203-2; Dkt. 264, ¶ 5.

> **RESPONSE**: Denied as stated. Admitted that Eastern directed ACA to pay the $1 million deposit on behalf of Eastern, as explicitly allowed under the Research Agreement and pursuant to the ACA Loan Agreement, Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278; Ex. M, Research Agreement at 1; Ex. A, Answer at 2 ¶ 6, but denied that Eastern's only asset was a frozen Hong Kong bank account holding only $80,000. Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.

24.     In negotiations, the parties understood that Guo was funding Strategic's research. Lianchao Tr., Ex. BB, 246:6-17; Ex. M (Plt's First Interrog. Resp.), Dkt. 267-1, p. 2, No. 4; Dkt. 93, pp. 3-4, ¶ 17; Wallop Aff., Ex. C (Dkt. 267-1), ¶¶ 6-7. In the Research Agreement, it was agreed that payment would come from some entity other than the signer. Ex. J (Dkt. 267-1), p. 5. During performance in January 2018, Wang conveyed to Strategic that "big budget is ready for this long-term project," and that the "investors" could pay Waller's team even without a contract. Wang 1 Tr., Ex. CC, 258:5-259:13.

**RESPONSE**:  As to the first sentence, denied.  Strategic mischaracterizes the record and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1  As to the second sentence, admitted.  As to the third sentence, objection.  Irrelevant. Immaterial.  This Court has already ruled that the identity of Eastern's investors are not relevant to any cause of action or defense in this litigation.

25.     During the litigation, Eastern for the first time claimed that it had in fact paid Strategic itself by virtue of having received a loan from another entity, ACA, that exactly matched ACA's payment of a deposit to Strategic. Wang 2 Tr., Ex. II, 49:25-50:10, 53:19-54:3, 56:7-11, 57:5-9, 110:17-112:2; Dkt. 203-2; Chunguang Tr., Ex. KK, 72:24-73:14.

**RESPONSE**:  Objection.  Strategic's characterizations of the positions taken in this litigation are immaterial to any factual or legal issue involved in this case.  To the extent an answer is required, those characterizations are denied.  As to the remainder, denied as stated. Admitted that Eastern directed ACA to pay the $1 million deposit on behalf of Eastern, as explicitly allowed under the Research Agreement and pursuant to the ACA Loan Agreement, Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278; Ex. M,

Research Agreement at 1; Ex. A, Answer at 2 ¶ 6, but denied as to Strategic's characterization of Eastern's claims during this litigation.  Strategic has cited no evidence in support of that contention in violation of Local Rule 56.1.

26.     There is reason to doubt that a loan was truly made, beginning with irregularities in the loan document itself. The man who signed the loan for Eastern, purportedly (on the signature line) as a "Director," was not in fact its director. Chunguang Tr., Ex. KK, 59:60:8, 70:5-9, 102:2-18 (discussing resignation); Ex. LL (Chunguang Tr. Ex. 35, EASTERN-000278-80, loan document).  Chunguang had long before resigned as a director, having transferred Eastern to Guo Wengui's daughter, Guo Mei, back in June of 2017, just before all of Eastern's assets were seized. Chunguang Tr., Ex. KK, 59:60:8, 70:5-9, 102:2-18 (resignation), 87:3-88:20; Dkt. 203-2 (asset seizure). The real director at the time of the purported loan, Eastern's sole director, was Guo Mei, Guo Wengui's daughter. *Id*. Chunguang admitted Guo Mei had purchased Eastern from him six months before the Research Agreement was negotiated, but testified that Guo's daughter had made the purchase in order to go into the movie business, and had orally asked him to be Eastern's agent.  Chunguang Tr., Ex. KK, 101:17-105:3 (date of sale June 27, <u>2017</u>), Ex. J (Dkt. 267-1), p. 5 (Agreement signed January 6, <u>2018</u>); Wallop Aff., Ex. C (Dkt. 267-1), ¶ 4; Wang 1 Tr., Ex. CC, 264:9-12.

**RESPONSE**: Objection.  Immaterial.  Irrelevant.  As to the first sentence, denied. The loan agreement is a valid and enforceable contract that has been authenticated by Chunguang Hang.  Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.  As to the remainder, admitted.

27.     Other Guo confidants, including Lianchao Han, who negotiated the Research Agreement, easily recognized Chunguang as a cook, bodyguard, and errand boy for Guo.

Lianchao Tr., Ex. BB, 36:17-37:12; Nov. 26, 2019 Sasha "Gong Tr.," Ex. PP, 36:9-22; 116:24-118:11.  Lianchao testified that Chunguang was usually in Guo's New York apartment when he visited Guo. Lianchao Tr., Ex. BB, 266:12-277:4. Yet, Chunguang refused to provide details on his line of work, place of work, or reason for his presence in Guo's building; he denied ever having worked for Guo and instead claimed to have begun running his own investment business after having been tutored by Guo, his "mentor" and "idol," in the niceties of art, architecture, and investing. (Chunguang Tr., Ex. KK, 24:20-34:2; 35:17-36:4; 42:7-11). Guo admitted Chunguang is in his building almost every day, but refused to say why or to know why (Guo 1 Tr., Ex. AA, 114:9-117:6; 195:23-197:24), and laughed when asked whether Chunguang attended meetings between Guo and Strategic (*Id.*, 158:5-15). Of course, he did not. *See* Eastern's Rule 56.01 Statement, Dkt. 262, and Strategic's Responses to same, below, SOF 30-32.

        **RESPONSE**: Objection.  The alleged facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  Chunguang Han was not Mr. Guo's cook, bodyguard, or errand boy.  C. Han Tr. at 152.  The loan agreement is a valid and enforceable contract that has been authenticated by Chunguang Han.  Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

        28.      Additionally, the timing of the purported "loan" negotiation does not match with the last-minute insertion of Eastern as the signatory to the Research Agreement. The loan was purportedly signed on Friday, December 29, 2017, a date ACA "Chief Executive" William Je (a non-resident of the U.S. who could not be found to testify as a witness) happened to be in New York City—the last business day before the Tuesday, January 2, 2018 wires were sent from

ACA to Strategic. Ex. U (Dkt. 267-1) (Wang 1 Tr. Ex. 7); Wang 1 Tr., Ex. CC, 158:6-9, 158:20-

159:23, 161:2-17; Dkt. 127, p. 22, ¶ 7; Dkt. 142, p. 3, ¶ 7.  Yet, Chunguang testified that even

after Yvette Wang approached him and he supposedly agreed to have Eastern sign the Research

Agreement (Chunguang Tr., Ex. KK, 39:5-40:11), a step he says he could only take after he

received authority from Guo Mei (Guo's daughter) to do the project (*Id.*, 72:24-73:13), it

required "two or three" in-person meetings, as well as at least one phone call, before the loan

could be signed in-person on December 29.  *Id.*, 133:13-24. Again, Wang's approaching

Chunguang is what supposedly triggered all of Chunguang's work in this regard, but she did not

herself learn the identity of Eastern until just before her first, December 29, 2017 trip out of town

to Virginia, and the draft Guo gave her to review did not even contain Eastern's name. Wang 1

Tr., Ex. CC, 51:6-52:18; Ex. AAAA (Wang 1 Tr. Ex. 4).

        **RESPONSE**:  Objection.  Immaterial.  Irrelevant.  To the extent an answer is

required, denied.  Strategic mischaracterizes the record and has therefore cited no evidence in

support of these contentions in violation of Local Rule 56.1.  Yvette Wang learned that Eastern

was going to be the entity that would sign the Research Agreement well before her trip to

Virginia to discuss the contract with Strategic and in plenty of time to allow Chunguang Han to

meet with William Je of ACA to sign the ACA Loan Agreement.  Wang I Tr. at 1-12.  The loan

agreement is a valid and enforceable contract that has been authenticated by Chunguang Hang.

Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

        29.      Eastern did not keep any copy of the loan agreement after it was signed, and

Chunguang tried to explain by claiming he only intended to tell Eastern's "fiscal department"

(though it had no employees left) about the loan at some future point after Eastern's assets were

unfrozen and the loan could be repaid (Chunguang Tr., Ex. KK, 134:21-136:5). The loan was not

produced before Eastern's first Rule 30(b)(6) deposition on Jan. 31, 2019 and, ten months later, Eastern's corporate representative (Wang) still could not say <u>where</u> Eastern had obtained the loan document to produce in the case; she was allowed to say only that she saw it for the first time in prior litigation counsel's "file." Wang 2 Tr., Ex. II, 97:20-102:8.

    **RESPONSE**: Objection.  Immaterial.  Irrelevant.  These alleged facts have no bearing on any issue involved in this case.  To the extent, an answer is required, denied. Strategic mischaracterizes the record and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  The loan agreement is a valid and enforceable contract that has been authenticated by Chunguang Hang.  Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

    30.    Chunguang's signature appears to have been falsely signed on at least two other documents involved in this case—the <u>Research Agreement</u> itself (Lianchao Tr., Ex. BB, 222:7-223:8, identifying Chunguang's name on Research Agreement that was signed by Wang in French Wallop's presence in Virginia (Wang 2 Tr., Ex. II, 141:15-143:5, admitting she did not sign her own name, but denying she signed Chunguang's and claiming she signed "nobody's name"), and a <u>Substitution of Counsel</u> filed in this Court (Chunguang Tr., Ex. KK,118:9-119:8; Ex. Q (Dkt. 267-1) (Ex. 33 to Chunguang Tr.)—without his knowledge or agreement.

    **RESPONSE**: Objection.  Immaterial.  Irrelevant.  These alleged facts have no bearing on any issue involved in this case.  To the extent, an answer is required, denied. Strategic mischaracterizes the record and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  The loan agreement is a valid and enforceable contract that has been authenticated by Chunguang Hang.  Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

31.     Additionally, the purported loan covered only the $1 million deposit on a contract that required payments of $750,000 per month beginning January 2018. Ex. J (Dkt. 267-1), p. 5. Eastern had made no arrangements to borrow any of the other payments (Wang 2 Tr., Ex. II, 208:17-22) and had "no idea" how it would fund the rest of the Agreement (Wang 1 Tr., Ex. CC, 258:21-259:13, 262:10-18), which had a term of three years. Ex. J (Dkt. 267-1), p. 5 ("Duration").  The purported loan bore interest at 2% per month, compounding monthly.  Ex. LL (Chunguang Tr. Ex. 35).  It was repayable in full, with interest, in just six months.  *Id.*  Yet Eastern had committed itself to a Research Agreement that would take three years to complete Ex. J (Dkt. 267-1), p. 5 ("Duration")), and Eastern's only plan for generating cash was for Strategic to find damaging research on CCP leaders; for Guo or someone else to effectively publicize the research; for regime change in China to occur; and for this regime change to cause Hong Kong authorities to unfreeze Eastern's account. Wang 2 Tr., Ex. II, 73:8-74:8; 196:9-15; 197:18-198:6; 202:2-204:20; 207:13-208:16; Chunguang Tr., Ex. KK, 87:3-88:20. That account, however, held only about $80,000, just a fraction of the deposit and nothing for the contractually-required payment for a single month of work. Dkt. 203-2 (Eastern's only asset—a Hong Kong bank account—is frozen); Dkt. 264, ¶ 5.

**RESPONSE**: Objection.  Immaterial.  Irrelevant. These alleged facts have no bearing on any factual or legal issue involved in this case.  To the extent an answer is required, Eastern responds as follows.  As to the first sentence, admitted.  As to the second sentence, denied.  Strategic mischaracterizes the record and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  As to the third and fourth sentences, admitted. As to the fifth and sixth sentences, denied.  Strategic mischaracterizes the record and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  The

loan agreement is a valid and enforceable contract that has been authenticated by Chunguang

Hang.  Ex. E, C. Han Tr. at 124:14-129:2; Ex. L, ACA Loan Agreement, EASTERN-000278.

