**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| **EASTERN PROFIT CORPORATION LIMITED,** | ) | |
| | ) | |
| Eastern/Counterclaim Defendant, | ) | |
| | ) | **Case No. 18-cv-2185 (LJL)** |
| v. | ) | |
| | ) | |
| **STRATEGIC VISION US, LLC,** | ) | |
| | ) | |
| Defendant/Counterclaim Eastern. | ) | |

**DEFENDANT'S REPLY LEGAL MEMORANDUM IN SUPPORT OF ITS MOTION FOR**
**SUMMARY JUDGMENT, DKT. 265-66**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................................ iv

INTRODUCTION .....................................................................................................1

SUMMARY OF MATERIAL FACTS THAT REMAIN UNDISPUTED .....................1

    A.    Eastern never conferred a benefit on Strategic (disposing of Counts I and IV), and never incurred expenses in reliance on the contract after it was executed (which also disposes of Count I). ...............................................................1

    B.    Eastern frustrated Strategic's performance by failing to replace the first 15 subjects in early February 2018, when Strategic reported that research was impossible because those names were records-protected ............................2

    C.    Eastern's fraud claim should be dismissed because it admitted Strategic never misrepresented its qualifications: the alleged misrepresentations weren't collateral to the contract; and Eastern never identified special damages ...........3

ARGUMENT .............................................................................................................3

    I.    EASTERN'S BREACH OF CONTRACT CLAIMS ......................................3

        A.    Eastern Has No Recoverable Damages, Under Restitution or Reliance ................................................................3

            1.    Eastern cannot receive restitution of a benefit it never conferred ..............................................................4

            2.    Eastern has no reliance damages because it cannot recover expenses incurred *before* the  contract was executed, nor can it recover ACA's  third-party investment ......................6

        B.    Strategic's Defense of Frustrated Performance Can Be Resolved on Summary Judgment ....................................................10

    II.    EASTERN'S COUNT II (FRAUD) CLAIM FAILS ...................................11

        A.    Eastern's fraud claim is not collateral to the contract ...................11

        B.    Eastern's failure to allege any special damages requires dismissal ....13

        C.    Eastern has not controverted Strategic's facts that no representations were actually made or relied upon ...............................................14

III.    EASTERN'S COUNT IV (UNJUST ENRICHMENT) FAILS .................... 14

IV.    EASTERN WAS REQUIRED TO REGISTER IN NEW YORK ................ 15

CONCLUSION .................................................................................................... 15

# TABLE OF AUTHORITIES

CASES                                                                                      Page(s)

*24/7 Records, Inc. v. Sony Music Entm't. Inc.,*
    566 F. Supp. 2d 305 (S.D.N.Y. 2008) .......................................................................... 9

*AES New Creek, LLC v. Exergy Development Grp. Of Idaho, LLC,*
    2014 WL 12597906 (D. Idaho 2014) .......................................................................... 10

*American Capital Corp. v. F.D.I.C.,*
    472 F. 3d 859 (Fed. Cir. 2006) .......................................................................... 6

*Autotrol Corp. v. Cont'l Water Sys. Corp.,*
    918 F.2d 689 (7th Cir. 1990) .......................................................................... 8

*Bank of America, FSB v. U.S.,*
    67 Fed, Cl. 577 (Fed. Cl. 2005) .......................................................................... 9

*Bausch & Lomb, Inc. v. Bressler,*
    977 F. 3d 720 (2d Cir. 1995) .......................................................................... 4

*Boule v. Hutton,*
    138 F. Supp. 2d 491 (S.D.N.Y. 2001) .......................................................................... 5

*Chicago Coliseum Club v. Dempsey,*
    1932 WL 2782 (Ill. App. Ct. 1932) .......................................................................... 8

*Curran v. Smith,*
    149 F. 945 (3d Cir. 1906) .......................................................................... 8

*Dealtime.com Ltd. v McNulty,*
    123 F. Supp. 2d 750 (S.D.N.Y. 2000) .......................................................................... 13

*Design Strategy, Inc. v. Davis,*
    469 F.3d 284 (2d. Cir. 2006) .......................................................................... 6

*DPJ Co. Ltd. Partnership v. F.D.I.C.,*
    30 F.3d 247 (1st Cir. 1994) .......................................................................... 8

*Drysdale v. Woerth,*
    153 F. Supp. 2d 678 (E.D. Pa. 2001) .......................................................................... 8

*EDO Corp. v. Beech Aircraft Corp.,*
    911 F.2d. 1447 (10th Cir. 1990) .......................................................................... 10

*Elvin Associates v. Franklin,*
    735 F. Supp. 1177 (S.D.N.Y. 1990) .................................................. 8

*Energy Capital Corp. v. United States,*
    47 Fed. Cl. 382 (Fed. Cl. 2000) .................................................. 7, 8

*In re Enron Corp.,*
    No. 04 CIV. 1367 (NRB), 2005 WL 356985 (S.D.N.Y. Feb. 15, 2005) ................. 12

*ESBE Holdings v. Vanquish Acquisition Partners, LLC,*
    858 N.Y.S.2d 94 (N.Y.A.D. 1 Dept. 2008) .................................................. 12

*Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York,*
    375 F. 3d 168 (2d Cir. 2004) .................................................. 14

*Farash v. Sykes Datatronics, Inc.,*
    59 N.Y. 2d 500 (1983) .................................................. 4

*First Bank of America v. Motor Car Funding, Inc.,*
    257 A.D. 2d 287 (1st Dep't 1999) .................................................. 12

*GeoMetWatch Corp. v. Hall,*
    2019 WL 3937023 (D. Utah, 2019) .................................................. 7

*Gerosa v. Savasta 7 Co.,*
    329 F.3d 317 (2d Cir. 2003) .................................................. 4

*Giftime, Inc. v. KWI 1901 Newport Plaza,*
    2011 WL 6400626 (Cal. App. Dec. 21, 2011) .................................................. 9

*Gruber v. S-M News Co.,*
    126 F. Supp. 442 (S.D.N.Y. 1954) .................................................. 6

*Harris Corp. v. Giesting & Assocs., Inc.,*
    297 F.3d. 1270 (11th Cir. 2002) .................................................. 10

*Hollywood Fantasy Corp. v. Gabor,*
    151 F.3d. 203 (5th Cir. 1998) .................................................. 8

*Hough v. Jay-Dee Realty & Inv., Inc.,*
    401 S.W.2d 545 (Mo. App. 1966) .................................................. 8

