# Exhibit C1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

EASTERN PROFIT CORPORATION LIMITED,

    Plaintiff/Counterclaim Defendant,

    v.

    Case No. 18-cv-2185

STRATEGIC VISION US, LLC,

    Defendant/Counterclaim Plaintiff.

---

## AFFIDAVIT

French Wallop, having been duly sworn, states and affirms the following, about which she has personal knowledge and to which she would testify if called on in Court.

1. I am the founding and sole member of Strategic Vision US, LLC ("Strategic Vision"). Strategic Vision is a limited liability company registered in the State of Nevada, and I am its manager. Strategic Vision is in good standing with the State of Nevada. Strategic Vision's mailing address is 7260 W. Azure Dr., Ste. 140-593, Las Vegas, NV, 89130, but I primarily receive communications about and engage in business matters for Strategic Vision at my home, located at 1557 North 22nd Street, Arlington, Va. 22209.

2. I have lived in the Washington, D.C. area (and in Wyoming) for decades. For many of my years in Washington, I was married to Senator Malcolm Wallop, who represented Wyoming from 1977 to 1994. Malcolm died in 2011.

3. While in the Senate, Senator Wallop worked with Lianchao Han, who emigrated from China and is a prominent voice on matters of U.S. human rights policy toward China. I have known Lianchao for many years on a professional and personal level.

4. Strategic Vision entered into a Research Agreement with Eastern Profit Corp. Ltd. ("Eastern Profit") that was signed by both sides at my home in Virginia on January 6, 2018. When I was first approached about the engagement, I had serious concerns about the safety of who would be involved because the project would create support for the criticism of the Chinese government and members of the Chinese Communist Party. In negotiating the Agreement, I made it a point to have protections for the safety and well-being of the parties and the people who would do research under the Agreement. These precautions included various ways to ensure the project would be kept strictly confidential.

5. My concerns about the project were based on Guo's claims to me that he was an opponent of the Chinese regime. After the project began, Guo told me that the Chinese Embassy in Washington was surveilling my home and Guo gave me a name, in English and Chinese, of who at the Embassy was tracking me. Guo also told me that I had a neighbor who was a member of the Chinese Communist Party.

6. As shown in the Agreement, the confidentiality of the project meant that Eastern Profit would not share the results of Strategic Vision's work with any other party. I eventually came to understand that Eastern Profit had disclosed Strategic Vision's existence and work to an entity called ACA Capital Group Limited ("ACA"). No one associated with Eastern Profit (including Guo Wengui) ever asked for Strategic Vision's permission to disclose its existence and work to ACA, and Eastern Profit never informed Strategic Vision about anything to do with ACA.

7. Eastern Profit has taken the position in this lawsuit that it had a loan agreement with ACA that concerned the Research Agreement. If this is true, Strategic Vision did not know it until this lawsuit was in its second year. The only contact that Strategic Vision had with ACA

2

regarding the Research Agreement came from two wire transfers that Strategic Vision received in early January 2018 from ACA as the sender. Neither Eastern Profit nor ACA informed Strategic Vision that these wires would be arriving from ACA, what they were for, or that ACA had tried to retract the wires shortly after they were sent. ACA has never made demand on Strategic Vision to return the wires or for anything else pertaining to the Agreement.

8. As the project was nearing its end, Strategic Vision arranged for a Texas-based company (Allied Special Operations Group—ASOG) to conduct research under the Agreement. ASOG informed Strategic Vision that the individuals being looked at, who had been designated by Mr. Guo and Eastern Profit as subjects for research, were "Records Protected." This meant that the names could not be searched in federal databases typically used for work of this sort. Strategic Vision was not given the names of research subjects prior to entering the Agreement with Eastern Profit, and, prior to the notification from ASOG, I was unaware of this designation and how it would impact a project like this.

9. Deciding who would be the subject of the research was entirely under the control of Eastern Profit per the Agreement. Even though Eastern Profit had identified many more names than the 15 that ASOG reviewed and found to be Records Protected, when the Records Protected issue surfaced, Eastern Profit did not respond to our requests through its designated intermediary, Lianchao Han, to provide substitute names not subject to this designation.

10. When Eastern Profit terminated the Research Agreement on or about February 23, 2018, among other problems, Strategic Vision could only continue work for 30 more days and its opportunity to work through the contract's look-back or "recap" date of April 16, 2018 was cut short. This early termination of work caused Strategic Vision to lose at least $100,000 in revenues.

3

FURTHER AFFIANT SAYETH NAUGHT.

_____
French Wallop

STATE OF Virginia         )
                          ) ss
COUNTY OF Arlington       )

On this 12 day of March, 2020, before me personally appeared French Wallop, to me known to be the person described herein, who executed the foregoing instrument and acknowledged she executed said instrument as her knowing and free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and affixed my notarial seal in 3/12/20, the day and year last above written.

[notary seal]
```
FATEMA SHAKHAWAT
Notary Public
Commonwealth of Virginia
Registration No. 7506523
My Commission Expires Jun 30, 2020
```

_____
Notary Public

My commission expires: 06/30/2020

4