Troutman Pepper Hamilton Sanders LLP
Hercules Plaza, 1313 N. Market St., Suite 5100, P.O. Box 1709
Wilmington, DE  19899-1709

troutman.com



**Joanna J. Cline**
D 302.777.6542
Joanna.Cline@troutman.com

October 7, 2020

**VIA CM/ECF**

Honorable Lewis J. Liman
United States District Court for
The Southern District of New York
500 Pearl Street
New York, NY  10007

Re:     **Eastern Profit Corporation Limited v. Strategic Vision US, LLC, C.A. No. 18-2185 (LJL) – Briefing Requested by the Court at October 5, 2020 Hearing**

Dear Judge Liman:

At the status conference held on October 5, the Court asked the parties to submit briefs addressing two issues: (a) whether the Court should proceed on November 9 with trial or postpone the trial indefinitely while pandemic-related quarantine orders are in place; and (b) whether certain of the parties' claims should be severed and tried before others.  Eastern's position is that: (a) the Court should proceed with trial as scheduled on November 9 using remote-video technology; and (b) the parties should try Eastern's claim for declaratory relief first, proceeding to the parties' contract claims and Strategic's fraud claim only if Eastern does not prevail on its claim for declaratory relief.

A.     The Trial Should Proceed on November 9.

This case has been pending for more than two and a half years.  The parties thoroughly briefed summary judgment, and the Court is now familiar with the issues set for trial.  The parties are scheduled to submit a proposed pre-trial order, as well as proposed findings of fact and conclusions of law on October 16.  Eastern deserves to finally have its day in court, and proceeding with trial now while the issues are freshly teed up in the minds of the parties and the court serves the interests of judicial economy.

In terms of the manner in which to proceed, the pandemic and the quarantine order present obstacles for all of us. Eastern nevertheless is ready to proceed with a live trial (despite the fact that counsel for Eastern lives in Delaware, a state currently on NY's quarantine list).  However, in the spirit of compromise, Eastern is willing to agree with the Court's suggestion that the parties proceed by remote video conferencing technology.  Pursuant to Rule 43(a) of the Federal Rules of Civil Procedure, upon a showing of good cause in compelling circumstances, the Court may take testimony by contemporaneous transmission from a location other than the courtroom.  Fed. R. Civ. P. 43(a).  Countless courts across the country, including this one, have found over the

The Honorable Lewis J. Liman
October 7, 2020
Page 2



past several months that good cause in compelling circumstances exists due to the COVID-19 pandemic.[1] Particularly in cases such as this, where the parties have agreed to a bench trial, courts have proceeded with testimony by remote transmission.

The fact that Strategic would prefer to take testimony in person is of no moment; we all would. But given the current state of remote access technology and the now-proven track record that businesses and courts have achieved in conducting operations remotely, proceeding via video conference is "absolutely preferable" to having the parties ride out the pandemic and delay trial until an uncertain time in the distant future. *Argonaut,* 2020 U.S. Dist. LEXIS 103625, at *5.[2] Indeed, courts have found that today's technological platforms minimize any concerns about a court's ability to receive testimony and judge credibility. *See, e.g.*, *id.*; *ResCap Liquidating Trust v. Primary Residential Mortg., Inc.*, 444 F.Supp.3d 967, 970-71 (D. Minn. 2020) ("The near-instantaneous transmission of video testimony through current technology permits 'the jury [or, in a bench trial, the Court] to see the live witness along with his hesitation, his doubts, his variations of language, his confidence or precipitancy, [and] his calmness or consideration[.]' Given the speed and clarity of modern videoconference technology, where good cause and compelling circumstances are shown, such testimony 'satisfies the goals of live, in-person testimony and avoids the short-comings of deposition testimony.'") (quoting *In re Vioxx Prods. Litig.*, 439 F. Supp. 2d 640, 644 (E.D. La. 2006)). To the extent Strategic has concerns about logistical complications arising from the use of interpreters, Eastern is confident that the parties can work together to accommodate interpreter issues in a workable manner.

B.   The Court Should Hear Eastern's Narrow and Dispositive Declaratory Judgment Count First.

As to sequencing, the most efficient means of proceeding is for the Court to sever the parties' claims and try Eastern's declaratory judgment claim first. The evidence on that claim is discrete, and a judgment in Eastern's favor would obviate the need for the Court to consider the parties' contract claims or Strategic's fraud claim. If Eastern were to prevail on its declaratory judgment count, the Court could then proceed to what effectively would amount to a damages hearing, and the Court would not need to wade into issues of Strategic's fraud claim and its attempt to proffer inadmissible evidence as to which there will be significant motion practice.[3]

With its declaratory judgment claim—Count III of the Second Amended Complaint—Eastern seeks a declaration that the Research Agreement is void because it is illegal under the Virginia Private Security Services Statute, which requires that anyone providing or undertaking to provide

---

[1] *See, e.g.*, *Amtrust N. Am., Inc. v. KF&B, Inc.*, No. 17-cv-5340-LJL, 2020 U.S. Dist. LEXIS 137490 (S.D.N.Y. July 29, 2020); *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 12-cv-7372-LJL, 2020 U.S. Dist. LEXIS 110254 (S.D.N.Y. June 23, 2020); *Argonaut Ins. Co. v. Manetta Enters.*, No. 19-cv-00842-PKC, 2020 U.S. Dist. LEXIS 103625 (E.D.N.Y. June 11, 2020).

