

Edward D. Greim
edgreim@gravesgarrett.com

October 9, 2020

Hon. Lewis J. Liman
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:    Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (LJL)-DCF
             Response to Plaintiff's Motion to Bifurcate and For Remote Trial on Nov. 9th

Dear Judge Liman:

      Defendant/Counterclaimant ("Strategic Vision") requests an in-person trial at a time when counsel and parties are not subject to a punishing, expensive, and prolonged period of self-isolation just before trial. We also oppose bifurcation as not advancing the objectives of Fed. R. Civ. P. 42(b).

      1.    <u>A limited continuance for a live trial advances nearly all interests, including Rule 43's strong preference for live testimony.</u> Eastern contends it is due its day in court, but fails to explain why trial in November versus what may amount to only a few months later is necessary. Eastern never pressed for an earlier trial date from the first setting now scheduled, never sought injunctive or emergency relief, and itself caused some of the "downtime" in this case. Eastern's transition of counsel in late summer 2019 caused a delay in discovery of nearly two months, and Eastern's corporate representative was not prepared for her first deposition, causing a second months later.

      Modern technology is useful, but the problem here is the interplay of that technology with these particular witnesses, the use of translators, and related issues. At least two witnesses (Guo Wengui and Chunguang Han) need interpreters. The depositions in this case were among the most difficult counsel has ever taken. First, even if each party had been perfectly respectful and courteous, the participation of three sets of counsel, the witness, and two translators (regular and "check") causes unavoidable interruptions. "Over-speaking" in-person is never ideal, but it is actually helpful when each person can hear her own voice simultaneously with two or three distinct others who are also present. Over-speaking is extremely hard to untangle on Zoom, however, because it mutes all others when sound comes from one source, toggling between speakers in unpredictable fashion. Added to this is the difficulty of hearing and understanding two native Mandarin speakers who must translate and occasionally work out their differences. Even where several people were together in one room, this led to long gaps in the testimony. Over Zoom, it will be impossible to conduct any sustained questioning of Mr. Guo and Mr. Chunguang Han. The flow of cross-examination will be constantly interrupted and Strategic's case unquestionably prejudiced. "[V]irtual reality is rarely a substitute for actual presence." *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001).

      A separate issue is that Mr. Han, Mr. Guo, and Yvette Wang resisted giving testimony, engaging in difficult behavior. *See* Ex. A (refusal to answer where witness had received his education). *See also* the linked clips of Guo (Guo 1 and Guo 2 ) and Wang (Eastern's corporate representative) (Wang 1). Ordinarily, the presence of a judge—even relying mainly on nonverbal



cues—greatly lessens such behavior. Zoom will present a different dynamic. The Court will simply be another voice among many who believe they have the right to speak at a given time. In short, remote participation will not enable the court to fairly judge witness testimony and credibility.

The Court may be tempted to challenge the parties to face the rigors of self-isolation if in-person trial is important. Respectfully, that should not be the price of a fair trial, and importantly, Eastern's counsel does not say that it will also have to move its team or self-isolate. No one wants further delay of ten weeks or so, but the alternatives—Zoom or self-isolation—are far worse.

2.   **Bifurcation requires that the Court reverse its reasoning on summary judgment, and invites unnecessary complication, duplicative testimony, and potential error**. Eastern's bifurcation effort is a thinly-disguised demand that the Court reverse its summary judgment ruling. Citing the online Cambridge Dictionary as authority, Eastern asks this Court to reverse its findings on what the text of Virginia's statute demands, running the trial as if declaratory judgment depends only on a small subset of facts from Strategic Vision's witnesses.

This Court has just held that Virginia's "private investigator" statute is limited to cover engagements that are for law enforcement or quasi-law enforcement purposes. The precise definition in the text of the Virginia statute controls—not, as Eastern unsuccessfully argued, the meaning of the generic term, "private investigator," as determined by an online dictionary. The inquiry under Virginia law is whether this engagement was in fact to obtain information on "crimes and civil wrongs" for use in some identifiable proceeding. Va. Code Ann. § 9.1-138. As the Court noted, there are sharp disputes of fact on this point. The Research Agreement points in both directions. On the other hand, the testimony of Guo Wengui and Yvette Wang, which Strategic cited on summary judgment and this Court noted in its ruling, supports the theory that Eastern/Guo intended the Agreement for Guo's publicity campaign, either to achieve CCP regime change or to bolster his public persona and asylum application. Strategic's witnesses will agree on this point, because these were the very representations Guo made to Strategic (also relevant to the fraud claim), and these were also the representations made to Strategic by Lianchao Han, who testified the idea for the Research Agreement was his.[1] These facts are relevant to both the Declaratory Judgment and Fraud counts. And even under Eastern's theory of the Viriginia statute, the actual performance and work of Strategic Vision and "Eastern" will be relevant—but this is the same testimony that will also be relevant on each party's Breach of Contract claim, which Eastern wants to hold back for a later date.

