UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED<br><br>    Plaintiff,<br><br>v.<br><br>STRATEGIC VISION US, LLC<br><br>    Defendant. | Case No. 18-CV-2185 (LJL) |

## JOINT [PROPOSED] PRETRIAL ORDER

This matter having come before the Court at a pretrial conference held pursuant to Fed. R. Civ. P. 16, and Troutman Pepper Hamilton Sanders LLP, having appeared as counsel for Plaintiff and Counterclaim Defendant Eastern Profit Corporation ("Eastern"), and Graves Garrett LLC, having appeared for Defendant and Counterclaimant Strategic Vision US, LLC ("Strategic"), the following actions were taken:

**I. JURISDICTION**

  1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

**II. NATURE OF CASE AND CLAIMS TO BE TRIED**

  2. The parties provide the following statement of claims and defenses.

  3. Eastern brought this action against Strategic on March 12, 2018 arising out of a written Research Agreement entered into between Eastern and Strategic on January 6, 2018 (the "Research Agreement"). Under the Research Agreement, Strategic agreed to provide Eastern with certain research deliverables. *See* Dkt. No. 19.

4. Through its lawsuit, Eastern primarily seeks to recover a $1 million deposit that it paid to Strategic pursuant to the Research Agreement, plus pre- and post-judgment interest. In an attempt to recover the deposit, and as set forth in Eastern's Second Amended Complaint (*see* Dkt. No. 93), Eastern asserted four causes of action against Strategic.

5. Eastern's first count is for breach of contract. In that count, Eastern alleges that Strategic breached the Research Agreement by failing to provide the research deliverables called for under the Research Agreement.

6. The parties have stipulated to the dismissal with prejudice of Eastern's second count, which alleged that Strategic made fraudulent misrepresentations to Eastern.

7. Eastern's third count is a declaratory judgment claim seeking an order declaring the Research Agreement void as against public policy. Specifically, Eastern alleges that Strategic Vision solicited, agreed to provide, and did in fact provide private investigation services to Eastern without a license in contravention with applicable state law, and that as a result, the Research Agreement is void and unenforceable.

8. Finally, Eastern's fourth cause of action seeks recovery of the $1 million deposit that was paid to Strategic pursuant to the Research Agreement under an unjust enrichment theory.

9. Strategic has filed two counterclaims and asserts defenses against Eastern. *See* Strategic's Amended Answer and Counterclaims (Dkt. No. 127).

10. Strategic's first counterclaim is for breach of contract. In that count, Strategic claims that Eastern agreed to pay to Strategic a fee of $750,000 per month for Strategic's work under the Research Agreement and that Eastern breached the Research Agreement by failing to pay such amount for the time period of January 16, 2018 through March 21, 2018, and otherwise

breached implied covenants in the Agreement, including the implied covenant of good faith and fair dealing.

Strategic's second counterclaim, which is also a defense, is for fraudulent inducement. In that count, Strategic alleges that Guo Wengui (a/k/a Miles Kwok), in negotiating the Research Agreement on behalf of Eastern, falsely represented to Strategic that he "was a Chinese dissident," that "he opposed the Chinese Communist Party," and that "through the contract with Strategic Vision, he was actively working to find and publicize research regarding key Chinese leaders that he would then use to weaken the Chinese regime and support a move to a more democratic and U.S.-friendly regime." Strategic seeks damages for its alleged detrimental reliance on Guo's false representations.

For its defenses against Eastern's claims, Strategic argues that Eastern cannot receive damages in the form of a $1 million deposit that was paid to Strategic, because Eastern never paid that deposit. Instead, a third-party payer or investor that is not part of this case, ACA, actually paid the $1 million to Strategic, and Eastern cannot receive a return of funds it never paid. Strategic also asserts other defenses you will hear about during the trial.

One of Eastern's primary defenses against Strategic's breach of contract claim is that Eastern is excused from paying Strategic under the Research Agreement because Strategic failed to provide the deliverables called for in the Agreement. As for its defenses against Strategic's fraud claim, Eastern argues that the alleged misrepresentations are not provable, that Eastern made no misrepresentation of fact, that Strategic cannot demonstrate reasonable reliance, and that Strategic cannot prove damages. Eastern also asserts other defenses you will hear about during the trial.

