## UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED,<br><br>Plaintiff,<br><br>v.<br><br>STRATEGIC VISION US, LLC,<br><br>Defendant. | Case No. 18-CV-2185 (LJL) |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION *IN LIMINE*

**TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................................. 1

II. Standard of Review ........................................................................................................... 2

III. ARGUMENT ..................................................................................................................... 3

    A. Statements Purportedly Made By ASOG Regarding Certain Subject's Supposed "Records-Protected" Status are Inadmissible ......................................... 3

    B. The Newspaper Articles That Strategic Seek to Introduce Into Evidence at Trial are Inadmissible Hearsay ............................................................................... 6

    C. Lay Testimony and Related Documents Regarding whether Certain Actions or Inactions are Consistent with the Typical Behavior of Chinese Dissidents Who Oppose the CCP are Inadmissible ................................................ 8

    D. Various Testimony Designated by Strategic should be Excluded pursuant to Magistrate Judge Freeman's Prior Relevancy Rulings ...................................... 12

V. CONCLUSION ................................................................................................................ 14

## **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Allen v. City of New York*,
  480 F. Supp. 2d 689 (S.D.N.Y. 2007)..................................................................................6

*Bensen v. Am. Ultramar Ltd.*,
  1996 WL 422262 (S.D.N.Y. July 29, 1996) ......................................................................4, 5

*In re Columbia Sec. Litig.*,
  155 F.R.D. 466 (S.D.N.Y.1984) ...........................................................................................7

*De Venustas v. Venustas Int'l, Inc.*,
  2007 WL 2005560 (S.D.N.Y. July 10, 2007) .......................................................................3

*Gonzalez v. City of New York*,
  354 F. Supp.2d 327 (S.D.N.Y. 2005)....................................................................................6

*Griffin v. City of New York*,
  287 F. Supp. 2d 392 (S.D.N.Y. 2003)...................................................................................6

*Holmes v. Gaynor*,
  313 F.Supp.2d 345 (S.D.N.Y.2004)......................................................................................6

*Kelly v. City of New York*,
  2002 WL 1482795 (S.D.N.Y. 2002)......................................................................................7

*Ladner v. City of New York*,
  20 F. Supp. 2d 509 (E.D.N.Y. 1998) ....................................................................................7

*In re Lawrence*,
  2008 WL 2095863 (Bankr. N.D.N.Y. May 16, 2008) ..........................................................2

*Leon v. TransAm Trucking, Inc.*,
  2020 WL 728785 (S.D.N.Y. Feb. 13, 2020) (Liman, J.) ......................................................9

*Lesnik v. Lincoln Fin. Advisors Corp.*,
  2020 WL 3057456 (S.D.N.Y. June 9, 2020) (Liman, J.)......................................................3

*Luce v. United States*,
  469 U.S. 38, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).............................................................2

*McAllister v. New York City Police Dept.*,
  49 F. Supp. 2d 688 (S.D.N.Y. 1999).....................................................................................7

*Miles v. City of New York*,
  2002 WL 31410346 (E.D.N.Y. Oct 24, 2002).......................................................................7

*Palmieri v. Defaria*,
    88 F.3d 136 (2d Cir.1996)..................................................................................................2

*Pavone v. Puglisi*,
    2013 WL 245745 (S.D.N.Y. Jan. 23, 2013) .......................................................................2

*United States v. Butler*,
    351 F. Supp. 2d 121 (S.D.N.Y. 2004).................................................................................2

*United States v. Garcia*,
    413 F.3d 201 (2d Cir. 2005)................................................................................................9

I. **<u>INTRODUCTION</u>**

The salutary purpose of motions *in limine* are to facilitate an efficient, focused trial. Eastern Profit Corporation Limited ("<u>Eastern</u>") respectfully submits that for there to be any chance of an efficient, focused trial in this case, the Court must prevent Strategic Vision US, LLC ("<u>Strategic</u>") from offering the wide range of irrelevant, prejudicial, and otherwise inadmissible evidence that it seeks to present.

