UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| EASTERN PROFIT CORPORATION LIMITED | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Case No. 18-CV-2185 (LJL) |
| STRATEGIC VISION US, LLC | ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE***

Defendant and Counterclaimant Strategic Vision US, LLC ("Strategic") filed a counterclaim in this action alleging fraud against Plaintiff and Counterclaim Defendant Eastern Profit Corporation Limited ("Eastern"). The premise of Strategic's fraud claim is that the principals of Strategic are ardent anti-communists who never would have entered into the contract at issue in this litigation had they known that Mr. Guo was, as they now maintain, a supporter of the Chinese Communist Party ("CCP"). *See* Strategic's Countercl. ¶ 115, ECF No. 114.

Through its motion, Strategic seeks to escape cross-examination on the very premise of its claim—whether the principals of Strategic are ardent anti-communists who would not do business with CCP supporters. But Strategic cannot run away from the dispute it created. If a supporter or affiliate of the CCP has paid Strategic's legal fees, then Strategic's fraud claim fails. Evidence on that question is therefore directly relevant and must be heard. Having put the parties' political affiliations at issue in what should be a simple contract dispute, Strategic cannot now evade questions about its own political affiliation by hiding behind withdrawn remedies and supposed privileges. If political party allegiances matter in this case (and the Court has ruled that they do, over Eastern's contention to the contrary), then they must matter as to both Plaintiff and Defendant.

I.  **ARGUMENT**

    A.  **Testimony from Strategic's Witnesses Concerning the Identity of Its Litigation Funder Is Relevant Under Fed. R. Evid. 401**

        1.  **Legal Standard**

Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "The ***definition of relevance under Fed. R. Evid. 401 is very broad***, and as a result, ***the standard for relevance is very low***. [S]o long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Jones*, No. 16-cr-0553, 2018 U.S. Dist. LEXIS 31703, at *28 (S.D.N.Y. Feb. 2, 2018) (citations and internal quotation marks omitted); *see also Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 587 (1993) ("The Rules' basic standard of relevance … is a liberal one."); *Altria Group, Inc. v. United States*, 694 F. Supp. 2d 259, 284 (S.D.N.Y. March 16, 2010) (describing Rule 401 as a "liberal test of relevancy").

        2.  **Evidence that Strategic's Fees Are Being Paid by a CCP Supporter Would Doom Its Fraud Claim**

Strategic argues that courts repeatedly hold that the identity of third-party funders is irrelevant. This is not so. The cases Strategic cites merely stand for the unremarkable proposition that a litigant must show that the issue of litigation funding is relevant to a party's claims or defenses before such evidence can be admitted.[1] The source of payment for a party's legal fees is relevant when "such information *could* provide circumstantial evidence related to a

---

[1] *See e.g. Benitez v. Lopez*, No. 17-CV-3827, 2019 U.S. Dist. LEXIS 64532, at *2 (E.D.N.Y. Mar. 14, 2019) (concluding that the defendants failed to establish that the litigation funding documents were relevant to any party's claims or defenses); *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-CV-9350, 2015 U.S. Dist. LEXIS 135031, at *15 (S.D.N.Y. Sept. 10, 2015) (same).

key dispute." *See Bonumose Biochem, LLC v. Zhang*, No. 3:17-cv-00033, 2018 U.S. Dist. LEXIS 231074, at *8 (W.D. Va. Sept. 10, 2018). Here, the fact that Strategic may have accepted or be accepting money from CCP supporters in order to pursue its claim against Eastern Profit is directly relevant because that fact would negate the following elements of Strategic's fraud claim, each of which is dispositive:

### a. Materiality

If Strategic is willing to accept money from people or entities affiliated with the CCP (whether in connection with its fees in this case or otherwise), then Mr. Guo's views towards the CCP could not have been a material fact that induced Strategic to enter the contract. Strategic's argument regarding timing—that CCP affiliation was material to Strategic at the time of the Research Agreement in 2018, but is not material now—does not pass the straight face test, and at a minimum, is a discrepancy that Eastern is entitled to explore on cross.[2]

### b. Falsity

Evidence showing that the CCP or someone affiliated with it is funding Strategic's pursuit of its fraud claim goes directly to falsity. Testimony that the CCP is funding a case against Mr. Guo corroborates the truth of Mr. Guo's alleged representation that he is an opponent of the CCP.

### c. Reliance and Harm

Precisely because Strategic does not want to answer questions about whether the CCP is funding its case, it agreed to drop its allegations of reputational harm. (Specifically, Strategic has abandoned its theory that it suffered "damage to its reputation caused by being associated with a person who is now increasingly recognized as a Chinese dissident-hunter rather

---

[2] Specifically, Strategic argued on the December 2, 2019 conference call that "what a party is willing to do now that they are on the line in this case, that everything is on the line, does not translate back to what they are willing to do when they entered into the contract." *See* Dec. 2, 2019 Telephone Conference Tr., 75:2-11.

than a dissident." Strategic's Countercl. ¶ 88.) But, the fact that Strategic has abandoned that category of harm does not preclude Eastern's right to explore generally the connection between the alleged misrepresentation and Strategic's harm—*i.e.*, whether Strategic entered into the contract and incurred its alleged expenses in reliance on the representation. Evidence that Strategic is receiving or has received support from the CCP negates the contention that there was reliance.

