IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EASTERN PROFIT CORPORATION LIMITED,** | )<br>)<br>) |
| Eastern/Counterclaim Defendant, | )<br>) Case No. 18-cv-2185 |
| v. | )<br>) |
| **STRATEGIC VISION US, LLC,** | )<br>) |
| Defendant/Counterclaim Eastern. | )<br>) |

**<u>REPLY IN SUPPORT OF DEFENDANT'S MOTION *IN LIMINE*</u>**

Dated November 13, 2020

                                                Respectfully submitted,

                                                GRAVES GARRETT LLC

                                                *s/ Edward D. Greim*
                                                Edward D. Greim, #4240172
                                                1100 Main Street, Suite 2700
                                                Kansas City, MO 64105
                                                Telephone: (816) 256-3181
                                                Fax: (816) 256-5958
                                                edgreim@gravesgarrett.com
                                                ATTORNEY FOR
                                                DEFENDANT/COUNTERCLAIMANT

Defendant Strategic Vision US, LLC ("Strategic") seeks to exclude evidence relating to any funder of its defense. Eastern Profit responds that the identity of a Strategic litigation funder could be relevant to Strategic's fraud claim. Since Eastern first probed this topic at Strategic's deposition at discovery's close, it has floated conflicting guesses and theories about who (if anyone) finally had the courage to come to Strategic's defense and thereby place themselves squarely in Guo Wengui's cross-hairs. But Eastern has never established why this "somewhat unusual" subject, to use Judge Freeman's words, is relevant or admissible. Trial is for deciding the factual issues in this case, not for discovering who needs to be added to the list of targets for defending Strategic, its principals, and its witnesses.

**1. The identity of Strategic's litigation funder is not relevant.**

Irrelevant evidence is not admissible. Fed. R. Evid. 402. The identity of litigation funders has been found irrelevant, both in federal courts generally and in this specific proceeding.

*a.     Evidence about litigation funders is generally irrelevant.*

Evidence that goes to a claim or a defense is relevant. *Benitez v. Lopez*, No. 17-CV-3827-SJ-SJB, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019). However, "courts across the country that have addressed the issue have held that litigation funding information is generally irrelevant to proving the claims and defenses in a case."[1]

*b.     The identity of Strategic's litigation funder has already been found irrelevant.*

While the general rule favors exclusion, this Court need not need rely on the general rule, because the identity of Strategic Vision's funder has already been ruled irrelevant *in this very case*. Notwithstanding Eastern Profit's claims to the contrary, Magistrate Freeman made it clear that the identity of Strategic Vision's funder was only relevant insofar as Strategic claimed

---

[1] *Fulton v. Foley*, No. 17-CV-8696, 2019 WL 6609298, at *2 (N.D. Ill. Dec. 5, 2019) (citing several authorities, including *Benitez v. Lopez, 2019 WL 1578167 at *1*); *V5 Techs. v. Switch*, Ltd., 334 F.R.D. 306, 311 (D. Nev. 2019).

2

reputational damages. Discussing Eastern's "somewhat unusual request,"[2] Magistrate Freeman stated, "I think it went to the question of reputational harm. If there was a claim for that. I think that was where I was seeing the potential relevance."[3] Strategic stipulated to dismissal of its reputational harm claims in January 2020. The magistrate determined that, in light of the stipulation, "I don't really think I need to dwell on that [the relevance of Strategic's funder] or give it further analysis."[4] By opposing Strategic's motion *in limine*, Eastern seeks to use trial to discover and admit that which was already found irrelevant in discovery. Nothing has changed.

**2. Even if the identity of Strategic's funder is conditionally relevant, the probative value of Eastern's attenuated inferential chain is substantially outweighed by countervailing concerns under FRE 403.**

Even under Eastern's theory, the identity of Strategic's funder is only *conditionally* relevant. That is, any relevance to Strategic's fraud claim depends on proving a series of preliminary and heretofore un-litigated facts—a case within a case. Magistrate Freeman astutely observed as much several months ago, when she remarked that the relevance of the funder's identity depends on Eastern's ability to connect "point A" to "points B, C and D."[5]

"When faced with a question of conditional relevance, the district court should examine all the evidence in the case and decide whether the [trier of fact] could reasonably find the conditional fact by a preponderance of the evidence." *United States v. Coplan*, 703 F.3d 46, 81 (2d Cir. 2012) (quoting *Huddleston v. United States*, 485 U.S. 681, 690, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988)). "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist." Fed. R. Evid. 104(b).

