UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
                                             :

EASTERN PROFIT CORPORATION LIMITED,      :

                             :

                  Plaintiff,        :

                             :             18-cv-2185 (LJL)

        -v-                       :

                             :         OPINION AND ORDER

STRATEGIC VISION US, LLC,           :

                             :

                  Defendant.     :

                             :
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_ 12/18/2020__

LEWIS J. LIMAN, United States District Judge:

      A bench trial in this case is currently scheduled for January 19, 2021.  In advance of trial, each party moves in limine for the exclusion of evidence offered by the other party.  The following constitutes the Court's rulings.

**A.     Plaintiff's Motion in Limine**

     **1.     Statements purportedly made by Allied Security Operations Group**

      Plaintiff moves to exclude testimony of Defendant's CEO French Wallop ("Wallop") and representative J. Michael Waller ("Waller") that they were told by one of Defendant's independent contractor investigate teams, Allied Security Operations Group ("ASOG"), that certain of the subjects to be investigated under the Research Agreement were designated as so-called "records-protected" and therefore could not be legally investigated.  Waller testified at his deposition that ASOG told him that "all of the main 15 names [to be investigated] had been designated by federal authorities as records protected, and that it was a crime to try to get their records, because these individuals were somehow either the subject of an active U.S. criminal or counterintelligence investigation or were Chinese nationals collaborating with the U.S. authorities."  Dkt. No. 302 at 5.  Wallop apparently gave similar testimony.

Plaintiff argues that the statements are hearsay and inadmissible for the truth of the matter asserted, viz. that the subjects could not be investigated.  Defendant responds that it is not offering the statements for the truth of the matter asserted (that there is such a thing as "Records Protected" status or that the subjects were records protected) but for the fact that the statements were made "to explain ASOG's statement of mind in cancelling its project with Strategic and the effect that ASOG's statements had on Strategic."  Dkt. No. 305 at 5.  Defendant claims that the testimony is relevant to its impossibility defense to Plaintiff's breach of contract claim.

The statements, if offered for the truth, would be hearsay and excludable, as Defendant concedes.  They therefore will not be received for their truth.  That is the only motion Plaintiff currently is making with respect to these statements, and the motion is therefore granted to that extent.  Plaintiff has not moved to exclude the testimony pretrial on any other grounds and therefore the Court does not rule on whether the statements are admissible on other grounds or relevant with respect to any claim or defense in the case.  Defendant should be prepared to address whether the statements have any relevance if taken only for purposes of state of mind.

### 2.      Newspaper and online articles

Plaintiff moves to exclude as hearsay newspaper and online articles that Defendant identified on its exhibit list and that Defendant argues—through a somewhat attenuated chain of logic—are relevant to its fraudulent misrepresentation counterclaim because the articles purportedly support its allegations that Wengui Guo ("Guo"), the principal who negotiated the Research Agreement on behalf of Plaintiff and who claimed to be a Chinese dissident, is actually a double agent who works for the Chinese Communist Party ("CCP").  Defendant does not dispute that the newspaper and online articles are hearsay but argues that: (1) Plaintiff has waived the objection by also seeking to admit news reports, including one of the same exhibits, DX 34; (2) the Court should take judicial notice of the content of the articles pursuant to Federal

Rule of Evidence 201(b); and (3) the articles are independently admissible under Federal Rule of Evidence 807.  With respect to William Je's ("Je") LinkedIn Profile, Defendant argues it is not hearsay because it is being offered only to prove that Je holds himself out as a member of the Chinese People's Political Consultative Conference ("CPPCC") and the Hong Kong Chonqing Friendship Federation ("HKCFF"), which Defendant states are CCP-allied entities.

Plaintiff's motion is granted because the articles are not subject to judicial notice nor admissible under Rule 807.

### a.    Judicial Notice

A court may take judicial notice of a fact under Federal Rule of Evidence 201 if it "is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b); *see Doyle v. U.S. Dep't of Homeland Sec.*, 331 F. Supp. 3d 27, 42 (S.D.N.Y. 2018), *aff'd*, 959 F.3d 72 (2d Cir. 2020). "[B]ecause the effect of judicial notice is to deprive a party of the opportunity to use rebuttal evidence, cross-examination, and argument to attack contrary evidence, caution must be used in determining that a fact is beyond controversy under Rule 201(b).'"  *Braun v. United Recovery Sys., LP*, 14 F. Supp. 3d 159, 164 (S.D.N.Y. 2014) (quoting *Canadian St. Regis Bank of Mohawk Indians v. New York*, 2013 WL 3992830, at *12 (N.D.N.Y. July 23, 2013)).

