


Graves Garrett LLC

Edward D. Greim
edgreim@gravesgarrett.com

December 23, 2020

Hon. Lewis J. Liman
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

**Re: Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (LJL)-DCF, Defendant's Response to Dkt. 309 Notification of Standing Order M-10-468**

Dear Judge Liman:

Defendant/Counterclaimant Strategic Vision understands that, at present, the Court intends to resume live trials on Jan. 15, 2021, and Strategic is prepared to try this case in person beginning Jan. 19, 2021. Strategic has now put in place arrangements for the pre- and post-travel Covid testing required by New York for both its counsel and main witnesses, all of whom live out of state, and has arranged for travel and accommodations to otherwise meet New York's stringent rules. Strategic is fully preparing for trial on Jan. 19th.

As the Court points out in Dkt. 309, however, there is some reason to anticipate that the Southern District may extend the shutdown past January 15th. Strategic has considered that possibility and has conferred with opposing counsel. These considerations and recent developments in this case have, if anything, strengthened Strategic in its previously-articulated conviction that its due process right to a fair trial and the provisions of Rule 43 require that this trial proceed in-person. (Dkt. 293).

Rule 43's mandate of live testimony can only be overcome by "good cause in compelling circumstances and with appropriate safeguards." Fed. R. Civ. P. 43(a). As the advisory notes to the 1996 amendment succinctly reflect: "[t]he very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling. The opportunity to judge the demeanor of a witness face-to-face is accorded great value in our tradition." Remote testimony must be "approached cautiously… [s]afeguards must be adopted that ensure accurate identification of the witness and that protect against influence by persons present with the witness." (Adv. Comm. Notes). These stringent standards—compelling circumstances and adequate safeguards—cannot be met here. Remote trial seriously erodes or, in the instances discussed below, eliminates the opportunity to fairly cross-examine Eastern's key witnesses. Their testimony-by-Zoom would involve interpreters, the witness, counsel and the Court, who will be in separate locations and appear in separate windows on the computer screen. In these circumstances, as further outlined below, the only way to achieve the objectives of Rule 43 is live testimony.

1. <u>**No party prevailed on any aspect of summary judgment, leaving numerous fact disputes and credibility determinations for trial**</u>. There are numerous ways that a case goes to trial, not just because summary judgment has been denied. However, when summary judgment is sought by both sides on most claims but completely denied over fact disputes, it is apparent



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




that the trial will be dominated by credibility determinations. This fall, the Court examined a summary judgment record that can only be called extensive, and no party received summary judgment on that record. Prohibiting summary judgment were numerous fact disputes, even when the subject concerned the written contract itself. For example, the Court found that the inquiry on Eastern's claim for a declaratory judgment under Virginia law is whether the engagement was in fact to obtain information on "crimes and civil wrongs" for use in some identifiable proceeding. The Court has acknowledged fact disputes on this point, including because the Research Agreement points in both directions: "the language in the contract stating that its purpose was to detect and prevent crime and civil wrongs raises an issue of fact as to whether what Strategic was contracted to do was traditional private investigator activity." (Tran. 9:20-23)

The Court's ruling also identified fact issues involving Eastern's damage theory: "assuming that the $1 million sent to Strategic did not belong to Eastern, there are genuine issues of fact whether Eastern has reliance damages." The Court will be examining whether ACA's $1 million was reflective of a bona fide loan from ACA to Eastern Profit, or, alternatively, Eastern just a shell with no chance of repayment, making the loan a sham and ACA a simple third-party payer? The answer lies with Wang, Chunguang, and, if found, William Je. The Court's rulings on *motions in limine* (primarily regarding various proposed exhibits) confirms that key evidence on Guo Wengui's background and his entities' business relationships with ACA and William Je will have to come in through live witness testimony. Those with the most knowledge—Guo and Chunguang Han—are Mandarin speakers. The problems with taking their testimony remotely are outlined below.

2. **A limited continuance for a live trial advances nearly all interests, including Rule 43's mandate for live testimony absent good cause in compelling circumstances.** Modern technology is useful, but the problem here is the interplay of that technology with particular witnesses, the use of translators, and related issues. Guo and Han need interpreters. As Strategic pointed out in its last letter on this topic (Dkt. 293, p. 2) the depositions in this case were among the most difficult counsel has ever taken. First, even if each party had been perfectly respectful and courteous, the participation of three sets of counsel, the witness, and two translators (regular and "check") caused and will cause unavoidable interruptions. "Over-speaking" in-person is never ideal, but it is actually helpful when each person can hear her own voice simultaneously with two or three distinct others who are also present. Over-speaking is extremely hard to untangle on Zoom, however, because it mutes all others when sound comes from one source, toggling between speakers in unpredictable fashion. Added to this is the difficulty of hearing and understanding two native Mandarin speakers who must translate and occasionally work out their differences. Even where several people were together in one room, this led to long gaps in the testimony. Over Zoom, it will be impossible to conduct any sustained questioning of Mr. Guo and Mr. Han.

Moreover, Mr. Han, Mr. Guo, and Eastern corporate representative Yvette Wang all resisted giving testimony, engaging in behavior that was simply not able to be fully addressed at a deposition. Strategic again presents the evidence it submitted when the question before the Court was bifurcation: Ex. A (refusal to answer where witness had received his education). *See*



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com




*also* the linked clips of Guo (Guo 1 and Guo 2 ) and Wang (Eastern's corporate representative) (Wang 1). Ordinarily, the presence of a judge—even relying mainly on nonverbal cues—greatly lessens such behavior. As the advisory committee noted, "[t]he very ceremony of trial and the presence of the factfinder may exert a powerful force for truthtelling." Zoom will erode these protections. Because of the technology's muting function where many speakers are connected, and not necessarily because of any speaker's lack of deference, the Court becomes another voice among many who believe they need to speak at a given time. The dignity and authority of the Court's physical presence is inevitably sacrificed. This same dynamic robs the Court of the ability to observe the true demeanor of witnesses, who are distracted and frustrated by responding to the distortions, interruptions, and complications of Zoom. In short, remote participation will not enable the court to fairly judge witness testimony is rarely a substitute for actual presence." *United States v. Lawrence*, 248 F.3d 300, 304 (4th Cir. 2001). The power of the moment will be lost on Zoom.

These technology-related issues can be completely eliminated with a live trial. On the other hand, although the parties will suffer delay if the shutdown is extended, any inconvenience from that delay pales next to the lasting injury of an unfair trial. By all indications, any extension of the shutdown would not be for an extended period. In that event, Strategic urges the Court to simply reschedule this bench trial until the next available 4-day setting.

The parties and the Court have invested too much time and resources to allow a constitutionally infirm remote trial when a live trial could be shortly available. An effective vaccine has been developed and is now being distributed. Here in the Midwest, health care workers are now receiving the vaccine daily, and nursing home residents will soon be offered the vaccine. The general public is not too far off from that same opportunity. It is not against reason to expect that a nearly-normal court experience can soon be had in the Southern District. The essential assurance brought by live testimony to effective fact-finding and accurate case outcomes is close at hand, and a continuance is the appropriate outcome if the Southern District extends the shutdown.

Respectfully submitted,

Edward D. Greim
Attorney for Defendant/Counterclaimant

cc: Counsel of record via ECF



1100 Main Street, Suite 2700 Kansas City, MO 64105 ph 816.256.3181 www.gravesgarrett.com