

Edward D. Greim
edgreim@gravesgarrett.com

January 7, 2021

Hon. Lewis J. Liman
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

Re: Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (LJL)-DCF, Defendant's Position Statement Against Remote Trial on Jan. 19th

Dear Judge Liman:

Remote trial imposes undue hardship that jeopardizes Strategic Vision's right to effectively examine Eastern's witnesses. The initial impression the Court formed when viewing Guo Wengui's testimony (Dkts. 293-1, 311) was correct: certain witnesses cannot be effectively cross-examined via computer-screen-speaker-phone. All three Eastern witnesses exhibited behavior, shown below, that cannot be effectively controlled by counsel and a Judge who can interact only through Zoom. Eastern simply does not have this problem; Strategic's witnesses need no translators and did not exhibit the same behavior. Perhaps for that reason, Eastern now claims to *prefer* a Zoom camera focused on a witness's face. Yet excluding a view of the room raises brand new concerns given other events that occurred at deposition, discussed below.

These severe costs are not offset by any real benefit. First, as a New York court (cited below) recently noted, the serious health concerns that have halted live trials (and that prompted this Court to postpone a live trial on Jan. 19th) are not alleviated by "remote" trial. Clients, attorneys, translators and reporters must still gather for prolonged periods in between interstate commercial travel; the only difference is that each *set* of personnel—the Court and each party—will be separated. Similar separation already occurs in a large courtroom. Second, Eastern's new claim that a 6-week delay causes unique reputational injury rings hollow. Guo is the subject of two heavily-reported federal investigations. https://www.wsj.com/articles/fundraising-at-company-tied-to-steve-bannon-and-guo-wengui-faces-probe-11597857467. And in numerous other lawsuits, he or his targets have placed his character at issue (including one filed on Nov. 12, 2020 in the Western District of Texas by Kenneth Starr and other attorneys for Pastor Bob Fu, alleging Guo incited his thousands of social media followers to harass and kill Fu) (Case 7:20-cv-00257-DC). As Strategic will show at trial, Guo also controls numerous widely-followed social media channels; has a media conglomerate for which he raised hundreds of millions of dollars; used that company's website to post clips of French Wallop's and Michael Waller's deposition testimony (somehow obtained from Eastern) along with defamatory personal attacks that have nothing to do with this case; and used celebrity surrogates like Stephen Bannon to threaten Mr. Waller. With such resources, Guo will hardly suffer unique injury by a six-week delay. Nor should he be allowed to parlay that newly-claimed concern into the avoidance of live testimony. Further, Strategic—lacking Guo's resources—is suffering the very same delay in vindicating its own allegations and in defeating Eastern's defense alleging fraud against Strategic. The need for a fair trial, and an accurate and complete record, far outweighs any effect of a short adjournment.



### 1. Strategic's Due Process Rights Are Jeopardized When Remote Trial Creates Disproportionate Hardship to One Party.

Eastern now claims to occupy the same shoes as Strategic because it sees "credibility issues" with Strategic's witnesses. But Strategic's concern, and the main question, is not one of credibility: the problem is in actually eliciting testimony to make a factual record. Yesterday, the Court inquired whether evasive behavior by Eastern's witnesses would ultimately cast a negative light on Eastern's witnesses' credibility, thereby aiding Strategic. Strategic respectfully believes that this is far from a fair trade: no reasonable litigant would trade coherent, solid record evidence for the limited consolation, if any, of the Court's impressions regarding credibility. An accurate and complete record takes a higher priority than findings by implication.

Eastern also claims that Zoom-views beat the courtroom because the camera will focus on a witness's face. Yet that very feature, combined with the over-talking problem, is more likely to distract a witness and counsel than to accurately convey a person's true demeanor. Zoom tests lay witnesses' comfort with technology and multiple screens, not their composure, character, and credibility.[1] More seriously, though, it impedes a full view of the room. As the Court has seen, Guo was obstructionist. He was aided by Wang, who was in the room as Eastern's representative when Guo had to be deposed a second time. A record was made that Wang was standing up during the deposition and otherwise signaling answers to Guo: "MR. GREIM: Before we go much further, I just want to point out we object to Miss Wang standing back behind the videographer directly in the line of sight of the witness. There have been a lot of facial gestures, nodding yes and no on questions, and I would like that stopped."). Guo responded, "You're totally lying." G. Wengui 12/4/19 Tr., 316:14-23.

