

Edward D. Greim
edgreim@gravesgarrett.com

April 26, 2021

Hon. Lewis J. Liman
United States Courthouse
Courtroom 17A
500 Pearl Street
New York, New York 10007

    Re:    Eastern Profit Corp. Ltd. v. Strategic Vision US, LLC, Case No. 18-cv-2185 (LJL)-DCF/Strategic Vision's Opposition to Dkt. 354, Eastern's Motion to Strike DX35, DX37, DX76A, DX114, and portions of Sasha Gong's testimony

Dear Judge Liman:

    The Court should deny Eastern's Dkt. 354 Motion to Strike DX35, DX37, DX76A, DX114 (an exhibit Eastern itself moved to admit in part), and portions of Sasha Gong's testimony.

DX37 (Video # 1 and 4)

    Eastern cites Fed. R. Evid. 1002 and 901 to contend that there are four exclusive ways ("requirements" according to Eastern, Dkt. 354, p. 1 and "necessary to authenticate videos," p. 3) to authenticate video evidence. Eastern is mistaken. On their face, neither Rule purports to set out the exclusive means to establish the admissibility of recorded evidence like DX37, Videos 1 and 4. Rather, under Rule 1002, "these rules or a federal statute []" can serve as an alternative ground for the admission of recorded evidence even if the original of the recording is not available. Likewise, Rule 901 uses non-exclusive language, explaining that "[a] video recording *may be* authenticated by…" and "[t]he following are *examples only*—not a complete list—of evidence that satisfies the requirement." Fed. R. Evid. 901(a), (b) (emphasis added). *See also Leo v. Long Island R. Co.*, 307 F.R.D. 314, 322 (S.D.N.Y. 2015) (cited by Eastern) ("As for what is required under Rule 901, we noted that the Advisory Committee Notes indicated that reference to the common law is appropriate[.]").

    The four methods Eastern describes as "requirements" to authenticate a video are not set out in the Rules themselves and are instead commentary quoted by the court in *Leo* from an unpublished Virgin Islands opinion. In *Leo*, a surveillance tape was offered into evidence as self-authenticating "without testimonial or other authentication [and] had also failed to [have been] list[ed] [] on the joint pretrial order or [] during discovery." *Id.* at 322. The surveillance had been done at the request of and on payment by defense counsel "over ten days in July and August 2014 and then edited in unspecified respects, reducing it from three hours to 28 minutes, a process performed by an 'audiovisual man' under the direction of defendant's attorney." *Id.* The district court understandably was hesitant to admit the video, even though it was relevant. *Id.* at 322-23 ("defendant was proffering the tape without testimony by either the videographer or the tape's editor *or anyone else to authenticate it… with proper authentication, the tape would be sufficiently relevant to be admitted*") (emphasis added). Here, in contrast, Strategic has proffered evidence sufficient to meet Rule 901: "to satisfy the requirement of authenticating []



an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

DX37 (Video 4): The August 31, 2017 videotaped interview of Guo on Mirror Media should be admitted. DX-76A was admitted into evidence without objection by Eastern. (736:22). Under Rule 901(b)(1), DX-76A is "the declaration for this Court, to establish that two different YouTube links are true and correct recordings of interviews that Mingjing, or Mirror Media, took and kept in the course of its business as a TV station." (736:4-9) DX-76A identifies the YouTube link by specific Internet address for the interview and is signed by the man who conducted the interview with Guo, Sam Chen. The declaration sets out Chen's profession (journalist), place of work and employer (Mirror Media), that Chen is making the declaration as an employee of Mirror Media, that Chen interviews persons of public interest, and that Chen is responsible for "reviewing the recordings of those interviews once they are posted on YouTube for public viewing." *See* Fed. R. Evid. 803(6). The Court can take judicial notice under Fed. R. Evid. 201(b): pasting the address for the August 31st interview into an Internet browser will access the videotape played at trial.

Moreover, Guo himself acknowledged giving the interview to Chen after seeing just the beginning of the video, which had been shown to Guo at his deposition in 2019 (737:4-6): "it was I who initiated it during the interview with Mirror Media." (737:16-17) The interview was transcribed at DX-114(B), which was admitted into evidence with no foundation objection by Eastern (751:20-21 and 11-17). Guo acknowledged the accuracy of the transcription by translator Jessica Ju (whose declaration of the background and foundation of her work was DX114): "you testified yesterday that a transcription of what we called--well, first of all, a document that we've called video 8 was an accurate recording of part of the meeting, and then you walked through the transcript of video 8, which was Exhibit 114B, starting at page 1362, with Eastern Profit's counsel. Do you recall that? A. Yes." (719:4-11). Notably, Eastern sought the admission of DX-114 during its direct examination of Guo. (630:5-6) This collectively presents ample evidence to support a finding that DX37 (Video 4) "is what the proponent claims it is." Fed. R. Evid. 901(a). That Eastern complains of the "poor quality of the recording" (Dkt. 354, p. 2) does not preclude admission. *See United States v. Hemmings,* 482 Fed. Appx. 640, 642–43 (2d Cir. 2012) ("Hemmings is correct that large portions of the recordings [] were inaudible…[t]he mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape." (citation omitted). "The question is not whether there are "inaudib[le]" portions in the recordings, but whether the audible portions of the recordings retain probative value." *Id.*

