UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EASTERN PROFIT CORPORATION LIMITED<br><br>                    Plaintiff,<br><br>            v.<br><br>STRATEGIC VISION US, LLC<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case No. 18-CV-2185 (LJL)<br>)<br>)<br>)<br>)<br>) |

# PLAINTIFF'S POST-TRIAL SUBMISSION REGARDING THE VIRGINIA PRIVATE SECURITY SERVICES STATUTE

-i-

## **TABLE OF CONTENTS**

I.  INTRODUCTION ............................................................................................................. 1

II. ARGUMENT ................................................................................................................... 1

    A.  The Research Agreement Involves Traditional Private Investigation Activity Within the Scope of Virginia's Statute and Similar Statutes in Other States. ......................................................................................................... 1

    B.  The Application of Virginia's Act to the Research Agreement Does Not Violate the Commerce Clause ................................................................................. 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc.*,
    427 F. Supp. 2d 657 (E.D. Va. 2006) ...................................................................................7

*Berman v. City of New York*,
    2012 WL 13041996 (E.D.N.Y. Oct. 3, 2012)......................................................................7

*City of Los Angeles v. Cty. of Kern*,
    581 F.3d 841 (9th Cir. 2009) ...............................................................................................8

*Freedom Holdings, Inc. v. Spitzer*,
    357 F.3d 205 (2d Cir. 2004).................................................................................................6

*Grand River Enters. Six Nations, Ltd. v. Pryor*,
    425 F.3d 158 (2d Cir. 2005).................................................................................................6

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324, 109 S. Ct. 2491, 105 L. Ed. 2d 275 (1989)...................................................6

*J. McIntyre Mach., Ltd. v. Nicastro*,
    564 U.S. 873, 131 S. Ct. 2780, 180 L. Ed. 2d 765 (2011)................................................7, 8

*Kassel v. Consol. Freightways Corp. of Del.*,
    450 U.S. 662, 101 S.Ct. 1309, 67 L.Ed.2d 580 (1981)........................................................7

*L.A.M. Recovery, Inc. v. Dep't of Consumer Affs.*,
    377 F. Supp. 2d 429 (S.D.N.Y. 2005), *aff'd*, 184 F. App'x 85 (2d Cir. 2006)....................8

*Landi v. Arkules*,
    835 P.2d 458 (Ariz. Ct. App. 1992).....................................................................................5

*Midwest Title Loans, Inc. v. Mills*,
    593 F.3d 660 (7th Cir. 2010) ...............................................................................................7

*N.Y. Pet Welfare Assoc., Inc. v. City of New York*,
    850 F.3d 79 (2d Cir. 2017)...................................................................................................6

*Or. Waste Sys., Inc. v. Dep't of Envt'l Quality*,
    511 U.S. 93 (1994)...............................................................................................................6

*Urban Protective Servs. v. Great Latin Rests., L.L.C.*,
    2007 Va. Cir. LEXIS 33 (Va. Cir. Ct. Mar. 5, 2007)...........................................................5

**I.     INTRODUCTION**

The Court requested that the parties submit supplemental briefing on two issues: (i) the interpretation of state statutes similar to the Virginia Private Security Services Statute, Va. Code. § 9.1-138, *et seq.* (the "Act"); and (ii) whether the fact that part of Strategic's investigation took place outside of Virginia presents Commerce Clause issues. Eastern addresses each issue below.

**II.    ARGUMENT**

    **A.     The Research Agreement Involves Traditional Private Investigation Activity Within the Scope of Virginia's Statute and Similar Statutes in Other States.**

The Research Agreement contemplated and involved traditional private investigation activities that are properly regulated under private investigation statutes, such as the Act. Under the Act, "[n]o person shall engage in the private security services business or solicit private security business in the Commonwealth without having obtained a license." Va. Code. § 9.1-139. Private security services business "means any person engaged in the business of providing, or who undertakes to provide . . . private investigators . . . to another person under contract." Va. Code. § 9.1-138. "Private investigators," in turn, are defined to include individuals who seek to "obtain information on: (i) crimes or civil wrongs; (ii) the location, disposition, or recovery of stolen property; (iii) the cause of accidents, fires, damages, or injuries to persons or to property; or (iv) evidence to be used before any court, board, officer, or investigative committee." *Id.*

In short, the Act prohibits unlicensed companies from engaging in any of the following conduct: (1) *offering* to provide private investigators (as defined above) to others in Virginia; (2) *contracting* to provide private investigators to others in Virginia; or (3) *engaging in the business of providing* private investigators to others in Virginia.