32.    Despite the fact that the loan had been due for payment in full on June 29, 2018

per its terms (Ex. LL, Chunguang Tr. Ex. 35), Eastern testified it had had no contact with ACA

about repayment as of the date its initial deposition was taken on January 31, 2019, almost a year

after Eastern had sued Strategic. Wang 1 Tr., Ex. CC, 45:8-46:23. Indeed, Eastern's corporate

witness, the so-called "project manager," claimed she had never seen a loan document and had

never spoken with anyone from ACA. *Id*. Only after Strategic questioned the genuineness of the

loan in this litigation did Eastern use its second corporate deposition on Oct. 30, 2019 to claim

that William Je, the chief executive of ACA, had begun to "chase" Chunguang in New York City

to collect. Wang 2 Tr., Ex. II, 35:2-39:8. These meetings supposedly took place in the late

summer of 2019. *Id*. Eastern's corporate representative also claimed to remember that in the fall

of 2018, William Je (on behalf of ACA) had met her for dinner at a New York City restaurant to

discuss the Research Agreement and loan. *Id*., 44:1-47:14.

        **RESPONSE**:  Objection.  Immaterial.  Irrelevant. These alleged facts have no

bearing on any issue involved in this case.  To the extent, an answer is required, denied.

Strategic mischaracterizes the record and has therefore cited no evidence in support of these

contentions in violation of Local Rule 56.1.  The loan agreement is a valid and enforceable

contract that has been authenticated by Chunguang Hang.  Ex. E, C. Han Tr. at 124:14-129:2;

Ex. L, ACA Loan Agreement, EASTERN-000278.

33.    Guo did not contact Strategic without an introduction first.  Guo arranged for two

people who were acquainted with French Wallop (Dr. Lianchao Han ("Lianchao") and William

Gertz ("Gertz") to make arrangements for Guo to be introduced to Strategic.  Wallop 1 Tr., Ex.

FF, 11:24-12:21, 31:23-35:7, 89:9-91:1; Lianchao Tr., Ex. BB, 44:17-46:2; Oct. 15, 2019 William "Gertz Tr.," Ex. QQ, 48:9-15, 128:6-134:21, 138:2-4.  This was in or around November 2017.  *Id*.

        **RESPONSE**:  Objection.  This fact is immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied as stated.  Denied that Guo "arranged for" Mr. Gertz and L. Han to introduce him to Ms. Wallop and Ms. Waller.  Strategic has not cited any evidence in support of that contention in violation of Local Rule 56.l.  Rather, Mr. Gertz and L. Han took it upon themselves to connect Mr. Guo with Ms. Wallop and Mr. Waller.  Lianchao Tr., Ex. BB, 53:13-20; Gertz Tr., Ex. QQ, 60:16-20, 64:16-65:2, 66:15-67:5, 69:3-8, 69:17-70:1, 128:6-129:6, 131:1-132:19.

    34.    Lianchao, who immigrated to the United States from China, worked in the U.S. Senate for several years, including for the late Senator Wallop, to whom French was married at the time.  Wallop Aff., Ex. C, Dkt. 267-1, ¶¶ 2-3.  Lianchao came to know French from his close relationship with the Senator's office.  *Id*.; Lianchao Tr., Ex. BB, 38:20-39:6.  Lianchao also had known Guo for some time, had assisted Guo on such critical matters as his application for asylum in the U.S. (including through Lianchao's work with two Washington defense policy thinktanks), and, through Guo, has met such prominent political figures as Tony Blair.  *Id*., 30:19-32:11, 36:8-16, 46:17-47:9.

        **RESPONSE**:  Objection.  This fact is immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, admitted.

    35.    Gertz has covered defense and national security affairs for his entire career (Gertz Tr., Ex. QQ, 20:15-21:1); has written eight books, including two on China and his most recent (*Deceiving the Sky*); and also speaks around the country and appears on national news programs.

*Id.*, 17:2-24:21, 25:18-21; Wallop 1 Tr., Ex. FF, 12:16-21, 33:15-21.  Gertz developed a deep involvement with Guo, through both a friendship and professional relationship after having been introduced to Guo by Sasha Gong between June and July 2017.  Gertz Tr., Ex. QQ, 64:6-65:8; 72:13-73:19.

> **RESPONSE**:  Objection.  These purported facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, admitted as to the first sentence, but denied as to the second sentence as Strategic has not cited any evidence in support of that contention in violation of Local Rule 56.1.

36.     Gertz believed that Guo was a "valuable resource" with a "powerful message" but lacked effective communication skills and thus needed strategic communications advice from French.  Gertz Tr., Ex. QQ, 128:12-133:7, 137:5-14.  Gertz wanted Lianchao to introduce her to Guo so that Wallop could get Guo to "focus his message so that it could be a more effective tool," which would benefit Gertz as a reporter by giving him "information and news stories." *Id.*, 131:1-132:13.  According to Lianchao and Gertz, Guo's message was based on several broad and noteworthy policy goals involving the Chinese government beneficial to the people of China. Wallop 1 Tr., Ex. FF, 88:3-89:5, 31:23-35:7; Guo 1 Tr., Ex. AA, 45:3-46:16; Lianchao Tr., Ex. BB, 53:13-20; Gertz Tr., Ex. QQ, 60:16-20, 64:16-65:2, 66:15-67:5, 69:3-8, 69:17-70:1, 128:6-129:6, 131:1-132:19.

> **RESPONSE**:  Objection.  These purported facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, admitted.

37.     Lianchao agreed to make the introduction and was already advising Guo that he needed to undertake research against "high-ranking government officials" to sustain his momentum.  Lianchao Tr., Ex. BB, 43:1-46:2.

27

**RESPONSE**:  Objection.  These purported facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, admitted.

38.     That Gertz was so deeply involved with Guo was significant especially to Waller, who had known Gertz and periodically worked with him over the course of a 35-year period. Gertz Tr., Ex. QQ, 126:14-128:8; Waller 1 Tr., Ex. Z, 116:24-117:9.

**RESPONSE**:  Objection.  These purported facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied as Strategic has not cited any evidence in support of that contention in violation of Local Rule 56.1.  Strategic did not conduct any independent diligence into Mr. Guo or Eastern before signing the Research Agreement.   Ex. A, Answer at 11 ¶¶ 47-54; Ex. F, Wallop I Tr. 59:2-61:13, 86:19-91:1, 171:21-173:24, *see also id.* at 12:5-21, 16:16-18:12, 26:22-27:2, 27:18-30:1; *see also* Ex. H, Waller I Tr. at 286:1-287:8.

39.     That Guo was a person of significant financial means was clear to Wallop when she gave public relations and communications advice to help his integration into the U.S., such as where to buy real estate in Washington, D.C. to achieve a high profile presence there.  One of Guo's desires was to "buy a very large bank building in Washington right across from the White House … buy a huge house in Washington.  All of these things were part of his sort of image building."  Wallop 1 Tr., Ex. FF, 32:17-38:4, 41:11-42:11, 43:15-45:25, 87:23-89:5; Gertz Tr., Ex. QQ, 137:5-16.

**RESPONSE**:  Objection.  These purported facts are immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied.  Strategic, Ms. Wallop, and Mr. Waller did not conduct any independent diligence into Mr. Guo or Eastern before signing the Research Agreement on behalf of Strategic.  Ex. A, Answer at 11 ¶¶ 47-54;

Ex. F, Wallop I Tr. 59:2-61:13, 86:19-91:1, 171:21-173:24, *see also id.* at 12:5-21, 16:16-18:12, 26:22-27:2, 27:18-30:1; *see also* Ex. H, Waller I Tr. at 286:1-287:8.

40.     It was also significant to Strategic that Guo had formed a close relationship with Stephen K. Bannon ("Bannon"), the former senior advisor to President Trump who Strategic believed wanted to "confront the threat that China poses against the United States." Waller 2 Tr., Ex. ZZZ, 123:24-124:8 (referencing texts between Lianchao and Waller regarding Bannon).

          **RESPONSE**:  Objection.  Immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied.  Strategic did not cite to any evidence in support of this contention in violation of Local Rule 56.1.  Eastern further responds that Strategic did not conduct any independent diligence into Mr. Guo or Eastern before signing the Research Agreement on behalf of Strategic.  Ex. A, Answer at 11 ¶¶ 47-54; Ex. F, Wallop I Tr. 59:2-61:13, 86:19-91:1, 171:21-173:24, *see also id.* at 12:5-21, 16:16-18:12, 26:22-27:2, 27:18-30:1; *see also* Ex. H, Waller I Tr. at 286:1-287:8.

41.     Strategic Vision has long known about Mr. Bannon's purported connections to Mr. Guo. Their collaboration has been the subject of widespread press coverage going back to 2017. *See e.g.*, Ex. RR (Tom Phillips, "Guo Wengui, the Maverick Chinese Billionaire Who Threatens to Crash Xi's Party," The Guardian (Oct. 15, 2017), https://www.theguardian.com/world/2017/oct/16/guo-wengui-themaverick-chinese-billionaire-who-threatens-to-crash-xis-party); Ex. SS (Cezary Podkul and Brian Spegele, "Steve Bannon, Chinese Critic Create Fund to Investigate Beijing," Wall St. Journal (Nov. 20, 2018), https://www.wsj.com/articles/bannon-chinese-critic-create-fund-to-investigate-beijing-1542759820); Ex. TT (David Barboza, "Steve Bannon and a Fugitive Billionaire Target a

Common Enemy:China," N.Y. Times (Dec. 4, 2018),

https://www.nytimes.com/2018/12/04/business/stephenbannon-guo-wengui-china.html).

   **RESPONSE**:  Objection.  Immaterial to any legal or factual issue involved in this

case.  To the extent an answer is required, admitted that the news articles show some connection

between Mr. Guo and Mr. Bannon, but denied that Strategic, Ms. Wallop, Mr. Waller ever read

these articles prior to entering into the Research Agreement.  Strategic did not cite to any

evidence in support of this contention in violation of Local Rule 56.1.  Eastern further responds

that Strategic did not conduct any independent diligence into Mr. Guo or Eastern before signing

the Research Agreement on behalf of Strategic.  Ex. A, Answer at 11 ¶¶ 47-54; Ex. F, Wallop I

Tr. 59:2-61:13, 86:19-91:1, 171:21-173:24, *see also id.* at 12:5-21, 16:16-18:12, 26:22-27:2,

27:18-30:1; *see also* Ex. H, Waller I Tr. at 286:1-287:8.

   42.   Bannon resisted discovery in this case.  Dkt. 216, p.2 (letter of Bannon counsel

opposing motion to extend discovery to depose Bannon).

   **RESPONSE**:  Objection.  Immaterial to any legal or factual issue involved in this

case.  Magistrate Judge Fallon granted Mr. Bannon's protective order because she determined

that Mr. Bannon's testimony was not relevant to any factual or legal issue involved in this case.

   43.   When Guo selected the subjects for research under the Research Agreement,

including the first 15 names (Guo 1 Tr., Ex. AA, 39:9-40:6; Wallop 1 Tr., Ex. FF, 129:7-17,

281:19-282:13), he was continuing something he had begun earlier with a different research

company—research that created a "big file of names" that Guo claimed to Strategic had cost

$250 million.  Nov. 19, 2019 French "Wallop 2" Tr., Ex. UU, 37:14-19, Wallop 1 Tr., Ex. FF,

84:8-86:18, 159:8-161:10, 185:7-186:12, 217:3-20; Lianchao Tr., Ex. BB, 173:1-175:7; Waller 1

Tr., Ex. Z, 186:11-187:21.

30

**RESPONSE**: Objection.  Who put together the Subject List is immaterial to any factual or legal issues involved in this case.  To the extent an answer is required, denied.  The fifteen names on the Subject List were identified by Ms. Wang based on information available on the internet.  Wang I Tr. at 194:2-10.