*Interactive Graphics Corp. v. T+Ink, Inc.,*
    2017 NY Slip Op 30796(U) (N.Y. Sup. Ct. 2017) .................................................. 15

*International Cabletel Inc. v. Le Groupe Videotron Ltee,*
      978 F. Supp. 483 (S.D.N.Y. 1997) ........................................................... 11

*J.E. Morgan Knitting Mills v. Reeves Bros. Inc.,*
      243 A.D. 2d 422 (1st Dep't 1997) ....................................................... 11, 14

*J.E. Morgan Knitting Mills v. Reeves Bros. Inc.,*
      663 N.Y.S.2d 211 (N.Y.A.D. 1 Dept. 1997) ........................................... 12

*Linea Nuova S.A. v. Slowchowsky,*
      62 A.D. 3d 473 (1st Dep't 2009) ............................................................ 13

*Linea Nuova, S.A. v Slowchowsky,*
      877 N.Y.S.2d 891 (N.Y.A.D. 1 Dept. 2009) ........................................... 12

*LNC Invs., Inc. v. First Fidelity Bank, N.A. New Jersey,*
      173 F.3d 454 (2d Cir. 1999) .................................................................... 4

*McKinley Allsopp, Inc. v. Jetborne Intern., Inc.,*
      1990 WL 138959 (S.D.N.Y. 1990) .......................................................... 8

*Multibank 2009-1 Res-ADC Venture, LLC v. Pinecrest at Neskowin, LLC,*
      2013 WL 1500693 (D. Or. 2013) ........................................................... 10

*Nature's Plus Nordic A/S v. Natural Organics, Inc.,*
      98 F. Supp. 3d 600 (E.D.N.Y. 2015) .................................................... 8, 9

*Oppman v. IRMC Holdings, Inc.,*
      14 Misc. 3d 1219 (Sup. Ct. N.Y. Co. 2007) .......................................... 11

*Orix Credit Alliance, Inc. v. R.E. Hable Company,*
      256 A.D.2d 114 (1st Dep't 1998) ........................................................... 14

*Pieper, Inc. v. Land O'Lakes Farmland Feed, LLC,*
      390 F.3d 1062 (8th Cir. 2004) ............................................................... 10

*PRAMCO III, LLC v. Partners Trust Bank,*
      841 N.Y.S.2d 822, 2007 WL 1574479 (Sup. Ct. 2007) ......................... 12

*Schatzinger Consol. Realty Co. v. Stonehill,*
      29-39 Ohio C.C. Dec. 587 (Cir. Ct. 1912) .............................................. 8

*Schuler-Haas Elec. Corp. v. Wager Constr. Corp.,*
      57 A.D. 2d 707 (4th Dep't 1977) ............................................................. 4

*Seeman v. Oxfordshire, LLC,*
    2011 WL 8956206 (Va. Cir. Ct. 2011) ..................................................................15

*Summit Properties Intern., LLC v. Ladies Professional Golf Ass'n,*
    2010 WL 4983179 (S.D.N.Y. 2010) ......................................................................5

*SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.,*
    2013 WL 5366373 (S.D.N.Y. Sept. 25, 2013) .................................................14, 15

*Tesoro Petroleum Corp. v. Holborn Oil Co. Ltd.,*
    108 A.D. 2d 607 (1st Dep't 1985) .........................................................................11

*The Hawthorne Group, LLC v. RRE Ventures,*
    776 N.Y.S.2d 273 (1st Dep't 2004) ......................................................................13

*Torchlight Loan Servs., LLC v. Column Fin., Inc.,*
    No. 11 CIV. 7426 RWS, 2012 WL 3065929 (S.D.N.Y. July 25, 2012) ................12

*Town House Stock LLC v. Coby Housing Corp.,*
    36 A.D. 3d 509 (N.Y.S.2d 366 (1st Dep't 2007) ..................................................13

*Trade Expo. Inc. v. Sterling Bancorp.,*
    2014 N.Y. Misc. Lexis 4108 (N.Y. Sup. Ct. 2014) ..............................................15

*Tri-Terminal Corp. v. CITC Industries, Inc.,*
    78 A.D.2d 609 (N.Y.S.2d 184 (1st Dep't 1980) ...................................................15

*U.S. Network Servs., Inc. v. Frontier Comms. of the West, Inc.,*
    115 F. Supp. 2d 353 (W.D.N.Y. 2000) .................................................................13

*VeriBlend Dual Disp. Sys. LLC v. Crystal Int'l (Group) Inc.,*
    No. 18 Civ. 10758, 2019 WL 4805771 (SDNY 2019) ..........................................14

*Warren v. John Wiley & Sons,*
    No. 12-cv-5070, 2013 U.S. Dist. Lexis 93040 (SDNY July 2, 2013) ...................14

**STATUTES**

N.Y. Bus. Corp. Law. § 1312(a) ......................................................................................15

**RULES**

Fed. R. Civ. P. 801(c)(2) .................................................................................................11

**OTHER AUTHORITIES**

5 Corbin on Contracts § 1034 (1950) ............................................................... 7

25 C.J.S. Damages § 66 ................................................................................. 6

E. Allan Farnsworth, Contracts 928 (2 ed. 1990) ............................................. 7

Restatement (Second) of Contracts  § 344 ...................................................... 8

Restatement (Second) Contracts  § 370 .......................................................... 4

At the heart of Eastern Profit's core claims—Counts I and IV—lies a simple question: can Eastern be used to recover the $1 million ACA paid to Strategic Vision? The answer depends on whether Eastern "conferred" ACA's $1 million on Strategic. It did not, as this Court can now rule as a matter of law. Eastern's Response does not dispute the key fact: it never paid or spent a dime to perform the contract. It couldn't have. Eastern's sole asset was a frozen Hong Kong bank account with a tiny balance—under $80,000. Eastern claims its only plan to recover it was to oust the CCP from Mainland China. But even if that eventually worked, Eastern could never "repay" ACA; Eastern could not even pay the fourth month of interest on its alleged "loan" from ACA. If (as it claims) Eastern really took out that loan, it locked itself into insolvency *over a week before Strategic even agreed to a deal*. Eastern's backers cannot now use it as a shell to "recover" $1 million that Eastern never could have had.

## SUMMARY OF MATERIAL FACTS THAT REMAIN UNDISPUTED

Eastern Profit's Response controverted little, and nothing material. What remains, the now-undisputed material facts, is fatal to Eastern's Counts I (contract); II (fraud); and IV (unjust enrichment).