[2] *See also Vitamins Online, Inc. v. Heartwise, Inc.*, 2:13-cv-00982-DAK, 2020 U.S. Dist. LEXIS 111709, at *27 (D. Utah June 24, 2020) (holding that trial would be held remotely, despite defendant's request to postpone trial until it could be held in person); *Xcoal Energy & Res. v. Bluestone Energy Sales Corp.*, 18-819-LPS, 2020 U.S. Dist. LEXIS 149779, at *8 (D. Del. Aug. 18, 2020) ("The Court remains confident that the parties will receive a fair trial even with all witness examinations taking place remotely"); *Sunoco Partners Mktg. & Terminals L.P. v. Powder Springs Logistics, LLC*, 17-1390-LPS-CJB, 2020 U.S. Dist. LEXIS 117188, at *6 (D. Del. July 2, 2020) (same).

[3] Eastern is keenly aware of the success rate of motions in limine before bench trials, but Strategic's fraud case is built upon exhibits and testimony that are so clearly inadmissible Eastern does intend to pursue evidentiary rulings in advance of trial.

The Honorable Lewis J. Liman
October 7, 2020
Page 3



private investigator services pursuant to a contract must first obtain a license.  Va. Code Ann. §
9.1-139.  The statute's definition of private investigator includes "any individual who engages in
the business of, or accepts employment to make, investigations to obtain information on (i) crimes
or civil wrongs . . ."  Va. Code Ann. § 9.1-138.  Although the Research Agreement, on its face,
provides that Strategic is to conduct "high quality original research" on subjects chosen at
Eastern's discretion "for the purpose of detecting, stopping and preventing crime or harm to
innocent people," the Court denied the parties' cross motions for summary judgment.  Specifically,
the Court held that the statute is "intended to regulate entities engaged in quasi-law enforcement
activity," and that a question of fact remained "as to whether what Strategic was contracted to do
was traditional private investigator activity."  Mot. Summ. J. Hr'g Tr. 8:2; 9:18-29, Oct. 5, 2020.

The resolution of this factual question is straightforward, and if, as the Court has held, it is not
answered by the plain language of the contract, it must hinge primarily upon testimony as to the
nature of the services Strategic allegedly performed, attempted to perform, or subcontracted.  This
evidence is limited and could be elicited with a one-day hearing.

Strategic likely will take the position that in order to determine whether Strategic was performing
"traditional private investigator activity," the Court must delve into the underlying purpose for which
it was engaging in it.  It likely will argue that the question can only be resolved with a zero-sum
finding as to whether Eastern entered the contract because Mr. Guo is a dissident who opposes
the Chinese Communist Party ("CCP"), or because he is in fact a secret double agent who actually
supports the CCP.

Such a concept, of course, makes no sense and has absolutely no basis in the law.  Strategic's
supposed evidence that someone they say is Mr. Guo once said something supportive of a
communist leader, even if it were not unauthenticated hearsay, sheds no more light on the
question of whether Strategic acted as a private investigator than the mountains of admissible
evidence Eastern could put on to show Mr. Guo's very strongly held anti-communist views. *The
dispositive question is what was the nature of Strategic's services under the Research
Agreement.*  Even if one were to venture beyond the statutory definition of "private investigator"
to apply a concept of "traditional private investigator activity," there is no support for the
proposition that the political leanings of the contracting parties would inform that definition, nor is
there any support for the notion that a private investigator is limited to investigating specifically
articulated        crimes.        *See        e.g.*,        Cambridge        Dictionary,
https://dictionary.cambridge.org/us/dictionary/english/private-investigator  (last  visited  Oct.  6,
2020) (defining private investigator as "a person whose job it is to discover information about
people, but who is not a member of a police force").

In the interests of judicial economy, Eastern requests that the Court sever its declaratory judgment
count and address that claim before asking the parties to put on costly and time consuming but
potentially unnecessary evidence regarding the parties' remaining claims.

**The Honorable Lewis J. Liman**
October 7, 2020
Page 4



Respectfully,

*/s/ Joanna J. Cline*

Joanna J. Cline

cc:      All counsel of record (CM/ECF)