But this is not even half the story. First, Strategic Vision raises two equitable defenses to the Declaratory Judgment claim: in pari delicto and unclean hands. For its *in pari delicto* defense, Strategic argues that if it was required to be registered because it provided the fruits of private investigation for value, then Eastern committed the very same wrong. Assuming for the sake of argument that Eastern is a real entity at all, it: (1) promised to share the research with multiple

---

[1] Eastern spills much ink predicting Strategic's argument on this point (Dkt. 292, p.3, bottom half of page), ascribing to Strategic the bizarre position that the question of whether Guo was truly a dissident must be resolved before determining the purpose of the Research Agreement. That has never been Strategic's position. Strategic's argument on summary judgment, which the Court noted and accurately cited in its ruling, was clear: the relevant inquiry is each party's understanding regarding the purpose of the contract. Strategic cited substantial evidence of Guo and Eastern's understanding. That will now be considered by the Court as factfinder. On this point, the question is not whether Guo actually pledged his allegiance to the CCP.



others, including ACA/William Je and Guo Wengui (the first element of the violation); and (2) received value (the second element of the violation), because with respect to ACA, had the research been "successful," then ACA was prepared to simply "forgive" what Eastern insists was a loan; and with respect to Guo, Guo's family office, GSNY, provided labor and staffing on the entire project at no charge to Eastern. The witnesses will be Guo, Wang, Han Chunguang, and William Je (if found). Eastern has unclean hands because Guo enticed Strategic to negotiate and work with no intention of (i) using the research to undermine the CCP, or (ii) of making payment. The factual basis for the first point is the same as Strategic's fraud counterclaim; the basis for the second point (that Eastern knew it never could or would pay) is evidence from Chunguang Han and Eastern that Eastern's only asset was $80,000 in a long-frozen Hong Kong bank account, and that even though the first monthly payment was due in January, requiring the transfer of another $750,000, Chunguang had not even had discussions with William Je about another "loan," and Eastern had no idea how it would make any future payments. Had Strategic known of this inequitable conduct, it would never have entertained the contract Eastern now claims should be voided.

Most surprising, Eastern's letter now seems to abandon Unjust Enrichment and suggests "Declaratory Judgment" would end with a murky "damages hearing." But as Eastern admitted when it first floated bifurcation, money cannot change hands unless the declaration of rescission is paired the remedy of restitution (Eastern's Unjust Enrichment Count IV). Deciding whether Eastern gets restitution under Count IV is not just a "damages hearing." Instead, as Strategic argued on summary judgment, Eastern must contend with Strategic's argument that the $1 million from ACA is not a benefit conferred by Eastern. The Court's summary judgment decision explains that this presents issues of fact: was ACA's $1 million reflective of a bona fide loan from ACA to Eastern Profit, or was Eastern just a shell with no chance of repayment, making the loan a sham and ACA a simple third-party payer?[2] The answer lies with Wang, Chunguang, and, if found, Je (ACA, and Guo's financier, who may need an interpreter) and Guo Mei (Guo's daughter, who may need an interpreter).

Though only a partial review of a Count III and IV trial, this shows that every live witness must testify. The Court would police each examination as if this were a jury trial, ruling on objections to ensure that the witnesses did not stray into topics relating only to fraud and breach of contract. The proceeding would then halt while the Court decided Counts III and IV on a potentially incomplete record, and if Eastern did not run the board on every claim and defense, the same witnesses would be recalled for unnatural "rump" examinations over what remained, inevitably duplicating some testimony. This unwieldy procedure injects continual chances for error. In contrast, without bifurcation, the Court can consider in its own time the relevance of the testimony to each claim or defense. If bifurcation ever truly makes sense in a bench-tried case, this is not it.

Respectfully submitted,

*/s/ Edward D. Greim*

Edward D. Greim

---

[2] With restitution, there remains the separate question of whether Eastern received value and whether the full $1 million should not be "returned" to Eastern, as this Court noted in its summary judgment ruling. That would involve testimony as to what value Eastern received via Strategic's reports back to Guo's agents, Ms. Wang and L. Han.



cc: Counsel of record via ECF

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com