### III.   LIST OF PEOPLE, PLACES, AND INSTITUTIONS

11. A list of individuals, places, and institutions that may be referenced at trial is as follows:

| Individual, Place, Institution | Affiliation |
|---|---|
| Eastern Profit Corporation | Plaintiff and Counterclaim Defendant |
| Han Chunguang a/k/a "Hank" | Agent of Eastern for certain purposes |
| Yvette Wang | Agent of Eastern for certain purposes |
| Guo Wengui a/k/a Miles Kwok | Agent of Eastern for certain purposes |
| Guo Mei | Sole owner and director of Eastern; Guo Wengui's daughter |
| Golden Spring (New York) | Agent of Eastern for purposes of the Agreement |
| Karin Maistrello | Employee of Golden Spring; former director of ACA |
| Sasha Gong | Journalist |
| Strategic Vision US, LLC | Defendant and Counterclaimant |
| French Wallop | Chief Executive Officer of Strategic |
| J. Michael Waller | Agent of Strategic for certain purposes |
| ASOG | Firm of Texas investigators retained by Strategic |
| Lianchao Han | Involved in introducing Guo Wengui to French Wallop and Michael Waller |
| William Gertz | Journalist involved in introducing Guo Wengui to French Wallop and Michael Waller |
| ACA Capital Group Limited | Wired $1 million deposit to Strategic on December 29, 2017 |
| William Je a/k/a William Yu a/k/a Yu Jianming | Agent of ACA |

### IV.   JOINT STATEMENT OF ADMITTED FACTS

12. The parties' Joint Statement of Admitted Facts is attached hereto as **Exhibit A**.

13. The facts set forth in the parties' Joint Statement of Admitted Facts require no proof at trial and are part of the evidentiary record in this case.

14. The facts set forth in the parties' Joint Statement of Admitted Facts may be used to impeach witnesses at trial.

## V. **WITNESSES**

15. Eastern's witness list is attached hereto as **Exhibit B**.

16. Strategic's witness list is attached hereto as **Exhibit C**.

17. The parties' witness lists represent the parties' good faith understanding and expectation about which witnesses are expected to be called at trial.

18. The parties may amend their witness lists to address any pre-trial rulings made by the Court, including rulings on any motions *in limine* that the parties file. However, once those amendments are made, the parties may not call any witness that is not identified on a party's witness list, except for good cause shown or by agreement of the parties.

## VI. **DEPOSITION DESIGNATIONS**

19. Eastern's list of deposition designations, Strategic's objections to such designations, Strategic's counter-designations, and Eastern's objections to such counter-designations is attached hereto as **Exhibit D**.

20. Strategic's list of deposition designations, Eastern's objections to such designations, Eastern's counter-designations, and Strategic's objections to such counter-designations is attached hereto as **Exhibit E.**

21. The parties may amend their deposition designations to address any pre-trial rulings made by the Court, including rulings on any motions *in limine* that the parties file. However, once those amendments are made, the parties may not list new deposition designations or counter-designations or provide new objections to listed designations or counter-designations, except for good cause shown or by agreement of the parties.

22. If applicable, a party's designation of a page and line from a particular transcript shall be automatically deemed to include any errata indicated for that page and line in the associated errata sheets.

23. The parties agree that all deposition designations and counter-designations will be provided to the Court in advance of trial. Except for testimony that is subject to objections that are sustained by the Court, all designated testimony will become part of the trial record that the Court may consider in rendering its rulings in this matter. The parties may but are not required to read or play designated deposition testimony during trial hours, provided, however, that if a party chooses to read or play a particular witnesses' deposition testimony at trial, other than for the purposes of impeachment, then that party must read or play all of the designated testimony for that witness, other than the testimony that is subject to objections that are sustained by the Court. The parties will revisit deposition designations after the trial and de-designate testimony that has become part of the trial record through live witness testimony.

## VII.   EXHIBITS

24. Eastern's list of pre-marked trial exhibits, excluding exhibits solely for impeachment, that it intends to offer at trial, including Strategic's objections thereto, is attached hereto as **Exhibit F**.

25. Strategic's list of pre-marked trial exhibits, excluding exhibits solely for impeachment, that it intends to offer at trial, including Eastern's objections thereto, is attached as **Exhibit G**.

26. Subject to the remaining provisions of this Order, each exhibit list contains all of the exhibits that a party intends to present at trial, other than exhibits used solely for impeachment.

27. The parties' exhibit lists identify concisely the basis or bases for the other party's objection, if any, to each listed exhibit. The parties will continue to negotiate regarding objections. Exhibits to which no objection has been made are received in evidence by operation of this Order, without any need for further foundation testimony.

28. Except as noted in the exhibit lists, the parties stipulate to the authenticity of all exhibits. Any objection to a document's authenticity must be made in this Order.

29. Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original or it would be unfair to admit the copy in lieu of the original.