This action, at its core, is a contract dispute. Eastern and Strategic entered into a Research Agreement. Under the agreement, Strategic agreed to provide certain investigatory deliverables to Eastern in exchange for money. As it has *repeatedly admitted* in this action, Strategic wholly failed to provide the investigatory deliverables called for under the Research Agreement. Eastern therefore terminated the Research Agreement and demanded repayment of the $1 million deposit that it put down in connection with the signing of the contract. Despite its admitted failure to perform under the Research Agreement, Strategic has refused to return the $1 million deposit to Eastern. As a consequence, Eastern brought suit to recover the deposit, plus pre- and post-judgment interest.

Strategic's response has been to mount bizarre and unsupported impossibility and fraud defenses. As for impossibility, Strategic claims that some of the individuals were unable to be legally investigated, but relies solely upon hearsay statements made by purported members of investigative teams that were not deposed in this action and are not being called to testify at trial by either party. As for its fraud allegations, Strategic claims that its failure to perform under the agreement should be excused because Eastern's agent, Guo Wengui, represented that he was a Chinese dissident who seeks to expose corruption within the Chinese Communist Party ("CCP"), but is actually, according to Eastern, a double agent who works for the CCP. Strategic claims that it would not have entered the Research Agreement with Eastern Profit had it known the

"truth" about Mr. Guo's affiliation with the CCP. To the extent there even are material facts relating to such a claim that are capable of being proven true or false, Strategic has no admissible evidence to support its theory. Instead, it seeks to introduce a wide range of irrelevant and inadmissible documents and testimony, including impermissible lay opinion testimony and hearsay.

Eastern respectfully submits that the Court should issue an advance ruling excluding these exhibits so that the trial may proceed in an efficient and focused manner..

## II.   STANDARD OF REVIEW

"The purpose of a motion *in limine* is to facilitate an efficient trial 'by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.'" *Pavone v. Puglisi*, 2013 WL 245745, at *1 (S.D.N.Y. Jan. 23, 2013) (citing *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir.1996)); *see also Luce v. United States*, 469 U.S. 38, 41 n. 4, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) (noting that, although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); *United States v. Butler*, 351 F. Supp. 2d 121, 133 (S.D.N.Y. 2004) (stating that "the salutary purpose" of motions in limine are to "further the efficiency of the trial process."). Such motions are especially useful "to afford a basis for advance planning of trial strategy." *In re Lawrence*, 2008 WL 2095863, at *1 (Bankr. N.D.N.Y. May 16, 2008).

## III. ARGUMENT[1]

### A. Statements Purportedly Made By ASOG Regarding Certain Subject's Supposed "Records-Protected" Status are Inadmissible

The Court should preclude Strategic, pursuant to Rules 701 and 801 of the Federal Rules of Evidence, from offering into evidence any testimony and any documents that purportedly reflect out-of-court statements by Strategic's supposed subcontractors that certain of the subjects to be investigated under the Research Agreement were designated as so-called "records-protected" and therefore could not be legally investigated. As explained below, the statements in question are inadmissible hearsay and are embedded with improper opinion testimony about the legality of investigating certain individuals without any foundation or any corroboration in the law, such as a reference to the particular U.S. statute or regulation that supposedly protects such records.

Under Rule 801, "'hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801(c); *De Venustas v. Venustas Int'l, Inc.*, 2007 WL 2005560, at *1 (S.D.N.Y. July 10, 2007). Hearsay "is not admissible except as provided by [the Federal Rules of Evidence] or by other rules prescribed by the Supreme Court pursuant to statutory authority or by Act of Congress." *Venustas*, 2007 WL 2005560, at *1; *see also Lesnik v. Lincoln Fin. Advisors Corp.*, 2020 WL 3057456, at *2 (S.D.N.Y. June 9, 2020) (Liman, J.) ("But the supervisor's testimony about what the client told him is offered for the truth of the matter asserted (*i.e.*, that the registered representative was saying bad things about Plaintiff) and

---

[1] For an overview of the relevant factual background of this case, see the Statement of Facts section in Eastern's Memorandum of Law in support of its Motion for Summary Judgment. Dkt. 261 at 3-12.