Strategic erroneously states that the relevancy of its litigation funding was decided by Magistrate Freeman. Motion at 1. Eastern did indeed seek to compel testimony on the subject of who was funding Strategic's fees when Strategic's counsel instructed its witnesses not to answer questions related to whether Strategic's fees were being paid by CCP affiliates. And the parties did indeed begin to argue the issue before Magistrate Freeman. Magistrate Freeman absolutely did not, however, issue any ruling whatsoever that the identity of the funder was irrelevant or not discoverable. Rather, Strategic represented at the hearing that it was willing to enter a stipulation (a) attesting that it would withdraw its claim for reputational harm and (b) making representations as to the payment of its fees. Eastern agreed that it would consider such a stipulation as a means of resolving its motion to compel further discovery, and Magistrate Freeman, understandably, decided "to consider this a nonissue because you are going to work it out by stipulation." Dec. 2, 2019 Telephone Conference Tr., 76:9-11.[3]

Strategic neglected to mention the stipulation, attached here as Exhibit A, in its Motion. The stipulation contains no concession from Eastern that the identity of Strategic's

---

[3] Magistrate Freeman said that she thought the identity of the funder was relevant to the reputational harm claim—but she did not make any ruling in that regard, and she certainly did not make a ruling that it would not be relevant to anything else. *See* Dec. 2, 2019 Telephone Conference Tr. at 76:13-19 ("I think it went to the question of reputational harm. If there was a claim for that. I think that was where I was seeing the potential relevance. For us to be seen as doing something involving the Communist Party would hurt our business. But I don't really think I need to dwell on that or give it further analysis.").

funders is irrelevant, or that Eastern would not pursue the matter at trial. The stipulation merely served to end a discovery dispute.

Because the identity of the persons or entities paying Strategic's legal fees directly relates to several elements of Strategic's fraud claim, it easily passes Rule 401's liberal test of relevancy and testimony on this topic should thus be permitted at trial.

### 3. Evidence that Strategic's Fees Are Being Paid by a CCP Supporter Is Also Relevant to Issues of Credibility and Bias

Even if this were a case in which the source for payment of a party's legal fees was not relevant to a claim or defense in the action (which it is not, for the reasons discussed above), such evidence and testimony is still relevant to the issue of Strategic's witnesses' credibility and bias. *See Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1019 (D. Ariz. 2020) (finding that a litigation funding arrangement was relevant because it bore upon the credibility of witnesses); *United States v. Cathcart*, No. C 07-4762, 2009 U.S. Dist. LEXIS 57526, *6 (N.D. Cal. June 18, 2009) (collecting cases holding that fee-payment arrangements are relevant to credibility and bias). Indeed, it is well established that ***evidence of a witness's bias is "almost always relevant"*** under Rule 401. *See, e.g., United States v. Abel*, 469 U.S. 45, 52 (1984) ("Proof of bias is almost always relevant, because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.").

Here, Strategic has made certain representations in a stipulation regarding who is <u>not</u> paying its legal fees, but that does not end the matter. Eastern is entitled to ask Strategic witnesses at trial who <u>is</u> paying its legal fees because this information bears on the issues of bias and credibility. For example, if Strategic is being funded by a person who is involved in a public dispute with Mr. Guo, then the fact that such a person is also controlling Strategic's purse strings

in this litigation could call into question the truthfulness of the testimony offered by Strategic's witnesses or establish biases against Mr. Guo that have been fostered by this third party.

Eastern should also be permitted to test the accuracy of the representations in the stipulation. The stipulation was executed by Strategic over nine months ago. The world has changed drastically in those nine months. To the extent that the stipulation is no longer accurate, or Strategic has come to doubt that it was accurate at the time it was executed, Eastern is entitled to question Strategic's witnesses about it. Eastern agreed to discontinue its discovery on Strategic's litigation funding based on the representations in that stipulation, and if those representations are inaccurate, then Eastern has every right to know about it. Further, to the extent that Strategic maintains that the stipulation remains accurate, Eastern is entitled to question Strategic's witnesses about that too, just as one would an interrogatory response.