---

[2] ECF 213, 65:24-25 (discovery conference on December 2, 2019).
[3] ECF 213, 76:11-17.
[4] ECF 213, 76:17-19.
[5] ECF 213, 75:12-17; 76:9-19.

To illustrate the long chain of factual inferences Eastern Profit would need to establish in order to make the litigation funder's identity relevant, consider what seems to be its latest hunch about who rose to Strategic's defense last year.[6] Inferring from Eastern's opposition brief (and the flurry of exhibits added to Eastern's exhibit list at the eleventh hour), Eastern now seems to have abandoned its prior hunch that a Chinese man named Bruno Wu was paying Strategic, and instead thinks Strategic's legal costs are being paid by a woman named Nickie Mali Lum Davis, a man named Elliott Broidy, or both. According to news articles and a plea agreement included on Eastern's exhibit list, Lum Davis and Broidy recently pled guilty to lobbying the Trump administration and the Department of Justice on behalf of a Malaysian national without registering as foreign agents. Among the Malaysian national's goals was favorable treatment in his own criminal case and, allegedly, the return of Guo Wengui to China. Assuming for the sake of argument the accuracy of the hearsay allegations in these exhibits, what follows is a non-exhaustive list of facts Eastern would need to prove before litigation funding by Lum Davis and/or Broidy (the "Suspected Funders") would become relevant to Strategic's fraud claim:

<u>Eastern would need to prove that the Suspected Funders have been paid by the CCP</u>. Eastern claims that "evidence showing that the CCP or someone affiliated with it is funding Strategic's pursuit of its fraud claim goes directly to falsity. Testimony that the CCP is funding a case against Mr. Guo corroborates the truth of Mr. Guo's alleged representation that he is an opponent of the CCP." By Eastern's own logic, the Suspected Funders are irrelevant unless, at a minimum, Eastern can prove that they expect to receive payment from the CCP. But based on Eastern's exhibits, neither Lum Davis nor Broidy pled guilty to accepting money from the CCP,

---

[6] The following discussion is not intended as a denial or an affirmation of the inferences Eastern may seek to draw from its new exhibits. Rather, it simply serves to illustrate inevitable evidentiary perils that will be created by allowing Eastern to use trial to explore its latest theories about who, if anyone, supports Strategic Vision's defense.

or even working on its behalf. Nor is there evidence that either of these individuals would ever choose to work on behalf of the CCP and against the interests of the United States.

Eastern would need to prove that the Suspected Funders are *still* working on behalf of the CCP. The next link in the chain of inference is that the Suspected Funders are continuing to work on behalf of the CCP to this very day. Yet based on Eastern's exhibits, Lum Davis and Broidy pled guilty to Foreign Agents Registration Act violations that occurred "from no later than March 2017 to at least in or about January 2018."[7] This litigation did not start until March 2018, and Eastern admits that even under its latest "third party payer" theory, the current funder or funders were not involved until June 2019.[8] It is irrelevant that Lum Davis or Broidy funded Strategic's defense unless Eastern can prove they worked for the CCP and then kept doing so through 2019—something the government did not come close to alleging.

Eastern would need to prove that a favorable outcome for Strategic will trigger Guo's deportation. Next, Eastern would need to prove a causal link between Strategic's success in this lawsuit and Guo's deportation. Eastern's repeated characterization of this lawsuit as a simple contract case[9] flies in the face of the idea that Guo's ability to remain in the United States somehow hangs in the balance pending resolution of this lawsuit.