The articles fall in several different categories.[1]  One category of articles purportedly supports the claim that Guo maintains a relationship with certain figures in the Chinese government and CCP and is not a true dissident.  *See, e.g.*, DX 32, 34, 41, 43, 44, 72, 82.

- DX 32 is an October 8, 2017 article from the Washington Free Beacon that contains many quotations from Guo critical of the CCP and the current Chinese leadership but

---

[1] The exhibits are DX 32, 34, 41, 43, 44, 72, 73, 74, 77, 82, 87, 88, 89, 90, 92, 93, 94, 95, 101, and 116.

also contains the sentence: "Guo said he maintains close ties to supporters within the Chinese government and security system and is able to obtain many internal documents."

- DX 34 is an October 22, 2017 article from the Wall Street Journal that, based on a review of audio and video recordings, contains an account of Guo's interactions with U.S. and Chinese officials, including efforts by Chinese officials to convince Guo to return to China or for the United States to extradite Guo and discussions between Guo and the U.S.

- DX41 is a July 22, 2019 article from the Wall Street Journal that discusses this action, including Defendant's allegations that Guo is a spy for the Chinese government and allied with the Chinese Communist Party and Guo's strong denials of those allegations, and notes that Guo has been supported by "China hard-liners in the U.S., including President Trump's former advisor Steve Bannon, [who] have rallied to his side." The article also includes the quote from Guo's lawyer that "Mr. Guo is the most-wanted dissident worldwide by the Chinese Communist Party and has been their most outspoken and vitriolic critic since his arrival in the United States."

- DX43 is a May 23, 2017 newsletter which states that "Guo has close ties to senior Chinese Communist Party leaders, including government ministers and Politburo members" and reports that "Guo's wife and daughter currently have been allowed by Chinese authorities to visit him in New York."

- DX 44 is an October 25, 2017 article from Washington Times that reports on the "bitter internal political battle within the Trump administration over Mr. Guo" and that states, among other things, that Guo is "said" to have placed two relatives at the helm of a major Chinese conglomerate.

- DX 72 is an October 15, 2017 article from The Guardian which reports that "[f]or months, the flamboyant real estate mogul has been disgorging reams of salacious – and largely unsubstantiated – allegations in the public sphere about some of his homeland's most powerful figures," that while some believed Guo's advocacy to be genuine that there was concern "among US dissidents who believe Guo has hijacked their cause in a bid to save his own skin," and that Guo earned his fortune by collusion with the Chinese government.

- DX 82 is an October 6, 2017 article from Radio Free Asia purports to contain a quote from Guo that he can "get hold of top-level documents of the Chinese Communist Party at any time, whenever I want to," and that "those who provide the documents are among the most senior people, including the current Politburo standing committee."

Guo is listed on Defendant's witness list for trial and Defendant may cross-examine Guo on the statements purportedly made by him to elicit whether those are, in fact, party admissions.

However, the articles do not contain facts that can be judicially noticed.  The nature of Guo's

relationship with individuals in the CCP is not a matter beyond "reasonable dispute."  Fed. R.

Evid. 201(b).  It is central to the actual dispute between the parties as to Defendant's

counterclaim and defenses.  Nor is the information contained in the articles generally known in

this District or that can be accurately and readily determined from sources whose accuracy

cannot reasonably be challenged.  The articles themselves demonstrate that it is a matter of hot

dispute from sources whose self-interest can readily be questioned.

The second set of articles relate to Guo's relationship with ACA Capital Group Ltd.

("ACA"), and to former presidential advisor, Steven Bannon ("Bannon").  *See* DX 73, 74, 77,

92, 116.  DX 77 is an article discussing a cyberattack that stole and published on Twitter

documents allegedly associated with Guo, including portions of his asylum application and a

document that revealed a cash transfer of $1 million from ACA to the law firm purportedly

handling Guo's asylum application.  DX 73, 74, 92, and 116 are articles that report that Guo

formed a fund with Bannon to investigate abuses of power by the CCP and that a company

affiliated with Guo contracted with a company affiliated with Bannon.  Those matters are not the

appropriate subject of judicial notice.