Wang can speak English, but her deposition was not free of language difficulties and was similar to Guo's. She effectively refused to testify about the Chinese characters she wrote as a signature on a key document in this case, the Research Agreement. Wang testified the signature "could be a name," but was "nobody's name," and refused to tell the truth: that it represented Chunguang's name. (140:25-142:23) For his part, Chunguang claimed to have the business acumen necessary to allegedly lead Eastern and other companies Guo claims not to control, but refused to reveal where he went to school. Ch. Tr. 62:8-66:20. Each parry by Chunguang, and each objection, required translation. The participation of multiple counsel, the witness, and two translators will cause unavoidable interruptions over Zoom, especially when it gives the floor to whoever made the last noise. "Over-speaking" happens in the best of circumstances, but only helps restore order when everyone can hear everyone else. Over Zoom, it will be impossible to conduct any sustained cross-examination of Guo and Chunguang.

---

[1] "Eye contact is consistently ranked as the most important element of nonverbal communication, most notably because in American culture, failure to make eye contact triggers feelings of distrust in an observer. Thus, one of the main criticisms of the use of videoconference techniques in the courtroom has been the impossibility of maintaining eye contact because a person cannot simultaneously look at the camera and at the display monitor." Roberto Aron et. al., *Trial Communication Skills* (1986) at 37-38; 58 AM. JUR. *Trials* § 100, at 481 (Supp. 1996)).



Although remote trial was ordered in *Argonaut Ins. Co. v. Manetta Enterprises, Inc.* No. 19CV00482PKCRLM, 2020 WL 3104033 (E.D.N.Y. June 11, 2020), that was because "the video-conferencing format does not favor one party over the other with respect to the presentation, or cross-examination, of witnesses." *Id.* at *3. The same cannot be said here, as the Court's initial review may have suggested. Eastern's other cases are far from precedent for these circumstances. *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, No. 2:18CV94, 2020 WL 3411385 (E.D. Va. Apr. 23, 2020), is not a New York decision and did not involve translators or difficult witnesses. *United States v. Donziger*, No. 11-CV-691 (LAK), 2020 WL 6364652, at *2 (S.D. N.Y. Oct. 28, 2020), did not involve the use of interpreters and concerned how extradition laws affect the credibility of testimony, nothing bearing on this case. Further, the party opposing live trial wanted an indefinite continuance. Here, Strategic will attend live trial at the Court's earliest date. *Bioventus LLC v. Trindent Consl. Intl. Inc.*, Case No. 1:18-CV-815, D.I. 71 (M.D. N.C. June 26, 2020), is distinguishable because all parties agreed to a remote trial.

In these circumstances, due process is at stake. *Aslam v. Mukasey*, 537 F.3d 110, 115 (2d Cir. 2008) ("The utilization of video conferencing, although enhancing the efficient conduct of the judicial and administrative process, also has the potential of creating certain problems in adjudicative proceedings. [V]irtual reality is rarely a substitute for actual presence and even in an age of advancing technology, watching an event on the screen remains less than the complete equivalent of actually attending it. More specifically, video conferencing may render it difficult for a factfinder in adjudicative proceedings to make credibility determinations and to gauge demeanor . . . . [V]ideoconferencing . . . must accord with the constitutional requirements of the Due Process Clause.").

2.  **Remote Trial Does Not Ensure a Safe Environment.**

The main risk of any kind of trial is "intra-group" spread within those who actually work in close proximity: a trial team and witnesses. Yet remote trial raises nearly the same risk of "intra-group" spread as a courtroom trial. Witnesses/client representatives will have to be in close quarters, the same room as their counsel in private law firm offices, for several days. Additionally, commercial interstate travel and testing remain necessary: clients and counsel must be together, and translators and reporters should travel to be in the same room as the witnesses. "Remote" trial merely separates each party-group from each other and from the Court. But nearly the same "intergroup" separation is achieved by the Southern District's large courtrooms, plexiglass dividers between witnesses, and other safety equipment. Similar calculations and safety concerns recently caused the New York County Supreme Court to refuse to order a remote trial, despite having authority to do so. *See Ambac Assurance Corp. v. Countrywide Home Loans*, Index 651612/2010. See Ex. 1.

Ultimately, there is no urgent need to try this case remotely this instant, seriously jeopardizing Strategic's right to fairly develop the record, when it can be held live in just a few more weeks. Under Rule 43(a), the local Standing Order, and the Due Process Clause, this case should tried in the first available live setting.



Respectfully submitted,

Edward D. Greim
Attorney for Defendant/Counterclaimant

cc: Counsel of record via ECF