DX37 (March 5, 2017 video 1): Under Rule 901(5), Lianchao sufficiently authenticated DX37 by acknowledging Guo's voice regarding the March 5, 2017 video. Lianchao is in a good position to identify Guo's voice. Lianchao assisted Guo with his asylum application, spoke to Guo the day before his deposition, and is familiar with Guo's voice. In the Gong direct examination, Eastern presented emails between Lianchao and Gong discussing Guo's asylum application (DX123, 794:3-5). As the Court will observe from Lianchao's deposition testimony designated without objection by Eastern (Dkt. 299-5, p. 32/31), Lianchao recognized Guo's voice on the video. (74:9-22, 77:6-14) In the Second Circuit, a person who is familiar with someone's voice may authenticate a recording of that voice even without being present when the recording was made. *United States v. Tropeano*, 252 F.3d 653 (2d Cir. 2001). "Juries may listen to an audiotape of a



voice and determine who is speaking even though the voice has been authenticated only by a lay witness rather than an expert." *Tyson v. Keane*, 159 F.3d 732 (2d Cir. 1998). "[T]here is no requirement that recordings be authenticated through a contemporaneous witness to the recorded conversations." *United States v. Bosch*, 399 F.Supp.2d 521 (S.D.N.Y 2005) (citing *United States v. Fuentes*, 563 F.2d 527, 532 (2d Cir. 1977).

DX35, DX76A, and DX114

DX114 is a detailed declaration of accuracy by translator Jessica Ju about her work translating materials involving Guo that were originally available only in the Mandarin language. The declaration describes the source, date, and manner that Ju obtained the materials to translate, the means by which Ju accessed the materials, her methodology for translating the materials from Mandarin to English, and the accuracy of her work. Ju is an experienced linguist qualified and employed by the U.S. District Court for the Southern District and she also is qualified by New York state courts. The accuracy of her work is above question and DX-114 was produced to Eastern months ago without objection or correction. Like DX114, DX76A was produced to Eastern over a year ago without objection or correction. It describes the involvement of Sam Chen in interviewing Guo. Both DX14 and DX76A are admissible under Fed. R. Evid. 807(a) (Residual Exception) as "a hearsay statement [] not excluded by the rule against hearsay even if the statement is not admissible under a hearsay exception in Rule 803 or 804" because the statement "(1) is supported by sufficient guarantees of trustworthiness–after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts." Under Rule 807(b), Eastern was given ample notice via pretrial procedure of both exhibits. DX35 is not objectionable because of any alleged inaccuracy, and it should be admitted as probative evidence of the letter Guo admitted at trial signing at the request of the PRC: "I went to Mirror and showed them this is the letter. Q. So, in other words, the letter that you brought to Mirror was the authentic letter, correct? A. Well, the letter I brought to Mirror was the authentic one…" (738:5-9) Eastern has had DX35 for months. If it was an inaccurate translation, Eastern could have raised that objection long ago.

Sasha Gong's Testimony

Sasha Gong, a citizen of the United States who immigrated many years ago from China to escape political persecution, is a journalist and filmmaker. The testimony at issue described her personal perception and beliefs in responding to the question "in your line of work, do you have to make your own personal judgments about which Chinese living in the U.S. are reliable dissidents and which have some degree of loyalty to Beijing?" Gong testified to being a central figure in the dissident movement in the U.S., personally helping other dissidents with activities having no relation to Gong's professional work. That her professional life has expanded the scope of information on which Gong's beliefs rest does not make the testimony inadmissible expert opinion. Rather, the average person can and does form a belief about the sincerity of someone's acts and words, especially about their political viewpoints, and Gong's belief about Guo's dissident status is admissible. Her opinion is not based on any special method or expertise developed in her line of work. In fact, Gong's general ways of working were not discussed at trial.



                                        Respectfully submitted,

                                        */s/ Edward D. Greim*

                                        Edward D. Greim
                                        Attorney for Defendant/Counterclaimant

cc:      Counsel of record via ECF

1100 Main Street, Suite 2700   Kansas City, MO 64105   ph 816.256.3181   www.gravesgarrett.com