Strategic admitted at trial that it engaged in all three types of conduct without a license. It admitted that it *offered in Virginia* to provide private investigators to Eastern, *undertook by*

*contract in Virginia* to provide private investigators to Eastern, and *did in fact provide in Virginia* private investigators to Eastern. Specifically, the trial record demonstrates that:

- Strategic operates out of Ms. Wallop's home *in Virginia*.[1]

- The parties negotiated the Research Agreement *in Virginia* —*i.e.*, Strategic offered investigation services to Eastern *in Virginia*.[2]

- Strategic undertook to provide Eastern with investigation services *in Virginia* when both parties signed the Research Agreement *in Virginia*.[3]

- Strategic undertook to provide and actually provided "private investigators" to Eastern pursuant to the Research Agreement.[4]

- The services that Strategic sought to provide and agreed to provide to Eastern under the Research Agreement included obtaining information on "crimes and civil wrongs," including specific crimes by CCP members, such as "money laundering"[5]; the "location, disposition, and recovery of stolen assets,"[6] and "causes of injuries to persons."[7]

- Strategic engaged in the business of providing private investigators to Eastern in Virginia because: it is based *in Virginia*[8]; "coordinated its efforts to perform under the [Research Agreement] out of the Commonwealth of *Virginia*"[9]; Team 1 picked up the subject list from Ms. Wallop *in Virginia*[10]; Team 1 delivered the first USB drive to Strategic at Ms. Wallop's house *in*

---

[1] Tr. (Wallop) at 37:07-11; PX39 ¶ 19.

[2] PX39 ¶¶ 19-20, 23-24; PX38, Answer at 3 ¶ 8; *see also* PX02.

[3] Tr. (Wallop) at 69:13-15.

[4] Tr. (Waller) at 198:08-18 ("Q. Strategic claims that it, in fact, retained certain private investigators? A. Yes.").

[5] PX01 at 1; Tr. (Wallop) at 40:01-16, 63:24-66:22, 71:01-04; Tr. (Waller) at 191:17-20, 192:23-193:05, 252:02-253:13.

[6] Tr. (Wallop) at 40:01-16, 63:24-66:22; Tr. (Waller) at 191:21-23, 252:02-253:13.

[7] Tr. (Wallop) at 40:01-16.

[8] Tr. (Wallop) at 37:07-11.

[9] PX39 ¶ 36.

[10] Tr. (Wallop) at 158:01-18; Tr. (Waller) at 303:10-304:20.

-2-

*Virginia*[11]; Ms. Wallop and Mr. Waller met with Team 1 on multiple occasions in January *in Virginia*[12]; and Ms. Wallop and Mr. Waller met on an "almost daily" basis to "handle this investigation" *in Virginia*.[13]

In short, Strategic engaged in all three of the acts expressly prohibited by the Act, each of which is independently sufficient to invalidate the Research Agreement. In addition, to the extent that there was any question as to whether Strategic's conduct involved "traditional private investigator activity," trial confirmed that Strategic's conduct was textbook private investigator activity. Indeed, Strategic has *admitted* at trial that the Research Agreement involved:

- "***investigatory*** research"[14];

- "***sophisticated***" and "***extremely sensitive***" "[t]argeted ***[i]ntelligence*** [c]ollection and [a]nalysis," including tracking[15];

- "***surveillance***"[16];

- "***good old-fashioned detective type work***"[17];

- obtaining information on "***crimes and civil wrongs***," including specific crimes by CCP members, such as "***money laundering***"[18];

- the "location, disposition, and recovery of ***stolen assets***"[19];

---

[11] Tr. (Waller) at 306:02-306:20, 318:23-319:13 ("Now, you said you picked this up on the 24th from the Team 1 leader in Virginia? A. Yes.").

[12] JX 12 at 6:19-13:9.