44.     According to Guo, he had failed to receive what he needed from the earlier work:

> Guo said, this is the file, he slammed down on the coffee table like that in front of me in his apartment, in his sun room, and said, this is what we need to investigate, these are the people we need to look into, and, here, you can look through the names.· And I said, wow.· He said, <u>I paid $250 million for this.</u>· I said, really.

Wallop 1 Tr., Ex. UU, 185:12-19 (underlining added) and Lianchao Tr., Ex. BB, 173:1-175:7.

**RESPONSE**: Objection.  Who put together the Subject List is immaterial to any factual or legal issues involved in this case.  To the extent an answer is required, denied.  The fifteen names on the Subject List were identified by Ms. Wang based on information available on the internet.  Wang I Tr. at 194:2-10.

45.     Strategic believed the earlier work Guo had received was "rubbish" and of no value.  Wallop 1 Tr., Ex. FF, 159:8-161:10.  Guo's earlier "security service" had stopped work for Guo when he terminated its services.  Lianchao Tr., Ex. BB, 247:11-250:5. Guo had worked with T&M Security to install cameras in his apartment, but they no longer work for him. Guo 1 Tr., Ex. AA, 18:8-13, 21:3-15.

**RESPONSE**:  Objection. Irrelevant. Immaterial.  To the extent an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  Wallop did not testify about any prior investigative work that Guo had commissioned and the "security service" referenced in this paragraph is not an investigatory firm, it is a personal security firm.  Guo 1 Tr., Ex. AA, 18:8-13, 21:3-15; Wallop 1 Tr., Ex. FF, 159:8-161:10.

46.    The sophisticated research and consulting being provided by Strategic through its team of "top-quality industry standard people" (Waller 1 Tr., Ex. Z, 122:1-123:15) was not something Guo was able to receive from other sources (even Lianchao ultimately declined when Guo wanted to hire him, Lianchao Tr., Ex. BB, 218:11-219:2) and Guo needed Strategic to agree to the project. *Id.*, 173:1-175:7. Lianchao, who conceived of the project in the first place and advises Guo, is not aware that, after Strategic was terminated, Guo ever got information on the 15 individuals and using it to expose CCP leaders. *Id.*, 237:10-238:6. Eastern did not retain anyone else to research the 15 names. Wang 2 Tr., Ex. II, 195:21-196:7.

**RESPONSE**:  Objection.  Immaterial to any legal or factual issue involved in this case.  To the extent an answer is required, denied.  Strategic did not cite to any evidence in support of this contention in violation of Local Rule 56.1.  As it has admitted in this litigation, Strategic has not performed under the Research Agreement Dkt. No. 273 at 90-98 ¶¶ 106-116, and Strategic's contention that Guo needed Strategic to agree to the project and could not have retained another investigative firm is inconsistent with Strategic's own testimony that Mr. Guo was in fact able to hire another investigative firm.  *See e.g.*, Waller I Tr. at 188:12-189:5, 220:19-222:12.

47.    Guo made representations about himself in his discussions with Strategic.  These included that he was a longtime opponent of CCP (Wang 1 Tr., Ex. CC, 32:5-35:11, 37:8-38:7, Lianchao Tr., Ex. BB, 53:13-54:5, 138:12-139:15, 173:1-175:7), that Guo desired to undermine, sow disruption, and bring about regime's downfall (Guo 1 Tr., Ex. AA, 45:3-46:9, 206:25-207:7), that he would accomplish this through publicizing research about regime's corruption (Lianchao Tr., Ex. BB, 173:1-175:7, 279:10-14), and that this was dependent on the work by

Strategic.  Guo 1 Tr., Ex. AA, 45:3-46:9, 206:25-207:7; Wallop 1 Tr., Ex. FF, 84:15-89:5; Wang

Tr. 2, Ex. II, 49:25-50:10, 53:19-54:3, 56:7-11, 57:5-9, 110:17-112:2.

> **RESPONSE**:  Denied as stated.  Admitted that Mr. Guo is a longtime opponent
of CCP and sought to undermine the CCP, but denied that Mr. Guo ever made this representation
to Strategic or that Mr. Guo was "dependent" upon Strategic as Strategic has failed to cite to any
evidence in support of those contentions in violation of Local Rule 56.1.  In fact, Strategic did
not know for what purpose Eastern was proposing to use the investigatory research and thought
that Eastern might "run it both ways" (that is, both for and against the CCP).  Ex. F, Wallop I Tr.
at 59:2-61:13.  It "never [even] discussed what the research would be used for . . . with Mr. Guo
or Ms. Wang or Mr. Han."  *Id.*  Further, Strategic's contention that Guo needed Strategic to agree
to the project and could not have retained another investigative firm is inconsistent with
Strategic's own testimony that Mr. Guo was in fact able to hire another investigative firm.  *See
e.g.*, Waller I Tr. at 188:12-189:5, 220:19- 222:12.

48.   Wallop understood from Guo during a meeting to discuss Strategic's work that:
"Well, Guo had said that the CCP, or the communist party of China, there was a great deal of
corruption within the leadership, and, as a result of that, he wanted to find as much corruption as
possible, and he wanted us to investigate and retrieve that kind of corruption.  In other words,
funds that would have been taken out of the country illegally, cash payments, all of these things
that were part of that."  Wallop 1 Tr., Ex. FF, 84:22-89:5 (underlining added).

> **RESPONSE**:  Denied.  Strategic did not conduct even the most cursory diligence
into the background of Eastern or Mr. Guo, including into whether Mr. Guo was truly a dissident
or opposed the CCP.  Ex. A, Answer. at 11 ¶¶ 47-54; Ex. F, Wallop I Tr. 59:2-61:13, 86:19-91:1,
171:21-173:24, *see also id.* at 12:5-21, 16:16-18:12, 26:22-27:2, 27:18-30:1; see also Ex. H,

Waller I Tr. at 286:1-287:8.   It did not know for what purpose Eastern was proposing to use the investigatory research and thought that Eastern might "run it both ways" (that is, both for and against the CCP).  Ex. F, Wallop I Tr. at 59:2-61:13.  It "never [even] discussed what the research would be used for . . . with Mr. Guo or Ms. Wang or Mr. Han."  *Id.*

49.     In his August 2, 2019, deposition, Guo testified that Sasha Gong ("Gong") was his "friend" who had introduced him to Washington Free Beacon journalist Bill Gertz. Guo 1 Tr., Ex. AA, 58:6-13.

**RESPONSE**:  Objection. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, admitted.

50.     Labeled and tracked as a counter-revolutionary in her youth, Gong immigrated to the U.S. in 1987.  Gong Tr., Ex. PP, 9:11-15:16. In the U.S., Gong became a member of the Chinese dissident community, earning a doctorate at Harvard and teaching, writing books, and even running for a seat in the Virginia House of Delegates. *Id.*, 15:17-19:23. In 2011, Gong became the director of the Chinese branch of the United States government's Voice of America media operation. *Id.*, 20:9-22:13, 29:20-32:11; 35:9-37:15, 39:12-40:15, 41:2-11.  In this role, she oversaw over 100 employees; it was her job to spread the word about democracy within China through Chinese language broadcasts and also to expand the size of the audience, which she accomplished. *Id*. Gong is also a member of the Committee on the Present Danger: China. *Id.*, 22:18-23:6.

**RESPONSE**:  Objection. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding

Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate. Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

51.     Beginning in April 2017 and continuing through 2018, Gong interviewed Guo several times, both off the record and live on-air. Gong Tr., Ex. PP, 29:20-32:11; 35:9-37:15.

**RESPONSE**: Objection. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, admitted. By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate. Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

52.     Starting with the first interview, Gong also visited Guo at his Sherry-Netherland apartment in New York City several times and met Guo's retinue, including Wang and Chunguang Han. Gong Tr., Ex. PP, 35:9-37:15 (first interview); 41:2-20. Gong introduced Guo to several reporters (*Id*.) and advised him on a new media arm he wanted to start. *Id*., 42:6-43:11, 79:3-21.

**RESPONSE**: Objection. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, admitted that Ms. Wang interviewed Mr. Guo several times and introduced him to reporters. By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate. Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

53.     Throughout 2017, Gong continued to speak with Guo, who made claims about his background and involvement in Chinese affairs. Gong Tr., Ex. PP, 46:4-48:12; 58:21-59:12.

**RESPONSE**:  Objection. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident.  To the extent an answer is required, admitted that Gong spoke with Mr. Guo in 2017.  By way of further response, the testimony cited by Eastern is only a portion of Gong's deposition, in which her statements regarding Mr. Guo were muddled and inconsistent.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

54.     Later, Gong was invited to serve as an initial director of the Rule of Law Society (Gong Tr., Ex. PP, 177:8-23), an entity founded by Guo and Steve Bannon purportedly to "whistle blow" and fight for democracy in China; the homepage on its website, rolsociety.org, states that its vision is to "expose corruption, obstruction, illegality, brutality, false imprisonment, excessive sentencing, harassment, and inhumanity pervasive in the political, legal, business and financial systems of China" and that is mission is to "permit the people of China to live under a national system based on the rule of law, independent of the political system of the People's Republic of China." (quoted from rolsociety.org). Gong served from its formal organization in July 2019 until September 2019. Gong Tr., Ex. PP, 23:7-24:15. Finally, in late May or early June 2019, Guo gave Gong for her review a "thick" copy of his court file in this case. *Id.*, 48:16-49:13.

**RESPONSE**:  Objection. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an

answer is required, admitted, except the penultimate sentence, which is denied.  By way of

further response, the testimony cited by Eastern is only a portion of Gong's deposition, in which

her statements regarding the timing of her involvement with the Rule of Law Society were

muddled and inconsistent.  By way of further response, Strategic seems to be attempting to put

Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such

and does not have sufficient expertise to be an expert witness at any rate.  Her testimony

regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

55.     Guo's own statements from the 2017-2018 time period show that he began his

career in, and continued to be part of, the Communist Chinese regime and wanted to continue to

bargain within it rather than cause its downfall.  Guo claimed in conversation with Gong in 2017

or 2018, and has also publicly claimed, that he was arrested for his support of the 1989

Tiananmen Square movement. Gong Tr., Ex. PP, 59:2-12.

**RESPONSE:**  As to the first sentence, denied.  Strategic has not cited any

admissible evidence in support of this contention in violation of Local Rule 56.1.  As to the

second sentence, objection, hearsay, but to the extent  response is required, admitted.  By way of

further response, Strategic seems to be attempting to put Ms. Gong forward as an expert

regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient

expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior

for Chinese dissidents is therefore inadmissible.

56.     But Guo also told Gong that, after a time in Hong Kong subsequent to Tiananmen

Square, he came back to Mainland China, where he built real estate, made many high-ranking

friends, and became one of the major players in the Chinese intelligence community. Gong Tr.,

Ex. PP, 61:24-62:9.

**RESPONSE:**  Objection. Hearsay. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

57.     Guo also told Gong that he was one of only three people who could visit Hu Jintao, the former general secretary of the CCP (and  immediate predecessor to Xi Jinping) without an appointment. Gong Tr., Ex. PP, 68:21-69:10. He used this access to do battle with the former Vice Mayor of Beijing by allying with Ma Jian, a senior official in the Chinese Ministry of State Security (the "MSS," or China's CIA).  *Id*., 64:21-68:6.  Guo admitted to Gong that he became very close friends with Ma Jian. *Id*., 66:10-67:8.

**RESPONSE:**  Objection. Foundation.  Hearsay. Relevance. Materiality.  Sasha Gong is without the foundation necessary to testify regarding these purported facts.  In addition, These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at

43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -

185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response,

Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese

dissidents, but she was never disclosed as such and does not have sufficient expertise to be an

expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese

dissidents is therefore inadmissible.