**A.  Eastern never conferred a benefit on Strategic (disposing of Counts I and IV), and never incurred expenses in reliance on the contract after it was executed (which also disposes of Count I)**. Eastern did not pay Strategic because it was nearly penniless. Just the interest payments on the loan it claims it obtained the week before Strategic agreed to the deal would have exhausted Eastern's frozen bank account in less than four months. On January 6, 2018, Eastern entered into the Research Agreement for a three-year term with Strategic.[1] Eastern agreed to pay Strategic a $1 million deposit and $750,000 per month beginning in January 2018.[2] Eastern delegated its payment duty to non-party ACA

---

[1] SOF 20: R. Agreement, Ex. F1, p. 5; Wallop Aff., Ex. C1, ¶ 4; Wang Tr. 1, Ex. E1, 264:9-12.
[2] *Id.*

Capital Group, Ltd. ("ACA"); Eastern never paid anything to Strategic, and no money passed through Eastern's hands.[3] Eastern did not pay the $1 million initial deposit or any monthly contract payment.[4]

On December 29, 2017, the day Eastern says it signed a loan agreement with ACA to cover the deposit, Eastern's sole asset was a Hong Kong bank account that Eastern now claims had months earlier been frozen by the Hong Kong authorities at the CCP's behest.[5] It held under $80,000: less than 8% of ACA's deposit, or 10% of one monthly $750,000 payment due Strategic under the three-year contract.[6] Eastern could not cover even four months' interest allegedly due ACA at 2% per month ($20,000).[7] Eastern had no expectation this would change.[8] By December 29, regardless of whether it would ever sign a deal with Strategic, Eastern had committed itself to insolvency within a few months.

For the same reasons, ACA had no hope of collecting even Eastern's "interest" payments. But ACA did not have a "lender's" interest in the Eastern-Strategic contract. ACA was at the very least an investor: it expected to receive the research facilitated by Strategic, and if Strategic's research were fruitful, ACA was willing to altogether "forgive" what Eastern calls its loan, uncollectible in any event.[9]

**B. Eastern frustrated Strategic's performance by failing to replace the first 15 subjects in early February 2018, when Strategic reported that research was impossible because those names were records-protected** (a distinct basis to dismiss Eastern's contract claim). Eastern was required to identify the research subjects and provide related information necessary for Strategic to perform its

---

[3] Dkt. 269, p.12 (delegation); SOF 31: Ex. W1 (Wang Tr. 1 Ex. 7); Wang Tr. 1, Ex. E1, 158:6-9, 158:20-159:23, 161:2-17; Dkt. 127, p.22, ¶ 7; Dkt. 142, p.3, ¶ 7 (direct from ACA); SOF 45: Wang Tr. 1, Ex. E1, 58:6-18 (Plff. never paid).

[4] *Id.*

[5] SOF 27: Wang Tr. 2, Ex. L1, 7320-74:8, 197:18-198:6, 202:2-204:20; RJN, Dkt. 264, ¶ 5; Dkt. 203-2, Oct. 18, 2018, p. 14/27 for Respondent 16 (Dkt. 203, p. 2: "The assets of Mr. Guo and Eastern Profit that have been frozen in Hong Kong were frozen, not by the CCP or Mainland China, but by *the High Court of Hong Kong*. *See* Exhibit B." Ex. B (pp. 3, 14, Respondent 16: H.K. Ct. Order); Chunguang Tr., Ex. J1, 44:17-22, 70:10-72:6, 74:19-75:1, 88:2-89:9, 131:22-132:4, 146:10-24.

[6] *Id.*

[7] *Id.*

[8] SOF 27: Wang Tr. 2, Ex. L1, 202:2-203:24.

[9] SOF 28: Wang Tr. 2, Ex. L1, 46:22-47:14, 49:25-50:10, 53:19-54:3, 56:7-11, 57:5-9, 110:17-112:2; Wallop Tr., Ex. B1 (ACA would receive); Wang Tr. 2, Ex. L1, 208:2-16, 46:22-47:14, 44:10-47:14, 197:18-198:6, 202:2-204:20, 73:20-74:8; Plt's Third Interrog. Resp., Ex. X1, p. 3, No. 2 (forgiveness).

duties.[10] Strategic told Eastern it was unable to obtain research on the subjects Eastern identified at the start of the contract due to an unexpected designation by the U.S. government that sealed the subjects' data.[11] No substitute names were provided to allow the research and the contract to continue.[12]

**C. Eastern's fraud claim should be dismissed because it admitted Strategic never misrepresented its qualifications; the alleged misrepresentations weren't collateral to the contract; and Eastern never identified special damages.** Eastern failed to counter its own witness's admission that Strategic never made the supposed statements.[13] It shifted its theory to a new, unpled "misstatement" about licensure in Virginia, but relied solely on testimony from a witness who then admitted he never relayed that statement to Eastern.[14] Eastern admitted the representations were all made in negotiations about the contract, and covered points related to Strategic's performance.[15] Finally, Eastern never identified special fraud damages; it still seeks only "to recover a $1 million deposit," paid by ACA—which is simply Eastern's contractual damage theory. Eastern SOF 1, Dkt. 270 (p. 47).

In fact, when Eastern abruptly terminated the contract, it lost nothing—not ACA's "Deposit" or anything else. ACA "lost" the $1 million it would never have been repaid anyway, but it has avoided this Court. Eastern has asserted no other damages under any legal theory. Summary judgment is proper.

## ARGUMENT

## I.   EASTERN'S BREACH OF CONTRACT CLAIM FAILS

### A.  Eastern Has No Recoverable Damages, Under Restitution or Reliance

---

[10] SOF 37: Ex. F1, R. Agreement, p. 1; Wallop Tr., Ex. B1, 83:24-84:7, 85:10-86:11; Waller 2 Tr., Ex. M1, 131:1-132:9, 132:15-133:11.

[11] SOF 39: Wallop Tr., Ex. B1, 232:7-238:20, 239:16-241:4, 285:12-288:24; Waller 2 Tr., Ex. MI, 100:16-103:25, 105:6-108:21; SOF 40: Ex. 105 to Waller 2 Tr., Ex. E2.

[12] SOF 42: Wallop Tr., Ex. B1, 139:17-140:23, 285:12-288:24, 136:13-20; Waller 2 Tr., Ex. M1, 100:16-102:16.

[13] SOF 13: Wang Tr. 1, Ex. E1, 179:23-186:20.