30. The parties agree that any description of a document on an exhibit list is provided for convenience only and shall not be used as an admission or otherwise as evidence regarding the listed document or any other listed document.

31. Neither party will remove a document from its exhibit last after the date of this Order without agreement from the other party, unless it provides the other party the opportunity to add the document to its exhibit list.

32. The parties may amend their exhibit lists to address any pre-trial rulings made by the Court, including rulings on any motions *in limine* that the parties file. However, once any such amendments are made, a party may not add exhibits to its exhibit list except for good cause shown, by agreement of the other parties, or documents that are used solely for impeachment.

33. Any party may use an exhibit that is listed on the other party's exhibit list, to the same effect as though it were on its own exhibit list, subject to all evidentiary objections.

34. Any exhibit, once admitted at trial, may be used equally by each party for any proper purpose in accordance with the Federal Rules of Evidence.

35. The listing of a document on a party's exhibit list is not an admission that such document is relevant or admissible when offered by the opposing party for the purpose that the opposing party wishes to enter the document into evidence.

36. Demonstrative trial exhibits need not be listed on the parties' exhibit lists. Eastern's demonstratives will be identified with "PDX" numbers. Strategic's demonstratives will be identified with "DDX" numbers. The party seeking to use a demonstrative will provide a color representation of the demonstrative to the other side in PDF, PowerPoint, or some other commonly viewable format, according to the schedule below. For irregularly sized physical exhibits, the party seeking to use the demonstrative will provide a color representation as a PDF of 8.5 x. 11 inch copies of the exhibits.

37. Each party will exchange by e-mail PDFs of demonstrative trial exhibits by 5:00 p.m. ET one calendar day before they will be used at trial. Likewise, demonstratives to be used during opening or closing statements will be exchanged by e-mail by 5:00 pm EDT one calendar day before opening statements will be presented at trial.

38. The party receiving identification of demonstrative trial exhibits shall inform the party identifying the exhibits of any objections by 10:00 p.m. ET on the day of receipt, and the parties shall meet and confer as soon as possible thereafter to resolve such objections. Any objections to any demonstrative trial exhibit that are maintained following a meet and confer process may be taken up with the Court prior to the witness's testimony or as otherwise directed by the Court.

39. The advance notification provisions for demonstrative trial exhibits do not apply to demonstrative exhibits that contain only excerpts, enlargements, and/or highlights of the

text of exhibits that have been properly identified for use during the direct examination of the particular witness.

## VIII.   STATEMENT OF DAMAGES CLAIMED

### A.   Eastern's Claimed Damages

40. Eastern seeks the return of the $1 million deposit that it caused to be paid to Strategic pursuant to the Research Agreement, plus pre- and post-judgment interest.

### B.   Strategic's Claimed Damages

41. On its breach of contract claim, Strategic Vision seeks the following: $1,693,548.45, which is the amount due under the contract between January 16, 2018 and March 23, 2018, plus, for the period of March 23, 2018 to April 16, 2018, $100,000 in lost profits (lost revenues minus expected expenses). On this sum, it seeks New York statutory pre-judgment interest, as well as post-judgment interest.

42. For its fraud claim, Strategic Vision seeks rescission of the contract and $763,000 in expenses incurred in reliance on the contract.

## IX.   FORM AND LENGTH OF TRIAL

1. The parties have consented to a bench trial in this matter.

2. The parties do not consent to trial by a magistrate judge.

3. The trial shall begin on January 11, 2021 and last for five days. Trial time shall be split evenly between the parties.

[SIGNATURES ON FOLLOWING PAGE]

| | |
|---|---|
| */s/ Joanna J. Cline* | */s/ Edward D. Greim* |
| Francis J. Lawall (Admitted to S.D.N.Y.) | Edward D. Greim (NY Bar ID No. 4240172) |
| TROUTMAN PEPPER HAMILTON SANDERS LLP | Jennifer Donnelli (*Pro Hac Vice*) |
| 3000 Two Logan Square | Lucinda Luetkmeyer (*Pro Hac Vice*) |
| Eighteenth and Arch Streets | 1100 Main Street, Suite 2700 |
| Philadelphia, PA  19103 | Kansas City, MO 64105 |
| Telephone: 215.981.4000 | Telephone: (816) 256-3181 |
| Fax: 215.981.4750 | Fax: (816) 256-5958 |
| | |
| | *Attorneys for Strategic Vision US LLC* |

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE  19801
Telephone: 302.777.6500
Fax: 302.421.8390

*Attorneys for Eastern Profit Corporation*


SO ORDERED this ___ day of _____, 2020


_____
The Honorable Lewis J. Liman