Eastern's trial exhibits (PX) and Strategic's trial exhibits (DX) will be delivered to Chambers via CD-ROM.

constitutes hearsay."). Under Rule 701, lay opinions regarding illegality are inadmissible. *See* Fed. R. Evid. 701; *Bensen v. Am. Ultramar Ltd.*, 1996 WL 422262, at *13 (S.D.N.Y. July 29, 1996) ("[L]ay legal conclusions are inadmissible in evidence").

Strategic has repeatedly admitted in this action that it failed to provide the deliverables it was obligated to provide to Eastern under the Research Agreement.[2] One of the excuses that Strategic has come up with for its failed performance is impossibility—*i.e.*, that some or all of the names on the Subject List were supposedly designated "records protected" by the United States and could not be legally researched.

Specifically, Strategic's representatives, Ms. Wallop and Mr. Waller, claim that they learned of this "records protected" designation from one of the two independent contractor investigative teams it allegedly hired assist with its investigation under the Research Agreement. Ms. Wallop and Mr. Waller claim that members of "Team 2," which was purportedly comprised of investigators from a company called Allied Security Operations Group ("ASOG"), *told them* that at least some of names on the Subject List were "records protected" and that it was a crime to investigate them.[3] For example, Mr. Waller testified at his deposition as follows:

> Q. Team 2 -- who ran team 2?
>
> A. That was the ASOG, A-S-O-G, in Texas. . . .
>
> Q. So what did they report to you was a problem with the list of fish?

---

[2] *See* Dkt. No. at 275 at 89-98; *see also* Joint Statement of Admitted Facts attached as Exhibit A to Proposed Pre-Trial Order (Dkt. No. 299) ¶¶ 25-32.

[3] *See* Ex. A, Waller I at 179:21-185:24, 218:14-1, 291:05-219:25, 260:02-09; Ex. B, Waller II at 105:03-107:21; Ex. C, Wallop I at 232:07-241:03, 248:03-251:19, 254:06-256:17, 270:08-12, 285:12-286:05 (testifying that ASOG told her "four or five" names were records protected); Ex. D, Wallop II at 24:05-26:10; Ex. E, L. Han at 195:02-196:11, 231:06-231:20, 238:15-242:21, 290:07-292:20 (testifying that Wallop told him that ASOG told her that four or five names were purportedly records protected).

> A. . . . . They found – the most important thing they found was that all of the main 15 names had been designated by federal authorities as records protected, and that it was a crime to try to get their records, because these individuals were somehow either the subject of an active U.S. criminal or counterintelligence investigation or were Chinese nationals collaborating with the U.S. authorities.
>
> Q. Okay. So what does "records protected" mean to you?
>
> A. The way we were told by the research team was – and by others when we looked at it, I had not heard the term before – that any records pertaining – any official records pertaining to those individuals were protected by the U.S. government. Meaning you could not go to, say, the state of California contact to get their driver's license number. That would be a crime. . . .
>
> Q. So ASOG described this to you?
>
> A. Yes. . . .
>
> Q. Did ASOG give you any documentation about this records-protected designation that they told you about?
>
> A. No.

*Id.*

As the testimony cited above and in footnote 3 reflects, Ms. Wallop and Mr. Waller never heard of the phrase "records-protected" before ASOG supposedly told them about it, they do not know what "records-protected" means other than what ASOG purportedly told them, and they are not aware of the legal source or basis of the so-called "records-protected" designation. *See supra* n. 3. Instead, Strategic bases its impossibility defense solely upon out-of-court statements purportedly made by members of ASOG.

Despite that, *Strategic is not calling any member of ASOG to testify in Court and no member of ASOG has been deposed in this litigation.*[4] As a consequence, any and all testimony or documents reflecting purported statements by ASOG about the so-called "records-protected"

---

[4] *See* Strategic's Witness List attached as Exhibit C to the Proposed Pre-Trial Order (Dkt. No. 299).

designation is garden-variety inadmissible hearsay. Such statements out-of-court declarations offered for the truth of the matter asserted for which no hearsay exception applies, and are therefore inadmissible under Rule 801. Exacerbating the prejudicial impact of these statements is that they purport to convey an opinion as to what U.S. law provides without citation to any legal support or testimony from an expert knowledgeable in this specialized field in violation of Rule 701.