### B. Neither the Attorney-Client Privilege nor the Work Product Doctrine Protects the Identity of a Litigation Funder

Eastern has no intention of attempting to elicit testimony at trial that would seek to invade the attorney-client privilege or work product doctrines. As Eastern has previously represented to the Court,[4] the testimony that it seeks to elicit on the topic of Strategic's litigation funding **relates solely to the identity of the person(s)** paying Strategic's legal fees, which is information that is typically not protected by the attorney-client privilege and work product doctrine. *See e.g.*, *Vingelli v. United States*, 992 F.2d 449, 452 (2d Cir. 1993) (holding that client identity is not protected by the attorney-client privilege unless disclosure of the information effectively reveals confidential communications between an attorney and client"); *Cohen v. Cohen*, No. 09-cv-10230, 2015 U.S. Dist. LEXIS 21319, at *1 (S.D.N.Y. Jan. 29, 2015) (holding that

---

[4] *See* Dec. 2, 2019 Telephone Conference Tr., 71:2-7 ("THE COURT: So you just want to know, you don't want to see all the bills or anything, you just want to know is this particular person funding the defense? MR: CHUFF: We want a name, Your Honor, we want just a name, that's it.").

communications between the plaintiff and her litigation funder were "not subject to any privilege"); *Bonumose Biochem, LLC v. Zhang*, No. 3:17-cv-00033, 2018 U.S. Dist. LEXIS 231074, at *12 (W.D. Va. Sep. 10, 2018) (rejecting privilege argument relating to the identity of a litigation funder because "the identity of the persons [or entities] making payments for [an] attorney's services' typically is not protected by the attorney-client privilege" and the work product doctrine only protects specific entries of attorney time and associated fees); *Cont'l Circuits LLC v. Intel Corp.*, 435 F. Supp. 3d 1014, 1024 (D. Ariz. 2020) (finding that the identity of litigation funders is not work product because it "does not seek attorney mental impressions"). Accordingly, Strategic cannot withhold "the identity … of any financial funder" at trial based on claims of privilege or work product. Motion at 1.

C. **Strategic Cannot Hide Behind the First Amendment to Protect the Identity of Its Own Political Associations When It Has Asserted A Claim Challenging Eastern's Political Associations**

Strategic baldly asserts that requiring a party to disclose the identity of "a funder who shares a political association with a litigant" violates the First Amendment. Motion at 4. However, tellingly, it does not cite any case law standing for this proposition.[5] Strategic cannot point to its own political beliefs to support its purported reliance on Eastern's alleged misrepresentations and yet simultaneously shield testimony relating to its political associations. Strategic's counterclaim directly puts at issue both parties' political associations. Therefore, it is relevant and admissible. Any alleged concern that this information will result in "political and

---

[5] In its Motion, Strategic cites to several cases that generally relate to the freedom of association. *See NAACP v. Ala. ex rel. Patterson*, 357 U.S. 449, 462 (1958) (holding that the compelled disclosure of members lists of groups engaged in advocacy may constitute a restraint on freedom of association); *NAACP v. Button*, 371 U.S. 415, 434 (1963) (finding that a statute which made it a crime for a person to advise another that his legal rights have been infringed and refer him to a particular attorney or group of attorneys for assistance violated the First Amendment); *N.Y. State NOW v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989) (holding that compliance with discovery requests seeking to ascertain defendants' financial capacity to satisfy contempt judgments would <u>not</u> interfere with the defendants' First Amendment rights).

legal attacks" (Motion at 4) is without merit. *See Bonumose Biochem, LLC*, 2018 U.S. Dist. LEXIS 231074, at *10-11 (rejecting as unpersuasive the defendants' arguments that discovery regarding post-lawsuit fee arrangements would "spawn satellite litigation," "set a bad precedent" and chill communications with attorneys).

### D. The Fed. R. Evid. 403 Balancing Test Strongly Favors Admissibility in a Bench Trial

Finally, to the extent that Strategic argues that the probative value of this evidence or testimony is substantially outweighed by the hypothetical risk of subsequent litigation against third parties, such an argument is misplaced because the Rule 403 "balancing test strongly favors admissibility in a bench trial." *De La Rosa v. 650 Sixth Ave Trevi LLC*, No. 13-CV-7997, 2019 U.S. Dist. LEXIS 204408, at *11 (S.D.N.Y. Nov. 22, 2019). Indeed, in the context of a bench trial, a court has "considerable discretion" and may admit evidence even if "it comes close to or crosses the line of inadmissibility" because the court will ultimately decide "after the evidence is presented whether it deserves to be credited." *AmTrust N. Am., Inc v. KF&B, Inc.*, No. 17-cv-5340, 2020 U.S. Dist. LEXIS 170464, at *4, 12 (S.D.N.Y. Sep. 16, 2020) (Liman, J.). Here, Strategic has failed to make any showing whatsoever how admitting this evidence would cause undue prejudice to Strategic in this litigation, and therefore there is no basis for excluding such evidence under Rule 403.

## II. CONCLUSION

For the foregoing reasons, Strategic's Motion *in Limine* should be denied.

-9-

Dated:  November 6, 2020

Respectfully submitted,

*/s/ Joanna J. Cline*
Francis J. Lawall (Admitted to S.D.N.Y.)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
215.981.4000
215.981.4750 (facsimile)

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE 19801
302.777.6500
302.421.8390 (facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of November, 2020, a true and correct copy of the foregoing Opposition to Defendant's Motion *in Limine* was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Dated:  November 6, 2020

Respectfully submitted,

*/s/ Joanna J. Cline*
Francis J. Lawall (Admitted to S.D.N.Y.)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
215.981.4000
215.981.4750 (facsimile)

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE 19801
302.777.6500
302.421.8390 (facsimile)