Eastern would need to prove that the CCP actually had a Guo deportation plan, and that it was real and not merely to provide cover for Guo. The Suspected Funders' lobbying on behalf of the Malaysian national "involved, among other things, advocating for meetings between [a People's Republic of China senior minister] and United States government officials."[10] Although utterly beyond the scope of Eastern's exhibits, Eastern suggests that this CCP official really did

---

[7] PX71 at 13.
[8] ECF 213, 68:13-21 (describing current counsel's entry in 2019 after two sets of Strategic Vision lawyers withdrew for nonpayment) (accidentally identifying current counsel's year of entry as 2017 rather than 2019).
[9] See e.g., ECF 261 at 6 (Eastern Profit's memo in support of it motion for summary judgment filed March 16, 2020.
[10] PX71 at 13.

desire to get Guo deported; that it was part of a real plan that the CCP intended to effectuate; that it was the plan of the CCP based on Guo's supposed dissident activity and not merely the act of an official with his own issues with Guo; and that it therefore "corroborates the truth of Mr. Guo's representation that he is an opponent of the CCP." But Eastern has proof of none of this, and some proof in the case actually undermines some of this causal chain.[11] In short, if the Suspected Funders' supposed CCP ties are a case within the case, the story of what the CCP actually intended (if anything) is a case within the case within the case. Hearsay in Eastern's new exhibits get us no closer to the question of whether Guo supports the CCP or President Xi.

<u>Eastern would need to prove that Strategic Vision *knew* that the Suspected Funders were working on behalf of a CCP official when it agreed to let them pay its legal fees.</u> "In some situations, the relevancy of an item of evidence, in the large sense, depends upon the existence of a particular preliminary fact. Thus when a spoken statement is relied upon to prove notice to X, it is without probative value unless X heard it." Advisory Notes to Fed. R. Evid. 104. In the same vein, as it relates to the fraud elements of materiality, reliance, and harm, Eastern would also need to prove that Strategic Vision actually knew that the Suspected Funders were working to advance the CCP's interests against the United States—in other words, that all of the links stated above were true. Eastern has never presented evidence of the underlying facts or this state of mind, and would not be able to at trial.

Pursuant to Second Circuit precedent and FRE 104(b), Eastern must introduce evidence sufficient to support each of these facts by a preponderance of the evidence before the Court may admit evidence about the identity of Strategic's litigation funder. Eastern has not done so.

---

[11] For example, at trial, Strategic will prove that Guo rose among the ranks of China's Ministry of State Security by helping CCP officials gain incriminating evidence on other CCP officials. ECF 273-18 (Ex. PP, Gong Tr.) 66:14-67:20. Guo sometimes claims that he came to the United States only because his patron, a prominent CCP official, was swept up in an anti-corruption campaign promulgated by other CCP officials. ECF 273-18 (Ex. PP, Gong Tr.) 74:19-75:17.

Further, any attempt to use trial to conduct discovery into Eastern's latest hunch(es), and then sift the fruits of that discovery to prove every link in Eastern's chain of inferences, would unduly delay and prolong trial, waste time, confuse the issues, and needlessly present cumulative evidence. Federal Rule of Evidence 403 gives courts authority to exclude relevant evidence if its probative value is substantially outweighed by these dangers. Fed. R. Evid. 403. Given that "the chain of inferences necessary to connect the evidence with the ultimate fact to be proved" is "unduly long,"[12] the probative value of any evidence about a party or parties funding Strategic's litigation is slim. On the other hand, exploring a host of last-minute hunches which were not addressed during discovery will create a "trial within the trial" – one that can easily be avoided by granting Strategic's motion *in limine*.

## 3. The identity of a third-party funder is independently inadmissible under the First Amendment.

Relevance notwithstanding, the First Amendment prevents disclosure of any funder's identity. "The right of a private individual to sue and defend in the courts is itself protected by the First Amendment because it is the right conservative of all other rights which lies at the foundation of orderly government." *Colombo v. O'Connell*, 310 F.3d 115, 118 (2d Cir. 2002).[13] But "without litigation funders, parties owed money, or otherwise stymied by deep-pocketed judgment debtors, might have reduced or no ability to pursue their claims." *In re International Oil Trading Company, LLC*, 548 B.R. 825, 835 (Bankr. S.D. Fla. 2016). Due to Guo Wengui's formidable war chest and penchant for revenge,[14] any order granting Eastern's "unusual request"

---

[12] *United States v. Meislin*, 108 F. Supp. 3d 38, 45 (N.D.N.Y. 2015) (citing *United States v. Curley,* 639 F.3d 50, 57 (2d Cir.2011)).