The last set of articles consist of a press release from the CPPCC reporting that almost

40% of its members are from the CCP, DX 87, and articles and opinion pieces from

organizations, including the New York Times, China Daily, Quartz, South China Morning Post

and others, reporting—with varying degrees of purported objectivity—on the activities within

Hong Kong of groups supportive of mainland China.  *See* DX 87, 88, 89, 90, 93, 94, 95, 101.

For example, DX 88, is an August 9, 2019 article from the Global Times that contains the

statement, "Hong Kong's patriotic groups bravely stands out with the support of central

government," alongside allegations that the "US State Department slanders the Chinese government and discriminates against Hong Kong's media rights, acting like an unreasonable political thug."  DX 88.  Other articles are more objective, *e.g.*, DX 89, but although they report the claim that the CCP supported Hong Kong groups that opposed to the protests and riots, they also contain denials of that claim by members of those groups themselves.  These articles are also not appropriate for judicial notice.

Overall, Defendant does not ask the Court to take judicial notice of these articles for the fact that they contain certain information but rather for the truth of the statements contained therein.  Such treatment is inappropriate.  *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("We have previously held that it is proper to take judicial notice of the fact that press coverage . . . contained certain information, without regard to the truth of [the] contents," in deciding inquiry notice); *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("If the court takes judicial notice, it does so in order to determine what statements [they] contained – but again not for the truth of the matters asserted.") (internal citations and quotations omitted).  Additionally, the statements in these articles are not ones that are free from dispute or that are generally known or can be readily verified from reliable sources.  *See Bristol v. Nassau Cnty.*, 685 F. App'x 26, 28 (2d Cir. 2017) (not abuse of discretion to refuse to take judicial notice where facts were subject to reasonable dispute).[2]

---

[2] Defendant also argues that Plaintiff's position is belied by the fact that Plaintiff "itself seeks to admit a dozen news reports." Dkt. No. 305 at 6.  Defendant has not moved to exclude those reports from trial and thus the Court does not address the admissibility of those exhibits.  As to PX 32, which is identical to DX 34 that Plaintiff moves to exclude, it will be excluded to the extent that Plaintiff seeks to use it for the truth of the statements contained therein for the same reasons as described in this opinion.

### b.      Fed. R. Evid. 807

For similar reasons, the evidence is not admissible pursuant to the residual exception to

the hearsay rule.  The residual exception to the hearsay rule provides, in relevant part:

> [A] hearsay statement is not excluded by the rule against hearsay even if the
> statement is not admissible under a hearsay exception in Rule 803 or 804: [if] (1)
> the statement is supported by sufficient guarantees of trustworthiness – after
> considering the totality of circumstances under which it was made and evidence, if
> any, corroborating the statement; and (2) it is more probative on the point for which
> it is offered than any other evidence that the proponent can obtain through
> reasonable efforts.

Fed. R. Evid. 807.

Generally, to be admissible under Rule 807, hearsay evidence "must fulfill five

requirements: trustworthiness, materiality, probative importance, the interests of justice, and

notice."  *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991) (construing Rule 807's

predecessor).  "In a civil case, however, necessity alone will not render hearsay admissible under

the residual exception" for "[s]uch a rule would eviscerate the hearsay rule."  *Jacobson v.

Deutsche Bank, A.G.*, 206 F. Supp. 2d 590, 595 (S.D.N.Y. 2002), *aff'd*, 59 F. Appx. 430 (2d Cir.

2003).   In determining the trustworthiness of a piece of evidence offered under the residual

exception, the court analyzes "to what extent, it minimizes the 'four class hearsay dangers,'

namely, insincerity, faulty perception, faulty memory, and faulty narration."  *Id.* (quoting

*Schering Corp. v. Pfizer, Inc.*, 189 F.3d 218, 232-33 (2d Cir. 1999)).