[13] JX 3 at 183:09-183:18; 8:02-8:03; *see also* PX39 ¶¶ 45-46.

[14] Tr. (Wallop) at 35:01-02, 77:11-13; Tr. (Waller) at 186:06-189:04, 189:13-190:16.

[15] Tr. (Wallop) at 63:24-66:22; Tr. (Waller) at 252:02-253:13.

[16] Tr. (Wallop) at 35:12-14, 39:22-25, 40:24-41:14, 177:08-178:12.

[17] Tr. (Waller) at 187:08-189:04

[18] Tr. (Wallop) at 40:01-16.

[19] *Id.*

- obtaining information on "*causes of injuries to persons*"[20];

- ***hacking into Chinese government servers***[21];

- obtaining "*evidence of forged U.S. documents*" by the CCP[22];

- obtaining information regarding "*Social Security fraud*" and "*tax fraud*"[23];

- uncovering evidence of "*extra-marital affairs*"[24];

- finding the "locations of certain *offshore companies*," including "Panamanian *front companies*"[25]; and

- obtaining information regarding CCP members' "*accounts at certain banks and financial institutions* around the world."[26]

Such conduct is, by definition, "private investigator activity" falling within the ambit of the Act. Strategic's own admissions should be the beginning and end of the inquiry. But even if one were to credit Strategic's contention that the Research Agreement was intended solely to dig up dirt on CCP officials for a whistleblower campaign and not to actually prosecute crimes, the Research Agreement is still properly regulated under the Act.

---

[20] *Id.*

[21] Tr. (Waller) at 308:12-20, 314:24-317:22 (testifying about Strategic's efforts to gain "access to this Chinese Government server" called CITIC); *see id.* (testifying that Strategic attempted to "find a way to get in[to the server] through one of the people that [they were] *watching*. You can watch them access their email accounts on this server, and then get in. And, that way, you can go in without detection.") (emphasis added); *see id.* ("Q. Ultimately, then, did you take any steps, after talking to Lianchao, to go around Yvette and try the low-key approach with the CITIC server? A. Yes.").

[22] Tr. (Waller) at 348:07-15.

[23] *Id.*

[24] Tr. (Wallop) at 71:01-15.

[25] Tr. (Waller) at 308:12-20, 353:08-19.

[26] Tr. (Waller) at 353:08-19.

Indeed, this Court's decision in *Meyer v. Kalanick* confirms that. 212 F. Supp. 3d 437 (S.D.N.Y. 2016). In *Meyer*, Judge Rakoff held that digging up dirt on a litigation opponent violated New York's private investigation statute[27] despite the fact that the information was not going to be used in connection with the prosecution of any crime and most of the investigation activities took place outside the state of New York. *Id.* at 439-50.

There, the defendants in a lawsuit hired a company called Ergo to conduct "reputational diligence" on the plaintiff and his counsel. *Id.* at 439-41. Among other things, the defendants asked Ergo to uncover information regarding whether it was "out of character" for the plaintiff to bring the lawsuit against the defendant, whether the plaintiff's lawyer was the "driving force" behind the litigation, as well as "negative things" about the plaintiff. *Id.* at 439-41. As the Court's decision makes clear, much of the investigation took place, not in New York, but in Connecticut and New Hampshire. *Id.* at 447. Despite the fact that the investigation was not for the purpose of prosecuting some specific crime or uncovering evidence of some specific harm, Judge Rakoff held that Ergo's conduct violated New York's private investigation statute. *Id.* Moreover, the fact that much of the investigation had occurred out of state did not concern Judge Rakoff, whether by reason of the Commerce Clause or otherwise. *Id.*

Ergo had argued that its conduct was not a violation of the statute because it did not "fit the ***traditional plain meaning of private investigation in New York***." *Id.* (emphasis added). But Judge Rakoff vehemently disagreed with Ergo's contention, stating that "if concocting fictitious stories to induce acquaintances of a client's litigation adversary ***to shed light on the adversary's employment, finances, family life, and motivation for bringing a lawsuit does not constitute private investigation work, then the Court does not know what would.***" *Id.* (emphasis added).

---

[27] New York's private investigator statute is substantially similar to the Act. *See* N.Y. GEN. BUS. LAW § 70.