58.     Guo admitted to Gong that his close friend was Zhang Yue, who was known to

have played a major role in suppressing the democracy movement after Tiananmen Square,

although Guo never discussed this. Gong Tr., Ex. PP, 62:6-63:20. When questioned, Guo would

not provide Gong details on what Zhang Yue's function was. *Id.*, 64:10-20.

**RESPONSE:**  Objection. Foundation. Hearsay.  Relevance. Materiality.  Sasha

Gong is without the foundation necessary to testify regarding these purported facts.  In addition,

these alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the

CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible

evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a

Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at

43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -

185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response,

Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese

dissidents, but she was never disclosed as such and does not have sufficient expertise to be an

expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

59.     Guo admitted to Gong that he did other work for the MSS, including visiting the Dalai Lama, for which he supposedly received a medal. Gong Tr., Ex. PP, 70:17-71:4.

**RESPONSE:**  Objection. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

60.     In 2018, Guo admitted to Gong that he had participated in government meetings with senior CCP officials in Zhongnanhai. Gong Tr., Ex. PP, 216:7-25.

**RESPONSE:**  Objection. Hearsay. Relevance. Materiality.   These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6,

44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20. By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

61.     Guo claimed to Gong that he had left China because his patron, Ma Jian, the Deputy Minister of State Security, told him he would be caught up in the anti-corruption campaign. Gong Tr., Ex. PP, 74:22-75:17. Guo told Gertz that the MSS is not only responsible for repressing domestic political dissent, it is also responsible for monitoring and suppressing overseas activities that are deemed subversive of the CCP. Waller 2 Tr., Ex. ZZZ, 142:2-24.

**RESPONSE:**  Objection. Hearsay. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20. By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

62.     Guo admitted to Gong that, once in the U.S., he continued to make business deals. Gong Tr., Ex. PP, 75:18-76:2.

**RESPONSE:** Objection.. Hearsay.  Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, admitted.

63.     Guo admitted to Gong that he maintains connections with senior Chinese leaders. Gong Tr., Ex. PP, 131:12- 132:15.

**RESPONSE:**  Objection. Hearsay Relevance. Materiality.  Sasha Gong is without the foundation necessary to testify regarding these purported facts.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

64.     In 2017, Guo admitted to Gong that he believed Xi Jinping was a good leader, and his only goal was "to target the corrupt ones" in the CCP. Gong Tr., Ex. PP, 76:3-77:13.

**RESPONSE:**  Objection. Hearsay. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of this contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the

cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

65.     Gong's public interviewing of Guo, beginning April 17, 2017, coupled with China's issuance of an Interpol notice and purported complaints to Voice of America, lent him credibility he had not to that point enjoyed. Gong Tr., Ex. PP, 184:10-185:5.  In fact, during 2017, in the months before meeting with Strategic, Guo engaged in numerous communications with CCP officials in which he pledged loyalty to the CCP and, later, seemingly tried to bargain regarding the extent of his public communications. (*See* Facts 67 through 82, below)

**RESPONSE:**  Objection. Foundation. Authenticity.  Relevance. Materiality. Speculation. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of t contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 - 185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never disclosed as such and does not have sufficient expertise to be an

expert witness at any rate.  Her testimony regarding what is typical behavior for Chinese

dissidents is therefore inadmissible.

66.     In March 2017 (Video 1, published April 29, 2017), Guo reported in Mandarin to

an unknown listener that he is back in New York: "The operation is on now. I have absolute faith

in General Secretary Xi."  Gong Tr., Ex. PP, 159:16-162:18 (authenticating Guo's voice);

Lianchao Tr., Ex. BB, 74:9-80:16 (same, and also agreeing that Chinese transcription was

accurate); J. Ju Aff., Ex. BBBB, ¶¶ 1-8, 14 and Ex. B (referencing SVUS1314 (certified English

translation)). Guo next criticizes one reporter, Xi Nuo, because he "attack[s] our CCP leaders"

and "wrote a book about leaders' private affairs." *Id*. (J. Ju Aff.), ¶ 14, p.2, Ex. B (SVUS1315).

For this, he says, "these people must be punished"; indeed, "they are the modern traitors of the

Chinese nation" and "deserve to die." *Id.* Guo proposes his own plan of action: "Just wait and

see. I can take these bastards down and help our leaders to [get] revenge." *Id*. Guo concludes by

saying that he plans to "make some contributions and establish merit first" before going back to

China. *Id*. Guo claimed he "did not know" whether the recording was authentic. Dec. 4, 2019

"Guo 2" Tr., Ex. XX, 250:22-253:15.

**RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance.

Materiality.  Speculation. These alleged facts have no bearing on whether Mr. Guo is a Chinese

dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not

cited any admissible evidence in support of t contention in violation of Local Rule 56.1.  Mr.

Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.

Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-

102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-

67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

67.     On May 24 and 26, 2017, Guo hosted Liu Yanping, among other Politburo and
PRC officials, in his New York apartment (Ex. YY, https://www.wsj.com/articles/chinas-hunt-
for-guo-wengui-a-fugitive-businessman-kicks-off-manhattan-caper-worthy-of-spy-thriller-
1508717977) and cited by Guo as "publicly available information" supporting his theory at Dkt.
153, p. 5). The public has only the specific parts of those conversations that Guo chose to release
to the media (most notably, the Wall Street Journal) several months after the fact. Guo 2 Tr., Ex.
XX, 271:2-274:2; 275:15-276:23 (Guo made video recordings but can't recall where they are;
Guo doesn't know where video or audio recordings are but claimed to have posted all of them on
the internet). *Id*., 287:12-280:25 (authenticating video 8 as Guo's recording of a meeting with
Liu); *Id*., 282:23-286:23; 288:2-5 (authenticating video 9 as a recording of a May 24, 2017
meeting between Guo and Liu in his apartment); 288:15-24 (other recordings might exist, but
Guo made no search for them).

        **RESPONSE:** Objection. Foundation. Authenticity.  Relevance. Materiality.
These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the
CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible
evidence in support of t contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese
dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3,
49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han
Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-
94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

        68.     The recordings show that Guo was intertwined with the MSS and was not, as he
now claims, a private businessman who suffered abuse from high-ranking officials after
becoming a dissident. Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS001363:  1:30-2:00), with Liu

offering Guo the part of several properties "that is legal," and the state taking the part of other key properties because, as Guo says, "You are the actual controller. You can get back the assets that belong to you.").

**RESPONSE:** Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has not cited any admissible evidence in support of t contention in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 - 185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

69.     For several of his key assets, he actually shared control with the state or with senior leaders, or served as their proxy. Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS001363).

**RESPONSE:** Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has not cited any admissible evidence in support of t contention in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 - 185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

70.     Further demonstrating his connection to the MSS, Guo took credit for an apparent joint operation with the MSS and its Vice Minister Ma Jian. Ex. WW (J. Ju Aff.), ¶ 14, Ex. B

(SVUS1364-1365). Guo argued that his work was for the MSS and on behalf of the "nation," and that if anyone received "bribes," it was the nation. *Id*. (SVUS001369-70).

      **RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the record and therefore has not cited any admissible evidence in support of t contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

      71.    In the next recording (Video 9), perhaps occurring after the initial recording, Liu again talked with Guo. Liu also reported that Guo had said Ma Jian (a Vice Minister in the MSS) "worked for [Guo]," and repeatedly expressed the belief that Guo had already made unspecified "contributions to the country." Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS1378 at 3:30-4:00).

      **RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of t contention in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

72.     With respect to his family, Guo was willing to send his own wife and children back to China, "using" them in order to prove that the CCP is a "reliable party." Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS001388). Guo's relationship with Liu (*Id*., Ex. B, SVUS001397) and previous deals with Liu (*Id*., Ex. B, SVUS001396, agreeing by July 1 to say he did not oppose the Communist Party, and SVUS1399, talking only about certain officials (Secs. Meng and Wang)) yielded benefits for Guo. *Id*., Ex. B (SVUS1398-1399).

**RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

73.     After a long talk, Guo declared, "I strongly support President Xi."  Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS1425). Guo promised to wait until his own issues were resolved to make complaints against his supposed arch-nemesis Wang internally, within China, and even then, only after Liu gave him approval to "take measures as you like." *Id*., Ex. B (SVUS001426-1427). The two agreed that this was the patriotic path. *Id*.

**RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

74.     Shortly afterward, presumably following further discussions of this nature that may have been recorded, Guo signed a letter pledging loyalty to Chairman Xi. Ex. W (J. Ju Aff.), ¶ 14, Ex. B (SVUS001320-1330 recording of Mingjing "Mirror" TV—a Chinese-language Internet-streaming television outlet—interview in which Guo authenticates and attempts to explain the letter, dated August 26, 2017)) In the letter, addressed to "The Honorable Leader(s)" but intended for Xi Jinping and Meng Jianzhu, Guo refers to his previous meeting with Liu Yanping and makes the following statements:

    i.   "I understand and accept all of your directives and requirements leading to settling the matter." (p. 1)

    ii.  "In order to carry out your instruction better, I pray that you clarify what Wengui [is] not allowed to speak out and what Wengui [is] not permitted to do." (p. 1)

    iii. That his ability to live in the United States is based on certain "conditions," and that to act consistently with those conditions, "I am now doing things not out of my own volition and talking things that I do not really mean… My public exposures of information was done under coercion, my choice to perform publicity was not voluntary… This is the main reason why my family and I have received top class special protection and have been able to survive. As soon as I commit stop

revealing information in two months, such… agreement will definitely be rescinded… I will definitely have to try to leave this country…" (pp. 1-2)

iv. "You and I will have more convenient ways to communicate with each other when I am there in the U.K." (p. 2)

v. "Yet I still kept faith in you and in the organization so I did not cross the red line when I was forced to give out for interviews." (p. 2)

vi. Guo says it was a serious matter to "freeze several Hong Kong accounts" of one Qu Guojiao and asks that the accounts be unfrozen. (pp. 2-3).

vii. "I will put our national interest first and I am willing to devote my life to protecting our nation's interests, to defend Chairman Xi Jinping's value as our nation's Core Faith and make ultimate dedication of myself to safeguard Chairman Xi Jinping!" (p .3)

viii. "Can you consider to convert Wengui's influence and resources momentarily into best serving Chairman Xi Jinping's China Dream?" (p. 3)

ix. "Assign me tasks to accomplish in furtherance of our national interests initiative and engage in Chairman Xi Jinping's global strategy, so that I can redeem myself by my good service, demonstrating my patriotism and loyalty to Chairman Xi Jinping!" (p. 4)

Ex. WW (J. Ju Aff.), ¶ 14, Ex. B.

**RESPONSE:** Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

75.     Xi Jinping's "China Dream" is his program to make China the greatest country in

the world, which entails competition with the United States and undermining the United States.

Lianchao Tr., Ex. BB, 12:9-13:13.

**RESPONSE:**  Objection. Foundation. Authenticity.  Relevance. Materiality.

These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the

CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible

evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a

Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at

43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -

185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

76.     Qu Guojiao is the Chinese name of the person, Natasha Qu, Chunguang Han

claimed was a friend who had managed Eastern Profit's affairs in Hong Kong. Chunguang Tr.,

Ex. KK, 52:9-54:21.  Qu was named with Chunguang and Guo in the Hong Kong court order

freezing multiple accounts, including Eastern Profit, China Golden Spring, and a host of other

Guo entities. Dkt. 203-2.

**RESPONSE:**  Objection. Foundation. Authenticity.  Relevance. Materiality.

These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the

CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 - 185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

77.    On August 31, 2017, Guo was interviewed by Chen Xiaoping on Mirror Media (Mingjing in Mandarin), a Chinese-language media outlet in New York. Ex. ZZ (Dec. 12, 2019 Chen Aff.). The interview was livestreamed and is available on YouTube at https://www.youtube.com/watch?v=Mo3-1YvQBt4. The interview has been transcribed in Mandarin and translated into English at Ex. WW, J. Ju Aff., ¶ 14, Ex. B, p. 16 (SVUS 1320-1330). After being compelled to reappear for a second day of deposition, Guo identified himself and his interviewer in a still image of the video, but claimed he could not remember the interview. Guo 2 Tr., Ex. XX, 297:15-303:21. Lianchao, Guo's associate (discussed above), saw the video of the Mirror Media interview and, although he had not seen it before, authenticated Guo's voice. Lianchao Tr., Ex. BB, 99:6-118:7.