[14] SOF 13 Response (citing only Guo 1 Tr., Ex. G1, 150:7-151:5 for new claim that Strategic promised it was licensed in Virginia); SOF 13 Reply (citing Guo. 1 Tr., Ex. G1, 175:10-23 wherein Guo answers "No" when asked, "Did you ever communicate the promises that Strategic Vision made to you, to Eastern Profit?").

[15] SOF 13 Response: Eastern admits its argument is that "Strategic misrepresented that it had the expertise and qualifications to perform the Research Agreement, including that it was licensed to perform a private investigation"), but cites only Eastern's own pleading, the Guo testimony, and Strategic stating it wasn't licensed).

Eastern's failure to prove damages is fatal to its contract claim. *LNC Invs., Inc. v. First Fidelity Bank, N.A. New Jersey*, 173 F.3d 454, 465 (2d Cir. 1999). Eastern suffered no damages, whether in restitution or its new "reliance" theory. Eastern admits it *delegated to ACA* its duty of payment.[16] That choice was not a breach,[17] but Eastern and its backer must now face the result: Eastern cannot be used as the shell to recover ACA's payment[18] *via* restitution. Eastern itself conveyed no benefit to Strategic, but its late attempt to recast the $1 million as its own "debt obligation," its reliance damages, also fails. Eastern incurred the "debt" before it executed the contract.[19] Regardless, it was ACA's third-party investment,[20] not a loan. Finally, Eastern fails to rebut Strategic's point that recovering ACA's $1 million investment would be a windfall.

## 1. Eastern cannot receive restitution of a benefit it never conferred

Eastern admits that the party seeking restitution must have conferred a benefit on the other party. *See* Restatement (Second) of Contracts § 370 (restitution is "available to a party only to the extent that he has conferred a benefit on the other party").[21] It is not enough that a benefit was conferred *by someone*; it must have been conferred *by the plaintiff*.[22] Instead of rebutting Strategic's ample case law on this point, Eastern *admits* that it delegated its duty to ACA,[23] and then pivots to answer a different question: whether a party can, in the first place, delegate its duty

---

[16] SOFs 27-28, 31; Dkt. 269, p. 12 (Eastern's delegation theory).

[17] SOF 9.

[18] SOF 31.

[19] Dkt. 270, p. 26 (responding to Strategic's SOF 29); Dkt. 269, p. 15; SOF 36.

[20] SOF 28.

[21] *Gerosa v. Savasta & Co.*, 329 F.3d 317, 321 (2d Cir. 2003) ("[T]o make out a claim for restitution, a plaintiff must show that the defendant has unjustly received *from the plaintiff* a benefit...." (emphasis added). New York law is clear: a party that "has not conferred a benefit may not obtain restitution." *Farash v. Sykes Datatronics, Inc.*, 59 N.Y.2d 500, 504 (1983) (*citing* Restatement (Second) Contracts § 370 cmt. a); *see also Schuler-Haas Elec. Corp. v. Wager Constr. Corp.*, 57 A.D.2d 707, 70708 (4th Dep't 1977) ("A benefit must have passed *from plaintiff to defendant* for which the plaintiff should be compensated in equity and good conscience.") (emphasis added).

[22] A party claiming restitution must base its claim upon the amount it paid to the other party. *Bausch & Lomb, Inc. v. Bressler*, 977 F.3d 720, 730 (2d Cir. 1995) ("restitution looks to the reasonable value of any benefit conferred upon the defendant *by the plaintiff*") (emphasis added).

[23] SOFs 27-28, 31; Dkt. 269, p. 12 (Eastern's delegation theory).

of payment. The answer is often "yes."[24] But that tells us nothing here: Strategic does not claim Eastern breached by delegating payment to ACA.[25] (Eastern was nearly penniless.)[26] Instead, the issue is whether, having now admitted that it chose to delegate payment to ACA, Eastern can still recover ACA's payment for itself as "restitution." The law is clear: it may not.

Only a provider of benefits is entitled to restitution. That a plaintiff merely "caused" another party to convey a benefit does not entitle it to restitution when it "has not alleged that it actually paid any amount." *Summit Properties Intern., LLC v. Ladies Professional Golf Ass'n*, 2010 WL 4983179, at *4, n.4 (S.D.N.Y. 2010). Here, Eastern is not the payor in any sense. Eastern never had the funds for the contract. Eastern now claims ACA's payment to Strategic was a loan, but Eastern never did pay (nor could have paid) even the interest, let alone repay the principal.[27] There is a reason Eastern never paid (and never could have paid) Strategic, or even paid interest to ACA: it was destitute. Its sole asset was a Hong Kong bank account, holding under $80,000,[28] that Eastern says authorities froze long before the contract was signed.[29] No surprise, then, that Eastern says ACA might have "forgiven" the alleged loan if the research bore fruit.[30] Therefore, even if Eastern had somehow "caused" ACA to wire the $1 million deposit to Strategic, the money was not Eastern's, Eastern had nothing of value to give Strategic or ACA, and Eastern did not confer a benefit on Strategic for purposes of the remedy of restitution.

The permissibility of delegation cannot save Eastern's argument. Restitution, which restores to the plaintiff "any benefit that he has conferred on the other party," is unavailable here. *Boule v. Hutton,* 138 F. Supp. 2d 491, 509-10 (S.D.N.Y. 2001). Far from restoring Eastern's pre-

---

[24] Eastern cites two cases for this proposition, neither of which concerns a request for restitution. Dkt. 269, p. 12.
[25] SOF 9.
[26] SOF 27.
[27] SOF 27.
[28] SOF 27.
[29] SOF 27.
[30] SOF 28.

contract position, awarding it ACA's $1 million would place Eastern in a far better position than it enjoyed pre-contract, and "[a]n award of restitution cannot provide a windfall to the non-breaching party." *American Capital Corp. v. F.D.I.C*, 472 F.3d 859, 870 (Fed. Cir. 2006).

> **2.  Eastern has no reliance damages because it cannot recover for expenses incurred *before* the contract was executed, nor can it recover ACA's third-party investment**

For the first time in this case, Eastern claims it can recoup ACA's million-dollar wire as a "cost" it incurred in reliance on the contract, rather than as restitution for a "benefit" it conferred. Dkt. 236 at 21-23.[31] This late maneuver must fail because Eastern cannot recover costs incurred before the contract was executed. Reliance damages return the non-breaching party to the position it would have held were the contract never executed; for that reason, they are strictly for reasonable expenses made in reliance *on an existing contract*, not for expenditures *before* the contract. 25 C.J.S. Damages § 66, n. 4, *citing Gruber v. S-M News Co.*, 126 F.Supp. 442, 446-47 (S.D.N.Y. 1954) (denying expenses incurred to perform oral agreement prior to final contract).