For these reasons, the Court should preclude Strategic from offering into evidence any documents or testimony—whether live or by designation and including the testimony cited in footnote 3—that purportedly reflect statements by ASOG that certain of the subjects to be investigated under the Research Agreement were designated as "records-protected" and therefore could not be legally investigated.

### B. The Newspaper Articles That Strategic Seek to Introduce Into Evidence at Trial are Inadmissible Hearsay

The Court should preclude Strategic, pursuant to Rule 801 of the Federal Rules of Evidence, from offering into evidence at trial the newspaper and online articles that Strategic identified on its exhibit list as DX Nos. 32, 34, 41, 43, 44, 72, 73, 74, 77, 82, 87, 88, 89, 90, 92, 93, 94, 95, 101, and 116.

It is well-settled that newspaper and online articles are inadmissible hearsay when introduced to prove the truth of the matter asserted. *See, e.g., Allen v. City of New York*, 480 F. Supp. 2d 689, 719-21 (S.D.N.Y. 2007) (holding online article from "CNN.com" was inadmissible hearsay); *Gonzalez v. City of New York*, 354 F. Supp.2d 327, 347 n.29 (S.D.N.Y. 2005) (noting that "newspaper articles are inadmissible hearsay"); *Holmes v. Gaynor*, 313 F.Supp.2d 345, 358 (S.D.N.Y.2004) (holding newspaper article inadmissible on hearsay grounds); *Griffin v. City of New York*, 287 F. Supp. 2d 392, 395 (S.D.N.Y. 2003) ("Unsworn

assertions as to things that allegedly appeared in a newspaper are not admissible in evidence"); *Miles v. City of New York*, 2002 WL 31410346, at *4 n.3 (E.D.N.Y. Oct 24, 2002) ("[N]ewspaper articles [are] inadmissible hearsay"); *Kelly v. City of New York*, 2002 WL 1482795, at *4 (S.D.N.Y. 2002) ("[I]t is well accepted that newspaper articles are inadmissible hearsay."); *McAllister v. New York City Police Dept.*, 49 F. Supp. 2d 688, 706 (S.D.N.Y. 1999) ("Newspaper articles are hearsay, however, and therefore are not admissible evidence"); *Ladner v. City of New York*, 20 F. Supp. 2d 509, 519 (E.D.N.Y. 1998) ("newspaper article[s] [are] inadmissible hearsay"); *In re Columbia Sec. Litig.*, 155 F.R.D. 466, 474 (S.D.N.Y.1984) ("Often, when offered to prove that certain statements were made, newspaper and magazine articles are held inadmissible as hearsay.").

Here, Strategic seeks to introduce a number of online articles to prove the purported truth of certain matters asserted within those articles. For instance, in supposed support of its claim that Mr. Guo is actually a double agent who works for the CCP, Strategic: (i) claims that Mr. Guo has some ties to a man named William Je; (ii) claims that William Je's unauthenticated LinkedIn page says that he is affiliated with a Hong Kong Patriotic Group called the Hong Kong Chongqing Friendship Federation; and (iii) then cites DX Nos. 87, 88, 89, 90, 93, 94, 95, 101 for the general proposition that some Hong Kong Patriotic Groups might be supported or sponsored by the Chinese government. *See* Dkt. 275 at 38-40 ¶¶ 106-112 (describing purpose for which these articles are being cited). In other words, Strategic argues that because Mr. Guo has ties to someone whose unauthenticated LinkedIn Page says he is connected with a particular Hong Kong organization, and that some similar organizations may have ties with the Chinese government, that that means Mr. Guo is a CCP operative. *Id.*

While there are many, many weak links to the thrice-removed evidentiary chain that Strategic seeks to create, it is sufficient to point out for the purposes of determining the admissibility of DX Nos. 87, 88, 89, 90, 93, 94, 95, 101 that Strategic seeks to admit these articles in an effort to show that some Hong Kong Patriotic Groups are supported or sponsored by the Chinese government. Because Strategic is seeking to use those articles to prove the purported truth of certain matters asserted within the articles, they are inadmissible hearsay and must be excluded from evidence.