[13] Strategic Vision's due process rights would also be implicated. See *Harbec v. United States*, No. 5:19-CV-61, 2020 WL 4729065, at *10 (D. Vt. May 26, 2020).

[14] The evidence in this case will show that Guo's network has engaged in efforts outside of this litigation to pressure and retaliate against Strategic's principals and witnesses. Thus, Guo's partner, Stephen K. Bannon, pressured J. Michael Waller's employer to eject him from a prominent organization, claiming to have read Waller's confidential deposition transcript. ECF 273-58 (Ex. OOOO, Waller Declaration), at ¶¶ 2-3; ECF 272 at 20-21 n. 126. Sasha

to admit evidence identifying a funder would likely discourage that funder from continuing to finance the litigation. Without a litigation funder, parties like Strategic Vision often lose their ability to access the courts and defend themselves, as entities cannot proceed *pro se*.

Disclosure also infringes on a *funder's* constitutional rights. The First Amendment protects the identity of a litigation funder who shares a political association with a litigant where that association would be chilled by compelled disclosure and the threat of resulting harassment. See *NAACP v. Alabama*, 357 U.S. 449, 460 (1953); *NAACP v. Button*, 371 U.S. 415, 433 (1963); *Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1355 (2d Cir. 1989). Disclosure would chill and likely end the political association between Strategic and any third-party funder. Guo Wengui is a prolific retaliator. Guo's retaliation tactics often involve casting aspersions about the anti-CCP bona fides of his enemies. This pattern of harassment continues to chill anti-CCP association and speech by sowing disruption and fear within the China hawk and Chinese dissident communities. By allowing Eastern to use trial to ascertain the identity of anyone funding Strategic Vision's defense, this Court would paint a target on the back of Guo Wengui's next victim. Any such funder has a First Amendment right to this Court's protection.

## CONCLUSION

For these reasons, Strategic's motion *in limine* should be granted.

---

Gong, an important witness on Guo's background and actions, received a call from the general counsel of one of Guo's nonprofit entities, falsely telling her that she should not comply with her subpoena. ECF 273-18 (Ex. PP, Gong Tr.) 25:8-27:23. Waller, Strategic's principal, and its counsel were all sued for defamation based on their pleadings in this suit. *Guo Wengui v. Strategic Vision US LLC, et al.*, Index No. 157538 (N.Y. Sup. Ct. 2019), https://iapps.courts.state.ny.us/fbem/DocumentDisplayServlet?documentId=kohQ2aQe/5OdIdww75vkLQ==&system=prod. This came after Waller was privately threatened with an individual-capacity lawsuit and financial ruin. ECF 127 (Strategic's Amended Answer and Counterclaims to Eastern's Second Amended Complaint) at ¶ 85. And most recently, Guo has dispatched groups of stalkers to harass his perceived opponents, including Chinese dissidents, in the U.S. and worldwide. See Ex. 1, Dkt 1, *Xiqiu (Bob) Fu v. Guo Wengui*, No. 7:20-cv-00257 PACER (W.D. Tex. filed Nov. 12, 2020).

Dated November 13, 2020

Respectfully submitted,

GRAVES GARRETT LLC

*s/ Edward D. Greim*
Edward D. Greim, #4240172
1100 Main Street, Suite 2700
Kansas City, MO 64105
Telephone: (816) 256-3181
Fax: (816) 256-5958
edgreim@gravesgarrett.com
ATTORNEY FOR
DEFENDANT/COUNTERCLAIM PLAINTIFF

**CERTIFICATE OF SERVICE**

This certifies that, on November 13, 2020, the foregoing was served on all counsel of record via the Court's Electronic Case Filing System.

*s/ Edward D. Greim*
Attorney for Defendant/Counterclaim