Judge Leonard B. Sand of this District long ago concluded: "Unsupported newspaper

articles will normally fail on all of these grounds.  Unless their author is available for

cross-examination, newspaper stories generally will present a blank face that gives little clue as

to the reliability of the reporter's perception, memory, narration, or sincerity, and in addition fails

to disclose how the article was changed in the editing process."  *In re Columbia Sec. Litig.*, 155

F.R.D. 466, 474 (S.D.N.Y. 1994).  The observation is true in spades of the articles Defendant

offers here.  The articles present disputed facts from sources whose reliability cannot be

ascertained on political and geopolitical issues as to which there is no agreement.  Even as to the

quotes purportedly attributed to Guo, neither the articles on their face nor any extrinsic evidence

support that Guo in fact made the statements.  Indeed, in some instances, Guo is not quoted but

purportedly paraphrased and the Court cannot determine whether, even if he made the alleged

statements, the statements are taken out of context.  And, while Defendant claims that the articles

are self-reinforcing because they repeat the same statements, that is in part because either they

come from the same reporters or the same news organizations, or they repeat the same

allegations without any further corroboration that the allegations are true.[3]

Equally and fundamentally, Defendant has not made any showing why the evidence it

seeks to present through news articles, if it is trustworthy, could not be presented in some other

form—either through the testimony of Guo, or, with respect to the role of "patriotic groups" in

Hong Kong, through expert witnesses.  Defendant had ample opportunity to take discovery in

this case and to present expert witnesses.  Permitting Defendant to offer the articles for their truth

would enable it to "avoid the crucible of cross examination, in the courtroom, before the

[factfinder] in person."  *Diamond Resorts Int'l, Inc. v. Aaronson*, 378 F. Supp. 3d 1143, 1145

---

[3] Defendant relies on *Dall. Cnty. v. Com. Union Assurance Co.*, 286 F.2d 388, 395-96 (5th Cir. 1961) in which the Fifth Circuit admitted an old newspaper account of a courthouse fire.  That case is distinguishable from the instant action for the reasons Judge Buchwald persuasively explained in *Jacobson*: "In *Dallas County*, the proponent of the newspaper article was merely trying to prove that there had been a fire in the county courthouse nearly sixty years previously. *Dallas County* concerned what might be called a 'binary event'—either there was a fire, or there was not. . . . Thus, the binary nature of the proposition to be proved in *Dallas County* itself provides a 'circumstantial guarantee[] of trustworthiness.'"  206 F. Supp. 2d at 595-96 (quoting *Dall. Cnty.*, 286 F.2d at 397).  In contrast, in *Jacobson*, the plaintiff sought to prove that the defendant "uttered specific statements at a specific time."  *Id.* at 596.  Given the nature of the case, "where every word, their placement, order, and translations . . . are highly relevant" to the claims, such that plaintiff's "case truly rises and falls on the details, the classic hearsay dangers of faulty perception, memory, and narration are inherent."  *Id.*

(M.D. Fla. 2019) (holding that expert report will not be admitted under Rule 807 even though expert witness was unavailable).  The Federal Rules do not allow this.

### c.     Je's LinkedIn Profile

Finally, the Court excludes William Je's LinkedIn profile in which he claims that he is a member of the CPPCC and the HKCFF.  Defendant does not dispute that this statement would be hearsay if taken for the truth of the matter, i.e., that Mr. Je is a member of both organizations, or that the statement does not fall within any of the hearsay exceptions.  It argues, however, that "the LinkedIn page is admissible to prove that William Je holds himself out as a member of the HKCFF and the CPPCC."  Dkt No. 305 at 9.   The LinkedIn page accordingly will not be admitted to show that Je is a member of the CPPCC and the HKCFF.  Moreover, although the LinkedIn page might be relevant to Plaintiff's claims—to show that Defendant could have conducted due diligence to explore Guo's relationship to the CCP and in support of an argument that Defendant was on inquiry notice of a potential relationship between Guo and the CCP— Defendant has failed to demonstrate how the LinkedIn page is relevant to its own claim—that Guo, in fact, had a relationship with the CCP.

### 3.     Testimony of Sasha Gong or others regarding the typical behavior of Chinese dissidents who oppose the CCP

Plaintiff seeks to exclude testimony from Sasha Gong ("Gong"), a reporter who interviewed Wengui and others regarding practices in the Chinese dissident community and who Defendant seeks to introduce to testify as to whether conduct Guo's conduct is consistent with him being a dissident.  Plaintiff argues that such testimony is opinion testimony that can be offered only by an expert and that Defendant has not satisfied the requirements for lay opinion testimony under Rule 701.  Defendant responds that the proffered testimony is not opinion testimony but even if it were, it is not based on specialized knowledge but rather on the witness's

specialized experience.  The motion is denied without prejudice to it being renewed as to specific questions and answers at the time of trial.