For that reason, the Court enjoined defendants from using any of the information collected by Ergo in any way and prohibited the defendants and Ergo from undertaking any further investigations of individuals using unlicensed investigators. *Id.* at 450.

Therefore, the teachings of this Court suggest that, even if Strategic were correct that the Research Agreement was nothing more than "shed[ding] light on [the] employment, finances, [and] family life" of CCP officials to support Mr. Guo's whistleblower campaign, Strategic's conduct would still be properly regulated—and prohibited—by the Act.

Finally, although Strategic cannot now run from its own admissions that the Research Agreement involved, among other things, "surveillance"[28] and "good old-fashioned detective type work,"[29] the fact that part of Strategic's investigation was conducted on the "dark web" and other electronic means does not change the nature of the services provided—they were investigation services that fall well within the ambit of the Act. *See e.g.*, *Landi v. Arkules*, 835 P.2d 458, 466 (Ariz. Ct. App. 1992) (finding that an heir finder contract and the genealogical and probate research required thereunder fell under the statutory definition of "private investigation" because it involved an attempt to obtain information about the identity of a person).

For these reasons, the Research Agreement is illegal under the Act and is therefore void as a matter of law. *See Urban Protective Servs. v. Great Latin Rests., L.L.C.*, No. CL-2006-12250, 2007 Va. Cir. LEXIS 33, at *5-8 (Va. Cir. Ct. Mar. 5, 2007). **Notably, the Virginia Circuit Court in Urban did not deem it necessary to find that the violation was "willful" or not. Indeed, the Court did not even consider the violating party's intent.** *Id.*  Instead, the Court found that a violation of the Act—no matter the violating party's intent—is sufficient to void the contract. *Id.*

---

[28] Tr. (Wallop) at 35:12-14, 39:22-25, 40:24-41:14, 177:08-178:12.

[29] Tr. (Waller) at 187:08-189:04.

### B. The Application of Virginia's Act to the Research Agreement Does Not Violate the Commerce Clause

The application of the Act to the Research Agreement does not violate the Commerce Clause because the Research Agreement did not take place "wholly outside" Virginia.

Article I, Section 8, Clause 3 of the United States Constitution empowers Congress to "regulate commerce . . . among the several States."  Although the Clause is phrased as an affirmative grant of congressional power, it is well-established that the Clause also contains a negative or "dormant" aspect that denies to the States "the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Or. Waste Sys., Inc. v. Dep't of Envt'l Quality*, 511 U.S. 93, 98 (1994).

One of the ways in which the Commerce Clause may be violated is where the legislation in question impermissibly regulates wholly extraterritorial commerce. *Healy v. Beer Inst., Inc.*, 491 U.S. 324, 328 (1989).  A legislation's extraterritorial effects violate the Commerce Clause when the state statute in question regulates commerce that takes place "**wholly outside of its borders**." *Id.* (emphasis added); *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 216 (2d Cir. 2004) (same); *see also Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 168 (2d Cir. 2005) ("[T]he Commerce Clause precludes the application of a state statute to commerce that takes place **wholly outside of the State's borders**.") (emphasis added).

The Commerce Clause does not, however, void every law that causes behavior to change in other states. *N.Y. Pet Welfare Assoc., Inc. v. City of New York*, 850 F.3d 79, 91-92 (2d Cir. 2017).  Indeed, "there is a residuum of power in the state to make laws governing matters of local concern which nevertheless in some measure affect interstate commerce or even, to some extent, regulate it." *See Kassel v. Consol. Freightways Corp. of Del.*, 450 U.S. 662, 669–70 (1981).

"The ***critical question*** under the dormant Commerce Clause is ***where the transaction being regulated is consummated***." *Berman v. City of New York*, No. 09–CV–3017 (ENV) (CLP), 2012 WL 13041996, at *18 (E.D.N.Y. Oct. 3, 2012) (emphasis added). Indeed, "the ***key issue*** **is** ***where [the applicable] contracts . . . are formed***." *Id.* ("[I]n grappling with whether the practical effect of a regulation is to control conduct beyond the boundaries of the State, ***the circuit courts have focused on the location (or locations) where the contract was formed***.") (emphasis added); *cf. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660, 669 (7th Cir. 2010) (emphasizing importance of where contract was formed in Commerce Clause analysis).