**RESPONSE:**  Objection. Foundation. Authenticity.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -

185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

78.     Lianchao was also shown the original text of a letter Guo claimed to have written, which was displayed on the broadcast in Chinese, and compared it to a certified translation by Chunguang Chen already filed in another of Guo's litigations. Lianchao Tr., Ex. BB, 99:6-118:7. Lianchao was asked to examine this translation, and although he disagreed with some of the translator's word choice, Lianchao's own suggested translations do not materially diverge from the certified translation. *Id*.

**RESPONSE:**  Objection. Foundation. Authenticity.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 - 185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

79.     In the August 31, 2017, Mirror Media interview with Chen, Guo tried to explain his letter. Guo revealed that he had other conversations, including with Vice Minister of the Department of Public Security Sun Lijun, in between the May meeting and August letter. Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS001327 (17:00-17:30)).

**RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

80.     Guo also told Chinese-language viewers that during his negotiations with Beijing,

certain of his entities' Hong Kong accounts were frozen—acts which he attributed to Beijing. Ex.

Ex. WW (J. Ju Aff.), ¶ 14, Ex. B (SVUS1328-1329). Guo also claimed to viewers that his intent

in writing the letter was to "help the country to realize freedom" and "democracy," even though

those concepts do not appear in his letter. *Id*., Ex. B (SVUS1329-1330).

**RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance.

Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that

opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

81.     Guo's Mirror Media interview was not the only time Guo has claimed that he has

not moved money from Hong Kong or the Mainland since he began speaking out as a dissident.

Ex. YY (W.S.J. "China's Pursuit of Fugitive Businessman Guo Wengui Kicks Off Manhattan

Caperworthy Spy Thriller). Through their shared counsel, Guo and GSNY represented to this

Court that Strategic "concedes" that "Mr. Guo… has been speaking out publicly against China

for several years and, as a result, his assets in both China and Hong Kong have been seized…"
Dkt. 136, p. 6. Likewise, Eastern has claimed that a Mainland crackdown on dissidents has
affected it and caused its only asset, in Hong Kong, to be frozen in June 2017. Dkt. 203
(underlining added, p. 2 ("The assets of Mr. Guo and Eastern Profit that have been frozen in
Hong Kong were frozen, not by the CCP or Mainland China, but by *the High Court of Hong
Kong*. *See* Exhibit B." Ex. B (pp. 3, 14, Respondent 16:  H.K. Ct. Order)).

      **RESPONSE:**  Objection. Hearsay.  Foundation. Authenticity.  Relevance.
Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that
opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any
admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is
in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.
at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14
-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,
83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

      82.     In fact, Guo has been able to openly direct and receive money for his U.S.
operations from ACA. Ex. M (Dkt 267-1) (Pltf. Interrogatory Response No. 4 (admitting that
Guo "ordered" ACA to wire $1 million to Strategic Vision on or about December 29, 2017,
although claiming this was "on behalf of" Eastern Profit)). (Under oath, Guo denied "ordering"
ACA's release of the funds or to know how Eastern came up with the $1 million deposit, directly
contradicting Eastern's sworn interrogatory response. Guo 1 Tr., Ex. AA, 182:13-183:6).

      **RESPONSE:**  Objection. Foundation. Relevance. Materiality.  These alleged
facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the
extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support

of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

83.    ACA is a Hong Kong entity controlled by a man named William Je. Wang 2 Tr., Ex. II, 46:22-47:14, 49:25-50:10, 53:19-54:3, 56:7-11, 57:5-9, 110:17-112:2; Dkt. 203-2.  Guo initially tried to characterize Je as a former "friend" (albeit one who had just spoken with him a few weeks before his first deposition) who had "worked together" with him "on anti-Chinese Communist Party." Guo 1 Tr., Ex. AA, 92:18-93:19. Guo later admitted that Je is a longtime friend, that Je manages ACA, that he sees Je several times a year, and that he had last seen Je in New York shortly before the deposition, in the fall of 2019. *Id*., 184:22-25, 184:15-21; Guo 2 Tr., Ex. XX, 317:20-22, 318:11-19.

**RESPONSE:**  Objection. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

84.    When Guo introduced William Je to Sasha Gong, Guo said, "He's the money man." Gong Tr., Ex. PP, 78:18-80:7. The occasion was a November 20, 2018 luncheon at Guo's

Sherry-Netherland apartment; Wang invited Gong on behalf of Guo, and Lianchao, Stephen K.

Bannon ("Bannon"), Gertz, William Je, and Guo all attended; Gong and Je spoke in Cantonese.

*Id*.

       **RESPONSE:**  Objection. Hearsay.  Foundation. Relevance. Materiality.  These

alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.

To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in

support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese

dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3,

49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han

Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-

94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  By way of further response, Strategic seems to be

attempting to put Ms. Gong forward as an expert regarding Chinese dissidents, but she was never

disclosed as such and does not have sufficient expertise to be an expert witness at any rate.  Her

testimony regarding what is typical behavior for Chinese dissidents is therefore inadmissible.

       85.    Four days later, at a lunch with Lianchao and Bannon, Gong expressed her doubts

to the two that Guo would pay the $100 million he had pledged to a new nonprofit entity, the

Rule of Law Foundation, that Guo had just announced at a joint press conference with Bannon in

New York City. Lianchao remarked, "William Je is quite [an] honest person, and ask him, he

may pay." Gong Tr., Ex. PP, 81:1-13.

       **RESPONSE:**  Objection. Hearsay.  Foundation. Relevance. Materiality.  Sasha

Gong is without the foundation necessary to testify regarding these purported facts.  These

alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.

To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in

support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

86.     Lianchao testified that Je manages Guo's money. Lianchao Tr., Ex. BB, 26:4-6. When Guo needed a letter of credit to purchase D.C. real estate in the fall of 2017, it was provided by Je. *Id*., 26:4-27:11. Lianchao testified that Guo "hired" Je, who had been at the Australian firm Macquarie Capital, to work at ACA. *Id*. In fact, Je had been the head of Greater China at the giant Australia-based financial services firm Macquarie Capital. *Id*.; Ex. LLL (LinkedIn, 1st entry under "Experience").

RESPONSE:  Objection. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

87.     Another Guo confidant who acted for him regarding the Research Agreement with Strategic also characterized ACA as owned by Guo: in a September 26, 2017 *Free Beacon*

article, Gertz referred to ACA as "Guo's company."  Ex. AAA (https://freebeacon.com/national-security/fbi-eyes-china-posting-hacked-documents-chinese-dissident/).

      **RESPONSE**:  Objection. Hearsay.  Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

      88.     Guo has recently admitted that ACA has paid him, although he claims it is through an alleged $7 million-per-year "consulting agreement" with China Golden Spring Group (Hong Kong), Ltd. ("China Golden Spring"), which Guo admits is "owned and operated by my family." Ex. NNNN, July 23, 2019, Aff. Guo Wengui, *Guo Wengui v. Hongkuan Li*, Case No. PWG 18-259 (U.S. Dist. Ct. D. Md.) Dkt No. 20-4 (Dkt. No. 197-1 in this case).

      **RESPONSE**:  Objection.  Immaterial.  Irrelevant.  To the extent an answer is required, admitted.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

      89.     This particular ACA-Golden Spring contract was allegedly in force from January 2017 to February 2018, when it was supposedly terminated by ACA. Ex. NNNN (G. Wengui

Aff., ¶ 2). Guo says that under the contract, he was paid because "I had the ability to make introductions to numerous business executives in China and Hong Kong":

> 2.      China Golden Spring Group (Hong Kong) Ltd. ("China Golden Spring"), a Hong Kong company owned and operated by my family, entered into a consulting agreement with ACA Investment Management Limited ("ACA") in January 2017 (the "Consulting Agreement"). ACA is an investment management company that manages capital for world renowned institutional investors. ACA's focus is on capital investment opportunities in Asia, especially in the greater China region. China Golden Spring was hired because of my reputation in the Asian business community; my knowledge and expertise of doing business throughout the world, but in particular China and Hong Kong; and because I had the ability to make introductions to numerous business executives in China and Hong Kong.

*Id.*

> **RESPONSE**: Objection. Immaterial. Irrelevant. To the extent an answer is required, admitted. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

90.      Further, Guo claims that ACA terminated the contract with China Golden Spring in February 2018 not because either he or William Je could no longer do business in China due to their supposed dissident status, but because of allegedly defamatory internet posts by U.S. resident Hongkuan Li, which accused Guo of "extreme and improper conduct." Ex. NNNN, p. 2. Indeed, Guo refuses to reveal the name of the ACA contact who told him of ACA's decision, claiming that it is that revelation that will cause the CCP to retaliate against ACA. *Id.* Guo's

admission reveals that ACA and Guo kept substantial business on the Mainland long after Guo says he became the regime's top enemy, had to flee, and had all of his assets seized. Not addressed by Guo in his declaration is how funds were transmitted from ACA to China Golden Spring or from China Golden Spring to him after the June 2017 freezing of the assets and bank accounts of over a dozen entities related to Guo, including China Golden Spring. *See* Dkt. 203-2.

**RESPONSE**: Objection. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the affidavit and has therefore not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

91.    In April 2018, two months after ACA allegedly terminated its contract with China Golden Spring, and three months after ACA wired $1 million to Strategic, ACA (supposedly at the direction of William Je) also wired $100,000 to Bill Gertz, who had introduced Strategic to Guo's network.  Gertz Tr., Ex. QQ, 31:5-17.

**RESPONSE**: Objection. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at

31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

92.     Gertz is a longtime *Washington Times* reporter and friend of Guo's (Gertz Tr., Ex. QQ, 72:13-73:11) who wrote a series of flattering articles about Guo to help establish his supposed bona fides in 2017 and 2018 as a "dissident."

RESPONSE: Denied. Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.

93.     At his deposition, Gertz admitted that he had actually undertaken very little investigation into Guo. Gertz Tr., Ex. QQ, 178:6-14 (Gertz has never asked Guo about his actual birth date or early years in China); 86:3-87:20 (never asked details about Chinese officials' visits to his Sherry-Netherland apartment in May 2018); 87:20-88:4 (has never heard of Guo's statements expressing absolute faith in General Secretary Xi).

RESPONSE:  Denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.

94.     Gertz testified that he approached Guo for $100,000 as an "advance" on Gertz's expected royalties from a book deal with a small publisher. Gertz Tr., Ex. QQ, 28:15-30:3.

RESPONSE: Admitted.

95.     Meanwhile, Gertz testified that Je "advanced" the $100,000 on the same terms that Gertz proposed to Guo. There was and is no interest or timetable for repayment. Gertz Tr., Ex. QQ, 34:1-18; 153:15-154:10; 155:18-156:4. There has been no discussion of whether the "advance" must be repaid at all. *Id.*, 156:5-13.

RESPONSE: Admitted.

96.     Gertz was dismissed from the *Washington Free Beacon* after it learned that Gertz had taken $100,000 from Je. Documents showed that the funds had come from ACA, which Je told Gertz was a "sovereign wealth fund." Gertz Tr., Ex. QQ, 146:16-147:15; 151:8-152:16.

    **RESPONSE:**  Objection. Hearsay.  Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

97.     In a September 29, 2017 *Free Beacon* article, Gertz freely identifies ACA as "Guo's company" and reports on a document indicating it had wired $1 million to Williams & Connolly, the law firm that reportedly took over Guo's asylum case. Ex. AAA (referenced in SOF 87).