Eastern incurred the "expense" of the "loan" on December 29, 2017, *before* the Research Agreement was executed on January 6, 2018.[32] Eastern admits there was no contract when it "borrowed $1 million from ACA," describing the Research Agreement and deposit as only "contemplated by the parties" rather than actually executed. Dkt. 269, p.15. "ACA wired

---

[31] The Court should reject Eastern's new theory because it was not disclosed until now. Even Eastern's February 24, 2020 letter to this Court makes no mention of reliance damages, instead seeking restitutionary damages of the "return" of the $1 million ACA payment. *See* Dkt. 258 ("Through its lawsuit, Eastern primarily seeks to recover a $1 million deposit that it paid to Strategic pursuant to the Research Agreement, plus pre- and post-judgment interest."). Eastern has never requested reliance damages or enumerated any expenses incurred in reliance on the contract. Where a party has failed to raise a damages theory in its initial or supplemental disclosures, preclusion of that theory is "automatic" absent a showing that the non-disclosure was substantially justified or harmless. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 294 (2d Cir. 2006) (affirming a district court's decision to preclude a plaintiff from asserting damages after it failed to properly disclose its damages in accordance with Rule 26). Courts regularly preclude plaintiffs from raising new theories of damages, including reliance, for the first time at this late stage. *See Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297 (2d Cir. 2006) (affirming a district court's decision to preclude a plaintiff from asserting damages after it failed to properly disclose its damages in accordance with Rule 26(a)).

[32] SOF 36; Dkt. 270, p. 26 (responding to Strategic's SOF 29).

Strategic $1 million *before* the Research Agreement was even signed."[33] Since Eastern took on the ACA loan *before* executing the Strategic contract, it could not have been caused "by the making of the contract," as is required for reliance damages.[34] Had the parties broken off talks and the Agreement never been executed, Eastern would still have incurred its "debt obligation."

Indeed, Eastern had already locked itself into insolvency. Eastern's $1 million "loan" bore 2% interest per month, compounded monthly, repayable in 6 months, but Eastern had less than $80,000 in a frozen Hong Kong bank account.[35] On December 29, Eastern's best-case outcome was that Strategic would agree to a deal; its research would instantly strike gold; the shockwaves would oust the CCP from power; and this would somehow cause the rapid release of Eastern's Hong Kong funds. But even in this far-fetched scenario, Eastern would go broke: the interest alone ($20,000 per month, and growing) would have completely drained Eastern's lone asset within four months. The very same thing—insolvency—would have occurred had Strategic *not* inked the deal. "As a result, placing [Eastern] in as good a position as it was when it made the contract does not require [Strategic] to reimburse [Eastern] for the expenditures [Eastern] incurred at its sole risk." *GeoMetWatch Corp. v. Hall*, 2019 WL 3937023, at *8 (D. Utah, 2019).

Tellingly, Eastern does not cite a single decision allowing a party to recover for costs incurred *before* a contract is executed. Indeed, it is well-established that "an injured party cannot recover reliance damages for costs incurred *before* that party made the contract." *See* E. Allan Farnsworth, Contracts 928 n.2 (2d ed. 1990). Courts uniformly deny recovery of pre-contract expenses.[36] Because reliance damages measure the injured party's "cost of reliance" on the

---

[33] Eastern's Resp. to SV's SOF 29 (emphasis by Eastern).
[34] 5 Corbin on Contracts § 1034 (1950) ("[E]xpenses incurred in inducing the making of the contract are not [recoverable] expenses.... They are caused neither by the breach of the contract nor by its making.").
[35] SOF 27.
[36] *See, e.g., Energy Capital Corp. v. United States,* 47 Fed. Cl. 382, 426 (Fed.Cl.2000) (reliance damages are limited to those expenses incurred after an agreement has been reached); *Hollywood Fantasy Corp. v. Gabor,* 151 F.3d 203, 214 n. 4 (5th Cir. 1998) (nonbreaching party may only recover out-of-pocket expenses incurred after the contract

contract, allowing recovery for pre-contract expenses would vitiate the purpose of the reliance interest. Restatement (Second) of Contracts § 344. Here, the pre-contract expenditures would have been incurred regardless of whether the contract was ultimately signed, and it is irrelevant that they were incurred directly for the purpose of funding the eventual contract. *See Drysdale v. Woerth*, 153 F.Supp.2d 678, 684 (E.D. Pa. 2001) ("Indeed, the rule applies even if the expenditures were incurred directly for the purpose for which the plaintiff made the contract").

In some cases, a legitimate "debt obligation incurred in reliance upon a contract may be recovered as reliance damages," Dkt. 269 at 21, *quoting Nature's Plus Nordic A/S v. Natural Organics, Inc*., 98 F.Supp.3d 600, 602 (E.D.N.Y. 2015). But Eastern's reliance on *Nature's Plus* is misplaced. There, the non-breaching party incurred debt and out-of-pocket expenses "during the term of the contract." *Id*. at 603. Unlike Eastern, that plaintiff borrowed money from a third party in reliance upon an *existing* contract. *Id.* at 602. Here, Eastern incurred no debt in reliance upon a contract. No contract existed, or may ever have existed, at the time Eastern claims it signed the loan agreement.[37] *Nature's Plus* is inapposite, like all of Eastern's cited cases.[38]

ACA's $1 million is unrecoverable as Eastern's "reliance" cost for yet another reason: it is an investment by a third party (ACA) rather than a legitimate debt of Eastern. "Reliance

---

was formed); *DPJ Co. Ltd. Partnership v. F.D.I.C.,* 30 F.3d 247, 250 (1st Cir. 1994) ("an injured party cannot recover for costs incurred before that party made the contract."); *Autotrol Corp. v. Cont'l Water Sys. Corp*., 918 F.2d 689, 695 (7th Cir. 1990) (expenses incurred before contract execution are not recoverable); *Curran v. Smith,* 149 F. 945, 953 (3d Cir. 1906) (plaintiff was entitled to recover in reliance only those expenses in preparation for performance incurred between the execution of the contract and its breach); *Energy Capital Corp. v. United States*, 47 Fed. Cl. 382, 426–427 (2000) (denying recovery for any expenses incurred before contract formation); *Hough v. Jay–Dee Realty & Inv., Inc.,* 401 S.W.2d 545, 551 (Mo. App. 1966) (expenses incurred before any enforceable obligation arose not recoverable); *Chicago Coliseum Club v. Dempsey*. 1932 WL 2782 at *4 (Ill. App. Ct. 1932) (no recovery for expenses prior to signing agreement, even though expenses were in preparation for performance); *Schatzinger Consol. Realty Co. v. Stonehill*, 29–39 Ohio C.C. Dec. 587, 592–93 (Cir. Ct. 1912) (denying recovery of precontract fees paid for architectural plans before a land sale contract was finalized).