Similarly, Strategic seeks to introduce DX77 in an effort to prove that Mr. Guo has ties to ACA Capital Group Limited ("ACA"). Dkt. No. 275 at 31, 33 ¶¶ 87, 97. DX 41 is nothing more than an article summarizing the allegations that Strategic Vision makes in this litigation. Strategic cites to DX 72, 73, 74, and 116[5] in an effort to prove that Mr. Guo has had some dealings with Steve Bannon, although the reason why is unclear. *See* Dkt. 275 at 18 ¶ 41. And Strategic cites DX Nos. 32, 34, 43, 44 and 82 to show that Mr. Guo has some ties to Mainland China.

In short, Strategic seeks to introduce each and every one of the articles on its exhibit list—DX Nos. 32, 34, 41, 43, 44, 72, 73, 74, 77, 82, 87, 88, 89, 90, 92, 93, 94, 95, 101, and 116—to prove the purported truth of certain matters within them. The articles are therefore inadmissible hearsay and must be excluded from evidence.

C. **Lay Testimony and Related Documents Regarding whether Certain Actions or Inactions are Consistent with the Typical Behavior of Chinese Dissidents Who Oppose the CCP are Inadmissible**

The Court should preclude Strategic, pursuant to Rule 701 of the Federal Rules of Evidence, from offering testimony by any witness regarding whether certain actions or

---

[5] DX116 is also inadmissible pursuant to Rule 404 of the Federal Rules of Evidence.

inactions—such as level of contact with people in mainland China and access to funds in certain geographic locales—are inconsistent with being a Chinese dissident who opposes the CCP. The Court should also bar Strategic from offering DX Nos. 30-31, 33, 35-37, 51-52, 67, 70, 76, 78, 79, 81, 83-90, 92-114 for similar reasons, which are elaborated upon below.

Rule 701 of the Federal Rules of Evidence states that "[i]f a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

The purpose of the third requirement of Rule 701—subsection (c)—is to "prevent a party from conflating expert and lay opinion testimony thereby conferring an aura of expertise on a witness without satisfying the reliability standard for expert testimony set forth in Rule 702." *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005). Indeed, the Advisory Committee explains that the purpose of Rule 701(c) is "to eliminate the risk that the reliability requirements set forth in Rule 702 will be evaded through the simple expedient of proffering an expert in lay witness clothing." *See* Advisory Committee Notes to 2000 Amendments.

Thus, "testimony cannot be received as lay opinion if it is based on scientific, technical, or other ***specialized knowledge***." *Garcia*, 413 F.3d at 215 (emphasis added). Rather, "a lay opinion must be the product of reasoning processes familiar to ***the average person in everyday life***." *Id.* (emphasis added); *see also Leon v. TransAm Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y. Feb. 13, 2020) (Liman, J.) ("Second, the proposed testimony is independently inadmissible because it depends, at least in part, 'on his specialized training and experience.' The Second Circuit has made clear that "[i]f the opinion rests 'in any way' upon

scientific, technical, or other specialized knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701.' '[A] lay opinion must be the product of reasoning processes familiar to the average person in everyday life.'") (citations omitted).

Here, with respect to its fraud claim, Strategic alleges that Eastern falsely represented that Mr. Guo is a Chinese dissident who opposes the CCP. Strategic has no evidence to prove its claim (because there is none), and so Strategic seeks to introduce testimony—mainly from Michael Waller, one of Strategic's representatives, and Sasha Gong, a reporter—regarding their opinions as to whether certain of Mr. Guo's actions or inactions over the course of years— are not what they regard as typical "dissident activity" and somehow evidence that Guo Wengui is actually a supporter of the CCP.[6]

For instance, Sasha Gong, a reporter that interviewed Guo Wengui, testified as follows:

> Q. But in that vein, you know, in your experience with the Chinese government's policing of dissident activities, would it even be possible for an entity like ACA to transfer money out of Hong Kong under the control of William Je without the approval of the Chinese government?
>
> A. Well, that is very hard-to-answer questions. And if ACA -- given -- given the possibility that ACA and -- and William Je is related on the work with the Chinese government, the answer would be yes. If they have nothing to do with the Chinese government, the answer is no. . . . .
>
> Q. And does someone living in the U.S. who is a high-profile dissident opposing the CCP face risks of surveillance if they make regular phone calls over open cell phone lines to the mainland?