The parameters of lay opinion testimony are well-established in this Circuit.  If a witness is not testifying as an expert, opinion testimony may be admitted so long as the opinion is "(a) rationally based on the witness's perception," "(b) helpful to clearly understanding the witness's testimony or to determining a fact in issue," and "(c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701.  For example, "where a witness derives his opinion solely from insider perceptions of a conspiracy of which he was a member, he may share his perspective as to aspects of the scheme about which he has gained knowledge as a lay witness subject to Rule 701, not as an expert subject to Rule 702."  *United States v. Yannotti*, 541 F.3d 112, 126 (2d Cir. 2008).  Thus, assuming a proper foundation is laid, a member of the Chinese dissident community, or any other community for that matter, could testify to practices, habits, and routines within that community even if the testimony is in the form of an opinion.  *See* Fed. R. Evid. 406 ("Evidence of . . . an organization's routine practice may be admitted to prove that on a particular occasion the . . . organization acted in accordance with the habit or routine practice").  On the other hand, if the testimony is not rationally based on the witness's perception, or if "the opinion rests 'in any way' upon scientific, technical or other specialize knowledge, its admissibility must be determined by reference to Rule 702, not Rule 701.'"  *Leon v. TransAm Trucking, Inc.*, 2020 WL 728785, at *3 (S.D.N.Y. Feb. 13, 2020) (quoting *United States v. Garcia*, 413 F.3d 201, 215 (2d Cir. 2005)).  The Advisory Committee Notes to Rule 701 reflect that the Rule was intended to address the problem that "eyewitnesses sometimes find it difficult to describe the appearance or relationship of persons, the atmosphere of a place, or the value of an object by reference only to objective facts."  *Id.* (quoting *Garcia*,

413 F.3d at 211).  The fact that a witness may be a member of the community and capable of testifying to practices of that community from her firsthand experience is not license to repeat hearsay.

The objected-to testimony is a hodgepodge of firsthand testimony, admissions of Guo as a party-opponent, and hearsay reflecting what Gong heard or learned or what was being said publicly.  It also occasionally is improperly framed, from a lay witness perspective, in the form of opinion.  Assuming Gong is unavailable and the deposition testimony is offered, some of it is not subject to the objection that it is impermissible expert testimony, while some of it is subject to that objection.

Gong is on Defendant's witness list to provide live testimony if she is available and to testify by deposition if she is not available.  If Defendant makes a showing that Gong is not available, it may offer portions of her deposition testimony and the basis on which the deposition is admissible.  Plaintiff may make cross-designations and objections on a question-by-question basis.  The Court will rule on objections at that time.

### 4.    Testimony regarding Plaintiff's financial identity and Golden Springs New York's business dealings with ACA

Plaintiff moves to preclude evidence and questions as to whether it has independent financial substance, on the theory that Magistrate Judge Freeman, to whom general pretrial supervision of the case was delegated, previously ruled the evidence to be irrelevant in connection with certain discovery disputes.  The testimony to which Plaintiff objects is set forth at pages 12-13 of its motion in limine.  Dkt. No. 302 at 12-13.

The proposed testimony is relevant.  Plaintiff has made claims for damages and rescission.  Defendant has responded that Plaintiff suffered no damages as a result of Defendant's failure to return a $1 million deposit because that deposit was not made by Plaintiff

but by a third-party, ACA, and that ACA did not loan the money to Plaintiff but instead directly

paid the deposit to Defendant for the research project.  In Defendant's view, the party who is

owed restitution, if any, is ACA.  To require Defendant to "return" $1 million to Plaintiff when

Plaintiff did not in fact pay $1 million to Defendant and the $1 million was not paid in

satisfaction of an obligation ACA had to Plaintiff would confer an unjustified windfall.

Although the issue was close, the Court sustained this theory on the cross-motions for

summary judgment.  Having sustained the theory, the proposed testimony is relevant.