When a contract is formed in one state, the application of a state's law to that contract does not violate the Commerce Clause, even if elements of the transaction occurred outside of the state. *See Atl. Mach. & Equip., Inc. v. Tigercat Indus., Inc.*, 427 F. Supp. 2d 657, 666 (E.D. Va. 2006) ("***In the immediate case, Virginia is not attempting to regulate a contract occurring wholly outside the Commonwealth. The contract in question was entered into in the Commonwealth of Virginia and regulates the sale of equipment in Virginia. While it may be true that elements of the transaction occurred outside of the Commonwealth of Virginia, this does not necessarily deprive Virginia of its interest in regulating the transaction.***") (emphasis added).

Another important factor is the principal place of business of the party that is being subjected to the regulation in question. *J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 880 (2011). Where a company establishes its principal place of business within a particular state, it submits to the jurisdiction of that state *and its laws*, and it cannot be found to complain about the application of such laws to its activities, even if not performed fully within that state. *Id.*; *L.A.M. Recovery, Inc. v. Dep't of Consumer Affs.*, 377 F. Supp. 2d 429, 439 (S.D.N.Y. 2005), *aff'd*, 184 F. App'x 85 (2d Cir. 2006) (***finding that in-state plaintiff lacked standing to allege dormant***

***Commerce Clause violation***); *City of Los Angeles v. Cty. of Kern*, 581 F.3d 841, 848 (9th Cir. 2009) (finding that in-state entities lacked prudential standing to challenge law at issue on dormant commerce clause grounds); *see also* Meyer, 212 F. Supp. 3d 437 (discussed above).

Here, the application of the Act to the Research Agreement does not violate the Commerce Clause because it does not constitute commerce taking place "wholly outside" of Virginia. Strategic has its principal place of business in Virginia and the contract in question in this case—the Research Agreement—was formed wholly *within* Virginia. Indeed, the Act prohibits three types of conduct without a license: (i) soliciting private investigation business in Virginia, (ii) undertaking to provide private investigators to others pursuant to a contract in Virginia, or (iii) engaging in a private investigation business in Virginia. Thus, when Strategic—a Virginia company—signed a contract—in Virginia—to provide private investigators to Eastern, it violated the statute. Because that conduct took place ***wholly within*** Virginia, the Commerce Clause has no room to operate here.

Even if the conduct at issue were to be considered as a whole, including in connection with the negotiation, formation, and performance of the Research Agreement, it simply cannot be said that the transaction took place "wholly outside" of Virginia, in violation of the Commerce Clause. To the contrary, the record is clear that Strategic also solicited the private investigation services *in Virginia* and in fact provided such services, at least in part, *in Virginia*. *See supra* at 2-3. Thus, a substantial amount of the conduct at issue occurred *within* Virginia, including the "critical" or "key" issues involved in the Commerce Clause analysis—where the contract was formed and the principal place of business of the company subject to the relevant regulation. Therefore, the Commerce Clause does not prevent the application of the Act to the Research Agreement.

Dated:  April 30, 2021

Respectfully submitted,

*/s/ Joanna J. Cline*
Francis J. Lawall (Admitted to S.D.N.Y.)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
215.981.4000
215.981.4750 (facsimile)

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON
SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE 19801
302.777.6500
302.421.8390 (facsimile)

-10-

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2021, a true and correct copy of the *Plaintiff's Post-Trial Submission regarding the Virginia Private Security Services Statute* was filed electronically. Notice of this filing will be sent to all registered parties by operation of the Court's electronic filing system.

Dated: April 30, 2021

Respectfully submitted,

*/s/ Joanna J. Cline*
Francis J. Lawall (Admitted to S.D.N.Y.)
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
215.981.4000
215.981.4750 (facsimile)

Joanna J. Cline (*Pro Hac Vice*)
Christopher B. Chuff (*Pro Hac Vice*)
TROUTMAN PEPPER HAMILTON SANDERS LLP
1313 North Market Streets, Suite 5100
Wilmington, DE 19801
302.777.6500
302.421.8390 (facsimile)

115533865v1