    **RESPONSE**:  Objection. Hearsay. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

98.     Je and ACA were also involved in Strategic Vision's matter. Guo's shell entity, Eastern Profit, claimed that it intended to share the results of Strategic's confidential research with ACA and William Je. Wang 2 Tr., Ex. II, 45:22-46:25, 47:6-14.

        **RESPONSE**:  Objection. Hearsay. Relevance. Materiality.  At best these alleged facts go to the alter ego claim that was dismissed; they have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  Yvette Wang never testified to that effect.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

99.     William Je also advised Guo, along with a tight circle of other confidants to Guo consisting of Lianchao and Victor Cerda (Guo's immigration lawyer), on whether to sue Strategic for breach of contract. Lianchao Tr., Ex. BB, 23:17-25:9. Other Eastern witnesses claimed that Je was an arms-length creditor who had loaned Eastern the "deposit" for the contract. Wang 2 Tr., Ex. II, 35:2-39:8, Chunguang Tr., Ex. KK, 140:12-141:5. If Je truly was an arms-length creditor, he would have had an incentive for Guo to sue in order to protect the principal on his uncollateralized loan—yet Je warned Guo *not* to sue Strategic for the return of the $1 million. Lianchao Tr., Ex. BB, 23:17-25:9.

        **RESPONSE**:  Objection. Hearsay. Relevance. Materiality.  Speculative.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the cited testimony and

has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.
Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the
CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19,
100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16,
64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

100.    Aside from ACA's funding of Guo's activities during a time when Guo's Hong
Kong and Mainland assets were supposedly frozen due to his dissident status, Guo's and William
Je's operations have been inseparable. (*See* SOF 101, 104-05, below)

**RESPONSE**:  Objection. Hearsay. Foundation. Legal Conclusion. Relevance.
Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that
opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the
cited testimony and has therefore cited no evidence in support of these contentions in violation of
Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping
corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-
80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-
54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at
31:5-36:20.

101.    Hong Kong requires companies like ACA to have at least one natural person
director. Dkt. 197-4 (CAP 622 Companies Ordinance, § 454: "Private company required to have
at least one director.").  A new, 29-year-old employee of Guo's family office, GSNY, and recent
arrival in the U.S., met Je through her work at GSNY and was assigned by Je to be ACA's only
natural-person director in December 2018; she joined ACA the next month. Aug. 23, 2019 Karen
"Maistrello Tr.," Ex. CCC, 9:18-14:25. That person, Karin Maistrello, was told by Je that ACA

intended to search for U.S. investors for projects, and that she was intended to develop investors for these projects. *Id.*, 29:6-25. Over a seven-month period on the job, Maistrello never learned what ACA did or what her specific duties would be, undertook no actions whatsoever as a director, and had no communications with any other agent of ACA about ACA. *Id.*, 30:1-33:11. She met Je in person at least twice and her new directorship never came up. *Id.*, 47:15-22.

**RESPONSE**:  Objection. Hearsay.  Legal Conclusion. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied except admitted that Karin Maistrello was the director of ACA.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

102.    Maistrello abruptly resigned on July 25, 2019, and two months later at deposition (Ex. CCC), claimed she could not remember exactly why. The day before Maistrello resigned, Eastern had received notice from Strategic under Fed. R. Civ. P. 45 that Maistrello would be served with a subpoena for testimony and documents in her capacity as the sole natural-person director of ACA. Maistrello was tipped off by Daniel Podhaskie, the General Counsel of GSNY who also serves as Guo's attorney and spokesperson. Although her litigation counsel (also Guo's and GSNY's counsel) interposed privilege objections, Maistrello testified that Podhaskie approached her, told her she was being subpoenaed, and said "something about ACA" that caused her to resign her directorship. Maistrello Tr., Ex. CCC, 57:3-60:11,1 61:13-73:19.

**RESPONSE**: Objection. Hearsay.  Legal Conclusion.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied, except admitted that Maistrello resigned from her position as director of ACA on July 25, 2019.  Strategic mischaracterizes the cited testimony and has therefore cited no evidence in support of the remaining contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

103.    William Je replaced Maistrello with Chen Qiaoling, a woman living on the Mainland in the "P.R. China."  Dkt. 203-1 (Eastern Profit opposition to Strategic's motion to reopen discovery into ACA, attaching what Eastern represented was an Aug. 22, 2019 Hong Kong Change of Director form signed on July 26, 2019 by William Je on behalf of Celestial Tide Limited, the sole official owner of ACA).

104.    **RESPONSE**:  Objection.  Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, admitted.  Eastern further responds that Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

105.    At least two related ACA entities controlled entirely by Je in Hong Kong (ACA Capital Management Ltd. and ACA Financial) have twice shared the exact same office as (a)

Eastern Profit and (b) China Golden Spring (Hong Kong), which is owned and controlled by Guo's family and makes distributions to him. Coluccio Tr., Ex. OO, 186:15-19 (GSNY takes direction from Guo), 122:15-123:3 (GSNY is wholly owned by China Golden Spring), 171:2-172:13 (GSNY is Guo's family office), 186:15-19 (GSNY takes direction from Guo), 122:15-123:3 (GSNY is wholly owned by China Golden Spring); Guo 1 Tr., Ex. AA, 84:1-19 (discussing GSNY's relationship with the Guo family). China Golden Spring controls GSNY, and Wang, Guo's assistant and "President" of GSNY, claims to take direction from China Golden Spring. Wang 1 Tr., Ex. CC, 23:3-29:13, 18:14-20:21.

     a. The first of these two shared addresses is Suite 49F in the Bank of China Tower in Hong Kong; the second is the Guo family's multimillion-dollar waterfront residence. Exs. UUU (Eastern filings, at p. SVUS002171, showing Eastern's address already at Suite 49F at Bank of China Tower, and at p. SVUS002178, showing that Eastern shareholder who soon thereafter sold to Chunguang Han in 2014 was at 18 South Bay Road); Ex. EEE at p. 1 of the 2016 Annual Report (Eastern-000382), showing Eastern's address became 49F, Bank of China Tower; Ex. EEE, the 2017 Annual Report, showing Chunguang with an address of Suite 49F, Bank of China Tower (Eastern-000399), sold Eastern to Guo's daughter, Guo Mei (Eastern-000399), residing at 20 South Bay Road, in June 2017 Eastern-000399; EX. EEE, p. SVUS0002316, showing Eastern's address changing to 20 South Bay Road and at Ex. EEE, p. SVUS002308, showing Guo Mei still residing at 20 South Bay Road; Ex. DDD (ACA filings, at SVUS001601 and SVUS001610, showing that ACA Capital Group Limited's offices were at 49F, Bank of China Tower, from at least 2016-2018; and filings for ACA Hong Kong

Investment Holdings Group, Ltd., in the 2015 and 2016 filings, at pp. 1, 8, showing offices at 49F, Bank of China Tower, and Guo's son, Guo Qiang, residing at 20 South Bay); Ex. FFF (China Golden Spring Group (Hong Kong) filings, at p. 3 of Articles of Incorporation, showing sole shareholder in 2014 as Guo's son, Guo Qiang, at 20 South Bay Road; at p. 41 of Change of Address form, that address was changed to 49F, Bank of China Tower, on October 25, 2016; on p. 1 of 2017 Annual Report, that official address remained at 49F, Bank of China Tower; and on p. 4 of 2018 Annual Report, that although official address was changed, Guo Qiang's residential address remained 20 South Bay Road).

b. At least by October 6, 2017, Guo had publicly claimed that China operates its overseas spy network not simply out of state-owned buildings, but specifically *only* those owned by Bank of China as overseas bases of operation for China's spies. Ex. GGG ([https://www.rfa.org/english/news/china/spies-10062017115749.html](https://www.rfa.org/english/news/china/spies-10062017115749.html) (Radio Free Asia article reporting Washington, DC, press conference in which Guo made the claims)). Yet Guo's family office, his Eastern Profit shell company, and ACA are all listed as operating out of the Bank of China Tower in Hong Kong, long after he claimed his family members and employees were arrested en masse. See exhibits and pages cited in paragraph 104a.

c. Fiona Yu, who served as corporate secretary for both ACA entities, also served as the "Authorized Representative" for the U.S. LLC set up to hold Guo's Sherry Netherland apartment—just a month after ACA wired the $1 million to Strategic

Vision. Ex. HHH (SVUS002404-16, p. 8, filed 2-20-18 by Yu Fiona Ka Wing). *See also* SOF 28, 82, 12 above.

d. Two months later, William Je set up two New York entities based in an expensive residential space at 800 Fifth Avenue, Unit 21F. That is the same address shared by any number of Guo entities, including GSNY, Saraca Media Group (which uses the trade name Guo Media), and the Rule of Law non-profit entities. Exs. III, HHH, KKK (SVUS002436-39, SVUS002440-43, SVUS002425-29, signed by William Je)

e. Hodgson Russ, the same Buffalo law firm that incorporated William Je's entities in 2018 (Ex. KKK, SVUS002425-29, SV002323-26) and later submitted subsequent filings in 2019 (Ex. MM, SVUS002444-49), also filed the corporate paperwork for the Guo entities (Ex. IIII, SVUS0002436-39, SVUS002440-43). That firm represents Guo and GSNY in this case (although it has repeatedly denied that it represents ACA). Dkt. 158 ("On behalf of non-party Golden Spring (New York) Limited ("GSNY")…"), Dkt. 159 ("On behalf of non-party Guo Wengui ("Guo")...").

**RESPONSE**: Objection. Hearsay. Legal Conclusion. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has cited no admissible evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han

Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

106.    Guo and his associates volunteer that they put absolute faith in Je because he, like Guo, is a dissident. *See, e.g.*, Guo 1 Tr., Ex. AA, 92:18-93:8; Maistrello Tr., Ex. CCC, 27-29. Guo says he cannot remember how he and Je first met, but claims that William Je is such a well-known dissident, he receives daily phone call death threats, his mother was threatened by the Hong Kong police, his "people" were taken by the government, and Je had to be hospitalized because of the resulting stress. Guo 2 Tr., Ex. XX, 320:8-321:23.  However, Je maintains close ties to the Mainland and CCP, both through ACA's apparent ongoing activities there (SOF 28, 32, 83-84, 97, 12, 82, 28, above), and through his various offices as reported in various directories. *See* SOF 119, below.

**RESPONSE**:  Objection. Hearsay. Legal Conclusion. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the record and has cited no evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

107.    Before Je was hired by Guo to manage ACA, he held an important position at Macquarie Capital (Hong Kong) Co., Ltd., as "Chairman of the Greater China Capital Market," which included coverage of both Hong Kong and the Mainland. Ex. LLL (1st entry under "Experience").

71

**RESPONSE**: Objection. Hearsay. Foundation. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

108.    From at least January 19, 2015 through at least May 24, 2017, Je was a member of the Chongqing CPPCC (Chinese People's Political Consultative Conference), referring to the city of Chongqing. Ex. LLL (LinkedIn).

**RESPONSE**: Objection. Hearsay. Foundation. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

109.    According to the announcement accompanying the newest directory of CPPCC members, the CPPCC is China's top advisory body, and consists of either CCP members or non-CCP members who are nominated by the CCP and "had gone through meticulous examinations

in terms of their political stance, integrity of character and public image." Ex. MMM

(http://www.cppcc.gov.cn/zxww/2018/02/26/ARTI1519615396504299.shtml)

      **RESPONSE**: Objection. Hearsay. Foundation.Relevance. Materiality.  These

alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.