[37] Eastern's Resp. to SV's SOF 29 (emphasis by Eastern).

[38] The other cases cited by Eastern are equally unavailing. *See McKinley Allsopp, Inc. v. Jetborne Intern., Inc.,* 1990 WL 138959, at *2 (S.D.N.Y.1990) (awarding as reliance damages the deposit paid nearly three months after contract execution); *Elvin Associates v. Franklin*, 735 F. Supp. 1177, 1183 (S.D.N.Y.1990) (awarding unpaid debt as damages under promissory estoppel theory rather than  breach of contract, finding a clear promise to perform *before* plaintiff undertook debt obligations in consideration of the parties' verbal agreement).

damages concern money spent by the plaintiff in preparation for or partial performance of the agreement, not investments made by third parties." *Nature's Plus*, 98 F.Supp. at 606, (*quoting 24/7 Records, Inc. v. Sony Music Entm't, Inc.*, 566 F.Supp.2d 305, 319 (S.D.N.Y. 2008); *see also Bank of America, FSB v. U.S.*, 67 Fed.Cl. 577, 590 (Fed. Cl. 2005) ("The price paid by the third party did not constitute a damage to [plaintiffs], in other words, because the payment represented funds that never belonged to either [plaintiff]."). This Court, too, has rejected a plaintiff's attempt to recover a third-party's investment as the plaintiff's own "reliance." *24/7 Records*, 566 F.Supp.2d at 319 ("This allegation does not provide any support for the proposition that [the plaintiff] spent any money in reliance on the agreement. All it shows is that an additional investment by [third party], who is not a plaintiff in this action, was made after a meeting...").[39]

The payment was an investment by ACA. The $1 million initial deposit, and three years' monthly fees of $750,000, were far beyond Eastern's means.[40] ACA could never have been repaid even had Eastern's plan unfolded like clockwork—a "gold strike" by Strategic, historical regime change in Mainland China, and political fallout in Hong Kong. Eastern's sole asset, frozen in Hong Kong, amounted to less than $80,000—well under the $27 million needed to finish the Agreement, whether by cash or credit.[41] Why would ACA make funds available at all? It was a stakeholder: ACA expected to receive Strategic's research itself.[42] Indeed, ACA indicated it might "forgive" the supposed "loan" if the research bore fruit.[43] Finally, the "loan" document requires transfer "to the Borrower" (Eastern),[44] but ACA wired it to Strategic.

---

[39] *See also Giftime, Inc. v. KWI 1901 Newport Plaza,* 2011 WL 6400626 (Cal. App. Dec. 21, 2011) ("It was legal error for the jury to base contract damages … on the equity investments made by various third party investors.")
[40] SOF 27.
[41] SOF 24 (3-year term, $750,000 payments); SOF 27 ($80,000 in frozen Hong Kong, unless regime change).
[42] SOF 28, 30.
[43] SOF 28, 30.
[44] SOF 28 Response by Eastern, Eastern Ex. L, ACA Loan Agreement, EASTERN-000278.

ACA was not a disinterested lender supplying credit to reap healthy interest; it was undisputedly never getting repaid, but *was* getting the research, and so instead, ACA was a stakeholder—an investor—in the project.[45] No factfinder could conclude that the $1 million was Eastern's own money, or that Eastern was deprived of its use in reliance on the contract.

### B. Strategic's Defense of Frustrated Performance Can Be Resolved on Summary Judgment

Eastern asserts that Strategic's defense of frustration of purpose cannot be resolved at this stage, as such issues are "not ripe for resolution at summary judgment." Dkt. 269 at 23. Yet courts grant summary judgment on the defense of frustration of purpose where as here, the issue involves no disputed material facts. *See Pieper, Inc. v. Land O'Lakes Farmland Feed, LLC*, 390 F.3d 1062 (8th Cir. 2004) (summary judgment affirmed on defendant's frustration defense); *AES New Creek, LLC. v. Exergy Development Grp. of Idaho, LLC*, 2014 WL 12597906 *8 (D. Idaho 2014) (summary judgment granted on defendant's frustration defense); *Multibank 2009-1 Res-ADC Venture, LLC v. Pinecrest at Neskowin, LLC*, 2013 WL 1500693 *5 (D. Or. 2013) (same).

On the merits, Eastern claims it could not have frustrated the purpose of the contract because it was merely exercising its contractual right to terminate. Eastern ignores its own contractual agreement to provide additional subjects for research.[46] And even a right to terminate must be exercised in good faith. *See, e.g., Harris Corp. v. Giesting & Assocs., Inc.,* 297 F.3d 1270, 1272–73 (11th Cir. 2002) ("Termination for convenience clauses may not be used to shield the terminating party from liability for bad faith or fraud."); *EDO Corp. v. Beech Aircraft Corp.,* 911 F.2d 1447, 1453 n.6 (10th Cir. 1990) ("We concur in the district court's determination that Beech's exercise of its right to terminate must have been exercised in good faith."). A party's right to terminate does not excuse its bad-faith actions, nor does it justify a bad-faith termination

---

[45] SOF 28 (ACA would receive results of research and might forgive loan); SOF 29-30 (ACA to receive results).
[46] SOF 25; R. Agreement, Ex. F1, pp. 1, 3-4.

after heavy start-up costs. Faced with unforeseen events and refusing to accommodate Strategic to allow it to make other performance, Eastern cannot now hold Strategic in breach of contract.[47]

## II.    EASTERN'S COUNT II (FRAUD) CLAIM FAILS

### A.  Eastern's fraud claim is not collateral to the contract

Eastern argues its fraud claim should survive because it alleges Strategic misrepresented present facts (its qualifications to perform the contract) as opposed to future intent, but this mischaracterizes Eastern's allegations and the law.[48] To the contrary, the allegedly fraudulent statements go to the heart of the parties' agreement: they include Strategic's intent to perform under the contract, its experience and plan to use an in-house team, the qualifications of the team, and how the $1 million deposit would be used.[49] Because Eastern's fraud allegations involve statements that go to the root of the agreement, they cannot be deemed "collateral" to it. *International Cabletel Inc. v. Le Groupe Videotron Ltee*, 978 F. Supp. 483, 488 n.2 (S.D.N.Y. 1997) ("A false statement which goes to the 'root' of an agreement is of course not a false statement which can be deemed 'collateral' to that agreement.").