---

[6] Some of these lay opinion statements are based on out-of-court statements purportedly by Mr. Guo or online articles, which are themselves inadmissible hearsay. For example, Strategic represents that DX 35 is a translation of a letter written by Mr. Guo. Even if Strategic could lay a foundation for this letter and successfully attribute it to Mr. Guo, it is hearsay. Mr. Guo did not make the statement in the scope of any agency relationship with Eastern. *See supra* at 8.

> A. Of course, because I don't even call my family that much, being afraid of, you know, the -- the -- the secret police going after them. . . . .[7]

The testimony set forth above and in footnote 7 is inadmissible lay opinion. Indeed, whether or not Mr. Guo's alleged use of certain terminology, making contact with certain individuals in China, or moving money out of China through other entities is "dissident activity" is precisely the type of specialized testimony that cannot offered by a lay witness, such as Ms. Gong. Such testimony would require specialized knowledge of the CCP, its policies and politics, its influence over former Mainland China residents, and its ability to control the flow of funds out of Mainland China and Hong Kong. It would also require specialized knowledge regarding how typical and somehow verified Chinese dissidents conduct themselves. In short, whether certain actions or inactions taken by Mr. Guo are consistent with how a typical Chinese dissident who opposes the CCP behaves is not "the product of reasoning processes familiar to the average person in everyday life." Accordingly, the testimony is inadmissible lay testimony.

The Court should preclude Strategic, pursuant to Rule 701 of the Federal Rules of Evidence, from offering any testimony, whether live or by designation, by Ms. Gong or any other witness regarding whether certain actions or inactions Mr. Guo purportedly took are inconsistent with being a Chinese dissident who opposes the CCP, including but not limited to the testimony cited in footnote 7.

Relatedly, the Court should bar Strategic from seeking to introduce DX Nos. 30-31, 33, 35-37, 51-52, 67, 70, 76, 78, 79, 81, 83-90, 92-114 at trial for the same reasons. As reflected in Strategic's Rule 56.1 statement submitted in connection with the pending motions for

---

[7] Ex. F, Dep. Tr. of Sasha Gong at 15:21-16:12, 29:20-33:09, 39:12-40:15, 54:23-78:08, 93:01-96:10, 114:10-116:03, 124:04-17, 134:02-17, 139:14-142:14, 151:06-153:04, 157:13-157:20, 158:09-171:02, 175:10-187:04; *see also* Ex. B, Waller II at 11:14-125:18, 31:20-55:19 (emphasis added).

summary judgment, Strategic attempts to show, through of web of confusing and often inconsistent alleged connections, that entities or websites that Guo Wengui is allegedly connected with have "Mainland [China] IP addresses, email addresses, and recovery phone numbers." Dkt. No. 272 at 15; Dkt. No. 275 ¶¶ 66-124.

For any of these documents to be even remotely relevant, Strategic would need an expert witness who meets the requirements of Rule 702 to testify regarding whether such contacts with Mainland China are inconsistent with being a Chinese dissident who opposes the CCP. Strategic has not, however, designated a testifying expert in this case. Instead, Strategic seeks to use the impermissible lay testimony to establish this point—testimony that, for the reasons set forth above, is inadmissible pursuant to Rule 701. Because that is so and because there is no witness that can lay a foundation for these documents or testify about the purported implications of these documents, DX Nos. 30-31, 33, 35-37, 51-52, 67, 70, 76, 78, 79, 81, 83-90, 92-114 must also be excluded.

### D. Various Testimony Designated by Strategic should be Excluded pursuant to Magistrate Judge Freeman's Prior Relevancy Rulings

Finally, Strategic has designated deposition testimony regarding topics that the Court has already deemed to be irrelevant and therefore inadmissible. The Court should therefore preclude Strategic from offering such testimony at trial.