Plaintiff objects exclusively on the theory that Judge Freeman did not permit discovery

on related subjects when she was handling general pretrial supervision of this case.  That

argument stretches Judge Freeman's rulings beyond where they can go.  Judge Freeman

addressed two limited issues in the referenced pretrial rulings: (1) whether Defendant could ask

Plaintiff's Fed. R. Civ. P. 30(b)(6) witness questions about a 2017 transaction pursuant to which

sole control of Plaintiff was transferred to Guo's daughter; and (2) whether Defendant could ask

Plaintiff's Fed. R. Civ. P. 30(b)(6) witness questions about Plaintiff's financial independence.

The court precluded Defendant from inquiring with respect to the first topic because Plaintiff had

already admitted that Guo was Plaintiff's agent in negotiating the contract between the parties

and Defendant failed to establish any other relevance.  Dkt. No. 189 at 3.  As to the second issue,

Judge Freeman noted that Defendant had already been able to ask questions about the source of

the funds Plaintiff used to pay Defendant and ruled that Defendant was not entitled to any further

evidence from Plaintiff's Fed. R. Civ. P. 30(b)(6) witness for failure to establish relevance.  *Id.* at

4.

Judge Freeman did not, and could not, issue rulings concerning the admissibility of

evidence at the trial of this case.  The delegation to Judge Freeman was for purposes of general

pretrial supervision.  It did not include delegation for trial or any dispositive matter.  28 U.S.C. § 636.  Judge Freeman thus did not have the power to, or purport to, make any decisions regarding admissibility of evidence for trial.  Indeed, to so construe her rulings and the authority pursuant to which she made those rulings would undermine the structure pursuant to which magistrate judges supervise cases pretrial.  Pursuant to Federal Rule of Civil Procedure 72, a party who objects to a pretrial order may serve and file its objections with the district court within 14 days after being served with the order.  Fed. R. Civ. P. 72(a).  That rule serves the salutary purpose of ensuring that any order regarding pretrial matters, such as discovery, will be reviewed by the district court judge to whom the matter is assigned on the objection of the aggrieved party.  Objections are intended to be judiciously made.  Not every pretrial discovery matter is sufficiently important to the parties or sufficiently involves a legal issue that warrants district court review.  If Plaintiff were right, however, an aggrieved party would forego an appeal on a relevancy ruling at its peril.  If it did not object and proceeded with the case despite the discovery loss for whatever reason, including that it did not want the delay attendant to an appeal, it would be at risk of its adversary arguing that the ruling applied not just to the pretrial discovery issue but also to the trial evidentiary issue.  That clearly was not the objective of Rule 72.

## B.     Defendant's Motion in Limine

Defendant moves in limine to exclude any questions or testimony regarding the sources of the litigation funding for either side in this action.  It argues that the testimony would be irrelevant to any issue in this case and could be for the improper purpose of Plaintiff retaliating against Defendant and "those who share its views on the danger Guo poses to our China Hawk community."  Dkt. No. 300 at 2.  Plaintiff responds that it has a good faith belief that a supporter or affiliate of the CCP has paid Defendant's legal fees.  If that is so, Plaintiff claims, it would

negate Defendant's claim in this case that it was the victim of fraud and that it would never have entered into the Research Agreement had it known that Guo was, as Defendant now maintains, a supporter of the CCP.  Dkt. No. 304.

This issue arose earlier in the litigation when Plaintiff sought to discover from Defendant the sources of its litigation funding.  *See* Dkt. No. 307-1.[4]  At that time, Plaintiff noted that prior to the entry of Defendant's current counsel in this case and when Defendant was litigating only the claims and counterclaims associated with the $1 million deposit, Defendant's two prior lawyers withdrew because their bills were not being paid.  After new counsel appeared, Defendant pursued an aggressive and expensive discovery plan and did not deny that it was receiving litigation funding.  Plaintiff asserted that Defendant's legal fees were being paid by a Bruno Wu, who was a registered foreign agent of the CCP.  *Id.* at 68:22-19.  The dispute was resolved on January 31, 2020, without any judicial ruling, when Defendant stipulated that it would not seek damages for reputational harm, its legal fees were not being paid by "any person or entity that is or ever was a member of, associated with, or affiliated with the Chinese Communist Party or the People's Republic of China, including but not limited to . . . Bruno Wu or any other entity or person associated with, affiliated with, or acting on behalf of . . . Bruno Wu," and it had not entered into a fee arrangement under which its legal fees are being paid by any such person.  Dkt. No. 304-1.  As a result, Plaintiff did not take discovery on the issue of litigation funding.