To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in

support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese

dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3,

49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han

Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-

94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

      110.     From at least May 20, 2013 (J. Ju Dec., Ex. BBBB, at Ex. C (SV002486), Ex. D

(SVUS002487-88), Ex. E (SVUS002489-96)), through the present (*Id.*, Ex. E (at SVUS002491,

photo), Je has been one of about 40 "members" of the Hong Kong Chongqing Friendship

Federation (HKQCFF).  J. Ju Dec., Ex. BBBB, Exs. C-E.  He has been listed prominently on the

front page of this group's website (J. Ju Dec., Ex. BBBB, Exs. C, D, E, (SVUS002491, photo), F

(SVUS0002500:  "Founded in 2008, the Chongqing Fed. H.K….", SVUS002501 ("Founding

Vice President:  … Yu Jianming…").  Je is listed as Vice President of the Federation.  J. Ju Dec.,

Ex. BBBB, Ex. F (SVUS002501).

      **RESPONSE**:  Objection. Hearsay. Foundation.. Relevance. Materiality.  These

alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.

To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in

support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese

dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3,

49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han

Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-

94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

111.    The HKQCKK "About" page includes the following text (originally in Chinese)

(emphasis added):

> This association was established in 2008 and is one of the influential patriotic
> groups in Hong Kong. Since its inception, the Association has been adhering to
> the tenet of "Serving the Country, Serving Hong Kong, Serving Chongqing, and
> Serving Committee Members." It has united the people of Chongqing
> Municipality in Hong Kong, the members of the Chongqing Municipal
> Committee of the CPPCC.

J. Ju Dec., Ex. BBBB, at Ex. C (translating http://www.hkcqff.org/sh/about.php).

**RESPONSE**:  Objection. Hearsay. Foundation.  Relevance. Materiality.  These

alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.

To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in

support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese

dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3,

49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han

Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-

94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

112.    Hong Kong "Patriotic Groups" are supported or sponsored by the Chinese

government or the Communist Party. Ex. NNN (underlining added) (China's *Global Times* Aug.

9, 2019:  "As Hong Kong's patriotic groups bravely stands out with the support of central

government, conspiracy will be smashed, turmoil will be ended and rioters will be punished by

law."); Ex. OOO (Andrew Higgins, *New York Times*, "From the Shadows, China's Communist

Party Mobilizes Against Protests":  "Many nominally independent "patriotic" groups in Hong

Kong, for instance, are regarded with suspicion and thought of as front organizations that take orders from Beijing."); Ex. PPP (Chinadaily.com.cn ("Finally, the patriotic groups who love Hong Kong should act to nip the violence in the bud.") (underlining added).

        **RESPONSE**:  Objection. Hearsay. Foundation. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

        113.    It cannot be disputed that the political situation in Hong Kong involves support or outright sponsorship of "Patriotic Groups" by the Chinese government or the Communist Party. Ex. CCCC (https://www.reuters.com/article/us-hongkong-politics/hong-kong-leader-demands-end-of-independence-talk-warns-ties-with-beijing-at-risk-idUSKCN1BU0GY); Ex. PPP (http://www.chinadaily.com.cn/hkedition/2019-08/09/content_37500135.htm); Ex. DDDD (https://qz.com/883640/beijing-wants-to-crush-youth-activists-in-taiwan-and-hong-kong-trying-to-band-together/); Ex. NNN (http://www.globaltimes.cn/content/1160904.shtml); Ex. EEEE (https://www.scmp.com/news/hong-kong/education-community/article/1829077/police-use-pepper-spray-hong-kong-protesters).

        **RESPONSE**:  Objection. Hearsay. Foundation. Legal Conclusion. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

114.    Guo's media and social media operation also has close ties to the Mainland, with

many administrators for his websites and social media accounts actually having operated from

the Mainland. *See* SOFs 115, 119-20 below.

RESPONSE:  Objection. Hearsay. Foundation. Legal Conclusion. Relevance.

Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that

opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

115.    Guo insisted that none of the Mandarin translators from Team I (the first research

team hired by Strategic Vision in January 2018) should be Chinese nationals or live in China,

purportedly for concern that they might be CCP agents. Waller 1 Tr., Ex. Z, 85:13-86:23. Gong,

herself a dissident, testified that it would be unusual and unsafe for U.S. dissidents to have

contact over open phone lines with the Mainland.  Gong Tr., Ex. PP, 159:1-9.

**RESPONSE:**  As to the first sentence, admitted.  As to the second sentence. Objection, relevance and improper lay opinion.  Sasha Gong does not have the foundation, knowledge, or expertise to testify as to what activities are unusual or unsafe for a dissident to undertake.  To the extent an answer is required, denied.  Strategic has failed to cite to any admissible evidence in support of that contention in violation of Local Rule 56.1.

116.   Now, Guo's primary vehicle for spreading his message and for extending his political influence (such as by hiring Bannon), Saraca Media Group (a Delaware corporation d/b/a Guo Media), appears to have administrators in Mainland China. *See* below at SOFs 123, 115-16, 120-21.

**RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo does not control Guo Media.  Guo I Tr. at 219.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

117.   Guo Media is Guo's primary media platform. Gertz Tr., Ex. QQ, 163:6-18, 163:20-21 (Guo Media is the platform for Guo to get his message out); Lianchao Tr., Ex. BB, 133:22-134:7 (Guo Media is Guo's media platform); Gong Tr., Ex. PP, 109:15-20 (Guo Media is Guo's personal social media platform).

**RESPONSE**: Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo does not control Guo Media.  Guo I Tr. at 219.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

118.    Chunguang Han (Chunguang, described above), the man who acts as Guo's own personal servant (Lianchao Tr., Ex. BB, 36:17-37:6) and who is also claimed to be the "principal" of Eastern, another shell company controlled by Guo's daughter, holds himself out as the president of Saraca. Ex. MM (SVUS0002444-49, 2445). Maistrello, an employee of Guo's entity, GSNY (Lianchao Tr., Ex. BB, 252:11-253:9), and a former director of ACA, also works as an assistant for Guo Media. Gertz Tr., Ex. QQ, 172:15-20. Guo Media is set up in the same 6-story residential apartment as Guo's office. Gong Tr., Ex. PP, 119:6-120:25.

**RESPONSE**: Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied, except admitted that Saraca Media Group's organizational documents state that Chunguang Han is the President of Saraca Media Group.  Strategic has not cited any admissible evidence in support of any other of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5,

68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  Chunguang Han was not Mr. Guo's cook, bodyguard, or errand boy.  C. Han Tr. at 152.

119.    Guo Media's "news" page, G News (https://gnews.org/), includes tabs for commentary and YouTube videos by two individuals: Guo himself and Bannon.  It includes banners soliciting charitable contributions to the Rule of Law Society and Rule of Law Foundation, two entities controlled by Guo, and also includes screenshots from the videotaped testimony of French Wallop and Michael Waller made in this case, as well as purported summaries of later testimony and document productions that were made only to Eastern Profit.  Ex. QQQ (https://gnews.org/ ("The True Story Behind Strategic Vision US, LLC," posted December 10, 2019).

        **RESPONSE**:  Denied as stated.  The news page contains numerous articles, videos, and commentary speaking out against corruption within the CCP.  *See generally* https://gnews.org/  For example, the news page contains a 4/22/2020 article entitled "CCP authorizes open killing of pro-democracy activists in Hong Kong" and another 4/22/2020 article entitled "CCP's 'new world media order' erodes Hong Kong's press freedom."  This website supports the fact that Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  *See also* Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

120.    Guo's spokesperson and attorney, Daniel Podkhaskie, admits in a widely-circulated Axios report that Bannon was hired to work for Guo Media and to assist G News for at least $1 million per year, but denied that Guo "has a financial stake in" Saraca. Ex. RRR (https://www.axios.com/steve-bannon-contract-chinese-billionaire-guo-media-fa6bc244-6d7a-4a53-9f03-1296d4fae5aa.html). *See also* Dkt. 216 (letter of Bannon counsel to the Court opposing motion to extend discovery to depose Bannon, but admitting to Bannon's "collaboration" with Guo (p.2) and "professional connection to Mr. Guo" (p.7)).

        **RESPONSE**:  Admitted.

121.    Guo Media's domain (guo.media) was registered and is controlled by the same tight circle of staff in New York and Hong Kong (as well as one person in Mainland China) who also set up the domains for the Rule of Law Foundation (rolfoundation.org and ruleoflawfoundation.info); Golden Spring Group (goldenspringgroup.com); Saraca Media Group (saracamedia.com); Rule of Law Society (rolsociety.org). *See* SOFs 121-24 below. Both of the Rule of Law entities were formed by Guo: the Rule of Law Society, an IRC Section 501(c)(4) entity of which Bannon is Chairman, and the Rule of Law Foundation, an IRC Section 501(c)(3) entity. Gong Tr., Ex. PP, 23:7-24:15. Both shared an office in a 6-story Upper East Side building with Guo Media and Guo himself. *Id*., 119:6-121:3. Maistrello, one of Guo's GSNY employees, is also President of the Rule of Law of Society. *Id*., 126:18-127:5.

        **RESPONSE**:  Objection. Hearsay. Foundation. Legal conclusion.  Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the

CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

122.    Saraca Media Group's domain, saracamedia.com, was registered October 4, 2019, in Guangxi Provice, Mainland China. Saraca Media Group, in turn, is associated with the "Shopper ID," or customer ID, of 171683657 for several other Guo-related domains. The natural person associated with Saraca and the Shopper ID is Stephanie Marin at her GSNY email address (stephaniem@gsnyus.com) and the current street address of GSNY, which is 162 E. 64th Street, NY, NY. Ms. Marin's Saraca/GSNY coworker, Raj Dhingra (rajd@gsnyus.com) was the billing and shipping contact for ruleoflawfoundation.info and rolsociety.org at the prior business address of Saraca and GSNY, 800 Fifth Avenue, Suite 21F, NY, NY, as was Ms. Marin's colleague Max Krasner. Dhingra was actually the registrant and administrative contact for both domains from 2018 through at least January 24, 2019, when both were transitioned to an intermediary masking company, "Domains by Proxy." Again, the same Shopper ID, including Stephanie Marin at Saraca Media through her GSNY email and physical business address, is also tied to Guo Media's domain, guo.media, created November 12, 2017; rolfoundation.org, created Jan. 22, 2019, by Dhingra at Saraca/GSNY; and goldenspringgroup.com, created Dec. 4, 2019 and with billing to Donald Chan in Hong Kong with a Hong Kong phone number and the address donaldchan@goldenspringgroup.com.

**RESPONSE**:  Objection. Hearsay. Foundation. Legal conclusion.  Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.

Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

123.    The use of the same set of individuals in Hong Kong and New York to run the Guo network's accounts is consistent with Yvette Wang's testimony that as President of GSNY, she takes direction from China Golden Spring Group, Hong Kong Ltd. But Eastern Profit claims that its assets were frozen by the Hong Kong High Court as of June 2017, and the order it admits is evidence of the seizure (Dkt. 203-2, p. 3, listing Eastern Profit) also lists frozen assets for several other Guo entities. These include China Golden Spring Group (Hong Kong) Limited (*Id*., pp. 4, 16, "Respondent 22"), the entity that Yvette Wang says gave her direction on the Strategic contract (Wang 1 Tr., Ex. CC, 20:6-14) and that employed Donald Chan, who was the billing contact on the GoldenSpringGroup.com domain registered through GoDaddy in 2019. They also include Rosy Acme Ventures Limited (Dkt. 203-2, pp. 4 and 16, "Respondent 23"), an entity which Guo admitted in an interview was being used to pay his employees through China Construction Bank. Ex. WW (J. Ju Aff., Recording 4 (pp. 24-25, Guo at 19:30-20:30 claiming that he asked CCP officials to resolve his Hong Kong "thing," that they had frozen his Hong Kong assets, and that a China Construction Bank account with $8M HK used to pay staff "salary" was frozen, which can only refer to the Rosy Acme account with $8.6M HK purportedly frozen)). Thus, Guo has claimed not only that his Hong Kong assets were frozen by the CCP, but that his operations have been shut down there.

**RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that

opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

124.    Yet Guo Media's Cloudflare account shows that programmers physically based in the Mainland have open access to its name servers, which direct end Internet users who enter one of Guo's domain names to the computer servers hosting the corresponding Guo-controlled website.  The Cloudflare account was created by someone based in Hong Kong on November 19, 2017 who was working for China Golden Spring Group (likely Donald Chan, or Chan Ka On; *see* Basic Billing Info Excel spreadsheet, Ex. FFFF, showing Chan; his IP address, and his Hong Kong address; see also Billing Profile Details sheet, Ex. GGGG, (p. 2), showing Chan's Hong Kong physical address and his email itadman@goldenspringgroup.com, as well as the IP address he used on Nov. 19, 2017), which was Guo's family office (SOF 22 above), and whose assets were supposedly frozen along with Eastern Profit's in an "anti-dissident" crackdown no later than June 2017 (SOF 122 above).  Second, Cloudflare continued sending its invoices to China Golden Spring's Hong Kong office, at Bank of China Tower, 49F, 1 Garden Road, for most of 2018, long after China Golden Spring's assets were allegedly frozen; then sent the same invoices to Golden Spring (New York) at 800 Fifth Avenue, 21F, New York, New York and then to Saraca Media Group (which also managed the domain for the Rule of Law Foundation starting in Feb. 2019) at exactly the same address. *See* Ex. HHHH, Billing Statement in Combined Files Doc; pages 1-9 on Hong Kong; 10-16 on GSNY; 17-20 on Saraca. Cloudflare's records show

that at least four administrators accessing the name servers for the various Guo-affiliated

domains did so using IP addresses that were physically based in Hong Kong, and another three

administrators used IPs based inside Mainland China. *See* Ex. IIII, Excerpts of Cloudflare Audit

Log for Guo.Media (paired with Whois IP Address Location Reports for the following

Guo.Media users: (User 11240210, used IP Address 43.225.106.61 on 11/8/18, in Hong Kong;

User 8468394 (Chan), used the following IP Addresses on the following dates, IP 61.93.141 on

11/19/2017 in Hong Kong, IP 45.112.205.91 on 1/31/2018 from Hong Kong, and IP

59.149.73.54 on 2/8/2018 in Hong Kong; User 11298209, used IP 123.146.04 on 11/14/2018

from Mainland China; User 9040756 used IP 223.197.179.236 on 2/11/2018 in Hong Kong; and

User 10508322 used IP 120.230.160.99 on 10/27/2019 from Mainland China.)

    **RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance.

Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that

opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any

admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is

in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.

at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,

83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.  Strategic also violated Magistrate

Judge Freeman's January 16, 2020 transcript ruling, in which Judge Freeman ruled that Strategic

was not entitled to obtain information from Cloudflare regarding the "from where . . .

administrators are accessing the account."  This information should accordingly be excluded by

the Court.  January 16, 2020 Hearing Tr. at 36.

125.     A similar pattern emerges with respect to Guo's various social media accounts on YouTube. Guo's four Voice of Guo Media channels, Guo's own official "Guo Wengui" channel, and one for the Rule of Law Foundation—are linked to from each other's official YouTube "home" page, presenting them to the public as one cohesive, intertwined network.  *See* Voice of Guo YouTube English channel, linking to Guo Wengui, Rule of Law Foundation, and three related Voice of Guo channels:

https://www.youtube.com/channel/UCbujLoHxA16TveAXWGx2xSg. Ex. JJJJ. Discovery produced by Google about the IT administrators who manage and update five of those channels (this excludes Guo's own "official site"—for which YouTube did not produce a list of "owners" or managers) reflects a backend technical team that is every bit as interconnected: each of the accounts, four Voice of Guo and one Rule of Law Foundation, shares administrators in common with at least two other channels. *See* Ex. KKKK (Compilation of Google Account Manager Identities for the following five channels: Voice of Guo English Channel, English-channel-2289; Voice of Guo Media Channel 1, guo-you-zhi-she-7603; Rule of Law Foundation Channel, rolfoundation-f-7672; Voice of Guo Media Channel 2, zhan-you-zhi-sh-2451; and Voice of Guo Media Channel 3, zhan-you-zhi-sh-7983). Further, Voice of Guo YouTube Channels 1-3 have administrators with direct links to Mainland China that existed *after* Guo launched his "dissident" persona in January 2017, and administrators for the other two channels work alongside the Mainland-based administrators in their capacity as "managers" for one or more of the other three YouTube channels.  *See* Ex. PPPP.  First, all three Voice of Guo Media YouTube accounts (Channels 1-3, as noted in the last citation) were set up with the "manager" as the Gmail address of 654505105@gmail.com; that Gmail address was itself set up on August 21, 2018—long after Guo claimed to be a dissident and to have had his Mainland/Hong Kong

operations shuttered—**using a "recovery email" address that is Chinese**: 654505105@qq.com,
**and a recovery phone number that is also Chinese**: 8613422475313. Second, yet another
Voice of Guo Media account manager (for Channel 2, noted in the last citation) set up the Gmail
address yanzhonghuashu1974@gmail.com on March 3, 2018, again, using a "recovery email
address **that is Chinese**: 550369674@qq.com. On Voice of Guo Media YouTube Channels 2
and 3, alternate emails for the July 9, 2015 (after Guo left China) nangongsnow@gmail address
for manager "Snow Nangong" **are both Chinese**: 88951176@qq.com and 303014030@qq.com.
Finally, a manager for Voice of Guo Channel 1 set up xiaoxiyou1@gmail.com on August 11,
2018, using a recovery number, 8618918215947, **that, again is Chinese**. *See* Ex. QQQQ.

    **RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance.
Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that
opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any
admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is
in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr.
at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14
-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8,
83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

   126. Using the credibility lent to him by well-known individuals such as Gertz,
Lianchao Han, Bannon, Guo has disrupted the China Hawk community in the United States by
attacking and attempting to silence independent dissident voices (Gong Tr., Ex. PP, 142:24-
145:16), as well as others in the policy community who feel that the United States should take
the threat of China seriously.  *See, e.g.,* Ex. QQQ (https://gnews.org/ (page 1, linking to one story
attacking Waller and his employer (the Center for Security Policy) a conservative institute

focused on the China threat; and another story attacking a Chinese pastor and dissident based in Texas).

   **RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

  127. The Committee on the Present Danger: China, is a group concerned with the China threat of which Bannon and Gong were founding members, and of which J. Michael Waller is also a member. Gong Tr., Ex. PP, 132:23-133:14. Members of the CPDC expressed concern to Gong about Guo, and in response, Gong tried to share her concerns with Bannon about Guo, including but not limited to the sources of the funds he attempts to deploy in the U.S. and his pattern of litigation in the U.S. *Id*., 134:2-138:11. Bannon did not want to discuss those concerns. *Id*., 138:9-19.

   **RESPONSE**:  Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14

-185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

128.    Further, Guo is somehow able to obtain and publicly disclose party discovery in this case, as shown above in SOF 54 (Gong getting file from Guo) and Ex. QQQ (G News posting screenshots of video depositions from the case, and sharing discovery disclosed only to Eastern Profit). Using that information, Guo has even deployed Bannon to threaten other members of the China Hawk community. After Waller gave his first deposition, Bannon told Waller's superiors at the Center for Security Policy that he (Bannon) had read the transcript, and that Waller should be dismissed from the Committee on the Present Danger: China. Ex. OOOO (Waller Dec.), ¶¶ 1-3.

RESPONSE:  Objection. Hearsay. Foundation. Authenticity. Relevance. Materiality.  These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP.  To the extent, an answer is required, denied.  Strategic mischaracterizes the testimony it cites, and it has not cited any admissible evidence in support of its contentions in violation of Local Rule 56.1.  Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP.  Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

129.    Meanwhile, Guo attempts to gain credibility by attacking corruption within the CCP, but even when questioned by friends for his own specific knowledge that could be useful to the United States, he has been unable to provide details. Gong Tr., Ex. PP, 180:8-25, 182:15-183:16.

**RESPONSE**: Objection. Hearsay. Foundation. Relevance. Materiality. These alleged facts have no bearing on whether Mr. Guo is a Chinese dissident that opposes the CCP. To the extent, an answer is required, denied. Strategic has not cited any admissible evidence in support of these contentions in violation of Local Rule 56.1. Mr. Guo is in fact a Chinese dissident devoted to the cause of stopping corruption within the CCP. Gertz Tr. at 43:14-44:3, 49:3-53:3, 66:15-67:5, 68:17-71:8, 75:11-80:2, 84:1-87:19, 100:20-102:2, 182:14 -185:3; L. Han Tr. at 31:6-36:6, 44:17-47:9, 52:18-54:16, 60:17-61:16, 64:15-67:3, 69:5-74:8, 83:9-84:1, 93:7-94:9, 256:5-257:15; Guo I Tr. at 31:5-36:20.

130.    Guo and Eastern Profit never did hire another entity to provide research on corruption, and refuse to explain why they have made no apparent efforts to release the assets they claim were seized. Chunguang Tr., Ex. KK, 91:3-9, 78:17-23; Lianchao Tr., Ex. BB, 237:10-238:6; Wang 2 Tr., Ex. II, 195:21-196:7. The most logical conclusion is that they never intended to actually use Strategic's research to attack the regime and bring the "rule of law" and democracy to China.

**RESPONSE**: Objection. Speculative. Immaterial to any legal or factual issue involved in this case. To the extent an answer is required, denied. Strategic did not cite to any evidence in support of this contention in violation of Local Rule 56.1. As it has admitted in this litigation, Strategic has not performed under the Research Agreement Dkt. No. 273 at 90-98 ¶¶ 106-116, and Strategic's contention that Mr. Guo needed Strategic to agree to the project and could not have retained another investigative firm is inconsistent with Strategic's own testimony that Mr. Guo was in fact able to hire another investigative firm. *See e.g.*, Waller I Tr. at 188:12-189:5, 220:19- 222:12.

## ADDITIONAL FACTS

In addition to the facts set out in each of the foregoing responses, Eastern hereby incorporates each and every factual averment set forth in the Local Rule 56.1 Statement that it submitted in connect with its Motion for Summary Judgment as if set forth fully and completely herein, *see* Dkt. No. 262, as well as each and every response to Strategic's prior Local Rule 56.1 Statement, *see* Dkt. No. 270.

Dated:  April 27, 2020

<table>
<tr><td></td><td>Respectfully submitted,</td></tr>
<tr><td></td><td><em>/s/ Francis J. Lawall</em></td></tr>
<tr><td>OF COUNSEL:</td><td>Francis J. Lawall (NY Bar ID No. FL1234)<br>PEPPER HAMILTON LLP</td></tr>
<tr><td>Joanna J. Cline (<em>Pro Hac Vice</em>)<br>Christopher B. Chuff (<em>Pro Hac Vice</em>)<br>PEPPER HAMILTON LLP<br>1313 North Market Streets, Suite 5100<br>Wilmington, DE 19801<br>302.777.6500<br>302.421.8390 (facsimile)</td><td>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103<br>215.981.4000<br>215.981.4750 (facsimile)</td></tr>
</table>

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of April 2020, a true and correct copy of the

foregoing *Plaintiff's Response to Defendant's Local Rule 56.1 Statement* was filed electronically.

Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing

system.

Dated:  April 6, 2020

Respectfully submitted,

*/s/ Francis J. Lawall*

OF COUNSEL:

Francis J. Lawall (NY Bar ID No. FL1234)
PEPPER HAMILTON LLP

Joanna J. Cline (Admitted *Pro Hac Vice*)
Christopher B. Chuff (Admitted *Pro Hac Vice*)
PEPPER HAMILTON LLP
1313 North Market Streets, Suite 5100
Wilmington, DE  19801
302.777.6500
302.421.8390 (facsimile)

3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
215.981.4000
215.981.4750 (facsimile)