Eastern fails to distinguish any of Strategic's authority in support of dismissal, including *Tesoro Petroleum Corp. v Holborn Oil Co. Ltd.*, 108 A.D.2d 607 (1st Dep't 1985), where the court dismissed a fraud claim because "plaintiff did not allege that defendants breached any duty

---

[47] Strategic proved its argument on the "Records Protected" status of the research subjects with admissible evidence, as a business record from ASOG stated its position. Dkt. 267, p. 18, ¶ 40, *citing* Waller 2 Tr., Ex. M1, 105:6-20, 106:15-108:21; Ex. 105 to Waller 2 Tr.; Dkt. 273-56, p. 94, SOF 114. The evidence is not being presented for the truth of the matter (i.e., that the subjects were "Records Protected" and that this meant research could not be performed due to restrictions outside of ASOG's control). (Fed. R. Evid. 801(c)(2), defining hearsay as a statement "a party offers in evidence to prove the truth of the matter asserted in the statement."). Rather, the evidence is offered to show its effect on Strategic, which (as shown in SOF 44), then reported this circumstance to Lianchao Han, whom Guo had by then placed back in charge of the project. Lianchao and Guo failed to provide new names, frustrating Strategic's performance.

[48] A claim for fraud is duplicative where it is based on the same facts underlying the contract claim, is not collateral to the contract, and seeks damages that are recoverable under the contract claim. *See, e.g., J.E. Morgan Knitting Mills v. Reeves Bros., Inc.*, 243 A.D.2d 422, 422-23 (1st Dep't 1997); *Oppman v. IRMC Holdings, Inc.*, 14 Misc.3d 1219, 1221 (Sup. Ct. N.Y. Co. 2007). Each of these factors weighs strongly in favor of dismissal here.

[49] Dkt. 93, ¶ 35-42.

owed to plaintiff separate and apart from the contractual duty when they misrepresented their intent to perform." Instead, in the face of convincing arguments that its Count II should be dismissed as duplicative of the breach of contract claim, Eastern relies heavily on *First Bank of America v. Motor Car Funding, Inc.*, 257 A.D.2d 287 (1st Dept 1999) for the proposition that merely alleging a misrepresentation of present fact is enough to render a claim of fraud "independent" of a breach of contract claim—no matter what the alleged facts may be. Dkt. 269, at 18-19. Even if Eastern's interpretation of *First Bank*'s holding was not belied by other New York decisions,[50] it is inapposite: Eastern fails to mention that the alleged misrepresentations were not part of the contract between the parties, as they are in this case.[51] The fraudulent statements in *First Bank* were made after the contract was signed and induced plaintiffs to purchase additional loans that were not required by the contract. *See* 257 A.D. 2d at 292. Those statements, collateral in both subject matter and timing, distinguish *First Bank* from this case.[52]

Unlike the fraud claim in *First Bank*, Eastern's Count II is premised on allegations that Strategic misrepresented pertinent facts about its ability to perform the contract. And, unlike the *First Bank* plaintiff, Eastern already has a contractual remedy for the alleged misconduct. Merely alleging misrepresentation of present fact is insufficient to render a fraud claim independent of a

---

[50] New York cases decided before and after *First Bank* have dismissed claims of fraud as duplicative of contract claims where the alleged fraud involved misrepresentations of present facts or circumstances. *See, e.g., Linea Nuova, S.A. v Slowchowsky*, 877 N.Y.S.2d 891 (N.Y.A.D. 1 Dept 2009) (dismissing as duplicative a fraud claim based on an "alleged misrepresentation of an existing fact"); *ESBE Holdings v Vanquish Acquisition Partners, LLC*, 858 N.Y.S.2d 94 (N.Y.A.D. 1 Dept. 2008) (dismissing claims concerning "alleged misrepresentations concerning the successful completion of earlier transactions") ; *J.E. Morgan Knitting Mills v Reeves Bros.*, 663 N.Y.S.2d 211, (N.Y.A.D. 1 Dept. 1997) (dismissing a claim of fraud involving allegations that "defendants knew at the time of contract execution that their warranty therein" was false).
[51] Each representation in *First Bank* "involved subject matter (i.e., quality of collateral, credit history, and amount of down payments) extraneous to the contract warranties themselves...." *PRAMCO III, LLC v. Partners Trust Bank*, 841 N.Y.S.2d 822, 2007 WL 1574479 *1 (Sup. Ct. 2007) (distinguishing *First Bank*, 257 A.D.2d at 292).
[52] *See also In re Enron Corp.*, No. 04 CIV. 1367 (NRB), 2005 WL 356985, at *11 n.44 (S.D.N.Y. Feb. 15, 2005) (distinguishing *First Bank* on this ground); *Torchlight Loan Servs., LLC v. Column Fin., Inc.*, No. 11 CIV. 7426 RWS, 2012 WL 3065929, at *10 (S.D.N.Y. July 25, 2012) (same).

breach of contract where, as here, the alleged fraud directly relates to the parties' performance under an agreement, and the damages sought can be recovered on the contract claim.

Eastern claims Strategic's misrepresenting its qualifications to perform is "completely distinct and collateral" from Eastern's breach of contract claim, but admits it "relied on that representation in entering into the contract." Dkt. 269 at 20. Alleged misrepresentations cannot merely be about then-present facts; rather, they also must be "extraneous to the contract and involve a duty separate from or in addition to that imposed by the contract." *The Hawthorne Group, LLC v. RRE Ventures,* 776 N.Y.S.2d 273, 276 (1st Dep't 2004). *See DealTime.com Ltd, v. McNulty*, 123 F. Supp. 2d 750, 759 (S.D.N.Y. 2000) (dismissing fraud where "Neither [of the alleged misrepresentations] was collateral to the contract. In fact, both went to the root of the agreement..."); *U.S. Network Servs., Inc. v. Frontier Comms. of the West, Inc.*, 115 F. Supp. 2d 353, 356-357 (W.D.N.Y. 2000) (dismissing fraudulent inducement claim with prejudice and noting that "[n]o matter what words are used to plead this claim, it would remain duplicative of plaintiff's other claims and therefore subject to dismissal.").