First, Strategic designates deposition testimony regarding the independent financial identity of Eastern, including its assets, liabilities, employees, practices and procedures, and other similar subjects.[8] This testimony relates to Strategic's dismissed alter-ego claim[9] and

---

[8] Ex. G, Dep. Tr. of Yvette Wang dated January 31, 2019 (Wang I) at 12:19-29:07, 91:23-92:18; 231:03-232:14; 258:05-262:18; Ex. H, Dep. Tr. of Yvette Wang dated October 30, 2019 (Wang II) at 76:12-78:18, 219:19-20; Ex. I, C. Han Tr. at 49:23-57:23, 76:13-78:23.

[9] *See* Dkt. No. 96; *see also* Dkt. No. 66.

Magistrate Judge Freeman[10] has already ruled that evidence regarding this topic is irrelevant and therefore inadmissible.[11]

Second, Strategic designates testimony regarding Golden Springs New York's business dealing with ACA.[12] Magistrate Judge Freeman has also already ruled that evidence regarding this topic is irrelevant and therefore inadmissible.[13]

For these reasons, the Court should bar Strategic from offering the testimony set forth in footnotes 9 and 13 and any live testimony regarding the same subjects because Magistrate Judge Freeman has already ruled that evidence regarding those subjects is irrelevant and therefore inadmissible.

---

[10] This matter was referred to Magistrate Judge Freeman for all general pre-trial matters, including discovery disputes. Dkt. No. 128.

[11] *See* Dkt. No. 189 at 4.

[12] Ex. J, Dep. Tr. of Amelia Coluccio (Golden Spring New York) at 104:02-05, 156:08-18; Ex. K, Dep. Tr. of Karin Maistrello at 52:15-17; Ex. L, Dep. Tr. of Guo Wengui dated December 4, 2019 (Guo II) at 324:25-329:09.

[13] Dkt. No. 189 at 2, 9.

V.     **CONCLUSION**

For the foregoing reasons, the Court should preclude Strategic from offering into evidence:

1.     any testimony or documents that purportedly reflect out-of-court statements by ASOG that certain of the subjects to be investigated under the Research Agreement were designated as so-called "records-protected", including the testimony set forth in footnote 3, pursuant to Rules 701 and 801 of the Federal Rules of Evidence;

2.     the newspaper and online articles that Strategic identified on its exhibit list as DX Nos. 32, 34, 41, 43, 44, 72, 73, 74, 77, 82, 87, 88, 89, 90, 92, 93, 94, 95, 101, and 116 pursuant to Rule 801 of the Federal Rules of Evidence;

3.     any testimony by any witness, including Sasha Gong, regarding whether certain actions or inactions by Mr. Guo are inconsistent with being a Chinese dissident that opposes the CCP, including the testimony set forth in footnote 7, and relatedly, DX Nos. 30-31, 33, 35-37, 51-52, 67, 70, 76, 78, 79, 81, 83-90, 92-114, pursuant to Rules 602, 701, and 801 of the Federal Rules of Evidence; and

4.     any testimony regarding the subject-matters that Magistrate Judge Freeman has ruled to irrelevant and therefore inadmissible, including but not limited to the testimony set forth in footnotes 9 and 13, pursuant to Rules 402 and 403 of the Federal Rules of Evidence.

Dated:  October 30, 2020

                                      Respectfully submitted,

                                      */s/ Joanna J. Cline*
                                      Francis J. Lawall (Admitted to S.D.N.Y.)

Joanna J. Cline (*Pro Hac Vice*)          TROUTMAN PEPPER HAMILTON
Christopher B. Chuff (*Pro Hac Vice*)    SANDERS LLP
TROUTMAN PEPPER HAMILTON        3000 Two Logan Square
SANDERS LLP                                         Eighteenth and Arch Streets
1313 North Market Streets, Suite 5100   Philadelphia, PA 19103
Wilmington, DE 19801                   215.981.4000
302.777.6500                                         215.981.4750 (facsimile)
302.421.8390 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of October, 2020, a true and correct copy of the foregoing *Memorandum of Law in Support of Plaintiff's Motion in Limine* was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Dated:  October 30, 2020

Respectfully submitted,

/s/ *Joanna J. Cline*

OF COUNSEL:

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE  19801
302.777.6500
302.421.8390 (facsimile)

Francis J. Lawall (Admitted to S.D.N.Y.)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA  19103
215.981.4000
215.981.4750 (facsimile)