"As a rule, 'the party seeking disclosure must make a showing of the requested information's relevance to its claims or defenses.'"  *Kaplan v. S.A.C. Cap. Advisors, L.P.*, 2015

---

[4] Defendant filed a reply brief in support of its motion in limine despite the fact that Rule 5 of this Court's Individual Practices in Civil Cases do not permit a reply.  Dkt. No. 306.  The Court therefore will consider and grant Plaintiff's motion for leave to file a surreply.  Dkt. No. 307.

WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015) (quoting *Fort Worth Emps. Ret. Fund. v. J.P. Morgan Chase & Co.*, 2013 WL 1896934, at *2 (S.D.N.Y. May 7, 2013)).  This rule is no less applicable to the admission of evidence at trial than it is to the pretrial stage of discovery.  "The definition of relevance under Fed. R. Evid. 401 is very broad, and as a result, the standard for relevance is very low.  So long as a chain of inferences leads the trier of fact to conclude that the proffered submission affects the mix of material information, the evidence cannot be excluded at the threshold relevance inquiry." *United States v. Jones*, 2018 WL 1115778, at *9 (S.D.N.Y. Feb. 27, 2018) (internal citations and quotation marks omitted).

The exercise is a context-specific one that depends, in part, on the reasons for which the admission is offered and its relationship to the claims and defenses in the trial.  "Since what might make a species of documents relevant in one case does not necessarily make it relevant in all others, it is inappropriate for courts to be guided by past judicial evaluations of the relevance of seemingly similar evidence." *Benitez v. Lopez*, 2019 WL 1578167, at *2 (E.D.N.Y Mar. 14, 2019) (citation omitted).  Courts have admitted funding documents, such as indemnification agreements among co-defendants, when such documents are relevant to credibility issues and to show the bias of one party for or against another. *See, e.g.*, *Kaplan*, 2015 WL 5730101, at *5; *Concepcion v. City of N.Y.*, 2006 WL 2254987, at *4 (S.D.N.Y. Aug. 4, 2006); *see also Bonumose Biochem, LLC v. Zhang*, 2018 WL 10068639, at *3 (W.D. Va. Sept. 10, 2018).  On the other hand, courts in this Circuit have rejected claims for such documents when the only asserted relevance is that they will permit the requesting party to peer into its adversary's strategy, the adversary's reasons for pursuing what the requesting party might believe is baseless litigation, and the adversary's rationale for accepting or rejecting settlement offers. *See, e.g.*,

*Benitez*, 2019 WL 1578167, at *1-2; *MacKenzie Architects, P.C. v. VLG Real Ests. Devs., LLC*, 2017 WL 4898743, at *3 (N.D.N.Y. Mar. 3, 2017).

The Court will permit the questioning and admit the testimony upon the demonstration by Plaintiff before the evidence is admitted that Plaintiff has a good faith belief that Defendant has been funded by a person or entity who is known, either generally or by Defendant specifically, as a current or former "member of" or is or was "associated with, or affiliated with" the CCP.  If Defendant has accepted financing from such a person or entity in connection with this lawsuit or any other transaction that would tend to establish a relationship between Defendant and the CCP and its supporters and make it less likely that Defendant relied on Plaintiff's alleged statements that Guo was an opponent of the CCP or that such statements were important to Defendant in deciding to enter the Research Agreement.

Defendant's attorney-client privilege, attorney work product, and First Amendment objections are meritless.  The identity of a person providing litigation funding—whether a private individual or a corporation or an insurance company—is not protected by the attorney-client privilege or attorney work product doctrine.  *See, e.g.*, *Vingelli v. United States*, 992 F.2d 449, 454 (2d Cir. 1993); *see also Cohen v. Cohen*, 2015 WL 745712, at *6 (S.D.N.Y. Jan. 30, 2015).  Moreover, having placed its own political associations front and center of its defense in this case, Defendant can hardly complain if Plaintiff probes those associations.

## CONCLUSION

Plaintiff's motion in limine is GRANTED IN PART AND DENIED IN PART and its motion for leave to file a surreply is GRANTED.  Dkt. Nos. 301, 307.

Defendant's motion in limine is DENIED subject to Plaintiff's good faith showing as described in this opinion.  Dkt. No. 300.

SO ORDERED.

Dated: December 18, 2020
     New York, New York

_____
LEWIS J. LIMAN
United States District Judge