### B.  Eastern's failure to allege any special damages requires dismissal

Count II should be dismissed for another reason: Eastern fails to allege any special damages due to fraud separate from those recoverable under its contract claim. *See Town House Stock LLC v. Coby Housing Corp.*, 36 A.D.3d 509, 828 N.Y.S.2d 366, 367 (1st Dep't 2007) (dismissing extra-contractual claims because "there are no damages sought that would not be recoverable under a contract measure of damages").[53] Eastern's Opposition offers no response to Strategic's authority requiring dismissal of fraud claims in the absence of special damages.[54]

---

[53] Courts routinely dismiss duplicative claims of fraud where, as here, no damages are alleged that would not be recoverable under a contract measure of damages. *See, e.g., Linea Nuvoa, S.A. v. Slowchowsky, 62* A.D.3d 473, 474 (1st Dep't 2009) (fraud claim held to be duplicative of contract claim where "plaintiff sought no damages that were

### C. Eastern has not controverted Strategic's facts that no representations were actually made or relied upon

Eastern must show it relied on a materially false representation made by Strategic. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 186–87 (2d Cir. 2004). Yet Eastern admits Strategic's supposed "representation" that it would only use in-house employees was never made.[55] Eastern's Response fails to dispute this fact, instead shifting to a distinct and unpled "false" representation that Strategic was licensed in Virginia. But Eastern relies solely on the deposition testimony of Guo Wengui, which Guo negated shortly thereafter with a binding admission that the claimed "licensure" representation was not actually communicated to Eastern.[56] Eastern's only other purported support for this claim, an excerpt of French Wallop's testimony related to the company's background, likewise fails to support reliance. Eastern never pled a "licensing" representation, much less showed it relied on such a representation and thereby suffered damages separate from those under the contract.

## III.   EASTERN'S COUNT IV (UNJUST ENRICHMENT) FAILS

Eastern's Count IV seeks restitution of the "benefit" of ACA's $1 million deposit payment to Strategic under an unjust enrichment theory. It fails for the reasons outlined in Section I. Eastern's Response never rebuts Strategic's key point: that Eastern cannot meet the threshold requirement for restitution of the plaintiff having conferred a benefit. None of Eastern's citations—all unreported—hold otherwise.[57] The first holds that a defendant may not

---

not also recoverable under its breach of contract theory"); *Orix Credit Alliance, Inc. v. R.E. Hable Company,* 256 A.D.2d 114, 115 (1st Dep't 1998) (same); *J.E. Morgan Knitting Mills,* 243 A.D.2d at 422-23 (same).

[54] Dkt. 266 at 27, *citing VariBlend Dual Disp. Sys. LLC v. Crystal Int'l (Group) Inc*., No.18 Civ. 10758, 2019 WL 4805771 *21–22 (SDNY 2019); *Warren v. John Wiley & Sons*, No. 12-cv-5070, 2013 U.S. Dist. Lexis 93040 *30-31 (SDNY July 2, 2013) ("failure of proof on direct out-of-pocket losses will subject a fraud claim to dismissal").

[55] *See* Dkt. 266, n. 174, *citing* Wang 1 Tr., Ex. E1, 179:23-186:20; SOF 13.

[56] SOF 13; Eastern's Response to SOF 13; Strategic's Reply (citing Guo 1 Tr., Ex. G1, 150-151; 175:10-23).

[57] *SungChang Interfashion Co., Ltd. v. Stone Mountain Accessories, Inc*., 2013 WL 5366373 (S.D.N.Y. 2013) (allowing unjust enrichment claim against third parties benefited by plaintiff, not where a third party conveyed the benefit, as "recovery in quasi contract [was] still permitted to prevent the *third party's* unjust enrichment);

escape liability by hiding behind a contract between other parties. *See SungChang Interfashion Co. v. Stone Mountain Accessories, Inc.*, 2013 WL 5366373, at *20 (S.D.N.Y. Sept. 25, 2013). Another holds that where one party misappropriates property from another and uses that property to pay a debt to a third party, an action for unjust enrichment may lie against the third party. *Trade Expo. Inc. v. Sterling Bancorp.*, 2014 N.Y. Misc. LEXIS 4108 (N.Y. Sup. Ct. 2014). The last, in dicta, theorizes an "indirect benefit conferred…[that] arguably…could give rise to liability for unjust enrichment," but dismisses the unjust enrichment claim where the plaintiff failed "to allege that they conferred a benefit on [defendant]." *Seeman v. Oxfordshire, LLC*, 2011 WL 8956206, at *5 (Va. Cir. Ct. 2011). These are unpersuasive. As shown above, Eastern conferred no benefit on Strategic. Eastern cannot recover under its unjust enrichment theory.

## IV.    EASTERN WAS REQUIRED TO REGISTER IN NEW YORK

Eastern concedes that NYBCL § 1312(a) applies, but says it "does not conduct business in New York." Dkt. 269 at 24. Yet Eastern not only "does business" here under Section 1312, its *only* business is in New York—a fact it does not dispute.[58] If dismissal is inappropriate, this Court should enter a stay until Eastern registers. *See Interactive Graphics Corp. v. T+Ink, Inc.,* 2017 NY Slip Op 30796(U), ¶ 6 (N.Y. Sup. Ct. 2017); *Tri-Terminal Corp. v. CITC Industries, Inc.* 78 A.D.2d 609, 432 N.Y.S.2d 184 (1st Dep't 1980).

### CONCLUSION

For the foregoing reasons, Defendant Strategic Vision respectfully requests that this Court enter judgment as a matter of law in its favor on Eastern's Counts I, II, and IV.

---

[58]  Chunguang Depo., Ex. J1, 109:12-111:22 and Ex. Q1 (Chunguang Ex. 32); Wang 2 Tr., Ex. L1, 25:8-28:13. Eastern has significantly more connections and activities in New York than any other place, and New York is the only place Eastern has done any business. Chunguang Tr., Ex. J1, 58:14-59:4; Wang Tr. 2, Ex. L1, 25:828:13; SOFs 51-59.

Dated April 27, 2020

Respectfully submitted,

GRAVES GARRETT LLC

*s/ Edward D. Greim*
Edward D. Greim, #4240172
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
ATTORNEY FOR
DEFENDANT/COUNTERCLAIMANT

## CERTIFICATE OF SERVICE

This certifies that, on April 27, 2020, the foregoing was served on all counsel of record via the Court's Electronic Case Filing System.

*s/ Edward D. Greim*
Attorney for Defendant/Counterclaimant

16